IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DAVID DIXON, <br> JEFFREY ROZELLE, <br> AARON THURMAN, and <br> RICHARD ROBARDS <br> On behalf of themselves and all <br> others similarly situated, <br><br> Plaintiffs, <br><br> V. <br><br> CITY OF ST. LOUIS, SHERIFF VERNON <br> BETTS, JUDGE ROBIN RANSOM in her <br> official capacity as presiding judge, JUDGE <br> REX BURLISON in his official capacity as <br> interim Presiding Judge, JUDGE ELIZABETH <br> HOGAN in her official capacity as Division 16 <br> Judge and Duty Judge, JUDGE DAVID <br> ROITHER in his official capacity as Division <br> 25 Judge and Duty Judge, JUDGE THOMAS <br> MCCARTHY in his official capacity as <br> Division 26 Judge, COMMISSIONER DALE <br> GLASS in his official capacity as St. Louis <br> Commissioner of Corrections, <br><br> Defendants. | Cause No. 4:19-cv-00112 |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**NATURE AND STAGE OF PROCEEDING**

Plaintiffs have filed this proposed class action challenging Defendants' unconstitutional post-arrest system, which jails some of St. Louis's poorest residents because they cannot afford to pay for their release. Plaintiffs move for certification of a class, seeking prospective relief, under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs propose a class defined as: all arrestees who are or will be detained in the Medium Security Institution (referred to as "the Workhouse") or the City Justice Center ("CJC"), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition. Plaintiffs also move for appointment of the undersigned counsel to represent the certified class under Rule 23(g) of the Federal Rules of Civil Procedure.

**SUMMARY OF ARGUMENT**

Class certification is appropriate because Plaintiffs' claims concern Defendants' systemic policies and practices, which result in injuries common among the members of the class, which consists of hundreds of people. The named Plaintiffs and their counsel are dedicated to vindicating the constitutional rights of the proposed class members, and they will provide quality representation for the interests of proposed class members.

**BACKGROUND**

I.     **Defendants' Post-Arrest Policies and Practices Violate Plaintiffs' Rights to Pretrial Liberty and Against Wealth-Based Detention**

Plaintiffs challenge Defendants' policy and practice of imposing and enforcing financial conditions of release resulting in the pretrial detention of only those arrestees who are too poor to pay money bail. The amount of money an arrestee must pay to secure release is determined without any inquiry into ability to pay, with no attorney for the accused, and without any consideration of or findings concerning ability to pay or alternative conditions of release.

1

Individuals arrested in the City of St. Louis are jailed while a separate process occurs outside of the public's view and without the individuals' participation to determine how much money they must pay to purchase their liberty. A Bond Commissioner makes a recommendation regarding release conditions to a duty judge to set bond prior to the individual's first appearance before a judge. The Bond Commissioner does not inquire into the detained individual's ability to pay, the individual's ties to the community, or any other relevant factors when recommending release conditions. This process relies only on the individual's prior criminal record and the charges alleged against the individual. The Bond Commissioner has a policy and practice of only recommending release with monetary conditions (cash bond).

The first time an individual sees a judge is at first appearance, which is held by videoconference from the jail. Sheriff's Deputies maintain custody over individuals during their first appearances and order them not to speak or request a change in their release conditions. As a result, the first appearance is limited to the judge reading the charges and telling them how much money they need to pay. Individuals are not represented by counsel and are not allowed to speak to the judge except to inform the judge whether they plan to retain counsel. In addition, this first appearance lasts only one to two minutes and is not on the record. Further, if an individual dares to speak, the judge tells them this is not the appropriate time to talk about their release conditions. Indigent individuals are denied any opportunity to challenge or request modification of their release conditions.

Instead, the Court tells them they may only modify their release conditions with an attorney. For indigent people, the process to appoint a public defender and set a motion to modify conditions of release takes an average of four weeks due to the chronic underfunding of the Public Defender system. For poor individuals who are initially found ineligible for public

defender services, the process can take even longer.

Even after a public defender enters on a case and files a motion, it often takes more than a week for a judge to hear a motion for bond reduction. Thus, indigent defendants remain incarcerated for, on average, four to five weeks before they are given any opportunity to challenge or modify the release conditions set in their case.

Due to these and other policies and practices, thousands of people languish in jail cells every night in the City of St. Louis, simply because they cannot afford to pay for their release. In the City of St. Louis, whether a presumptively innocent arrestee is released or detained after arrest turns on her access to cash. This system violates the constitutional rights of thousands of people arrested in the City of St. Louis every year who cannot afford to pay for their release.

