## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DAVID DIXON, et al.                        )
                                           )
                    Plaintiffs,            )
                                           )
          vs.                              )     Case No. 4:19-cv-0112-AGF
                                           )
CITY OF ST. LOUIS, et al.,                 )
                                           )
                    Defendant.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motions for class certification (ECF No. 3) and preliminary injunction (ECF No. 41) and Defendants' motions to dismiss the case (ECF Nos. 49, 51).  For the reasons set forth below, Plaintiffs' motions will be granted, and Defendants' motions will be denied.

## BACKGROUND

Named Plaintiffs David Dixon, Jeffrey Rozelle, Aaron Thurman, and Richard Robards were detained in St. Louis jails because they were unable to afford bail. Defendants are the City of St. Louis, its Commissioner of Corrections Dale Glass, and its Sheriff Vernon Betts (together, the City) and several judges of the 22nd Circuit (the Judges).[1]  On January 28, 2019, Plaintiffs filed a class action complaint under 42 U.S.C.

---

[1]     The named judicial Defendants are: Judge Robin Ransom in her official capacity as presiding judge, though, since the time of filing, Judge Ransom has been elevated to the Missouri Court of Appeals; Judge Rex Burlison in his official capacity as interim presiding judge; Judge Elizabeth Hogan in her official capacity (Division 16 and duty

§ 1983 asserting that Defendants violated their constitutional rights to equal protection and substantive and procedural due process by detaining them after arrest without an opportunity to challenge the conditions of their release.  The facts set forth in the complaint can be summarized as follows.

**Plaintiffs' Claims**

When a person is arrested in the City of St. Louis, a bond commissioner employed by the City makes a recommendation to a duty judge to set bond to secure the arrestee's court appearance.[2]  In formulating the recommendation, the commissioner considers the charges and any prior convictions but does not inquire into the arrestee's ability to pay, risk of flight, or danger to the public; the duty judge then sets bond on the commissioner's recommendation.  If an arrestee can afford to pay the cash bond in full, then the City will release him upon payment.  If not, he remains detained until a first appearance, which is held within 48 hours of arrest and by videoconference from the jail.  Plaintiffs allege that the sheriff's deputies who escort arrestees to their video hearings instruct them not to speak and specifically not to request a bond modification.  The judge reads the charges, states the bail amount pursuant to the commissioner's recommendation, and asks the arrestee whether he intends to retain counsel.  The hearing lasts one to two minutes and is not on the record.  Plaintiffs allege that, if an arrestee

judge); Judge David Roither in his official capacity (Division 25 judge and duty judge); and Judge Thomas McCarthy in his official capacity (Division 26).

[2]     The parties also refer to the bond commissioner as the pre-trial release commissioner.  The terms bail and bond are used interchangeably, as are the terms arrestee, detainee, and defendant.  The Court will refer to Plaintiffs and class members as arrestees or detainees.

attempts to contest his bail amount, the judge informs him that he cannot request a modification until he obtains counsel and sets a motion hearing.  For indigent individuals eligible for a public defender, that process takes approximately five weeks.  Arrestees who do not qualify for a public defender but cannot afford to pay a private attorney often remain detained even longer.

Plaintiffs aver that, even when arrestees receive the assistance of counsel on a motion for modification, the Judges' bail-setting practices remain constitutionally inadequate in that the Judges fail to consider an arrestee's financial circumstances or make specific findings as to alternative release conditions.  Plaintiffs further state that detainees in the Workhouse are exposed to dangerous and inhumane conditions such as extreme temperatures, lack of sanitation, vermin infestations, and violence. This period of incarceration often results in physical and mental health problems, loss of employment, eviction, and family separation.

Plaintiffs request the following forms of relief:

1. A declaratory judgment that Defendants violate the Plaintiffs' and class members' rights by issuing detention orders without due process;

2. A declaratory judgment that Defendants violate the Plaintiffs' and class members' rights by operating a system of wealth-based detention that keeps them in jail because they cannot afford to pay monetary conditions of release, without an inquiry or findings concerning their ability to pay, the necessity of detention, and alternative release conditions;

3. A declaratory judgment that Plaintiffs and class members are entitled to an individualized hearing regarding release conditions and including:

   a. Notice that financial information will be collected, and the significance thereof;

3

    b. An individualized determination of the arrestee's ability to pay and how much;

    c. An opportunity to be heard concerning one's ability to pay and the necessity of non-monetary release conditions, including an opportunity to present and rebut evidence and argue the issues;

    d. Substantive findings by the court on the record as to why detention is warranted and why less restrictive alternatives are insufficient; and

    e. Free legal counsel;

4. A declaratory judgment that the Sheriff and Commissioner of Corrections must not enforce any order requiring secured money bail or a monetary release condition that was imposed prior to an individualized hearing and that is not accompanied by a record reflecting the foregoing procedures and findings;

5. An order permanently enjoining Defendants from operating and enforcing a system of wealth-based detention that keeps Plaintiffs and class members in jail because they cannot afford to pay monetary release conditions, without an inquiry or findings concerning their ability to pay, alternative release conditions, and the necessity of detention;

6. An order permanently enjoining Defendants from operating and enforcing pretrial detention without constitutionally valid process as described above; and

7. An order directing the Sheriff not to instruct arrestees to remain silent during their hearings.

**Procedural History**

Concurrent with their complaint, Plaintiffs filed a motion for temporary restraining order (ECF No. 5), which was served on Defendants on Tuesday, January 29, 2019.  The next day, the parties appeared through counsel for a hearing and informed the Court that they had reached a tentative agreement obviating the immediate need for a hearing on the TRO motion.  The parties' finalized the terms of that agreement on the record and filed it later that day (ECF No. 19).  Principally, the parties agreed that Plaintiffs would receive a

bond hearing in accordance with proposed revised Missouri Supreme Court Rule 33.01, scheduled to take effect July 1, 2019.  This revised rule clarifies that a court cannot impose cash bail absent an individualized assessment of an arrestee's financial circumstances, flight risk, threat to public safety, and consideration of alternative release conditions; it further provides the right to a review hearing on the record within seven days and requires the court to make written findings supported by clear and convincing evidence.

