IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

DAVID DIXON, et al.,                              )
                                                  )
            Plaintiffs,                           )
                                                  )
v.                                                )      Case 4:19-cv-00112-AGF
                                                  )
CITY OF ST. LOUIS, et al.,                        )
                                                  )
            Defendants.                           )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
A PRELIMINARY INJUNCTION**

Plaintiffs respectfully move this Court to re-issue a preliminary injunction in this

case. When Plaintiffs filed this lawsuit, they challenged Defendants' practice—in violation of

the Fourteenth Amendment and the Missouri Supreme Court Rules—of imposing monetary

conditions of release that resulted in the detention of hundreds of arrestees without first

providing those arrestees a hearing or determining that detention was necessary to advance a

compelling state interest.

One year and two rounds of amendments to the Missouri Supreme Court Rules later,

little has changed. Defendant Judges continue to deny arrested individuals notice or a

meaningful opportunity to be heard when setting conditions of release. Defendant Judges

also continue to regularly set monetary conditions of release (cash bond) unlawfully, either

without first considering the individual's ability to pay the amount set or by setting cash

bond in amounts obviously above what the individual can pay. As this Court concluded—

and the Eighth Circuit did not question—these practices violate the constitutional rights of

the Plaintiff class. The harms of detention, moreover, extend beyond arrestees and have

"ripple effect[s]" that undermine "the stability of [arrested individuals'] entire families and

thus the community." June 11, 2019 Memo. & Order, ECF No. 95, at 31. These

considerable negative consequences of Defendants' practices demonstrate that an injunction would serve the public interest.

No countervailing interests outweigh the public benefits of the requested relief. Although the Eighth Circuit vacated the preliminary injunction in this case, it did so only because it concluded that this Court did not fully account for principles of comity in evaluating whether the public interest supported an injunction. Consideration of those principles would not have changed the result. As the Eighth Circuit explained, an evaluation of the principles of comity necessarily requires taking account of not just the existence of the revised Missouri Supreme Court Rules, but also "their implementation." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020). The detention practices now in effect violate the amended Rules just as Defendants' original practices did. Because Defendants are violating not only the Constitution, but also Missouri's own rules, the requested injunction would do little to undermine federal-state relations.

Accordingly, because a preliminary injunction would be in the public interest, and because this Court's earlier ruling resolves the remaining preliminary injunction factors, this Court should grant Plaintiffs' motion.

I.   **THE PUBLIC INTEREST SUPPORTS AN INJUNCTION BECAUSE DEFENDANTS CONTINUE TO DETAIN ARESTEES IN VIOLATION OF THE MISSOURI SUPREME COURT RULES AND THE CONSTITUTION.**

It has long been recognized that jailing someone solely because of poverty violates the Constitution. Almost 40 years ago, the Supreme Court made clear that a court violates the Fourteenth Amendment where it sentences an individual to imprisonment "simply because he could not pay [a] fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders." *Bearden v. Georgia*, 461 U.S. 660, 674 (1983); *see also Tate v. Short*, 401 U.S. 395, 398

(1971) ("[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.").

Such actions are even more egregious when they involve the detention of pretrial arrestees who are presumed innocent. Several appellate courts recently have held that the detention of a *pretrial* arrestee without meaningful consideration of that person's indigence or other possible alternative conditions of release is unconstitutional. *ODonnell v. Harris Cty.*, 892 F.3d 147, 160 (5th Cir. 2018) (citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (holding that pretrial imprisonment solely because of indigent status violates due process and equal protection); *Brangan v. Commonwealth*, 80 N.E.3d 949, 963 (Mass. 2017); *see also United States v. Leisure*, 710 F.2d 422, 425 (8th Cir. 1983) ("[S]etting of bond unreachable because of its amount would be tantamount to setting no conditions at all."). This Court and other district courts throughout the country have reached the same conclusion.[1]

Defendants have never contested that a person cannot be detained solely due to indigence, or that federal and state law require a prompt and individualized determination of pretrial release conditions. June 11, 2019 Memo. & Op., ECF No. 95, at 26. Their sole factual claim at the time of the original motion for preliminary injunction was that Defendants' practices were constitutionally adequate and in compliance with the Missouri Supreme Court Rules. *Id.* at 26. They were not. In fact, this Court found that Defendants

---

[1] *See e.g.*, *Pierce v. City of Velda City*, 4:15-CV-570-HEA, 2015 WL 10013006 (E.D. Mo. June 3, 2015); *McNeil v. Cmty. Prob. Servs., LLC*, 1:18-CV-00033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019); *Jones v. City of Clanton*, 215CV34-MHT, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015); *Schultz v. State*, 330 F. Supp. 3d 1344 (N.D. Ala. 2018); *Edwards v. Cofield*, 3:17-CV-321-WKW, 2017 WL 2255775 (M.D. Ala. May 18, 2017); *Thompson v. Moss Point*, 1:15CV182LG-RHW, 2015 WL 10322003 (S.D. Miss. Nov. 6, 2015); *Cooper v. City of Dothan*, 1:15-CV-425-WKW, 2015 WL 10013003 (M.D. Ala. June 18, 2015); *Snow v. Lambert*, CV 15-567-SDD-RLB, 2015 WL 5071981 (M.D. La. Aug. 27, 2015).

showed a pattern of "systemic non-compliance" with the Rules. *Id.* at 27 & n. 10.

