UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID DIXON, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-0112-AGF |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motions for judgment on the pleadings. ECF No. 166, 170. For the reasons set forth below, the motions will be denied.

## BACKGROUND

Named Plaintiffs David Dixon, Jeffrey Rozelle, Aaron Thurman, and Richard Robards were detained in St. Louis jails because they were unable to afford bail. Defendants are the City of St. Louis, its Commissioner of Corrections Dale Glass, and its Sheriff Vernon Betts (together, the City) and several judges of the 22nd Circuit (the Judges). On January 28, 2019, Plaintiffs filed a class action complaint under 42 U.S.C. § 1983 asserting that Defendants violated their constitutional rights to equal protection and substantive and procedural due process by detaining them after arrest without an opportunity to challenge the conditions of their release. Plaintiffs complain that a cash bond is routinely set without an individualized determination of factors such as the ability

1

to pay, risk of flight, danger to the public, or less restrictive alternatives. The facts alleged in Plaintiffs complaint can be summarized as follows, though certain practices have evolved since that time, as discussed further below.

**Plaintiffs' Complaint**

When a person is arrested in the City of St. Louis, a bond commissioner employed by the City makes a recommendation to a duty judge to set bond to secure the arrestee's court appearance. In formulating the recommendation, the commissioner considers the charges and any prior convictions but does not inquire into the arrestee's ability to pay, risk of flight, or danger to the public; the duty judge then sets bond on the commissioner's recommendation. If an arrestee can afford to pay the cash bond in full, then the City will release him upon payment. If not, he remains detained until a first appearance, which is held within 48 hours of arrest and by videoconference from the jail. Plaintiffs allege that the sheriff's deputies who escort arrestees to their video hearings instruct them not to speak and specifically not to request a bond modification.

The judge reads the charges, states the bail amount pursuant to the commissioner's recommendation, and asks the arrestee whether he intends to retain counsel. The hearing lasts one to two minutes. Plaintiffs allege that, if an arrestee attempts to contest his bail amount, the judge informs him that he cannot request a modification until he obtains counsel and sets a motion hearing. For indigent individuals eligible for a public defender, that process takes approximately five weeks. Arrestees who do not qualify for a public defender but cannot afford to pay a private attorney often remain detained even longer. This period of incarceration often results in physical and mental health problems, loss of

2

employment, eviction, and family separation.

Plaintiffs state that, even when arrestees receive the assistance of counsel on a motion for modification, the Judges' bail-setting practices remain constitutionally inadequate in that the Judges fail to consider an arrestee's financial circumstances or make specific findings as to alternative release conditions.

Plaintiffs request the following forms of relief:

1. A declaratory judgment that Defendants violate the Plaintiffs' and class members' rights by issuing detention orders without due process;

2. A declaratory judgment that Defendants violate the Plaintiffs' and class members' rights by operating a system of wealth-based detention that keeps them in jail because they cannot afford to pay monetary conditions of release, without an inquiry or findings concerning their ability to pay, the necessity of detention, and alternative release conditions;

3. A declaratory judgment that Plaintiffs and class members are entitled to an individualized hearing regarding release conditions and including:

    a. Notice that financial information will be collected, and the significance thereof;

    b. An individualized determination of the arrestee's ability to pay and how much;

    c. An opportunity to be heard concerning one's ability to pay and the necessity of non-monetary release conditions, including an opportunity to present and rebut evidence and argue the issues;

    d. Substantive findings by the court on the record as to why detention is warranted and why less restrictive alternatives are insufficient; and

    e. Free legal counsel;

4. A declaratory judgment that the Sheriff and Commissioner of Corrections must not enforce any order requiring secured money bail or a monetary release condition that was imposed prior to an individualized hearing and that is not accompanied by a record reflecting the foregoing procedures and findings;

3

5. An order permanently enjoining Defendants from operating and enforcing a system of wealth-based detention that keeps Plaintiffs and class members in jail because they cannot afford to pay monetary release conditions, without an inquiry or findings concerning their ability to pay, alternative release conditions, and the necessity of detention;

