UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID DIXON, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:19-cv-0112-AGF |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Defendant Judges' motion to decertify the class. ECF No. 171. For the reasons set forth below, the motion will be denied.

**BACKGROUND**

Named Plaintiffs David Dixon, Jeffrey Rozelle, Aaron Thurman, and Richard Robards were detained in St. Louis jails because they were unable to afford bail. Defendants are the City of St. Louis, its Commissioner of Corrections Dale Glass, its Sheriff Vernon Betts, and several judges of the 22nd Circuit.[1] On January 28, 2019, Plaintiffs filed a class action complaint under 42 U.S.C. § 1983 asserting that Defendants violated their constitutional rights to equal protection and substantive and procedural due

---

[1] The present motion was filed by the Defendant Judges with the support of the City Defendants. ECF No. 176. For simplicity, the Court refers simply to "Defendants."

1

process by detaining them after arrest without an opportunity to challenge the conditions of their release. Plaintiffs' original complaint alleged as follows.

**Plaintiffs' Claims**

Plaintiffs assert that when a person is arrested in the City of St. Louis, a bond commissioner employed by the City makes a recommendation to a duty judge to set bond to secure the arrestee's court appearance. In formulating the recommendation, the commissioner considers the charges and any prior convictions but does not inquire into the arrestee's ability to pay, risk of flight, or danger to the public; the duty judge then sets bond on the commissioner's recommendation. If an arrestee can afford to pay the cash bond in full, then the City will release him upon payment. If not, he remains detained until a first appearance, which is held within 48 hours of arrest and by videoconference from the jail. Sheriff's deputies who escort arrestees to their video hearings instruct them not to speak. The judge reads the charges, states the bail amount pursuant to the commissioner's recommendation, and asks the arrestee whether he intends to retain counsel. The hearing lasts one to two minutes. If an arrestee attempts to contest his bail amount, the judge informs him that he cannot request a modification until he obtains counsel and sets a motion hearing. For indigent individuals eligible for a public defender, that process takes approximately five weeks. Arrestees who do not qualify for a public defender but cannot afford to pay a private attorney often remain detained even longer. Even when arrestees receive the assistance of counsel, the judges' bail-setting practices remain constitutionally inadequate in that the judges fail to consider an arrestee's financial circumstances or make specific findings as to alternative release conditions.

**Procedural History**

Plaintiffs requested declaratory judgment stating that Defendants violated Plaintiffs' and class members' due process rights and injunctive relief in the form of individualized bail hearings examining an arrestee's ability to pay and the possibility of non-monetary release conditions.  Concurrent with their complaint, Plaintiffs filed a motion for temporary restraining order, which they later withdrew after Defendants agreed to hold Plaintiffs' bond hearings the next day in accordance with a revised version of Missouri Supreme Court Rule 33.01, then scheduled to take effect on July 1, 2019.  This revised version of the rule clarifies that a court cannot impose cash bail absent an individualized assessment of an arrestee's financial circumstances, flight risk, threat to public safety, and consideration of alternative release conditions; it further provides the right to a review hearing on the record within seven days and requires the court to make written findings supported by clear and convincing evidence.

On January 31, 2019, Defendants held bond hearings for the named Plaintiffs, who appeared through counsel.  At the close of those hearings, two Plaintiffs were released without bond, with other conditions.  Two others did not receive any reduction in bond but were later released upon payment of bond by a third-party advocacy organization.

On February 21, 2019, Plaintiffs filed a motion for preliminary injunction seeking to enjoin Defendants' practice of detaining arrestees who are unable to pay cash bail without an individualized hearing on their financial circumstances and the necessity of detention.  In April 2019, the parties agreed to submit the matter on the written record.  The evidence before the Court consisted of:

- 17 declarations by Plaintiffs and other arrestees describing a lack of process at their initial appearances;

- Nine declarations by arrestees' family members and other dependents describing hardships resulting from their absence;

- Bond commissioner reports on the four named Plaintiffs and three other arrestees, only one of which contained any personal information;

- Three declarations by law student Elizabeth Forester, who observed initial appearances in the 22nd circuit and collected information from a random sample of 222 cases;

- 164 bond commissioner reports from Forester's sample containing virtually no personal information relevant to individual release conditions;

- The declaration of the 22nd circuit district defender, Mary Fox, who observes initial appearances on a regular basis;

- A letter from The Bail Project of St. Louis providing statistics about its clients' demographics and rate of court appearances; and

- Two affidavits by a bond officer supervisor, Donald Kearbey, generally describing Defendants' practices at initial appearances.

