IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID DIXON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) Case No. 4:19-CV-0112-AGF |
| v. | ) |
| | ) |
| CITY OF ST. LOUIS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT JUDGES' STATEMENT OF
UNCONTROVERTED MATERIAL FACTS**

Defendants Rex Burlison, Elizabeth Hogan, Thomas McCarthy and David Roither (hereinafter "Defendant Judges"), by and through their undersigned counsel, and pursuant to Local Rule 7-4.01.E., hereby submit their Statement of Uncontroverted Material Facts:

1. On July 1, 2019, the Twenty-Second Judicial Circuit established a new division, Division 16B, to conduct all hearings under those rules. (Nathan Graves Deposition, Exhibit A, pp. 83-84, exhibit H thereto; Nathan Graves Corporate Rep. Deposition, Exhibit B, p. 159).

2. Division 16B has its own clerk who specializes in that division, and judges rotate handling the matters in the division on a weekly basis. (Exhibit B, p. 159; Sarah Phillips Deposition, Exhibit C, p. 59).

3. Division 16B proceedings are recorded by a court reporter. (Exhibit A, p. 89; R. Walker Hearing Transcript, 7/6/20, Exhibit I; J. Dunn Hearing Transcript, 7/6/20, Exhibit J; Hearing Transcript, 7/31/20, Exhibit K; D. Shegog Hearing Transcript, 10/26/20, Exhibit L; D. Cary Hearing Transcript, 11/10/2020, Exhibit M; Hearing Transcript, 8/21/19, Exhibit N; C. Wraggs Hearing Transcript, 9/9/20, Exhibit O; C. Smith Hearing Transcript, 7/20/20, Exhibit P;  V. Cunningham Hearing Transcript, 12/28/20, Exhibit Q; K. Johnson Hearing Transcript, 12/28/20, Exhibit R; R. Bullard Hearing Transcript, 11/30/20, Exhibit S; A. Phillips Hearing Transcript, 11/30/20. Exhibit T; C. Starr, 9/21/20, Exhibit U; J. Smith Hearing Transcript, 9/25/20, Exhibit V;  M. Hinrichs Hearing Transcript, 9/2/20, Exhibit W; R. Robinson Hearing Transcript, 8/31/20, Exhibit X; D. Hayes Hearing Transcript, 10/19/20, Exhibit Y;  C. Taylor Hearing Transcript, 10/21/20, Exhibit Z;  K. Chairs Hearing Transcript, 7/13/20, Exhibit AA; A. Jones Hearing Transcript, 7/13/20, Exhibit BB; Hearing Transcript, 11/6/19, Exhibit CC; J. Bolden Hearing Transcript, 7/29/19, Exhibit DD; D. Sopshire Hearing Transcript, 1/30/2020, Exhibit EE; E. Boykins Hearing Transcript, 1/31/20, Exhibit FF; T. Tucker Hearing Transcript, 8/17/20, Exhibit GG;  A. Strickland Hearing Transcript, 11/20/20, Exhibit HH; Hearing Transcript, 11/20/20, Exhibit II; E. Carless Hearing Transcript, 1/20/21, Exhibit JJ; S. Evans Hearing Transcript, 9/10/19; Exhibit KK; C. Hurley Hearing Transcript, 8/24/20, Exhibit LL; Hearing

2

Transcript, 8/24/20, Exhibit MM; R. Shelton Hearing Transcript, 2/4/20, Exhibit NN; G. Harlow Hearing Transcript, 7/15/20, Exhibit OO; Hearing Transcript, 7/15/20, Exhibit PP; S. Davis Hearing Transcript, 8/7/20, Exhibit QQ; C. Roberts Hearing Transcript, 11/24/20, Exhibit RR; A. Thompson Hearing Transcript, 8/10/20, Exhibit SS; M. Long Hearing Transcript, 8/14/20, Exhibit TT; J. Thomas Hearing Transcript, 12/28/20, Exhibit UU; Hearing Transcript, 11/30/20, Exhibit VV; M. Johnson Hearing Transcript, 12/20/21, Exhibit WW; T. Jones Hearing Transcript, 11/30/20; Exhibit XX.

4.  16B 33.01 proceedings take place almost always within 48 hours of arrest. (Donald Kearbey deposition, Exhibit D, p. 68).

5.  If a person does not get released at the 33.01 hearing, they get a separate hearing under rule 33.05 within seven business days. (Exhibit D, p. 69; Exhibits UU, VV, WW, XX).

6.  Beginning on July 1, 2019, the Twenty-Second Judicial Circuit began providing counsel (the "contract attorneys") to all arrestees who did not have a private attorney or an assigned public defender to represent them at their initial appearance. (Exhibit A, pp. 83-84, Exhibit H thereto; Exhibit B, p. 160; Exhibits I-PP.)

