UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID DIXON, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 4:19-CV-00112-AGF |
| | ) |
| v. | ) |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS SHERIFF BETTS AND CITY OF ST. LOUIS

Defendants Sheriff Betts and the City of St. Louis[1] have moved for summary judgment on count III of plaintiffs' complaint [ECF 1]. Plaintiffs allege that the Sheriff and the City are liable for "the Sheriff's unconstitutional policy and practice of having his deputies direct individuals in their custody not to speak and thereby not to challenge their release conditions during their first appearance before a judge." ECF 1, ¶20. The Sheriff reads the complaint in this regard as alleging a due process violation within count III of the complaint, which asserts that all defendants "provide absolutely no process before detaining individuals for weeks on unaffordable monetary release conditions. No hearing occurs, much less a hearing with sufficient process. Since no hearing occurs, no determination is made that any government interests require detention, in violation of Plaintiffs' procedural due process rights." *Id.,* count III, ¶78.

---

[1] Defendant Sheriff Betts is sued in his official capacity. Complaint [ECF 1] ¶20. Sheriff Betts is a "county" officer under Missouri law. *St. Louis County v. State*, 482 S.W.3d 842 (Mo.App.W.D. 2016); Mo.Rev.Stat. §57.450. However, the City is both a city and a county under Missouri law. Mo.Const. art. VI, §31. Because suits against government officers in their official capacity are generally viewed as suits against the entity, *Kentucky v. Graham*, 473 U.S. 159 (1985), the City (*qua* county) joins in this motion. However, for simplicity, this memorandum will generally refer only to the Sheriff.

The uncontroverted facts of record are that, before and after the filing of this action, persons arrested on state charges in the City of St. Louis were and are taken before a judge for their first or initial appearance shortly after the arrest warrant is issued. Sheriff's Statement of Uncontroverted Material Facts (SUMF) 4, 9, 10, 19, 26, 27. The hearing is conducted via videoconference. SUMF 4. Immediately before, during and after initial appearance, arrestees are in Sheriff's custody in an area of the City Justice Center set aside for the purpose. SUMF 3, 4, 5. After initial appearance, if not released, arrestees are transferred to the custody of the City's Corrections Department, which is not supervised by the Sheriff.[2] SUMF 3, 5.

Plaintiffs have produced 11 arrestees who claim that Sheriff's deputies told them not to speak or address the court at initial appearance; an additional six arrestees have not claimed anything regarding the conduct of Sheriff's deputies but have described very limited exchanges with the judge. SUMF 43. The initial appearances of these arrestees all occurred during the period October 2018 to January 2019. *Id.*; see also SUMF 10, 19, 26, 31. Some of these arrestees (including class representatives) ignored the deputies' alleged instruction and addressed the court anyway. SUMF 11, 21. Plaintiffs themselves insist that the judges were uniformly dismissive of anything they said, either refusing to consider their protestations or instructing them to wait until they had representation. SUMF 43; see also SUMF 12, 22, 34. The record is devoid of any evidence that the Sheriff's deputies threatened or intimidated arrestees into silence, or punished them in any way after initial appearances if they spoke. See SUMF 43.

The written policies of the Sheriff's department do not authorize deputies to silence prisoners in their custody during court appearances, although deputies are instructed to take

---

[2] There is no allegation that any City police officers or Corrections employees give any instructions to arrestees regarding initial appearance. Arrestees are regarded as in police custody until the Sheriff takes custody immediately prior to initial appearance.

2

action to preserve order or in response to direction from the judge. SUMF 6, 7. Deputies are trained to treat all prisoners respectfully and not to engage in conversation with them, or give them advice. *Id.*

Neither the Sheriff nor any of his supervisors having responsibility for initial appearance hearings has ever observed deputies giving instructions to arrestees at first appearance not to address the court. SUMF 38, 39, 40. Deputies may instruct arrestees as a group to be quiet in the holding area, and they have instructed arrestees not to speak over the judge. SUMF 8.

Neither the Sheriff nor his supervisors at initial appearance has ever received a report or complaint that deputies instruct arrestees not to speak at initial appearance. SUMF 40. Sheriff Betts has been in office since January 2017. SUMF 2. Prior to his election as Sheriff, he himself served as a deputy and was involved in the conduct of initial appearances. *Id.* During his service as a deputy, he was not aware of nor did he observe a practice of instructing arrestees not to speak at initial appearance. SUMF 38. No such practice exists, as far as the corporate knowledge of the Sheriff's Department is concerned. *Id.* Further, plaintiffs themselves acknowledge that they never made any complaint to anyone concerning the deputies' instructions at their initial appearances, until the filing of this lawsuit. SUMF 17, 23, 33.