## II. The Named Plaintiffs Will be Kept in Jail Because They Cannot Pay the Money Bail Demanded for Their Release

Plaintiff David Buster Dixon is a 52-year-old man from St. Louis. He has been incarcerated for the last 18 days solely because he cannot afford his $30,000 cash bond. Plaintiff Jeffrey Rozelle is a 42-year-old man from St. Louis. Mr. Rozelle has been incarcerated for 13 days without a hearing and due to his poverty on a $15,000 cash bond. Plaintiff Aaron Thurman is a 24-year-old man from St. Louis. He has been incarcerated for the last 13 days because he cannot afford his cash bond set at $30,000 cash only. Plaintiff Richard Robards is a 25-year-old man from St. Louis. Mr. Robards has been incarcerated 18 days due to his poverty on a $10,000, 10% unsecured cash bond.

All of the Plaintiffs struggle to meet the basic necessities of life, and all of them would walk out of the doors of the jail if they could afford to purchase their release.

## III. Plaintiffs Seek Class-wide Prospective Relief

Defendants' policies and practices violate class members' due process and equal

protection right to be free from wealth-based detention, Plaintiffs' substantive due process right to pretrial liberty, and Plaintiffs' procedural due process right to certain procedural safeguards before a court determines that detention is warranted. Plaintiffs therefore request class-wide declaratory and injunctive relief and certification of the following class: all arrestees who are or will be detained in the Medium Security Institution (referred to as "the Workhouse") or the City Justice Center ("CJC"), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition.

## ARGUMENT

For purposes of a class-certification motion, the substantive allegations contained in the Complaint must be accepted as true. *See Mangold v. Lincoln Cty.*, No. 4:10- CV-1991, 2011 WL 3880561, at *2 (E.D. Mo. Aug. 31, 2011) (citing *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994)); Fed. R. Civ. P. 23. Here, the Named Plaintiffs seek certification of the class and to represent that class: all arrestees who are or will be detained in the Medium Security Institution (referred to as "the Workhouse") or the City Justice Center ("CJC"), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition.

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). These fundamental class action prerequisites, known respectively as numerosity, commonality, typicality, and adequacy, are easily each met in this case.

**I.      The Proposed Classes Satisfy the Prerequisites of Rule 23(a)**

### A. Rule 23(a)(1): Numerosity and Ascertainability

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be impracticable. "To be impracticable does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." *Boswell* v. *Panera Bread Co.*, 311 F.R.D. 515, 527 (E.D. Mo. 2015) (citation omitted). Courts in this Circuit have routinely certified classes of several hundred individuals, and even as few as twenty individuals. *Tinsley* v. *Covenant Care Servs., LLC*, No. 1:14-CV-00026, 2016 WL 393577, at *7 (E.D. Mo. Feb. 2, 2016) ("It has been consistently held that joinder is impracticable where the class is composed of more than 40 persons."). In addition to the size of the class, the Court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Tinsley*, 2016 WL 393577, at *7.

Here, Defendants' data reflect that the average daily jail population in the City of St. Louis was 1,244 in the summer of 2018. Of those 1,244, 1,238 were incarcerated pre-trial. These individuals are incarcerated because they cannot afford monetary release conditions of their bail. The number of current and future individuals subject to Defendants' policies and practices—if not enjoined—amounts to thousands every year. Joinder of so many individual claims would be impracticable, and judicial economy would undoubtedly suffer.

Moreover, there is an indeterminate future stream of class members who will suffer the same injury, absent injunctive relief, given that the Defendants arrest and detain new people every day. Thus, traditional "joinder" is not practicable. *See* Moore's Federal Practice § 23.22(f) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future. Courts in these cases often find that joinder

5

of separate suits would be impracticable because those who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit.").