The next day, Thursday, January 31, Defendants held bond hearings for the named Plaintiffs, who appeared through counsel.  At the close of those hearings, two Plaintiffs were released without bond, with other conditions.  Two others did not receive any reduction in bond.  On Monday, February 4, Plaintiff's counsel attempted to post bail for the two Plaintiffs still detained, by cashier's checks for $15,000 and $30,000, respectively.  Defendants initially refused to accept payment by cashier's check. Plaintiffs' counsel spent the entirety of Tuesday, February 5 communicating with various Defendants and other officials to secure approval and acceptance of payment by cashier's check, resulting in the two men's release from the Workhouse at 8 p.m. that night.

On February 21, 2019, Plaintiffs filed a motion for preliminary injunction seeking to enjoin Defendants' practice of detaining arrestees who are unable to pay cash bail without an individualized hearing on their financial circumstances and the necessity of detention.  Specifically, Plaintiffs demand: (1) notice of the nature and significance of the financial information required, (2) a prompt hearing, on the record, regarding the person's ability to pay, (3) legal counsel at such hearings, (4) findings on the record as to

whether the person has the ability to pay, and (5) clear and convincing evidence supporting the necessity of detention.  Attached to Plaintiffs' motion is a proposed order enjoining Jail Commissioner Glass from enforcing any bail order that operates as a de facto detention order due to an arrestee's inability to pay, unless such order is accompanied by a determination, reflecting the foregoing safeguards, that detention is necessary because there are no less restrictive alternatives to ensure the arrestee's future court appearance or the public's safety.

On March 1, 2019, Defendants filed motions to dismiss the case.  The City Defendants assert that they have no authority to establish bail conditions and no policy or custom of silencing arrestees in initial appearances.  The Defendant Judges assert theories of immunity and abstention.

On April 9, 2019, Plaintiffs requested that their motion for preliminary injunction be decided on the written record.  ECF No. 84.  After some discussion among counsel, the parties agreed to submit the matter on the written record.  The evidence before the Court consists of the following documents (referenced in further detail *infra*):

- 17 declarations by Plaintiffs and other arrestees describing: a lack of process at their initial appearances; inhumane living conditions and deprivations in detention facilities; and the personal impact of detention on their families and other dependents (ECF No. 41, Ex. 1, 2, 3, 4, 7, 8, 9, 10, 11, 17, 18, 21, 22, 23, 26, 27, 28);

- Nine declarations by arrestees' family members and other dependents describing hardships resulting from their absence, such as loss of income, loss of caregiving, displacement of children, loss of transportation, and loss of benefits (ECF Nos. 41, Ex. 12, 13, 14, 15, 16, 19, 20, 24, 25);

- Bond commissioner reports on the four named Plaintiffs and three other arrestees, only one of which contains an arrestee's personal information

6

(e.g., family ties, employment, financial resources, character, mental condition, length of residency in the community); ECF No. 41, Ex. 6.

- Three declarations by law student Elizabeth Forester, who observed initial appearances in the 22nd circuit and collected information from a random sample of 222 cases (ECF No. 41, Ex. 5; No. 83, Ex. 1; No. 93, Ex. 3);

- 164 bond commissioner reports from Forester's sample containing virtually no personal information relevant to individual release conditions (ECF No. 83, Ex. 2.)

- The declaration of the 22nd circuit district defender, Mary Fox, who observes initial appearances on a regular basis (ECF No. 93, Ex. 2);

- A letter from The Bail Project of St. Louis providing statistics about its clients' demographics and rate of court appearances (ECF No. 41, Ex. 29); and

- Two affidavits by a bond officer supervisor, Donald Kearbey, generally describing Defendants' practices at initial appearances (ECF Nos. 59 and 91, Ex. 1).

The case is fully briefed and ripe for disposition.

## DISCUSSION

### Class Certification

Also concurrent with their complaint, Plaintiffs filed a motion to certify a class comprised of "all arrestees who are or will be detained in the Medium Security Institution (the Workhouse) or the City Justice Center (CJC), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition." ECF No. 3.

Federal Rule of Civil Procedure 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law and fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and

adequately protect the interests of the class (adequacy).

Rule 23(b)(2) permits a class action where defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" (cohesiveness).

<u>Standing</u>

As a preliminary matter, Defendants submit that many putative class members lack standing because their alleged injury is now in the past, while Plaintiffs seek prospective relief.  The Supreme Court rejected this argument in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), where the named plaintiffs were arrested without warrants and held without a prompt probable cause determination.  The plaintiffs were in custody when they filed their complaint, so their injury was then capable of being redressed through injunctive relief.  By the time the matter was ripe for ruling, however, it was too late for a prompt hearing.  The defendants argued, therefore, that plaintiffs' constitutional violation was "completed," so they lacked standing.  The Court disagreed and explained:

> It is true, of course, that the claims of the named plaintiffs have since been rendered moot; eventually, they either received probable cause determinations or were released. Our cases leave no doubt, however, that by obtaining class certification, plaintiffs preserved the merits of the controversy for our review.  … [T]he termination of a class representative's claim does not moot the claims of the unnamed members of the class. … That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction. … [S]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest

8

expires. In such cases, the "relation back" doctrine is properly invoked to preserve the merits of the case for judicial resolution.  Accordingly, we proceed to the merits.

*Id*. at 51-52 (internal citations omitted).  Likewise here, the fact that the named Plaintiffs eventually received bond hearings and are no longer detained in the Workhouse or CJC does not moot the claims of the unnamed members of the class.  Consistent with *Riverside*, the Court concludes that Plaintiffs have standing to bring their claims.

Numerosity

Rule 23(a)(1) requires that the members of a class be so numerous as to make joinder impractical.  Plaintiffs aver that, according Defendants' data, 1,238 individuals were incarcerated prior to trial in the summer of 2018 alone, and thousands of current and future arrestees are affected by Defendants' practices every year.  Defendants do not challenge Plaintiffs' motion with respect to numerosity, and the Court finds this criterion satisfied.