Since that time, amendments to the Missouri Supreme Court Rules governing conditions of release have gone into effect. Missouri's Chief Justice explained that the amendments were driven by the reality that "[t]oo many who are arrested cannot afford bail even for low-level offenses and remain in jail awaiting a hearing"; the amended Rules were designed to ameliorate that problem by "ensur[ing] the determinations—and conditions—of pretrial release are made with the best information available."[2]

The Missouri Supreme Court Rules create a clear rebuttable presumption that arrestees should be released pending trial. "A defendant charged with a bailable offense shall be entitled to be released from custody pending trial or other stage of the criminal proceedings."[3] Mo. Sup. Ct. R. 33.01(a). The Rules require that an arrestee be released on his or her own recognizance *unless* the court finds that "such release will not secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses." Mo. Sup. Ct. R. 33.01(c). Even when such a finding is made, the court is still required to impose the least restrictive condition or combination of conditions for release. *Id.* (The court "*shall* first consider non-monetary conditions.") (emphasis added). Only upon a finding that non-monetary conditions will not ensure the appearance of the arrestee or the

---

[2] Chief Justice Zel M. Fischer, State of the Judiciary (Jan. 30, 2019), *available at* https://www.courts.mo.gov/page.jsp?id=136253.

[3] "The defendant's release shall be upon the conditions that: (1) The defendant will appear in the court in which the case is prosecuted or appealed, from time to time as required to answer the criminal charge; (2) The defendant will submit to the orders, judgment and sentence, and process of the court having jurisdiction over the defendant; (3) The defendant shall not commit any new offenses and shall not tamper with any victim or witness in the case, nor have any person do so on the defendant's behalf; and (4) The defendant will comply fully with any and all conditions imposed by the court in granting release." Mo. Sup. Ct. R. 33.01(b).

safety of the community may monetary conditions be considered. *Id.* Even then, before

setting any monetary condition, the court must first consider the arrestee's ability to pay; the

Rules are clear that a monetary condition fixed at more than is necessary to secure the

appearance of the defendant at trial or the safety of the community "is impermissible." *Id.*

Any determination regarding bail must be based on the individual circumstances of

the arrestee:

> Based on available information, the court *shall* take into account: the nature
> and circumstances of the offense charged; the weight of the evidence against
> the defendant; the defendant's family ties, employment, financial resources,
> including ability to pay, character, and mental condition; the length of the
> defendant's residence in the community; the defendant's record of
> convictions; the defendant's record of appearance at court proceedings or
> flight to avoid prosecution or failure to appear at court proceedings; whether
> the defendant was on probation, parole or release pending trial or appeal at
> the time the offense for which the court is considering detention or release
> was committed; and any validated evidentiary-based risk assessment tool
> approved by the Supreme Court of Missouri.

Mo. Sup. Ct. R. 33.01(e) (emphasis added).

Alternatively, if the court determines upon clear and convincing evidence that it is

necessary for a person to remain detained in order to ensure their appearance or the

community's safety, the court "shall order the defendant detained pending trial." *Id.* 33.01(d).

Any such individual detained without bond is entitled to request a trial be held within 120

days. *Id.*

Based on over 580 in-person court observations,[4] as well as a review of the initial

---

[4] Plaintiffs implemented a court observation program in Spring 2019. After the Court issued
its preliminary injunction, Plaintiffs significantly expanded their court observation program.
Court observers included a combination of ArchCity Defenders' staff, legal interns, and
undergraduate interns. *See* Ex. 1, Decl. of Shannon Besch ¶ 3. Court observers sat in the
courtroom and contemporaneously documented specific information about what was said
during each hearing, including but not limited to: the individual's name and case number; the
bond at the beginning and end of the hearing; and whether the judge obtained any
information about the person's ability to pay a cash bond, employment status, housing

appearance orders for the month of February, it is apparent that Defendants are not in compliance with either the language or intent of the amended Rules. Most relevant here, Defendant Judges continue, just as at the time this action was filed, to regularly set cash bond amounts in a manner that violates both the Constitution and the Missouri Supreme Court Rules. This process starts as early as the issuance of a warrant. If an individual is arrested on a warrant, the conditions appear on the warrant and are based solely on the offense charged and the individual's criminal history. If the individual is arrested without a warrant, a judge sets conditions of release shortly after arrest. Although representatives of the Pretrial Release Commissioner's Office are permitted to interview arrested individuals prior to the judge setting conditions of release, in practice, they often fail to do so. *See infra* at 8. As a result, judges also regularly base conditions of release for warrantless arrests only on the offense charged and criminal history. Ex. 2, Example Warrants and Pretrial Release Commissioner's Reports. Where those conditions require cash bond to be posted, individuals who can afford to pay can be released immediately; individuals who cannot remain detained.