6. An order permanently enjoining Defendants from operating and enforcing pretrial detention without constitutionally valid process as described above; and

7. An order directing the Sheriff not to instruct arrestees to remain silent during their hearings.

**Procedural History**

Concurrent with their complaint, Plaintiffs filed a motion for temporary restraining order, which they later withdrew after Defendants agreed to hold Plaintiffs' bond hearings the next day in accordance with a revised version of Missouri Supreme Court Rule 33.01, then scheduled to take effect on July 1, 2019.  This new version of the rule clarifies that a court cannot impose cash bail absent an individualized assessment of an arrestee's financial circumstances, flight risk, threat to public safety, and consideration of alternative release conditions.  It further provides the right to a review hearing on the record within seven days and requires the court to make written findings supported by clear and convincing evidence.  At the close of those hearings, two of the named Plaintiffs were released without bond, with other conditions.  The other two did not receive any reduction in bond but were later released upon payment of bond by a third-party advocacy organization.

On February 21, 2019, Plaintiffs filed a motion for preliminary injunction seeking to enjoin Defendants' practice of detaining arrestees who are unable to pay cash bail

4

without an individualized hearing on their financial circumstances and the necessity of detention. In practical terms, consistent with the relief requested in their complaint, Plaintiffs sought to enjoin Jail Commissioner Glass from enforcing any bail order operating as a de facto order of detention based on an arrestee's ability to pay, unless such order reflected a hearing on the arrestee's financial circumstances and the court's consideration of less restrictive release conditions.

On March 1, 2019, Defendants filed motions to dismiss the case. The City Defendants asserted that they have no policy or custom of silencing arrestees in initial appearances and no authority to establish bail conditions. The Judges asserted theories of immunity and abstention. The Court denied both motions and granted Plaintiffs' motion for preliminary injunction. *Dixon v. City of St. Louis*, 4:19-CV-0112-AGF, 2019 WL 2437026, at *1 (E.D. Mo. June 11, 2019). On the City's motion to dismiss, the Court concluded that (1) Plaintiffs had sufficiently pleaded a claim for municipal liability by alleging an unofficial custom whereby sheriff's deputies instruct arrestees not to speak at their initial appearance[1] and (2) an injunction may be used to prohibit custodial officials from enforcing unconstitutional orders. *Id*. at *11. On the Judges' motion to dismiss, the Court concluded that (1) the Judges were not immune from suit because § 1983 permits declaratory relief against judicial officers and (2) the *Younger* abstention doctrine

---

[1] The parties stipulated not to litigate this issue at the preliminary injunction stage. ECF No. 92. Pursuant to their agreement, Sheriff's deputies were to be instructed not to tell arrestees to be silent at their first appearance. The parties reserved the right to litigate this aspect of Plaintiffs' claim outside preliminary injunction proceedings.

(restraining federal intervention in state court proceedings)[2] did not apply because the Court was not auditing Plaintiffs' criminal cases and Missouri state law failed to provide an adequate remedy for the inadequate bail hearing. *Id*. at 8-10.

Defendants appealed to the Eighth Circuit, which vacated the injunction and remanded the case with instructions for this Court to consider whether an injunction served the public interest in comity between the state and federal judiciaries, particularly in light of the new guidance in revised Missouri Rule 33.01. *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020). On remand, Plaintiffs renewed their motion for preliminary injunction (ECF No. 160) and updated the record with more recent evidence concerning Defendants' bail hearing practices, which Plaintiffs contend are still inadequate despite the rule change. Shortly thereafter, Defendants filed the present motions for judgment on the pleadings.[3]

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] Defendants have also filed a motion to de-certify the class. Plaintiffs later withdrew their motion for preliminary injunction due to the unlikelihood of a hearing during the COVID-19 pandemic, instead opting to proceed toward dispositive motions and trial. No. 199. Proceedings on the merits of Plaintiffs' complaint are ongoing. Plaintiffs sought further discovery to develop the record with respect to Defendants' more recent bail hearing practices since implementation of new Missouri Rule 33.01, and the Court ordered the Defendant Judges to produce a certain number of hearing transcripts for specific periods. ECF Nos. 186, 214.