Concurrent with their complaint, Plaintiffs filed a motion to certify a class comprised of "all arrestees who are or will be detained in the Medium Security Institution (the Workhouse) or the City Justice Center (CJC), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition." ECF No. 3. The Court granted Plaintiffs' motion to certify, finding that:

1. The class was so numerous as to make joinder impractical.

2. The class is united by a common question of law or fact in that its members have suffered the same injury (i.e., detention due to poverty), and the class action had the capacity to generate a common answer. Though Defendants

4

argued that Plaintiffs' pursuit of individualized bail hearings destroyed commonality, the Court found that the relief sought was entirely systemic.

3. Plaintiffs' claims are typical of the class notwithstanding the fact that they eventually received individualized hearings in order to resolve the pending TRO motion.

4. Plaintiffs and their counsel will adequately protect the interests of the class.

5. The class is cohesive in that a single injunction or declaratory judgment would provide relief to each member. The Court again noted that Plaintiffs seek systemic procedural reforms applicable to all class members.

ECF No. 95; *Dixon v. City of St. Louis*, 4:19-CV-0112-AGF, 2019 WL 2437026 (E.D. Mo. June 11, 2019). The Court also found that Plaintiffs were likely to succeed on the merits and thus granted Plaintiffs' motion for preliminary injunction. *Id*.

Defendants filed a motion for clarification to clarify that the preliminary injunction did not apply to individuals in City custody pursuant to federal court orders or probation violation warrants. ECF No. 96. Plaintiffs did not oppose this modification of the Court's class certification, which the Court granted. ECF Nos. 97, 101. Defendants also appealed the Court's preliminary injunction to the Eighth Circuit, which vacated the injunction and remanded the case with instructions for this Court to consider whether an injunction served the public interest in comity between the state and federal judiciaries, particularly in light of the state court's then-imminent procedural changes. *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020).

On remand, Plaintiffs renewed their motion for preliminary injunction (ECF No.

5

160) and updated the record with more recent evidence concerning Defendants' bail hearing practices since the change in Missouri Rule 33.01. Specifically, Plaintiffs' evidence included (*inter alia*):

- A declaration by Shannon Besch, the court-watch coordinator for Plaintiffs' counsel, highlighting observations from hundreds of hearings and docket audits, noting percentages and select instances where Defendants failed to conduct a financial inquiry, set unaffordable bail, or relied on payment by The Bail Project;

- A declaration by arrestee Kenneth Williams, recounting the details of his bail hearing in February 2020 (e.g., no opportunity to speak, no financial inquiry);

- A declaration by court-watcher Ariel Troy, who observed 130 hearings in late 2019, describing the role of counsel and statistics regarding Defendants' hearing practices (e.g., bail set in 38% of cases; financial information absent in 31% of such cases; no articulated basis for rejecting less restrictive conditions in 96% of cases);

- A declaration by Jane Dusselier, who observed 255 hearings from September 2019 to March 2020, recounting several specific instances where Defendants set bond in relation to availability of funds through The Bail Project; and

- A declaration by Matthew Mahaffey, District Defender for St. Louis City, recounting his observations of bail hearings since September 2019 (e.g., limited role of appointed counsel, setting of bail without financial inquiry, reliance on The Bail Project).

ECF No. 163-1.

Shortly after Plaintiffs renewed their motion for preliminary injunction, Defendants filed the present motion to de-certify the class (ECF No. 171).[2] Defendants

---

[2] Defendants have also filed motions for judgment on the pleadings. ECF Nos. 171, 170, 166. Plaintiffs later withdrew their motion for preliminary injunction due to the unlikelihood of a hearing during the COVID-19 pandemic, instead opting to proceed toward dispositive motions and trial. ECF No. 199. Proceedings on the merits of Plaintiffs' complaint are ongoing. Plaintiffs have sought further discovery to develop the record with respect to Defendants' more recent bail hearing practices since

advance four theories in support of their motion.  The Court addresses each in turn below.

## DISCUSSION

### Rule 23 Criteria

Federal Rule of Civil Procedure 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law and fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Rule 23(b)(2) permits a class action where defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" (cohesiveness).  The Court certified the Plaintiff class under the foregoing paragraphs of the Rule.  Plaintiffs did not request, and the Court did not certify, a class under Rule 23(b)(3), which requires a showing that common questions predominate individual questions (predominance) and the class action is superior to other methods of adjudication.