7.  Funding for the contract attorneys is from the Twenty-Second Judicial Circuit budget. The cost for the contract attorneys is $75,000 per year. (Exhibit A, p. 178-179).

3

8. The presiding judge has authority to shift money in the Twenty-Second Judicial Circuit's budget in the same fiscal year if necessary. (Ex. A, p. 181).

9. Every contract attorney has significant criminal defense experience. (Melinda Gordon deposition, Exhibit E, pp. 14, 24).

10. Prior to initial appearance hearings, the contract attorneys are provided access to the Pre-Trial Bond Officer's Report resulting from the interview, the warrant application, and the probable cause statement. (Exhibit A, p. 114; Exhibit B, pp 45-46; Anthony Muhlenkamp affidavit, Doc. No. 165-02, Exhibit F, paragraph 5; Eric Barnhart affidavit, Doc. No. 165-01, Exhibit G, paragraph 5).

11. The Pre-Trial Bond Officer's Report contains extensive information regarding the arrestees' background and personal circumstances including criminal history, ties to the community, financial information, including current employment and pay, assets, other income, monthly expenses, amount Defendant could post on a cash bond, physical and behavioral needs, employment and educational history, and previous failures to appear. (Exhibit C, pp. 75-76, exhibit 4 thereto).

12. The information provided to the contract attorneys is generally provided 1-3 hours before the hearing. (Exhibit B, pp. 43-46; Exhibit E, pp. 34-35).

4

13. At this time, the vast majority of arrestees are interviewed prior to their 33.01 hearing. (Exhibit B, p. 47).

14. Contract attorneys have the opportunity to call family members as part of their preparation for the hearings. (Exhibit E, p. 68).

15. Contract attorneys can also speak to their clients prior to going on the record. (Exhibit B, pp. 55-56; Exhibit E pp. 33, 37-38).

16. A phone is currently provided for private conversations between the contract attorneys and their clients. (Exhibit B, pp. 55-56; Exhibit C, pp. 96-97; Exhibit E, p. 37).

17. In April or May of 2020, the Court put a sign in the video room where the arrestees are located informing them of the existence of the phone for contacting their attorney. (Exhibit A, pp. 185-187).

18. The Court, court staff, and prosecutor step out and leave the room if contract counsel request it to speak with their clients confidentially during hearings. (Exhibit E, pp. 37-38, 40-41; Exhibit F, paragraph 7).

19. Contract counsel also have the ability to inquire of their client about factors relevant to the hearing at the hearing. (Exhibit E, pp. 45-46, 53-54; Exhibit F, paragraph 7; Exhibit G, paragraph 7, Exhibits I-TT).

20. At hearing, both sides are allowed to present evidence to the Court. (Donald Kearbey Corporate Rep. deposition, Exhibit H, pp. 68-69; Exhibits I-TT).

5

21. The referenced 33.01 procedures in place do not limit the contract attorneys from performing their duties competently and zealously. (Exhibit F, paragraph 9; Exhibit G, paragraph 9).

22. Contract counsel will at times ask for bonds beyond the ability of their clients to pay if counsel feels it is in the client's best interest. (Exhibit E, pp. 76-77).

23. Arrestees sometimes advise the Court at hearing that they can pay more than they told the Bond Officer. (Exhibit C, p. 173).

24. As part of the process of developing the 16B procedures, the Court met with various social agencies, who also currently provide information to defense counsel at some hearings. (Exhibit A, pp. 96-97; Exhibit B, p. 52; Exhibit E, pp. 47-48).

25. No contract attorneys have reached out to the Court about a lack of confidential access to arrestees. (Exhibit A, p. 192).

26. The Court made changes to facilitate the faster transmission of public defender applications for arrestees so that arrestees also had counsel for the 33.05 hearings. (Exhibit A, pp. 100-102; Exhibit C, p. 39).

27. More specifically, the bond officer now offers the public defender application during the interview to the arrestee so that they can apply for counsel, (Exhibit A, pp. 99-102).

28. The public defender application is then given to the public defender immediately, which has speeded up the process. (Exhibit A, p. 102).

29. It is very rare that an individual has a 33.05 hearing and does not have a private attorney retained or a public defender appointed. (Exhibit E, pp. 17-18).

30. If someone has still not retained counsel and the Public Defender has not entered, the Court will ask contract counsel to represent that individual at the hearing, but will permit the record to be left open for supplementation. (Exhibit E, pp. 16, 19).

31. The Defendant Judges Court hired a Pre-trial Services Coordinator, Sarah Phillips, who began work on February 3, 2020. (Exhibit C, p. 10).

32. Phillips has a graduate degree in social work and public health. (Exhibit C, p. 13).

33. Phillips took the job as it was a good fit for her interests in criminal justice reform and supporting people who have needs. (Exhibit C, pp. 11-12).