Both before and after the filing of this action, the 22nd Circuit processed thousands of felonies annually. SUMF 44. Pretrial release interviews averaged 50-100 per week. SUMF 45. Initial appearances during Sheriff Betts' term of office, therefore, have run into the many thousands.

The practice regarding the conduct of initial appearances in the 22nd Circuit has changed since the filing of this action and the implementation of new Missouri Supreme Court rules. SUMF 44, 45. Arrestees are now represented by counsel at first appearance. SUMF 47. In

addition, pretrial release commissioner interviews have become more regular and elaborate, and the judges actively inquire of arrestees concerning their financial resources and other factors. SUMF 37, 45. There is no evidence that deputies currently give any instructions to arrestees to prevent them from speaking at such hearings.

**1. Plaintiffs' claim against defendant Sheriff fails as a matter of law, because the record shows incontrovertibly that neither the Sheriff nor any other supervisory officer had any notice prior to the filing of this lawsuit of the claimed "practice" of deputies instructing arrestees not to speak at initial appearance, such that the "practice" amounted to an actionable unconstitutional custom under 42 U.S.C. §1983.**

Plaintiffs' claim against the Sheriff and *a fortiori* against the City does not rest on any formal decision or policy adopted by the Sheriff as the policymaker for the Sheriff's Department. The Sheriff's formal policies regarding deputy training and the handling of prisoners contain nothing that authorizes or promotes the practice alleged by plaintiffs. While the policies do not expressly prohibit deputies from instructing prisoners not to speak at initial appearances, the absence of an official policy can create liability under § 1983 only "where a [municipality's] inaction reflects a deliberate indifference to the constitutional rights of the citizenry[.]" *Powell v. St. Francois County*, No. 4:14-cv-1230-AGF, 2016 U.S. Dist. LEXIS 19534 (E.D. Mo. Feb. 18, 2016), citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007) (*en banc*), and *Atkinson v. City of Mountain View*, 709 F.3d 1201 (8th Cir. 2013). Thus, the plaintiffs' claim must rest on a showing of an unlawful custom, which also entails a showing of deliberate indifference.

The liability issue before this Court was recently summarized by Judge Clark in *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 892ff. (E.D. Mo. 2019), and defendants will take the liberty of

4

borrowing liberally from his opinion. A plaintiff cannot establish §1983 liability by only identifying conduct properly attributable to the municipality; instead, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards* of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. In *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017), the Eighth Circuit observed that, "The Supreme Court has set a high bar for establishing municipal liability under § 1983."

Proof of "custom" liability under §1983, therefore, requires (1) proof of existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct was the "moving force" behind the plaintiff's injury. *Metler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson v. City of Mountain View,* 709 F.3d at 1216. Plaintiff's claim against the Sheriff in count III fails on all counts.[3]

First, plaintiffs can point to nothing showing the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct" by Sheriff's deputies. At best, plaintiffs supply

---

[3] City defendants do not address the claims in counts I and II, which focus on the lawfulness of 22nd Circuit bail orders and the City defendants' role in enforcing them. City defendants expect that the defendant Judges will refute those claims.

5

a snapshot of a few days' initial appearances over the course of a few months--months selected by plaintiffs. The Eighth Circuit has not directly addressed the quantum of "continuing, widespread, persistent" conduct that can establish liability, but its view closely parallels the Fifth Circuit's view that when a plaintiff uses prior incidents to allege a pattern, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*). Both the Eighth and Fifth Circuits reason that to hold municipalities liable for conduct that does not rise to the level of continuing, widespread frequency would create the *respondeat superior* liability that the Supreme Court repeatedly has rejected in §1983 actions. When a plaintiff alleges an unwritten or unofficial policy, there must be evidence of a practice, so permanent and well-settled as to constitute a custom, that existed--a custom having the force of law.  See *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018).

      The record in this case simply does not create a genuine issue of fact as to whether the alleged Sheriff's practice was sufficiently persistent, widespread and permanent as to amount to an actionable custom.  The record reflects a relatively small number of initial appearances during a limited time, at which some plaintiffs assert that Sheriff's deputies instructed them not to speak. This does not suffice to establish a triable issue of fact.  Indeed, the undisputed evidence of express policies that allowed no such behavior negates any inference of a well settled, permanent and widespread unconstitutional practice.  E.g., *Chestnut v. Wallace,* 2018 U.S.Dist.LEXIS 190476 (E.D.Mo. 2018), aff'd on other grounds, 947 F.3d 1085 (8th Cir. 2020).