Moreover, the ability of individual impoverished arrestees to instigate separate lawsuits is compromised because they are unlikely to have the resources to investigate and develop their constitutional claims, let alone to find a lawyer to represent them in the hours after their arrest. As a group, they are among the most marginalized and economically desperate members of the community. And, unlike those who, for example, have been injured by a defective product, indigent arrestees may not even be aware that they have a valid constitutional claim for challenging the practice of jailing the poor for the inability to make a monetary payment. *See Jackson v. Foley*, 156 F.R.D. 538, 541–42 (E.D.N.Y. 1994) (finding numerosity and impracticable joinder when the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits); *Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding, in action brought for injunctive relief challenging Medicaid policy, that joinder was impracticable because the proposed class consisted of poor and elderly or disabled people who could not bring individual lawsuits without hardship); *Gerardo v. Quong Hop & Co.*, No. 08-CV-3953, 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009) (certifying class where "potential class members are not legally sophisticated," making it difficult for them to bring individual claims).

Finally, a class action does not present any insurmountable difficulties in management— the class is easily ascertainable from records in the Defendants' possession *and* the class is limited in geographic scope, as opposed to a nationwide, multi-district class. Requiring separate individual lawsuits against the Defendants would result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the same Defendants).

### B. Rule 23(a)(2): Commonality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2); *Tinsley*, 2016 WL 393577, at *8. The Rule requires only "a single common question" that unites the proposed class. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct 2541, 2556 (2011). Factual differences among the plaintiffs do not negate commonality. Rather, commonality exists "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton* v. *Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citations omitted).

Named Plaintiffs contend that the polices and practices of the City of St. Louis, the Defendant Judges of the 22nd Judicial Circuit, Sheriff Vernon Betts, and Commissioner Dale Glass violate the 14th Amendment. A suit that asks whether a uniform policy is lawful presents a paradigmatic example of a common question of law satisfying Rule 23(a)(2). *See Tinsley*, 2016 WL 393577, at *8 ("[t]hese questions are capable of common resolution because in each case, Defendants applied a uniform policy"); *Morgan* v. *UPS of Am.*, 169 F.R.D. 349, 356 (E.D. Mo. 1996) ("The alleged presence of a discriminatory practice or policy is sufficient to satisfy the commonality requirement") (*citing Paxton*, 688 F.2d at 561); *Rentschler* v. *Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) ("Whether the conditions, practices and policies of defendants, as they relate to PCC's conditions of confinement, are unconstitutional is a common issue for all present and future [class members].").

Although there need not be *both* common issues of law and fact under Rule 23(a), here the entire case is pervaded by critical and dispositive issues of both law and fact that are common to the class. Among the most important, but not the only, common questions of fact are:

> a) Whether Defendants have a policy and practice where Defendants set pre-trial conditions of release without process or a hearing;

    b) Whether, when, and how any official determines what conditions of pretrial release should be and whether, for example, any official provides any process or hearing, considers ability to pay, makes findings concerning ability to pay, and offers non-financial conditions of release for those unable to pay;

        c) What standard post-arrest procedures created, implemented, and enforced by the Defendants apply to arrestees; for example, whether Defendants use any other alternate procedures for promptly releasing indigent people determined otherwise eligible for release but who are unable to afford a monetary payment;

    d) How long individuals arrested must wait in jail after arrest before they have an opportunity to challenge pre-trial release conditions, raise their inability to pay for their release or to request alternative, non-financial conditions;

    e) How long individuals arrested must wait to be appointed an attorney that may challenge their pre-trial detention;

    f) Whether the Sheriff instructs defendants not to speak before the video conference at which their charges are read and bail is announced;

    g) The role of the City Bond Commissioner's Office in the setting of bail and conditions of release, whether any individualized analysis occurs, and whether and how inability to pay is considered;

        h) The standards and factors used by judges to set conditions of release; and

        i) Any supervision or training given to City employees uses to help determine conditions of release.

Among the most common questions of law with respect to the Class are:

    a) Whether requiring an individual to pay money to secure release from post-arrest detention without an inquiry into or findings concerning the individual's present ability to pay the amount required, and without meaningful consideration of less restrictive alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

    b) Whether it is lawful to impose a secured financial condition of release that operates as a de facto order of pre-trial detention because of a person's inability to pay without complying with the substantive findings, legal standards, and procedures required for issuing and enforcing a de facto order of preventive detention;

    c) Whether setting of pretrial release conditions without affording an individual counsel violates the Fourteenth Amendment's Due Process clause;

This case exemplifies the Supreme Court's explanation of commonality in *Dukes*, 564

U.S. at 349–51. There must be factual or legal questions the "answers" to which help to advance the legal claims of the Plaintiffs. *Id.* In this case, the fundamental common questions of fact and law listed above are the dispositive issues necessary to determine the Defendants' liability as to all class members.