Commonality

Rule 23(a)(2) requires that the members of a class be united by a common question of law or fact.  Commonality requires a showing that class members have suffered the same injury.  *Powers v. Credit Mgmt. Services, Inc.*, 776 F.3d 567, 571 (8th Cir. 2015).  Plaintiffs contend that Defendants' practice of imposing cash bail without considering alternatives or an arrestee's ability to pay resulted in their de facto detention in violation of the 14th Amendment.  Thus, they suffered the same injury.  But further, what matters is the capacity of a class action to generate common answers to resolve the litigation.  *Id.*  Plaintiffs seek resolution in the form of timely individualized bond

9

hearings to determine the necessity of bail, an arrestee's ability to pay, and appropriate release conditions based on actual risks of flight or harm to others. Though Defendants argue that such an individualized process is the opposite of a common answer, the relief Plaintiffs seek here is entirely systemic. As such, this criterion is satisfied.

Typicality

Rule 23(a)(3) requires that the named plaintiffs assert claims typical of the class. Typicality tends to merge with commonality, but the Eighth Circuit has given it independent meaning by requiring a "demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Huskey v. Birch Telecom of Missouri, Inc.*, 4:17-CV-02415 JAR, 2018 WL 4679738, at *3 (E.D. Mo. Sept. 28, 2018) (citing *Paxton v. Union National Bank*, 688 F.2d 552, 562 (8th Cir. 1982)). This can be met when the claims of the members and representatives are based on the same legal or remedial theory. *Id*.

Defendants argue that Plaintiffs are not typical of the putative class because (1) pursuant to the parties' stipulation resolving Plaintiffs' TRO motion, Plaintiffs already received the individualized bond hearings they seek on behalf of the class and (2) Plaintiffs have been released and thus are no longer part of a class of "arrestees who are or will be detained." The Court declines to distort the parties' good faith cooperation into class destruction and rejects these arguments for the same reasons articulated above with respect to standing. Moreover, Plaintiffs were detained for two to three weeks prior to any hearing at which their ability to pay was considered. Plaintiffs have sufficiently demonstrated that the injury prompting their complaint and the legal and remedial

10

theories advanced therein are typical of the putative class.

Adequacy

Rule 23(a)(4) requires that the named plaintiffs adequately protect the interests of the class.  Defendants seem to suggest that Plaintiffs are not adequate representatives because they do not satisfy the typicality criterion, which the Court has rejected.

The adequacy factor serves "to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action."  *Rattray v. Woodbury County, Iowa*, 614 F.3d 831, 835 (8th Cir. 2010).  Class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.  *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 553 (W.D. Mo. 2014).  "The experience and capability of the representative's counsel bears upon the adequacy of the representative."  *Rattray*, 614 F.3d at 836.  The Court is confident that Plaintiffs' interests are aligned with the putative class and their counsel quite competent to prosecute the action.

Cohesiveness

Rule 23(b)(2) applies when a single injunction or declaratory judgment would provide relief to each member of the class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  Defendants argue that the proposed class is not cohesive because Plaintiffs seek individualized bail determinations for each member, though Defendants simultaneously claim that Plaintiffs seek pre-trial release of the *entire* class.  Both arguments mischaracterize Plaintiffs' objective.  Plaintiffs seek neither wholesale release

11

of all arrestees nor case-by-case injunctions.   Rather, they seek systemic procedural reforms, applicable to all class members, in the form of a prompt and proper hearing. This is precisely the purpose of Rule 23(b).  "[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture."  *Id.* at 361.

Plaintiffs' motion to certify the class will be granted.  Pursuant to Rule 23(g), the Court will appoint Plaintiffs' counsel as counsel for the class.

**Motions to Dismiss**

The Judges and the City have filed separate motions to dismiss on distinct legal theories.  To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.  The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged.  *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012).  A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.  *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8thCir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

12

Judicial Immunity

The Judges first assert that § 1983 does not authorize an action for declaratory or injunctive relief against judicial officers acting in their official capacity.  Plaintiffs seek only declaratory relief with respect to the Judges.  Section 1983 states: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted *unless* a declaratory decree was violated or declaratory relief was unavailable."  (emphasis added)  Stated inversely, a judge *can* be sued in an official capacity, and injunctive relief *can* be granted, when the judge violates a declaratory decree or when declaratory relief is unavailable.  Necessarily then, §1983 also contemplates declaratory relief.

The cases cited by the Judges do not support a contrary conclusion.  Principally, the Judges cite *Hamilton v. City of Hayti, Missouri*, 1:16CV54RLW, 2017 WL 836558 (E.D. Mo. Mar. 2, 2017).  There, an arrestee alleged that a state judge violated his rights by setting an excessive bond and detaining him for seven days without an opportunity to be released on his own recognizance.  While this may appear analogous on the surface, a closer reading reveals that the immunity analysis is inapposite.  The plaintiff in *Hamilton* sought monetary damages and asserted that judicial immunity did not apply because the judge acted beyond his jurisdiction.  *Id*. at *5.  This Court (J. White) disagreed because the judge was acting in his official capacity.  *Id*.  The Court summarily rejected Hamilton's claim for injunctive relief because he did not even argue that the language of § 1983 currently at issue applied there.  *Hamilton* simply did not examine the immunity issues now before this Court.  The other cases cited by the Judges are also inapposite.

13

*Dancer v. Haltom* involved an inmate's complaint under the Prison Litigation Reform Act where the pro se plaintiff did not allege that the prerequisites of § 1983 were met, and he had an adequate remedy at law.  4:10-CV-4118, 2010 WL 5071239, at *4 (W.D. Ark. Nov. 16, 2010).  *Taylor v. Smithart* likewise involved a pro se inmate's complaint that failed to plead the prerequisites of § 1983 (2:10-CV-1057-ID, 2011 WL 1188553, at *1 (M.D. Ala. Jan. 25, 2011)) and where the plaintiff could have sought relief in state court (2:10-CV-1057-ID, 2011 WL 1188697, at *2 (M.D. Ala. Mar. 1, 2011)).  *Howell v. Hofbauer* does not examine or even mention the relevant language of § 1983.  123 F. Supp. 2d 1178, 1185 (N.D. Iowa 2000).