Those who remain detained ordinarily are provided an initial appearance—via video conference only—within 48 hours of arrest. Because the Rules exclude weekends and holidays, however, it is not unusual for arrestees to be held for longer.  Mo. Sup. Ct. R. 22.07; *id.* 21.09; *see also* Ex. 3, Decl. of Kenneth M. Williams ¶¶ 3-4. At the initial appearance, Defendant Judges are required to consider the conditions for an arrestee's release anew. Prior to the initial appearance, however, arrestees are given no notice about any of the

---

situation or dependents, and physical and mental health. *See id.* ¶ 5. In addition, initial hearing dockets were reviewed for all but one day in February, along with the related initial appearance orders. *Id.* ¶ 11. By the time the error was realized, the confined docket was no longer available on Casenet.

factors the judge will consider when making that decision, such as their ability to pay, flight risk, danger to the community, employment, family ties, or other relevant considerations. *Id.* ¶¶ 5-6. Thus, the arrestee is given no opportunity to prepare or marshal evidence for the hearing.

Further, Defendant Judges continue to limit the arrestee's ability to communicate with the court during the hearing. At the start of the initial appearance, Defendant Judges designate a contract attorney[5] for the limited purpose of speaking on behalf of the arrestee during the initial appearance. The contract attorney, however, is not permitted to meet with the arrestee prior to the initial appearance. *See* Ex. 10, Decl. of Matthew Mahaffey ("Mahaffey Decl.") ¶¶ 5, 7-8; Def. Judges' Factual Statement, ECF No. 156, at 3. And because the arrestees are not physically present for the hearing, the attorneys have no chance to communicate privately with them at any time during the hearing. *See* Ex. 10, Mahaffey Decl. ¶ 7. Although Defendant Judges claim these attorneys "have been afforded" an opportunity to clear the courtroom "when necessary" to speak with the client, ECF No. 156 at 3, it is clear from court observations that this is exceedingly rare. Not once during the 580 initial appearances observed as part of Plaintiffs' court observation program did an observer note that the judge cleared the courtroom. Ex. 1, Decl. of Shannon Besch ("Besch Decl.") ¶ 7; Ex. 4, Decl. of Ariel Troy ("Troy Decl.") ¶ 7. Likewise, an independent court observer who witnessed 255 initial appearances between September 9, 2019, and March 2, 2020, never once saw the courtroom cleared. Ex. 5, Decl. of Jane Dusselier ("Dusselier Decl.") ¶ 7.

---

[5] When the amended Rules took effect, the 22nd Judicial Circuit began designating private attorneys to appear for the limited purpose of representing detainees at initial appearances pursuant to Rule 33.01. These "contract attorneys" represent everyone on a detention docket for whom no public defender or private attorney has entered an appearance. *See* Ex. 10, Mahaffey Decl. ¶ 4. The contract attorneys do not represent the detainee either before or after the 33.01 hearing. *See id.*

In reality, the only contact the attorney has with the arrestee is through the videoconference during the hearing itself—in open court, in front of the prosecutor, judge, court staff, and public attendees. *See* Ex. 4, Troy Decl. ¶ 5; Ex. 5, Dusselier Decl. ¶ 6. And until January of this year, that video conference allowed the arrestee to see the judge only, not the contract attorney.[6] *See* Ex. 4, Troy Decl. ¶ 5; Ex. 5, Dusselier Decl. ¶ 6. As a result, the contract attorneys cannot obtain, let alone present to the judge, evidence related to the arrestee's ability to afford bail, evidence mitigating any claims of danger to the public or rebutting any evidence presented by the prosecution, evidence addressing whether the individual is likely to appear at the next court date, or any other evidence particular to that individual client. Ex. 10, Mahaffey Decl. ¶ 8.

Defendant Judges suggest that contract attorneys "generally" can access information through the reports the Pretrial Release Commissioner's Office creates. April 6, 2020 Factual Statement, ECF 156 at 3. However, a review of 145 cases[7] in which monetary conditions of release were imposed reveals that in the cases where Pretrial Release Commissioner reports were filed (which is not all cases), only half of the reports contained any financial information, and those that did were often limited to a single word such as "unemployed." Ex. 1, Besch Decl. ¶ 12.

Moreover, although Defendant Judges have represented that Pretrial Release Commissioner interviews have "been increasing over time," ECF No. 156 at 2, a review of the same 145 cases shows the opposite. The percentage of cash bond orders entered with

---

[6] It wasn't until sometime in January 2020 that a camera was installed to allow arrestees to see the other individuals in the courtroom besides the judge, including their designated attorney. Ex. 5, Dusselier Decl. ¶ 6.