## DISCUSSION

**Legal Standards**

The Court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). When considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court must "accept as true all factual allegations set out in the complaint and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a complaint need not contain detailed factual allegations, it must contain sufficient factual allegations "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion for judgment on the pleadings, a court generally may not consider materials outside the pleadings except for exhibits attached to the complaint and matters of public record. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

7

**Effect of Prior Rulings**

As a preliminary matter, Plaintiffs argue that this Court's previous rulings on Defendants' motions to dismiss constitutes the law of the case. That doctrine states that a court's ruling on a particular issue should continue to govern in later stages of the same case. *Yankton Sioux Tribe v. Podhradsky*, 606 F.3d 994, 1004 (8th Cir. 2010). Defendants counter that the doctrine does not apply here because the Eighth Circuit vacated this Court's previous injunction and, moreover, the doctrine does not apply to interlocutory orders. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008).

Defendants' point is well-taken. Those portions of the Court's prior rulings denying Defendants' motions to dismiss are interlocutory and thus remain subject to reconsideration. *Pendleton v. St. Louis County*, 178 F.3d 1007, 1010 (8th Cir. 1999) (noting that an order denying a motion to dismiss is not a final order); *First Union Nat. Bank v. Pictet Overseas Tr. Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007) (noting that interlocutory orders can be reconsidered and modified prior to entry of a final judgment). Nonetheless, on reconsideration, the Court reaches the same conclusions expressed in its previous order, as discussed therein and below.

**City Defendants**

The City advances four arguments in support of its motion for judgment on the pleadings: (1) The Court lacks authority to compel City Defendants to release state arrestees; (2) The Court lacks jurisdiction to order City Defendants to ignore bail orders issued by state Judges; (3) Plaintiffs' claim is now moot by virtue of new Missouri Rule

8

33.01; and (4) Plaintiffs lack standing to seek an injunction against future injury. The City also joins the Judges in advocating for abstention and state habeas relief, which the Court will address on the Judges' motion further below.

Relief Against City Defendants

The City's first two theories are sufficiently related to discuss as one. As they asserted in their motion to dismiss, the City Defendants contend again here that they have no role in imposing bail and cannot be ordered to "grade the papers of state judges" to determine whether the Judges' bond orders should be enforced. The Court previously rejected this argument because a suit for injunctive or declaratory relief is cognizable against an official charged with enforcement of the challenged law. *Dixon*, 2019 WL 2437026, at *11 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Defendants raised this issue on appeal and now reprise their appellate briefing here,[4] but nothing in the Eighth Circuit's opinion affects this Court's initial conclusion, which other Circuit Courts have since confirmed. *See e.g. McNeil v. Cmty. Prob. Services, LLC*, 945 F.3d 991, 995-996 (6th Cir. 2019); and *Daves v. Dallas County, Texas*, 984 F.3d 381, 405 (5th Cir. 2020).

Moreover, as the Court previously noted, Plaintiffs' claims against the City Defendants are not limited to the role of enforcing the Judges' bail orders. Plaintiffs also directly implicate the City's own conduct, alleging that sheriff's deputies instruct

---

[4] Defendants' brief is available on Westlaw at: David DIXON, et al., Plaintiffs/Appellees, v. CITY OF ST. LOUIS, MISSOURI, et al., Defendants/Appellants., 2019 WL 4060649 (C.A.8).

9

arrestees not to speak during their bail hearings. Defendants do not dispute the Court's authority to enjoin their own unconstitutional actions. As such, the Court again concludes that Plaintiffs may maintain their claims against the City Defendants.