### Burden of Persuasion

As an initial matter, Defendants contend that Plaintiffs continue to bear the burden to justify class certification even on Defendants' motion for de-certification.  But the

---

implementation of new Missouri Rule 33.01, and the Court has ordered the Defendant Judges to produce a certain number of hearing transcripts for specific periods.  ECF Nos. 186, 214.

7

Eighth Circuit precedent they cite does not support their position. Rather, it states that, in general, a movant bears the burden of showing that the district court mistakenly maintained class certification. *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 832 (8th Cir. 2016). Defendants are correct that the Court has a duty to ensure that a class continues to be certifiable, and the Court may modify an earlier order in light of subsequent developments in the litigation. *Id*. at 830. Nonetheless, principles of fair adjudication require that, once a district court has considered the issue, a movant must provide good reason to revisit it. *Id*. at 832. "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id*. This is particularly true where certification-related discovery has occurred. *Id*.

Plaintiffs have engaged in significant discovery in this case, including individual class members' case records as well as aggregated data on Defendants' hearing practices. The Court considers the record sufficiently developed for purposes of Rule 23 analysis. Guided by the principles articulated in *Day*, the Court will not entertain a wholesale re-litigation of class certification factors previously considered but will re-examine Rule 23 criteria to extent impacted by material subsequent developments in the litigation. In that regard, Defendants rely on a development in Eighth Circuit precedent as well as updated factual allegations in Plaintiffs' renewed (but later withdrawn) preliminary injunction motion subsequent to the change in Missouri Rule 33.01. ECF No. 160, 163.

**Predominance**

First, Defendants assert that Plaintiffs' class definition creates a fail-safe class – i.e., one that precludes membership unless the member would prevail on the merits – which is impermissible under recent Eighth Circuit precedent published shortly after this Court's certification order. In *Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019), the Circuit instructed that a fail-safe class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment because they would be determined not to be a member of the class. *Id*. at 716. In *Orduno*, the plaintiff sought monetary damages under the Driver's Privacy Protection Act (DPPA). The plaintiff sought to certify a class of all persons whose personal information was accessed by the defendant police chief without a legitimate purpose, in violation of the DPPA. The district court denied certification because the class failed to satisfy the requirements of numerosity and predominance. More specifically, the court reasoned that the circumstances under which each member's information was accessed would vary such that common questions would not predominate over individual determinations. *Id*. at 716. On appeal, Orundo argued that the class included only those individuals whose information was wrongfully obtained, so there would be no need for case-by-case determinations. The Eighth Circuit disagreed and affirmed the denial of certification, reasoning that Orundo could not cure the predominance problem by creating a fail-safe

9

class. The Circuit further reasoned that the class would be unmanageable because the court would not know whom to notify of the action. *Id*. at 717.

Defendants here assert that Plaintiffs' proposed class is similarly flawed because it must be read *either* to include only those whose detention was unconstitutional *or* to encompass anyone who was unable to post bond for any reason. In other words, membership *either* requires an individual merits determination whether detention was unconstitutional *or* is fatally overbroad for including members who suffered no injury and thus lack standing. Either way, Defendants submit, Plaintiffs' class fails to satisfy the predominance criterion of Rule 23(b)(3).

In response, Plaintiffs maintain that (1) *Orundo* is not new law, and it involved certification under Rule 23(b)(3), whereas Plaintiffs' class was certified under Rule 23(b)(2) not dependent on predominance; (2) Defendants distort the class definition by inserting the word "unconstitutionally," which does not appear in the actual definition; (3) Defendants waived their standing argument by failing to raise it earlier; (4) Defendants conflate standing with the merits as to whether class members' detention was unlawful, which will be decided at a later stage; and (5) even if the class definition is flawed, the solution is modification, not de-certification.

The Court is not persuaded that *Orundo* warrants de-certification. The *Orundo* plaintiffs sought monetary damages under the DPPA, and class certification involved a predominance analysis under Rule 23(b)(3). Here, by contrast, the Plaintiff class seeks