34. Prior to assuming this position, Phillips had seen a handful of initial appearances approximately five years ago. (Exhibit C, pp. 34- 35).

35. As Pre-trial Services Coordinator, Ms. Phillips' duties include attending Division 16B hearings, meeting with Judges at the beginning of the

week, facilitating referrals for services, and completing various projects. (Exhibit C, pp. 53-54).

36. As part of her duties as Pre-trial Services Coordinator, Phillips revised the Pre-Trial Bond Officer's Report to include more financial information and a specific declaration that the arrestee understood information provided in the pretrial interview would be provided to the judge in determining the arrestee's bond. (Exhibit C, pp. 74-79, exhibit 4 thereto).

37. Phillips also created some bench books, which provided materials intended to help the judges orient themselves to Division 16B procedures. (Ex. C, pp. 122-124).

38. The bench books included information about resources that were available to meet some of the needs the judges were identifying or to mitigate the risks that the judges were identifying. (Ex. C, p. 123).

39. The bench books also include scripts with language taken from Rule 33.01 when judges are setting conditions of release so that they can use that language and track the factors that they should be considering. (Ex. C, p. 124; Ex. H, p. 117).

40. Phillips also provided information regarding community resources for the contract attorneys to suggest providers to the Court for any bond conditions the Court may suggest. (Exhibit E, pp. 96-97).

8

41. Phillips also led efforts to apply for a federal grant, which was ultimately awarded, which resulted in the grant of $996,000 over three years. (Exhibit B, pp. 163, 171).

42. The grant funds will be directed to staffing three additional social workers, funding for electronic services, and a software program which provide reminders of court dates in several ways. (Exhibit B, pp. 163, 171-174).

43. The Twenty Second Judicial Circuit has also changed providers for its GPS program. The new provider provides an app which allows for text warnings. (Exhibit B, p. 173; Exhibit C, p. 54).

44. The Bond office had a copy of a bond schedule in its office, which it used for training purposes. (Exhibit D, pp. 20, 27-28).

45. The bond office did not require it to be used in any manner in preparing its recommendations. (Exhibit D, pp. 20, 27-28).

46. At the direction of the presiding judge, the bond office discontinued any use of the bond schedule in the spring of 2020. (Exhibit B, p. 195; Ex. C, pp. 65-66).

47. The judges did not use the bond schedule in any manner in setting bonds. (Exhibit C, pp. 28-29; Exhibit H, p. 39).

48. The Bail Project routinely has posted bail when an arrestee has received a bond below $5,000. (Exhibit E, pp. 75-76).

9

49. The Bond Commissioners' policy is no longer to recommend cash bonds. (Exhibit A, pp. 139-140; Exhibit C, pp. 64-65).

50. A significant number of individuals currently get released at the 33.01 hearings. (Exhibit C, p. 101).

51. In August of 2020, approximately 75% of people coming through Division 16B were released. (Ex. C, pp. 148, 173).

52. 50 percent of those individuals were released by personal recognizance at the 33.01 hearing. (Ex. C, p. 177).

53. Shortly after July 1, 2019, the Office of State Court Administrator circulated forms for the individual circuits to use to implement the new rules. (Exhibit A, p. 205; Exhibit B, pp. 77-78).

54. The Twenty Second Judicial Circuit modified them and put them in place. (Exhibit B, pp. 77-79).

55. The Twenty-Second Judicial Circuit also hired a midnight person to help ensure as many arrestees as possible could be interviewed. (Exhibit D, pp. 86-87).

56. In the average year, the Twenty-Second Judicial Circuit processes from 2,000-4,000 felonies per year. (Ex. D, pp. 157-158).

57. The Court anticipates the 16B program will continue and Court administrator Nathan Graves has been instructed to seek funding for the next fiscal year, which begins July 2021. (Exhibit B, pp. 62, 68).

58. The Court has not received any complaints about representation provided by contract attorneys at initial appearances. (Exhibit B, p. 65).

59. The sum of the Court's efforts exceed what is being done in other circuits in the State of Missouri. (Exhibit C, p. 165).

Respectfully submitted,

ERIC S. SCHMITT
Attorney General

/s/ *Robert J. Isaacson*
D. John Sauer, Mo. Bar #58721
  Solicitor General
Jesus A. Osete, #69267
  *Deputy Solicitor General*
Robert J. Isaacson, #38361
  *Assistant Attorney General*

Office of Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870 telephone
(573) 751-0774 facsimile
John.Sauer@ago.mo.gov

*Attorneys for Defendant Judges*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March, 2021, a true and correct copy of the forgoing was served electronically via the Court's electronic filing system upon all counsel of record.

*/s/ Robert J. Isaacson*