      Second, assuming that Sheriff's deputies frequently and persistently behaved as alleged by plaintiffs, the record fails to create a genuine issue of fact as to notice to the Sheriff of

6

unconstitutional behavior of subordinates and disregard of that behavior that amounted to deliberate indifference. Deliberate indifference demands evidence of conduct akin to criminal recklessness. *A.H. v. St. Louis County,* 891 F.3d 721, 727 (8th Cir. 2018). A policymaker cannot be deliberately indifferent to a practice of which he is unaware. As noted above, notice is the touchstone of deliberate indifference. Plaintiffs themselves acknowledge that the supposed practice that they attack was not made known by them to the Sheriff or anyone in City government until the filing of this action.

Finally, as will be discussed below, plaintiffs have failed to show that any Sheriff's practice was the "moving force" in any deprivation of plaintiffs' constitutional rights.

**2.    Plaintiffs' claim against defendant Sheriff fails as a matter of law, because the record shows incontrovertibly that there was no causal connection between any purported practice of deputies instructing arrestees not to speak at initial appearance and the denial of a constitutionally adequate initial bond determination.**

Plaintiffs' claim against the Sheriff seems to derive from the basic proposition that an opportunity to be heard is one of the desiderata of procedural due process (the other, of course, being notice). Plaintiffs would have it that the deputies' supposed instructions not to speak somehow deprived them of their opportunity to be heard at initial appearance regarding their bond settings. Defendants have found no cases precisely in point. The closest analogies would seem to be cases in which the state, either through a prosecutor or a judge, intimidated defense witnesses into refusing to testify at a trial or hearing. See *Webb v. Texas*, 409 U.S. 95 (1972)(judge scaring defense witness off stand violated due process); *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976)(threats by prosecutor to defense witness). On the other hand, there are also cases noting the propriety of admonishing defendants not to say anything that could

7

incriminate them, and reversing convictions when a defendant at a pretrial hearing was not adequately advised of his right to remain silent, and pretrial hearing statements were then used against him.  See *United States v. Portillo*, 969 F.3d 144 (5th Cir. 2020); *United States v. Dohm*, 618 F.2d 1169 (5th Cir. 1980)(statements made at bail hearing after inadequate admonition were illegally admitted into evidence; conviction reversed).

     In the case at bar, it is difficult to see the supposed deputies' practice of instructions to arrestees denied plaintiffs due process in fact.  Plaintiffs themselves attack the 22nd Circuit for failing to provide an "adequate" hearing entirely without regard to what deputies did or did not do.  Complaint, ECF 1, ¶78.  Moreover, plaintiffs excoriate the 22nd Circuit judges for refusing to listen to them even when they did speak.  See SUMF 22. 34.  In any event, the record is incontrovertible that arrestees *were* present for their initial appearance hearings and in fact could and did address the court.  The deputies had (and have) no control over how the judge would choose to conduct the hearing.  See SUMF 41.  That the class plaintiffs were denied any revision in their bond settings cannot, under normal principles of causation, be attributed to the deputies' conduct or to the Sheriff's indifference to repeated reports of that conduct.

     Indeed, it is difficult to see how a custom or practice of indifference to individual constitutional rights can be shown when the constitutional right in question is not clearly established.  *Szabla v. City of Brooklyn,* 486 F.3d at 394.  It cannot be doubted that no personal liability could be fastened on the deputies for giving instructions to remain silent to arrestees at first appearance.  Defendants can locate no robust consensus of precedent that puts beyond debate the illegality of such conduct.  On the contrary, the cases discussing the general due process rights of criminal defendants before and during trial deal either with total exclusion of the defendant from a hearing, or with active intimidation of witnesses or the defendant to prevent

8

testimony at trial or a hearing.  See *Kentucky v. Stincer,* 482 U.S. 730 (1987)(no due process violation in excluding defendant from witness competency hearing); *United States v. Gagnon*, 470 U.S. 522, 527 (1985)(no due process violation in excluding defendant from court conference with juror); *United States v. Portillo*, supra; *United States v. Dohm*, supra.  Liability under §1983 is proper only when a purported municipal custom is the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  See, e.g., *Ball-Bey v. Chandler*, 415 F. Supp. 3d at 893, citing, *inter alia, Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

In the case at bar, plaintiffs' own allegations demonstrate that the alleged practice of defendant Sheriff played no role in the denial of any hearing on bond settings at first appearance. Moreover, as a matter of law, such instructions, if given, would not have violated any clearly established rights, and so even indifference of the Sheriff to the practice could not, as a matter of law, have caused constitutional injury.  Injunctive relief against the Sheriff is, therefore, not warranted.[4]  Judgment can and should be entered in favor of the Sheriff.