Plaintiffs' proposed class falls well within the usual parameters for commonality. Named Plaintiffs, and other members of the class, are subject to Defendants' policies and practices of determining the amount of money required to secure post-arrest release without the arrestee or her lawyer present for an adversarial hearing that considers ability to pay and alternatives to money bail. Every member of the proposed class will be subjected to monetary release conditions, meaning that a monetary amount will be imposed pursuant to the process described above; every class member will be eligible for release from the City of St. Louis's custody if she pays that amount; every class member will be detained by the City of St. Louis if she is unable to pay the amount; no class member will receive a timely inquiry into her ability to pay a particular amount set, nor will any class member who cannot afford to pay be offered non-financial alternative conditions of release that permit release to occur as expeditiously as if she had posted the money bail amount. Every class member will be subject to a bail determination by a duty judge without the arrestee present. Every class member will also be subject to a first appearance before a Judge with no counsel, at which the class member will be unable to speak before her bail is set, to present evidence, or to make arguments concerning her ability to pay or the imposition of non-financial alternatives. Every class member will be held in jail if she cannot afford the financial condition of release imposed during that inadequate process.

Because Defendants apply and enforce a detention system with the same constitutional flaw for each class member and cause the same harm to each class member, the proposed class

9

satisfies the commonality requirement of Rule 23(a)(2). Resolving Plaintiffs' contentions about the Defendants' policies and practices "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

### C. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. *See Rikard* v. *U.S. Auto Protection, LLC*, 287 F.R.D. 486, 490 (E.D. Mo. 2012); *see also* Newberg on Class Actions § 3:28 (5th Ed.). "The inherent logic of the typicality requirement is that a class representative will adequately pursue her own claims, and if those claims are typical of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well." Newberg § 3:28.

The typicality burden is "not an onerous one." *Rikard*, 287 F.R.D. at 490 (citing *Donaldson* v. *Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (citing Moore's Federal Practice § 23.24[ 4] (3d ed. 2000)).

The named Plaintiffs are injured in the same way as the other class members: they are being detained following the closed-door decision-making process by which judges set bail and issue the challenged de facto detention orders; Plaintiffs' detention is due to their inability to pay the amount of money required for their release; and the amount required was determined without any inquiry into or findings concerning ability to pay and without any of the procedures or findings necessary for issuing a valid order of pretrial detention.

The named Plaintiffs' legal theories will also advance the interests of the other putative

class members who are also subjected to the Defendants' post-arrest detention scheme. The proof concerning whether the Defendants engage in those policies and the legal argument about whether those policies are unlawful are critical for each class member in this case to establish the liability of the Defendants. Thus, if the named Plaintiffs succeed in their claim that the Defendants' policies and practices concerning post-arrest detention as alleged in the Complaint are unlawful, then that ruling will likewise benefit every other member of the class. That is the essence of Rule 23(a)'s typicality requirement.

**D.      Rule 23(a)(4): Adequacy**

Rule 23(a)(4)'s adequacy requirement focuses on "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Tinsley*, 2016 WL 393577, at *9 (quoting *Paxton*, 688 F.2d at 562-63). It is clear that the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The named Plaintiffs in this case have agreed to act as class representatives. They have each met with the undersigned counsel and discussed the responsibility of prosecuting a class action on behalf of the City of St. Louis's poorest residents. Each named Plaintiff is familiar with the Defendants' procedures challenged here and the constitutional protections they seek to vindicate. The named Plaintiffs are prepared to respond to discovery requests in this case and otherwise fulfill the role and duties of a class representative.

The named Plaintiffs here are part of the class, share the class' interests, and suffer the same injuries as the class members. There are no known conflicts between the named Plaintiffs' interests and the interests of the class members. The interests of the named Plaintiffs and class members are aligned: they are all people seeking relief from unconstitutional pretrial detention.

11

There are no named Plaintiffs or class members who benefit from the denial of due process or equal protection while imprisoned. And none has any interests or strategies that diverge from those of the class as a whole. *See Rentschler* v. *Carnahan*, 160 F.R.D. 114, 117 (E.D. Mo. 1995).

Plaintiffs have also hired counsel that are willing to undertake financial responsibility for this action pro bono, and seek payment of costs and attorney's fees only as permitted under 42 U.S.C. § 1988 and other fee-shifting provisions. Counsel's qualifications are discussed below.