Circuit courts have confirmed that declaratory relief *is* available against judicial officers in appropriate circumstances, as is injunctive relief when declaratory relief is unavailable or inadequate.  *Ward v. City of Norwalk*, 640 Fed. Appx. 462, 467 (6th Cir. 2016); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000).  *See also Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) (noting the district court's injunctive relief against other defendants but only declaratory judgment against the presiding state judge).

Nonetheless, the Judges assert that Plaintiffs are not entitled to declaratory relief in the present circumstances because they have an adequate remedy at law, namely by extraordinary writ in state court.  While it is generally true that a plaintiff is not entitled to equitable relief when there is an adequate remedy at law (*Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)), the Court cannot conclude, on dismissal standards, that Plaintiffs have an adequate remedy at law.  The very adequacy of the process afforded to Plaintiffs

14

goes to the heart of this case on the merits.  "The adequacy of the state court review of bail-setting procedures is essential to [plaintiff's] federal cause of action.  To find that plaintiffs have an adequate hearing on their constitutional claim in state court would decide its merits."  *O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018).  Of course, the adequacy of Plaintiffs' bond hearings and the adequacy of state writ proceedings to address any constitutional defects in those hearings are separate inquiries, which leads to the Judges' second theory in support of dismissal.

<u>Adequate Remedy / *Younger* Abstention</u>

To be entitled to declaratory or injunctive relief, a plaintiff must establish (1) a violation, (2) a serious risk of continuing irreparable injury if the relief is not granted, and (3) the absence of an adequate remedy at law.  *Bolin*, 225 F.3d at 1242 (reviewing a § 1983 claim against a federal judge).  The *Younger* abstention doctrine[3] instructs that courts should not exercise federal jurisdiction where "(1) there is an ongoing state proceeding,[4] (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding."  *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).  The Judges contend that the

---

[3]     The *Younger* abstention doctrine stems from the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37, 91 (1971), holding that a federal court should not enjoin a pending state criminal proceeding except when an injunction is necessary to prevent great and immediate irreparable injury.  *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 676 n.3 (8th Cir. 2013).  The Court's decision was based on equitable principles and respect for the fundamental role of States in our federal system.  *Id*.

[4]     For purposes of applying *Younger* abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed.  *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012).

*Younger* abstention doctrine precludes Plaintiffs' claim because an adequate remedy exists in the form of an extraordinary writ.  Mo. Sup. Ct. R. 33.09 (authorizing appellate review of an excessive bail order by remedial writ) and 84.24 (governing procedures for original writs).

In support of their argument, the Judges rely on *Oglala*, where the plaintiffs sought systemic procedural reform in child welfare proceedings.  904 F.3d at 606. Specifically, the *Oglala* plaintiffs alleged that temporary custody hearings occurring within 48 hours of removal did not provide an opportunity for parents to contest the allegations; rather, parents were forced to wait 60 to 90 days for a meaningful evidentiary hearing.  The district court granted declaratory and injunctive relief imposing certain procedural requirements (e.g., notice, right to counsel, right to cross-examine witnesses, evidenced-based decisions).  The Eighth Circuit reversed, holding that abstention was warranted because the reforms interfered with ongoing state proceedings and because the plaintiffs had not established that the state courts were unwilling or unable to adjudicate the plaintiffs' federal claims.  *Id*. at 612-613.  In reaching this conclusion, the Circuit Court discussed two Supreme Court cases involving pre-trial detention practices also relevant here: *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Gerstein v. Pugh*, 420 U.S. 103 (1975).

In *O'Shea*, the plaintiffs alleged that state court judges engaged in racially discriminatory practices in setting bonds, fees, and sentences.  The Supreme Court held that *Younger* abstention was warranted there because the injunction sought by the plaintiffs was "aimed at controlling or preventing the occurrence of specific events that

16

might take place in the course of future state criminal trials" and amounted to "an ongoing federal audit of state criminal proceedings." 414 U.S. at 500.   "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable."  *Id.*  The *O'Shea* Court also noted that adequate state remedies were available in the form of a change of judge or venue, direct appeal or post-conviction review, judicial discipline, or federal habeas relief.  *Id*. at 502.  By contrast, in *Gerstein v. Pugh*, post-arrest detainees sought injunctive relief to receive prompt probable cause determinations where Florida law did not provide for such hearings. There, the Supreme Court held that *Younger* abstention did *not* apply because the injunction was "not directed at the state proceedings as such, but only at the legality of pretrial detention without a judicial hearing.  The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits."  420 U.S. at 108, n. 9.

Comparing *O'Shea* and *Gerstein*, the Eighth Circuit in *Oglala* deemed *O'Shea* controlling in that the "relief requested [by the *Oglala* plaintiffs] would interfere with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements at future 48-hour hearings."  *Oglala*, 904 F.3d at 612.  "A federal court order dictating what procedures must be used in an ongoing state proceeding would 'interfere' with that proceeding by inhibiting the legitimate functioning of the individual state's judicial system."  *Id*. at 611.  The Circuit Court rejected the plaintiffs' assertion that state law lacked an adequate remedy, noting that state law provided for a writ of mandamus and right to appeal, and the state supreme court could review moot questions of public importance.  *Id*.  at 613.  Importantly, the *Ogala* court

17

distinguished its facts from *Gerstein*, where the plaintiffs could not raise the legality of their pre-trial detention in the criminal prosecution and thus did not have an opportunity to press their claims in state court.  *Id*. at 612-613.

This Court is not persuaded that the Eighth Circuit would apply its reasoning in *Oglala* to the present facts, particularly given the Circuit's characterizations of *O'Shea* and *Gerstein*.  In *O'Shea*, the plaintiffs challenged the underlying prosecutions and sought reforms at every stage from bond to sentencing, and the injunction "contemplate[d] interruption of state proceedings to adjudicate assertions of non-compliance."  *O'Shea*, 414 U.S. at 500.  Likewise in *Oglala*, the plaintiffs sought reforms permitting them to litigate the merits of the child welfare case at an earlier stage.  Conversely, in *Gerstein*, the plaintiffs sought reform (a hearing) at a finite stage (post-arrest) involving a discrete determination (probable cause) separate from the merits of the criminal prosecution.  Such is the case here, too.