[7] The 145 cases are a combination of initial appearances observed between July 1, 2019, and December 13, 2019, and initial appearance orders entered in February 2020. Ex. 1, Besch Decl. ¶ 12.

either no Pretrial Release Commissioner report or a report that contained no financial information actually increased from 35 percent in the fall of 2019 to 44 percent during the month of February 2020. Ex. 1, Besch Decl. ¶ 12.b. Thus, Defendant Judges' claim that contract attorneys do not need to meet with detainees in person because they can access all of the information from the Pretrial Release Commissioner's report is unsupportable.[8]

Because the system Defendant Judges have established prevents the contract attorneys from gathering relevant evidence, the attorneys often simply come to agreements about bond amounts with the assistant circuit attorney without ever having met or conferred with the arrested person, and inform the client of the amount agreed to only in open court. *See* Ex. 4, Troy Decl. ¶¶ 9-10. When judges accept these agreements, without any further inquiry and with the knowledge that they were not and could not have been the product of any conversation with the arrested person, these judges are failing to make the preliminary findings required by the Rules—that releasing someone on their own recognizance will not secure their appearance or the safety of the community. *See* Mo. Sup. Ct. R. 33.01(c). They also fail to "first consider non-monetary conditions" or to impose monetary conditions only *after* considering evidence of the arrestee's ability to pay, as required by the Rules. *See also* Ex. 4, Troy Decl. ¶ 13; *infra* at 10-11.

Further, Defendant Judges regularly fail to set the "least restrictive" conditions for release or to impose a financial condition only "*[a]fter* considering the [arrestee's] ability to pay," as required by the amended Rules. Mo. Sup. Ct. R. 33.01(c) (emphasis added). A court cannot set the least restrictive condition of release if it lacks the information necessary to

---

[8] Even were the Pretrial Release Commissioner's reports to contain financial information, it still would not resolve the problem. The attorneys would remain unable to discuss with the arrestee the facts of the probable cause statement, any issues relating to the arrestee's ability to appear for court, or the other factors listed in Rule 33.01(e).

make that determination. In 24 percent of the observed initial appearances that resulted in a

cash bond being set, zero information was presented regarding the individual's ability to pay.

Ex. 1, Besch Decl. ¶ 8.a. And in an additional 49 percent of cases resulting in cash bond, the

judge set bond in an amount higher than what the available information revealed the arrestee

could afford. *Id.* ¶ 8.b. Thus, in 73 percent of observed cases, the judge either had no

information to "consider" or set the amount at "more than is necessary." Either way, the

practice violates Rule 33.01(c) and undermines the chief purpose of the Missouri Supreme

Court's reforms. Examples of this practice include:

- The arrestee told the judge she had been homeless since age 13. The Pretrial Release Commissioner's report listed "unemploy[sic] 2 mths" under employment and "unknown" under the section for financial resources. No other financial information was provided to the judge. The judge found her indigent and told her to apply for a public defender. The judge then set bond at $35,000, 10 percent.[9]

- The judge was informed that the arrestee was homeless. The Pretrial Release Commissioner's report states "unemployed since 7/2019" (over three months) under employment and "none" under the section for financial resources. No other financial information was obtained during the hearing. The judge then set bond at $20,000, 10 percent.

- The arrestee stated during the hearing that he could pay $1,000. No Pretrial Release Commissioner's report was submitted to the court, but other information in the court file indicated that the arrestee was unemployed. Bond was set at $30,000, cash only. The arrestee was not released until after the Rule 33.05 hearing seven days later, when bond was reduced to $10,000, 10 percent, the amount he said he could pay at the initial hearing.[10]

- The judge asked about work history, and the arrestee informed the judge that he worked 40 hours per week making $10 per hour ($400 per week) and had three children. The Pretrial Release Commissioner's report did not contain any additional information. The judge set the bond amount at $30,000, 10 percent, commenting "if you somehow make this . . . ."

---

[9] When a bond is set at "10 percent," an individual must post at least 10 percent of the total—in this example $3,500—as security to be eligible for release.
[10] Rule 33.05 requires the court to review within seven days the conditions of release of any individual who is detained after their initial appearance.

- The original warrant set bond at $100,000 cash only. No information was presented at the initial hearing about the arrestee's financial situation, although the Pretrial Release Commissioner's report indicated he was making $400 per week working at GrubHub. The Judge refused to change the bond amount set on the warrant, with no explanation given in the initial appearance order.

- The original warrant set bond at $15,000 cash only. No information regarding the arrestee's financial situation was presented during the initial hearing and the Pretrial Release Commissioner's report did not include any employment or financial information, although a separate document made a single reference to the arrestee having a job at Walmart making $10 per hour. The judge continued the bond at $15,000 cash only with no reasoning listed in the initial appearance order.