Mootness

Next, the City asserts that this case is moot now that the new Missouri Rule 33.01, providing certain constitutional safeguards sought by Plaintiffs, is in effect. Generally, a case may become moot if subsequent events make it "absolutely clear" that the allegedly wrongful action could not reasonably be expected to recur. *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021). But voluntary cessation of a challenged practice does not necessarily moot a case where a defendant could later resume the practice. *Id*.

The Court addressed this issue in its previous order, reasoning that the rule change did not render the case moot because the central controversy remains whether Defendants are actually satisfying the requirements of the rule, and more broadly due process, in practice. *Dixon*, 2019 WL 2437026, at *13, n.10. Defendants appealed this ruling to the Eighth Circuit as well, which acknowledged the Court's reasoning and declined to terminate the case on this basis, instead directing the Court on remand to examine Defendants' implementation of the new rule as relevant to whether an injunction was necessary. *Dixon*, 950 F.3d at 1056.

On that question, Plaintiffs continue to claim that Defendants' practices since remand still do not meet constitutional standards, while Defendants insist that their practices are constitutionally adequate. Clearly, the controversy is live. Whether the record ultimately supports Plaintiffs' claims is a question for another day. At this stage,

however, Defendants are not entitled to judgment on the pleadings on the basis of mootness.

Standing

Specific to Plaintiffs' allegation that sheriff's deputies instruct arrestees not to speak at their bond hearings, the City contends that Plaintiffs lack standing to seek injunctive relief for hypothetical future violations. The City relies on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the plaintiff sued the city after police officers placed him in a chokehold. The U.S. Supreme Court allowed Lyons' claim for money damages to proceed but held that he lacked standing to pursue injunctive relief because his claim of future recurrence was speculative. *Id.* at 109. The City's reliance on *Lyons*, which involved a single plaintiff, is misplaced. As explained in the Court's previous order certifying the class, termination of a class representative's claim does not moot the claims of unnamed class members. *Dixon*, 2019 WL 2437026 at *4 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)). *See also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (same).

Additionally, the City argues that the record does not support Plaintiffs' allegation of class-wide ongoing silencing by sheriff's deputies and, moreover, any such practice is not the cause of arrestees' detention, which is imposed by the Judges. The pervasiveness of the sheriffs' alleged practice is a factual question to be resolved on a full record and not by judgment on the pleadings. Plaintiffs have sufficiently pleaded the existence of a widespread pattern. And the Court rejects the suggestion that § 1983 offers Plaintiffs no relief from the City's own role in denying them an opportunity to be heard, separate from

11

the Judges.[5]

For the foregoing reasons and as further discussed in the Court's previous order denying the City's motion to dismiss, the City's motion for judgment on the pleadings will be denied.

**Defendant Judges**

In support of their separate motion for judgment on the pleadings,[6] the Judges contend that (1) the Court should abstain from exercising jurisdiction in the interest of comity and (2) Plaintiffs' exclusive remedy is a writ of habeas corpus.

Abstention

The Judges argue that principles of federalism and comity direct the Court to refrain from exercising jurisdiction in this case under three distinct doctrines of abstention.

*Pullman Doctrine*

The *Pullman* doctrine prescribes restraint where (1) controlling state law is unclear and (2) a tenable interpretation would be dispositive of the case. *List v. County of*

---

[5] In a footnote, the City also argues that the deputies are acting as court officers and are therefore entitled to judicial immunity. But judicial immunity protects law enforcement officers only when they are acting under the court's orders. *Smith v. Finch*, 324 F. Supp. 3d 1012, 1029 (E.D. Mo. 2018); *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). Nothing in the pleadings suggests that sheriff's deputies are instructing arrestees to remain silent at the behest of the Judges. Rather, Plaintiffs attribute this conduct to a custom and practice within the City's Sheriff's department.

[6] The Judges' short motion at ECF No. 170 incorporates by reference its arguments thoroughly briefed in opposition to Plaintiffs' renewed motion for preliminary injunction at ECF No. 165, pp. 1-14.