10

injunctive and declaratory relief and is certified under Rule 23(b)(2).[3] This Court did not undertake a predominance analysis in its original order of certification and need not do so now. Even assuming *arguendo* that *Orundo* constitutes a development in the Circuit, and that its reasoning bears on issues of commonality and cohesiveness under Rule 23(a)(2) and (b)(2), the Court finds no reason to revise its earlier determination that Plaintiff class members suffered the same alleged injury and seek singular relief. Defendants have allegedly acted on grounds generally applicable to the class such that final declaratory and injunctive relief is appropriate respecting the class as a whole. Specifically, Plaintiffs claim that class members were detained solely as a result of their poverty and without a meaningful hearing about their financial circumstances and the possibility of less restrictive release conditions. The Plaintiff class comprises arrestees who are detained because they are unable to pay bail. They seek a declaration on the lawfulness of Defendants' practices and an injunction requiring Defendants to conduct hearings in accordance with due process, not flawed by this infirmity. Other district courts have certified similarly defined classes. *See e.g., Daves v. Dallas County, Texas*, 3:18-CV-0154-N, 2018 WL 4537202, at *1 (N.D. Tex. Sept. 20, 2018) (certifying a class of all arrestees detained because they are unable to pay bail); *Walker v. City of Calhoun, Georgia*, 4:15-CV-170-HLM, 2016 WL 361580, at *10 (N.D. Ga. Jan. 28, 2016) (certifying a class of arrestees unable to pay for their release).

---

[3] In their original brief opposing certification, Defendants correctly identified Rule 23(b)(2) as the basis for analysis. See ECF No. 60.

Defendants' alternate, opposite argument is that, if not treated as a fail-safe class, the class is necessarily overbroad such that some members lack standing because their bonds were lawfully set, so they suffered no injury. Defendants' alternate theory does not rely on *Orundo* and could have been raised in their original briefing on certification.[4] In any event, this theory begs the ultimate question in this case. Plaintiffs' alleged class-wide injury is detention due to the imposition of bail without a financial evaluation, which results in detention due to an inability to pay. Any merits determination regarding the lawfulness of Defendants' bail orders is premature. "The process, not the result, is the origin of this dispute." *Daves*, 2018 WL 4537202, at *2. Plaintiffs here allege injury in the form of their detention as a result of inadequate process. The Court is satisfied that the class is not overbroad insofar as all putative members are detained through the same process. Whether that process in fact occurred and meets constitutional requirements will be determined at a later date and need not be resolved as a threshold for certification.

**Commonality**

Next, Defendants contend that the class should be de-certified because it no longer satisfies the requirement of commonality. Defendants argue that the systemic nature of the relief Plaintiffs seek does not necessarily satisfy Rule 23(a)(2) and Supreme Court precedent, because even a systemic problem can manifest in individual ways, and Plaintiffs' pursuit of individualized bail hearings necessarily destroys commonality. Defendants cite to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Wal-Mart*,

---

[4] Defendants did raise a different standing argument in their original briefs in opposition to certification. ECF No. 60 at pp. 3-7.

12

the Supreme Court noted that a rigorous analysis of Rule 23 requirements sometimes touches on the merits, particularly where commonality reflects a pattern or practice. *Id.* at 350-352. There, the plaintiffs sought injunctive relief and damages for gender discrimination affecting 1.5 million female employees at 3,400 stores nationwide based on a company policy giving local managers broad, subjective discretion in pay and promotion. On those facts, the Supreme Court found that it was impossible to identify a common reason for the allegedly discriminatory employment decisions affecting members of the proposed class. Here, Defendants assert that Plaintiffs' class, too, lacks commonality because Plaintiffs allege not one but several Defendant bail practices offending due process (e.g., lack of individualized findings, no opportunity to speak, counsel negotiations without consultation, excessive bond amounts, consideration of third-party payors). Defendants' reliance on *Wal-Mart* is unpersuasive beyond its most general principles. That case involved millions of plaintiffs seeking monetary damages for individual employment decisions by thousands of local managers. The present case involves far more identifiable class, i.e., indigent arrestees, before a single court, applying a single rule, at a discrete phase of the case.

Defendants' attempt to fracture Plaintiffs' claim into individual cases is no more persuasive now than it was at the time of certification. As the Court stated in its original order, Plaintiffs allege a widespread and systemic failure to individualize bail determinations in accordance with due process, and especially a failure to consider an arrestee's ability to pay. That Defendants may foreclose or sidestep that examination in multiple ways, including some new ways arising since the remand of this case or the

13

change in Missouri Rule 33.01, does not destroy the commonality of the claim. The authorities cited in Defendants' brief do not direct otherwise.

For instance, in *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1038 (8th Cir. 2018), the Eighth Circuit affirmed certification of a class of prisoners alleging an institutional practice of inadequate treatment for hepatitis. The Circuit rejected the defendant's argument that class claims would require individualized inquiries about members' medical conditions. In both *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012), and *DL v. D.C.*, 713 F.3d 120 (D.C. Cir. 2013), the plaintiff classes consisted of disabled children who fell through the cracks at multiple stages of a special education framework intended to identify them and provide services. Though Defendants are correct that the original classes were overbroad because they encompassed different practices at different stages of the statutory scheme, Defendants overlook the subsequent history in *DL*, where the class was separated into four sub-classes corresponding to the defendant school district's failure to provide special education services at *distinct stages* of the statutory scheme, which the Circuit deemed proper. *See DL v. D.C.*, 860 F.3d 713, 719 (D.C. Cir. 2017).