**3.     The uncontroverted material facts of record demonstrate that plaintiffs lack standing to seek injunctive relief against hypothetical future interference with their rights to speak at bond hearings; and, in any event, the uncontroverted material facts show that plaintiffs' claim against the Sheriff is moot, as every arrestee at initial appearance is afforded a full opportunity to be heard by the court.**

---

[4] Injunctive relief under §1983, like damages, must be predicated on an illegal policy or custom causing or threatening to cause a violation of a constitutional right.  Absent a cognizable constitutional violation, no equitable or monetary relief is warranted.  *Los Angeles County v. Humphries*, 562 U.S. 29  (2010).

Because the Court has rejected defendants' standing and mootness arguments previously, ECF 95, 242, the Sheriff will only briefly revisit those issues at the risk of trespassing on the Court's patience.

The Court has previously concluded that plaintiffs have standing to seek injunctive relief against the Sheriff regarding the supposed custom of silencing arrestees at initial appearance. However, the record is pellucid that the injury suffered by the named plaintiffs in that regard-- presumably a procedural due process violation--was complete once the hearing concluded. At that point, the possibility that they would someday again be subject to an initial appearance and would be silenced in the same way was entirely hypothetical. *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), and *Gerstein v. Pugh,* 420 U.S. 103 (1975), cited by the Court and plaintiffs on the issue of standing, do not address this issue. The rationale of those cases was that the named class representatives, at the time of filing suit, were in custody pursuant to orders that denied due process as a matter of law. The affected class, therefore, consisted of persons who were in custody under such orders. Standing, therefore, did not turn on the class representatives' status at the time of certification, nor on the likelihood of future arrest, but on the reality of continued illegal custody of at least some class members for the same reason as the original plaintiffs.

Here, by contrast, the class plaintiffs' claim against the Sheriff does not turn on continuance in custody of class members, but on specific alleged misconduct of individual Sheriff's deputies at the time of plaintiffs' initial appearance. Even at the time the suit was filed, plaintiffs could not show any likelihood of future irreparable harm to them as a result of the Sheriff's alleged constitutional violation. Like an illegal arrest, or the application of a chokehold, the supposed infringement of plaintiffs' due process rights by the Sheriff was complete when it

10

occurred. The likelihood of repetition of that conduct as to any member of the class in the future was and is entirely speculative. Thus, this case is in the mold of *O'Shea v. Littleton,* 414 U.S. 488 (1974) and *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983). Further, as demonstrated above, there is no causal connection between the alleged silencing by Sheriff's deputies and the alleged denial of due process in bail determinations at initial appearance, and so plaintiffs' demanded relief will not redress any demonstrable future injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

Finally, the claim against the Sheriff is moot. Plaintiffs themselves must acknowledge that the procedure for bond setting at initial appearance in the 22nd Circuit has changed radically. Plaintiffs' recidivist class member Robards himself has experienced the new procedure. Nothing interfered with his opportunity to be heard that his 2020 initial appearance. SUMF 36-37. Intervention by this Court, by means of an injunction, in the supervision of deputies serving as court officers in the 22nd Circuit is wholly unnecessary and would fly in the face of basic principles of federal jurisdiction. See, e.g., *County of Los Angeles v. Davis*, 440 U.S. 625, 631ff. (1979).

The claim against defendant Sheriff Betts should be dismissed.

## CONCLUSION

For the foregoing reasons, the Sheriff and City defendants respectfully urge that judgment be entered in their favor on count III of the plaintiffs' complaint; in the alternative, said defendants request that said count be dismissed without prejudice for lack of jurisdiction.

    Respectfully submitted,

    MICHAEL A. GARVIN
    CITY COUNSELOR
    /s/ Robert H. Dierker
    Robert H. Dierker 23671(MO)
    Deputy City Counselor

dierkerr@stlouis-mo.gov
Catherine A. Dierker 70025(MO)
Assistant City Counselor
dierkerc@stlouis-mo.gov
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS CITY, GLASS AND BETTS