Finally, Plaintiffs' counsel are both competent and zealous. Plaintiffs' counsel from Civil Rights Corps, Advancement Project, ArchCity Defenders, and the Institute for Constitutional Advocacy and Protection have extensive experience litigating civil rights cases. Ex. 1 (Declaration of Alec Karakatsanis); Ex. 2 (Declaration of Thomas B. Harvey), Ex. 3 (Declaration of Blake Strode). Ex. 4. (Declaration of Seth Wayne). Counsel have a history of zealous advocacy on behalf of their clients, as evidenced by the filings in those cases and favorable results obtained. Exs. 1, 2, 3, 4. Class Counsel have conducted an extensive investigation into the operation of the City of St. Louis's scheme, including numerous interviews with witnesses, experts, municipal government employees, inmates, families of inmates, local attorneys, community members, statewide experts in the functioning of the City of St. Louis's courts, and national experts in post-arrest procedures and constitutional law. Exs 1-4. Class counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of reasonable constitutional options available to municipalities. Exs.1,4. As a result, Class Counsel have devoted substantial resources to becoming familiar with the wealth based detention scheme in the City of St. Louis and with the relevant state and federal laws and procedures that relate to it.

## II. Rule 23 (g): Appointment of Class Counsel

Counsel for the named Plaintiffs also seek to be appointed Class Counsel pursuant to Rule 23(g) given their extensive involvement in this action and that they will "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g). Rule 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1).

Rule 23(g)(1)(B). The Court must consider factors including: 1) "the work counsel has done in identifying or investigating potential claims in this action"; 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" 3) "counsel's knowledge of the applicable law;" and 4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A)

The undersigned counsel satisfy these four requirements. First, Plaintiffs' counsel have interviewed Plaintiffs and other class members, performed relevant legal research and drafting, investigated the facts and legal claims raised in this case for many months. Ex. 2 ¶¶ 3, 5; Ex 3 ¶¶ 3, 5.  Second, Plaintiffs' counsel have significant experience litigating complex civil rights actions, including claims concerning unconstitutional bail systems, due process, and equal protection, the right to counsel, and conditions of confinement. Ex. 1 ¶¶ 5-9 ; Ex. 2 ¶¶ 5-7; Ex. 3. ¶¶  5-7; Ex. 4 ¶¶ 5,6.  Counsel have also litigated challenges to unconstitutional bail systems and been appointed as class counsel in other jurisdictions in Missouri and across the country in multiple cases. Ex. 1 ¶¶ 6,7; Ex. 2 ¶ 6, Ex. 3 ¶ 6. Third, Plaintiffs' counsel are particularly familiar with the application of constitutional rights in Missouri's courts. Ex. 1 ¶¶ 8,9; Ex. 2 ¶¶ 5-7; Ex. 3 ¶¶ 5-7. Counsel have advocated for policy reform on the issues raised in this case with state and local officials, and educated the public and other attorneys about preventing and

remedying the type of constitutional violations exemplified by this case. Ex. 1 ¶¶ 5-9; Ex. 2 ¶¶ 5-7; Ex. 3 ¶¶ 5-7. Counsel have substantial experience litigating class actions and other complex matters. Ex. 1 ¶¶ 5-9; Ex. 2 ¶¶ 5,6,7; Ex. 3 ¶ 6; Ex. 4 ¶ 6. Finally, Plaintiffs' counsel are prepared to contribute significant resources to the representation of this class. Ex. 1 ¶ 10; Ex. 2 ¶ 8; Ex. 3 ¶ 8; Ex. 4 ¶ 8.  Therefore, plaintiffs' counsel satisfies the four criteria in Rule 23(g), and they respectfully request appointment as class counsel.

### III.   The Proposed Classes Satisfy the Additional Requirements of Rule 23(b)(2)

Rule 23(b)(2) states that a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The proposed class in this case is exactly the sort of class described in Rule 23(b)(2). To certify a class under Rule 23(b)(2), the party seeking class certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "This is a simple inquiry in most cases." Newberg § 4:28. The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, Rule 23(b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Further, the Eighth Circuit has expressed a preference for a liberal reading of Rule 23(b)(2) in the context of civil rights suits. *See Coley* v. *Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980). Indeed, "civil rights cases against parties charged with unlawful . . . discrimination are prime examples of what (b)(2) is meant to capture." *Dukes*, 564 U.S. at 361 (quoting *Amchem*

14

*Prods*, *Inc.* v. *Windsor*, 521 U.S. 591, 614 (1997)); *accord* Adv. Comm. Note to 1966 Amendment, Fed. R. Civ. P. 23 (denoting as examples for which 23(b)(2) was proper cases "in the civil-rights field where a party is charged with discriminating unlawfully against a class").