In cases virtually identical to this one, other Circuits and district courts have not abstained from exercising jurisdiction.[5]  In *O'Donnell*, the plaintiffs brought a § 1983 action against various county officials, including judges and the sheriff, alleging that the county's bail practices resulted in the detention of indigent arrestees in violation of equal protection and due process.  892 F.3d at 152.  The Fifth Circuit rejected the defendants' *Younger* argument, citing *Gerstein* and explaining that the relief sought (i.e.,

---

[5]    *See e.g.*, *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015); *Little v. Frederick*, 6:17-CV-00724, 2017 WL 8161160 at *4 (W.D. La. Dec. 11, 2017); and *Caliste v. Cantrell*, CV 17-6197, 2017 WL 3686579, at *4 (E.D. La. Aug. 25, 2017).

improvement of pretrial procedures and practice) "is not properly reviewed by criminal proceedings in state court." *Id*. at 156.  "The adequacy of the state court review of bail-setting procedures is essential to O'Donnell's federal cause of action.  … To find that the plaintiffs have an adequate hearing on their constitutional claim in state court would decide its merits." *Id*.  Further, the "non-discretionary procedural safeguards" sought would "not require federal intrusion into pre-trial decisions on a case-by-case basis." *Id*.

The Eleventh Circuit, too, relied on *Gerstein* to conclude that *Younger* abstention does not apply where plaintiffs challenged the imposition of bail without an individualized determination of a person's ability to pay and alternative release conditions.  *Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018).  "*Younger* does not readily apply here because [plaintiff] is not asking to enjoin any prosecution. Rather, he merely seeks prompt bail determinations for himself and his fellow class members." *Id*. at 1254.  "Walker does not ask for the sort of pervasive federal court supervision of State criminal proceedings that was at issue in *O'Shea*.  Instead, as in *Gerstein*, Walker merely asks for a prompt pre-trial determination of a distinct issue, which will not interfere with subsequent prosecution." *Id*. at 1255.

Though neither *O'Donnell* nor *Walker* specifically discussed the adequacy of state writ relief as the Judges argue here, such avenues exist in Texas and Georgia as they do in Missouri.[6]  Missouri Supreme Court precedent recognizes that a judge is required to consider an individual defendant's financial resources and other relevant factors, and that

---

[6]      GA. CODE ANN. § 9-6-20 (providing for writs of mandamus); TEX. GOV'T. CODE ANN. § 22.002 (same).

bail should only be imposed when necessary to assure the defendant's court appearance

or the public's safety.  *State v. Jackson*, 384 S.W.3d 208, 216-217 (Mo. 2012) (declaring

cash-only bail constitutional).  But Defendants cite no Missouri precedent where an

appellate court has considered mandamus relief on these principles, and the Court's own

research reveals only scant and notably dated cases providing individual habeas relief.

*See e.g.*, *Ex parte Chandler*, 297 S.W.2d 616 (Mo. App. 1957).  The Court cannot

ascertain whether Missouri appellate courts have already considered and rejected

due process claims such as Plaintiffs', as summary denials are not published.  Mo. R. Civ.

P. 84.24(d) and (k).  While the Court appreciates the deferential confines of appellate

review, the lack of state jurisprudence examining Defendants' longstanding practices

suggests that a state writ remedy is only theoretical.  An illusory remedy cannot be an

adequate remedy.

        Moreover, the Judges' position that a pro se indigent arrestee must litigate the

constitutionality of his initial appearance and resultant bail by petition for extraordinary

writ under Missouri Supreme Court Rule 84.24 appears inadequate in the context of

Plaintiffs' grievance.  Centrally, Plaintiffs aver that they have neither funds nor counsel

to avoid weeks-long incarceration awaiting a meaningful hearing on their release

conditions.   To require a lay citizen to exhaust state writ proceedings from the

Workhouse is tantamount to a guaranty of his continued detention.  This is hardly an

adequate remedy for the injury Plaintiffs allege here, where the irreparable harm of

detention is not only immediate but also enduring due to ruinous collateral consequences.

"A necessary predicate for a *Younger* dismissal is the opportunity to raise and have *timely*

*decided* by a competent state tribunal the federal issues involved." *Yamaha Motor Corp.,*

*U.S.A. v. Riney*, 21 F.3d 793, 797 (8th Cir. 1994) (emphasis added).  That is not

happening in Defendants' system.  The Court therefore finds that the circumstances

prescribing *Younger* abstention are not present here.

For the foregoing reasons, the Judges' motion to dismiss will be denied.

<u>The City's Authority</u>

In its separate motion to dismiss, the City asserts that Plaintiffs fail to state a claim

against it because the City has no authority to set bail or release conditions; rather, such

authority lies with the Judges.  A municipal defendant advanced a similar argument,

unsuccessfully, in *Fant v. The City of Ferguson*, 4:15-CV-00253-AGF, 2016 WL

6696065 (E.D. Mo. Nov. 15, 2016).  There, as here, Plaintiffs do not seek to hold the City

liable for judicial decisions or practices.  Rather, Plaintiffs identify the City's own role in

violating class members' constitutional rights.[7]

"Section 1983 liability for a constitutional violation may attach to a municipality if

the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or

(3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.*,

829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

691 (1978) and *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  To survive a motion

to dismiss, a complaint need only allege facts sufficient to draw an inference that the

---

[7]     Though *Fant* involved municipal court whereas this case involves state circuit court, the distinction is not material to the analysis here.  In both cases, by attempting to shift the focus to judicial discretion, the defendants fail to acknowledge their own independent actions, completely separate from the judicial process.  *Fant*, 2016 WL 6696065 at *6.

conduct complained of resulted from an unconstitutional policy or custom. *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).  A plaintiff may establish liability through an unofficial custom by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Corwin*, 829 F.3d at 700 (citations omitted).