Ex. 1, Besch Decl. ¶ 9. Further, when imposing monetary conditions of release, Defendant Judges often did not explain why less restrictive conditions were insufficient to ensure the appearance of the individual or the safety of the community, as the Rules require. *See* Mo. Sup. Ct. R. 33.01(f) ("[T]he court shall also make written or oral findings on the record supporting the reasons for detention or conditions set and imposed."); Ex. 4, Troy Decl. ¶ 13.

In some cases, Defendant Judges' actions indicate that their intention was to set a bond so high that it would result in detention. This is illustrated by Defendant Judges setting the bond higher than not only what the arrestee could afford, but also higher than what they understood that a non-profit organization, The Bail Project, might be willing to pay.[11]  Some examples include:

- A $7,500 cash-only bond was set on the warrant. At the initial appearance, the arrestee stated that she was a single parent with a special-needs child. She

---

[11] The Bail Project is a charitable organization whose mission is to reform the pretrial justice system and eliminate cash bond. Ex. 6, Apr. 11, 2020 Ltr. from Mike Milton ("Milton Ltr."). The organization pays bail for some people in need who are referred through the community, public defenders, and other social service providers. *Id.* The organization does not pay bail for all people who are held on cash bond amounts, even if the amount is within a range the organization can post. The organization's funding does not allow it to serve everyone and its mission is time-limited. *Id.*

told the judge that she could probably afford between $750 and $1,000 bond. The contract attorney asked for the $7,500 cash-only bond to be changed to 10-percent bond, pointing out that the charges were misdemeanors. The judge stated that she wanted to set the bond at an amount that would eliminate the option of The Bail Project posting for the arrestee. The judge ordered bond to remain at $7,500 cash only or $10,000 secured. Ex. 5, Dusselier Decl. ¶ 9.a.

- A bond on the warrant was set at $5,000, 10 percent. At the initial appearance, the judge was told that the arrestee had been homeless for two years and had two children. Her Pretrial Release Commissioner's report also showed her only income was $505 per month in food stamps. The circuit attorney told the judge that he would consent to a $5,000, 10-percent bond because The Bail Project could help the arrestee. The judge stated there was a lack of incentive for people to show up when The Bail Project posted bond, and therefore she increased the bond to $5,000 secured so the "Bail Project won't mess it up." *Id.* ¶ 9.b; Ex. 7, Harris Warrant and Pretrial Release Commissioner's Report.

- The original warrant did not allow for bond. At the initial appearance, the only financial information available to the judge was that the arrestee had been unemployed for 1 year. The judge set the bond at $30,000 secured with no basis for the decision listed in the order. Ex. 1, Besch Decl. ¶ 9.h.

- The original warrant set bond at $50,000 cash. The only financial evidence before the court was that the arrestee received $494 per month in SSI, but was otherwise unemployed. The judge marked that the arrestee was indigent on the initial appearance order but refused to adjust the $50,000 cash bond. No basis for that decision was listed in the order. *Id.* 9.i.

These *de facto* detention orders violate both the arrestees' constitutional rights and the amended Missouri Supreme Court Rules. Any cash bond set above what the court knows the individual is able to pay cannot reasonably be considered a condition of release under Rule 33.01(c). Thus, when Defendant Judges set a cash bond amount for the purpose of ensuring the individual is detained, rather than making the necessary finding under 33.01(d), they are entering *de facto* orders of detention while simultaneously denying the individual the right to have a trial within 120 days. Such practices violate both constitutional protections and the Missouri Supreme Court Rules.

Defendant Judges also fail to consider non-monetary conditions of release or the

individual's ability to pay before resorting to monetary conditions, as Rule 33.01(c) requires. This is exemplified by Defendant Judges' practice of routinely setting monetary conditions of release of $5,000 or less with the expectation that The Bail Project will post the bond and without first considering whether non-monetary conditions would be sufficient or what the individual arrestee can actually pay. Some examples of this pattern include:

- The judge asked if the arrestee could pay the proposed bond amount of $10,000, 10 percent. The arrestee said he would have to contact The Bail Project. The Pretrial Release Commissioner's report listed "none" for employment and "none" for financial resources. No other information about the arrestee's ability to pay was introduced. Bond was set by the judge at $10,000, 10 percent.

- The arrestee told the judge that his family could get $300 to $400 together. The Pretrial Release Commissioner's report listed "unemployed 8/18 – present" for employment and had nothing filled in for the financial resources section. No other financial information was introduced at the hearing. The contract attorney asked that bail be set at or below The Bail Project's $5,000 limit, which the court granted by setting bail at $5,000 cash only. The order specifically stated, "Defendant to apply for the Bail Project."

- The arrestee told the judge that he could not post the $1,500 cash-only bond agreed to by the attorneys prior to the hearing and without consulting him. The arrestee's contract attorney told him in open court that he could apply to The Bail Project. No other evidence was introduced about his ability to pay the bond, and the arrestee was not interviewed by the Pretrial Release Commissioner. Bond was set by the judge at $1,500 cash.