*Carroll*, 240 Fed. Appx. 155, 157 (8th Cir. 2007); *Robinson v. City of Omaha, Neb.*, 866 F.2d 1042, 1043 (8th Cir. 1989) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)). Citing *Pullman* in its opinion vacating the Court's injunction in this case, the Eighth Circuit observed that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies." *Dixon*, 950 F.3d at 1056 (citing *Pullman*, 312 U.S. at 500).

While the Court shares this interest, the Judges' reliance on *Pullman* abstention as a basis for judgment on the pleadings is unpersuasive because the doctrine's first criterion – *i.e.*, an unclear state law – is absent here. *Pullman* applies where an unsettled question of state law could be resolved in such a way as to avoid the need for decision of a federal constitutional question. *List*, 240 Fed. Appx. at 157. Neither party asserts that Missouri Rule 33.01 is unclear or its application unsettled. Rather, Plaintiffs' complaint alleges violations of federal constitutional law and challenges the manner in which the Judges comply with the new Rule.

In response at the preliminary injunction stage, Defendants relied on the revised Missouri rule to moot Plaintiffs' claims or rebut their allegations. This Court rejected those arguments. *Dixon*, 2019 WL 2437026, at *13. The Eighth Circuit declined to address abstention and instructed this Court to give more consideration to the new rules and their implementation on remand. *Dixon*, 950 F.3d. at 1056. There is no unsettled state law satisfying the first criterion of the *Pullman* doctrine.

Further, even were Rule 33.01 unclear, the Judges have not shown that a tenable interpretation would resolve the present question whether Defendants are actually

13

providing constitutional due process in practice. Thus, *Pullman*'s second criterion is also absent here.

### *Burford Doctrine*

The *Burford* abstention doctrine prescribes restraint "when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Doe v. McCulloch*, 835 F.3d 785, 788 (8th Cir. 2016) (referring to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). *Burford* is concerned with protecting complex state administrative processes demanding significant familiarity with distinctively local regulatory facts. *Doe*, 835 F.3d at 788. Such is not the case here.

Nonetheless, Defendants rely on *Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1995), to argue that *Burford* can also apply to state judicial proceedings. But *Nelson* actually rejects this theory. There, the plaintiffs challenged the constitutionality of their confinement by the Illinois Department of Mental Health. The Seventh Circuit held that the *Burford* doctrine did *not* apply; rather, *Younger* was the proper framework for an abstention analysis on those facts. *Id*. at 501-503.

Defendants also rely on *John Chism Bail Bonds, Inc. v. Pennington*, 411 Fed. Appx. 927 (8th Cir. 2011), where the Eighth Circuit affirmed dismissal of a case involving an Arkansas county's policy regulating the practice of credit bonding based on *Pullman* and *Burford* abstention after the district court reasoned that the state law was unclear (invoking *Pullman*), and state officials' regulatory authority was in question (invoking *Burford*). *John Chism Bail Bonds, Inc. v. Pennington*, 656 F. Supp. 2d 929,

14

936 (E.D. Ark. 2009). *See also, Capital Bonding Corp. v. New Jersey Supreme Court*, 127 F.Supp.2d 582, 597 (D.N.J. 2001) (invoking *Burford* abstention in a case involving a state court's regulation of the bail bond industry). The present case does not present similar characteristics. This case is not about Defendants' policies or practices regulating the bail bonding industry but rather about whether the 22nd Circuit's bail hearings comport with federal due process. While the Court takes heed of the Eighth Circuit's cautions with respect to comity, Defendants have not persuaded the Court that the *Pullman* or *Burford* doctrines provide the proper framework for analysis here, which brings us back to *Younger*.