The present case involves a distinct stage that takes place early in the proceedings, often in a matter of minutes, and addresses a single and narrow issue: release on bond. Defendants cite no similar bail case, of which there are many nationwide, where a class of arrestees detained due to poverty could not be certified. On the contrary, other district courts have consistently certified similarly defined classes in similar cases. *See e.g., Daves v. Dallas County, Texas*, 2018 WL 4537202; *Walker v. City of Calhoun, Georgia*,

14

2016 WL 361580; *Little v. Frederick*, CV 6:17-0724, 2020 WL 605028 (W.D. La. Feb. 7, 2020); *O'Donnell v. Harris County, Texas*, CV H-16-1414, 2017 WL 1542457, at *1 (S.D. Tex. Apr. 28, 2017).

Notwithstanding changes in Missouri Rule 33.01 since the time of certification, Plaintiffs still maintain that Defendants' bail hearing practices continue to fall short of the new rule and due process in substantially the same manner.  The Court is not persuaded that any evolution in Plaintiffs' discovery destroys commonality.

**Ascertainability**

Defendants also argue that the class is not ascertainable because membership would require individual, subjective determinations, supported by personal financial information, as to whether a particular arrestee was truly unable to pay bond.  This argument is not based on any subsequent development in the litigation since original briefing on certification, and Defendants failed to raise it at that time.  Additionally, Defendants' reasoning appears somewhat circular.  The alleged failure to make individualized bail determinations, based on evidence of an arrestee's ability to pay, is precisely the issue here.  If that process has occurred, presumably the record will reflect it.

Moreover, as a general rule, ascertainability requires less precision under Rule 23(b)(2) than under Rule 23(b)(3).  *Ahmad v. City of St. Louis, Missouri*, 4:17 CV 2455 CDP, 2019 WL 2009589, at *2 (E.D. Mo. May 7, 2019) (considering a class comprised of citizens protesting the police).  Members may be identified by reference to objective criteria.  *Id*.  Plaintiffs submit that an inability to pay bond is a reliable objective criterion

15

for ascertainment in that most people would not willingly remain incarcerated if their financial circumstances permitted them to avoid it. Defendants have not presented any evidence to the contrary. Given the obvious and severe consequences of prolonged detention, (see ECF No. 95 at pp. 30-31), the Court agrees and accepts that an inability to pay bond is a reasonable marker of ascertainment.

**Typicality and Adequacy**

Finally, Defendants contend that the named Plaintiffs cannot establish typicality and adequacy because they were long ago released and now allege, on behalf of the class, new and different injuries arising out of Defendants' more recent practices under the revised Missouri Rule 33.01.

Defendants' argument with respect to Plaintiffs' release status was before the Court at the time of original certification and is untenable. The detention status of any given class member is likely to evolve during this litigation; no plaintiff need remain incarcerated to maintain his claim. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). The Court sees no reason to revisit this argument. See ECF No. 95 at pp. 8-10.

Further, as previously stated, the Court does not find the factual allegations raised in Plaintiffs' renewed preliminary injunction motion materially different from their original allegations.[5] Plaintiffs centrally claim injury by virtue of their detention without an individualized determination of their ability to pay bond. Even according to

---

[5]   Plaintiffs may seek leave to add one or more class representatives who were detained due to their inability to pay bond after the effective date of the new Missouri Rule 33.01, should they elect to do so.

Defendants' own description (ECF No. 171), Plaintiffs' core due process challenge still involves the lack of financial inquiry, failure to consider non-monetary conditions, and excessive bail.  Defendants have suggested no adversity or conflict whatsoever among members of the class, nor any showing of divergent preferences.  The Court is not persuaded that any recent nuances raised in Plaintiffs' withdrawn motion for preliminary injunction (e.g., collusion between counsel, consideration of third-party payors) are so unique as to destroy typicality.  The Court is satisfied that the named Plaintiffs' claims remain typical of the class and that Plaintiffs continue to adequately represent class members.

## CONCLUSION

The Court concludes that the Plaintiff class, as modified (ECF No. 97), continues to satisfy the requirements of Rule 23.  For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to de-certify the class is **DENIED**.  ECF No. 171.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of February 2021.