The Defendants have acted on grounds that apply generally to the class. Defendants' unconstitutional policies and practices apply to every arrestee detained in the City of St. Louis before trial because they cannot afford the secured financial conditions required for their release. Injunctive and declaratory relief are appropriate to the class precisely because the only adequate relief is enjoining and declaring unconstitutional Defendants' policies. Because the putative class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the class, certification under Rule 23(b)(2) is appropriate and necessary. *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) ("Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury)."

The central issue common to the entire class is the Defendants' application and enforcement of policies and procedures to detain arrestees unless and until they pay amounts of money imposed without any inquiry into or findings concerning ability to pay and without consideration of nonfinancial conditions of release for those who cannot pay. *E.g.*, *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2017 WL 1542457, at *1 (S.D. Tex. Apr. 28, 2017) (granting, for the purposes of pursuing declaratory and injunctive relief, a class composed of "All Class A and Class B misdemeanor arrestees who are detained by Harris County from the date of this order through the final resolution of this case, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on the secured money bail because of indigence."); *Walker*, 2016 WL 361580 (granting, for the

15

purposes of pursuing declaratory and injunctive relief, a class composed of "[a]ll arrestees unable to pay for their release who are or will be in the custody of the City of Calhoun as a result of an arrest involving a misdemeanor, traffic offense, or ordinance violation").

Certification of the class under Rule 23(b)(2) is merited because the named Plaintiffs and the rest of the members of the putative class are arrestees who are or will be detained by the City of St. Louis after arrest because they are unable to pay money bail. Absent the requested relief, the named Plaintiffs and the putative class members will be subjected to the same unconstitutional set of practices, policies, and procedures. The sought-after declaratory and injunctive relief will protect each member of the class from being subjected to the Defendants' unlawful policies and practices. A declaration and injunction stating that Defendants cannot detain arrestees due to their inability to make a monetary payment and that it violates due process to preventively detain arrestees would provide relief to every class member. Therefore, declaratory and injunctive relief with respect to the class as a whole is appropriate.

Plaintiffs seek an injunction ending Defendants' post-arrest detention procedures. Their request for that relief satisfies Rule 23(b)(2).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the court certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure. In the alternative, the Plaintiffs seek a minimum of six months for document discovery and depositions, followed by a hearing to present testimony and further evidence in support of this motion.

Dated: January 28, 2019                    Respectfully submitted,

By: /s/   Sima Atri
**ArchCity Defenders, Inc.**
Blake A. Strode (MBE #68422MO)
Michael-John Voss (MBE #61742MO)
Jacqueline Kutnik-Bauder (MBE # 45014MO)
Sima Atri (MBE #70489MO)
John M. Waldron (MBE #70401MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jkutnikbauder@archcitydefenders.org
satri@archcitydefenders.org
jwaldron@archcitydefenders.org

**Advancement Project**
/s/ *Thomas B. Harvey*
Thomas B. Harvey (MBE #61734MO)
Derecka Purnell
D.C. Bar No. 252634 (*pro hac vice* application forthcoming)
1220 L Street, N.W., Suite 850 Washington, DC 20005
Tel: (202) 728-9557
Fax: (202) 728-9558
tharvey@advancementproject.org

**Institute for Constitutional Advocacy and Protection (ICAP)**
/s/ *Seth Wayne*
Seth Wayne
D.C. Bar No. 888273445
(*pro hac vice* application forthcoming)
Nicolas Riley*
N.Y. Bar No. 5039607
(*pro hac vice* application forthcoming)
Robert Friedman
D.C. Bar No. 1046738
(*pro hac vice* application forthcoming)

Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NWWashington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu

17

rdf34@georgetown.edu
nr537@georgetown.edu

\* Admitted solely to practice law in New York; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

**Civil Rights Corps**
/s/ *Alec Karakatsanis*
Alec Karakatsanis
D.C. Bar No. 999294
(Pro Hac Vice Application forthcoming)
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
alec@civilrightscorps.org

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January, 2019, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Missouri, using the electronic case filing system of the Court. The Summons and Complaint will be served in accordance with the Federal Rules of Civil Procedure.

By:  /s/ Sima Atri