Plaintiffs here allege that "pursuant to a policy or practice of the sheriff's office, deputies inform detained individuals that they are not allowed to speak or request a change in their release conditions during the first appearance."  The complaint also incorporates multiple arrestees' declarations stating that deputies instructed them not to speak at their first appearances.  Thus, separate from the Judges' role in Plaintiffs' injury, Plaintiffs plead with respect to the City itself: (1) the existence of a pattern, (2) the sheriff's authorization, and (3) the deprivation of an opportunity to be heard.

Equally separate from the Judges' bail-setting authority, Plaintiffs seek to enjoin the sheriff and jail commissioner from enforcing unconstitutional bail orders by detaining arrestees deprived of a meaningful hearing.  It is well-established that a suit for injunctive or declaratory relief is cognizable against an official charged with enforcement of the challenged law.  *Ex parte Young*, 209 U.S. 123, 157 (1908); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (enjoining a highway patrol superintendent from enforcing a

state statute); *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (enjoining a sheriff from enforcing unconstitutional eviction orders).  Other courts have granted such relief against custodial officials on similar facts.  For example, in *McNeil v. Community Probation Services, LLC*, the district court reasoned that the sheriff could be enjoined from enforcing unconstitutional bail orders because he had an independent duty to refrain from violating the Constitution.  1:18-CV-00033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019).  In *Buffin v. City & County of San Francisco*, the district court denied a sheriff's motion to dismiss with respect to injunctive relief where the sheriff detained arrestees who were unable to pay bail set by the court.  15-CV-04959-YGR, 2016 WL 6025486, at *9 (N.D. Cal. Oct. 14, 2016).  Even in *O'Donnell* where the Harris County sheriff was not considered a policy-maker under Texas law, the Fifth Circuit authorized the sheriff to decline to enforce bail orders absent a record reflecting an individual determination and an opportunity for review.  892 F.3d at 165.

Plaintiffs plead that Sheriff Betts has authority over arrestees in City custody at the time of their first appearance and that Jail Commissioner Glass enforces pre-trial detention orders.  Without deciding at the dismissal stage whether or what relief is proper with respect to these City Defendants, the Court cannot conclude that they are entitled to dismissal for failure to state a claim.  As such, the City Defendants' motion to dismiss will be denied.[8]

---

[8]     The City Defendants also contend, in their motion to dismiss, that Plaintiffs fail to state a claim against the City and Sheriff Betts for the alleged custom and practice of silencing arrestees at their initial video appearances.  The parties have stipulated not to litigate this issue at the preliminary injunction stage.  ECF No. 92.  Pursuant to their

**Preliminary Injunction**

Proceeding to the merits of Plaintiffs' motion, when determining whether to issue a preliminary injunction, the court considers: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

<u>Likelihood of Success on the Merits</u>

"While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). When assessing the movant's probability of success on the merits, the court asks whether the movant has a "fair chance of prevailing." *D.M.*, 917 F.3d at 999. This standard does *not* require a movant to show a likelihood of success greater than fifty percent. *Id.*

Plaintiffs contend that Defendants' procedures violate equal protection and due process because Defendants failed to make findings about an arrestee's ability to pay before setting bail. Federal courts have repeatedly held that jailing persons who are unable to pay a court-ordered fine, *after a conviction*, without first inquiring into their ability to pay and considering alternatives to imprisonment, violates the Due Process and Equal Protection Clauses. "[T]he Constitution prohibits the State from imposing a fine as

---

agreement, Sheriff's deputies will be instructed not to tell arrestees to be silent at their first appearance. More particularly, deputies will not discourage arrestees from asking questions or seeking bond reductions.

a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short,* 401 U.S. 395, 398 (1971). "By sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turned a fine into a prison sentence" in violation of the Fourteenth Amendment. *Bearden v Georgia*, 461 U.S. 660, 674 (1983).

Plaintiffs submit that the detention, *before trial*, of arrestees who are presumed innocent is even more egregious. Indeed, the Fifth Circuit recently affirmed in *O'Donnell* that "detainment solely due to a person's indigency because the financial conditions for release are based on predetermined amounts beyond a person's ability to pay and without any 'meaningful consideration of other possible alternatives'" is discriminatory and unconstitutional. 892 F.3d at 161 (citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (holding that pretrial imprisonment solely because of indigent status violates due process and equal protection)). This Court and other district courts throughout the country have reached the same conclusion.[9]

---

[9]      *See e.g., Pierce v. City of Velda City*, 4:15-CV-570-HEA, 2015 WL 10013006 (E.D. Mo. June 3, 2015); *McNeil v. Cmty. Prob. Services, LLC*, 1:18-CV-00033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019); *Jones v. The City of Clanton*, 215CV34-MHT, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015); *Schultz v. State*, 330 F. Supp. 3d 1344 (N.D. Ala. 2018); *Edwards v. Cofield*, 3:17-CV-321-WKW, 2017 WL 2255775 (M.D. Ala. May 18, 2017); *Thompson v. Moss Point*, 1:15CV182LG-RHW, 2015 WL 10322003 (S.D. Miss. Nov. 6, 2015); *Cooper v. City of Dothan*, 1:15-CV-425-WKW, 2015 WL 10013003 (M.D. Ala. June 18, 2015); *Snow v. Lambert*, CV 15-567-SDD-RLB, 2015 WL 5071981 (M.D. La. Aug. 27, 2015).

In fact, Defendants firmly agree that excessive bail is unconstitutional, that a person cannot be imprisoned solely due to indigence, and that federal and state law require a prompt and individualized determination of pre-trial release conditions. The Court need not expound on these accepted principles. Defendants assert, however, that existing procedures are constitutionally adequate both as written in the Missouri Rules of Civil Procedure and as practiced in the 22nd Circuit.

Missouri Rule 33.01 provides that "any person charged with a bailable offense shall be entitled to be released pending trial." Mo. R. Civ. P. 33.01(a). "The court shall in all cases release the accused upon his written promise to appear, unless the court determines that such release will not reasonably assure the appearance of the accused," in which case the court may impose release conditions including supervision, restrictions on travel, domicile, and associations, reporting requirements, or bond. Mo. R. Civ. P. 33.01(d). Most notably:

> In determining which conditions of release will reasonably assure appearance, the court shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character, mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings.