Ex. 1, Besch Decl. ¶ 10.

Setting cash bond amounts based on what The Bail Project might be willing to pay is not the same as considering an arrestee's financial circumstances and ability to pay, as required by the Constitution and Missouri Supreme Court Rules. The Bail Project is an independent charity that is not affiliated with the courts or any government agency, *see* Ex. 6, Milton Ltr., and therefore has no legal obligation to free anyone from jail. The Bail Project generally does not bail out individuals whose bail amounts are higher than $5,000, and its policies include additional conditions that limit the class of detainees eligible for this relief.

Even when The Bail Project does choose to pay someone's bond, because of its decision-making and processing time, "the process can sometimes take days." *Id.* Thus, the arrestee's release is not as speedy as release on non-monetary conditions or even monetary conditions that the arrestee can afford. Moreover, the Defendant Judges' willingness to set bond amounts with the expectation that The Bail Project will pay the full amount suggests that, had the Defendant Judges' considered non-monetary conditions first, as required by the Missouri Supreme Court Rules, they likely would have concluded that less-restrictive conditions—such as release on recognizance with reminders of court dates—would have been adequate to satisfy the government's interests.

In short, although somewhat different in form, Defendant Judges have continued to implement a system that precludes any meaningful opportunity to be heard at the initial appearance, undermining the progress that compliance with the amended Rules would have achieved and suggesting that Defendant Judges are either unwilling or unable to comply with those Rules.

These violations of the Missouri Supreme Court Rules also result in Defendants violating Plaintiffs' rights under the Constitution. Notice and meaningful opportunity to be heard are basic components of procedural due process. *See, e.g.*, *Turner v. Rogers*, 564 U.S. 431, 131 (2011) (notice of "critical issue[s]" is a minimum requirement of due process); *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972) (detailing components of a constitutionally adequate hearing); *see also* Pls' Memo. in Support of Pls' Mot. for a Class-Wide Preliminary Injunction, ECF No. 42-1, at 24-26. Defendants continue to violate Plaintiffs' substantive rights as well. The Due Process and Equal Protection Clauses make unlawful Defendants' practice of imposing monetary conditions of release without consideration of ability to pay or whether less restrictive conditions can satisfy the government's interests. *See* June 11, 2019 Memo. &

Order , ECF No. 95,13-14, 19; *see also Bearden*, 461 U.S. at 674. Preventing these

constitutional violations, as this Court held in its original order, "is always in the public

interest." June 11, 2019 Memo. & Order, ECF No. 95, at 31 (citing *Melendres v. Arpaio*, 695

F.3d 990, 1002 (9th Cir. 2012)).

## II.     AN INJUNCTION IS IN THE PUBLIC INTEREST BECAUSE IT WOULD PREVENT COLLATERAL HARMS TO THE COMMUNITY.

As this Court held, the effect of an injunction on the surrounding community is

pertinent to evaluating whether the injunction would be in the public interest. *See* June 11,

2019 Memo. & Order, ECF No. 95, at 31; *see also, e.g.*, *Gen. Motors Corp. v. Harry Brown's,*

*LLC*, 563 F.3d 312, 321 (8th Cir. 2009) (effect of injunction on community job loss

demonstrated injunction not in the public interest). Plaintiffs have already demonstrated, as

this Court found, that pretrial detention negatively affects arrestees' family members and

communities. *See* June 11, 2019 Memo. & Order, ECF No. 95, at 31 & n.17.[12] That is

sufficient evidence that an injunction would be in the public interest.

Plaintiffs respectfully submit, however, that the harms to the community of

unnecessary detention are even greater amidst the current public health crisis. Plaintiffs

understand that this case is not the appropriate vehicle to seek *release* of arrestees *because of*

the risk detained individuals face of contracting COVID-19. That is the claim that was

rejected in the cases Defendant Judges cited to this Court. *See* Def. Judges Resp. in

Opposition to Pls' Mot. for Expedited Briefing ("Response to Expedited Briefing"), ECF

No. 148, at 3-6. Plaintiffs' contention is significantly narrower: namely, that the requested

injunction would benefit the public in specific ways that are a result of the ongoing

pandemic. This Court may properly consider that argument when evaluating the public

---

[12] Plaintiffs incorporate by reference the declarations supporting their initial motion for preliminary injunction.

interest. *See, e.g.*, *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 707 (4th Cir. 2019) ("[A]n injunction would serve the public interest by preserving the individual plaintiff's statutory right . . . and ensuring 'affordable access to competent health care by some of South Carolina's neediest citizens,' whose health challenges are every bit as real as those of citizens of greater means."); *Caudel v. City of W. Fork*, No. 09-cv-5144, 2009 WL 2843298, at *8 (W.D. Ark. Sept. 2, 2009) (public interest weighed against injunction because challenged conduct would ameliorate "attractive nuisances that pose a health and safety hazard to the citizens of West Fork"); *N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 781 F. Supp. 612, 617 (D. Minn. 1991), *aff'd*, 991 F.2d 458 (8th Cir. 1993) (injunction in public interest because it would ameliorate "safety risk" of plant that could affect surrounding community).