### *Younger Doctrine*

The *Younger* abstention doctrine prescribes restraint where (1) there is an ongoing state proceeding (2) that implicates important state interests and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding. *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013). The Court examined this theory at length on the Judges' motion to dismiss and concluded that Plaintiffs lacked an adequate remedy insofar as mandamus relief was essentially illusory and would not provide actual, timely relief for members of the Plaintiff class. *Dixon*, 2019 WL 2437026, at *10. The Court found guidance in appellate decisions in similar cash bail cases where the Fifth and Eleventh Circuits held that *Younger* did not apply. *O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018); *Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1254-55 (11th Cir. 2018). On appeal, the Eighth Circuit declined to address the *Younger* question directly but opined that the present case was distinguishable from

15

*O'Donnell* and *Walker* in light of Missouri's then-impending changes to Rule 33.01 signaling "the Missouri Supreme Court's attempt to police its own lower courts." *Dixon*, 950 F.3d at 1056.

Defendants assert that *Younger* abstention is even more appropriate now than it was in the spring of 2019 because the new Missouri Rule 33.01 is now in effect, and Plaintiffs could challenge Defendants' application of it in state court through writ proceedings. Defendants again rely on *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018), where the Eighth Circuit held that abstention was warranted in a case involving child removal proceedings. This Court considered *Oglala* in its previous order and found it distinguishable insofar as the 48-hour hearing at issue there involved the merits of the dependency case, and the plaintiffs could raise their federal claims through mandamus or on appeal challenging the initial removal decision. *Dixon,* 2019 WL 2437026 at *9. Here, by contrast, Plaintiff class members cannot challenge the constitutionality of their bail hearings at any stage in their criminal cases, many of which are ultimately dismissed.[7] Thus, *Gerstein v. Pugh* is controlling. 420 U.S. 103, 108, n. 9 (1975) (reasoning that the legality of pre-trial detention could not be raised in defense of the criminal prosecution).

Further, the Court remains unpersuaded that individual mandamus proceedings

---

[7] According to The Bail Project, of the approximately 1,300 bails paid over the course of one year, 53.4% of resolved cases ended in the dismissal of all charges. ECF No. 41, Ex. 29.

16

provide an adequate remedy for Plaintiff class members in this specific context.[8] Defendants raised this precise argument on appeal, but, rather than terminating Plaintiffs' claims on this basis, the Eighth Circuit instead directed the Court to consider the new rule and the course of conduct since its adoption and the Eighth Circuit's stay.  Two years have now passed since the Defendant Judges were informed of the requirements of the new Rule 33.01.  The Missouri Supreme Court first announced the revisions on December 18, 2018.  The rule was scheduled to go into effect on July 1, 2019, though, as the Court understands it, many changes relevant to this case were postponed until January 1, 2020.[9]  Despite this extended period for preparation and implementation, Plaintiffs

---

[8] The cases Defendants cite from other circuits involve state court litigation in individual cases warranting individual mandamus relief.  *Aaron v. O'Connor*, 914 F.3d 1010 (6th Cir. 2019) (where plaintiffs sought recusal of the trial judge in a medical malpractice case); *SKS & Associates, Inc. v. Dart*, 619 F.3d 674 (7th Cir. 2010) (where the plaintiff landlord challenged the state court's moratorium on evictions during the winter); *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 516 (5th Cir. 2004) (where plaintiffs resisted subpoenas issued in a state criminal investigation); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 202 (2d Cir. 2002) (where plaintiff employer challenged state administrative agency action).  These cases are inapposite to the present class action challenging systemic bail hearing practices such as those challenged in *O'Donnell* and *Walker*, among others.  Neither *O'Donnell* nor *Walker* addressed the adequacy of state writ relief, but such procedures exist in Texas and Georgia.  Though the Eighth Circuit found the present case distinguishable from *O'Donnell* and *Walker* to the extent Missouri's recent rule change affects the *Dataphase* public interest prong, such a distinction is immaterial to a *Younger* analysis as to whether the existence of state writ procedures mandate abstention.