Mo. R. Civ. P. 33.01(e). Recent revisions to this rule and new related provisions will take effect July 1, 2019, adding that: (1) a court should first consider non-monetary release conditions and only the least restrictive conditions as will secure the defendant's

appearance at trial; (2) a court may order detention only upon clear and convincing evidence that other release conditions will not secure the safety of the community or other persons; (3) a detained defendant has a right to a release hearing within seven working days to present evidence of his financial status and ability to pay, and (4) at any hearing under Rule 33, the court must make findings on the record supporting detention or other conditions.[10]

But Defendants' recognition of precedent and citation to written rules do not evidence the constitutional adequacy of the process afforded to Plaintiffs and other class members. The gravamen of Plaintiffs' complaint is that Defendants do not actually apply those principles or rules in practice. Ample evidence in the record shows that the duty judge presiding over initial appearances rarely considers information about an arrestee's financial circumstances because the bond commissioner rarely provides it and arrestees are instructed not to speak. Plaintiffs submit multiple declarations by arrestees who were instructed not to speak at their initial appearance.[11]   ECF No. 41 Ex. 1, 2, 3, 4, 9, 10, 17, 18. In the random sample of 222 cases reviewed by law student Elizabeth Forester

---

[10]     The impending rule change does not render this case moot. Even voluntary cessation of a challenged practice, such as the City's stipulation that deputies will no longer instruct arrestees not to speak, does not deprive a federal court of its power to determine the legality of the practice. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). If it did, a defendant could "return to its old practices without fear of reprisal." *Id*. Given Defendants' systemic non-compliance with the more lenient standards of the current rule, Defendants' operational capacity to satisfy the higher standards of the new rule remains to be seen.

[11]     As one example: "The Sheriffs escorted me and the group of people to see a judge … through a video screen. The Sheriff told me, 'Do not talk to the judge.' They said, 'Nobody talk or ask questions. We are just trying to get it done.'"  ECF No. 41 Ex. 10.

shortly before this lawsuit was filed, the bond commissioner interviewed only nine

defendants (i.e., 4%), and only five of the nine reports from those interviews (i.e., 2%

overall) contained information relevant to the person's ability to pay.  ECF No. 83 Ex. 1.

Thus, in roughly 98% of sampled cases, the duty judge set bail without *any* information

on this constitutionally critical factor.  The 164 pre-trial release reports contained in the

sample reflect, almost universally, that the form is completed only with respect to a

person's pending charges and criminal history, while sections related to his family ties,

employment, financial resources, character, mental condition, and length of residency in

the community are left blank.  ECF No. 83 Ex. 2.   Forester stated in a declaration, based

on her observations of first appearances on February 1, 2019, that such appearances

lasted approximately 45-60 seconds and that the judge did not solicit any information

about arrestees' ability to pay, silenced those who asked questions, told those requesting

reduction to wait for an attorney to file a motion, and never modified the fixed bail

amount.  ECF No. 41, Ex. 5.  District Defender Mary Fox, who observes initial

appearances on a regular basis, confirmed in her declaration that judges do not inquire

into an arrestee's ability to pay or other factors.  ECF No. 93, Ex. 2.  These practices do

not comport with applicable Supreme Court and Circuit precedent.

　　　Defendants' evidence consists of two affidavits of a bond officer supervisor,

Donald Kearbey, generally describing the bail-setting process.  ECF Nos. 59 and 91,

Ex. 1.  Kearbey explains that bond is fixed when an arrest warrant is issued, the bond

commissioner interviews arrestees (which Plaintiffs' data credibly belies), and the judge

reviews the commissioner's recommendation and decides whether to modify conditions.

The first affidavit does little to refute Plaintiffs' evidence that arrestees have no opportunity to be heard and that the court conducts no individual inquiry as to a person's ability to pay and alternatives to detention.  ECF No. 59, Ex. 1.  In his supplemental affidavit, Kearbey adds that the court does allow arrestees to speak to request bond reductions.  When they do, the court responds by advising them to obtain counsel and file a motion.  ECF No. 91, Ex. 1.  Kearbey explicitly confirms that arrestees who can post bail are allowed to leave immediately, and those who cannot are detained.  ECF No. 59, Ex. 1.  This is precisely what Plaintiffs lament and what federal precedent prohibits.  "[I]mprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible."  *Pugh*, 572 F.2d at 1056 (citing *Williams v. Illinois*, 399 U.S. 235 (1970), and *Tate*, 401 U.S. at 398).

Though Defendants advocate for rational basis review, this Court agrees with other courts that have applied heightened scrutiny.  *See e.g., O'Donnell*, 892 F.3d at 162 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973)); *Buffin*, 2018 WL 424362 at *8 (stating that "an examination of the *Bearden-Tate-Williams* line of cases persuades the Court that strict scrutiny applies.").  But even under rational basis review, Defendants' practices fall short of constitutional standards in that Defendants fail to articulate *any* governmental interest in detaining indigent defendants while releasing moneyed defendants facing the same charges, without any consideration of individual

factors.  The foregoing evidence persuades the Court that Plaintiffs have a high probability of prevailing on the merits.[12]

However, Plaintiffs have not supplied binding authority supporting their demand for appointed counsel at initial appearances.  The Court will not grant their prayer for preliminary relief in that respect.

<u>Remaining Factors</u>

The Court finds that the remaining *Dataphase* factors weigh heavily in Plaintiffs' favor.  Plaintiffs' evidence from Forester's random sample of 222 cases indicates that only about half of arrestees unable to post bail receive a bond reduction hearing, and even then only after an average of 47 days in detention, after which 69% receive a reduction or are released on their own recognizance.  ECF No. 93, Ex. 3.  The threat of irreparable harm to the movants is obvious, not only in the form of prolonged incarceration itself, but also in the form of its severe collateral consequences such as physical illness and injury,[13] mental trauma,[14] loss of employment,[15] loss of benefits,[16] and family crisis.[17]

---

[12]    Defendants also argue that Plaintiffs should seek relief by petition for habeas corpus rather than under § 1983.  This theory is predicated on Defendants' characterization that Plaintiffs seek wholesale, unconditional release of all class members, which is inaccurate.  Plaintiffs do not seek blind, class-wide release; rather, they seek individualized determinations of release conditions with a presumption *against* bail, as opposed to bail as the default rule for all.  As discussed above, ample federal precedent recognizes a § 1983 claim on the present facts.