The increased public harm manifests in two ways. First, crowding in jail increases the possibility of the virus spreading. *See* Ex. 8, Ltr. from Dr. Rottnek to Mo. Sup. Ct., Mar. 26, 2020, at 1, 7; Response to Expedited Briefing, ECF No. 148, at 2. Although the requested injunction—which would result in hearings that would guarantee arrestees are detained only when necessary—would not necessarily lead to release in any specific case, it could contribute to reducing the jail population[13] and, in turn, reduce the strain on community healthcare resources.[14] Second, the ordinary (and significant) burdens of detention on community members are more severe under current circumstances because family members

---

[13] In the limited time that this Court's initial injunction was in effect, Defendant Judges held 171 hearings and determined that 119 individuals should have been released. *See* Ex. 9, Decl. of Alyxandra T. Haag ¶¶ 7-8.

[14] *See, e.g.*, Rance Burger, *Missouri moves $29 million into personal protective equipment (PPE) buying*, Christian County Headliner News (April 7, 2020), *available at* https://perma.cc/89HR-4BU2 (Secretary of Missouri Department of Public Safety explained that short supply of personal protective equipment is hospitals' top concern); Sarah Fentem, *St. Louis Hospitals Likely Won't Have Enough Room To Treat Every Coronavirus Patient*, St. Louis Public Radio (Mar. 25, 2020), *available at* https://perma.cc/75HC-B5MZ (explaining that St. Louis doctors are concerned that there are not enough hospital beds to treat everyone who will become infected).

who depend on detained individuals for caregiving or income cannot seek assistance outside

of their household and may suffer compounding economic harms due to the pandemic.[15]

Preventing these harms from occurring is in the public interest.

### III.   ACCOUNTING FOR PRINCIPLES OF COMITY DOES NOT UNDERMINE THAT A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

Concern about "comity between the state and federal judiciaries," *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020), does not undermine the substantial public interest

that supports a preliminary injunction. Although the Eighth Circuit directed this Court to

consider any applicable federalism concerns when evaluating the public interest, the Circuit

also was clear—in vacating and remanding for further consideration rather than reversing—

that it remains within this Court's authority to re-issue a preliminary injunction. Indeed, in *In re SDDS Inc.*, 97 F.3d 1030 (8th Cir. 1996), the case that the Eighth Circuit cited as

establishing that comity should be considered in evaluating the public interest factor, the

court ultimately held, after accounting for federalism concerns, that an injunction *should*

issue. *Id.* at 1041.  That was true, moreover, even though the basis for the injunction in

*SDDS*—that parallel state court litigation was barred under principles of res judicata—is

something that state courts are equally well-equipped to decide. The court nonetheless

concluded that the interest in "judicial economy" and avoiding "duplicative litigation"

overcame the notion that "interference with a state court proceeding is generally opposed by

public policy." *Id.* Certainly, if the interest in judicial economy in a *single* dispute is weighty

enough to overcome comity concerns, then so is the interest in preventing the

---

[15] *See, e.g.*, *All Missouri public schools temporarily closed, Governor Parson says*, Springfield News-Leader (March 21, 2020), *available at* https://perma.cc/7ZBJ-2MKY; Andy Alcock, *Unemployment Claims Skyrocket in Kansas, Missouri*, KSHB Kansas City (Apr. 8, 2020), *available at* https://perma.cc/L877-ASUK ("Unemployment claims have exponentially grown in Missouri, just in recent weeks.").

unconstitutional detention of scores of individuals and all the harms that flow to the community from it.

Not only are the other considerations relevant to the public interest particularly strong here, but the federalism interest is relatively weak. This is true for four reasons.

First, the Supreme Court has explained that principles of comity are at their height in areas where the States enjoy "wide regulatory latitude," not when a "suit . . . involve[s] any fundamental right or classification that attracts heightened judicial scrutiny." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 431 (2010). This case, which concerns Plaintiffs' core liberty and due process interests, falls into the latter category. Defendants' practice, from before this lawsuit was filed to this day, has been to issue *de facto* detention orders by imposing unaffordable cash bonds without any finding, let alone one by clear and convincing evidence, that detention is necessary to advance a compelling state interest. As this Court concluded—and the Eighth Circuit did not question—"heightened scrutiny" applies to this infringement of Plaintiffs' fundamental rights. *See* June 11, 2019 Memo. & Order, ECF No. 95, at 29.