[9] By Missouri Supreme Court Order dated June 30, 2019, implementation of subsections (e) and (f) of the new Rule 33.01 were delayed until January 1, 2020.  Those subsections provide as follows:

> (e) In determining whether to detain the defendant pursuant to subsection (d) or release the defendant with a condition or combination of conditions of release, if any, pursuant to subsection (c), the court shall base its determination on the individual circumstances of the defendant and the case. Based on available

17

maintain that bail hearings in the 22nd Circuit continue to fall short of constitutional standards. Whether the record will ultimately warrant injunctive relief (subject to the Eighth Circuit's instruction) is a question for another day. At this juncture, the Court cannot say that Defendants are entitled to judgment on the pleadings.

Alternate Remedy

The Judges also argue that Plaintiffs must seek relief through a writ of habeas corpus and not under § 1983. In support of their position, the Judges rely on *Preiser v. Rodriguez*, 411 U.S. 475 (1973), where the Supreme Court held that

---

information, the court shall take into account: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties, employment, financial resources, including ability to pay, character, and mental condition; the length of the defendant's residence in the community; the defendant's record of convictions; the defendant's record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings; whether the defendant was on probation, parole or release pending trial or appeal at the time the offense for which the court is considering detention or release was committed; and any validated evidentiary-based risk assessment tool approved by the Supreme Court of Missouri.

(f) A court detaining or releasing the defendant under this Rule shall enter an order stating the condition or combination of conditions of release, if any, set and imposed by the court. If the defendant is detained and unable to comply with any condition of release, the defendant shall have the right to a release hearing pursuant to Rule 33.05. At any hearing conducted under Rule 33, the court shall permit but not require either party to make a record on the defendant's financial status and ability to pay any monetary condition or other relevant issue. At such hearing, the court shall also make written or oral findings on the record supporting the reasons for detention or conditions set and imposed. The court shall inform the defendant of the conditions set and imposed, if any, and that the conditions of release may be revoked and the defendant detained until trial or other stage of the criminal proceedings for violation of any of the conditions of release and that a warrant for the defendant's arrest may be issued immediately upon notification to the court of any such violation.

18

challenges to detention cannot be brought under § 1983 where the relief sought would necessarily lead to immediate release from confinement or the shortening of its duration. *Id.* at 489. Instead, detainees must proceed through a habeas action, first in state court. *Id.* at 500.

The Court considered this theory in the Judges' motion to dismiss and rejected it because Plaintiffs do not seek wholesale release; rather, they seek individualized process. *Dixon*, 2019 WL 2437026, at *14 n.12. Defendants raised this issue on appeal as well. Although the Eighth Circuit did not discuss the matter, recent federal appellate precedent supports this Court's earlier analysis. In a recent case squarely on point on this issue, the Fifth Circuit explained:

> This suit from its inception has challenged the alleged lack of individualized analysis of each detainee's relevant circumstances and any resulting necessity for cash bail. The absence of those individualized determinations means cash bail often was required though unnecessary. The requested remedies did not include the absolute abolition of cash bail. Instead, the Plaintiffs sought a declaratory judgment and injunctive relief based on the claim that "wealth-based detention that keeps them in jail because they cannot afford to pay a secured financial condition of release" is unconstitutional until it includes "an inquiry into or findings concerning ability to pay," a "consideration of nonfinancial alternatives," and the making of "findings that a particular release condition — or pretrial detention — is necessary to meet a compelling government interest."
>
> We conclude that the declaratory judgment and the injunction that were granted do not present a *Preiser* issue. The relief of a more robust hearing would not necessarily lead to "immediate release from that confinement or the shortening of its duration." *Preiser*, 411 U.S. at 489, 93 S.Ct. 1827. Requiring that a judicial officer consider whether the detainee can afford money bail and, if not, whether there is some option for release short of money bail that would protect the County's legitimate interests does not short circuit state *habeas* procedures.

*Daves*, 984 F.3d at 394. Accordingly, the Court again concludes that Plaintiffs are not

19

relegated to seeking habeas relief.

For the foregoing reasons and as further discussed in the Court's previous order denying the Judges' motion to dismiss, the Judges' motion for judgment on the pleadings will be denied.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants motions for judgment on the pleadings are **DENIED**.  ECF Nos. 166, 170.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of February 2021.