[13]    ECF No. 41, Ex. 9 & 28 (witnessed guards mace a detainee who asked for his medication), Ex. 14 (serious health issues, missing medication and doctor appointments), Ex. 17 (maced by guard while in chokehold), Ex. 22 (missed medication, dragged down stairs).

[14]    ECF No. 41, Ex. 26 ("In here, a lot of people want to commit suicide.").

Next, the Court must balance these threats of irreparable harm against potential

harm to other litigants.  On this factor, Defendants argue that the state court will suffer

harm in the form of federal court interference.  The Court has already rejected

Defendants' *Younger* argument and does not find it persuasive here.  As more fully

discussed above, this Court is not reviewing the underlying state criminal charges or

interfering in any manner with the state processes that apply to the merits of those

charges.

Finally, a preliminary injunction would not jeopardize the public interest.  To the

contrary, it is always in the public interest to prevent the violation of a party's

constitutional rights.  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  That is

especially true here, where the collateral consequences of incarceration affect not only

arrestees but also, by ripple effect, the stability of their entire families and thus the

community.  Defendants provide no support for the suggestion that arrestees released

---

[15]   ECF No. 41, Ex. 1 (terminated from warehouse job), Ex. 7 (missed a job
interview), Ex. 9 ("I had a good job before I was arrested. … I feel like I am losing
everything in here."), Ex. 10, 15, 16, 18.

[16]   ECF No. 41, Ex. 8 & 14 (food stamps).

[17]   Numerous declarations depict extreme hardship on arrestees' families due to the
detention of breadwinners, parents, and other caregivers.  ECF No. 41, Ex. 1 (caregiver
for sick uncle), Ex. 9 ("Is it my role to protect my sister and her son. … My girlfriend is
also relying on me.  Since I've been arrested, her utilities were shut off.  She has a two
year old child …and there's nothing I can do for them."), Ex. 13 (loss of head of
household, caregiver, school driver), Ex. 14 (loss of primary parent to three small
children – "We didn't know where she was until she was able to call us about six days
after she went missing."), Ex. 15 (loss of primary financial provider); Ex. 16 (sister and
nephews homeless), Ex. 19 & 20 (loss of caregiver for sister with cancer and multiple
extended family members, children), Ex. 21, 24 ,25 (loss of caregiver and primary
transportation), Ex. 26.

without bail are more likely to commit crimes or less likely to appear in court than those released upon payment.  Further, as other courts have observed, there is no evidence that financial conditions of release are more effective than alternatives for ensuring court appearances and public safety.  *O'Donnell*, 892 F.3d at 154 (noting "reams of empirical data" suggesting the opposite); *McNeil*, 2019 WL 633012 at 14-15 (noting statistics showing a high rate of court appearance for those released and higher rates of recidivism among those detained); *Schultz*, 330 F. Supp. 3d at 1363 (citing New York data that 95% of arrestees whose bail was paid by non-profit organizations made their court appearances).  Here, Plaintiffs offer statistics from The Bail Project of St. Louis reflecting that 94.4% of defendants for whom the organization paid bail made their scheduled court appearances.[18]   ECF No. 41, Ex. 29.  Defendants' position is further belied by the fact that, as noted above, at bond reduction hearings, 69% of detainees received a reduction or were released on their own recognizance.  Moreover, Plaintiffs do not request wholesale release of all class members but simply a presumption favoring non-monetary release conditions and a hearing that comports with due process.

Upon careful consideration of all *Dataphase* factors, the Court concludes that Plaintiffs' motion for preliminary injunction is meritorious and should be granted.

---

[18]   Plaintiffs' evidence from The Bail Project further indicates that, in the City of St. Louis, 53.4% of resolved cases ended in dismissal of all charges.  Almost 3/4 of the project's clients are African-American.  The average age is 32, and over one third have minor children.  ECF No. 41, Ex. 29.

<u>Waiver of Security</u>

Finally, Plaintiffs request a waiver of the security normally required under Rule 65(c).  Given that Plaintiffs and class members are indigent and that this matter involves the public interest and carries no risk of monetary loss to Defendants, the Court exercises its discretion to waive that requirement.  *Johnson v. Bd. of Police Comm'rs*, 351 F. Supp. 2d 929, 952 (E.D. Mo. 2004) (waiving security in a civil rights case brought by indigent plaintiffs).

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification is **GRANTED**.  ECF No. 3.  The class shall consist of "all arrestees who are or will be detained in the Medium Security Institution (the Workhouse) or the City Justice Center (CJC), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition."  Plaintiffs' counsel is appointed counsel for the class.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss are **DENIED**. ECF Nos. 49 and 51.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for preliminary injunction is **GRANTED**.  ECF No. 41.  Defendant Jail Commissioner Dale Glass is enjoined from enforcing any monetary condition of release that results in detention solely by virtue of an arrestee's inability to pay, unless the order is accompanied by a finding that detention is necessary because there are no less restrictive alternatives to ensure the arrestee's appearance or the public's safety.  The order must reflect that: (1) a hearing was held on

33

the record within 48 hours of arrest or, for those currently detained, within seven days of this order; (2) the arrestee had an opportunity to present and rebut evidence as to whether detention is necessary, with the government bearing the burden of proof; and (3) if financial conditions of release are imposed, the court made specific findings regarding the arrestee's ability to pay and found, by clear and convincing evidence, that no alternative conditions would reasonably assure the arrestee's future court appearance or the safety of others.

**IT IS FURTHER ORDERED** that the security requirement of Rule 65(c) is waived.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2019.