Second, Defendants continue to defy the Missouri Supreme Court's Rules. The Eighth Circuit explained that a proper accounting for federalism requires that this Court look beyond the language of the new Rules as written by the Missouri Supreme Court to "their implementation" in practice by Defendants. *Dixon*, 950 F.3d at 1056. The "gravamen" of Plaintiffs' claims continues to be that Defendants disregard the state-wide policy established by the Missouri Supreme Court. *See* June 11, 2019 Memo. & Order, ECF No. 95, at 27. Thus, although respect for our system of federalism dictates that "needless friction with state policies" be avoided, *Dixon*, 950 F.3d at 1056 (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)), any such "friction" is absent here. *Cf. ODonnell v.*

*Harris Cty.*, 260 F. Supp. 3d 810, 821 (S.D. Tex. 2017) (rejecting that the public interest

warranted a stay of injunction against bail practices where "[t]he Texas legislature, indeed the

Texas Constitution, d[id] not permit the type of pretrial preventive detention in

misdemeanor cases that Harris County['s practices] systematically and routinely

accomplishe[d]").

Third, the persistent nature of Defendant Judges' continued unconstitutional

practices weakens any comity interest here. Principles of comity can further federal-state

relations by giving state authorities an opportunity to "correct" any alleged violation of

federal rights. *See, e.g., Leggins v. Lockhart*, 822 F.2d 764, 768 n.5 (8th Cir. 1987). Here,

however, the continued need for the preliminary injunction described above evidences that

Defendants have already been provided and foregone that opportunity. This is especially

true given this Court's prior rigorous findings that Defendants had violated the Missouri

Supreme Court Rules governing this issue and this Court's observation that, as the deadline

for new Rules approached, they were unable to explain any plans concerning how they

would even begin to implement them. *See* Hr'g Tr. at 17:11-15, June 14, 2009 ("[I]n light of

these [amendments to the Missouri Supreme Court Rules] which have been published since

December, coupled with this litigation, I'm somewhat appalled that there has been no

consideration and discussion with respect to what is going to happen with the 700 people

you tell me are sitting there.").

Fourth, Plaintiffs' requested relief still leaves Defendant Judges with the full ability to

ensure that the State's compelling interests are served. *Cf. Purnell v. Mo. Dep't of Corr.*, 753

F.2d 703, 709 (8th Cir. 1985) ("Deference is due the states, as governmental units, not their

courts, their executives, or their legislatures, save as these bodies represent the state itself."

(citation omitted)). As Plaintiffs have previously explained, Plaintiffs do not seek the release

of any specific individual or ask that this Court prohibit the use of cash bond. Plaintiffs seek only to ensure that, when setting conditions of release, Defendant Judges provide an individualized hearing and impose no conditions greater than necessary to ensure an individual's appearance at trial or to protect the public. Thus, Defendant Judges will remain fully capable of vindicating Missouri's highest interests—a principle concern of the comity doctrine—even if an injunction issues.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court re-issue the preliminary injunction in this case. Plaintiffs believe that a seven-day compliance period remains achievable for any individual who is detained, but are willing to confer with Defendants to discuss any impediments to meeting such a deadline, should the Court be willing to order it. Plaintiffs do not oppose a 48-hour compliance period for individuals arrested in the future.

Dated: April 13, 2020                                 Respectfully Submitted,

INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION

*/s/ Robert Friedman*
Seth Wayne (D.C. Bar No. 888273445,
Federal Bar No. 888273445)
Robert Friedman (D.C. Bar No.1046738,
Federal Bar No. 5240296NY) (admitted pro
hac vice)
Mary B. McCord (MBE #41025MO,
Federal Bar No. 427563DC) (admitted pro hac
vice)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
rdf34@georgetown.edu

mbm7@georgetown.edu
ARCHCITY DEFENDERS, INC.

*/s/ Jacqueline Kutnik-Bauder*
Blake A. Strode (MBE #68422MO)
Michael-John Voss (MBE #61742MO)
Jacki Langum (MBE #58881MO)
Jacqueline Kutnik-Bauder (MBE # 45014MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jlangum@archcitydefenders.org
jkutnikbauder@archcitydefenders.org
mhanlon@archcitydefenders.org
jwaldron@archcitydefenders.org

ADVANCEMENT PROJECT

*/s/ Thomas B. Harvey*
Thomas B. Harvey (MBE #61734MO)
(admitted pro hac vice)
Miriam R. Nemeth (D.C. Bar No. 1028529)
(admitted pro hac vice)
1220 L Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 728-9557
Fax: (202) 728-9558
tharvey@advancementproject.org
mnemeth@advancementproject.org

CIVIL RIGHTS CORPS

*/s/ Alec Karakatsanis*
Alec Karakatsanis (D.C. Bar No. 999294)
(admitted pro hac vice)
910 17th Street NW, Suite 200
Washington, DC 20006
Tel: 202-599-0953
Fax: 202-609-8030
alec@civilrightscorps.org

*Attorneys for Plaintiffs*