# EXHIBIT 117

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Michael J. Colona, Judge

STATE OF MISSOURI,       )
                        )
      Plaintiff,       )
                        )
   vs.               )   1922-CR03798
                        )
████████████      )
                        )
     Defendant.    )

INITIAL APPEARANCE HEARING

On the 9TH day of December, 2019, the above-entitled cause came on regularly for hearing before the Honorable Michael J. Colona, in Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Steven Payne, City of St. Louis, State of Missouri.

The Defendant was present by video and was represented by Chris Faerber.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1                    December 9, 2019

2          THE COURT:    Sir, I'm sorry, you're Mr. ███?

3          THE DEFENDANT:    Yes, sir.

4          THE COURT:    Very good.  My name is Judge Colona.

5  Present in the courtroom today is an attorney for the State

6  of Missouri, and an attorney that's been appointed to

7  represent you during this initial hearing.  I'm going to

8  tell you what you're charged with just to make sure you know

9  what's going on.

10          The State of Missouri is going to give me a

11  recommendation on what do with your bond.  Your attorney

12  will give me a recommendation on what to do with your

13  bond.  I may have some additional questions for your

14  attorney.  Your attorney may have some additional

15  questions for you.

16          But I would ask that you not say anything unless

17  directed to your attorney 'cause a lot of times when

18  people say stuff, they accidentally jam themselves up and

19  then just makes it easy for me.  I just leave you where

20  you are, all right.  So I will come to you to ask you if

21  you got any questions or if you want to holler at your

22  attorney, but for right now let me get through some of

23  this initial stuff in here and hear the arguments from the

24  two lawyers.

25          So you're charged with endangering the welfare

1    of a child, creating a substantial risk, first degree.

2    First offense.  So it's a Class D felony.  So you're

3    looking at -- what is that -- one to seven in the Missouri

4    Department of Corrections.  You also have a second charge

5    of endangering the welfare of a child and a third charge

6    of stalking.

7            What is the current bond?

8            MR. PAYNE:    Current bond is 35,000, ten percent

9    authorized.

10            THE COURT:    What is your recommendation?

11            MR. PAYNE:    Our recommendation is that the bond

12    remain at 35,000, 10 percent authorized and that he have no

13    contact with victim ZG, BB, or MB.  Also report to EMASS

14    once every 30 days and be placed on GPS monitoring to

15    enforce the stay away order.

16            THE COURT:    Okay.  Defense?

17            MR. FAERBER:    If I may inquire, your Honor?

18            THE COURT:    Go right ahead.

19            MR. FAERBER:    Mr. ██████, my name is Chris

20    Faerber.  I'm a local criminal defense attorney.  I am

21    representing you today for the purposes of this hearing

22    only, and that the purpose of this hearing is to determine

23    whether or not there is a more reasonable bond and if we can

24    get you out on that.  So please do not say anything about

25    the charges alleged against you or any associated facts as

1    you are on that invoking your right to remain silent, okay.

2              THE DEFENDANT:    Yes, sir.

3              MR. FAERBER:    Okay.  So I see here that you're

4    currently working as a cook; is that right?

5              THE DEFENDANT:    Yes, sir.

6              MR. FAERBER:    Okay.  And $12 an hour?

7              THE DEFENDANT:    Yes, sir.

8              MR. FAERBER:    Now you listed yourself as homeless,

9    but you have to be sleeping somewhere.  Where have you been

10   sleeping?  Like with friends or with family or what?

11             THE DEFENDANT:    Well --

12             THE COURT:    So, Mr. █████, we got a little note

13   here that says you are homeless, all right.  What your

14   attorney is trying to get to and what I want know is where

15   were you staying before they said you were homeless?

16             THE DEFENDANT:    Well, I only been officially

17   homeless sleeping in my car for about a week, but before

18   that sleeping with family members.

19             MR. FAERBER:    You could go back and stay with

20   family members I'm hoping?

21             THE DEFENDANT:    Yes.

22             MR. FAERBER:    Okay.  And if you were to be

23   released on some bond, you would be able to stay away from

24   the victims in this case, including your children --

25             THE DEFENDANT:    Yes.

1              MR. FAERBER:    -- and their mother until this case

2    is disposed of, right?

3              THE DEFENDANT:    Correct.

4              MR. FAERBER:    No contact whatsoever even through

5    your family members or friends.  Would you be able to do

6    that?

7              THE DEFENDANT:    Yes, sir.

8              MR. FAERBER:    How long you been locked up?  Two

9    days?

10             THE DEFENDANT:    I've been locked up since

11   Wednesday.  Well, since Monday.  Your possession since

12   Wednesday.  Eight days.

13             MR. FAERBER:    Do we know when he was booked on

14   this?

15             THE COURT:    Are there any other pending cases?  I

16   don't see any, but almost sounds like there is.

17             BOND COMMISSIONER:    He was booked December the 5th

18   at 5:00 o'clock.

19             MR. FAERBER:    So he did not appear within 48

20   hours.  Do we have a reason?  Well, anyway I'll ask a couple

21   more questions.  It looks like you've had probation in the

22   past.  You completed those probations, right?

23             THE DEFENDANT:    Correct.

24             MR. FAERBER:    So when some authority tells you

25   what to do and where to show up it looks like you were able

1    to do that, right?

2                  THE DEFENDANT:    Correct.

3                  MR. FAERBER:    Thank you.

4                  THE COURT:    Anything further?

5                  MR. PAYNE:    Judge, the State would just like to

6    highlight the facts of this case for the Court's

7    consideration and why we are making the recommendation we

8    are.

9                  The defendant and victim do have children in

10   common.  They were in a vehicle together when an argument

11   ensued at which point the defendant left the vehicle and

12   punched out her window.  He then made the statement, "I'm

13   going to hurt you.  I'm so angry I could kill somebody

14   right now."  She was frightened so she drove away from the

15   defendant at that time.

16                 He pursued her in his own vehicle at a high rate

17   of speed disobeying traffic signals and signs causing the

18   victim to crash into another vehicle creating substantial

19   damage to her driver's door.  Both of their children, BB

20   and MB, were present throughout both the argument and the

21   chase that then followed.

22                 As already mentioned in the bond commissioner's

23   report it does mention that the defendant is homeless.

24   There are two prior convictions that the State was able to

25   locate; one for unlawful use of a weapon in which he

1    received a three year backup on an SES and completed that

2    probation.

3              The other is for possession of a controlled

4    substance where he completed an SIS probation.

5    Additionally, Judge, I do have a victim impact statement I

6    would like to read into the record if I may?

7              THE COURT:    Go ahead.

8              MR. PAYNE:    "Dear Judge, please can you plead my

9    cries to the judge in court today against my abuser, ████

10   ████    Do not lower his bond.  This should be attempted

11   murder.  He tried to have myself, the mother of his own two

12   toddler children, killed by a car crash in the heat of his

13   anger, forcing me in a high speed chase just because I

14   noticed his rage and decided to leave him there parked in

15   the front of where he knows we reside.

16              I drove off to avoid making him more mad because

17   I have suffered him from -- or suffered him becoming more

18   violent and vicious in prior domestic episodes.  This

19   guy's entire family has threatened to kill me.  He found

20   me in traffic with an intent to kill me.  Please, we could

21   have crashed and died on November 23rd by his motives.

22              Plus, he is homeless.  If he is on the streets,

23   I do not trust him.  What you can set up for me, he has a

24   history of mental illness issues that needs to be treated

25   by the law."

1        And based on the victim impact statement along

2   with the events that occurred and the pursuit which posed

3   a significant public safety risk during his outrage, it is

4   the State's position that a cash bond is warranted in this

5   case.

6        THE COURT:   Anything further?

7        MR. FAERBER:   Your Honor, I would just ask that

8   whatever bond be reasonable and affordable.  He has shown

9   his ability to follow directions and stated to you in this

10  courtroom that when instructed to have no contact, he would

11  have no contact.

12       And again I bring up the fact that -- in fact, I

13  believe he walked down his SIS probation early.  He's got

14  a job.  Losing that job really serves no public policy

15  interest.  He would be able to go out, hire an attorney,

16  and as he said he can stay with family and that likely

17  would be for free.

18       THE COURT:   Well, I'm a little bit concerned as

19  far as the criminal history is concerned.  And while he may

20  have walked down the probation earlier on the drug case,

21  he'd catch a gun case a couple years later.  From my

22  perspective a gun case is a case of violence.  And here we

23  have a pretty serious accusation not just against the

24  victims listed in the information, but also for the public

25  at large.  Next thing you know -- I mean I guess it's a good

1   thing that there's nothing on there that tells me it's

2   either on Hall Street or Natural Bridge because then we'd be

3   jacking the bond up.

4               So, Mr. ████, I think a bond of $35,000

5   ten percent with the special conditions of no contact with

6   the victim, EMASS supervision and a GPS is extremely

7   reasonable based upon your criminal history and a concern

8   for the public safety, not just for the alleged victims,

9   because I mean, hey, you're innocent as far as I'm

10  concerned.  But the allegations are pretty serious.

11              You couple your criminal history with the gun

12  charge, with the allegation that these people are afraid

13  for their safety and you allegedly put the public at risk

14  by the shenanigans of speeding up and down like that.  I'm

15  going to leave your bond where it is.  Now you will be

16  given --

17              THE DEFENDANT:    Can I speak?

18              MR. FAERBER:    What are you going to say?  I would

19  suggest just not speaking.

20              THE COURT:    If you have a question you want to

21  shoot at your lawyer, go ahead and holler at your lawyer,

22  but then again I -- everybody in the courtroom that's here

23  can hear whatever you're saying so sometimes like I said you

24  say something that accidentally jams you up.  And, sure,

25  while I might reconsider what it is I just said, it could be

1  in the exact opposite direction where I'm like, you know

2  what, fine, we're going to do no bond because now I'm more

3  afraid for the public safety.  So if you have a question you

4  want to ask your lawyer, go ahead.  Or are you done?

5          THE DEFENDANT:   Yes, I want to ask my attorney did

6  it show in the prior case, the unlawful use of a weapon,

7  that a weapon was not used, but it was also my weapon that I

8  had purchased and the reason that that weapon was unlawful

9  was because of the prior case that I had before that.  So it

10  was --

11          THE COURT:   And you are exactly correct.  And

12  that's what I assume when I see this.  But the facts is the

13  facts.  I can't change those, that you caught a gun case

14  after you caught the drug case.  So, you know, the reason

15  why you caught the case back in 2013, you know, it really

16  doesn't matter.  The fact is that you caught the case.

17          And I will tell you the only reason why I'm

18  leaving your bond the way it is and not increasing it is

19  because you have shown that once either you do make a bond

20  or get back on the street, for the most part you can do

21  what's asked of you.

22          But like I said, with the history and the

23  concern that I've heard from the alleged victim and again

24  from my perspective hearing about the chase that occurred,

25  you know, in order to make sure that the safety of the

1  public is looked out for, 35,000 ten percent is very

2  reasonable.  And it's very doable with some of the

3  organizations here in the City of St. Louis that work with

4  folks to post a bond.

5       So I'm going to give you two court dates.  Your

6  first court date will be December the 16th at 10:30 in the

7  morning.  At that point in time whatever judge is here

8  will revisit the bond to see if there is anything new that

9  has happened that might convince that judge to lower the

10  bond.  So seven days from now you're going to revisit this

11  issue.  You know, if you want to talk to your lawyer

12  between now and then, go right ahead.

13       The second court date I'm going to give you is

14  January 10th in Division 26 at 9 AM.  Okay?

15       THE DEFENDANT:   Thank you.

16       THE COURT:   Thank you, Mr. ████.

17       END OF TRANSCRIPT

18

19

20

21

22

23

24

25

1
CERTIFICATE

2
    I, ELLEN L. VINCE, Certified Court Reporter,

3
do hereby certify that I am an official court reporter for

4
the Circuit Court of the City of St. Louis; that on December

5
9, 2019, I was present and reported all the proceedings had

6
in the case of STATE OF MISSOURI, Plaintiff, vs. ████████

7
████████, Defendant, Cause No. 1922-CR03798.

8
    I further certify that the foregoing pages

9
contain a true and accurate reproduction of the

10
proceedings.

11

12

13

14

15

16
    /s/Ellen L. Vince

17

18
_____

19
ELLEN L. VINCE, CCR, CSR, CM
CCR #350

20

21

22

23

24

25

# EXHIBIT 118

1          IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                       STATE OF MISSOURI
2             Honorable Calea Stovall-Reid, Judge

3
STATE OF MISSOURI,            )
4                             )
                 Plaintiff,   )
5                             )
       vs.                    )     Cause No. 2022-CR01958
6                             )
IVORY SHARP,                  )
7                             )
                 Defendant.   )
8

9            BOND HEARING - INITIAL APPEARANCE

10                  NOVEMBER 23, 2020

11


12  FOR THE PLAINTIFF:          FOR THE DEFENDANT:

13  Mr. Jordan Smith            Mr. Eric Barnhart
    Assistant Circuit Attorney  Eric V. Barnhart, LLC
14  1114 Market Street, #401    7751 Carondelet Ave., Ste. 202
    St. Louis, MO  63101        Clayton, MO  63105
15

16

17

18

19

20

21

22

23          KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                   OFFICIAL COURT REPORTER
24            CITY OF ST. LOUIS CIRCUIT COURT
              TWENTY-SECOND JUDICIAL CIRCUIT
25

2

```
1         THE COURT:  Ivory Sharp.

2         SHERIFF:  Present.

3         THE COURT:  Mr. Smith, you may proceed.

4         MR. SMITH:  Your Honor, Mr. Sharp is charged with

5  unlawful possession of a firearm.  This case is pretty

6  straightforward.  He was pulled over for having unreadable

7  plates.  The officers could see a gun in the car, and the

8  defendant was a felon.  His prior felonies -- or his prior

9  felony conviction is from 2018.  It's a burglary in the

10 first degree.  Given the nonviolent nature of the offenses

11 and the nonviolent nature of his prior convictions as well

12 as we're not aware of any history of capias or anything else

13 that would indicate a flight risk, we ask the defendant be

14 released on his own recognizance but be required to check in

15 with EMASS on a monthly basis.

16         THE COURT:  Mr. Barnhart?

17         MR. BARNHART:  Thank you, Judge.  Mr. Sharp, how

18 are you doing?

19         THE DEFENDANT:  Good.

20         MR. BARNHART:  I'm going to ask you some questions

21 to try -- in the event to try to get you released on this

22 case.

23         THE DEFENDANT:  All right.

24         MR. BARNHART:  Right now your bond is at $5000, 10

25 percent, and the prosecutor is recommending a personal
```

1  recognizance.  The judge still has to sign off, so I'm going

2  to ask you some questions in the hopes the judge will sign

3  off.

4          THE DEFENDANT:  All right.

5          MR. BARNHART:  So are you working?

6          THE DEFENDANT:  I don't have like a real nine to

7  five.  I work for a private owner, a couple private owners

8  working on their properties, and I do part-time mechanic

9  work.  I work on cars part time.

10         MR. BARNHART:  How much money do you make a week?

11         THE DEFENDANT:  Right now since the COVID, I

12 haven't really had any jobs working on houses, but cars it's

13 been kind of slow too, so I probably make about like 2, $300

14 a week that goes towards bills and taking care of my

15 daughter.  I have a three-month-old daughter.

16         MR. BARNHART:  So the COVID has impacted your

17 ability to earn a living?

18         THE DEFENDANT:  Yes.

19         MR. BARNHART:  And if you got released, where

20 would you live at?

21         THE DEFENDANT:  5020 -- 5823 Etzel.  It's a

22 townhouse.

23         MR. BARNHART:  Who do you live with?

24         THE DEFENDANT:  My baby mama and my daughter.

25         MR. BARNHART:  Do you help take care of your

4

1   three-month-old daughter?

2          THE DEFENDANT:  I do everything.  She don't work.

3          MR. BARNHART:  Okay, so she works and you're

4   basically --

5          THE DEFENDANT:  No, she doesn't work.  I do

6   everything.

7          MR. BARNHART:  Okay.  And I think that's about it.

8   So can you afford $500 or not?

9          THE DEFENDANT:  No.

10          MR. BARNHART:  All right.  I'll be asking the

11   judge to follow the prosecutor's recommendation in this

12   case.  And Judge, I'm going to ask that the State's

13   recommending a personal recognizance, report to EMASS

14   monthly.  I'm asking that you follow.  He does work,

15   sporadically now because of COVID.  He's got a place to

16   live.  He's helping to raise a three-month-old daughter.

17   Thank you.

18          THE COURT:  Okay.  Now, Mr. Smith, I'm not

19   understanding your recommendation for a personal

20   recognizance.  I'm looking at the pretrial release exhibit,

21   and it states that Mr. Sharp was on probation.  The

22   probation was revoked in 2019.  It looks like there was a

23   probation revocation on two separate cases in 2019.  And

24   then he's got a receiving stolen property, failure to

25   appear, and that's a 2019 case out of St. Louis County.

1    THE DEFENDANT:  Can I say something?

2    MR. SMITH:  I'm not aware of the failure to appear

3  or stolen property cases.

4    THE COURT:  I'm looking at the pretrial exhibit.

5  What are you looking at?  Look at the pretrial release --

6    MR. SMITH:  -- prepping for this, Your Honor,

7  because it hadn't been filed yet.

8    THE COURT:  You know -- okay, open the case file

9  and --

10    MR. SMITH:  Judge, I'm looking at --

11    THE COURT:  -- at the exhibit.  He's got two --

12    MR. SMITH:  I see that.

13    THE COURT:  Actually, there's two of them listed,

14  and then it says he's wanted for larceny out of Indiana.

15    MR. SMITH:  All right.  I'll be honest, Your

16  Honor, that exhibit wasn't filed when I was doing my prep

17  sheet, so I was unaware that he was wanted for larceny.

18  Given that, I think GPS monitoring and perhaps a modest cash

19  bond might be appropriate, but I certainly don't believe

20  that no bond is the appropriate outcome in this case.

21    THE COURT:  Well, based on the --

22    MR. BARNHART:  Judge, can we leave --

23    THE COURT:  Go ahead, Mr. Barnhart.  What are you

24  saying?

25    MR. BARNHART:  Can we just leave it at 5000, 10

1   percent?

2           THE COURT:  No, we cannot.  No, absolutely not.  I

3   don't understand you, what you people are looking at.  Are

4   you reading the information that's filed in the case?  It

5   says two separate case numbers from 2019, failure to appear.

6   That's the first consideration:  Will the defendant return

7   on the court date?  I don't understand you two.  Are you

8   reading it or are you not reading it?

9           MR. BARNHART:  I'm going by what a previous judge

10  wrote, 5000, 10 percent.  That's all I'm going by.

11          THE COURT:  Go ahead, Mr. Sharp, what are you

12  saying?

13          THE DEFENDANT:  The FTA released me from the

14  county.  I was stranded down there for a while because I

15  didn't have no communications or no funds of getting back

16  until after the court date, so I was stranded down there in

17  Columbia.  That's how I got my FTA.  Once I get down there,

18  I don't have no way of getting back to St. Louis, so I was

19  stranded down there for weeks.

20          THE COURT:  Okay, well, I'm going by the fact that

21  you missed court.  Now, I don't know why you didn't just try

22  and make a phone call and get a new court date since you

23  knew you weren't going to be able to make it, but I'm going

24  to make a finding that based on the previous failures to

25  appear, there's clear and convincing evidence that you will

1    not appear in court on the court date.  You've got two

2    cases, 19SLCR06320, for burglary with a failure to appear,

3    and then 19SLCR06899, receiving stolen property with a

4    failure to appear.  Also there's an indication that there's

5    a wanted out of Indiana, so that may just be for

6    questioning, so I'm not really considering that.  But I am

7    looking at the failures to appear.

8             And I understand you saying you were stranded in

9    Columbia.  However, there's such a thing as a telephone.  So

10   you could have made contact with the Court and tried to get

11   your court date changed once you realized that you weren't

12   going to be able to make it on your court dates.  And I'm

13   going to have to make a finding that you're indigent since,

14   according to the financial information that you provided,

15   you've been unemployed for five months, and based on your

16   statements this afternoon, you said that you were

17   responsible -- well, you said you're doing everything.  So I

18   don't see where you have any income coming in, so I'm going

19   to have to make it no bond allowed because you're not going

20   to appear in court based on the previous failures to appear.

21   Your next date for review is November 30th at noon, and then

22   your court date after that will be January 14, 2021.

23                      (Hearing concluded.)

24

25

8

```
 1                        CERTIFICATE
 2            I, Kristine A. Toennies, Registered Merit
 3    Reporter, Certified Realtime Reporter, and Certified Court
 4    Reporter, do hereby certify that I am an official court
 5    reporter for the Circuit Court of the City of St. Louis;
 6    that on November 23, 2020, I was present and reported all
 7    the proceedings had in the case of STATE OF MISSOURI,
 8    Plaintiff, vs. IVORY SHARP, Defendant, Cause No.
 9    2022-CR01958.
10            I further certify that the foregoing pages contain
11    a true and accurate transcription of the proceedings.
12
13
14                    /s/ Kristine A. Toennies
15                    _____
                      Kristine A. Toennies, RMR, CRR, CCR #769
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT 119

1            IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                        STATE OF MISSOURI
2            Honorable Calea Stovall-Reid, Judge

3
STATE OF MISSOURI,              )
4                               )
                    Plaintiff,  )
5                               )
          vs.                   )      Cause No.  1622-CR00090-01
6                               )      Cause No.  1622-CR01867-01
   ███████████,                 )      Cause No.  2022-CR01966
7                               )
                    Defendant.  )
8

9              BOND HEARING - INITIAL APPEARANCE

10                 MONDAY, NOVEMBER 23, 2020

11

12  FOR THE PLAINTIFF:            FOR THE DEFENDANT:

13  Mr. Jordan Smith              Mr. Eric Barnhart
    Assistant Circuit Attorney    Eric V. Barnhart, LLC
14  1114 Market Street, #401      7751 Carondelet Ave., Ste. 202
    St. Louis, MO  63101          Clayton, MO  63105
15

16

17

18

19

20

21

22

23              KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                     OFFICIAL COURT REPORTER
24               CITY OF ST. LOUIS CIRCUIT COURT
                 TWENTY-SECOND JUDICIAL CIRCUIT
25

```
 1          THE COURT:  Okay, we're ready on █████████.
 2          MR. SMITH:  Your Honor, ███████ is charged
 3   with assault in the third degree with special victim, which
 4   is a felony, and resisting arrest, also a felony.  Officers
 5   saw a car running a traffic light.  They got behind the car
 6   and the car pulled over.  The defendant got out, started
 7   running.  When officers ran after and finally caught him,
 8   the defendant turned around and started repeatedly punching
 9   an officer.  Because defendant has currently a probation
10   violation warrant for felony burglary in the second, this
11   would make the fleeing a felony.
12          Given the facts of this case, the defendant's
13   criminal history, the State believes that releasing him on
14   his own recognizance with a GPS monitor would be
15   appropriate.
16          THE COURT:  Okay.  And it looks like he has two
17   pending cases that I guess he went warrant on?
18          MR. SMITH:  Yes, Your Honor.
19          THE COURT:  So let's talk about those.
20          MR. SMITH:  And that's why the State feels a GPS
21   monitor would help ensure his appearance at future court
22   dates.  It would be the least restrictive means available to
23   do that.
24          MR. BARNHART:  I would point out, Judge, those
25   cases are old.  One of the offenses is 3/21 of 2016, and the
```

1    other one is 12/13 of 2015.

2            THE COURT:  How does that help his case?  That

3    just means he never showed up for court.

4            MR. BARNHART:  It means he didn't have any

5    exposure with the police with his name, that he's been

6    living crime-free living.

7            THE COURT:  But he had two pending cases where he

8    failed to appear.

9            MR. BARNHART:  That's all true, but that's like

10   five years ago.  You would think that (inaudible) get

11   arrested for something.

12           THE DEFENDANT:  Excuse me, Your Honor?

13           THE COURT:  Yes, sir.

14           THE DEFENDANT:  I heard you say that --

15           THE COURT:  I can't understand what you're saying.

16           MR. BARNHART:  Can I talk ██████████ real

17   quick?  I don't want you making statements about the cases.

18   Like if it's something like where you're going to live or

19   how much money you can afford to post for bond, but this is

20   not the right time to give a defense.

21           THE DEFENDANT:  I was just asking about the --

22   never mind.

23           MR. BARNHART:  I'm just saying that there's a

24   court reporter taking everything down that you say.  Right

25   or wrong, that prosecutor could order that transcript and

1  use it against you if you say something, you're not

2  thinking, so I'm just warning you, that's all.

3       THE DEFENDANT:  It wasn't nothing like that had to

4  do with the case.  I heard you say that I hadn't run into

5  the police.  I've been working every day for the past three

6  and a half years.  I worked at ▮▮▮▮▮.  I also worked

7  at ▮▮▮▮▮ in Kirkwood, both of these in Kirkwood,

8  the ▮▮▮▮▮ in Sunset Hills.  I've been staying out of

9  trouble.

10       MR. BARNHART:  That's basically the point I was

11  making, that there was crime-free living.

12       THE DEFENDANT:  Yes, sir.

13       MR. BARNHART:  You weren't having exposure with

14  the police department.  That's what I was saying.  That's

15  good that you're working at ▮▮▮▮▮

16  So do you work at --

17       THE DEFENDANT:  I work at ▮▮▮▮▮ making 20.75

18  an hour.  That's in Sunset Hills.

19       MR. BARNHART:  Oh, you said Sunset Hills?

20       THE DEFENDANT:  Yes, sir.

21       MR. BARNHART:  Are you full time?

22       THE DEFENDANT:  Yes, sir.  I clock in at nine,

23  work nine to 12, clock out.  Then clock back in at 2:00 and

24  work two to ten.

25       MR. BARNHART:  Two to ten?

```
1              THE DEFENDANT:  Yes, sir.

2              MR. BARNHART:  Wow, that's a long time.

3              THE DEFENDANT:  Yeah, I work all day.  I'm a

4    second-hand cook.

5              MR. BARNHART:  Okay.  That takes some discipline.

6    If you got released -- let me find my notes -- you would

7    reside with            , your girlfriend?

8              THE DEFENDANT:  Yes, sir.

9              MR. BARNHART:  That's at

10             THE DEFENDANT:  Yes, sir.

11             MR. BARNHART:  Do you know how much money you

12   could afford if you got a 10 percent bond?

13             THE DEFENDANT:  I do know I have $400 in my

14   property.  I just got paid before I got arrested.  Maybe 900

15   on my car, so all together in my apartment that's here I

16   have almost like maybe 1,200 bucks.

17             MR. BARNHART:  Well, the problem is the money at

18   your property, you would have to release that to somebody,

19   like a family member, and that takes some time to fill out

20   paperwork to get to them.

21             THE DEFENDANT:  I tried to do that this weekend,

22   but they wouldn't let me.

23             MR. BARNHART:  But right now if your girlfriend

24   had to come up with some money, how much do you think she

25   could come up with?
```

1          THE DEFENDANT:  Maybe 500 to a thousand.

2          MR. BARNHART:  500?

3          THE DEFENDANT:  To a thousand, yes, sir.

4          MR. BARNHART:  Okay.  I have enough from you,

5     Mr. Johnson.

6          Judge, yes, there's three cases but they're old.

7     It just seems like he takes care of business.  I know he

8     wasn't taking care of his court business, but he works --

9     you heard the schedule -- nine to 12, and he's got to come

10    back two to ten at Fuddruckers, and that's not easy.  I

11    guess he's got like three hours or two hours of I guess

12    taking a break.

13         But he's a hard worker and he has been -- hasn't

14    been approached by the police in any way, so I would just

15    ask -- I know it's three cases, but maybe give him a couple

16    personal recogs on two of them and a bond on the other at

17    5000, 10 percent.  That way he keeps his job and he's got no

18    priors.  I know he's got pending cases, but according to the

19    pretrial, it says no priors.  So he does have a clean record

20    other than the pending case.  That's worth something.  And I

21    think he'll come back to court because he knows if he

22    doesn't come back to court, he'll be locked back up.

23         THE COURT:  Well, ██████████, the problem that

24    I'm having with you is that one of the cases that was issued

25    in 2016 went bond forfeiture.  So it's clear to the Court

1  that you will not return.  On that case after posting a
2  bond, you failed to appear.
3          THE DEFENDANT:  No --
4          THE COURT:  You forfeited the money.
5          THE DEFENDANT:  I came -- I had came to court, but
6  when I came to court, they had said that I had to have a
7  lawyer there present for me to be even be talked to.  So I
8  came and sat in court, I did talk to, and they said I have
9  to have a lawyer.  I said I did not have a lawyer.  So the
10  judge had gave me -- was trying to get me -- the judge had
11  said since I didn't have a lawyer in presence, I think like
12  a hit and run.
13          THE COURT:  This is not a hit and run.  This is a
14  drug case, possession of a controlled substance.  I'm not
15  showing anything about a hit and run.  You have two drug
16  cases where you posted bond and then you just never showed
17  back up in court.
18          THE DEFENDANT:  It was bad, but I ain't been on
19  pills for four years.  I have a clean slate.  I was on
20  hydrocortisone and Xanax, barbital real bad, but I've been
21  clean for the past three and a half years.  I ain't been on
22  any type of drugs.  All I do is smoke cigarettes.
23          THE COURT:  Well, based on the fact that you have
24  two felony cases from 2016 where you failed to appear and
25  one of them your bond was forfeited and you still didn't

1  appear, I'm going to make a finding that there is clear and

2  convincing evidence that you will not return to court.

3          THE DEFENDANT:  I will return to court.  Like I

4  said, I was on pills, on pills real bad, so at that time I

5  wasn't thinking straight, my head wasn't on straight.  I was

6  just thinking about getting high, but now that I'm clean and

7  no drugs, none of that, I will come to every court date.

8          THE COURT:  All right.  Well, I'm making a finding

9  that there's clear and convincing evidence that you will not

10  return to court.  That's my finding.  So therefore, I'm

11  setting your case at no bond allowed based on your previous

12  failures to appear and bond forfeiture.  Your case will be

13  reviewed next Monday at noon, and then your court date after

14  that is 11/14.  I'm sorry, January 14.  Do you have any

15  other questions about anything?

16          THE DEFENDANT:  No, ma'am.  I would just -- I just

17  was trying not to lose my job.  I've been working that job

18  six months.  I have a four-year-old son.  His birthday was

19  in October.  I just wasn't trying to lose my job; that's all

20  it was.  I have a house to take care of.  My girlfriend, she

21  ain't working at the moment.  That's all.  But I understand

22  where you're coming from, Judge.

23          THE COURT:  Okay.  So then you'll be in court

24  again on video on November 30th at noon, and you have a good

25  evening.

```
1                          CERTIFICATE
2              I, Kristine A. Toennies, Registered Merit
3    Reporter, Certified Realtime Reporter, and Certified Court
4    Reporter, do hereby certify that I am an official court
5    reporter for the Circuit Court of the City of St. Louis;
6    that on November 23, 2020, I was present and reported all
7    the proceedings had in the case of STATE OF MISSOURI,
8    Plaintiff, vs. ███████████, Defendant, Cause Nos.
9    1622-CR00090-01, 1622-CR01867-01, 2022-CR01966.
10             I further certify that the foregoing pages contain
11   a true and accurate transcription of the proceedings.
12
13
14                    /s/ Kristine A. Toennies
                      _____
15                    Kristine A. Toennies, RMR, CRR, CCR #769
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT 120

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

| | |
|---|---|
| **STATE OF MISSOURI**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2022-CR01315 |
| | ) |
| | ) Division No. 16B |
| | ) |
| **RODNEY BARLOW, JR.**, | ) |
| | ) |
| Defendant. | ) |

**FIRST APPEARANCE HEARING**
July 24, 2020

**NICHOLAS FISCHBACH**
  Assistant Circuit Attorney
  1114 Market Street
  St. Louis, MO  63101
          on behalf of the State;

**TONY MUHLENKAMP**
  St. Louis, MO  63105
          on behalf of the Defendant.

**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

Dixon v. City of St. Louis, 17032

1          **THE COURT:**  This is Cause No. 2022-CR01315.  It's

2     styled State of Missouri versus Rodney Barlow.

3     Mr. Barlow is present via video for the purposes of

4     today's initial appearance hearing.  Mr. Tony Muhlenkamp

5     has been appointed to represent Mr. Barlow.  The Circuit

6     Attorney's Office is here by Nicholas Fischbach.

7          Mr. Barlow, my name is Michael Mullen, I'm the

8     judge in Division 16 that's going to handle your initial

9     appearance today.  I want to let you know that you're

10    charged with robbery in the 1st degree, armed criminal

11    action in connection with that robbery, attempted robbery

12    in the 1st degree and armed criminal action in connection

13    with that attempted robbery.

14         I may ask you some questions today.  If I do, I

15    don't want to know about your case.  In other words, I

16    don't want to know what you did or what you didn't do,

17    what you said or what you didn't say.  But I might ask

18    you questions about your background to find out whether

19    or not there is an appropriate bond I can set in this

20    case.

21         Okay.  Mr. Muhlenkamp, as I said, has been

22    appointed just for the purpose of representing you today

23    at this hearing.  All right.

24         Let's take up -- the first thing I want to do is,

25    Mr. Muhlenkamp, is there any announcement about waiving

1    or reading the formal reading of indictment?

2           **MR. MUHLENKAMP:**  Judge, on Mr. Barlow's behalf

3    we'll waive formal reading and enter a plea of not guilty

4    at this time and I'll just ask to inquire whenever

5    convenient.

6           **THE COURT:**  All right.  Let's start with

7    Mr. Fischbach.  The bond now is set at no bond; is that

8    right?

9           **MR. FISCHBACH:**  Correct, Your Honor.

10          **THE COURT:**  And what's the state's position on

11   that?

12          **MR. FISCHBACH:**  Your Honor, the state's position

13   is that defendant represents a danger to the community

14   and no bond is appropriate.

15          In this case the victim of the attempted robbery

16   reported that the defendant along with two other men

17   approached him on Kingford Avenue and asked about

18   addresses and names of nearby apartment buildings.  The

19   victim responded he did not know the information sought.

20   One of the men pointed a pistol at the victim and

21   demanded his money and his car.  The victim was able to

22   speed away from the individuals in his vehicle.

23          The victim of Counts I and II, the successful

24   robbery, reported that within 30 minutes of the first

25   incident and two blocks away from Kingford Avenue, the

4

```
1   defendant along with two other men approached him and

2   asked to use his cell phone.  When the victim responded

3   that his phone was not with him, one of the men pointed a

4   pistol at the victim and demanded his keys.  After the

5   victim relinquished his keys, the defendant and the other

6   two men entered the victim's car and fled the scene.  The

7   victim's car was recovered after a collision in St. Louis

8   County.  The defendant was identified as a front

9   passenger and arrested.

10       The defendant was mirandized and interviewed and

11  acknowledged he was present with the other two men during

12  the event involving the victim of Counts I and II.

13       Additionally, during the -- the collision resulted

14  from a pursuit in St. Louis County and there were shots

15  fired from the vehicle.  The defendant and the two other

16  men were captured on video on multiple surveillance

17  cameras wearing identifiable clothing that was identified

18  by both victims and showing their faces.

19       Additionally, Your Honor, the defendant currently

20  is on bond in the 21st Circuit for resisting -- sorry,

21  interfering with felony arrest and tampering in the 2nd

22  degree.

23       Mr. Muhlenkamp?

24       **MR. MUHLENKAMP:**  Thank you, Judge.  Can I ask my

25  client some questions please?
```

5

1          **THE COURT:**  Of course

2          **MR. MUHLENKAMP:**  Thank you.

3          Mr. Barlow, can you hear me okay, sir?

4          **THE DEFENDANT:**  Yes, sir.

5          **MR. MUHLENKAMP:**  Okay.  My name is Tony

6    Muhlenkamp.  Like the judge indicated, he appointed me to

7    represent you as your attorney for today's purposes only.

8    Okay.  So I'm not going to represent you after today, but

9    my job today is I want to make sure the judge gets

10   reliable and accurate information so he can make an

11   informed decision about whether to reduce your bond.

12   Okay.

13         **THE DEFENDANT:**  Yes, sir.

14         **MR. MUHLENKAMP:**  So I'm going to be asking you

15   some questions, not about the facts of your case.  I

16   don't want to know about the facts of the case, but I am

17   going ask you some stuff about your background for bond

18   purposes.  I just ask you to tell me the truth and keep

19   your voice up; okay?

20         **THE DEFENDANT:**  Yes, sir.

21         **MR. MUHLENKAMP:**  All right.  Thank you.

22         I've reviewed your bond case already that pretrial

23   submitted, but I want to confirm some stuff with you;

24   okay?

25         **THE DEFENDANT:**  Yes, sir.

Dixon v. City of St. Louis, 17036

1          **MR. MUHLENKAMP:**  If you were released on bond, you

2     would live with your mom, right, at 8839 Ramona?

3          **THE DEFENDANT:**  Yes, sir.

4          **MR. MUHLENKAMP:**  And you've lived there for a

5     couple years now?

6          **THE DEFENDANT:**  Yes, sir.

7          **MR. MUHLENKAMP:**  Are you still working at Taco

8     Bell?

9          **THE DEFENDANT:**  Yes, sir.

10          **MR. MUHLENKAMP:**  Which Taco Bell?

11          **THE DEFENDANT:**  On Page.

12          **MR. MUHLENKAMP:**  Okay.  How long have you had that

13     job?

14          **THE DEFENDANT:**  For like a month or two.

15          **MR. MUHLENKAMP:**  And you make about ten or eleven

16     bucks an hour?

17          **THE DEFENDANT:**  Yes.  Yes, sir.

18          **MR. MUHLENKAMP:**  Do you work full time, or do you

19     work part-time?

20          **THE DEFENDANT:**  I work full time.

21          **MR. MUHLENKAMP:**  Okay.  Do you have access to any

22     money to either pay for an attorney or to pay for your

23     bond in this case?

24          **THE DEFENDANT:**  Do I?  Me?

25          **MR. MUHLENKAMP:**  You or your family.

1            THE DEFENDANT:  Yes.  Yes, sir.

2            MR. MUHLENKAMP:  How much money do you think you

3    could come up with that you could pay for a lawyer or to

4    pay for your bond?

5            THE DEFENDANT:  Probably like a grand or two.

6            MR. MUHLENKAMP:  You think you could come up with

7    one or two thousand dollar?

8            THE DEFENDANT:  One thousand or two.

9            MR. MUHLENKAMP:  Right.  One or two thousand

10   dollars?

11           THE DEFENDANT:  Yes, sir.

12           MR. MUHLENKAMP:  Okay. I wanted to make sure I

13   heard you correctly.

14           And then I also see that you're currently on bond

15   in St. Louis County.

16           THE DEFENDANT:  I bonded out.

17           MR. MUHLENKAMP:  But you -- did you bond out

18   yesterday and then go straight to the city?

19           THE DEFENDANT:  Yes, sir.

20           MR. MUHLENKAMP:  Okay.  So you made bond.  You're

21   still in jail, just in a different jail , right?

22           THE DEFENDANT:  Yes, sir.

23           MR. MUHLENKAMP:  Okay. fair enough.

24           And you're currently going to Normandy High

25   School, you're a junior?

1              THE DEFENDANT:  Yes, sir.

2              MR. MUHLENKAMP:  Are you going to summer school

3      right now, or are you waiting for the fall --

4              THE DEFENDANT:  I'm doing on-line computer work.

5              MR. MUHLENKAMP:  Okay.  How many classes are you

6      taking now?

7              THE DEFENDANT:  I didn't hear what you say.

8      Repeat it.

9              MR. MUHLENKAMP:  How many classes are you taking

10     now on line?

11             THE DEFENDANT:  Eight classes

12             MR. MUHLENKAMP:  Eight?

13             THE DEFENDANT:  Yes, sir.

14             MR. MUHLENKAMP:  Okay.  So they've got you doing a

15     full course load every day?

16             THE DEFENDANT:  Yes, sir.

17             MR. MUHLENKAMP:  And you're able to access that

18     stuff from your mom's house, you got a computer?

19             THE DEFENDANT:  Yes, on the computer.

20             MR. MUHLENKAMP:  Okay.  So then when you're

21     working at Taco Bell, are you doing that at night?

22             THE DEFENDANT:  I do it through the day and night.

23             MR. MUHLENKAMP:  Okay.  Here's what's going to

24     happen:  I don't have any further questions for you.

25     Okay.  But I'm going to make an argument to the judge

9

1    here.  I'm going to try to get your bond reduced.  I

2    don't know what he's going to do.  Okay.  But I'm going

3    to do that.

4         Regardless of what the judge does, it's very

5    important you are going to need an attorney moving

6    forward.  So please after you're hearing today, ask

7    nicely for the public defender paperwork.  You can at

8    least get a public defender hired initially.  And then if

9    you want to hire a private lawyer later, you can make

10   that decision, too.

11        Okay.  But you want to get an attorney in this

12   case as soon as possible; Okay.

13        **THE DEFENDANT:**  Yes, sir.

14        **MR. MUHLENKAMP:**  All right.  Mr. Barlow, just

15   stand there and listen.

16        **THE DEFENDANT:**  Yes, sir.

17        **THE COURT:**  All right.  Mr. Muhlenkamp.

18        **MR. MUHLENKAMP:**  All right.  Thank you, sir.

19        Judge, I'm ready whenever you are.

20        **THE COURT:**  I am.

21        **MR. MUHLENKAMP:**  Thank you, Your Honor.

22        Judge, the things I want to point out, Mr. Barlow,

23   he's only 17 years old.  He doesn't have a criminal

24   history.  I realize that cuts both way because he's only

25   17 years old --

1          **THE COURT:**  No, hold on, he has a criminal

2     history.

3          **MR. MUHLENKAMP:**  I'm sorry?

4          **THE COURT:**  He does have a criminal history.

5          **MR. MUHLENKAMP:**  He has a pending case, Judge,

6     that's not a criminal history.

7          **THE COURT:**  Oh, I thought he had a prior as well,

8     no?

9          **MR. MUHLENKAMP:**  I'm going to explain that.

10          **THE COURT:**  Okay.

11          **MR. MUHLENKAMP:**  I'm showing that he doesn't have

12     a prior.  He got -- (video/audio drop)

13          **THE REPORTER:**  What?

14          **MR. MUHLENKAMP:**  -- that he's currently on bond

15     for.

16          **THE COURT:**  That's a pending --

17          **THE REPORTER:**  Wait, he's got a what?

18          **MR. MUHLENKAMP:**  And when I looked up the docket

19     -- I'm sorry?

20          **THE COURT:**  So when did he post bond on the case

21     that -- the resisting and interfering with an arrest

22     case, do you know?

23          **MR. MUHLENKAMP:**  I'm about to tell you.  He bonded

24     on -- they had a bond review on last week.  His bond was

25     reduced there from 50,000 cash only to 50,000, ten

11

1    percent.  He's got a public defender on the St. Louis

2    county case, and the Bail Project bonded him out

3    yesterday.  Okay.  He wasn't released because he had this

4    case here that was holding him.  So he essentially made

5    bond and went from one jail in the county to another jail

6    in the city.

7          What I do want to point --

8          **THE COURT:**  Hold on, Tony, my question --

9          **MR. MUHLENKAMP:**  Go ahead.

10         **THE COURT:**  My question to you is when did he get

11   arrest on the resisting or interfering with an arrest

12   case in the county on the driving a stolen car and

13   resisting and interfering with the arrest of that?

14         **MR. MUHLENKAMP:**  You know what, Judge, I'm going

15   to let you know in one second.  Can you bear with me for

16   a minute?

17         **THE COURT:**  Sure.  Do you know, Mr. Fischbach?

18         **MR. FISCHBACH:**  Your Honor, I show the warrant was

19   served on 7-10.

20         **THE COURT:**  So two days after the incident in this

21   case.

22         **MR. MUHLENKAMP:**  I think he was in jail for a

23   couple weeks, so that would jive with --

24         **THE COURT:**  Yeah, okay.

25         **MR. MUHLENKAMP:**  But let me confirm that, Judge.

Dixon v. City of St. Louis, 17042

1          Okay.  I've got the county case pulled up now,

2    Judge.  It looks like warrant was issued July 9th.

3    Warrant was served July 10th.  Bond hearing was held and

4    it was reduced on July 16th.  Bond was posted yesterday.

5    So he was locked up for about two weeks and then his bond

6    was made and he went to a different jail.

7          **THE COURT:**  Okay.

8          **MR. MUHLENKAMP:**  Judge, I printed out to review

9    the bond conditions in his county case.  Judge Ghasedi,

10   although she did reduce the bond to 50,000 /ten percent,

11   she also put him on EHD with GPS within 24 hours of

12   release.  He's got to go back to school.  He can't

13   possess any weapons.  He can't have any contact with the

14   co-defendant.

15         And when I looked at the charges on the county

16   case, he is only charged with an E felony resisting

17   arrest and tampering 2nd Class A misdemeanor, which in of

18   itself are not very serious felony charges.  However, the

19   probable cause statement in that case which I'm sure came

20   up at the bond review hearing, it references what was

21   going on in the city specifically.  Okay.  Because I

22   guess allegedly this stuff happened in the city and then

23   the car was driven to the county, which is when the

24   county got involved.

25         So I can only assume Judge Ghasedi was aware of

Dixon v. City of St. Louis, 17043

13

1       what was going on in the city when she reduced his bond

2       and that would make sense if it's a 50,000 bond for a

3       Class E felony, which is high, there would be some

4       additional factors going on there.

5              So I guess my request to you, Judge, I don't think

6       he has any priors.  He's got an open pending case he's

7       currently on bond for.  He could live with mom.  He's got

8       a job.  He's apparently going to school virtually right

9       now, so he's currently enrolled in high school which is a

10      good thing.

11             If he's on EHD and he's on GPS and he can't

12      possess weapons, I think we could address any concerns

13      the Court might have about threats, safety -- the

14      community escort thing.  So I'm going to ask for a

15      similar bond that the county gave Mr. Barlow.  I would

16      ask you to do essentially the same thing, 50,000, ten

17      percent authorized.

18             I realize that these are serious charges.  There

19      is a weapon allegedly involved, and I get that, which is

20      why I'm not asking recog or anything like that.  But if

21      you would go down to 50,000 with ten percent authorized,

22      that's still a  significant financial burden where he

23      could actually potentially make his bond and work both

24      these cases through.

25             So that would be my request, Judge.

Dixon v. City of St. Louis, 17044

14

1          **THE COURT:**  Well, if the Bail Project posts it,

2     it's not really a significant burden financially to Mr.

3     Barlow, is it?

4          **MR. MUHLENKAMP:**  Judge, you and your questions.

5          **THE COURT:**  So here's what I think:  I think that

6     there is no combination --

7          **MR. MUHLENKAMP:**  Well, maybe we can combine the

8     bond then, I don't know.

9          **THE COURT:**  I think if I were Judge Ghasedi, and I

10    had the tampering case in the county, I would say send

11    this kid to the city, make it his problem because that's

12    where he's trying to rob people of their cars with guns,

13    and he did it back to back when he was unsuccessful and

14    then he was successful.

15          I find that there is no combination of

16    non-monetary and monetary conditions that would keep the

17    community safe from gun slingers like Mr. Barlow, and I'm

18    going to order that the defendant be detained without

19    bond to keep people safe in their cars in the City of St.

20    Louis.

21          His next court date for a bond hearing

22    detention-wise will be 7-31 at noon, and his long date is

23    August 26 in Division 25.

24          All right.  Mr. Barlow.  Good luck.

25               *(End of proceedings.)*

15

```
1                              CERTIFICATE

2

3              I, Laurie A. Bennett, Certified Court Reporter, do

4    hereby certify that I am an Official Court Reporter for the

5    Circuit Court of the City of St. Louis; that on July 24,

6    2020, I was present and reported all the proceedings had in

7    the case of STATE OF MISSOURI, Plaintiff, vs. RODNEY BARLOW

8    JR., Defendant, Cause No. 2022-CR01315.

9                   I further certify that the foregoing 14 pages

10   contain a true and accurate reproduction of the proceedings.

11

12

13

14

15
                /s/ Laurie A. Bennett
16              _____

17                    LAURIE A. BENNETT CCR #407

18

19

20

21

22

23

24

25
```

# EXHIBIT 121

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

| | | |
|---|---|---|
| **STATE OF MISSOURI**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 2022-CR01273 |
| | ) | |
| | ) | Division No. 16B |
| | ) | |
| **TYREESE LAMONT WALTERS**, | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST APPEARANCE HEARING**
July 24, 2020

**NICHOLAS FISCHBACH**
Assistant Circuit Attorney
1114 Market Street
St. Louis, MO  63101
        on behalf of the State;

**TONY MUHLENKAMP**
St. Louis, MO  63105
        on behalf of the Defendant.

**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

1            **THE COURT:**  All right.  This is Cause No.

2      2022-CR01273.  It's styled State of Missouri versus

3      Tyreese Walters.

4            Mr. Walters, how are you?

5            **THE DEFENDANT:**  I'm good.

6            **THE COURT:**   All right.  Mr. Walters, my name is

7      Michael Mullen.  I'm the judge that's been assigned to

8      have your initial appearance.  Mr. Muhlenkamp is here and

9      appointed by the Court for the purposes of just this

10     initial appearance.  Mr. Fischbach is here representing

11     the State of Missouri.

12           I want you to know that I might ask you some

13     questions today.  If I ask you those questions, I don't

14     want you to tell me what happened with your case like

15     what you did or what you didn't do, or what you said or

16     what you didn't say.  But rather, I'm trying to figure

17     out at some point maybe what a bond might be on this

18     case.  Okay.

19           You're charged right now with a Class D felony of

20     stealing a firearm, and your bond is set at no bond.  And

21     we are going to take a look at that in a minute.

22           But first, Mr. Muhlenkamp, are there any

23     announcements concerning the formal reading of the

24     indictment?

25           **MR. MUHLENKAMP:**  Judge, we'll waive formal reading

1    and enter a plea of not guilty on Mr. Walters' behalf

2    please.

3              **THE COURT:**  Very good.

4              All right.  Mr. Walters, the bond is set at no

5    bond right now.

6              Mr. Fischbach, what is the state's position on

7    that?

8              **MR. FISCHBACH:**  Your Honor, the state has safety

9    concerns in this case.  It involves officers responding

10   to a call for theft of a firearm from a passenger on

11   Metro Link who advised the officers that two men, the

12   defendant and a co-defendant, both of whom were

13   identified by video surveillance and both whom admitted

14   their involvement, had come up to him when he was riding

15   the Metro Link and wrestled a firearm from him.

16             The defendant has -- he's on S.E.S. probation in

17   three cases, all of them from 2019, and he entered S.E.S.

18   probation on them in March of this year.  They are

19   resisting arrest and tampering with a motor vehicle and

20   property damage in the 2nd degree, a resisting

21   /interfering with arrest for a misdemeanor, and a

22   resisting arrest for a felony.

23             Given the defendant's criminal history, the state

24   has concerns about what he may have wanted the weapon

25   for.  However, the charge is low.  The state did review

1       his underlying cases and did not see any failures to

2       appear.  However, he is scheduled for a -- or a bond

3       revocation has been filed in his resisting arrest felony

4       with no additional charges, and that paperwork was filed

5       on the 20th.

6              **THE COURT:**  Who is he on probation to on those

7       cases?

8              **MR. FISCHBACH:**  I believe it is Judge Sengheiser

9       but let me check.

10             **THE COURT:**  Okay.  Mr. Fischbach, also there is a

11      sheriff here.

12             Sheriff, can you come -- there is a sheriff here

13      who was -- when Mr. Walters apparently when he was

14      arrested on this, he was also arrested with a charge of

15      assault, is that right, officer?

16             **SHERIFF BOND:**  Yes.

17             **THE COURT:**  So the sheriff is here.  He was

18      present at the scene.  It looks like the Circuit

19      Attorney's Office only issued the stealing, but this

20      sheriff is here.  He has a picture of his injury from

21      this in his phone.  I'm going to hold up so you guys can

22      -- I don't know, I have no idea if they can see it.  I

23      don't know where to hold it.

24             **MR. FISCHBACH:**  Your Honor, the camera is actually

25      to your left way up in the air.

Dixon v. City of St. Louis, 17061

5

1          **THE COURT:**  Okay.  Sheriff can come hold it up

2     closer.  He's a lot taller than I am.

3          Anyway, it's a contusion on the sheriff's face and

4     a laceration on his ear.  The Circuit Attorney's Office

5     did not issue the assault, but the sheriff was working

6     secondary at the --

7          **MR. FISCHBACH:**  I see

8          **THE COURT:**  -- working secondary.  And he also

9     showed me a video that you can see at some point, if you

10    want to, Mr. Muhlenkamp, of Mr. Walters' behavior on the

11    Metro Link where he's fighting with individuals that this

12    sheriff captured when he was working.

13         Now, obviously this is not pertinent to this

14    guilty or not guilty on this charge, but I am certainly

15    taking in into consideration of his behavior when he

16    rides the Metro Link, which is where this charge

17    originated from.

18         Okay.  So that being said, Mr. Muhlenkamp, you're

19    up.

20         **MR. MUHLENKAMP:**  Okay.  Judge, can I clarify one

21    thing with you?

22         **THE COURT:**  Of course you can.

23         **MR. MUHLENKAMP:**  Thank you.  So when did -- the

24    alleged injury to the sheriff, when would that have

25    happened, do we know?

6

1          THE COURT:  7-20, Monday.  Oh, so it wasn't in

2     connection with the stealing.  It was a different date,

3     7-20.  I'm sorry, I thought it was connected to the same

4     date.

5          So on Monday Mr. Walters was also back on the

6     Metro Link and he assaulted the sheriff while he was

7     working secondary.  So, again, it doesn't pertain to this

8     case whether he's guilty or not guilty of the stealing,

9     but his overall behavior on the Metro Link has become a

10    real issue.

11         MR. MUHLENKAMP:  I understand.  And then am I

12    right that that charge was applied on, and it was

13    refused, is that what you said?

14         THE COURT:  He knows it wasn't issued.  Now,

15    whether it was refused or taken under advisement, I don't

16    think he knows the answer to that.  He just knows that it

17    was not issued.

18         MR. MUHLENKAMP:  Okay.  And then my last question

19    and then I'll I move on, I'm sorry.

20         THE COURT:  That's all right.

21         MR. MUHLENKAMP:  On the video he just showed --

22    the video that he just showed me of the fight for lack of

23    a better term on the Metro Link, did that happen on 7-20

24    also?

25         THE COURT:  It did not.  That happened a little

Dixon v. City of St. Louis, 17063

1    while before 7-20.  The sheriff tells me he works

2    secondary and that Mr. Walters is known on the Metro Link

3    as a problem child, and his behavior has gotten him

4    thrown off many times.  And he's assaulted -- I would --

5    maybe a fight you might call that, one might call it an

6    attack.  He has attacked or assaulted many people on the

7    Metro Link, and he's a real -- Metro Link people are well

8    aware of Mr. Walters and they have gone round and round

9    with him.

10           **MR. MUHLENKAMP:**  Okay.  I am in the know now.

11   Thank you for that clarification.

12           Can I ask Mr. Walters some questions please.

13           **THE COURT:**  You can ask him anything you want.

14           **MR. MUHLENKAMP:**  Thank you.

15           Mr. Walters, can you hear me okay?

16           **THE DEFENDANT:**  Yes, I can.

17           **MR. MUHLENKAMP:**  Thank you, sir.

18           As the judge indicated, he appointed me -- my name

19   is Tony Muhlenkamp, he's appointed me to represent you

20   today for this period only, and my job is to get some

21   background information on you, pass it on to the Court so

22   the judge can consider releasing your bond or not.

23           Okay.  I'm not going to ask you about the facts of

24   your case, and I don't want you to talk about the facts

25   of your case.  I am going to ask you about your

8

| | |
|---|---|
| 1 | background though.  I'm asking you tell me the truth and |
| 2 | keep your voice up; is that okay. |
| 3 | **THE DEFENDANT:**  Yes. |
| 4 | **MR. MUHLENKAMP:**  Okay.  I've reviewed you're |
| 5 | pretrial trial paperwork here already, and -- |
| 6 | **THE COURT:**  Hold on, Tony. |
| 7 | Sheriffs, there's too much background noise.  We |
| 8 | can't hear. |
| 9 | Go ahead, Tony.  Sorry. |
| 10 | **MR. MUHLENKAMP:**  Sure.  I can start over Judge. |
| 11 | Mr. Walters, if you were released on bond, would |
| 12 | you live with your mother at 4546 St. Ferdinand? |
| 13 | **THE DEFENDANT:**  Yes. |
| 14 | **MR. MUHLENKAMP:**  And is that in Florissant? |
| 15 | **THE DEFENDANT:**  St. Louis, Missouri. |
| 16 | **MR. MUHLENKAMP:**  St. Louis City, okay. |
| 17 | And  you're currently how old? |
| 18 | **THE DEFENDANT:**  Twenty. |
| 19 | **MR. MUHLENKAMP:**  You're twenty.  Okay.  That's |
| 20 | what I thought.  Do you have access to any money to |
| 21 | either post a bond or to hire a private attorney? |
| 22 | **THE DEFENDANT:**  I mean, if I could make some phone |
| 23 | calls I can. |
| 24 | **MR. MUHLENKAMP:**  Okay.  Do you have any idea how |
| 25 | money you can come up with? |

9

```
 1              THE DEFENDANT:  No.

 2              MR. MUHLENKAMP:  You don't have a job right,

 3     correct?  You're not working?

 4              THE DEFENDANT:  No.

 5              MR. MUHLENKAMP:  No.  Okay.  You don't have any

 6     children; correct?

 7              THE DEFENDANT:  No.

 8              THE COURT:  And you're currently on probation --

 9     can you tell the Court who your probation officer is?

10              THE DEFENDANT:  Nancy William Rover (phonetic).

11              MR. MUHLENKAMP:  Do you know which office she

12     works out of?

13              THE DEFENDANT:  South Jefferson.

14              MR. MUHLENKAMP:  When was the last time you've

15     been to see her or had contact with her?

16              THE DEFENDANT:  Probably about two, three --

17              MR. MUHLENKAMP:  Okay.  If you're released on bond

18     and the Court ordered you to contact her immediately, I'm

19     assuming you would do that, right?

20              THE DEFENDANT:  Yes.

21              MR. MUHLENKAMP:  Okay.  Without getting into too

22     many details about what's going on on Metro Link, if the

23     Court were to order you not to use Metro Link while this

24     case was pending would you stay off?  I'm assuming you

25     would do that, too, right?
```

10

1      **THE DEFENDANT:**  Yes, they gave me something in my

2      property.  They say I was band from the Metro Link for a

3      year because of that incident.

4      **MR. MUHLENKAMP:**  Okay.  Don't give me too many

5      details.  But bottom is you could stay off Metro Link,

6      right?

7      **THE DEFENDANT:**  Yes.

8      **MR. MUHLENKAMP:**  Okay.  And if the Court wanted

9      you to wear a GPS monitor to go to your mom's house and

10     to only go to work to get a job, I'm assuming that is

11     something you would do, too?

12     **THE DEFENDANT:**  Yes.

13     **MR. MUHLENKAMP:**  Okay.  I'm not going to ask you

14     anymore questions, but what I am going to do here in a

15     minute is make an argument to the Court and try to get

16     you a bond reduction.

17         In the meantime, regardless of what the judge

18     says, you need to either hire a private attorney moving

19     forward or apply for a public defender.  Okay.  So if you

20     talk to your family and you guys can not come up with any

21     money, then please ask at the jail for the paperwork for

22     a public defender, fill it out promptly and they'll get a

23     PD on your case; okay?

24     **THE DEFENDANT:**  Okay.

25     **MR. MUHLENKAMP:**  All right.  Thank you.  Mr.

1    Walters, just sit tight and listen and I'll make my

2    argument here in a second.  Okay.

3         Thank you.  Judge, are you ready, sir?

4         **THE COURT:**  Yes, sir.

5         **MR. MUHLENKAMP:**  Thank you, Judge.

6         Your Honor, I want to stress this is a Class D

7    felony, it's the type of charge that often results in

8    probation as a disposition of a case eventually down the

9    road.  But Mr. Walters has a place to live.  He can live

10   with his mother.  He would be okay with wearing an ankle

11   monitor if he needs to.  He also would be okay with

12   staying off the Metro Link, because that seems to be the

13   bulk of his problems regardless of what's going on there.

14        I'd also stress, Judge, that the state didn't

15   allege any force in this charge, which they could have

16   and they didn't.  The charge is a Class D felony.  Those

17   types of charges often resolve in a reasonable bond where

18   somebody's not confined while the case is pending.  I

19   realize you might have some concerns based upon the new

20   information I got today from the sheriff that was

21   secondary on the Metro Link.  I say we address that by

22   keeping him off the Metro Link completely.

23        It appears that nothing's been issued from that

24   additional information, so I ask you to take that into

25   consideration also.

1           When I ran Mr. Walters' probation case that he's

2    on probation to Judge Sengheiser for, it doesn't appear

3    that anything has warrant status, Judge.  No warrants

4    have been issued.  On the misdemeanor cases, he's got a

5    court date on September 15th for a payment review.  He

6    knows who his PO is.  He knows where the PO's office is.

7           I'm asking, Judge, something in the range of 15,

8    $20,000 with a ten percent authorized for the Bail

9    Project could get involved assuming he can't hire an

10   attorney.  But I think that amount would be reasonable

11   given the facts and circumstances of this case.

12           **THE COURT:**  All right.  I find -- it's very

13   unusual for me to set no bond on a stealing charge, but I

14   think given the entire circumstances, the fact that

15   Mr. Walters has been on -- is on probation, has been told

16   to stay off the Metro Link numerous times, has not

17   appeared to have done that.  Stealing a firearm in this

18   case is of great concern to me.  I find that there is no

19   combination of monetary and non-monetary conditions that

20   we could come up with that would secure the safety of the

21   persons in the community especially the people who ride

22   the Metro buses or on the Metro Link.

23           I'm going to set this at no bond.  I'm going to

24   give him a review hearing for the detention on 7-31 at

25   noon.  His long date in Division 25 is 8-26.

13

1          Mr. Walters, you need to know you should get a

2    lawyer as Mr. Muhlenkamp said.  Your next court date to

3    have your bond reviewed by a different judge who might

4    come up with a different result is next Friday, 7-31.

5    But you really need to get a lawyer to do that.  You may

6    want to apply for the Public Defender's Office and see if

7    they'll get in.  But the sooner you do that, the better

8    chance you do of having present with you at your 7-31

9    hearing.

10          That will conclude the hearing.

11

12

13          *(End of proceedings.)*

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2

3              I, Laurie A. Bennett, Certified Court Reporter, do

4      hereby certify that I am an Official Court Reporter for the

5      Circuit Court of the City of St. Louis; that on July 24,

6      2020, I was present and reported all the proceedings had in

7      the case of STATE OF MISSOURI, Plaintiff, vs. TYREESE LAMONT

8      WALTERS, Defendant, Cause No. 2022-CR01273.

9              I further certify that the foregoing 13 pages

10     contain a true and accurate reproduction of the proceedings.

11

12

13

14

15
            /s/ Laurie A. Bennett
16         ———————————————————————————————

17              LAURIE A. BENNETT CCR #407

18

19

20

21

22

23

24

25

# EXHIBIT 122

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge


**STATE OF MISSOURI**,      )
)
Plaintiff,   )
)
vs.      )   Cause No. 2022-CR01540
)
)   Division No. 16B
)
████████████████   )
)
Defendant. )


**FIRST APPEARANCE HEARING**
September 8, 2020


**ROSS GIPSON**
  Assistant Circuit Attorney
  1114 Market Street
  St. Louis, MO  63101
          on behalf of the State;

**GUY WOLD**
  St. Louis, MO 63105
          on behalf of the Defendant.


**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

1              **THE COURT:**  This is Cause No. 2022-CR1540.  It's

2      styled State of Missouri versus ████████████.

3              Mr. ███████, you are presently charged with

4      burglary in the 1st degree which is a Class B, as in boy,

5      felony and stealing, a Class A misdemeanor.  I'm going to

6      let you know that Mr. Gipson is here from the Circuit

7      Attorney's Office.  Mr. Wold is here to represent you at

8      this initial appearance.

9              **MR. WOLD:**  Judge, can I talk to you for a second.

10     It seems as if Mr. ████████████ and Mr. ████████████

11     are co-defendants to each other by looking at the

12     probable cause statement.

13             **THE COURT:**  Okay.  That's good to know.

14             **MR. WOLD:**  I would think probably it would make

15     sense to have one of them, which ever, moved to tomorrow

16     just so it's not the same lawyer doing the same argument.

17     I just think it seems to be an obvious conflict

18     situation.  It's exactly the same crime alleged as far as

19     I know.

20             Am I correct on that, Mr. Gipson?

21             **MR. GIPSON:**  You are correct in that the probable

22     cause statements read the same.

23             **THE COURT:**  All right.  We'll let you have Mr.

24     ████████████.  I'll talk to ██████ without you and

25     maybe I can figure out his bond only and then we'll go

1    from there.  If not, I'll set it for tomorrow.

2         **MR. WOLD:**  I just saw it.  I saw two of them and

3    looked at them and said that looks exactly the same

4    facts.

5         **THE COURT:**  Okay.  So what's the bond set at now

6    on Mr. ▮▮▮▮▮▮▮▮▮▮▮?

7         **MR. GIPSON:**  It's set at no bond, Your Honor.

8         **THE COURT:**  And what's the state's position on

9    that?

10        **MR. GIPSON:**  State's position is that it would

11   remain at no bond.  We have a victim in this case.  The

12   victim -- I'm sorry, Your Honor.

13        The officers responded to a home invasion.  When

14   they responded, they talked to the victim who indicated

15   that he was awakened by the two defendants in this case,

16   he was dragged from his bed.  He was struck in the back

17   of the head and his television was stolen.

18        An eyewitness then concurred the victim's account,

19   described the individuals and the car that they were

20   driving.  The defendants were found by officers in the

21   vehicle matching the description provided, and the

22   television that matched the description that was stolen

23   was found in the back of the car.

24        The eyewitness confirmed the defendant's -- they

25   identified the two witnesses -- I mean the two defendants

Dixon v. City of St. Louis, 17074

4

1    in the case, sorry, Your Honor.

2           Just based on those allegations, you know, they

3    know where the victim lives.  The victim is afraid his

4    home will be invaded again.  We don't have a victim

5    impact statement, but we have been in contact with this

6    victim.  He is fearful.  So we would ask that it stay at

7    no bond because of the dangers to the community risk,

8    even though there are no priors in this case.

9           **THE COURT:**  All right.  Mr. ████, I might ask

10   you some questions about this.  I don't want to know

11   anything about your case like what you did or what you

12   didn't do, what you said or what you didn't say.  But,

13   rather, if I'm trying to establish a bond for you, I

14   might ask you some personal questions about your finances

15   or when you work or where you live.  You understand that?

16          **THE DEFENDANT:**  (Witness nods head.)

17          **THE COURT:**  Mr. Gipson, is it alleged that the

18   defendant in this case and the victim in this case knew

19   one another?

20          **MR. GIPSON:**  That's not alleged, Your Honor.

21          **THE COURT:**  One more time please.

22          **MR. GIPSON:**  That is not alleged.

23          **THE COURT:**  All right.  Mr. Wold?

24          **MR. WOLD:**  Judge, it doesn't list any priors on

25   this.  It does have family connections to the area.  His

1   mom lives here, he's got a fiancee that lives in

2   ▉▉▉▉▉▉.   What he does list -- and this might be

3   something to take into account here -- is he does suffer

4   from a drug problem; working his away through the joy of

5   an opioid addition.

6         But other than that, there doesn't seem to be any

7   history towards this all.  Obviously I can't speak to

8   what happened between the two of them, because I can't

9   talk to the other guy.  But I mean, he's lived here for

10  29 years.  He's got every connection -- there is no

11  reason for him to run, no where for him to run to.

12        So I would ask the Court to consider releasing him

13  to something possibly like Places for People.

14        **THE COURT:**  Mr. Gipson, what was the address of

15  right this occurred?  And what time did it occur?

16        **MR. GIPSON:**  Let me bring that up.  I did not put

17  that in my notes, so give me one moment, Your Honor, and

18  I will look that up for you.

19        **MR. WOLD:**  On the PC statement, it's a ▉▉▉▉▉▉

20  ▉▉▉▉▉.

21        **THE COURT:**  And does it say what time it happened?

22        **MR. GIPSON:**  The time of day, that's what I'm

23  looking up.  They didn't fill in the time, Your Honor.  I

24  don't have the police report on this yet.

25        **THE COURT:**  Okay.  All right.  I'm going to deny

6

```
 1    any request for a change in the bond.  I don't think that

 2    there is a combination of financial and non-financial

 3    conditions that we can come up with that would allow

 4    Mr. █████ to be released considering the fact that it's

 5    alleged that he broke into a stranger's house and beat

 6    him up and then stole his television set.  I think that

 7    is too much of a risk on the victim's safety to allow

 8    Mr. █████ anything other than a no bond amount.

 9           His next review date will be 9-14, Mr. █████.

10    That's next Monday, another judge will look at your same

11    case.

12           Are you planning on getting an attorney, or do you

13    want to get -- are you planning on hiring your own

14    attorney, or you want to get a public defender for an

15    attorney?

16           THE DEFENDANT:  Probably a public defender.

17           THE COURT:  Are you working right now?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Yes?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Where do you work?

22           THE DEFENDANT:  I own my own lawn service.

23           THE COURT:  You own your own lawn service.  Okay.

24    Do you own a car?

25           THE DEFENDANT:  Yes.
```

Dixon v. City of St. Louis, 17077

1              **THE COURT:**  Do you own a house?

2          **THE DEFENDANT:**  No.

3              **THE COURT:**   I'm going to find you to be indigent.

4     I'm going to appoint the Public Defender's Office.   Your

5     next Court date is 9-14.   Your long date is 10-6.   The

6     bond remains the same.

7              All right, Mr. ████████, thank you.

8

9              *(End of proceedings.)*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    CERTIFICATE

2

3            I, Laurie A. Bennett, Certified Court Reporter, do

4    hereby certify that I am an Official Court Reporter for the

5    Circuit Court of the City of St. Louis; that on September 8,

6    2020, I was present and reported all the proceedings had in

7    the case of STATE OF MISSOURI, Plaintiff, vs. ██████████

8    ████████  Defendant, Cause No. 2022-CR01540.

9            I further certify that the foregoing 7 pages

10   contain a true and accurate reproduction of the proceedings.

11

12

13

14

15           /s/ Laurie A. Bennett

16   _____

17               LAURIE A. BENNETT CCR #407

18

19

20

21

22

23

24

25

# EXHIBIT 123

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable Michael K. Mullen, Judge**

STATE OF MISSOURI,            )
                              )
          Plaintiff,          )
                              )
vs.                           )      Cause No. 2022-CR01564
                              )
ANTHONY NAYLOR,               )
                              )
                              )
          Defendant.          )

**TRANSCRIPT OF BOND HEARING PROCEEDINGS**

          On the 11th day of September, 2020, the above-entitled cause came on for hearing via videoconferencing before the Honorable Michael K. Mullen, Judge of Division 12 of the Circuit Court of the City of St. Louis, State of Missouri.

          The State of Missouri was represented by Ross Gipson, Assistant Circuit Attorney.

          The defendant was present in person via videoconferencing and was represented by his attorney, Anthony Muhlenkamp, Attorney at Law.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

1          THE COURT:  This is Cause No. 2022-CR01564

2     styled State of Missouri vs. Anthony Naylor.

3     Mr. Naylor is present via video.

4          Mr. Naylor, my name is Michael Mullen.  I'm

5     the judge here in Division 16B.  I'm going to be

6     looking at your initial appearance.  Okay?

7     Mr. Muhlenkamp here in the yellow tie has been

8     appointed to represent you for the purposes of this

9     initial appearance only.  Mr. Gipson is the

10     prosecutor in this case.

11          We might ask you some questions today.  If we

12     do that, really, I don't want you to tell me what

13     happened or what didn't happen or what you said or

14     what you didn't say or how anybody else was

15     involved.  Rather, what I'm trying to find out is

16     what's going on with your bond.  I might ask you

17     some questions about your background.  Okay.

18          THE DEFENDANT:  (Nodding.)

19          THE COURT:  Is that a yes?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Very good.

22          And, Mr. Muhlenkamp, is there an announcement

23     on whether I should waive or read the --

24          MR. MUHLENKAMP:  Judge, we'll waive formal

25     reading and enter a plea of not guilty at this

                              2

1          time, please.

2                  THE COURT:  Mr. Gipson, what's the bond set at

3          right now?

4                  MR. GIPSON:  Your Honor, the bond is currently

5          set at no bond allowed.

6                  THE COURT:  And this is a Class D felony, as

7          in dog, felony, so that seems unusual.  What's the

8          reason for that?

9                  MR. GIPSON:  Your Honor, the reason is

10         because, as you stated, this is an unlawful

11         possession of a firearm and resisting, but the

12         facts of this case are a little unusual.  Officers

13         were investigating crimes that are not associated

14         with this defendant and stopped the vehicle that he

15         was driving in relation to those crimes and, in

16         doing so, they found that this defendant in his

17         vehicle, when they stopped and searched the

18         vehicle, the defendant had a number of firearms in

19         the vehicle.  He had a loaded -- a

20         .45-semiautomatic pistol in the driver side

21         floorboard, and then the detectives also located

22         two rifles in the car, one in the rear passenger

23         seat under another individual and another in the

24         front passenger side.

25                 This particular individual has some felony

                                      3

1          convictions on his record, one out of St. Louis

2          County for tampering in the first, and then he has

3          a probation out of Division 3 in the 22nd Circuit

4          that is active.  There's currently a probation

5          violation on that probation and a warrant that is

6          set at a no bond for that probation violation.

7               So based on those factors, the bond was set at

8          no bond, and just the amount of guns that were

9          found were quite a few in the car.

10          THE COURT:  What's he on probation for?

11          MR. GIPSON:  That's for a stealing, stealing

12          charge.  It's a three-year SES with a seven-year

13          backup.

14          THE COURT:  So that's Judge Hogan?  Is that

15          Division 3?

16          MR. GIPSON:  That's Judge Hogan, yes.

17          THE COURT:  Mr. Naylor, you're on probation to

18          Judge Hogan; you picked up a new case with a bunch

19          of guns.  That doesn't bode well for you.  I need

20          to tell you that.

21          Mr. Muhlenkamp.

22          MR. MUHLENKAMP:  Thank you, Judge.  Can I

23          inquire briefly?

24          THE COURT:  Sure.

25          MR. MUHLENKAMP:  Mr. Naylor, can you hear me

4

Dixon v. City of St. Louis, 17100

1      okay?

2             THE DEFENDANT:  Yes.

3             MR. MUHLENKAMP:  Okay.  The judge has

4      appointed me to represent you for today's purposes

5      only.  I just want to ask you a few questions about

6      your background.  Okay?

7             THE DEFENDANT:  Okay.

8             MR. MUHLENKAMP:  Just keep your voice up and

9      tell me the truth, obviously.

10            If you were granted a bond in this case and

11     you were released, do you still live with your mom

12     on Highland Avenue?

13            THE DEFENDANT:  Yes.

14            MR. MUHLENKAMP:  If the judge were to put you

15     on house arrest or an ankle monitor, I'm assuming

16     you would be okay with that; right?

17            THE DEFENDANT:  Yes, sir.

18            MR. MUHLENKAMP:  I'm showing here you're a

19     high school graduate from Gateway High; is that

20     correct?

21            THE DEFENDANT:  Yes.

22            MR. MUHLENKAMP:  Okay.  You don't have any

23     kids.  I'm also showing here you got $1500 you can

24     put towards a bond.  Is that accurate?

25            THE DEFENDANT:  Yes.

5

1          MR. MUHLENKAMP:  You confirmed that with your

2     mom?

3          THE DEFENDANT:  No.

4          MR. MUHLENKAMP:  Friends or family?  You

5     confirmed it with somebody that can post it for

6     you?

7          THE DEFENDANT:  Yes.

8          MR. MUHLENKAMP:  We know you're on probation

9     to Judge Hogan.  Do you know your probation

10    officer's name?

11         THE DEFENDANT:  Yes.  Sierra Monroe.

12         MR. MUHLENKAMP:  Is that a he or a she?

13         THE DEFENDANT:  A she.

14         MR. MUHLENKAMP:  What office does she work at?

15         THE DEFENDANT:  On Jefferson.

16         MR. MUHLENKAMP:  When's the last time you went

17    to see her?

18         THE DEFENDANT:  About two, three weeks ago.

19         MR. MUHLENKAMP:  If the judge required you to

20    go see her ASAP when you get released, I'm assuming

21    you would go; right?

22         THE DEFENDANT:  Yes, sir.

23         MR. MUHLENKAMP:  I want you to sit tight.  I'm

24    going to make an argument and see what I can do

25    about your bond.

6

1          THE DEFENDANT:  Okay.

2          MR. MUHLENKAMP:  Thank you.

3          Judge, you ready?

4          THE COURT:  I'm ready.

5          MR. MUHLENKAMP:  Judge, I'm sure you've got

6     some concerns here.  I would just point to the fact

7     it was a Class D felony and a Class E felony.  I'm

8     not asking for a recognizance bond.  He indicated

9     he can come up with $1500.  It sounds like he's got

10    a no bond out of Judge Hogan's division anyway, so

11    you granting him a bond is just step one of a

12    two-step process.  He might not be able to make

13    bond regardless.

14          But he knows his PO.  He's engaged with his

15    probation office.  15,000.

16          (Internet interruption.)

17          MR. MUHLENKAMP:  Thank you, Tina.

18          Judge, the only thing I think I referenced is

19    if he can't make bond anyway out of Judge Hogan's

20    division, it's kind of a moot point.  This would

21    just be step one of step two.  I think a 15,000

22    10 percent bond would be reasonable in light of the

23    charges.

24          THE COURT:  I think I'm going to leave the

25    bond where it is.  I think that the fact that he

7

1    was on probation and picked up a case with so many

2    guns in the car is very problematic, and I'm

3    concerned about the danger he poses to the

4    community.

5         Mr. Naylor, your next date to get this bond

6    reviewed, though, will be in a week, 9/18.  Are you

7    going to apply for a public defender or how -- are

8    you getting a lawyer?  Have you talked about that?

9         THE DEFENDANT:  Yeah, I've spoken with a

10   lawyer.

11        THE COURT:  Who did you talk to?

12        THE DEFENDANT:  Kevin Watts.

13        THE COURT:  Okay.  Your next court date to get

14   your bond reviewed is next Friday, 9/18.  Can you

15   have that person represent you by then?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Your long date is October 8th.

18   That's the next time you have to appear in a

19   different division.  You'll come back in a week and

20   have your bond reviewed.

21        What you need to know is, as the clerk in this

22   division would say, Judge Hogan don't play.  So the

23   fact you picked up a new case and you're on bond

24   with Judge Hogan, you're as good as gone for three

25   years if you're backing up three years.  We'll

8

Dixon v. City of St. Louis, 17104

1      still look at your bond next week, but you're being

2      held on her probation case with no bond, so I'm not

3      sure that there's many hoops that need to be jumped

4      here.   In the meantime, I'm going to leave you

5      where you are with no bond on this case and bring

6      you back in a week and, hopefully, you'll have a

7      lawyer by then and we can make some progress.

8      Okay?   Very good.

9

9

1                    **REPORTER'S CERTIFICATE**

2          I, Tina M. Givens, Registered Professional
   Reporter & Certified Court Reporter, do hereby
3  certify that I am the Official Court Reporter for
   Division 8 of the Circuit Court of the City of St.
4  Louis, State of Missouri; that on September 11,
   2020, I was present via videoconference and
5  reported all the proceedings had in the case of
   STATE OF MISSOURI, Plaintiff, vs. ANTHONY NAYLOR,
6  Defendant, Cause No. 2022-CR01564.

7

8          I further certify that the foregoing pages
   contain a true and accurate reproduction of the
9  proceedings.

10

11

12

13

14

15          I hereunto set my hand on this 4th day of
   December, 2020.

16

17

18

19

20

21          /s/ Tina Givens
            Tina Givens, CCR #481

22

23

24

25

                              10

Dixon v. City of St. Louis, 17106

# EXHIBIT 124

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable Michael K. Mullen, Judge**

```
STATE OF MISSOURI,         )
                           )
          Plaintiff,       )
                           )
vs.                        )   Cause No. 2022-CR01553
                           )
RONALD SCOTT,              )
                           )
                           )
          Defendant.       )
```

**TRANSCRIPT OF BOND HEARING PROCEEDINGS**

On the 11th day of September, 2020, the above-entitled cause came on for hearing via videoconferencing before the Honorable Michael K. Mullen, Judge of Division 12 of the Circuit Court of the City of St. Louis, State of Missouri.

The State of Missouri was represented by Ross Gipson, Assistant Circuit Attorney.

The defendant was present in person via videoconferencing and was represented by his attorney, Anthony Muhlenkamp, Attorney at Law.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

1          THE COURT:  This is Cause No. 2022-CR01553

2     styled State of Missouri vs. Ronald Scott.

3     Mr. Scott is present via video.  His attorney for

4     the purposes of this hearing only is

5     Mr. Muhlenkamp.  The prosecuting attorney's office

6     is represented by Assistant Circuit Attorney Ross

7     Gipson, also present via video.

8          Mr. Scott, my name is Michael Mullen.  I'm the

9     judge here in Division 16B.  I'm going to let you

10    know what your initial appearance is about, you're

11    being brought here, and what you're charged with.

12    I'm going to talk to you about setting a bond and

13    talk to you about getting a lawyer.

14          When I ask you questions, I don't want you to

15    tell me about your case, like what you did or what

16    you didn't do or what you said or didn't say, but

17    rather, I might ask you questions about your

18    background and your job and things like that to

19    find out what kind of a bond, if I consider giving

20    you a bond.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  First of all, Mr. Muhlenkamp, any

24    announcement on this case concerning the reading of

25    the formal indictment?

                          2

1          MR. MUHLENKAMP:  Judge, on Mr. Scott's behalf,

2     we will waive formal reading of the charges and

3     enter a plea of not guilty, please.

4          THE COURT:  Okay.  Mr. Gipson, what's the bond

5     set at and what's the State's position?

6          MR. GIPSON:  Your Honor, his bond is currently

7     set at no bond allowed.  We would ask that the bond

8     remain as no bond allowed.  This is based on the

9     fact that this is a robbery first charge with an

10    ACA.

11         The facts are in this case that the victim and

12    witnesses present at the scene reported two men

13    enter the McDonald's at 1119 North Tucker wearing

14    masks.  They then went behind the counter and the

15    defendant opened the register and took the cash

16    from the cash drawer.  As the victim in this case

17    approached the two men, the defendant in this case

18    pointed a pistol with an extended magazine at him.

19    Officer --

20         THE COURT:  Hold on.  Mr. Gipson, how do I

21    know it was this guy?  How was the identification

22    made?

23         MR. GIPSON:  I'm getting to that.

24         Surveillance footage was reviewed at the

25    scene.  It showed the two men in the restaurant.

3

Dixon v. City of St. Louis, 17109

```
1        Surveillance footage revealed the two men behind
2        the restaurant, putting on masks, entering the
3        restaurant, getting in the register and pointing
4        the pistol at the victim and then leaving the
5        restaurant with the stolen money.  The surveillance
6        footage captured the make and model of the vehicle
7        used for the robbery, as well as the license plate.
8            And then when this defendant was picked up on
9        September 8th, 2020, and after he was Mirandized,
10       he admitted to being the gunman and the one who
11       took the cash in the cash register.
12           THE COURT:  Mr. Muhlenkamp.
13           MR. MUHLENKAMP:  Thank you, Judge.
14           Mr. Scott, can you hear me okay?
15           THE DEFENDANT:  Yes, sir.
16           MR. MUHLENKAMP:  Like the judge said, he
17       appointed me to represent you today.  I need to get
18       some background information so I can make an
19       argument to the Court about your bond.
20           THE DEFENDANT:  Yes, sir.
21           MR. MUHLENKAMP:  I'm not going to ask you
22       about the facts of the case.  Please don't
23       volunteer information about that.  Okay?
24           THE DEFENDANT:  Yes, sir.
25           MR. MUHLENKAMP:  I'm looking at your paperwork
```

4

Dixon v. City of St. Louis, 17110

1        here.  Do you currently live with your mom

2        Shantina?

3             THE DEFENDANT:  I'm homeless.

4             MR. MUHLENKAMP:  You're homeless right now?

5             THE DEFENDANT:  Yes, sir.

6             MR. MUHLENKAMP:  Okay.  If you made bond, do

7        you have any place to live?

8             THE DEFENDANT:  Yes, sir.

9             MR. MUHLENKAMP:  Where would you live, if

10       you're homeless right now?

11            THE DEFENDANT:  I can go to my baby mama house

12       or my mother house.

13            MR. MUHLENKAMP:  Is your baby mama Shantina?

14            THE DEFENDANT:  That's my mom.

15            MR. MUHLENKAMP:  Mom is the one that lives on

16       Goodfellow?

17            THE DEFENDANT:  No, that's my baby mama.

18            MR. MUHLENKAMP:  Okay.  Fair enough.  I'm

19       showing here you've got two kids; right?

20            THE DEFENDANT:  Three.

21            MR. MUHLENKAMP:  Okay.  Your paperwork says

22       two.  How old are your kids?

23            THE DEFENDANT:  I got one on the way and I got

24       a six-month-old, and I got -- his birthday

25       October 26th, so about three.

5

1              MR. MUHLENKAMP:  So you've got two and one on

2        the way?

3              THE DEFENDANT:  Yes, sir.

4              MR. MUHLENKAMP:  That makes sense.  Are you

5        still working at Taco Bell?

6              THE DEFENDANT:  Yes, sir.

7              MR. MUHLENKAMP:  You've worked there since

8        June of this year; right?

9              THE DEFENDANT:  Yes, sir.

10             MR. MUHLENKAMP:  You're making 10.50 an hour,

11       working full-time?

12             THE DEFENDANT:  Yes, sir.

13             MR. MUHLENKAMP:  Did you graduate from Soldan

14       High School in 2017?

15             THE DEFENDANT:  Yes, sir.

16             MR. MUHLENKAMP:  And when you tell me you're

17       homeless, you got a couple places to go, you're

18       just not living there right now?

19             THE DEFENDANT:  Yeah.

20             MR. MUHLENKAMP:  But your mom will take you

21       and your girlfriend will take you in; right?

22             THE DEFENDANT:  Yes, sir.

23             MR. MUHLENKAMP:  Okay.  I'm also showing here

24       that you've got $1250 to either post bond or hire

25       an attorney.  Is that correct?

6

```
1              THE DEFENDANT:  Yes, sir.

2              MR. MUHLENKAMP:  How are you getting that

3      money?

4              THE DEFENDANT:  Work.

5              MR. MUHLENKAMP:  Okay.  Just money you've

6      saved up from working?

7              THE DEFENDANT:  Uh-huh.

8              MR. MUHLENKAMP:  Okay.  I'm going to make an

9      argument on your behalf here in a minute.  I just

10     need you to stand there and listen closely.  Okay?

11             THE DEFENDANT:  Yes, sir.

12             MR. MUHLENKAMP:  Thank you, Mr. Scott.

13     Regardless of what the judge does, you are going to

14     need an attorney going forward.  If you do not hire

15     a private attorney, please ask the PO's nicely and

16     they'll let you fill out the paperwork.

17             THE DEFENDANT:  Yes, sir.

18             MR. MUHLENKAMP:  Thank you, sir.

19             Judge, a couple things I want to point out

20     here.  This case allegedly happened a year ago, so

21     it's not like this thing just happened here.  I

22     also want to note that Mr. Scott has no criminal

23     record that I can see at all.  Nothing's noticed in

24     these reports, and he's approximately 22 years old.

25             He's got a couple kids, one on the way, that
```

7

Dixon v. City of St. Louis, 17113

1       he's currently supporting.  He has a job.  The

2       other thing I want no note, Judge, is there was a

3       codefendant in this case.  I was able to run him

4       prior to your docket.  His name is Keith Austin.

5       The codefendant in the case was granted a

6       recognizance bond in September of last year,

7       September 30th of 2019.  Okay.

8            So he was granted a recognizance bond with the

9       conditions of GPS monitoring, reporting to EMASS.

10      And it appears, from my review of that case, I

11      think -- I mean, I wasn't there, obviously, but it

12      seems like one of the mitigators was that the

13      codefendant was not the alleged gunman in the case.

14      He was along for the ride, helping out, but he

15      didn't actually allegedly possess a gun.

16           I would just ask the Court -- I know a

17      recognizance bond probably isn't reasonable in this

18      case.  I am going to ask you for a bond so the kid

19      can have one, maybe 25, 50,000 with 10 percent

20      authorized so the Bail Project can help him out.

21      He hasn't been in trouble for the last year while

22      the case is pending and he's 22 with no criminal

23      history whatsoever other than traffic tickets that

24      I've seen.  That would be my request, Judge.

25           THE COURT:  Mr. Gipson, did you tell me, when

8

Dixon v. City of St. Louis, 17114

1          you were giving me some facts, that Mr. Scott

2          admitted to this and being the gunman?

3               MR. GIPSON:  Yes.

4               THE COURT:  Is that a yes?

5               MR. GIPSON:  Yes.

6               THE COURT:  Okay.  Tony, I'm going to leave

7          the bond where it is.  I think being the gunman,

8          going into McDonald's, poses a threat.  Even if it

9          was a year ago, it's still a threat and a danger to

10         the community.  But I do think, Mr. Scott, that

11         Mr. Muhlenkamp raises some good points.  It

12         happened a year ago.  I'm not sure what was going

13         on at the time.  You haven't picked up any cases in

14         a year.  Apparently you have not gotten arrested.

15         Maybe there was a wanted out for you in a while.

16         Those things all bode in favor of maybe at some

17         point coming up with a situation where you could be

18         out on bond, but not right now based on what I know

19         with your home situation and the --

20              THE DEFENDANT:  I can go to my mom house.

21              THE COURT:  I know that's what you say, but

22         with the facts of this case, I'm not comfortable

23         with a bond right now.  I'm going to bring you back

24         in a week and another judge will have a chance to

25         review this on 9/18.  Your long date is going to be

9

Dixon v. City of St. Louis, 17115

1      October 8th in Division 25.

2          I know Mr. Muhlenkamp mentioned this to you,

3      but what are you thinking about getting a lawyer?

4      Have you talked about that with your family?  Do

5      you want to get a public defender or what?

6          THE DEFENDANT:  Yes, sir, I'm trying to get a

7      lawyer.  I'm going to call my lawyer right now.

8          THE COURT:  Who is that?  Do you know?

9          THE DEFENDANT:  Ain't nobody got one for me.

10         THE COURT:  I would say if you can't afford to

11     get one, you should apply to the public defender's

12     office and get a lawyer, there's a lot of good

13     lawyers there, and have one with you next week.  Do

14     you understand?  I would say today apply to the

15     public defender's office, and then if you want to

16     get a private lawyer in the meantime, you still

17     can, but I really want you to have a lawyer with

18     you next week.

19         Do you understand that?

20         THE DEFENDANT:  I got assignment for the

21     public defender already.

22         THE COURT:  You filled out the paperwork?  You

23     already have?

24         THE DEFENDANT:  Yeah, I already filled that

25     out.

                              10

1              THE COURT:  Very good.  Thank you.  Good luck.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis, 17117

1

**REPORTER'S CERTIFICATE**

2          I, Tina M. Givens, Registered Professional
Reporter & Certified Court Reporter, do hereby
3    certify that I am the Official Court Reporter for
Division 8 of the Circuit Court of the City of St.
4    Louis, State of Missouri; that on September 11,
2020, I was present via videoconference and
5    reported all the proceedings had in the case of
STATE OF MISSOURI, Plaintiff, vs. RONALD SCOTT,
6    Defendant, Cause No. 2022-CR01553.

7

8          I further certify that the foregoing pages
contain a true and accurate reproduction of the
9    proceedings.

10

11

12

13

14
          I hereunto set my hand on this 4th day of
15    December, 2020.

16

17

18

19

20
          /s/ Tina Givens
21    Tina Givens, CCR #481

22

23

24

25

12

# EXHIBIT 125

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable Michael K. Mullen, Judge**

STATE OF MISSOURI,     )
                   )
        Plaintiff,   )
                   )
vs.               )    Cause No. 2022-CR01559
                   )
███████████████,   )
                   )
                   )
        Defendant.   )

**TRANSCRIPT OF BOND HEARING PROCEEDINGS**

On the 11th day of September, 2020, the above-entitled cause came on for hearing via videoconferencing before the Honorable Michael K. Mullen, Judge of Division 12 of the Circuit Court of the City of St. Louis, State of Missouri.

The State of Missouri was represented by Ross Gipson, Assistant Circuit Attorney.

The defendant was present in person via videoconferencing and was represented by his attorney, Terence Niehoff, Attorney at Law.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

1      THE COURT:  All right.  This is Cause

2  No. 2022-CR01559 styled State of Missouri vs.

3  ███████████.  Mr. ████████ appears via video.

4  The Circuit Attorney's Office is represented by

5  Mr. Ross Gipson who is also here on video, and

6  Mr. ██████████ attorney, Mr. Terence Niehoff, is

7  present via video.

8      We're here to take up the initial appearance

9  of Mr. ████████.

10     Mr. Niehoff, is there any announcement as to

11  whether I should read or waive the formal reading?

12     MR. NIEHOFF:  Yes, your Honor.  You're

13  breaking up, but we will waive formal reading and

14  plead not guilty.

15     THE COURT:  If you're not Mr. Gipson or

16  Mr. Niehoff, make sure you're on mute so all of us

17  can hear.

18     Mr. ████████, I'm going to be looking at your

19  bond at this point.  I want you to know that I

20  might ask you some questions about some of your

21  background.  I don't want you to tell me at any

22  point anything about your case, like what you did

23  or what you didn't do or what you said or what you

24  didn't say.  Rather, I might ask you some

25  background questions to try to figure out what an

2

1       appropriate bond is.  Okay?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  So, Mr. Gipson, what's the bond

6       set at right now?

7            MR. GIPSON:  Your Honor, the bond is currently

8       set at no bond allowed.

9            THE COURT:  What is the State's position on

10      that?

11           MR. GIPSON:  We are recommending that the bond

12      remain at no bond allowed.

13           THE COURT:  And why is that?

14           MR. GIPSON:  Your Honor, there's a combination

15      of factors that we think show that this victim --

16      or this defendant is a danger to the community.

17           Your Honor, it's some very serious charges

18      here, domestic assault, attempted burglary in the

19      first, property damage in the first, and armed

20      criminal action.  The probable cause statement also

21      lays out facts that we believe support our argument

22      that on September 8th, 2020, the police found that

23      the victim and the defendant had been arguing when

24      the defendant came to the victim's home and kicked

25      in her locked front door.  The defendant entered

3

1   the victim's home and the victim ran outside to get

2   away from the defendant.

3       As the victim was running, the defendant --

4   the victim heard loud gunshots and realized that

5   she had been shot in her right buttocks.  The

6   defendant then began yelling at the victim to get

7   back in the house.  The victim went back inside to

8   call police and the defendant fled the scene.

9       Police arrived.  The victim was treated for

10  her injuries at ███████████████████.  The

11  defendant was picked up by the police shortly after

12  the incident and admitted to having an argument

13  with the victim at her home at that day.

14      The State notes that there are no priors at

15  this time, but we believe, based on the

16  recklessness of this, the fact that there was

17  gunplay involved, the fact that the victim was

18  injured, and the fact the victim and the defendant

19  have a child in common, and the fact that the

20  defendant knows where the victim lives, we don't

21  think that there's a combination of monetary or

22  nonmonetary bond that can ensure the safety of the

23  victim at this time.

24      MR. NIEHOFF:  So I will tell the Court that I

25  represented Mr. ███████ in the past on traffic

4

1      matters, so all of his traffic matters are cleared

2      up.  He's warrant-free.  He's 24 years old.  He has

3      no priors at all.  He does have a physical

4      disability.  He has a heart defect.  I want to

5      bring that to the Court's attention because I

6      believe in this COVID era that's very important.

7      If he's confined and contracts COVID, he has a much

8      more likely chance of it developing into something

9      serious.

10         We contest that there was any shooting at all.

11     The alleged victim is the mother of his child.  He

12     was over there -- he didn't kick the door in.  He

13     went over there and they got into an argument about

14     something to do with the daughter, that was the

15     issue, and my client left.  He did not kick in the

16     door.

17         My client did make a full statement to the

18     police where he said in effect, "I did not kick in

19     the door.  I did not shoot her.  We got in an

20     argument and I left."

21         He was not caught with a gun or anything along

22     those lines.  It's disputed he had a gun or kicked

23     in the door.

24         I should point out that the victim hasn't made

25     a victim impact statement, and I think that's

                                    5

```
1      significant.

2           The other thing --

3           THE COURT:  Hold on, Mr. Niehoff.

4           Mr. Gipson, is there physical evidence that

5      the victim in this case was shot in the rear end?

6      Did she go to the hospital or to the doctor or what

7      are we talking about?

8           MR. GIPSON:  She was treated for her wounds at

9      ██████████████████████.

10          MR. NIEHOFF:  The PC statement, your Honor,

11     says that she had a, quote, bullet graze to the

12     buttocks.  I think she just had a scratch on her

13     rear end and called it a bullet graze.  But there

14     was no bullet wound on her rear end.  There was no

15     bullets recovered.  She said there was multiple

16     shots and nothing else was recovered.

17          THE COURT:  Well, that would be issues for a

18     jury; however, at this time, the initial appearance

19     bond, I believe the word is I don't believe there

20     is a combination of monetary and nonmonetary

21     conditions that will secure the safety of her, the

22     victim in this case.  He will have a chance to get

23     this reviewed in a week on 9/18/20 at noon, and on

24     October the 8th at 2020 at nine o'clock.  All

25     right, Mr. Niehoff?
```

6

1              MR. NIEHOFF:  Thank you.

2              THE COURT:  Thank you.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          **REPORTER'S CERTIFICATE**

3          I, Tina M. Givens, Registered Professional
   Reporter & Certified Court Reporter, do hereby
4  certify that I am the Official Court Reporter for
   Division 8 of the Circuit Court of the City of St.
5  Louis, State of Missouri; that on September 11,
   2020, I was present via videoconference and
6  reported all the proceedings had in the case of
   STATE OF MISSOURI, Plaintiff, vs. ███████████████,
7  Defendant, Cause No. 2022-CR01559.

8

9          I further certify that the foregoing pages
   contain a true and accurate reproduction of the
10 proceedings.

11

12

13

14

15         I hereunto set my hand on this 7th day of
16 December, 2020.

17

18

19

20

21         /s/ Tina Givens
22         Tina Givens, CCR #481

23

24

25

                                  8

# EXHIBIT 126

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Michael J. Colona, Judge

STATE OF MISSOURI,            )
                              )
                   Plaintiff,)
                              ) Cause No. 2022-CR01686
vs.                           )
                              )
DERRELL E. MOORE,             )
                              )
                   Defendant.)


TRANSCRIPT OF PROCEEDINGS

        The following proceedings were had in Division 16B
of the 22nd Judicial Circuit, City of St. Louis, State of
Missouri, on the 30th day of September, 2020.


        Mr. Jones, Assistant Circuit Attorney, appeared
for the State of Missouri.


        The defendant, DERRELL E. MOORE, appeared in
person and with Ms. Gorman, Attorney At Law.


                Rita T. DeFilio, C.C.R. #0192
        22nd Judicial Circuit, City of St. Louis, Missouri

2

1          THE COURT:  Are you Mr. Derrell Moore?

2          DERRELL MOORE:  Yes, sir.

3          THE COURT:  All right.  We can go on the record.

4    State versus Derrell Moore, Cause Number 2022-CR01686.  Mr.

5    Moore, I'm Judge Colona.  This is your initial bond review.

6    Looks like we're holding this within the 48 hours of you

7    being picked up on this.  Oh, and for the record, Mr. Moore,

8    there's a court reporter here taking down everything that we

9    say.  So, I tell people just like you hear on the TV,

10   anything that you say can and will be used against you.

11   Mr. Moore is present through the video at CJC.  Present for

12   the State of Missouri is ACA Jones.

13         Mr. Moore, have you hired a private attorney in

14   this matter?

15         DERRELL MOORE:  No, sir.

16         THE COURT:  All right.  So, Mr. Moore, on the

17   video screen there you will see Ms. Melinda Gorman.  She's a

18   private attorney.  We're going to appoint Ms. Gorman to

19   represent you for today only.  So, just for this hearing,

20   okay?  All right.  Since you have an attorney for this

21   hearing, I would suggest that you let her do all the talking

22   for you.

23         DERRELL MOORE:  Yes, sir.

24         THE COURT:  Got to do a couple things.  What we're

25   going to do, make sure you know what you're charged with.

3

1   Maybe you know, maybe you don't know, but looks like you got

2   what?  Two charges against you.

3           DERRELL MOORE:  Two?

4           THE COURT:  Yeah.  You got assault first or

5   attempt assault first, Class B felony, range of punishment,

6   if I remember correctly, is up to 30 years, Department of

7   Corrections.

8           MS. GORMAN:  A B is five to 15, Your Honor.

9           THE COURT:  Thank you.  Five to 15 years in the

10  Department of Correction, a fine of up to $20,000, or, jail

11  time and a fine.  But what they're saying is that back on or

12  about September 26th, 2020, City of St. Louis, you attempted

13  to cause serious physical injury to a victim with initials

14  MJ by shooting the firearm at MJ.

15          Now, they're also saying, this is your second

16  charge, that you did this -- they got an armed criminal

17  action against you, which means you used a weapon that could

18  have caused death or dangerous -- that's an enhancement,

19  which means you could get additional time, like up to about

20  three to life on that, a fine.  What else?

21          So, we'll enter a plea of not guilty for you on

22  this.  So, we'll show that you're informed of charges, not

23  guilty plea entered.  Were you working before you got picked

24  up?

25          DERRELL MOORE:  No, I was going to be working.

Dixon v. City of St. Louis, 17266

4

1              THE COURT:  So, before you got picked up, when was

2      the last time you were working?

3              DERRELL MOORE:  I was not working because of

4      Corona virus.

5              THE COURT:  Okay.  So, had you been working

6      within, like, six months before you got picked up?

7              DERRELL MOORE:  Probably like -- I say probably

8      like ten months.

9              THE COURT:  Okay.  And before you got picked up,

10     who were you staying with?

11             DERRELL MOORE:  I been at my sister house and,

12     like I say, I got my --

13             THE COURT:  Hang on, hang on.  Were you paying

14     your sister rent or was she letting you stay there for free?

15             DERRELL MOORE:  I got my own apartment.  I been

16     paying my own rent.

17             THE COURT:  That's not what I asked.  What I asked

18     you was before you got picked up, where you were staying,

19     were you paying rent?

20             DERRELL MOORE:  Yes.

21             THE COURT:  You were paying rent.  Okay.  If you

22     were not working and you were paying rent, where was that

23     money coming from?

24             DERRELL MOORE:  My people will give me half and

25     then my girlfriend, she got a job.

5

1          THE COURT:  Okay.  Don't say no more.  Do you own

2    a house?

3          DERRELL MOORE:  No, sir.

4          THE COURT:  You own a car?

5          DERRELL MOORE:  No, sir.

6          THE COURT:  All right.  Now, look, I'm going to

7    find you indigent and appoint the Public Defender to

8    represent you.  A couple of things.  Thing number one,

9    regardless of what we do here today, as soon as we're done,

10   you need to fill out a Public Defender application.  And the

11   reason why you need to do that is even though I appointed a

12   Public Defender to represent you, they are not going to do

13   nothing until you got that application filled out.  Make

14   sure you fill out both the front and the back of the

15   application.  Make sure you got it signed.  Make sure you

16   get it turned in today.

17         Now, look, if you want to hire a private lawyer

18   down the road and you come up with the money or somebody

19   does, you can do that any time you want.  But, again, based

20   on what you told me, I'm going to find you indigent and

21   appoint the Public Defender.

22         Again, for this hearing, Ms. Gorman is going to be

23   representing you.  Currently, it looks like your bond is no

24   bond.  All right.  Ms. Gorman.

25         MS. GORMAN:  Yes, Your Honor.  Mr. Moore is 22

Dixon v. City of St. Louis, 17268

6

1    years old, Your Honor.  He has zero priors.  He has never

2    been through the system on any sort of felony or misdemeanor

3    that I can see.  These are very serious allegations;

4    however, as I'm looking through this, even the probable

5    cause statement of fact indicates that Johnson fired at

6    defendant.  Nothing in the PC statement really gives us a

7    full idea of what the circumstances were surrounding this

8    particular incident, other than the fact that it would

9    appear that there was --

10            THE COURT:  Other than what?  Ms. Gorman, you cut

11   out.

12            MS. GORMAN:  I'm sorry.  My thing is buffering.

13            THE COURT:  Oh.  Okay.

14            MS. GORMAN:  Hello?

15            THE COURT:  We can hear you.  Can you hear us?

16   Ms. Gorman?

17            MS. GORMAN:  I can't see anyone.  That's okay.

18            THE COURT:  Can you hear me, Ms. Gorman?

19            MS. GORMAN:  It appears the defendant has

20   completed -- hello?

21            DERRELL MOORE:  Yes, ma'am.

22            THE COURT:  Do we have Ms. Gorman's phone number?

23            MS. GORMAN:  I'm here.  Can you hear me?

24            THE COURT:  Yes, I can hear you now.

25            MS. GORMAN:  Okay.  Am I still on video?

1            THE COURT:  Yes, you're back.  Whatever happened,

2   looks like you're back in the saddle again.

3            MS. GORMAN:  I think we were bonkers over here,

4   Judge.

5            THE COURT:  What?

6            MS. GORMAN:  I think my computer is buffering over

7   here.  That being said, like I said, Your Honor, there was

8   again, obviously, violence on both sides of this case, but

9   this defendant has zero priors.  We would ask the Court set

10  a bond commiserate with these circumstances with GPS, no

11  contact with the victim and house arrest, should the Court

12  be so inclined.

13           THE COURT:  Mr. Jones.

14           MR. JONES:  Your Honor, as defense has pointed

15  out, the facts are kind of convoluted.  There was an

16  argument after an accident, someone that the defendant was

17  accompanying, someone he was with, actually shot someone on

18  the street there and that person is dead and, for whatever

19  reason, Mr. Moore was shooting at someone that was on their

20  front porch.  That this shooting happened out in --

21           THE COURT:  All right.  Here's the deal.  Here's

22  the deal.  I'm very familiar with the facts and area on this

23  case.  I'm the one that signed the original warrant.

24  Ms. Jean, can I have a blank one of these, please?  Thanks.

25           So, Mr. Moore, what is going on here is I started

8

1    to write something on your order on initial appearance bond

2    memo, but I changed my mind on something.  So, give me just

3    a minute to fill in the rest of these blanks on this new

4    form.  All right.

5            So, Mr. Moore, again, your current bond is no bond

6    allowed and that was just based upon a review of the

7    probable cause statement.  It looks like that was signed off

8    on yesterday or the day before.  So, after consideration of

9    the arguments made at this initial appearance, the Court is

10   going to deny any request for modification of the conditions

11   of release.

12           We're going to reset you for a seven-day bond

13   review hearing, so you will have another judge take a look

14   at this on October the 7th at noon.  I'm also going to give

15   you what we call a long court date.  That means that's the

16   first time that you will be in front of a judge that's

17   assigned to your case.  That court date will be November the

18   3rd at 9:00 a.m. in Division 26.

19           Now, look, here's the deal.  I didn't make any

20   findings that, you know, no bond is ever any good for you.

21   I just denied any modification of the bond today.  So, at

22   the seven-day hearing, if you got your Public Defender

23   application turned in, then you should have a Public

24   Defender represent you.  If not, at the seven-day hearing,

25   if they still don't have nobody assigned to you, we'll still

Dixon v. City of St. Louis, 17271

9

1  appoint you a lawyer at that seven-day hearing for that

2  hearing only.

3          On that day, October the 7th, that judge can go

4  into a little bit more detail that Ms. Gorman was digging

5  at, you know, about your criminal history, how long you have

6  been around, you got a job, all this and the other, okay?

7          DERRELL MOORE:  Yes, sir.

8          THE COURT:  So, you know, again, just no bond

9  modification for today, but the judge you see on October the

10  7th may have a different opinion because he or she will take

11  a little bit longer to go through some more things and make

12  a decision, okay?

13          DERRELL MOORE:  Yes, sir.

14          THE COURT:  All right.  Very good.  Thank you.

15

16

17

18

19  (END OF HEARING)

20

21

22

23

24

25

1

2

3                CERTIFICATE OF COURT REPORTER

4         I, Rita T. DeFilio, certified court reporter, do

5  hereby certify that I am an official court reporter for the

6  Circuit Court of the City of St. Louis; that on the 30th day

7  of September, 2020, I was present and reported all the

8  proceedings had in the case of State of Missouri vs. DERRELL

9  E. MOORE, Cause No. 2022-CR01686.

10        I further certify that the foregoing pages contain

11  a true and accurate reproduction of the proceedings.

12

13

14

15  "/s/ Rita T. DeFilio"

16  Rita T. DeFilio, RMR

17  Official Court Reporter

18  CCR No. 0192

19

20

21

22

23

24

25

Dixon v. City of St. Louis, 17273

# EXHIBIT 127

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

| | |
|---|---|
| **STATE OF MISSOURI**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2022-CR01287 |
| | ) |
| | ) Division No. 16B |
| | ) |
| **CHRISTOPHER MICHAEL SMITH**, | ) |
| | ) |
| Defendant. | ) |

**FIRST APPEARANCE HEARING**
July 20, 2020

**NICHOLAS FISCHBACH**
  Assistant Circuit Attorneys
  1114 Market Street
  St. Louis, MO  63101
        on behalf of the State;

**ANNIE LEGOMSKY**
  St. Louis, MO  63101
        on behalf of the Defendant.

**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

Dixon v. City of St. Louis 19951

1          **THE COURT:**  All right.  This is Cause No.

2     2022-CR01287.  It's styled State of Missouri versus

3     Christopher Smith.  Mr. Smith is present via video.  His

4     attorney Ms. Annie Legomsky is also present via video.

5     And Mr. Fischbach is here from the Circuit Attorney's

6     Office.  We're here today for the initial appearance

7     hearing on Mr.  Smith's charge.

8          Ms. Legomsky, any position on whether I should

9     read or waive the formal reading of the indictment?

10         **MS. LEGOMSKY:**  Judge, we'll waive and enter a plea

11    of not guilty.

12         **THE COURT:**  All right.  Mr. Smith, you've been

13    charged with burglary in the 1st degree, robbery in the

14    2nd degree, domestic assault in the 4th degree and

15    property damage in the 2nd degree.  I'm going to enter a

16    plea of not guilty.  I'm going to waive the reading of

17    that formal indictment and now we're going to take up

18    your bond.

19         If we ask you some questions today, Mr. Smith, I

20    don't want to hear about your case, like I don't want to

21    know what happened or what didn't happen or what you said

22    or what you didn't say, but we might need to get some

23    background information when trying to figure out what the

24    appropriate bond is; do you understand that?

25         **THE DEFENDANT:**  Sounds good, Your Honor.

3

1          **THE COURT:**  Mr. Fischbach, what's the bond now,

2     and what's the state's position on what the bond should

3     be?

4          **MR. FISCHBACH:**  Your Honor, Mr. Stewart is

5     handling this case, but he --

6          **THE COURT:**  He's on mute.

7          Mr. Stewart, unmute yourself.  Still can't hear

8     you.  Mr. Stewart, we can't hear you.

9          Do you have Mr. Fischbach's number?  Can you call

10    Mr. Fischbach, tell him what you want to say and he can

11    tell us?

12         **MR. FISCHBACH:**  All right.  Tell me what you want

13    to say and I'll relay it to the Court.

14         Okay, Your Honor, the current bond in this case is

15    no bond, and the state's position is that no bond is

16    appropriate.

17         On July 15, 2020, officers responded to a call

18    6439 Hoffman Avenue, and when they arrived they met the

19    victim E.S. who stated she was awoken by the sound of her

20    door getting kicked in where she got out of bed and met

21    her son who was the defendant.  The defendant told the

22    victim to give up her purse, and then grabbed the

23    victim's purse that was sitting on her night stand.  The

24    defendant attempted to flea the house, but the victim

25    tried to stop him.  The defendant pushed E.S. down the

Dixon v. City of St. Louis 19953

4

1   stairs and continued to flea.

2          E.S. attempted to catch up to the defendant again

3   and take back her purse, but the defendant took the keys

4   from the victim's purse and proceeded to steal her car.

5   The defendant was later that night caught in E.S.'s car

6   by highway patrol.

7          The defendant has three -- I apologize -- two

8   pending cases against with the same victim.  One of them

9   is a burglary 1st and violation of an order of protection

10  which occurred on June 30th.  He had a detention hearing

11  in that case on the 2nd of this month and received a

12  personal recognizance bond.

13         On I believe the 5th of this month he was picked

14  up again at the victim's house on a burglary 2nd and

15  violation of protection order.  He had a hearing on that

16  last week in which he received a personal recognizance

17  bond and Judge McGraugh specifically admonished him not

18  to go within two miles of the victim's house, and that

19  was the 15th, Your Honor.  He was found -- he entered the

20  home and was picked up in the victim's car that same day.

21         **THE COURT:**  Ms. Legomsky?

22         **MS. LEGOMSKY:**  Judge, Mr. Smith is a current

23  participant in Wellness Court with Judge Sullivan on a

24  different case.  The alleged victim in this case is his

25  mother, and I believe it's a pretty complicated

5

1    relationship that they do have.

2          When he was released -- obviously there has been

3    some stuff going on recently.  Our hope was that his

4    medication had kicked in after being at the jail for a

5    little bit of time.  He had been there about a week when

6    he was released the last time.  So I know he's been back

7    in custody a few days now.

8          I know he can't afford a bond.  So if the Court

9    was able to set a new bond, we would ask for a

10   recognizance bond.

11         **THE COURT:**  I'm not -- I'm going to leave the bond

12   where it is.  I don't think that we can come up with a

13   combination of a bond amount and conditions that would

14   keep this woman safe.  It seems like Mr. Smith has had a

15   couple of cases with the same victim and keeps going back

16   over there.  I think it's going to escalate.  It keeps

17   escalating and I am in fear for her.

18         I'm going to leave the bond where it is.  His next

19   court date for a detention hearing on this case on 7-27

20   and his long date in Division 25 is going to be August

21   24th of this year.

22         All right.  Ms. Legomsky?

23         **MS. LEGOMSKY:**  Thank you, Judge.

24              *(End of proceedings.)*

25

```
 1                             CERTIFICATE

 2

 3            I, Laurie A. Bennett, Certified Court Reporter, do

 4     hereby certify that I am an Official Court Reporter for the

 5     Circuit Court of the City of St. Louis; that on July 20,

 6     2020, I was present and reported all the proceedings had in

 7     the case of STATE OF MISSOURI, Plaintiff, vs. CHRISTOPHER

 8     MICHAEL SMITH, Defendant, Cause No. 2022-CR01287.

 9            I further certify that the foregoing 5 pages

10     contain a true and accurate reproduction of the proceedings.

11

12

13

14

15
            /s/ Laurie A. Bennett
16     _____

17            LAURIE A. BENNETT CCR #407

18

19

20

21

22

23

24

25
```

Dixon v. City of St. Louis 19956

# EXHIBIT 128

1

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

**STATE OF MISSOURI**,     )
                           )
               Plaintiff,   )
                           )
              vs.      )   Cause No. 2022-CR01305
                           )
                           )   Division No. 16B
                           )
**VALENCIA DA' JAUNAE ROBINSON**,)
                           )
            Defendant. )

**FIRST APPEARANCE HEARING**
July 22, 2020

**NICHOLAS FISCHBACH**
  Assistant Circuit Attorney
  1114 Market Street
  St. Louis, MO  63101
       on behalf of the State;

**NIKKI MOODY**
  St. Louis, MO 63101
       on behalf of the Defendant.

**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

Dixon v. City of St. Louis 19964

1              **THE COURT:**  This is Cause No. 2022-CR01305.  It's

2    styled State of Missouri versus Valencia Robinson.  Ms.

3    Robinson is present via video.  Ms. Robinson, we've

4    appointed an attorney for you today.  That's Ms. Moody.

5    She's here to represent you for the purposes of this

6    initial appearance only.  The Circuit Attorney's Office

7    is represented by Assistant Circuit Attorney, Nicholas

8    Fischbach.

9              Ms. Robinson, I'm going to ask you some questions

10   today, but I don't want you to tell me anything about

11   your case; in other words like what you did or what you

12   didn't do, or what you said or what you didn't say.  But

13   rather, I might ask you some questions about your

14   background or your financial capacity if we're talking

15   about setting a bond in this case.

16             Mr. Fischbach, what's the bond set at right now?

17             **MR. FISCHBACH:**  Your Honor, the defendant's bond

18   is currently set at no bond.

19             **THE COURT:**  Okay.  And what's the state's position

20   on that?

21             **MR. FISCHBACH:**  Your Honor, the state's position

22   is that no bond is appropriate.  The defendant is charged

23   with assault 1st and armed criminal action.

24             In this case, officers responded to the area of

25   Schreve and Anderson for a shooting.  They met the victim

1    M.V. who told them that the defendant had shot her.  Two

2    witnesses stated the defendant was in a black car, and

3    the victim and the defendant started arguing.  The

4    defendant stepped out of her vehicle as the victim was

5    being led away by one of the witnesses and shot the

6    victim multiple times.

7         The victim was taken to Barnes where she presented

8    with gunshot wounds to the back and side.  A .22

9    cartridge casing was recovered the scene.  The defendant

10   was arrested, given her Miranda Rights and told the

11   police that the victim struck her in the face several

12   times, and she was only able to get herself away from the

13   victim, and then she got out of her vehicle, drew her

14   weapon and shot the victim and then left the scene and

15   gave the gun to a friend.

16        They were able to retrieve the firearm from the

17   noted friend, which matched the weapon that the defendant

18   described and the -- it is a .22 weapon which matched the

19   cartridge found at the scene.

20        The defendant has a criminal history including a

21   2009 theft of less than 500 dollars, which received five

22   years probation.  The state believes that she completed

23   that successfully, has no information otherwise.  However

24   it is worth -- the state is aware and  it's worth

25   emphasizing, the victim in this case is dating the

4

1    defendant's ex-boyfriend.

2            **THE COURT:**  The Court is not shocked by that

3    statement.

4            **MR. FISCHBACH:**  And I am not surprised, Your

5    Honor.

6            However, given this web of inter-relation and the

7    fact that the victim is still in the hospital being

8    treated for gunshot wounds, the state believe that the

9    defendant represents a danger to the victim.

10           **THE COURT:**  All right.  Ms. moody.

11           **MS. MOODY:**  Your Honor, I would just like to point

12   out that Ms. Robinson does have a full time job.  She has

13   lived in St. Louis for her entire life.  The prior

14   convictions spoken of were a stealing offense, nothing

15   violent.

16           She very well could stay away from the victim in

17   this case if ordered to do so by the Court.

18           She does -- says that she does have some mental

19   health considerations.  And in addition to that, her

20   health in general, she has high blood pressure and

21   asthma, which keeping her incarcerated makes her more

22   susceptible to any kind of illnesses that we currently

23   have going on.

24           Because of that, Judge, I would just ask you give

25   her a bond with a stay away from the victim order,

5

1      possible house arrest, mental health evaluation and

2      follow-up treatment as needed.

3           **THE COURT:**  All right.  Ms Roberson, I like Ms.

4      Moody's arguments, but I don't believe that there is any

5      combination of monetary and non-monetary conditions that

6      I could set that would keep the community safe,

7      especially the victim in this case or the witnesses to

8      the incident.  So I'm going to order you detained with no

9      bond.  I'm going to give you another detention hearing

10     set for a week from today with a different judge to

11     review the circumstances.  That will be on 7-29 of this

12     year at noon, and then your long date in Division 25 is

13     going to be August 25th of this year.

14          All right.  Very good.

15

16

17

18          *(End of proceedings.)*

19

20

21

22

23

24

25

6

```
1                           CERTIFICATE
2
3              I, Laurie A. Bennett, Certified Court Reporter, do
4     hereby certify that I am an Official Court Reporter for the
5     Circuit Court of the City of St. Louis; that on July 22,
6     2020, I was present and reported all the proceedings had in
7     the case of STATE OF MISSOURI, Plaintiff, vs. VALENCIA
8     DA'JAUNAE ROBINSON, Defendant, Cause No. 2022-CR01305.
9                   I further certify that the foregoing 5 pages
10    contain a true and accurate reproduction of the proceedings.
11
12
13
14
15
                /s/ Laurie A. Bennett
16              _____
17                      LAURIE A. BENNETT CCR #407
18
19
20
21
22
23
24
25
```

Dixon v. City of St. Louis 19969

# EXHIBIT 129

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                 STATE OF MISSOURI
2        Honorable Calea Stovall-Reid, Judge

3
STATE OF MISSOURI,              )
4                               )
              Plaintiff,        )
5                               )
         vs.                    )    Cause No. 1922-CR02894-01
6                               )
████████████████,               )
7                               )
              Defendant.        )
8

9           BOND HEARING - INITIAL APPEARANCE

10              NOVEMBER 23, 2020

11

12   FOR THE PLAINTIFF:          FOR THE DEFENDANT:

13   Mr. Jordan Smith            Mr. Andrew Cortopassi
     Assistant Circuit Attorney  Assistant Public Defender
14   1114 Market Street, #401    1114 Market Street, #602
     St. Louis, MO  63101        St. Louis, MO  63101
15

16

17

18

19

20

21

22

23        KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                 OFFICIAL COURT REPORTER
24          CITY OF ST. LOUIS CIRCUIT COURT
            TWENTY-SECOND JUDICIAL CIRCUIT
25

1          SHERIFF:  Jason Coats, Your Honor.

2          THE COURT:  All right.  Okay.  Mr. Smith, you may

3     proceed.

4          MR. SMITH:  Your Honor, Mr. Coats is charged with

5     possession of a controlled substance, possession of drug

6     paraphernalia, a misdemeanor, and tampering in the first

7     degree, a felony.  He was found after Illinois State Police

8     were tracking a stolen vehicle and notified Missouri police

9     who pulled him over.  The defendant was in the driver's

10    seat.  The license plates had been changed.  He was the only

11    person, driving the car.  The center console contained

12    crystal methamphetamine and a syringe in the defendant's

13    pocket.

14          He has multiple felony convictions, including

15    property damage, theft, burglary, murder in the second

16    degree and violation of an order of protection.  He's also,

17    from my understanding -- and correct me if I'm wrong,

18    Mr. Cortopassi -- but it's my understanding he's actually

19    still serving time for his most recent burglary conviction,

20    so he's on a hold here, and as soon as this case is

21    resolved, he will be remanded back to DOC custody.  Is that

22    correct?

23          MR. CORTOPASSI:  Yes, I believe so.

24          MR. SMITH:  So given that, we're asking no bond

25    simply because setting any bond wouldn't really serve any

```
 1   point because he still has a DOC hold on him and would just
 2   be remanded back to DOC and we would have to writ him back
 3   here all over again.
 4                THE COURT:  Mr. Cortopassi, did you want to make a
 5   statement?
 6                MR. CORTOPASSI:  No, Judge.  Well, if I may just
 7   briefly -- and it can be public here -- if I may just
 8   briefly speak to ███████     for like 20 seconds.
 9                THE COURT:  So you said you did not need to go
10   into a room?
11                MR. CORTOPASSI:  No, we don't.
12                THE COURT:  Okay.  All right.
13                MR. CORTOPASSI:  ██████████  I have filed for a
14   motion to dismiss for the detainers issue, and I anticipate
15   that that will be attended to by Judge Boyer and I think the
16   prosecutor within the next couple weeks; okay?
17                THE DEFENDANT:  Parole?
18                MR. CORTOPASSI:  The dispositions of detainers
19   issue.
20                THE DEFENDANT:  What do you mean?  I still don't
21   understand.
22                MR. CORTOPASSI:  So you filed, correct, you filed
23   a motion for dismissal for disposition of detainers, which I
24   then followed up on?
25                THE DEFENDANT:  Okay.
```

1    MR. CORTOPASSI:  So I think the judge in charge of

2  your case after this division will take that up within --

3  well, as soon as possible, maybe the next couple weeks.

4  Okay.

5    THE DEFENDANT:  Thank you.

6    THE COURT:  All right.  So the Court finds that

7  defendant is indigent based on the exhibit that was filed by

8  the pretrial bond officer's office and the statements of

9  Mr. Cortopassi.  The Court will set the bond at no bond

10  allowed based on ███████ you being in Department of

11  Corrections custody and your prior criminal history.  So

12  you'll just remain in custody at the Justice Center.  No

13  bond allowed.

14    Next court date is -- what's his next court date,

15  Jean?  11/30 and -- okay, so you'll appear on video again on

16  the 30th -- that's next Monday -- for a seven-day review.

17  More than likely you will not be released because it doesn't

18  make sense to release you if you're in the Department of

19  Corrections custody.  And then your next court date will be

20  January 14.  So between then, the 30th and the 14th,

21  Mr. Cortopassi will have an opportunity to talk to the judge

22  that's handling the case that you filed the request for

23  speedy disposition on.  Okay?

24    THE DEFENDANT:  Yes.

25    THE COURT:  Do you have any questions about

1   anything?

2           THE DEFENDANT:  The only question is will I get to

3   speak with you any time?

4           MR. CORTOPASSI:  I'll give you a call this week;

5   okay?

6           THE DEFENDANT:  Okay.  That's it.  Thank you.

7           THE COURT:  Thank you.

8                       (Hearing concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

```
1                        CERTIFICATE
2           I, Kristine A. Toennies, Registered Merit
3    Reporter, Certified Realtime Reporter, and Certified Court
4    Reporter, do hereby certify that I am an official court
5    reporter for the Circuit Court of the City of St. Louis;
6    that on November 23, 2020, I was present and reported all
7    the proceedings had in the case of STATE OF MISSOURI,
8    Plaintiff, vs. ███████████, Defendant, Cause No.
9    1922-CR02894-01.
10          I further certify that the foregoing pages contain
11   a true and accurate transcription of the proceedings.
12
13
14                   /s/ Kristine A. Toennies
                     _____
15                   Kristine A. Toennies, RMR, CRR, CCR #769
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT 130

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Calea Stovall-Reid, Judge

STATE OF MISSOURI,            )
                              )
                Plaintiff,    )
                              )
        vs.                   )      Cause No. 2022-CR01381-01
                              )
TIMOTHY JONES,                )
                              )
                Defendant.    )

BOND HEARING - INITIAL APPEARANCE

MONDAY, NOVEMBER 23, 2020

FOR THE PLAINTIFF:            FOR THE DEFENDANT:

Mr. Jordan Smith              Mr. Eric Barnhart
Assistant Circuit Attorney    Eric V. Barnhart, LLC
1114 Market Street, #401      7751 Carondelet Ave., Ste. 202
St. Louis, MO  63101          Clayton, MO  63105

KRISTINE A. TOENNIES, RMR, CRR, CCR #769
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1        THE COURT:  Okay, Timothy Jones.  All right,

2   Mr. Smith, you may proceed.

3        MR. SMITH:  Your Honor, Mr. Jones is charged with

4   assault in the second degree and armed criminal action.  In

5   this case he had an argument with his ex-girlfriend and the

6   argument escalated, and he chose to pull out his pistol and

7   shoot near her feet.  He then left the state, went to

8   Cahokia, Illinois, which is where he lives.  He's refused to

9   cooperate with the investigation, our investigators at any

10  point.

11       His priors include unlawful use of a weapon,

12  burglary, theft, criminal sexual abuse, reckless discharge

13  of a firearm, unlawful possession of a firearm.  I have a

14  statement from the victim who said she's very afraid of this

15  individual.  May I read the victim statement, Your Honor?

16       THE COURT:  You may.

17       MR. SMITH:  "Judge, my name is Tramiya Ishman, and

18  Timothy Jones is my ex-boyfriend.  If you go back and look

19  at Timothy's history, he has a background on him all dealing

20  with firearms.  I fear for my life and think he will come

21  back and try to retaliate.  I have dealt with Timothy off

22  and on for six years, so I know what he's capable of.  It's

23  always threats that he will harm me if I don't talk to him

24  or if I was ever to call the police on him.  Timothy has a

25  brother name Tamarcus, and on June 14th he also had a

1  firearm and began to shoot in the air while Timothy turned a

2  gun at me and other females that were there.  Tamarcus was

3  not picked up or anything, and I was told they didn't have

4  his bullet cases from him.  There was nothing they could do.

5  I didn't understand or get that because they didn't have

6  bullet cases from Tim.  Here's the pictures where the bullet

7  grazes my foot."

8          And I should interject, Your Honor, the reason we

9  arrested Mr. Jones is because we found the firearm in

10  question, the cartridges.

11          "However, ever since this incident, Tamarcus has

12  posted threats on social media that were brought to my

13  attention.  Tamarcus will do whatever Tim tells him to do.

14  I am always in the house and scared to go places because I'm

15  thinking something is going to happen to me.  I should not

16  have to live my life in fear because Tim doesn't know how to

17  treat a female.  I'm always having nightmares being up at

18  two in the morning and can't go back to sleep.  I take

19  melatonin so I can sleep.  Out of the six years I had to

20  deal with him, it's like I was sleeping next to my worst

21  nightmare.  I've been through a lot of things in life, but

22  this is one of the hardest things I've ever had to deal

23  with.  He traumatized me.  It's something I have to deal

24  with for the rest of my life.  I appreciate you guys a lot

25  for the calls to check on me and keeping me updated on

4

1   everything.  Thank you."

2          So Judge, given the victim's statement and the

3   facts of this case, we believe he's a very real threat to

4   the victim if the defendant were to be released.

5   Additionally, because he lives in Illinois and has no ties

6   to our immediate community, he also represents a flight

7   risk.  So we would ask that the defendant be confined on no

8   bond until trial.

9          THE COURT:  Mr. Barnhart?

10          MR. BARNHART:  Thank you, Judge.  Jordan, it says

11  no felony convictions on the pretrial bond officer's report,

12  and it doesn't list any priors.  Are those arrests that you

13  stated?

14          MR. SMITH:  I thought it was showing convictions.

15  Let me double-check right now, but I'm fairly certain I'm

16  showing convictions because I made a special note of that.

17  I will double-check and I can give you the case numbers if

18  you would like.

19          MR. BARNHART:  Okay.  I just want to make sure.

20          MR. SMITH:  Absolutely.

21          MR. BARNHART:  Mr. Jones, I'm Eric Barnhart.  I'm

22  your attorney for today only.  I'm going to ask you some

23  questions not related to the case but just where you would

24  live, where you work, things like that.

25          Just for the record, Mr. Jones was originally

1  charged with exhibiting, on the complaint, a class E felony.

2  It looks like they upped the charges in the grand jury to

3  assault second and armed criminal action.  Is that correct,

4  Jordan?

5              MR. SMITH:  Let me check the original complaint.

6  I believe that's correct though.

7              MR. BARNHART:  I was looking like, wait a minute,

8  this is different charges.

9              MR. SMITH:  Yes, the complaint is for exhibiting.

10  I think at the time we didn't have all the facts, and then

11  with the grand jury we did, which is why it was changed.

12              MR. BARNHART:  Okay.  So it got upgraded in the

13  grand jury?

14              MR. SMITH:  Yes.

15              MR. BARNHART:  So Mr. Jones, where would you live

16  if you got released?  He's muted.  Can the sheriff unmute

17  him?  Thank you.  All right, Mr. Jones.

18              SHERIFF:  Sorry about that.

19              MR. BARNHART:  That's okay.  Where would you live

20  if you got released, Mr. Jones?

21              THE DEFENDANT:  13 Southern Drive, Belleville,

22  Illinois.

23              MR. BARNHART:  Who would you live with?

24              THE DEFENDANT:  My mother and my kids.

25              MR. BARNHART:  Are you working?

1           THE DEFENDANT:  No, sir, because of this

2     situation.

3           MR. BARNHART:  Where were you working before

4     COVID?

5           THE DEFENDANT:  No, I said I was not working.  I

6     just was in custody due to this situation.

7           THE COURT:  But he's saying were you working

8     before you got arrested?

9           THE DEFENDANT:  Oh, yes, ma'am.

10          THE COURT:  Where were you working at?

11          THE DEFENDANT:  At Menasha warehouse in Pontoon

12    Beach.

13          MR. BARNHART:  You said you got incarcerated

14    because of this?  Were you on probation or something from

15    another case?

16          THE DEFENDANT:  No, I was on parole.

17          MR. BARNHART:  Oh, were you held in another jail

18    to be picked up here?

19          THE DEFENDANT:  Yes, I had to go back and get my

20    parole time because of the (inaudible) that was made, my

21    parole, my parole was revoked and I was at Menard

22    Correctional Center.

23          MR. BARNHART:  Okay.  What were you on parole for?

24          THE DEFENDANT:  I was on parole for unlawful

25    possession of a firearm.

```
 1              MR. BARNHART:  But now you're done with parole?
 2              THE DEFENDANT:  Yes, sir.
 3              MR. BARNHART:  And how much money could you afford
 4    if I would ask the judge for a 10 percent bond?
 5              THE DEFENDANT:  I was on parole from Menard
 6    Correctional Center straight to here, so I haven't been able
 7    to get a job, but my family can come up with at least $500.
 8              MR. BARNHART:  All right.  Mr. Jones, so in the
 9    event the judge denies my request, you will get a seven-day
10    rollover, meaning seven days -- I think seven days from
11    today, which will be November 30th, you will have a second
12    crack at it to have your bond reviewed, and there will be a
13    different judge, there will probably be a different
14    prosecutor, and probably be a different defense attorney.
15    But in the meantime, your family or -- you can either apply
16    for a public defender or hire a private attorney.
17              THE DEFENDANT:  May I say something?
18              MR. BARNHART:  As long as it's not related to the
19    case and the facts of the case because there's a court
20    reporter taking everything down.  I don't want you making
21    any statements about what may or may not have happened.
22              THE DEFENDANT:  No, no, I'm not going to make any
23    statements about what may or may not have happened.  I just
24    wanted the judge to know that while I've been incarcerated
25    due to these allegations that was against me in Menard
```

1  Correctional Center, I had the rest of my parole time due to

2  the allegations that was made against me.

3          MR. BARNHART:  Okay, the judge will know you got

4  some -- so you got some shock time in in this case?

5          THE DEFENDANT:  Yes.

6          MR. BARNHART:  All right, Judge, I'm asking for

7  $5000, 10 percent bond, stay away from the complaining

8  witness, Ms. Ishman.  GPS through EMASS, waive fees, no

9  firearms of any kind.  He can live with his -- I believe

10 it's his mom and kids at the address listed.  I think that's

11 about it.  Thank you.

12         MR. SMITH:  Judge, the State's position is still

13 no bond.  Eric, I checked.  All of those, he does have all

14 of those convictions, but they're all in Illinois which

15 would be why the bond commissioner didn't have them.

16         MR. BARNHART:  Okay, that might explain it.

17         THE COURT:  Mr. Jones, can you hear me?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  I understand that you feel that you've

20 served time on this case already, and that's true.  However,

21 it has not -- the case has not been disposed of.  So you're

22 basically starting all over on this case.  The time that you

23 served from the time of your arrest though will count, but

24 that time that you spent where your parole was revoked, that

25 won't count on your -- if you're ultimately convicted of

9

1   these charges.

2           Now, the Court will make a finding that you're

3   indigent based on the information that we have or lack

4   thereof in terms of your ability to post a bond, but the

5   Court believes based on the allegations in the probable

6   cause statement and your prior criminal history that you are

7   indeed a danger to the community.  Therefore, the Court will

8   set the bond at no bond allowed.

9           Your next court date is going to be November 30th.

10  At that time you'll see a different judge on video, and that

11  person will review your case again.  If you're not released

12  at that time -- well, whether you're released or not, your

13  next court date after that will be January 14th.  Do you

14  have any questions about anything?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  All right.  Thank you.  Have a good

17  afternoon.

18          THE DEFENDANT:  You too.

19                  (Hearing concluded.)

20

21

22

23

24

25

CERTIFICATE

I, Kristine A. Toennies, Registered Merit Reporter, Certified Realtime Reporter, and Certified Court Reporter, do hereby certify that I am an official court reporter for the Circuit Court of the City of St. Louis; that on November 23, 2020, I was present and reported all the proceedings had in the case of STATE OF MISSOURI, Plaintiff, vs. TIMOTHY JONES, Defendant, Cause No. 2022-CR01381-01.

I further certify that the foregoing pages contain a true and accurate transcription of the proceedings.


/s/ Kristine A. Toennies
_____
Kristine A. Toennies, RMR, CRR, CCR #769

# EXHIBIT 131

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

**STATE OF MISSOURI,**       )
                             )
        Plaintiff,   )
                             )
v.                           )     No. 2022-CR01137
                             )
██████████████              )
                             )
        Defendant.   )
_____

**TRANSCRIPT OF HEARING**
_____


On July 27, 2020, the above-entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Eric Barnhart, ESQ., Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

1                        **INDEX**

2                   **JULY 27, 2020**

3

4    **DEFENDANT'S EVIDENCE**

5          Direct Examination By Mr. Barnhart . . . . . . . . 6

6    Reporter's Certificate                        12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              July 27, 2020

2              (The proceedings commenced at 1:00 p.m.)

3              **THE COURT:**  The record will reflect we are

4     here in cause No. 2022-CR01137, State of Missouri

5     vs. ████████████████████████████████

6              The record will further reflect the parties

7     are present via video due to COVID-19, that Mr. ██████

8     is present and for today only Eric Barnhart is present

9     on his behalf for purposes of telling him what he is

10    charged with and what the bond is and going through

11    that.  The State is present on this case by who?

12             **MR. HEITMAN:**  James Heitman, Your Honor.

13             **THE COURT:**  I'm sorry, Mr. Heitman, I can't

14    tell because you are not on the screen until you say

15    something.  I didn't know if you were on this one or

16    someone else.

17             **MR. HEITMAN:**  Not a problem.

18             **THE COURT:**  I just can't see you.  All

19    right.

20             Mr. ██████, the State has charged you with

21    Count I, resisting arrest by flight; Count II, armed

22    criminal action; Count III, unlawful possession of a

23    firearm; Count IV, possession of a controlled

24    substance; Count V, unlawful use of a weapon

25    subsection 11, and that you had possession of a weapon

1     and a felony controlled substance at the same time.

2           The State is alleging while on marked patrol

3     on the cruising detail on the near north river front

4     we saw a car with an inoperable rear taillight.  We

5     pulled it over and approached on foot, at which time

6     it accelerated away at high speed.  We followed it and

7     saw it violated numerous traffic control devices

8     causing other motorists to take evasive action.  It

9     proceeded into the downtown area and we were able to

10    spike strip a tire, causing it to lose control, strike

11    a median and go airborne striking the rear of a car

12    driven by Mercedes Luckett-Bell causing physical

13    injury to her requiring hospitalization.

14          The vehicle then flipped, ejected the

15    defendant driver who was found lying with an OMNI

16    Hybrid .223 semiautomatic pistol and having a satchel

17    around his chest that contained methamphetamine.  The

18    defendant has prior felony convictions.

19          September 1, 2016, distribution, delivery or

20    manufacturer of a controlled substance in cause

21    No. 1622-CR00484-01 confinement for five years,

22    unlawful use of a weapon, same case, four years; Count

23    III, possession of marijuana and Count IV possession

24    of a felony controlled substance at the same time.

25          The Court has also received an exhibit from

1    the pretrial commissioner which it takes judicial

2    notice of along with the contents of the file and

3    notes it lists an additional felony conviction in

4    cause      No. 1422-CR00681-01 for possession of a

5    controlled substance for which the defendant received

6    an SIS and was revoked when he picked up the 2016 case

7    and received five years.

8            It also indicates he lives with his mother

9    and lists an address for his mom.  That he is

10   unemployed.  It list physical conditions.  Accident

11   injuries, which the probable cause indicated there was

12   an accident.  I think everything else we've gone

13   through.  It indicates a back and leg injury due to

14   accident so he is on Vicodin and hydrocodone.

15           The State can go ahead, Mr. Heitman.

16           **MR. HEITMAN:**  Your Honor, based on the fact

17   that the defendant ran to the point of causing a

18   fairly major accident injuring a woman and putting her

19   in the hospital and that the fact that he -- the bond

20   commissioner's report listed he is unemployed so I

21   don't -- the State doesn't believe he will be able to

22   come up with money, we are asking for no bond on this

23   case.

24           **THE COURT:**  Mr. Barnhart.

25           **MR. BARNHART:**  Thank you, Judge.

1                    **DIRECT EXAMINATION**

2    **BY MR. BARNHART:**

3         Q.    Mr. █████, I'm Eric Barnhart.  I'm

4    representing you for today only on your bond.  I'm

5    going to ask you a few questions in hopes to try to

6    get the bond reduced.

7         A.    Yes, sir.

8         Q.    If you got released you live with your

9    mother ████████████; is that correct?

10        A.    Yes, sir.

11        Q.    And she lives at ████████████

12   ████████████████?

13        A.    Yes, sir.

14        Q.    And right now you are unemployed?

15        A.    Yes, sir.  I was working at ████████ on

16   ████████████████████ before the Corona and

17   stuff came out, before then I had got laid off and

18   filed for unemployment for that and then right now due

19   to my injuries right now I can't work right now

20   because I'm in the process of -- I'm still injured and

21   plus I had surgery, going through physical therapy and

22   stuff right now so my body is not able right now to do

23   any type of work.

24        Q.    Did you have surgery based on this case?

25        A.    Yes, sir.  I didn't have surgery yet.  I

1    went to plastics and they gave me time, my doctor gave

2    me time to see how my body is going to heal first to

3    see if he wants to prolong my back surgery.  He do

4    want to have surgery on my leg.

5         Q.   What's going on with your leg?

6         A.   I can barely walk a little bit.  My toes

7    only bend like half way.  Like my right leg connected

8    to my nerve in my back so I can barely -- I can walk,

9    but barely.  I have trouble, you know, walking and

10   sleeping and stuff.

11        Q.   Can your mom afford a 10 percent bond?

12        A.   Yes, sir.

13        Q.   What amount do you think they can afford?

14        A.   I don't know.  In between a thousand and two

15   thousands, somewhere in between there somewhere.

16        Q.   I would ask for 20,000, 10 percent, that

17   would be a $2,000 bond.  Do you think your mom could

18   afford that?

19        A.   Yes, sir.

20        **MR. BARNHART:**  All right.  Thank you very

21   much.  I'm going to make argument on your behalf.

22        **THE COURT:**  Go ahead, Mr. Barnhart.

23        **MR. BARNHART:**  Thank you, Judge.

24        Judge, I'm going to ask for 20,000,

25   10 percent, and I'm asking that he live with his

1  mother ████████████ at ████████████████████

2  ████████████ .

3          If you want to put him on GPS with EMASS,

4  that's perfectly fine.  I would ask the cost to be

5  waived at this point because I don't know if he has

6  got unemployment yet.  He has got a file for it.  He

7  was working before this happened.  I think he needs to

8  take care of the surgeries and I don't think that he

9  will be able to get any sort of decent medical

10  treatment while he is in the Justice Center so I would

11  ask that these bonds and conditions should keep the

12  community safe and make sure he appears in court.

13  Thank you.

14          **THE COURT:**  The Court notes that this is the

15  48 hour hearing; therefore, the State has not had the

16  opportunity to contact the victim who was also injured

17  in this incident; therefore, the Court is not going to

18  change the bond until -- or consider a change in the

19  bond as on its face there is no question he poses a

20  danger to the community and that he didn't just drive

21  away, he continued driving away and caused substantial

22  risk of serious injury or death to several people in

23  the community and did cause injury.

24          All that the probable cause statement

25  indicates is that it required hospitalization, but the

1    Court would like more information on that for whomever

2    is in here for the seven day hearing.  And the Court

3    notes at the time he also had a loaded firearm, as

4    well as illegal narcotics.

5          So for today's purposes the Court is denying

6    any change in the request for a bond.

7          Mr. ████, if you could have some more

8    information at the seven day hearing, there will be a

9    more drawn out hearing about all the facts of the

10   case, okay?

11         **THE DEFENDANT:**  I sorry.  Can you repeat

12   that, please?

13         **THE COURT:**  This was your 48 hour hearing,

14   which is also called an initial appearance.  It's so

15   that you know what you are charged with.  Your bond is

16   presently set at no bond based on causing a danger to

17   the community.  You heard the probable cause statement

18   and because five days hasn't passed, which is the

19   amount of notice a victim is entitled to make a

20   statement as to how he or she or they feel about any

21   change in the condition of bond, the Court doesn't

22   have any of that information.

23         The Court is aware that the victim was

24   hospitalized.  It sounds like from you you were also

25   hospitalized.  This wasn't a fender-bender.  It's what

1   is frequently characterized as a high speed police

2   chase which resulted in someone getting injured.

3           I'm not going to do anything with the bond

4   today.  You will have a longer bond hearing on

5   August 3rd.  So you are going to have another

6   detention hearing just about your bond on August 3rd

7   at noon.  Do you understand that, Mr. █████?

8           **THE DEFENDANT:**  Yes, I do.  Do I have to

9   hire another attorney for that?

10          **THE COURT:**  You can hire an attorney or I

11  can't really -- I'm not comfortable making a

12  guestimate as to whether or not you would be able to.

13  It doesn't sound like you are able to hire an

14  attorney, in which case the Court would be inclined to

15  appoint the public defender so you would have an

16  attorney at the next hearing.  Unless you think your

17  family wants to hire you a different attorney then the

18  Court is happy to appoint you a public defender.

19          They will come and meet with you before the

20  hearing you have next week on August 3rd and you can

21  give them more information about your medical

22  condition or other things that the Court takes into

23  consideration when setting a bond.  Do you want me to

24  appoint the public defender?

25          **THE DEFENDANT:**  Yes, please.

```
 1              THE COURT:  All right.  The Court finding

 2   that the defendant is indigent and appointing the

 3   public defender based on the fact that he is not

 4   employed, and while there was some indication on the

 5   record that his mother may be able to post something,

 6   that was not his income and therefore does find he is

 7   indigent.  That will conclude this hearing.

 8              (Proceedings were concluded.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        CERTIFICATE

 2                 I, Sherry L. Gantner, Certified Court

 3    Reporter, do hereby certify that I am an official

 4    court reporter for the Circuit Court of the City of

 5    St. Louis; that on July 27, 2020, I was present and

 6    reported all the proceedings had in the case of STATE

 7    OF MISSOURI, Plaintiff, vs. ████████████, Defendant,

 8    Cause No. 2022-CR01137.

 9

10                 I further certify that the foregoing

11    pages contain a true and accurate reproduction of the

12    proceedings.

13

14

15
                      /S/Sherry Gantner
16                 _____

17                 Sherry L. Gantner, CCR 839
                         RPR, CSR (IL and MO)
18

19

20

21

22

23

24

25    TRANSCRIBED:  December 8, 2020
```

# EXHIBIT 132

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2022-CR01276 |
| ) | |
| **RAYON DANSBERRY,** ) | |
| ) | |
| Defendant. ) | |

_____

**TRANSCRIPT OF HEARING**
_____



On July 29, 2020, the above-entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Guy Wold, ESQ., Attorney at Law.



SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

1                                **INDEX**

2                          **July 29, 2020**

3    **DEFENDANT'S EVIDENCE**

4          Direct Examination By Mr. Wold . . . . . . . . . . 6

5    Reporter's Certificate                            9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    July 29, 2020

2            (The proceedings commenced at 12:08 p.m.)

3            **THE COURT:**   The record will reflect we are

4    here in cause No. 2022-CR01276, State of Missouri

5    vs. Rayon Dansberry.

6            Mr. Dansberry, the State has charged you

7    with one count of robbery in the first degree, one

8    count of armed criminal action, a second count of

9    robbery in the first degree and a second count of

10   armed criminal action.  This is your initial

11   appearance on the bond.

12           The State has alleged that the victims

13   reported you and another man approached each side of

14   the car which the victims were seated, pointed pistols

15   at both victims and demanded their belongings.  The

16   victims relinquished their personal items and the

17   assailants left the scene.

18           This defendant was captured on surveillance

19   footage less than an hour later after unsuccessfully

20   attempting to use one of the victim's debit and credit

21   cards while operating a silver Nissan Rogue.  The

22   security footage also showed the defendant in

23   possession of a red cell phone.  The Nissan was rented

24   to a relative of this defendant.  When police later

25   took possession of the Nissan, the defendant retrieved

Dixon v. City of St. Louis 20287

4

1    his red cell phone from the vehicle.

2              Officers searched the Nissan and discovered

3    property belonging to one of the robbery victims.

4              Review of defendant's criminal history

5    revealed that he was convicted of robbery in the first

6    degree and armed criminal action under cause

7    No. 2297103090B-01 and sentence to 20 years in the

8    Missouri Department of Corrections.

9              The Court has also received and reviewed

10   what's called an Exhibit 16B which was filled out by

11   the bond commissioner.  It says that you stated to the

12   bond commissioner that your ties to the community were

13   your mom and that you had four kids, that you would be

14   going to Cahokia, Illinois if you were released.  That

15   you're unemployed, that you have a pacemaker.

16             That's essentially it for purposes of the

17   bond.

18             All we are here about today is to talk about

19   the bond.  As you know your bond is presently set at

20   no bond allowed.  You don't want to talk about the

21   facts of the case.

22             Who is here?  Guy, are you there?

23             **MR. WOLD:**  I'm here now, Judge.  Took me

24   forever to long in.  It had me blocked.

25             **THE COURT:**  This is the first person we are

Dixon v. City of St. Louis 20288

1    doing.  Mr. Dansberry is charged with two counts of

2    robbery first and two counts of armed criminal action.

3    He has a prior robbery first conviction.

4            Does the State have anything else to add

5    regarding the bond?

6            **MR. HEITMAN:**  I do, Your Honor.

7            The victim we spoke with today.  She didn't

8    provide a statement, but she did want to relay to the

9    Court that she is worried about retaliation from the

10   defendant by the fact that he got her purse and,

11   therefore, all of her personal information so she is

12   afraid he knows where she lives.

13           **THE COURT:**  Okay.  Mr. Dansberry, Guy Wold

14   is a private attorney who is here today only for today

15   to speak on your behalf as to the bond only.

16           I'm sorry.  Did I interrupt you,

17   Mr. Heitman?

18           **MR. HEITMAN:**  No.  That's was it.  I was

19   just going to ask for no bond on this case.

20           **THE COURT:**  Mr. Wold, did you wish to

21   inquire anything of your client or state anything to

22   the Court regarding bond?

23           **MR. WOLD:**  Yes, I wanted to ask him a couple

24   questions.

25

1                    **DIRECT EXAMINATION**

2    **BY MR. WOLD:**

3         Q.   Mr. Dansberry, are you on parole or anything

4    for that prior robbery case?

5         A.   No, sir.  I completed parole.

6         Q.   It mentioned something about federal

7    supervision of some fashion.  I wasn't really clear.

8    What was that about?

9         A.   I have a previous case in Illinois, federal

10   case in Illinois.  That's what they are talking about.

11   I'm what they call pretrial release for court.

12        Q.   Okay.  Has anybody come to talk to you about

13   that issue, probation officers, federal release

14   officer, anybody?

15        A.   No, sir.  They haven't talked to me about

16   anything.

17        Q.   Okay.

18        **MR. WOLD:**  Judge, I guess what I say at this

19   point is this.  He does obviously have a particularly

20   bad prior, but he has completed his sentence.  He is

21   an older man.  He was working at the time the issue

22   came up.  And I guess question at this point is

23   probably making sure he gets an attorney and see where

24   he goes from there.  We ask the court to set a bond of

25   some kind, if the Court agrees to do so.

1          **THE COURT:**  The Court having considered

2     Missouri Supreme Court Rule 33.01 in general and as

3     specifically to this defendant finds that he does have

4     violent priors of the same character and was sentenced

5     to 20 years in the penitentiary.  The Court finds

6     there is surveillance footage of this actual crime.

7               In addition, the defendant's cell phone was

8     found in the car that he's seen driving on the video,

9     that there was a positive identification and that the

10    defendant has just stated in open court that he is on

11    some sort of pretrial federal release when this case

12    was picked up.

13              Therefore, the Court finds there is no less

14    restrictive alternative that could ensure the safety

15    of the community and orders the defendant be detained.

16              He will have a seven day hearing on

17    August 5th.

18              Mr. Dansberry, are you going to see if your

19    family hires you a private attorney, or do you want

20    the Court to appoint the public defender?  The Court

21    finds you are indigent.

22          **THE DEFENDANT:**  We trying to see.  As of

23    right now I need a lawyer until I can get one.

24          **THE COURT:**  The Court finds the defendant is

25    determined to be indigent.  He is unemployed, has a

1    history of receiving food stamps.

2           One of the public defenders should come and

3    see you before your seven-day hearing.  Then you can

4    talk about the case with your attorney and then you

5    will have another hearing next Wednesday, okay?

6           **THE DEFENDANT:**  Yeah.  Can I ask a question?

7           **THE COURT:**  Yeah, you can ask a question.

8           **THE DEFENDANT:**  If I'm not mistaken, he just

9    said that the victim's cell phone was found in the

10   car.

11          **THE COURT:**  No.  The victim's personal

12   belongings -- don't talk about the facts of the case

13   because my court reporter is recording everything.  If

14   I misspoke, I was only saying what the probable cause

15   said that you had a red cell phone.  I'm not saying if

16   it's true or not true and you don't want to talk about

17   the facts.  I'm just making a record of what the State

18   is alleging at this point, okay?

19          **THE DEFENDANT:**  Okay.  I'm sorry, Your

20   Honor.  Okay.

21          **THE COURT:**  That will conclude the record

22   for today.

23          (Proceedings were concluded.)

24

25

```
 1                         CERTIFICATE

 2                I, Sherry L. Gantner, Certified Court

 3    Reporter, do hereby certify that I am an official

 4    court reporter for the Circuit Court of the City of

 5    St. Louis; that on July 29, 2020, I was present and

 6    reported all the proceedings had in the case of STATE

 7    OF MISSOURI, Plaintiff, vs. RAYON DANSBERRY,

 8    Defendant, Cause No. 2022-CR01276.

 9

10

11                I further certify that the foregoing

12    pages contain a true and accurate reproduction of the

13    proceedings.

14
                          /S/Sherry Gantner
15                       _____

16                    Sherry L. Gantner, CCR 839
                         RPR, CSR (IL and MO)
17

18

19

20

21

22

23

24    TRANSCRIBED:  December 14, 2020

25
```

Dixon v. City of St. Louis 20293

# EXHIBIT 133

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2022-CR01332 |
| | )    2022-CR00107 |
| | ) |
| **RAKEE HENDRIX,** | ) |
| | ) |
| Defendant. | ) |

_____

**TRANSCRIPT OF HEARING**
_____


On July 29, 2020, the above-entitled
cause came on regularly for hearing before the
Honorable Elizabeth Hogan, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

**APPEARANCES**

The State of Missouri was represented
by James Heitman, ESQ., Assistant Circuit Attorneys,
City of St. Louis, State of Missouri.

The Defendant was present in person and
was represented by Mia Griffin, Public Defender.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20294

```
 1                      July 29, 2020

 2              (The proceedings commenced at 12:08 p.m.)

 3         THE COURT:  Mr. Hendrix, you have two cases.

 4    The first case is cause No. 2022-CR01332, State of

 5    Missouri vs. Rakee Hendrix.

 6              The State is alleging in this case on

 7    July 24 an officer and two other officers responded to

 8    1300 Market for a call for exhibiting.  There we saw

 9    defendant who matched the description from the call.

10    He initially ignored commands to stop until they were

11    given to the name given in the exhibiting call.  We

12    saw a silvery revolver and open fanny pack on his

13    person.

14              The defendant has previously been found

15    guilty of possession of gambling device, tampering

16    second, possession of controlled substance, possession

17    of controlled substance, burglary second, possession

18    of marijuana, delivery, possession of a controlled

19    substance, resisting, I don't know what RIOD stands

20    for, ACA, and has a pending charge for unlawful

21    possession of firearm, possession of a controlled

22    substance and unlawful use of a weapon, subsection 11,

23    in cause No. 2022CR-00107.

24              The bond is presently set at no bond.

25              And the other case 2022-CR00107, the State
```

1   has alleged that on December 4th, 2019 while police

2   were on routine patrol in a marked vehicle they

3   observed an individual later identify as the defendant

4   who resembled a wanted subject we were looking for.

5   We approached him and called the name of the wanted

6   subject and he turned toward us.  Upon seeing the

7   police vehicle appeared surprised.  We stopped and

8   made contact with him and inquired if he was the

9   subject we were looking for and he said he was not.

10          We requested identification and as he

11  procured it, he turned away to shield us from seeing

12  what he was doing and I noticed the right pocket of

13  his jacket was sagging as if holding something

14  weighty.  He provided us with an ID and I advised him

15  that I intended to pat him down on his outer clothing.

16  He said, no, you are not.  Step back and placed his

17  hands in his pockets.  I took a step toward him while

18  asking him to remove his hands, at which time he

19  turned around attempted to flee but fell forward.

20          We took him into custody and located a

21  loaded Smith & Wesson .38 caliber in his right pocket

22  of his jacket.  We located what was analyzed as

23  cocaine base on his person.  We also determined that

24  he has prior felony convictions.  The Court notes they

25  list them, Mr. Hendrix, in the probable cause, but

1    they appear to be the same priors I read to you on the

2    other case.

3              We are present today for a 48 hour bond

4    hearing and it looks like your attorney, Ms. Griffin,

5    is also present.

6              Does the State -- the Court also takes

7    judicial notice of its file and has reviewed Exhibit B

8    which states as to financial conditions that you are

9    unemployed, that your family ties are with your mother

10   Latwona Douglas.  It says seizures, but it doesn't

11   indicate what those may or may not be for.  That you

12   are on Keppra and that you are receiving your

13   medication in jail.  That you have no money or any

14   financial means.

15             Does the State have anything to add?

16             **MR. HEITMAN:**  I don't have nothing to add,

17   Your Honor.  Given that the defendant was charged with

18   the same thing twice couple months apart, don't think

19   there is any safe way to keep him from doing that

20   again without keeping him in jail.  So I would ask for

21   no bond.

22             **THE COURT:**  Ms. Griffin?  Is Ms. Griffin

23   still there?

24             **MR. WOLD:**  I still see her, Judge, but I

25   think she might be muted.

1           **THE COURT:**  Will you tell her to unmute

2    herself, Guy.

3           **DEPUTY:**  Mia, can you hear us?

4           **MR. HEITMAN:**  I think her mike might be

5    broken actually.  Doesn't say she's muted, but we

6    can't hear her.  Maybe she is going off and coming

7    back on.

8           **THE COURT:**  Mr. Hendrix, we are going to put

9    you on second call.  I think your attorney is having

10   issues trying to sign on.  If she is able to sign back

11   on then we will bring you back in.  If for some reason

12   she is not able to appear, then we will bring you back

13   in and tell you what your next court day is, okay?

14          **THE DEFENDANT:**  All right.  Appreciate you.

15          (Discussion off the record was held.)

16          **THE COURT:**  Now back to Hendrix.

17          Did the State have anything else to add

18   other than I believe you said you are asking that it

19   remain at no bond?

20          Ms. Griffin, do you have anything in regards

21   to the bond?

22          **MS. GRIFFIN:**  Yes.  I believe for the 107

23   cause number it looks like he was set at a written

24   promise to appear on the warrant application.

25          **THE COURT:**  Correct.

Dixon v. City of St. Louis 20298

1          **MS. GRIFFIN:**  I haven't had a chance to

2   speak with Mr. Hendrix yet, but I was able to speak

3   with his mom this morning.  My understanding is that

4   he would be able to live with her at 6922 Pennsylvania

5   Avenue, and he has been a lifetime resident of

6   St. Louis.  He has an 11th grade education.  It sounds

7   like there may be some addiction issues so maybe some

8   possible treatment court plan in the future.

9          He also has his father and brothers and

10  sisters in the area to ensure he appears in court,

11  things of that nature.  I request that he be released

12  on some sort of recognizance bond or requirement of

13  GPS.

14          **THE DEFENDANT:**  Yes.  Thank you.

15          **THE COURT:**  The Court having considered

16  Missouri Supreme Court Rule 33.01 generally and

17  specifically in regards to this defendant, namely that

18  he was given a personal recog on the first unlawful

19  possession of a weapon that went warrant and now has a

20  different unlawful possession of a weapon having a

21  different weapon from the first incident.  The Court

22  also notes he has a substantial criminal conviction

23  history and is aware he is not to have a weapon at any

24  time; therefore, the Court finds he does pose a danger

25  to the community and there is no less restrictive

1   alternative in order to detain until seven day

2   hearing, which will be August 5th will be his seven

3   day hearing and his court date will be in Division 25.

4   That will conclude the record.

5               (Proceedings were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3   Reporter, do hereby certify that I am an official

 4   court reporter for the Circuit Court of the City of

 5   St. Louis; that on July 29, 2020, I was present and

 6   reported all the proceedings had in the case of STATE

 7   OF MISSOURI, Plaintiff, vs. RAKEE HENDRIX, Defendant,

 8   Cause No. 2022-CR01332 and 2022-CR00107.

 9

10              I further certify that the foregoing pages

11   contain a true and accurate reproduction of the

12   proceedings.

13
                      /S/Sherry Gantner
14   _____

15              Sherry L. Gantner, CCR 839
                     RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23   TRANSCRIBED:  December 14, 2020

24

25
```

# EXHIBIT 134

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR02181-01 |
| | ) | |
| **KENNETH ROBERSON,** | ) | |
| | ) | |
| Defendant. | ) | |

_____

### TRANSCRIPT OF HEARING
_____


On July 29, 2020, the above-entitled

cause came on regularly for hearing before the

Honorable Elizabeth Hogan, Judge of Division 16B of

the Twenty-Second Judicial Circuit in the City of St.

Louis.

### APPEARANCES

The State of Missouri was represented

by James Heitman, ESQ., Assistant Circuit Attorneys,

City of St. Louis, State of Missouri.

The Defendant was present in person and

was represented by Guy Wold, Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20302

1                    July 29, 2020

2              (The proceedings commenced at 12:08 p.m.)

3              **THE COURT:**   The record will reflect we are

4     here in cause No. 1922-CR02181-01, State of Missouri

5     vs. Kenneth Roberson.

6                    The record will further reflect that

7     Mr. Roberson has been indicted on one count of

8     attempted statutory rape in the first degree, having

9     sexual intercourse with a person less than the age of

10    14, and one count of statutory sodomy in the first

11    degree, deviant sexual intercourse with a person under

12    the age of 14.

13                   The record will further reflect that the

14    defendant was indicted on August 29th, 2019 and there

15    was an active warrant issued and the bond was set at

16    no bond allowed.

17                   It looks like prior to that time in the

18    indictment the warrant was issued on July 15th, 2019

19    for 100,000 cash only, and that the defendant never

20    has been in custody prior to today.

21                   The record will further reflect Mr. Roberson

22    is present via videotape due to COVID-19.   The State

23    is present by Assistant Circuit Attorney James

24    Heitman, and Mr. Roberson, for today only, is being

25    represented by Guy Wold.

Dixon v. City of St. Louis 20303

1          Mr. Roberson, do you see the attorney waving

2     at you?  Do you see him?  He is a private attorney

3     that is here to represent you for today's purposes

4     only.

5          What's the State's position as to the bond?

6          **MR. HEITMAN:**  Your Honor, the State's

7     position is basically that this is a victim who is

8     terrified of the defendant.  There was a long series

9     of offenses that we've only charged two of because of

10    she sees him constantly.  He follows her into grocery

11    stores.  His family keeps track of her and reports her

12    whereabouts.  She is terrified for both herself and

13    her children and so we are asking for no bond.

14         **THE COURT:**  Before you inquire Mr. Wold, the

15    record will also reflect Exhibit 16B states the

16    defendant has a prior conviction in

17    cause No. 921CR-0000379 for distribution of a

18    controlled substance near a school, cause No. 921-000,

19    I think, 739A for unlawful use of a weapon,

20    cause No. 941-0001006 for unlawful use of a weapon,

21    cause No. 971-CR00334 for possession of a controlled

22    substance, cause No. 22031-00049-01, possession of a

23    controlled substance.

24         Mr. Wold, did you have anything to add?

25         **MR. WOLD:**  Judge, question I wanted to ask

1    actually.  There was a docket note on the 8th of July.

2    Says something about a governor's warrant.  Do we know

3    what that is?

4         **THE COURT:**  "Our office would like

5    authenticated copies for prepared governor's warrant

6    for the following case."  Do I know what it is?

7         **MR. WOLD:**  That's what I'm asking.  Makes no

8    sense to me.

9         **THE COURT:**  Mr. Taaffe usually handles our

10   governor's warrants.  Mr. Taaffe, could you speak as

11   to that?  Shouldn't Mr. Heitman know since he is the

12   one that requested it.

13        **MR. TAAFFE:**  Judge, I don't do governor's

14   warrants anymore.

15        **THE COURT:**  Mr. Heitman, do you know

16   anything about it?

17        **MR. HEITMAN:**  I don't, Your Honor.

18        **THE COURT:**  Do you have anything else to

19   add?

20        **MR. WOLD:**  As far as actual bond goes, he

21   has got priors.  Isn't a case you are going to grant

22   bond on.  Does say he is unemployed.  Court consider

23   any bond in any fashion I would request maybe

24   something like $5,000 limit, still manage to the get

25   the bail project involved and/or put him on some GPS

Dixon v. City of St. Louis 20305

1    monitoring.  I don't know what this relationship is

2    between these two so it's hard for me to argue what is

3    going on, but I'm curious about what the governor's

4    warrant is.

5            **THE COURT:**  Anything further on behalf of

6    anyone?

7            **MR. WOLD:**  No, Judge.

8            **THE COURT:**   The Court having considered

9    Missouri Supreme Court Rule 33.01 in general and as

10   specifically applied to this defendant finds that the

11   nature of the charges, due to the fact that is a child

12   victim, that the victim has indicated she is terrified

13   of the defendant and has seen him while the warrant is

14   out pending, in addition to his substantial criminal

15   conviction history, including weapons finds there is

16   no less restrictive alternative that could ensure the

17   safety not only of this particular child victim, but

18   all children, and, therefore, orders the defendant

19   detained pending trial.

20           Mr. Roberson, are you going to hire an

21   attorney or do you want the Court to appoint the

22   public defender?

23           **THE DEFENDANT:**  Yes, ma'am.

24           **THE COURT:**   Appoint the public defender?

25           **THE DEFENDANT:**  Yes, ma'am.

1              **THE COURT:**  Okay.  Your next court date,

2    sir, is August 28th.  And by that time there should be

3    an attorney that has come to see you and then who will

4    enter their appearance and represent you and give you

5    further legal advice, okay?

6              **THE DEFENDANT:**  Yes, ma'am.

7              **THE COURT:**  All right, that will conclude

8    this hearing.

9              (Proceedings were concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3   Reporter, do hereby certify that I am an official

 4   court reporter for the Circuit Court of the City of

 5   St. Louis; that on July 29, 2020, I was present and

 6   reported all the proceedings had in the case of STATE

 7   OF MISSOURI, Plaintiff, vs. KENNETH ROBERSON,

 8   Defendant, Cause No. 1922-CR02181-01.

 9

10

11              I further certify that the foregoing

12   pages contain a true and accurate reproduction of the

13   proceedings.

14

15              /S/Sherry Gantner
                _____
16              Sherry L. Gantner, CCR 839
                  RPR, CSR (IL and MO)
17

18

19

20

21

22

23

24   TRANSCRIBED:  December 14, 2020

25
```

# EXHIBIT 135

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

**STATE OF MISSOURI,**   )
                   )
        Plaintiff,   )
                   )
v.                 )   No. 2022-CR01319
                   )
**JEFFREY WATSON,**      )
                   )
        Defendant.   )
_____

### TRANSCRIPT OF HEARING
_____

On July 29, 2020, the above-entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

### APPEARANCES

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Robert Taaffe, ESQ., Attorney at Law.

SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20319

1              July 29, 2020

2         (The proceedings commenced at 12:08 p.m.)

3         **THE COURT:**  The record will reflect we are

4    here in cause No. 2022-CR01319, State of Missouri

5    vs. Jeffrey Watson.

6              The record will further reflect the

7    defendant is present via videotape due to COVID-19.

8    His attorney Robert Taaffe is present.  The State is

9    present.  And Mr. Watson is charged with Count I

10   assault in the first degree, Count II armed criminal

11   action.

12             Mr. Taaffe, are you waving reading?

13        **MR. TAAFFE:**  Yes, Your Honor.  We will waive

14   any reading of the charges in open court and enter

15   pleas of guilty.

16        **THE COURT:**  Okay.  The Court has also

17   received and reviewed Exhibit 16B.  The Court takes

18   judicial notice of its file and notes that the

19   defendant is unemployed.  He has family ties with his

20   girlfriend.  That he has one child, doesn't list any

21   physical, mental or alcohol drug abuse issues.

22             What's the State's position on the bond?

23        **MR. HEITMAN:**  Your Honor, based on the

24   severity of the charges I believe the defendant will

25   pose a danger to the community and ask for no bond.

Dixon v. City of St. Louis 20320

1          **THE COURT:**  Mr. Taaffe.

2          **MR. TAAFFE:**  Judge, Mr. Watson is 32 years

3    old.  He presents himself for the Court with no prior

4    convictions.  I understand the charges are assault

5    first degree, armed criminal action.  If he was

6    released, Your Honor, he would be staying with his

7    mother and his brother Jarell Starks at 2206 Farrar.

8    His mother's name is Belinda Starks.  His brother's

9    name is Jarell Starks.

10         You mentioned he was unemployed, Judge.  He

11   was employed at the time of his arrest.  Previously he

12   was employed at St. Louis public school in the

13   cafeteria.  When the virus hit he was no longer

14   employed at the cafeteria.  He is a graduate of Valley

15   Park High School.  He does have a child.  He also

16   would be staying with his mother and brother and

17   potentially his fiancee, Darrlisha, and they would be

18   there with her stepson and his child.  He pays court

19   ordered child support I'm told.

20         Your Honor, the question here is whether or

21   not Mr. Watson, given the nature of the charges and

22   facts and circumstances surrounding whether or not he

23   poses a danger to the community.  I believe that's

24   what the Court's head would be at.  I could tell you

25   that I interviewed Jerome Watson who is his brother.

1    He was also an employee at the Quik Stop where this

2    alleged offense occurred.

3         Mr. Watson was up to see his brother and

4    owner of the store by the name of Mo.  Again,

5    Mr. Watson was in that building and probable cause

6    affidavit points out the victim was actively in the

7    store trying --

8         **THE COURT:**  What --

9         **MR. TAAFFE:**  -- my investigation leads me

10   to, after I talked to his brother, family dispute was

11   a child.  A child ran into the store, this alleged

12   victim's nephew was yelling, and his brother and

13   Jeffrey Watson overheard it, to call the police.  Call

14   the police.

15        The people inside the store obviously when a

16   young kid comes in and says call the police, they were

17   understandably concerned about the child's well-being.

18   The alleged victim came into the store and was like,

19   hey, that's, you know, let's -- he was opposing

20   himself of the situation basically telling everybody

21   it's none of your business what I do with my family

22   member.  And everybody was like, hold on.  This child

23   is saying call the police.

24        And what occurred was obviously dispute

25   between this alleged victim and Mr. Watson and his

1    brother and the individuals inside the store.  Inside

2    the store are, again, tried to act in the best

3    interest of the child who was saying call the police.

4    What occurred later was that --

5         **THE COURT:**  That your client shot the victim

6    in the chest, right?  Go ahead.

7         **MR. TAAFFE:**  Understand that, but only after

8    and -- I understand what the probable cause affidavit

9    says.  Only after this alleged victim was armed with a

10   weapon and threatened to kill everybody, including

11   Mr. Watson.  Kill everybody in their family.

12        **THE COURT:**  I'm going to cut you off,

13   Mr. Taaffe.  As you know, there is videotape evidence.

14   You are saying the victim had a weapon.  The police

15   are saying the victim did not have a weapon.  You are

16   saying your client was trying to protect a child.  The

17   police are saying your client wasn't involved in the

18   dispute and he and his associates involved themselves

19   and then shot the victim.

20        So, obviously, the facts as alleged by the

21   State I will say are alarming, and your client, if the

22   facts are true, clearly poses a danger to the

23   community.

24        The Court also notes that the State is

25   alleging he poses a danger to the community because he

1    is also involved in multiple other shooting instances.

2    I'm aware your answer would be, well, those aren't

3    charged; however, if you have a videotape.  I mean, if

4    what you are saying is true, that's what the videotape

5    will reflect.  As you have done in the past, you

6    obtained the videotape and asked the Court to look at

7    it.

8              Anything further on behalf of either side?

9         **MR. TAAFFE:**  Will the Court be willing to

10   look at that videotape in that case?

11        **THE COURT:**  Yeah, if you have the videotape.

12   The Court will look at evidence in every case.  You

13   two are saying a completely different thing happened

14   than what the State is saying.  So I don't see that

15   Mr. Heitman is going to change what the State is

16   saying.  I don't see that you are going to change what

17   you are saying.  So the evidence is what the evidence

18   is.  So anything further?

19        **MR. TAAFFE:**  No, Your Honor.

20        **THE COURT:**  Do you have the videotape,

21   Mr. Taaffe?

22        **MR. TAAFFE:**  I do not have it.  I just

23   entered my appearance yesterday.

24        **THE COURT:**  All right.  The State is ordered

25   to turn over the videotape within seven days.

```
 1                    And then you will have your seven day

 2       hearing.  As you know, this is just your initial

 3       hearing.  Your seven day hearing is August 5th.

 4                    So they should have it ready, Mr. Heitman,

 5       the videotape by August 5th for whoever is in here for

 6       the detention hearing, okay?

 7                    MR. HEITMAN:  Got it.

 8                    MR. TAAFFE:  Thank you, Your Honor.

 9                    THE COURT:  Thank you, Mr. Taaffe.

10                    (Proceedings were concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                      CERTIFICATE

2

3               I, Sherry L. Gantner, Certified Court

4    Reporter, do hereby certify that I am an official

5    court reporter for the Circuit Court of the City of

6    St. Louis; that on July 29, 2020, I was present and

7    reported all the proceedings had in the case of STATE

8    OF MISSOURI, Plaintiff, vs. JEFFREY WATSON, Defendant,

9    Cause No. 2022-CR01319.

10

11              I further certify that the foregoing

12   pages contain a true and accurate reproduction of the

13   proceedings.

14

15

16              /S/Sherry Gantner

17              Sherry L. Gantner, CCR 839
                RPR, CSR (IL and MO)
18

19

20

21

22

23

24

25   TRANSCRIBED:  December 14, 2020

# EXHIBIT 136

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2022—CR01343 |
| | ) | |
| **JAYSHUN WEDDINGTON,** | ) | |
| | ) | |
| Defendant. | ) | |

_____

**TRANSCRIPT OF HEARING**
_____

On July 31, 2020, the above—entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty—Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Tony Muhlenkamp, ESQ., Attorney at Law.

SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY—SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20343

1                          **INDEX**

2     **DEFENDANT'S EVIDENCE**

3          Direct Examination By Mr. Muhlenkamp . . . . . . . 6

4     Reporter's Certificate                              16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    July 31, 2020

2          (The proceedings commenced at 12:04 p.m.)

3          **THE COURT:**  The record will reflect we are

4   here in cause No. 2022-CR01343, State of Missouri

5   vs. Jayshun Weddington.  The record will further

6   reflect Mr. Weddington is present in person via

7   videotape due to COVID-19 from the Justice Center.

8          Mr. Weddington, Tony Muhlenkamp is a private

9   attorney.  He is waving at you right now.  Do you see

10  him?

11         **THE WITNESS:**  Yes, ma'am.  He is -- you my

12  private attorney?  Who appointed you?

13         **THE COURT:**  He is only here to represent you

14  for today so that you are not alone standing here with

15  no attorney on your behalf.  The next person you see

16  is the circuit attorney James Heitman.

17         Mr. Heitman, waive to him so he knows who

18  you are.

19         Mr. Weddington, the State has charged that

20  the victim reported she pulled into her garage in her

21  Mazda CX5, was putting the garage door down when the

22  defendant ran in and pulled on the door handle.  He

23  demanded the keys and told her he had a gun on him and

24  patted on his waistband.  The victim believing he had

25  a gun quickly reversed her car and backed out of the

1   garage causing her to strike her garage door with her

2   car.

3          Defendant fled with two of his friends and

4   police found them nearby shortly thereafter.

5   Defendant was interviewed and admitted going into the

6   victim's garage, but said he was only asking for

7   directions.  I believe the defendant is a danger to

8   the community due to the nature of the crime and he

9   had several outstanding warrants when arrested.

10          The Court has also received and reviewed

11   what's called an Exhibit 16B and takes judicial notice

12   of that.  That's what was filled out by the pretrial

13   commissioner.  It shows that you have a pending case,

14   cause No. 1922-CR04110, stealing over $750 for which

15   you have an active failure to appear.  A pending

16   1911-CR02645 domestic assault in the third degree for

17   which you have active failure to appear.  A pending

18   20SL-CR00783, domestic assault in the third degree

19   with a bond setting of 55,000 cash only.

20          As far as your record of appearances, you

21   have three active warrants from St. Charles County and

22   St. Louis County and another one from Illinois.

23          It also indicates your failure to appears.

24   One was after being granted a personal recog.  One was

25   from a $5,000 cash bond and one now presently has a

1    55,000 cash only.

2           It said that as far as your physical

3    condition your hand is broken and your left leg has

4    plates and screws in it and that you are bipolar and

5    on medication and you are receiving treatment.  That

6    you don't have any alcohol or substance abuse issues.

7    That you were employed, but it doesn't list where.

8    That's all that the Court sees in regards to the

9    different factors.

10          Anything further on behalf the State,

11   Mr. Heitman?

12          **MR. HEITMAN:**  Yes, Your Honor.  We spoke

13   with the victim yesterday.  While she didn't want to

14   provide a statement, she did say that she fears

15   retaliation because this happened at her home, so he

16   knows where she lives.

17          Additionally, based on the random selection

18   of a victim, as well as the numerous failures to

19   appear, I don't believe that he will actually come

20   back to court if he is released.  So we are requesting

21   no bond on this matter.

22          **THE COURT:**  On behalf of the defendant?

23          **MR. MUHLENKAMP:**  Yes.  May I inquire,

24   please?

25          **THE COURT:**  You may.

Dixon v. City of St. Louis 20347

1              **MR. MUHLENKAMP:**  Can you hear me okay?

2              **THE WITNESS:**  Yes, sir, I can.

3                          **DIRECT EXAMINATION**

4    **BY MR. MUHLENKAMP:**

5         Q.   Good afternoon, sir.  Like the Judge

6    indicated, she appointed me to represent you for

7    today's hearing only.  So what are we doing today? I

8    want to get accurate information to convey to the

9    Judge to see if I can lower your bond.

10             I do not want to ask about the facts of your

11   case.  Please do not volunteer any information about

12   your case.  I just ask you to tell me the truth and

13   keep your voice up.  Just asking you background

14   questions, okay?

15        A.   Yes, sir.

16        Q.   Thank you.  I reviewed the same paper the

17   Judge had.  I just want to go over a few points here.

18             First off, your current bond is no bond

19   allowed.  If you were granted a bond in this case do

20   you have any idea how much money -- what -- how much

21   money you have access to?

22        A.   Sir, I just recently got hired at FedEx

23   because those charges, outstanding warrant I have

24   St. Louis County, St. Charles County, I was in Arapaho

25   County sheriff's office in Colorado and I was getting

```
1    extradition.  The first hold got dismissed due to the

2    Corona.  The second hold I had a personal recognizance

3    bond for extradition for 55,000 bond I had in St.

4    Louis County.  They told me --

5         Q.   Time out.  Okay.  So my question is, how

6    much money do you have access to to post bond?  That's

7    all I want to know.

8         A.   None.  I haven't been paid at all.

9         Q.   You talk to your family members, you don't

10   think your family members could come up with anything?

11        A.   My mom can't work because of COVID.  She is

12   a bus driver.  School is closed down.

13        Q.   Fair enough.  You are going to have a hard

14   time coming up with any money.  That's my question.

15             Other question I got here I'm showing you

16   are married and you have one child; is that correct?

17        A.   Yes, sir.

18        Q.   How old is your child, sir?

19        A.   My daughter is going to be one August 4th.

20        Q.   Okay.  And you currently live on Albia

21   Terrace; is that right?

22        A.   Albia Terrace with my mother.

23        Q.   So you live with your mom.  Does your

24   daughter life with you also?

25        A.   Yes.
```

Dixon v. City of St. Louis 20349

```
1        Q.   What about daughter's mom, is she in the

2   household?

3        A.   Yes.

4        Q.   So you and the child's mother both raised

5   your child together?

6        A.   Yes, sir.

7        Q.   Okay.  I'm showing here you got a job at

8   FedEx.  You had the job for about a month and a half?

9        A.   Yes, sir.

10        Q.   You are making 13 bucks an hour.  What do

11   you do for FedEx, sir?

12        A.   Package handling in a warehouse.

13        Q.   Which warehouse do you work at?  Do you know

14   which location?

15        A.   Earth City, Missouri.

16        Q.   Okay.  I'm showing here you are a graduate

17   of Sumner?  Did I get that right?

18        A.   Yes, I graduated in 2018.

19        Q.   Okay.  Fair enough.  I'm assuming if the

20   Court lets you out on bond and makes the condition you

21   can't have any contact with the young lady involved in

22   this case, you are okay with that, right?

23        A.   Excuse me.  Can I tell you something, sir?

24   I don't know who this lady is.

25        Q.   No.  Stop talking.  Just answer the question
```

1    that I'm asking, and that's for your own protection.

2    I'm not trying to be a jerk.  I'm assuming the Court

3    said you can't have any contact with this young lady

4    or her address, you'd stay out of the whole

5    neighborhood, right?

6         A.   Yes, I stay in Jennings.

7         Q.   The Court wanted you to wear an ankle

8    monitor so they knew where you were, you'd be okay

9    with that too?

10        A.   Yes, they can put it on right now.

11        Q.   Okay.  The State brought up a few more

12   things.  You have two cases pending in St. Charles and

13   one going on in St. Louis County.  Some court dates

14   you missed, some you haven't.  Regardless, you have a

15   lot going on.  You need to sit down and get organized

16   about your court dates.  If the Court lets you out on

17   bond, are you willing to do that so you know when your

18   court dates are and when you need to be in court?

19        A.   Yes, sir.  The warrant weren't supposed to

20   still be active because I got released on extradition.

21   They aren't active anywhere else except in St. Louis.

22   I have to deal with that.  I'm not running from my

23   issues or none of that.   I just have to deal with it.

24        Q.   I understand.  I'm showing an active warrant

25   in St. Louis County and two active warrants in

1    St. Charles County.  If you cannot afford lawyers, you

2    need to get a public defender on all these cases so

3    you know what's going on.

4          A.   My mother already is talking to an attorney

5    and she already paid him, trying to get him on my

6    cases.  That's why I don't have money for bond.  I

7    spend my money on an attorney.  They told me that

8    would be smarter, instead of paying a bond to get a

9    lawyer to fight my cases for me.

10         Q.   Okay.  Fair enough.  So if you get out on

11   bond, you're committed to get organized and knowing

12   when you have to be in court, right?

13         A.   Yes, sir.  I don't want to be going to jail.

14         Q.   Fair enough.  Mr. Weddington, I just want

15   you to stand there and listen carefully.  I don't have

16   anymore question for you.  Thank you for answering

17   them.  I'm going to make argument to the Judge and I'm

18   going to see if I get you a bond set, hopefully get

19   you out of the jail.  It's the Judge's call though.

20   Whether she gives you a bond or not, it is extremely

21   important you need to either hire a private attorney

22   or if you cannot afford that, you need to ask the

23   jailers there for the paperwork for the public

24   defender.  That way you can get an attorney moving

25   forward.  If you want to hire a private attorney

1    later, the public defender can always get off your

2    case, okay?

3        A.   Yes, sir.

4            **MR. MUHLENKAMP:**  Judge, you ready for

5    argument?

6            **THE COURT:**  Sure.

7            **MR. MUHLENKAMP:**  Your Honor, what I want to

8    stress, it doesn't appear he has any priors, but he

9    has got three active things going on.  I ran them all

10   on CaseNet before your docket because I knew that

11   would be an issue.  The case in the county is pending

12   with Judge Newsham.  It's a class E felony, domestic

13   assault third.  It appears that case, he has never

14   been arrested on that case or missed a court date.  It

15   was issued and then just kind of been out there in

16   limbo with an initial bond.  So it's not like he went

17   to court then stopped coming to court.

18           The other two cases in St. Charles, one of

19   them was a stealing over.  That case was issued on

20   summons back in January.  No one showed up in court.

21   I don't know if he got the summons or not, but a

22   personal recognizances bond is authorized on that

23   charge, if and when he gets processed on that case.

24   The other case in St. Charles is a class E felony,

25   domestic assault 3rd.  He bonded back in August of

Dixon v. City of St. Louis 20353

1    2019 and for about five months every month he would

2    not show up, get recog, not show up, get recog.

3    That's been going on several times now.

4          The other stuff he has going on, while I'm

5    sure there are some concerns, I just want to stress we

6    are dealing with class E and D felonies here, and two

7    of those cases I don't know if had court or not.  As

8    far as him being a flight risk, I think that's

9    somewhat minimized.

10          Also references in the paperwork, he doesn't

11   have a whole lot of money right now.  He doesn't have

12   a whole lot of transportation to get from Jennings to

13   St. Charles.  If that means of him having issues, it

14   might just be a matter of him getting a public

15   defender that can keep some of these court dates for

16   him and that will keep these cases from going warrant

17   all the time.

18          Moving back to the case in front of you,

19   Judge, I want to stress Jayshun is 19 years old.  He

20   has a job.  He is married with a child and is

21   providing support for.  While I realize a class D

22   felony, attempted robbery first is obviously a serious

23   allegation, I do want to stress upon my review of the

24   probable cause statement it appeared that there is no

25   allegation that he ever exhibited a weapon.  He

Dixon v. City of St. Louis 20354

1    allegedly said something and patted on his waistband.

2    No one allegedly saw a weapon.  It appears he was

3    found relatively quickly and interviewed by the

4    police.  The police never found a gun, Judge.

5            So while I realize it's still something

6    serious that you need to obviously consider, there may

7    not be a weapon involved in this case at all.  I think

8    that is a mitigating factor that weighs in support of

9    a bond.

10           I'm asking -- I'm going to ask you for a

11   personal recognizance in this case.  If you are not

12   inclined to do it, Judge, something in the

13   neighborhood of 10 or $20,000 with 10 percent

14   authorized and the bail project could get involved and

15   help the young man post his bond.  Thank you, Judge.

16           **THE COURT:**  The Court notes that the

17   defendant not only had other pending cases in at least

18   two different jurisdiction, but those are also victim

19   cases.  The Court notes that while those are less

20   serious felony cases, this case is an attempted car

21   jacking where he went into the victim's garage, so

22   into her residence in order to.  Whether or not he had

23   a weapon, I don't know that affects the fear that he

24   caused to the victim or that he would cause to any

25   other member of the community if he pretends to have a

Dixon v. City of St. Louis 20355

1   weapon when trying to carjack someone in their home

2   garage.

3            The Court also notes that he was with two

4   other people, and while he may say he has

5   transportation issues for getting to St. Charles

6   County and St. Louis County for his other victim

7   cases, he was able to get from Jennings to the

8   victim's garage to allegedly try to steel her car.

9            The Court finds he not only poses a danger

10  to the community, but has a history of failing to

11  appear and orders there is no less restrictive

12  alternative that could ensure the safety of the

13  community or that he would appear again and orders he

14  be held pending trial.

15           Mr. Weddington, you are going to have a

16  longer hearing next week if you have an attorney.  So

17  as Mr. Muhlenkamp indicated, I would encourage you to

18  fill out an application for a public defender so that

19  at the hearing next week there is someone that you've

20  talked to about the facts of your case that could try

21  to convince the Court that you don't pose a danger to

22  the community and that you would show up in court.

23           Does that make sense?

24           **THE WITNESS:**  Okay.  That makes sense

25  everything I'm saying, but I'm going to speak on my

1   behalf.  Nobody stop there.  I did knock on this

2   lady's window ask --

3          **MR. MUHLENKAMP:**  You shouldn't say anything.

4   You shouldn't say anything at all.  There is a circuit

5   attorney on the monitor.

6          Judge, can we just have him taken out.  I

7   don't want him talking.

8          **THE COURT:**  Take him out because all that

9   was transcribed.  Thank you.

10          (Proceedings were concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3    Reporter, do hereby certify that I am an official

 4    court reporter for the Circuit Court of the City of

 5    St. Louis; that on July 31, 2020, I was present and

 6    reported all the proceedings had in the case of STATE

 7    OF MISSOURI, Plaintiff, vs. JAYSHUN WEDDINGTON,

 8    Defendant, Cause No. 2022-CR01343.

 9

10              I further certify that the foregoing

11    pages contain a true and accurate reproduction of the

12    proceedings.

13
                    /S/Sherry Gantner
14    _____

15              Sherry L. Gantner, CCR 839
                    RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23    TRANSCRIBED:  December 14, 2020

24

25
```

Dixon v. City of St. Louis 20358

# EXHIBIT 137

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT


| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2022-CR01220 |
| | ) | |
| KEITHEN CHAIRS, | ) | |
| | ) | |
|     Defendant. | ) | |

**FIRST APPEARANCE HEARING**

On Monday, July 13, 2020, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Christopher H. Faerber, Attorney at Law.



JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

```
1                      THE COURT:  All right.  This is State
2       vs. Keithen Chairs.  It is Line 3 on the docket,
3       2022-CR01220.  Good afternoon, Mr. Chairs.
4                      THE DEFENDANT:  Good afternoon, sir.
5                      THE COURT:  I'm looking at the
6       exhibit from the bond commissioner.  It looks like
7       the recommendation was no bond.  I'm looking at the
8       criminal history and ties to the community.
9                      Mr. Faerber.
10                     MR. FAERBER:  So, Your Honor, my
11      client, he does reside with his girlfriend in
12      East St. Louis, but I would remind the Court that
13      that is part of the St. Louis Metropolitan Area.  I
14      spoke with him.  If need be if he's required to stay
15      on this side of the river, he can live with his
16      grandfather up at Lucas and Hunt.  I realize there
17      is a history here, but -- and he is on parole
18      and -- can everyone hear me?
19                     Okay.  But he is out there working,
20      working at Wendy's.  He informed me he could make a
21      5,000, 10 percent bond.  That would put a financial
22      stake in this as far as him -- him showing up and I
23      don't think there would be a problem with him
24      showing up.  As I said off the record, he has done
25      well enough on parole that he's only phoning in once
```

Dixon v. City of St. Louis 20428

1   every couple months according to him.  And his

2   girlfriend spoke to the parole officer who is not

3   taking any action on his parole at this time and is

4   aware of this case.

5             So he's earning $9.25 an hour.  He

6   would be able to afford a private attorney should he

7   get out.  He can even assign his bond over as a

8   retainer, so an attorney of his choosing versus

9   having a public defender.  Not that that is at all

10  bad having been one.

11            But as far as no bond allowed, I

12  think his tie to the community, the fact that he's

13  working; as far as an overall danger, these are

14  alleged facts, Your Honor, and otherwise, he's been

15  working and has performed to the point where his

16  parole officer even with this charge is not taking

17  any action on this case.

18            So that is the parole board's

19  ultimate determination or parol officer's ultimate

20  determination of whether or not he is a threat, too.

21  So I would ask, Your Honor, to take that into

22  consideration and adjust it to a bond he can afford.

23            THE COURT:  All right.  Mr. Faerber,

24  I take your statements with regard to the public

25  defender as being that we know the system is

1    stressed.

2              MR. FAERBER:  Yes.

3              THE COURT:  Especially during these

4    coronavirus --

5              MR. FAERBER:  And not that that's

6    bad.

7              THE COURT:  That during this

8    coronavirus, they're probably strapped a little bit

9    more.  So all things being equal, if a private

10   enters that would help release some of the stress.

11             MR. FAERBER:  Yes, it would.

12   Altruism, Your Honor.

13             THE COURT:  Mr. Fischbach.

14             MR. FISCHBACH:  Thank you, Your

15   Honor.  First and foremost, the State would request

16   the Court take judicial notice -- actually, I

17   believe you did already take notice of the documents

18   in this case.

19             The State will point out I have not

20   personally reviewed the surveillance footage, but

21   the probable cause statement does state that the

22   event was captured on surveillance and that the

23   victim identified the defendant via a photographic

24   lineup, and that it was the defendant's weapon

25   jamming, not anything the defendant did

1    intentionally, that allowed the victim to escape the

2    situation, which to my mind indicates a -- that

3    there is a danger to the community should the

4    defendant be released.

5              Additionally, Your Honor, there is a

6    victim impact statement, which I sent to

7    Mr. Faerber's work e-mail just a couple minutes ago

8    that I'll read to the Court.  Your Honor, regarding

9    the --

10             THE COURT:  Hold on one second.  Hold

11   on.  I am going to have you read it, but I'm not

12   going to require my court reporter to type it out.

13   We will have a hard copy if necessary, okay?  Go

14   ahead.

15             MR. FISCHBACH:  Sounds good, Your

16   Honor.

17         (Off the record)

18             THE COURT:  All right.  Anything

19   else?

20             MR. FISCHBACH:  Not from the State at

21   this time.

22             MR. FAERBER:  No, Your Honor.

23             THE COURT:  All right.  Under the

24   circumstances, and I do find it compelling, the

25   allegation -- this isn't a trial, but the allegation

1    that the gun jammed does indicate higher propensity

2    for issues with regard to safety of the community.

3    The bond will remain at no bond.  This is an initial

4    appearance, so the detention hearing will be set one

5    week from today July 20th at 12-noon and the 30-day

6    date is in Division 26 on August 13th.

7              Mr. Chairs, good luck to you.  That

8    will be all.

9              (End of proceeding)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

```
1                          CERTIFICATE

2          I, Jenna L. Higgins, Certified Court Reporter,

3      do hereby certify that I am an official court

4      reporter for the Circuit Court of the City of

5      St. Louis; that on July 13, 2020, I was present and

6      reported all the proceedings had in the case of

7      State of Missouri vs. Keithen Chairs,

8      Cause No. 2022-CR01220.

9          I further certify that the foregoing pages

10     contain a true and accurate reproduction of the

11     proceedings.

12

13

14

15                    Jenna L. Higgins
          _____

16                  Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24     TRANSCRIBED:  December 7, 2020

25
```

Dixon v. City of St. Louis 20433

# EXHIBIT 138

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT

STATE OF MISSOURI,           )
                             )
        Plaintiff,           )
                             )
v.                           )   No. 2022-CR01255
                             )
D'AUNDRE FITZPATRICK,        )
                             )
        Defendant.           )


**FIRST APPEARANCE HEARING**

On Monday, July 13, 2020, the above-entitled

cause came on regularly for hearing before the

Honorable Clinton R. Wright, Judge of Division 16B

of the Twenty-Second Judicial Circuit in the City of

St. Louis.

**APPEARANCES**

The State of Missouri was represented by

Nicholas Fischbach, Assistant Circuit Attorney, City

of St. Louis, State of Missouri.

The Defendant was represented by Christopher H.

Faerber, Attorney at Law.


JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20441

1           THE COURT:  This is State vs.

2    D'Aundre Fitzpatrick, Line 7; 2022-CR01255, initial

3    appearance.

4           Mr. Fischbach.

5           MR. FISCHBACH:  Thank you, Your

6    Honor.  First and foremost, the State requests the

7    Court take judicial notice of the court file

8    including the probable cause statement and the bond

9    commissioner's report.

10          THE COURT:  All right.  I am.  Go on.

11          MR. FISCHBACH:  And, Your Honor, I

12    show the defendant currently has a no bond and is

13    charged with unlawful use of a weapon, exhibiting,

14    an assault in the third degree and assault in the

15    fourth degree.

16          THE COURT:  And the State's

17    requesting it remain at no bond?

18          MR. FISCHBACH:  Yes, Your Honor.

19          THE COURT:  Mr. Faerber.

20          MR. FAERBER:  Thank you.

21          THE COURT:  Oh, sorry.

22          MR. FISCHBACH:  No.  The only other

23    thing, Your Honor, the victim did not put forward a

24    victim impact statement; however, he did request

25    that you be informed that after being struck in the

1    back of the head he heard the defendant bragging

2    about striking him to others around him.

3                      THE COURT:  All right.  Mr. Faerber.

4                      MR. FISCHBACH:  Other than that, yes.

5                      MR. FAERBER:  Thank you, Your Honor.

6                      Mr. Fitzpatrick, the alleged facts

7    surrounding this have to do with the protests

8    downtown from what I understand and glean from the

9    probable cause statement.  And as far as what the

10   victim is       saying -- and I know I have seen it

11   on television where other people at the protests are

12   saying that this didn't happen, but he has no

13   priors.  He has no criminal history.

14                     The alleged gun in this instance has

15   been seized, as he was arrested in a car with a

16   legally possessed firearm in the car.  So having him

17   not have firearms would be very easy.  He does not

18   have a criminal history.  So as far as a danger to

19   society overall, I would say no.  He's working two

20   jobs, one at UPS and one at Arby's.  So he is

21   someone responsible out there earning for his family

22   and himself.

23                     And I would also point out to the

24   Court that these alleged facts as they are in the

25   probable cause statement, we have two people in a

1   very large house that are going to sleep in their

2   own beds at night who overtly pointed weapons at a

3   crowd of protestors, one of which was an obvious

4   assault rifle.

5              So taking that into account keeping

6   him confined with no priors and working a job and

7   having significant ties to the community, he's a

8   lifelong resident, I think that would be a complete

9   imbalance.  So I would ask that he be released on

10  his own recognizance.  But if Your Honor feels that

11  a monetary amount is appropriate, a 5,000, 10

12  percent is something he believes he can post.

13             THE COURT:  All right.  With regard

14  to the reference to some other case, I don't believe

15  that other case, whatever it may be, was in front of

16  me, so there is no concern that I'm not in line with

17  what --

18             MR. FAERBER:  That's the McCloskey's.

19             THE COURT:  I know.  I mean, I

20  assumed that, but I'm just saying that's not my

21  matter.

22             All right.  Anything else,

23  Mr. Fischbach?

24             MR. FISCHBACH:  Your Honor, the only

25  thing I would emphasize is from the probable cause

1    statement the defendant was positively ID'd by both

2    victims and a witness as the individual who was

3    responsible for assaulting both victims.  Beyond

4    that, the State has nothing further.

5              THE COURT:  There is the distinction

6    here of -- or the issue, I guess, or concern of

7    someone being struck based on the probable cause

8    statement and feels strong about the identification.

9    At this point, my concerns for public safety

10   necessitate the seven-day hearing.

11              This will be set for a formal

12   detention hearing on July 20th at 12.  The long date

13   is August 13th in Division 25.  And at this time, I

14   will not amend the current bond setting of no bond

15   and that will be taken up in one week.  Anything

16   further?

17              MR. FAERBER:  No, Your Honor.

18              THE COURT:  Mr. Fitzpatrick, good

19   luck to you.

20              (End of proceeding)

21

22

23

24

25

6

```
 1                      CERTIFICATE

 2       I, Jenna L. Higgins, Certified Court Reporter,

 3  do hereby certify that I am an official court

 4  reporter for the Circuit Court of the City of

 5  St. Louis; that on July 13, 2020, I was present and

 6  reported all the proceedings had in the case of

 7  State of Missouri vs. D'Aundre Fitzpatrick,

 8  Cause No. 2022-CR01255.

 9       I further certify that the foregoing pages

10  contain a true and accurate reproduction of the

11  proceedings.

12

13

14

15       _____

16          Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24  TRANSCRIBED:  December 7, 2020

25
```

# EXHIBIT 139

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT


STATE OF MISSOURI,           )
                             )
        Plaintiff,           )
                             )
v.                           )    No. 2022-CR01277
                             )
MATTHEW HARRISON, JR.,       )
                             )
        Defendant.           )


**FIRST APPEARANCE HEARING**

On Friday, July 17, 2020, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Melinda Gorman, Attorney at Law.


JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 20454

```
 1                    THE COURT:  This is State vs. Matthew
 2    Harrison, Jr., 2022-CR01277.  Mr. Harrison, you're
 3    charged with unlawful use of a weapon and armed
 4    criminal action.
 5                    Is your client waiving formal reading
 6    of the indictment and entering a plea of not guilty
 7    at this time?
 8                    MS. GORMAN:  Yes, Your Honor.
 9                    THE DEFENDANT:  Yes.
10                    THE COURT:  Mr. Harrison, and I'm
11    also reviewing the probable cause statement and the
12    pretrial release interview.
13                    THE DEFENDANT:  Yes, sir.
14                    THE COURT:  Give me one second.
15                    Currently it is set at no bond.
16    Interview shows no priors.  I note a physical
17    condition of asthma.  It says that you're going to
18    get a private attorney.
19                    Mr. Harrison, have you hired anyone
20    yet?
21                    THE DEFENDANT:  Not yet, Your Honor.
22                    THE COURT:  How do you anticipate
23    hiring a private attorney?
24                    THE DEFENDANT:  I will work on it,
25    Your Honor.
```

```
1                    THE COURT:  But you're not working

2     right now?

3                    THE DEFENDANT:  Right.  I can get a

4     public defender.  I mean, I'd take that.

5                    THE COURT:  Okay.  So the application

6     says that you didn't want a public defender, that

7     you were going to get a private attorney.  But you

8     think you might fill out an application for a public

9     defender?

10                   THE DEFENDANT:  Yes, sir, I will if I

11    can't get a private attorney.

12                   THE COURT:  It shows that you're

13    currently employed making 11.75 per hour?

14                   THE DEFENDANT:  Yes, sir.

15                   THE COURT:  And where do you work?

16                   THE DEFENDANT:  National Tire and

17    Battery.

18                   THE COURT:  Where is that located?

19                   THE DEFENDANT:  South County.

20    St. Louis, Missouri.

21                   THE COURT:  All right.

22    Mr. Fischbach, I've just read the probable cause

23    statement, so proceed.

24                   MR. FISCHBACH:  Thank you, Your

25    Honor.  In that case the State would emphasize that
```

```
 1   the defendant -- when the car was found, the

 2   defendant admitted that he was present during the

 3   traffic incident where shots were fired, that -- and

 4   that he was in possession of a firearm at that point

 5   and that the witnesses positively identify the

 6   defendant in a photographic lineup.

 7             Given that shots were fired --

 8   additionally, the victims in this case do not wish

 9   to present a formal statement, however, ask that the

10   Court be informed that they believe the defendant is

11   still a danger.  Given that shots were actually

12   fired as a result of a minor traffic collision, the

13   State finds itself in agreement and believes that no

14   modification is appropriate.

15             THE COURT:  Ms. Gorman.

16             MS. GORMAN:  Judge, unlike the last

17   case we just spoke about, the PC statement says that

18   Mr. Harrison admits to being in possession of a

19   pistol.  It doesn't say anything about him admitting

20   to firing it.  There is also nothing in the PC

21   indicating that any physical evidence was recovered

22   or that the car was hit or anything else.

23             He has zero priors.  He is a lifetime

24   resident of Missouri.  He does have the medical

25   condition of asthma, which as you know would be an
```

1    exacerbated problem should he catch COVID, and I

2    think that the facts in this have a lot to be

3    argued.  In addition to that, he does have a job and

4    he's only been locked up for a handful of days so he

5    might still be eligible to go back to that job.

6                    THE COURT:  All right.

7    Mr. Fischbach.

8                    MR. FISCHBACH:  Nothing further from

9    the State, Your Honor.

10                    THE COURT:  Ms. Gorman, I find your

11    argument to be compelling.  However, the allegation

12    in the probable cause statement that a shot was

13    fired, although the follow-up investigation doesn't

14    ferret that out much, I think that this would be

15    most properly handled in a hearing in seven days, a

16    detention hearing, wherein maybe further information

17    from the victims can be articulated at that time.

18                    So I'm not going to amend the

19    conditions of bond.  It's going to remain at no bond

20    due to the allegation that shots were fired.

21    Anything further from either side?

22                    MS. GORMAN:  No, Your Honor.  Did we

23    waive formal reading and enter a plea of not guilty?

24                    THE COURT:  We did.  And I'm not

25    determining him to be indigent due to the fact that

Dixon v. City of St. Louis 20458

```
1    he is employed, although I recognize in seven days

2    that might change.

3                   Mr. Harrison, you have a detention

4    hearing one week from today on July 24th at 12:00,

5    and your next court date is August 17th at 9:00 a.m.

6    Good luck to you.

7                   THE DEFENDANT:  Thank you, Your

8    Honor.

9                   (End of proceeding)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

7

```
 1                    CERTIFICATE

 2        I, Jenna L. Higgins, Certified Court Reporter,

 3   do hereby certify that I am an official court

 4   reporter for the Circuit Court of the City of

 5   St. Louis; that on July 17, 2020, I was present and

 6   reported all the proceedings had in the case of

 7   State of Missouri vs. Matthew Harrison, Jr., Cause

 8   No. 2022-CR01277.

 9        I further certify that the foregoing pages

10   contain a true and accurate reproduction of the

11   proceedings.

12

13

14

15                 Jenna L. Higgins

16            Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24   TRANSCRIBED:  December 7, 2020

25
```

# EXHIBIT 140

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT, DIVISION 16B
Honorable MICHAEL J. COLONA, Judge

```
STATE OF MISSOURI,          )
                            )
                  Plaintiff,)
                            ) Cause No. 2022-CR01739
vs.                         )
                            )
BOBBY CLAYTON HAIL,         )
                            )
                  Defendant.)
```

TRANSCRIPT OF PROCEEDINGS

The following proceedings were had in Division 16B of the Twenty-Second Judicial Circuit Court, City of St. Louis, State of Missouri, on the 13th day of October, 2020.


Ross Gipson, Assistant Circuit Attorney, appeared for the State of Missouri.


The defendant, BOBBY CLAYTON HAIL, appeared in person and with Nikki Moody, Attorney At Law.


Rita T. DeFilio, C.C.R. #0192
22nd Judicial Circuit, City of St. Louis, Missouri

2

```
 1                        OCTOBER 13, 2020

 2            THE COURT:  Looks like the next one is Bobby Hail.

 3  Are you Mr. Hail?

 4            BOBBY CLAYTON HAIL:  Yes, sir.

 5            THE COURT:  Mr. Hail, give me just a minute, give

 6  me just a minute to get caught up on your court file here.

 7  All right.  We're on the record on 2022-CR01739, State

 8  versus Bobby Hail.  Present on video from the Justice Center

 9  is Mr. Hail.  Also present on video for the State of

10  Missouri is ACA Prosecutor Gibson.

11            Mr. Hail, have you hired a private lawyer in this

12  matter?

13            BOBBY CLAYTON HAIL:  No, sir.  I'm -- I don't have

14  no money.

15            THE COURT:  Okay.  So, present by conference call

16  is attorney Nichole Moody.  So, Mr. Hail, for today only I'm

17  going to appoint Ms. Moody as your attorney, so she's just

18  going to represent you for today only.  And the purpose of

19  today is just to kind of talk about your bond, see if we can

20  agree to something.  If we don't, I'll get you another bond

21  hearing in seven days down the road.

22            You should know that there's a court reporter

23  present and she's taking down everything that everybody

24  says.  So, just like they tell you on the TV, anything that

25  you say can and will be used against you, okay?
```

Dixon 20587

1          BOBBY CLAYTON HAIL:  Yes, sir.

2          THE COURT:  All right.  First thing I got to do is

3   tell you what you're charged with.  It looks like they

4   got -- they're charging you with three things.  The first

5   thing is attempted burglary first, which is a Class C felony

6   here in the State of Missouri.  Range of punishment on a

7   Class C Felony is three to ten years in the Department of

8   Corrections or a $10,000 fine or both a fine and jail time.

9          They're saying on or about October the 4th, 2020,

10  here in the City of St. Louis, you knowingly attempted to

11  enter unlawfully into a building located at 3805 Meramec

12  possessed by someone other than you for the purpose of

13  committing stealing, and that while in that building, the

14  person who owned it was not a participant in the crime.

15          Next, they're charging you with unlawful use of a

16  weapon, that's a Class E felony.  Range of punishment is one

17  to four years in the Missouri Department of Corrections or a

18  $10,000 fine or both a fine and jail time.  They're saying

19  that on or about June 28th, 2020, here in the City of St.

20  Louis, you knowingly exhibited in the presence of more -- of

21  one or more people a hatchet, which is a weapon readily

22  capable of lethal use in an angry or a threatening manner.

23          They're also saying that you committed the Class E

24  felony of possession of burglary tools.  Again, that's an E

25  felony, one to four in the Department of Corrections or a

1    $10,000 fine or both fine and jail time.  They're saying

2    that on October 4th, when you tried to get in the place on

3    Meramec, you possessed a crowbar, screwdriver and knives,

4    which were tools adapted, designed or commonly used for

5    committing the offense that we talked about earlier.  You

6    possessed those tools to try and get into the building

7    unlawfully.

8              All right.  So, I entered a plea of not guilty on

9    all of these here for you.  It looks like your current bond

10   setting is no bond.  All right.

11             Ms. Moody, anything to say on behalf of Mr. Hail?

12             MS. MOODY:  Well, Judge, I believe that he's

13   probably on parole, looks like he has a parole hold.  I

14   wasn't sure if pretrial was able to ascertain that or not.

15             THE COURT:  Mr. Hail, are you on parole?

16             BOBBY CLAYTON HAIL:  Yes, sir, but I'm not on

17   parole hold cause my parole officer told me if I get

18   released to give her a call.

19             THE COURT:  That's okay.  Here's what we're going

20   to do.  Give me just a minute.

21             MS. MOODY:  I'm sorry, Judge.  I did not hear what

22   he said.

23             THE COURT:  He said that, yes, he's on parole and

24   he's supposed to call his parole officer.

25             MS. MOODY:  Okay.

1          THE COURT:  So, I ask everybody just stop for a

2     minute so I can finish filling out my paperwork.  All right.

3     Mr. Hail, so, again, we're going to show you entered pleas

4     of not guilty.  I'll, also, show you informed the Court that

5     you are on parole and, again, I appreciate you being

6     straight up with me.

7          For now, I'm going to deny the request for any

8     modification of conditions of release.  So, you stay at no

9     bond, but we'll get you another bond hearing with another

10    judge on October the 19th, so that's seven days from now, at

11    12:00 noon here in Division 16B.

12         So, Mr. Hail, if you get a private lawyer by then,

13    of course, they can be here to represent you.  If you don't

14    have a lawyer by then, we'll appoint another lawyer to

15    represent you just for that hearing only, okay?

16         Now, if you're on parole, I would suggest that you

17    fill out an application for the Public Defender's Office.

18    They can give it to you there at the Justice Center.  Just

19    make sure you fill out front and back of the forms.  Make

20    sure you get it signed and, if you get that done today, we

21    may know by next -- next week if they're going to represent

22    you, okay?

23         BOBBY CLAYTON HAIL:  Sir, can I say something?

24         THE COURT:  Well, you can say something, but

25    before you say something, let me remind you that everything

6

1   you say is being recorded and you do have an attorney that's

2   here representing you.  So, I mean, Ms. Moody, do you want

3   to run interference?

4            MS. MOODY:  Yes.  Mr. Hail, there's -- there's

5   nothing -- you should not say anything in regards to your

6   actual case right now and there's really not much that you

7   could argue to have your bond -- have a bond set or be

8   lowered at this point.  So, it would be best probably to not

9   say anything and wait until you have a permanent attorney

10  appointed for you.

11           BOBBY CLAYTON HAIL:  Okay.  What I was going to

12  say is I'm in justice ministries and they setting up an

13  apartment and I'll lose my apartment.  I'm trying to get my

14  disability and everything started back up again.

15           THE COURT:  Mr. Hail, you can tell that to the

16  judge a week from today, okay?

17           BOBBY CLAYTON HAIL:  All right.

18           THE COURT:  Thank you.

19

20

21

22  [END OF HEARING]

23

24

25

Dixon 20591

```
 1

 2                   CERTIFICATE OF COURT REPORTER

 3          I, Rita T. DeFilio, certified court reporter, do

 4   hereby certify that I am an official court reporter for the

 5   Circuit Court of the City of St. Louis; that on October 13,

 6   2020, I was present and reported all the proceedings had in

 7   the case of STATE OF MISSOURI vs. BOBBY CLAYTON HAIL, Cause

 8   No. 2022-CR01739.

 9          I further certify that the foregoing pages contain

10   a true and accurate reproduction of the proceedings.

11

12

13

14   "/s/ Rita T. DeFilio"

15   Rita T. DeFilio, RMR

16   Official Court Reporter

17   CCR No. 0192

18

19

20

21

22

23

24

25
```

# EXHIBIT 141

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT, DIVISION 16B
Honorable MICHAEL J. COLONA, Judge


STATE OF MISSOURI,          )
                            )
                  Plaintiff,)
                            ) Cause No. 2022-CR01746
vs.                         )
                            )
DIANGELO D. JACKSON,        )
                            )
                  Defendant.)



TRANSCRIPT OF PROCEEDINGS

        The following proceedings were had in Division 16B

of the Twenty-Second Judicial Circuit Court, City of St.

Louis, State of Missouri, on the 13th day of October, 2020.


        Ross Gipson, Assistant Circuit Attorney, appeared

for the State of Missouri.


        The defendant, DIANGELO JACKSON, appeared in

person and with Nichole Moody, Attorney At Law.



            Rita T. DeFilio, C.C.R. #0192
    22nd Judicial Circuit, City of St. Louis, Missouri

```
 1                        OCTOBER 13, 2020

 2              THE COURT:  Looks like next we have Diangelo

 3    Jackson.  Who do I have in front of me?

 4              DIANGELO DWAYNE JACKSON:  Diangelo Dwayne Jackson.

 5              THE COURT:  Okay.  We're good.  Give me just a

 6    minute to pull up your file here.

 7              DIANGELO DWAYNE JACKSON:  Yes, sir.

 8              THE COURT:  All right.  We'll go on the record on

 9    2022-CR01746, State of Missouri versus Diangelo Jackson.

10    Present on video from the Justice Center is Mr. Jackson.

11    Also, present by video for the State of Missouri is ACA

12    Gipson.

13              Mr. Jackson, have you hired private attorney to

14    represent you in this matter?

15              DIANGELO DWAYNE JACKSON:  I have not.

16              THE COURT:  Okay.  You're good.  Hang on.  Also,

17    present by conference call is attorney Nichole Moody.  So,

18    Mr. Jackson, I'm going to appoint Ms. Moody to represent

19    you, but just for today's hearing only, okay?

20              DIANGELO DWAYNE JACKSON:  Yes, sir.

21              THE COURT:  All right.  Now, while you can't see

22    her, she is on the phone, so she's hearing everything that's

23    going on.  You should know, Mr. Jackson, that there's a

24    court reporter who's recording everything that we say.  So

25    it's just like you hear on TV, anything that you say can and
```

Dixon 20594

3

1    will be used against you because, again, we're recording

2    this, okay?

3              DIANGELO DWAYNE JACKSON:  Yes, sir.

4              THE COURT:  One of the first things I have to do

5    is make sure you know what you're charged with.  So, let me

6    pull that up here.  All right.  It looks like you are

7    charged with two different things.  The first thing is an

8    assault second, that's a Class D Felony.  Range of

9    punishment on that is up to seven years in the Department of

10   Corrections or a $10,000 fine or both a jail time and fine.

11             They're saying that on or about September 26th,

12   2020, here in the City of St. Louis, you knowingly caused

13   physical injury to Fede Aktab [PHONETIC] by means of using a

14   deadly weapon or dangerous instrument by striking Aktab with

15   a baseball bat.

16             Second thing they're charging you with is armed

17   criminal action, which means that the bat -- they're saying

18   the bat was a dangerous instrument and that can carry with

19   it a -- an additional range of punishment up to three years

20   in the Department of Corrections.

21             So, Mr. Jackson, we'll enter a plea of not guilty

22   for you on both of these things.  Give me a minute.  Like I

23   said, I want to look at your court file and see what is in

24   the file.  All right.

25             Mr. Gipson, is this something, again, you want to

Dixon 20595

1    talk about as far as negotiation is concerned or not?

2              MR. GIPSON:  Not this one, Your Honor.

3              THE COURT:  Okay.  Ms. Moody, anything?

4              MS. MOODY:  Yes, please, Judge.  Just that

5    Mr. Jackson lives right over the river in Illinois and then

6    lived here for the past ten years.  There's nothing to

7    indicate that he would not appear in court.  He's currently

8    employed at Taco Bell.  He does have expenses that he has to

9    pay.

10             Judge, we would ask that, you know, you put up a

11   very low amount and a stay-away order or a house arrest.  I

12   think there are other conditions besides just the monetary

13   conditions.  Mr. Jackson, in a pretrial interview, did

14   indicate that it would be hard to post bond right now

15   because of the limited income based on Covid.

16             THE COURT:  So, Mr. Jackson, it looks like when

17   you talked to the pretrial people when you got picked up you

18   had a case in Illinois?

19             DIANGELO DWAYNE JACKSON:  I had a case in

20   Illinois?

21             THE COURT:  That's what I'm asking you.  You had a

22   case in Illinois?

23             DIANGELO DWAYNE JACKSON:  No, sir, I don't have a

24   record, sir.

25             THE COURT:  That's not what I asked you.  What I

1    asked you is did you have a case in Illinois?

2              DIANGELO DWAYNE JACKSON:  No, sir.

3              THE COURT:  So, our pretrial people here say that

4    you had an a assault second, ACA, battery bodily harm in the

5    State of Illinois.  And what you're saying is that ain't

6    you?

7              DIANGELO DWAYNE JACKSON:  Sir, can I say

8    something?  That happened in the City of St. Louis,

9    Missouri.

10             THE COURT:  Okay.  Is that -- is that case

11   currently going on?

12             DIANGELO DWAYNE JACKSON:  I went to talk to the

13   detectives and then called my phone and in order to talk to

14   me, in order to talk to them about the incident and,

15   basically, they said I had to get a lawyer and it was a self

16   defense incident, so they told me to get a lawyer.

17             THE COURT:  It was what?

18             DIANGELO DWAYNE JACKSON:  A self defense.  I

19   was -- I was being robbed at gun point.

20             THE COURT:  Okay.  Just stop talking.  Don't say

21   anything else.

22             DIANGELO DWAYNE JACKSON:  Sorry.

23             THE COURT:  You're good.  I don't see any new case

24   or any old case.  Were you working before you got picked up?

25             DIANGELO DWAYNE JACKSON:  Yes, sir.  I'm a general

6

1    manager at Taco Bell.

2             THE COURT:  Where at?  There's lots of Taco Bells.

3             DIANGELO DWAYNE JACKSON:  O'Fallon, Missouri.

4             THE COURT:  When were you picked up?  I got that

5    here.  Hang on.  You've been locked up for about a couple

6    days?

7             DIANGELO DWAYNE JACKSON:  I've been locked up for

8    six days, sir.

9             THE COURT:  Is your job still waiting for you?

10            DIANGELO DWAYNE JACKSON:  I'm hoping so.  Hope it

11   be there when I do.

12            THE COURT:  Mr. Gipson, is there any comment from

13   the victim on this?

14            MR. GIPSON:  Yes, Your Honor.  I do have the

15   victim impact statement that I submitted to you and Ms.

16   Moody today.  Would you like me to read that into the

17   record?

18            THE COURT:  I guess circuit judges have time in

19   the morning to read e-mail impact statements or discovery

20   information because their dockets don't have 50 people on

21   them and last until, you know, the time 16B starts.  So,

22   yes, I would like you to read to me the victim impact

23   statement since I have not had the opportunity to hear it or

24   review it.

25            MR. GIPSON:  Okay.  Thank you, Your Honor.  This

1    is from the victim in the case.  It says, "Your Honor, I'm

2    writing this statement on October 13th about the case of

3    Diangelo Jackson, Case Number 2022-CR01746.  Please be aware

4    that he has threatened me and my family.  He has my address

5    and my family's address.  He told me while I was getting

6    beaten by the baseball bat that he will kill my mother after

7    he kills me, so I ran for my life while he chased me with a

8    baseball bat.  Please, Your Honor, don't let him be released

9    for I am in fear for my family's life."

10          THE COURT:  Okay.  All right.  So, Mr. Jackson,

11   we'll show again we entered a plea of not guilty for you.

12   All right.

13          And, again, I've informed you that your current

14   bond is set at a no bond allowed.  I'm going to deny any

15   request for modification of the bond today, but we're going

16   to set you for another bond hearing in front of a different

17   judge seven days from now on October the 19th at noon in

18   16B.

19          I'm, also, going to get you a court date with the

20   judge you're assigned to.  So, your first court date with

21   your regular judge is going to be November 30th at 9:00 a.m.

22   in Division 26.  So, again, I'll get you in front of another

23   judge a week from today to take a look at your bond again.

24   He'll spend a little bit more time going into the facts and

25   seeing if they can come to a different conclusion in this

Dixon 20599

1    matter, but the bottom line is your bond is staying where

2    it's at for today.  You will get another bond hearing in a

3    week and your first court appearance is November the 30th at

4    9:00 a.m. in Division 26, all right?  Thank you.

5          DIANGELO DWAYNE JACKSON:  Can I have permission to

6    speak, Your Honor?

7          THE COURT:  Well, I should probably ask Ms. Moody

8    who is your appointed attorney for today to chat with you

9    for a moment.  Go ahead, Ms. Moody.

10         MS. MOODY:  Okay.  Can you hear me?

11         DIANGELO DWAYNE JACKSON:  Yes, I can.

12         MS. MOODY:  Okay.  I just -- it would probably be

13   best for you not to say anything right now.  Everything is

14   on the record and so you don't want to make any statements

15   that could end up being used against you.

16         DIANGELO DWAYNE JACKSON:  The statements were

17   about my job.  I just wanted to still maintain my job.  I'm

18   going to come to court if I have to come to court, but my

19   job is just, you know, if I lose my job then it's going to

20   be hard for me to make payments and be able to get an

21   attorney or whatever the case may be.  I'm not a flight risk

22   or anything like that, Your Honor.

23         THE COURT:  So, here's the deal -- all right.  So,

24   here's the deal, Mr. Jackson.  All I have to go on is what's

25   in front of my face.  The victim has made a victim impact

1   statement.  I mean, let me make this comment and then I'll

2   turn it back over to Ms. Moody.  If you want me to continue

3   on with this hearing and to look into a few other things and

4   make some findings as to whether or not you're a danger or

5   you might run away or any of that stuff, I can do that.

6   It's not a big deal.

7          I can't guarantee to you that it's going to be the

8   same outcome, but if you want me to continue on with the

9   hearing and make findings of facts and conclusions of law on

10  what to do with your bond, I'll do that.  Not a big deal.

11  Ms. Moody, it's to you.

12         MS. MOODY:  Okay.  Just, Mr. Jackson, once you

13  have an attorney appointed for the duration of your trial or

14  you hire a private attorney, they'll have the opportunity to

15  sit and discuss the defenses with you.  At that point, you

16  can have another bond hearing, but to proceed right now with

17  what you are charged, particularly with what this Judge has

18  in front of him, could result in a more negative impact for

19  you.

20         DIANGELO DWAYNE JACKSON:  Yes, ma'am.

21         THE COURT:  All right.  Thank you, Mr. Jackson.

22         DIANGELO DWAYNE JACKSON:  Thank you.

23

24

25  [END OF HEARING]

1

2                       CERTIFICATE OF COURT REPORTER

3               I, Rita T. DeFilio, certified court reporter, do

4     hereby certify that I am an official court reporter for the

5     Circuit Court of the City of St. Louis; that on October 13,

6     2020, I was present and reported all the proceedings had in

7     the case of STATE OF MISSOURI vs. DIANGELO DWAYNE JACKSON,

8     Cause No. 2022-CR01746.

9               I further certify that the foregoing pages contain

10    a true and accurate reproduction of the proceedings.

11

12

13

14    "/s/ Rita T. DeFilio"

15    Rita T. DeFilio, RMR

16    Official Court Reporter

17    CCR No. 0192

18

19

20

21

22

23

24

25

# EXHIBIT 142

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS

STATE OF MISSOURI
Honorable Michael W. Noble, Judge

STATE OF MISSOURI,       )
                             )
            Plaintiff,     )
                             )
    vs.                  )   Cause No. 2022-CR01230
                             )
JOSHUA DUNN,         )
                             )
          Defendant.   )

INITIAL BOND APPEARANCE HEARING

On the 6th day of July, 2020, the above-entitled cause came on regularly for bond hearing before the Honorable Michael Noble, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Mac Callanan, Assistant Circuit Attorney.

The Defendant was present via video and was represented by Andy Sottile.

*RENEE LYNN BIERMAN, CCR, CSR*
*OFFICIAL COURT REPORTER*
*CITY OF ST. LOUIS CIRCUIT COURT*
*TWENTY-SECOND JUDICIAL CIRCUIT*

Dixon 20613

1          THE COURT:    We're on the record in 2022-CR01230,

2    State of Missouri versus Joshua Dunn.

3          All right.  Mr. Dunn, my name is Judge Michael

4    Noble.  I'm the judge in 16B today.  We're going to do a

5    couple things.  This is your first appearance, so I'm going

6    to go over your charges and advise you of some of your

7    rights, and I'm going to make an initial determination of

8    your conditions of bond.

9          If you are not released, we'll bring you back in a

10   week, when your conditions will be reviewed, subject to any

11   rights of any victims.

12         The attorney for the State is Mac Callanan, and

13   Mr. Andy Sottile is your attorney for today for the limited

14   purposes of this hearing.

15         The defendant -- the record will reflect that the

16   defendant appears via video from the city -- St. Louis City

17   Justice Center.

18         All right, Mr. Dunn, do you understand that you

19   have the right to remain silent?

20         THE DEFENDANT:   Yes.

21         THE COURT:    And you understand that any

22   statement you may make may be used against you?

23         THE DEFENDANT:   Yes, sir.

24         THE COURT:    All right.  I'm going to ask you

25   some questions, but I'm going to ask you some questions

2

1    about you.  I do not want to know anything about the case.

2              Do you understand that?

3              THE DEFENDANT:   Yes, sir.

4              THE COURT:   All right.  Do you understand that

5    you are charged with domestic -- one count of domestic

6    assault in the second degree, which is a D felony; one

7    count of domestic assault in the third degree, which is an

8    E felony.

9              Do you understand that?

10             THE DEFENDANT:   Yes, sir.

11             THE COURT:   All right.  I'm going to go over

12   your pretrial interview.  And this is Mr. Dunn's initial

13   appearance.  Looks like bond is set at no bond.  He's got

14   no prior felony convictions.  He's married, three kids.

15   Lived in the community for twenty-nine years.  He is

16   unemployed.  He has no mental health, physical or drug

17   abuse issues.  He's got no -- yeah, no physical -- any of

18   those issues.

19             So, let me ask you something, Mr. Dunn.  What are

20   you going to do about an attorney?  Shows that you are

21   unemployed, you're not receiving any public assistance, and

22   you have no financial assets.

23             Is that correct?

24             THE DEFENDANT:   Yes, sir.

25             THE COURT:   All right.  Are you applying -- what

3

1    are you planning to do about getting an attorney?

2              THE DEFENDANT:    I was going to talk to my family

3    about it and see if I can get some help in doing so.  I

4    haven't been able to do that yet, though, sir.

5              THE COURT:    So, you want me to go ahead and

6    appointment the public defenders, or do you want to work

7    on it first?

8              THE DEFENDANT:    If I work on it, am I going to

9    be able to get a public defender if it doesn't work out?

10             THE COURT:    That's not an automatic -- I mean --

11   well, I'll let Mr. Sottile advise you.  But you got a --

12   if you don't have any -- if you don't have any money, and

13   your family decides not to get you any money, then you're

14   going to sit around a lot longer.  But --

15             It's up to you.  If you think your family is going

16   to come through, then I won't appoint the public defenders.

17   But if you don't -- if you're not sure about your family, I

18   think your best bet is to at least get the public defenders

19   on, and then somebody else can come and take the case from

20   them.

21             That's my unsolicited thoughts.

22             THE DEFENDANT:    Let me do that, sir.

23             MR. CALLANAN:    Your Honor, may I interject

24   something?

25             THE COURT:    Yeah.

4

1          MR. CALLANAN:    All right.  Your Honor, just to

2     clarify, for the ties to the community, is that he

3     actually is not from St. Louis.  And if you look at his

4     address, he would be living in Tampa, Florida, Your Honor,

5     which is deeply concerning.

6          I believe, based on our files, Your Honor, that he

7     actually travels around the country for work, that's why he

8     goes to Florida.  But he is not from St. Louis, Your Honor,

9     and does not have a place to stay here.

10          THE COURT:    Where would you -- hold on.  First

11     off, let me do something.  Do you travel around for work,

12     or -- because I'm confused.  It says that you travel -- it

13     says here you just travel a lot.

14          Do you travel for work, or what -- why does the

15     State think that you travel for work?

16          THE DEFENDANT:    What -- what I was doing, before

17     going to Hawaii recently, is I was traveling and teaching

18     scripture, and going from different temples and church

19     communities around the country.  And then I went to Hawaii

20     to start -- to help to build an eco village, an

21     off-the-grid sustainable food forestry village, in hopes

22     of bringing my children there in the near future.

23          So, I have been traveling around, just networking,

24     and making contacts to try to make that happen.

25          THE COURT:    Okay.  So, when you're doing all of

5

1    this, are you getting paid, or are you just -- how are

2    you --

3              THE DEFENDANT:    When I was doing --

4              THE COURT:    How are you surviving without money?

5              THE DEFENDANT:    When I was teaching, I was --

6    everything was coming to me through, you know, donations

7    or, like, gifted support from people.  And, then, when I

8    went to Hawaii I started working as a manager at Paradise

9    Eco Village while I was working on building a community

10   there.  And that job is still there and available for me,

11   and they're kind of waiting on me.

12              But, when this happened, I was on my way back to

13   working things out with my baby's mother and getting my

14   girls set up to move there.  My daughters.  I have three

15   daughters.

16              THE COURT:    So you're saying the job is waiting

17   for you in Hawaii?

18              THE DEFENDANT:    Yes.

19              THE COURT:    Uh-huh.  All right.  Well, the Court

20   is going to make a determination that you are indigent,

21   and that the public defenders need to be appointed

22   pursuant to Rule 31.02.  That's first off.

23              So, Mr. Callanan, what's your thoughts on bond?

24              MR. CALLANAN:    Your Honor, this case is deeply

25   concerning.  It's a domestic assault second.  The actual

6

1    course of conduct for that, he choked the victim in this

2    case, causing her to black out, which is extremely

3    concerning to both myself, and I believe members of the

4    community, Your Honor.  And he does not have a home plan.

5              Again, I think that his ties right now to the

6    community happen to be this victim.  She has expressed, in

7    her victim impact statement, Your Honor, which you should

8    have a copy of, that she's deeply fearful --

9              MR. SOTTILE:   I don't have a copy of the -- Mac,

10   I don't have a copy --

11             MR. CALLANAN:   I'll send it to you.

12             MR. SOTTILE:   Okay.  Thank you.

13             MR. CALLANAN:   What is your e-mail address, Mr.

14   Sottile?

15             MR. SOTTILE:   It's AndySottile@Gmail.com.

16             MR. CALLANAN:   I'll get that sent over.  Give me

17   one second.

18             MR. SOTTILE:   Thank you.

19             (There was a discussion held off the record.)

20             THE COURT:   All right, I'm looking at -- so, who

21   is Alyssa Daoukas?  What's her connection -- what -- how

22   do you know her or don't know her?

23             THE DEFENDANT:   As I was traveling, when I

24   started to teach, she became -- she came and essentially

25   began to learn with me and from me, and then we kind of --

7

Dixon 20619

1              THE COURT:   Okay.  I'll stop you there.  That's

2    not the -- that's not the -- the mother of the daughters?

3              THE DEFENDANT:   No.

4              THE COURT:   Okay.

5              THE DEFENDANT:   No, she's not.

6              THE COURT:   Okay.  All right, what else, Mr.

7    Callanan?

8              MR. CALLANAN:   Your Honor, I think that he is

9    a -- definitely, at least to this victim, a very clear

10   danger.  There's indications of him choking her, causing

11   her to black out, giving her black eyes, and the threats

12   that he has expressed.

13             And, your Honor, I think that he has no ties to

14   the community, he has no home plan, Your Honor, and we

15   haven't heard anything that would be appropriate for him to

16   be released at this time.

17             THE COURT:   Mr. Sottile, your thoughts?

18             MR. SOTTILE:   Thank you, Your Honor.  First I'd

19   enter a plea of not guilty for Mr. Dunn, and also waive

20   reading of the charges.

21             I have a couple questions for him, if that's okay?

22             THE COURT:   Yes.

23             MR. SOTTILE:   Mr. Dunn, do you have any -- would

24   you have any place to stay in St. Louis temporarily that's

25   not related to the victim, or her family, or friends in

8

1   St. Louis?  Do you know anyone else, or any place you

2   could possibly stay?

3               THE DEFENDANT:    Yes.  I have a friend that

4   offered me to stay there while I deal with the case here

5   in St. Louis.

6               MR. SOTTILE:    And who's that friend?  What's her

7   name?

8               THE DEFENDANT:    His name is Mark.

9               MR. SOTTILE:    Mark?  Mark what?

10              THE DEFENDANT:    And his -- I'm not sure of his

11   last name.  He just offered somewhere for me --

12              MR. SOTTILE:    How do you know him?

13              THE DEFENDANT:    I met him through dealing with

14   this situation at the hotel where I was picked up, and he

15   kind of empathized with my situation, felt bad, and said

16   that if I needed a place to stay while I deal with this, I

17   could stay there.

18              MR. SOTTILE:    Do you know his address?

19              THE DEFENDANT:    Yes.

20              MR. SOTTILE:    Well, what's his address?

21              THE DEFENDANT:    2905 Texas Street, St. Louis,

22   Missouri.

23              MR. SOTTILE:    Okay.  And, then, are you able to

24   make any kind of monetary bond?

25              THE DEFENDANT:    Yes.

9

1          MR. SOTTILE:   Well, how much could you make?

2          THE DEFENDANT:   I could imagine anywhere around

3     maybe two grand, three grand.  Probably up to five.  But I

4     can't guarantee for sure yet.

5          MR. SOTTILE:   Okay.

6          THE DEFENDANT:   Am I -- am I allowed to address

7     any --

8          MR. SOTTILE:   You can't -- yeah, please do not

9     talk about the actual case.  All we are here to talk about

10    today is your bond situation.

11         THE DEFENDANT:   Okay.  All right.

12         MR. SOTTILE:   Your Honor, I'd ask the Court to

13    consider setting maybe a $20,000, ten percent bond.  The

14    Court could order reporting to EMASS or GPS.  It sounds

15    like Mr. Dunn would have a place to stay in St. Louis

16    that's not related to the complaining witness or any of

17    her family or friends.  I do understand that he's not from

18    here.

19         Let me ask this, Mr. Dunn, one other question.

20    How long have you been in St. Louis?

21         THE DEFENDANT:   I've come back and forth.  I --

22    I had a relationship with Alyssa Daoukas, and I had a

23    relationship with many people affiliated with her, so I've

24    been back and forth here over the past year.  And I've

25    been here for two weeks.

10

1          MR. SOTTILE:   Okay.  Okay.  Thank you.

2          Your Honor, I would ask the Court -- in light of

3    his lack of criminal history, the Court to set that bond.  I

4    think that would ensure that he would make all of his court

5    appearances, and I think there's controls in place, if he

6    were to report through EMASS, or to have GPS, that the

7    safety of the community and of the complaining witness would

8    be ensured in this case.

9          Thank you.

10         THE COURT:   All right, Mr. Dunn, there's a bunch

11   of things that are concerning the Court.  One, the nature

12   of the charges.  The domestic assault second and third.

13   The Court looked at the probable cause statement, as well

14   as the victim impact statement.  The Court is concerned

15   greatly for the safety of the alleged victim in this case.

16         Also, the Court has strong reservations that you

17   will show up for court.  You have ties in Hawaii, Florida.

18   And the fact that you know somebody named Mark is not enough

19   to give the Court -- regardless of the fact that you know

20   the address, it's not enough to give the Court that that's a

21   stable home plan.

22         The Court is concerned that -- the nature of the

23   charges, that you are a flight risk, and that it's --

24   there's inconsistencies regarding income, especially if you

25   can make a $5,000 bond, yet you're indigent.

11

Dixon 20623

1          So, the Court is not sure as to exact -- your

2    ability -- your financial status, but the Court does believe

3    that you are currently indigent and that a public defender

4    should be appointed.

5          However, based on the nature of the charges and

6    the -- which I don't believe that there's any nonmonetary or

7    monetary conditions that would secure the safety of the

8    community, or the alleged victim in this case, so I'm going

9    to -- the bond is going to remain at no bond.  Good luck,

10   Mr. Dunn.

11         Oh, your dates.  Hold on, Mr. Dunn.  Mr. Dunn.

12   Your next court date is going to be July 13th, which is a

13   week from now, that way another judge can take a look at

14   this, and you may be able to secure some more information

15   that changes his opinion.  But --

16         So you will be able to do that on the 13th.

17   And, if not, your next court date in Division 26 will be

18   August 10th.

19         Good luck, Mr. Dunn.

20                      o0o

21

22

23

24

25

                                                          12

1              CERTIFICATE

2          I, Renee Lynn Bierman, Certified Court Reporter,

3     do hereby certify that I am an official court reporter for

4     the Circuit Court of the City of St. Louis; that on July

5     6, 2020, I was present and reported all the proceedings

6     had in the case of STATE OF MISSOURI, Plaintiff, vs.

7     JOSHUA DUNN, Defendant, Cause No. 2022-CR01230.

8          I further certify that the foregoing pages

9     contain a true and accurate reproduction of the

10    proceedings.

11         In compliance with Supreme Court Rule 84.18, I

12    certify that the cost of preparing this transcript is as

13    follows:

14

15

16    13 PAGES @ $40.00 PER PAGE. . . . . . . . . . . $52.00

17

18              /S/RENEE LYNN BIERMAN

19         ------------------------------------------------

20

21         RENEE LYNN BIERMAN, CSR, **CCR #**701

22           22ND JUDICIAL CIRCUIT - CITY OF ST. LOUIS

23                   State of Missouri

24

25

                                                    13

Dixon 20625

# EXHIBIT 143

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS

STATE OF MISSOURI
Honorable Michael W. Noble, Judge

STATE OF MISSOURI,              )
                                )
            Plaintiff,          )
                                )
    vs.                         )   Cause No. 2022-CR01153
                                )
TERRY LEE WARREN, JR.,          )
                                )
            Defendant.          )

INITIAL BOND HEARING APPEARANCE

On the 10th day of July, 2020, the above-entitled cause came on regularly for bond hearing before the Honorable Michael Noble, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Mac Callanan, Assistant Circuit Attorney.

The Defendant was present via video and was represented by Anthony Muhlenkamp.

*RENEE LYNN BIERMAN, CCR, CSR*
*OFFICIAL COURT REPORTER*
*CITY OF ST. LOUIS CIRCUIT COURT*
*TWENTY-SECOND JUDICIAL CIRCUIT*

1              THE COURT:    We're on the record for the initial

2     appearance of Mr. Terry Warren, Cause Number 2022-CR01153.

3     Mr. Warren is appearing on video from the Justice Center.

4     Mr. Mac Callanan is appearing on video for -- on behalf of

5     the State.  And Mr. Tony Muhlenkamp is appearing, for the

6     limited purposes of this hearing, on video as well.

7              So, Mr. Warren, we're going to do a couple things.

8     One, I don't think I said this, but my name is Judge Noble.

9     I'm one of the judges here in the 22nd Circuit.  I'm

10    sitting in 16B this week.

11             This is your initial appearance, so we're going to

12    go over your charges and your conditions of release.  If you

13    are not released today, then they'll bring you back in one

14    week and you will have another judge take a peek at it, and

15    he or she may make a different decision than I make.

16             So, first thing I want you to understand is you

17    have the right to remain silent.

18             Do you understand that?

19             THE DEFENDANT:   Yes.

20             THE COURT:    And you understand that anything you

21    say may be used against you.

22             Do you understand that?

23             THE DEFENDANT:   Yes.

24             THE COURT:    All right.  So, when I do ask you

25    questions, I'm only going to ask you questions about you

                                                              2

```
 1   as a person.  I do not want to know anything about the
 2   case.
 3                   Do you understand?
 4                   THE DEFENDANT:   Yes.
 5                   THE COURT:   All right.  So, do you understand
 6   you are charged with unlawful possession of a firearm,
 7   which is a D felony, and unlawful use of a weapon,
 8   Subsection 4, exhibiting, which is an E felony.
 9                   Do you understand that?
10                   THE DEFENDANT:   Yes.
11                   THE COURT:   All right.  Wow, none of the
12   official appearances are on -- all right.  So, I'm going
13   to go -- they filled out an exhibit for 16B, so I'm going
14   to go over some information with you, Mr. Warren.  Okay?
15                   THE DEFENDANT:   Okay.
16                   THE COURT:   All right.  It says here that you
17   are -- all right.  That you have one prior from 2011,
18   which is a rob first, ACA, and you ended up doing three
19   years in the Department of Corrections.
20                   Is that correct?
21                   THE DEFENDANT:   Yes.
22                   THE COURT:   And, on this case, your current bond
23   is -- oh, let me see what he did.  Looks like it's no bond
24   allowed.  All right.  Huh.  Did you do an interview with
25   anybody -- hold on.  Wait.  Oh, I see it.  Never mind.
```

3

1    Here we go.

2              All right.  You're twenty-six years old, you stay

3    on Kemper Avenue?  Or Kemper --

4              THE DEFENDANT:   Yes, sir.

5              THE COURT:   So do you stay at Kemper, or do you

6    stay at Illinois?

7              THE DEFENDANT:   Me and my girlfriend live on

8    Illinois.  My dad stay on Kemper.

9              THE COURT:   Okay.

10             THE DEFENDANT:   Me and my girlfriend just

11   recently got a house on Illinois.

12             THE COURT:   Got it.  All right.  Single, two

13   kids.  You're currently working at a temp agency?

14             THE DEFENDANT:   Yes, sir.  I --

15             THE COURT:   Hold on one second.  Hold on one

16   second.  Looks like you -- you got a gunshot, and you had

17   a broken collar bone.

18             THE DEFENDANT:   I do.

19             THE COURT:   All right.  You have no mental

20   health issues?

21             THE DEFENDANT:   I don't.

22             THE COURT:   Looks like you may abuse marijuana

23   and alcohol.

24             THE DEFENDANT:   I have.

25             THE COURT:   All right.  Looks like you don't

                                                          4

1    have a lot of money.  Is that fair to say?

2                    THE DEFENDANT:    Correct.

3                    THE COURT:    All right.  Based on your financial

4    report, you receive some TANF, about two hundred

5    thirty-four bucks a month, but you don't have anything but

6    maybe a hundred bucks in the bank.

7                    So the Court is going to make a determination that

8    you are indigent, and the public defenders are appointed

9    pursuant to Rule 31.02.  That's about it.  Let me look at

10   the probable cause statement.

11                   All right, Mr. Callanan, is there a victim

12   statement on this one?

13                   MR. CALLANAN:    There is not a victim impact

14   statement, Your Honor.

15                   THE COURT:    Okay.  What's your argument on why

16   the bond should remain no bond?

17                   MR. CALLANAN:    Your Honor, our position -- Yes,

18   Your Honor.  Our position is that the bond should remain

19   no bond in this particular case.  We see an escalation

20   where he was evicted from the property -- not evicted, but

21   he was told -- he was ejected from the property, and he

22   comes back, Your Honor, this time with a firearm, where he

23   points it not only at the security guard, but he goes up

24   to several windows of cars that are occupied and taps in a

25   threatening manner on those vehicles, Your Honor.  So, he

5

Dixon 20654

1    showcased that he's not a danger just to one person, but

2    multiple people who were in that parking lot, Your Honor.

3            This is someone who previously had a robbery

4    first, Your Honor, a felon in possession of a firearm again,

5    Your Honor, and he did time on that robbery first.

6            And if you look at the probable cause, too, when

7    that security guard comes out to try and deescalate the

8    situation at the property again, second time that day, he

9    says he's going to beat his ass, and he points the weapon at

10   him several times.

11           I don't think that there are any conditions, Your

12   Honor, monetary or otherwise, that would ensure the safety

13   of the community.  I think we have a felon in possession of

14   a firearm who is pointing it at several people, Your Honor,

15   in a threatening manner.

16           He's a clear danger to the community, and I'd ask

17   you to keep it at no bond.  Thank you.

18           THE COURT:   All right, Mr. Muhlenkamp, if you

19   want to talk to your client, you can.

20           MR. MUHLENKAMP:   We would waive formal reading

21   and enter a plea of not guilty for Mr. Warren.  And can I

22   inquire now?

23           THE COURT:   You can.

24           MR. MUHLENKAMP:   Thank you.  Can you hear me

25   okay?

                                                            6

Dixon 20655

1              THE DEFENDANT:   I can.

2              THE COURT:    Okay.  Please keep your voice up.

3    As the Court indicated, my name is Tony Muhlenkamp.  The

4    Court has appointed me to represent you for today's

5    purposes only.  My job is to make sure the Judge gets

6    reliable and accurate information so he can assess your

7    bond, as far as whether to change it or not change it.

8    Okay?

9              So what I'm going to do is I'm going to ask you

10   some questions about your background.  I'm not going to ask

11   you about the facts of the case.  Please do not volunteer

12   anything about the facts of the case.  You'll get a chance

13   to do that later with a different attorney.  Okay?

14             THE DEFENDANT:   Okay.

15             MR. MUHLENKAMP:   Okay.  So please just keep your

16   voice up and tell me the truth.  Is that good?

17             THE DEFENDANT:   All right.

18             MR. MUHLENKAMP:   Okay.  You indicated that you

19   would live on Illinois if you got released.  Right?

20             THE DEFENDANT:   No.  I will be living at my

21   father house at 4940 Kemper.

22             MR. MUHLENKAMP:   Oh, you're going to live with

23   your dad and not your girlfriend?

24             THE DEFENDANT:   Not my girlfriend, no.

25             MR. MUHLENKAMP:   Okay.  I see here you have two

7

1    children.  Your children live with your girlfriend?

2              THE DEFENDANT:    My daughter is kind of -- my son

3    -- my son is in Florida.  I have full custody of my

4    daughter that's currently with my girlfriend.

5              MR. MUHLENKAMP:    Okay.  So one of your kids is

6    here in Missouri and one is in Florida.  Right?

7              THE DEFENDANT:   Yes.

8              MR. MUHLENKAMP:    Do you provide financial

9    support for your kids?

10             THE DEFENDANT:    I provide financial support for

11   both, yes.

12             MR. MUHLENKAMP:    Okay.

13             THE DEFENDANT:    I'm a full-time father of my

14   daughter, sir.

15             MR. MUHLENKAMP:    I understand.  That's why I

16   asked.  Okay?  And you're currently working -- how many

17   hours a week are you working at the temp agency, sir?

18             THE DEFENDANT:    Currently -- they just stopped

19   it.  First I was working about twenty-five to twenty hours

20   a week.  They just stopped it due to one of -- no, two

21   people having Covid.

22             MR. MUHLENKAMP:    Okay.  So you've still got your

23   job, but the hours are a little amuck because of the

24   pandemic.  Right?

25             THE DEFENDANT:   Yes, sir.

8

1           MR. MUHLENKAMP:   Okay.  Do you have any money to

2    post a bond or hire a private attorney?

3           THE DEFENDANT:   I have family members that can

4    possibly help me.  But, no.  Myself, no.

5           MR. MUHLENKAMP:   Have you had a chance to talk

6    to any of your family members to see what they can come up

7    with?

8           THE DEFENDANT:   Just -- no bond.  No.  No.  I

9    didn't -- I didn't -- wasn't -- I was told that I had no

10   bond, so, I told them at this point I don't know what they

11   could possibly do, with me not having a bond.

12          MR. MUHLENKAMP:   Okay.  Fair enough.  If the

13   Court does grant you a bond, you're going to have to stay

14   away from that 7-Eleven on Gravois.

15          Is that understood?

16          THE DEFENDANT:   Yes, sir.

17          MR. MUHLENKAMP:   Like, serious, you cannot go to

18   that 7-Eleven.

19          You understand that, right?

20          THE DEFENDANT:   I know.  Yes, sir.  I not really

21   gone back since then.

22          MR. MUHLENKAMP:   Well, fair enough.  The Court

23   probably is going to want you to be on electronic monitor

24   if they let out of jail, too.  Would you be okay with

25   that, being on house arrest?

9

1          THE DEFENDANT:   Yes, sir, I would.

2          MR. MUHLENKAMP:   You're also not going to be

3    allowed to possess any guns, which you can't possess guns

4    anyway, you're a convicted felon.

5          You understand that, right?

6          THE DEFENDANT:   I do.

7          MR. MUHLENKAMP:   Okay.  What I want you to do

8    now is just stand there and listen closely.  I'm going to

9    make an argument for the Judge.  We're going -- we're

10    going to find something out here relatively quickly.

11          Regardless of what the Judge does on your bond,

12    you need a lawyer moving forward.  So please fill out the

13    paperwork for the public defender.  Ask the jailer for it

14    nicely, they'll hand it to you, make sure you get that

15    filled out.  Okay?

16          THE DEFENDANT:   Okay.

17          MR. MUHLENKAMP:   All right.  Thank you, Mr.

18    Warren.  Judge, are you ready, sir?

19          THE COURT:   I'm ready.  Hit me.

20          MR. MUHLENKAMP:   Thank you, Your Honor.

21          Judge, I just want to point out we're dealing with

22    a Class D and a Class E felony.  Again, these are charges

23    that a lot of times traditionally end up in granting

24    probation anyway at the end of the case.  That being the

25    case -- I get there's some aggravators here, but I think we

10

Dixon 20659

1    could address those with special conditions of the bond.

2    Specifically I think a GPS monitor makes sense, with house

3    arrest, requiring him to report to his job, requiring him to

4    live with his father at that address on Kemper.  No bond on

5    a Class D and a Class E felony seems a little -- little

6    severe, Judge.

7           This looks like it's going to end up being a PD

8    and a Bail Project case.  I ask for something in the range

9    of $10,000 with ten percent authorized.  That way the Bail

10   Project can potentially get this man out of jail, on his

11   behalf, get him back to work so he can support his kids.

12          I do want to point out, too, on the robbery, it is

13   about ten years old.  It appeared that he did walk down his

14   probation, which is a good thing.  Although clearly had a

15   hiccup here.

16          No bond on a D and an E felony seems a little

17   steep, Judge, so I would ask $10,000 with ten percent, house

18   arrest, GPS, no guns, obviously, and any other conditions

19   the Court would deem appropriate.

20          Thank you, sir.

21          THE COURT:   All right.  I'm -- when I look at

22   the prior, it says that he did three years at the

23   Department -- he got an SES on the rob first, but the ACA

24   they gave him three years at DOC.  Which is --

25          MR. MUHLENKAMP:   But he got five years'

11

Dixon 20660

1    probation, so that means he got out and he walked it down.

2    He got one of those city probation ACA deals.

3            THE COURT:   Okay.  That's one way to look at it.

4    All right.

5            MR. MUHLENKAMP:   Well, that's what happened,

6    too, so that's another way to look at it.  So --

7            THE COURT:   Okay.  All right.  So, the Court is

8    going to keep the bond at no bond.

9            I understand your argument, Mr. Muhlenkamp.  This

10    -- when I look at just a possession of firearm, and

11    exhibiting, typically the one -- the types of cases that I'm

12    okay with giving a bond on is somebody waving something in

13    anger, or that type of thing.  But when it's used on

14    multiple citizens and in response to a situation like this,

15    it's exactly what scares the bejesus out of the community.

16            So, the Court is not confident that the community

17    would be safe with Mr. Warren out.  The Court is going to

18    deny the request for modification and keep the bond at no

19    bond.

20            The next court date in here, Mr. Warren, will be

21    next week, July 17th, at noon.  Another judge may take a

22    look at it and see something different, but right now I'm

23    concerned about the safety of the community.

24            And, then, after that, your next court date will

25    be in Division 25, August 12th, at 9:15.

12

1          Good luck, Mr. Warren.

2                    0o0

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

13

1                               CERTIFICATE

2                  I, Renee Lynn Bierman, Certified Court Reporter,

3       do hereby certify that I am an official court reporter for

4       the Circuit Court of the City of St. Louis; that on July

5       10, 2020, I was present and reported all the proceedings

6       had in the case of STATE OF MISSOURI, Plaintiff, vs. TERRY

7       LEE WARREN, JR., Defendant, Cause No. 2202-CR01153.

8                  I further certify that the foregoing pages

9       contain a true and accurate reproduction of the

10      proceedings.

11                 In compliance with Supreme Court Rule 84.18, I

12      certify that the cost of preparing this transcript is as

13      follows:

14

15      14 PAGES @ $4.00 PER PAGE. . . . . . . . . . . $56.00

16

17

18                       /S/RENEE LYNN BIERMAN

19              ------------------------------------------------

20

21              RENEE LYNN BIERMAN, CSR, **CCR #**701

22              22ND JUDICIAL CIRCUIT - CITY OF ST. LOUIS

23                         State of Missouri

24

25

                                                             14

Dixon 20663

# EXHIBIT 144

1              IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
          TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16 B
2                  Honorable Michael Colona, Judge

3
     STATE OF MISSOURI,              )
4                                    )
              Plaintiff,             )
5                                    )
     V.                              )        Cause No. 2022-01479
6                                    )
     ANDRE DAY,                      )
7                                    )
              Defendant.             )
8

9               TRANSCRIPT OF INITIAL APPEARANCE HEARING

10

11        On Friday, November 20, 2020, the above cause came on

12   regularly for hearing before the Honorable Michael Colona,

13   Judge of Division 16 B of the Twenty-Second Judicial Circuit

14   in the City of St. Louis.  The State of Missouri was

15   represented by Natalia Ogurkowitz, Esq., Assistant Circuit

16   Attorney.  The defendant was present via WebEx and was

17   represented by his attorney, Melissa Gorman, Esq.

18

19

20

21

22                        Tamara L. Young
                          CCR, RPR, CSR
23                      Official Reporter

24

25

1

Dixon v. City of St. Louis 20674

```
1                    FRIDAY, NOVEMBER 20, 2020

2              THE COURT:  Hi.  Are you Mr. Day?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  2022-01479, State Missouri versus Andre

5    Day.  Present on video from the Justice Center is Mr. Day.  It

6    looks like we are having this bond hearing within forty-eight

7    hours of his arrest.  Also present in the courtroom for the

8    State of Missouri is Miss Ogurkowitz.

9              Mr. Day, have you had the opportunity to hire a

10   private lawyer in this matter?

11             THE DEFENDANT:  Yes, Mr. Taaffe.

12             THE COURT:  Oh, you have hired Mr. Taaffe?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  Well, when is the last time that

15   you talked to Mr. Taaffe?

16             THE DEFENDANT:  Like two weeks ago, but I had my

17   lady had called him, and yeah, I mean --

18             THE COURT:  Okay.  Well, so when I look at your

19   court file, I don't see that Mr. Taaffe has entered his

20   appearance yet.  Do you want me to continue this for a couple

21   of days and give him the opportunity to get in on your case?

22             THE DEFENDANT:  What that?

23             THE COURT:  What I said is I don't show that

24   Mr. Taaffe is your lawyer on this case.  So do you want me to

25   continue today's hearing to allow Mr. Taaffe the opportunity
```

2

1    to get in on it?

2              THE DEFENDANT:  What case is this?

3              THE COURT:  Give me just a minute here.

4              MS. GORMAN:  I just got off the phone with

5    Mr. Taaffe.

6              THE COURT:  What is going on?

7              MS. GORMAN:  Sir, your family has contacted

8    Mr. Taaffe about your case.  However, they have not formally

9    retained him.  So as of right now, he hasn't been paid to

10   enter on your case, which is why there's no entry of

11   appearance.

12             THE COURT:  Okay.  All right.  So let's do it this

13   way.  Mr. Day, here are your two options.

14             Okay, option number one.  The woman that just was

15   speaking is a private attorney, Miss Melinda Gorman.  I can

16   appoint her to represent you just for today only, just for

17   today's bond hearing, if you want.

18             Or, I can continue this case to Monday of next week

19   to, you know, let your people have some time to get some

20   money to Mr. Taaffe so that he can be here on Monday.  It's up

21   to you.  What do you want to do?

22             THE DEFENDANT:  I will go with the first one.

23             THE COURT:  So you want to have this hearing today?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Okay.  Also present in the courtroom is

3

Dixon v. City of St. Louis 20676

1    Miss Gorman who we will appoint to represent Mr. Day just for

2    today only.

3            So Mr. Day, you should know that there is a court

4    reporter present here in the courtroom.  And she is recording

5    everything that you and I and everybody else says.  So I tell

6    people it's just like you see on the TV.  Anything that you

7    say can and will be used against you.

8            Since we have got a you lawyer for today, I would

9    suggest that you let her do the talking.  If you have got any

10   questions for her, of course, you can ask those questions.  I

11   just remind you that, like they are recording everything you

12   say, so just be mindful not to say nothing that's going to jam

13   you up.

14           So here's the deal.  You asked me what it was that

15   you was charged with, so I am going to tell you what you are

16   charged with.  You are charged with delivery of a controlled

17   substance, which is a Class C felony here in the State of

18   Missouri.

19           The range of punishment on that, Miss Gorman, is

20   what?

21           MS. GORMAN:  I am sorry.  You said it was a Class C.

22           That would be from three to ten years in the

23   Department of Corrections, Your Honor; or a fine of up to, I

24   believe it's ten or twenty thousand dollars.

25           THE COURT:  Twenty thousand dollars.  Sometimes I

                                                                4

Dixon v. City of St. Louis 20677

```
 1   get stuck on pre-2016 reform.

 2           All right.  So you heard the range of punishment on

 3   that, Mr. Day.  What they are saying you did is back on

 4   January 28 of 2020 here in the City of St. Louis, you, with

 5   the intent to distribute, knowingly possessed Fentanyl, a

 6   controlled substance, knowing of it's presence and nature.

 7           So I am going to enter a plea of not guilty for you.

 8           And let me say what your current bond setting is.

 9   Well, as soon as I get to it.

10           MS. GORMAN:  Your Honor, it's currently on no bond

11   per Judge Peebles.

12           THE COURT:  Your current bond is no bond.  I know

13   you can't make a bond on no bond.  So let me check a box to

14   tell you what that is.

15           So here's the deal.  Today we are going to have a

16   fairly brief conversation about can we agree to do something

17   else with your bond, or is there something I think is

18   appropriate for your bond.  If we don't, if I leave your bond

19   at no bond today, or if you can't post a bond that I give you

20   later today, your next court hearing will be November 25th at

21   noon.  And that's going to be another bond hearing with

22   another lawyer.  I am sorry, another judge.  And then after

23   that, looks like we will get you a court date in Division 25

24   that you are going to be assigned to on January the 13th at

25   9:00 am.
```

5

Dixon v. City of St. Louis 20678

```
 1                So, Mr. Day, if I was to give you a cash money bond
 2      today, could you afford to post it?  And if so, how much?
 3                THE DEFENDANT:  I think a hundred.  Around five
 4      hundred, I say.
 5                THE COURT:  What did you say?  I am sorry.
 6                THE DEFENDANT:  Three hundred to five hundred.
 7                THE COURT:  Okay.
 8                THE DEFENDANT:  GPS.
 9                THE COURT:  Let me make sure that I have a handle on
10      everything that's going on.  Does Mr. Day have four pending
11      felony cases?
12                MS. GORMAN:  Just has one, Your Honor.  That's
13      currently in front of Beth Hogan, set for another WebEx
14      hearing set in one week.  Looks like he received a personal
15      recognizance from Judge Clark and was ordered to report to
16      EMAS, but if you look at the PC statement, which did this,
17      might be a little bit confusing.  It looks like he was -- they
18      were trying to arrest him for a warrant on the case I just
19      mentioned at the time that this incident would have occurred.
20      Or there might be two county cases, Judge.  Those are traffic
21      cases it looks like.
22                THE COURT:  Yeah.
23                Mr. Day, let me tell you what's going on here.  When
24      you got picked up, you sat down with some of our pretrial
25      people, and they filled in some blanks on the questionnaire
```

6

1    here.  It looks like you have got some cases from St. Louis

2    County.  When I first look -- well, seriously, you have got

3    two cases in St. Louis County from back in the day.  To be

4    real, it's driving without a valid license and driving without

5    insurance.

6              MS. GORMAN:  He also has a stealing case that's

7    open.

8              THE COURT:  I am not done.

9              MS. GORMAN:  Sorry about that.

10             THE COURT:  Thank you.

11             Also looks like you have got a stealing misdemeanor

12   case that you didn't come to court on, that you still haven't

13   come to court on, so it's still out there.  Then it does look

14   like you have got 2020, you have got a case with Judge Hogan

15   here, which looks like it's probably another C felony drug

16   case, gun, put you on a personal recognizance.  Then I guess

17   you picked up this case while you was out on a personal

18   recognizance.  Also looks like the Feds want to see you.

19             Well, Miss Gorman, is there anything that you can

20   say within the next thirty seconds that will convince me to do

21   anything other than hold this defendant until his next bond

22   hearing?

23             MS. GORMAN:  Yes, judge.  I am going to at least

24   attempt.

25             THE COURT:  Go ahead.

7

```
 1              MS. GORMAN:  This is not a crime of violence.  This
 2    is a dope case.  It looks like the defendant is working with
 3    Mr. Taaffe's office to try to retain private counsel to handle
 4    his business.  And if you give him the cash bond that he is
 5    asking for, and the Feds truly do want to talk to him, then
 6    the marshals will pick him up before he is able to make that
 7    bond.  And chances are he'll be in another detention hearing
 8    in front of another judge.
 9              THE COURT:  He doesn't go to court on his --
10    misdemeanor court in the County when he's out on bond.  He has
11    committed other crimes, St. Louis County.  To be in complete
12    fairness he is a hot mess since March.  So maybe he just
13    didn't know.
14              All right.  So here's what we are going to do,
15    Mr. Day.  You know, I can do a couple of things today.  I can
16    change your bond.  I can not change your bond.  I can find
17    that you are so dangerous to everybody in the world that we
18    are going to keep you until you get another hearing or your
19    trial.  I am not going to do that.  But, I am not going to
20    change your bond.  I am not going to make any other findings,
21    though, so that works to your advantage.  Like I said earlier,
22    I am going to get you another bond hearing in front of a
23    different judge on November 25th at twelve noon.  And if
24    Mr. Taaffe is in on it by then, you know, he'll be here and
25    take care of it for you.  If not, we'll appoint another lawyer
```

8

Dixon v. City of St. Louis 20681

1    to represent you again.  And at that time, on the 25th, that

2    judge will spend some more time going into those things that

3    Miss Gorman was talking about, because she might be absolutely

4    correct.  But the purpose of this hearing is just supposed to

5    be short and sweet to see if we can come to an agreement, or

6    something so crazy like get you a bond and get you out of

7    here.

8            At that 25th hearing is when they will dig into what

9    happened with this case, what's going on with the other case,

10   you have got a job, that type of a thing.  So we'll get you

11   set for next Wednesday at noon, and then get you in Division

12   26 on January the 13th at 9:00 a.m.  All right.  Thank you.

13           Make it Division 25.

14

15

16

17

18

19

20

21

22

23

24

25

9

Dixon v. City of St. Louis 20682

1    STATE OF MISSOURI      )
                            )          SS.
2    COUNTY OF ST. LOUIS    )

3

4

5

6        I, TAMARA L. YOUNG, Certified Court Reporter, hereby

7    certify that I was the official court reporter for Division 16

8    B of the Circuit Court of the City of St. Louis; that on

9    Friday, November 20, 2020, I was present and reported all the

10   proceedings had in the case of STATE OF MISSOURI, Plaintiff,

11   vs. ANDRE DAY, Defendant, Cause No. 2022-01479; and I further

12   certify that the foregoing pages contain a true and accurate

13   reproduction of the proceedings.

14

15

16          I certify that the cost of preparing this transcript

17   is as follows:

18

19      10 pages @ $4.00 per page ............ $40.00 TOTAL

20

21

22                                    /Tamara L. Young/ CCR, RPR, CSR

23                                    Official Court Reporter

24                                    CCR No. 0348

25

10

Dixon v. City of St. Louis 20683

# EXHIBIT 145

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS

STATE OF MISSOURI
Honorable Michael W. Noble, Judge

STATE OF MISSOURI,           )
                             )
              Plaintiff,     )
                             )
    vs.                      )   Cause No. 2022-CR01153
                             )
TERRY LEE WARREN, JR.,       )
                             )
              Defendant.     )

INITIAL BOND HEARING APPEARANCE

On the 10th day of July, 2020, the

above-entitled cause came on regularly for bond hearing

before the Honorable Michael Noble, Judge of Division 16B

of the Twenty-Second Judicial Circuit in the City of St.

Louis.

The State of Missouri was represented by Mac

Callanan, Assistant Circuit Attorney.

The Defendant was present via video and was

represented by Anthony Muhlenkamp.

*RENEE LYNN BIERMAN, CCR, CSR*
*OFFICIAL COURT REPORTER*
*CITY OF ST. LOUIS CIRCUIT COURT*
*TWENTY-SECOND JUDICIAL CIRCUIT*

1          THE COURT:    We're on the record for the initial

2     appearance of Mr. Terry Warren, Cause Number 2022-CR01153.

3     Mr. Warren is appearing on video from the Justice Center.

4     Mr. Mac Callanan is appearing on video for -- on behalf of

5     the State.  And Mr. Tony Muhlenkamp is appearing, for the

6     limited purposes of this hearing, on video as well.

7               So, Mr. Warren, we're going to do a couple things.

8     One, I don't think I said this, but my name is Judge Noble.

9     I'm one of the judges here in the 22nd Circuit.  I'm

10    sitting in 16B this week.

11              This is your initial appearance, so we're going to

12    go over your charges and your conditions of release.  If you

13    are not released today, then they'll bring you back in one

14    week and you will have another judge take a peek at it, and

15    he or she may make a different decision than I make.

16              So, first thing I want you to understand is you

17    have the right to remain silent.

18              Do you understand that?

19              THE DEFENDANT:   Yes.

20              THE COURT:    And you understand that anything you

21    say may be used against you.

22              Do you understand that?

23              THE DEFENDANT:   Yes.

24              THE COURT:    All right.  So, when I do ask you

25    questions, I'm only going to ask you questions about you

2

1    as a person.  I do not want to know anything about the

2    case.

3                    Do you understand?

4                    THE DEFENDANT:   Yes.

5                    THE COURT:   All right.  So, do you understand

6    you are charged with unlawful possession of a firearm,

7    which is a D felony, and unlawful use of a weapon,

8    Subsection 4, exhibiting, which is an E felony.

9                    Do you understand that?

10                   THE DEFENDANT:   Yes.

11                   THE COURT:   All right.  Wow, none of the

12   official appearances are on -- all right.  So, I'm going

13   to go -- they filled out an exhibit for 16B, so I'm going

14   to go over some information with you, Mr. Warren.  Okay?

15                   THE DEFENDANT:   Okay.

16                   THE COURT:   All right.  It says here that you

17   are -- all right.  That you have one prior from 2011,

18   which is a rob first, ACA, and you ended up doing three

19   years in the Department of Corrections.

20                   Is that correct?

21                   THE DEFENDANT:   Yes.

22                   THE COURT:   And, on this case, your current bond

23   is -- oh, let me see what he did.  Looks like it's no bond

24   allowed.  All right.  Huh.  Did you do an interview with

25   anybody -- hold on.  Wait.  Oh, I see it.  Never mind.

3

1    Here we go.

2              All right.  You're twenty-six years old, you stay

3    on Kemper Avenue?  Or Kemper --

4              THE DEFENDANT:   Yes, sir.

5              THE COURT:    So do you stay at Kemper, or do you

6    stay at Illinois?

7              THE DEFENDANT:    Me and my girlfriend live on

8    Illinois.  My dad stay on Kemper.

9              THE COURT:    Okay.

10             THE DEFENDANT:    Me and my girlfriend just

11   recently got a house on Illinois.

12             THE COURT:    Got it.  All right.  Single, two

13   kids.  You're currently working at a temp agency?

14             THE DEFENDANT:    Yes, sir.  I --

15             THE COURT:    Hold on one second.  Hold on one

16   second.  Looks like you -- you got a gunshot, and you had

17   a broken collar bone.

18             THE DEFENDANT:    I do.

19             THE COURT:    All right.  You have no mental

20   health issues?

21             THE DEFENDANT:    I don't.

22             THE COURT:    Looks like you may abuse marijuana

23   and alcohol.

24             THE DEFENDANT:    I have.

25             THE COURT:    All right.  Looks like you don't

                                                          4

1    have a lot of money.  Is that fair to say?

2            THE DEFENDANT:    Correct.

3            THE COURT:    All right.  Based on your financial

4    report, you receive some TANF, about two hundred

5    thirty-four bucks a month, but you don't have anything but

6    maybe a hundred bucks in the bank.

7            So the Court is going to make a determination that

8    you are indigent, and the public defenders are appointed

9    pursuant to Rule 31.02.  That's about it.  Let me look at

10   the probable cause statement.

11           All right, Mr. Callanan, is there a victim

12   statement on this one?

13           MR. CALLANAN:    There is not a victim impact

14   statement, Your Honor.

15           THE COURT:    Okay.  What's your argument on why

16   the bond should remain no bond?

17           MR. CALLANAN:    Your Honor, our position -- Yes,

18   Your Honor.  Our position is that the bond should remain

19   no bond in this particular case.  We see an escalation

20   where he was evicted from the property -- not evicted, but

21   he was told -- he was ejected from the property, and he

22   comes back, Your Honor, this time with a firearm, where he

23   points it not only at the security guard, but he goes up

24   to several windows of cars that are occupied and taps in a

25   threatening manner on those vehicles, Your Honor.  So, he

5

1    showcased that he's not a danger just to one person, but

2    multiple people who were in that parking lot, Your Honor.

3           This is someone who previously had a robbery

4    first, Your Honor, a felon in possession of a firearm again,

5    Your Honor, and he did time on that robbery first.

6           And if you look at the probable cause, too, when

7    that security guard comes out to try and deescalate the

8    situation at the property again, second time that day, he

9    says he's going to beat his ass, and he points the weapon at

10   him several times.

11          I don't think that there are any conditions, Your

12   Honor, monetary or otherwise, that would ensure the safety

13   of the community.  I think we have a felon in possession of

14   a firearm who is pointing it at several people, Your Honor,

15   in a threatening manner.

16          He's a clear danger to the community, and I'd ask

17   you to keep it at no bond.  Thank you.

18          THE COURT:   All right, Mr. Muhlenkamp, if you

19   want to talk to your client, you can.

20          MR. MUHLENKAMP:   We would waive formal reading

21   and enter a plea of not guilty for Mr. Warren.  And can I

22   inquire now?

23          THE COURT:   You can.

24          MR. MUHLENKAMP:   Thank you.  Can you hear me

25   okay?

6

1              THE DEFENDANT:   I can.

2              THE COURT:    Okay.  Please keep your voice up.

3    As the Court indicated, my name is Tony Muhlenkamp.  The

4    Court has appointed me to represent you for today's

5    purposes only.  My job is to make sure the Judge gets

6    reliable and accurate information so he can assess your

7    bond, as far as whether to change it or not change it.

8    Okay?

9              So what I'm going to do is I'm going to ask you

10   some questions about your background.  I'm not going to ask

11   you about the facts of the case.  Please do not volunteer

12   anything about the facts of the case.  You'll get a chance

13   to do that later with a different attorney.  Okay?

14             THE DEFENDANT:   Okay.

15             MR. MUHLENKAMP:   Okay.  So please just keep your

16   voice up and tell me the truth.  Is that good?

17             THE DEFENDANT:   All right.

18             MR. MUHLENKAMP:   Okay.  You indicated that you

19   would live on Illinois if you got released.  Right?

20             THE DEFENDANT:   No.  I will be living at my

21   father house at 4940 Kemper.

22             MR. MUHLENKAMP:   Oh, you're going to live with

23   your dad and not your girlfriend?

24             THE DEFENDANT:   Not my girlfriend, no.

25             MR. MUHLENKAMP:   Okay.  I see here you have two

7

1    children.  Your children live with your girlfriend?

2              THE DEFENDANT:    My daughter is kind of -- my son

3    -- my son is in Florida.  I have full custody of my

4    daughter that's currently with my girlfriend.

5              MR. MUHLENKAMP:    Okay.  So one of your kids is

6    here in Missouri and one is in Florida.  Right?

7              THE DEFENDANT:  Yes.

8              MR. MUHLENKAMP:    Do you provide financial

9    support for your kids?

10              THE DEFENDANT:    I provide financial support for

11    both, yes.

12              MR. MUHLENKAMP:    Okay.

13              THE DEFENDANT:    I'm a full-time father of my

14    daughter, sir.

15              MR. MUHLENKAMP:    I understand.  That's why I

16    asked.  Okay?  And you're currently working -- how many

17    hours a week are you working at the temp agency, sir?

18              THE DEFENDANT:    Currently -- they just stopped

19    it.  First I was working about twenty-five to twenty hours

20    a week.  They just stopped it due to one of -- no, two

21    people having Covid.

22              MR. MUHLENKAMP:    Okay.  So you've still got your

23    job, but the hours are a little amuck because of the

24    pandemic.  Right?

25              THE DEFENDANT:    Yes, sir.

8

1          MR. MUHLENKAMP:    Okay.  Do you have any money to

2    post a bond or hire a private attorney?

3          THE DEFENDANT:    I have family members that can

4    possibly help me.  But, no.  Myself, no.

5          MR. MUHLENKAMP:    Have you had a chance to talk

6    to any of your family members to see what they can come up

7    with?

8          THE DEFENDANT:    Just -- no bond.  No.  No.  I

9    didn't -- I didn't -- wasn't -- I was told that I had no

10   bond, so, I told them at this point I don't know what they

11   could possibly do, with me not having a bond.

12         MR. MUHLENKAMP:    Okay.  Fair enough.  If the

13   Court does grant you a bond, you're going to have to stay

14   away from that 7-Eleven on Gravois.

15         Is that understood?

16         THE DEFENDANT:    Yes, sir.

17         MR. MUHLENKAMP:    Like, serious, you cannot go to

18   that 7-Eleven.

19         You understand that, right?

20         THE DEFENDANT:    I know.  Yes, sir.  I not really

21   gone back since then.

22         MR. MUHLENKAMP:    Well, fair enough.  The Court

23   probably is going to want you to be on electronic monitor

24   if they let out of jail, too.  Would you be okay with

25   that, being on house arrest?

9

1          THE DEFENDANT:   Yes, sir, I would.

2          MR. MUHLENKAMP:   You're also not going to be

3    allowed to possess any guns, which you can't possess guns

4    anyway, you're a convicted felon.

5          You understand that, right?

6          THE DEFENDANT:   I do.

7          MR. MUHLENKAMP:   Okay.  What I want you to do

8    now is just stand there and listen closely.  I'm going to

9    make an argument for the Judge.  We're going -- we're

10   going to find something out here relatively quickly.

11         Regardless of what the Judge does on your bond,

12   you need a lawyer moving forward.  So please fill out the

13   paperwork for the public defender.  Ask the jailer for it

14   nicely, they'll hand it to you, make sure you get that

15   filled out.  Okay?

16         THE DEFENDANT:   Okay.

17         MR. MUHLENKAMP:   All right.  Thank you, Mr.

18   Warren.  Judge, are you ready, sir?

19         THE COURT:   I'm ready.  Hit me.

20         MR. MUHLENKAMP:   Thank you, Your Honor.

21         Judge, I just want to point out we're dealing with

22   a Class D and a Class E felony.  Again, these are charges

23   that a lot of times traditionally end up in granting

24   probation anyway at the end of the case.  That being the

25   case -- I get there's some aggravators here, but I think we

10

1    could address those with special conditions of the bond.

2    Specifically I think a GPS monitor makes sense, with house

3    arrest, requiring him to report to his job, requiring him to

4    live with his father at that address on Kemper.  No bond on

5    a Class D and a Class E felony seems a little -- little

6    severe, Judge.

7           This looks like it's going to end up being a PD

8    and a Bail Project case.  I ask for something in the range

9    of $10,000 with ten percent authorized.  That way the Bail

10   Project can potentially get this man out of jail, on his

11   behalf, get him back to work so he can support his kids.

12          I do want to point out, too, on the robbery, it is

13   about ten years old.  It appeared that he did walk down his

14   probation, which is a good thing.  Although clearly had a

15   hiccup here.

16          No bond on a D and an E felony seems a little

17   steep, Judge, so I would ask $10,000 with ten percent, house

18   arrest, GPS, no guns, obviously, and any other conditions

19   the Court would deem appropriate.

20          Thank you, sir.

21          THE COURT:   All right.  I'm -- when I look at

22   the prior, it says that he did three years at the

23   Department -- he got an SES on the rob first, but the ACA

24   they gave him three years at DOC.  Which is --

25          MR. MUHLENKAMP:   But he got five years'

11

1    probation, so that means he got out and he walked it down.

2    He got one of those city probation ACA deals.

3           THE COURT:    Okay.  That's one way to look at it.

4    All right.

5           MR. MUHLENKAMP:   Well, that's what happened,

6    too, so that's another way to look at it.  So --

7           THE COURT:    Okay.  All right.  So, the Court is

8    going to keep the bond at no bond.

9           I understand your argument, Mr. Muhlenkamp.  This

10   -- when I look at just a possession of firearm, and

11   exhibiting, typically the one -- the types of cases that I'm

12   okay with giving a bond on is somebody waving something in

13   anger, or that type of thing.  But when it's used on

14   multiple citizens and in response to a situation like this,

15   it's exactly what scares the bejesus out of the community.

16          So, the Court is not confident that the community

17   would be safe with Mr. Warren out.  The Court is going to

18   deny the request for modification and keep the bond at no

19   bond.

20          The next court date in here, Mr. Warren, will be

21   next week, July 17th, at noon.  Another judge may take a

22   look at it and see something different, but right now I'm

23   concerned about the safety of the community.

24          And, then, after that, your next court date will

25   be in Division 25, August 12th, at 9:15.

12

Dixon v. City of St. Louis 20842

1          Good luck, Mr. Warren.

2                    0o0

13

1               CERTIFICATE

2          I, Renee Lynn Bierman, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on July

5    10, 2020, I was present and reported all the proceedings

6    had in the case of STATE OF MISSOURI, Plaintiff, vs. TERRY

7    LEE WARREN, JR., Defendant, Cause No. 2202-CR01153.

8          I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11          In compliance with Supreme Court Rule 84.18, I

12   certify that the cost of preparing this transcript is as

13   follows:

14

15   14 PAGES @ $4.00 PER PAGE. . . . . . . . . . . $56.00

16

17

18               /S/RENEE LYNN BIERMAN

19          -----------------------------------------------

20

21          RENEE LYNN BIERMAN, CSR, **CCR #**701

22             22ND JUDICIAL CIRCUIT - CITY OF ST. LOUIS

23                   State of Missouri

24

25

                                                    14

# EXHIBIT 146

1

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

**STATE OF MISSOURI**,      )
                            )
               Plaintiff,   )
                            )
               vs.       )   Cause No. 2022-CR01520
                            )
                            )   Division No. 16B
                            )
**CORVELL J. WRAGGS**, **JR**.       )
                            )
             Defendant. )

**FIRST APPEARANCE HEARING**
September 9, 2020

**ROSS GIPSON**
  Assistant Circuit Attorney
  1114 Market Street
  St. Louis, MO  63101
        on behalf of the State;

**TERENCE W. NIEHOFF**
  St. Louis, MO  63104
        on behalf of the Defendant.

**LAURIE A. BENNETT, CCR #407**
**OFFICIAL COURT REPORTER**
**CITY OF ST. LOUIS CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**

2

```
1              THE COURT:  This is Cause No. 2022-CR01520.  It's

2       styled State of Missouri versus Corvell Wraggs.

3       Mr. Wraggs appears via video.  Ms. Gorman is here.  She

4       has been appointed to represent Mr. Wraggs for the

5       purposes of this -- I'm sorry, no, you're not.

6              Mr. Niehoff who has entered his appearance on Mr.

7       Wraggs behalf is here, and Mr. Gipson is here from the

8       Circuit Attorney's Office.  We are here to take up Mr.

9       Wraggs' initial appearance.

10             Let's start.  Mr. Niehoff, are there any

11      announcements?

12             MR. NIEHOFF:  Yes, Your Honor.  Mr. Wraggs does

13      know what he has been charged with, and I'll enter a not

14      guilty on his behalf.

15             THE COURT:  Mr. Wraggs, I might ask you some

16      questions today.  If I do, I don't want you to tell me

17      what you did or what you didn't do or what you said or

18      what you didn't say.  I simply might ask you some

19      background questions about whether or not -- like whether

20      you work if I'm trying to figure out what a bond might

21      be.  I might ask you about your income or what kind of

22      property you own or something like that.  But because the

23      circuit attorney is here, I don't want you tell me

24      anything about the case itself.

25             Do you understand that?
```

1          **THE DEFENDANT:**  Yes, sir, I do.

2          **THE COURT:**  I'm sure if you start to do that Mr.

3    Niehoff would jump in any way, but I want you to know

4    ahead of time that you shouldn't do that.

5          All right.  So Mr. Gipson, what's the defendant's

6    bond set at this time?

7          **MR. GIPSON:**  His bond is set at no bond, Your

8    Honor.

9          **THE COURT:**  And what's the state's position on

10   that?

11         **MR. GIPSON:**  Your Honor, the state is asking for

12   no bond in this case.  This was a pretty violent crime.

13   He had an armed criminal action with unlawful use of a

14   weapon from a car, unlawful possession of a firearm.

15         The victim in this case was on his way to visit a

16   friend.

17         **THE COURT:**  Say that again please.  Hold on.  Say

18   that again.  Hold on.  Say that again.

19         The victim in this case was on his way what?

20         **MR. GIPSON:**  The victim was on his way to visit a

21   friend and he got side-tracked.

22         The victim's brother pulled up next to him.  The

23   victim ignored --

24         **THE REPORTER:**  The victim what his brother?

25         **THE COURT:**  The victim what?

4

1          **MR. GIPSON:**  The victim was ignoring his brother

2     who pulled up beside him in the car.

3          **MR. NIEHOFF:**  It's his brother, Your Honor.

4          **MR. GIPSON:**  Uh-huh.

5          **THE COURT:**  Okay.

6          **MR. GIPSON:**  The defendant then shouted, hey, at

7     the brother, and then the brother was still ignoring --

8     the victim was still ignoring.  And then the defendant

9     shot six times at the defendant's (sic) car.  The bullet

10    struck the car twice.  The victim drove off, and bullet

11    fragments were then recovered from the back seat.  So

12    shots fired at the car.

13         We just think that based on these actions that it

14    shows that the defendant is a danger to the community.

15    He obviously knows where the victim lives because they

16    are brothers.  There is no criminal history to speak of

17    in this case, but we just think based on the action and

18    the conduct that it was reckless, it was violent, and we

19    just think that there should be no bail at this time.

20         **THE COURT:**  Mr. Niehoff?

21         **MR. NIEHOFF:**  Well, Judge --

22         **MR. GIPSON:**  I'm sorry, Your Honor and I'm sorry

23    Terry.  There is a victim impact statement.  May I read

24    that at this time?

25         **THE COURT:**  Sure.

Dixon v. City of St. Louis 20848

5

1          **MR. GIPSON:**  Sorry about that.

2          **THE COURT:**  But read it slowly so Laurie can take

3     it down, Mr. Gipson.

4          **MR. GIPSON:**  I will read it slowly.  It says --

5          **MR. NIEHOFF:**  Before you go, Ross, I want to say

6     that I'm objecting to this victim impact statement

7     because it's not by the victim.  It is by the victim's

8     mother who wasn't there and has, you know, has no

9     firsthand knowledge of this.

10          **THE COURT:**  Would she also be the defendant's

11     mother?

12          **MR. NIEHOFF:**  No.

13          **THE COURT:**  Okay.

14          **MR. GIPSON:**  This is from the victim's mother.  It

15     says, "The defendant is my stepson, and he was driving

16     around specifically looking for my son and shot to kill.

17     If he would be released you would be making a big

18     mistake.  And if he is released and anything happens to

19     my son, I will want someone to tell me why.  What if a

20     bullet hit a child in the area?  We never knew the

21     animosity could come to this.  My son does not have a

22     record.  He is doing well in life and is not looking for

23     trouble.  CJ has no education and should not be let out

24     and is not supposed to have a gun.  He keeps getting

25     arrested, released and then caught again with guns and

1    drugs.  What purpose is he serving out here besides

2    committing crimes?  What will it take?"

3         Signed Marnice Smith.

4         **THE COURT:**  Mr. Niehoff?

5         **MR. NIEHOFF:**  Well, Your Honor, I would point out

6    that obviously this is -- you know, Mr. Wraggs, Corvell

7    Wraggs is not a danger to the society at large.  I think

8    the only issue is whether he is a danger to his brother.

9    I would point out that his brother has not even come

10   forward with a victim impact statement, and my

11   understanding is his brother is not even actively

12   involved in the prosecution and does not want to be

13   involved in the prosecution.

14        There was an incident.  I think that it's a

15   question of what happened is in dispute.  I think that

16   unless the co -- or the brother comes forward, I don't

17   see how the state is even going to be able to make a case

18   on this thing.

19        I would ask the Court to consider releasing

20   Mr. Wraggs with house arrest and GPS monitoring with the

21   condition that he have no contact with his brother, the

22   victim in this case.  That way -- because like I said,

23   it's not -- they're not saying Mr. Wraggs is out there

24   robbing people or threatening other people.  The only

25   person who is potentially in danger is his brother.  And

1      like I said, he is not even making a victim impact

2      statement saying he's afraid of his brother or anything

3      along those lines.  And we can keep those two separate

4      with house arrest and GPS.

5           Mr. Wraggs does work.  He actually works two job

6      but, you know, he could work less if it means he has

7      freedom.

8           **THE COURT:**  I disagree.  I don't think we can keep

9      the victim brother in this case safe from Mr. Wraggs'

10     actions with any amount of bond combined with any special

11     conditions including house arrest.  I'm going to deny any

12     request at this time and leave the bond at no bond.

13          The next court date is going to be October 7th at

14     9 o'clock.

15          **MR. NIEHOFF:**  Thank you, Your Honor.

16          **THE DEFENDANT:**  October 7th?

17          **THE COURT:**  Oh, wait.

18          **THE DEPUTY CLERK:**  'Cause he was here yesterday,

19     wasn't he?

20          **THE COURT:**  Oh, yeah.  So your initial appearance

21     is going to be -- I'm sorry your --

22          **MR. NIEHOFF:**  I get another shot next week.

23          **THE COURT:**  You do, and you get that on September

24     16th.

25          **MR. NIEHOFF:**  Okay.  I'm going to have the victim

1    with me next time.

2              **THE COURT:**   There you go.   That might do it right

3    there, Terry.   That's probably what you need to do.

4

5

6              *(End of proceedings.)*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis 20852

CERTIFICATE


   I, Laurie A. Bennett, Certified Court Reporter, do hereby certify that I am an Official Court Reporter for the Circuit Court of the City of St. Louis; that on September 8, 2020, I was present and reported all the proceedings had in the case of STATE OF MISSOURI, Plaintiff, vs. CORVELL J. WRAGGS, JR., Defendant, Cause No. 2022-CR01520

   I further certify that the foregoing 8 pages contain a true and accurate reproduction of the proceedings.


/s/ Laurie A. Bennett

_____

LAURIE A. BENNETT CCR #407

# EXHIBIT 147

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                           ) | No. 2022–CR01201 |
| ) | |
| ██████████  ) | |
| ) | |
| Defendant.   ) | |

———————————————————————————————

**TRANSCRIPT OF HEARING**

———————————————————————————————

On July 29, 2020, the above–entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty–Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Mia Griffin, ESQ., Public Defender's Office.

SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY–SECOND JUDICIAL CIRCUIT

```
 1                    July 29, 2020

 2          (The proceedings commenced at 12:00 p.m.)

 3          THE COURT:   The record will reflect we are

 4   here in cause No. 2022-CR01201, State of Missouri

 5   vs. ██████████    The record will further reflect

 6   Mr. ██████ is charged with one count of possession of

 7   controlled substance of methamphetamine.

 8                Mr. ██████ the State is charging on

 9   December 10th, 2019, I was on patrol when I saw a Ford

10   Ranger pull into a gas station.  License plate check

11   showed it was registered to a Mercury.  I initiated a

12   traffic stop on the vehicle and came into contact with

13   ██████████ as the driver.

14                Computer check revealed he had warrants out

15   for his arrest.  I arrested him and searched the

16   vehicle where I found a baggy of white crystal

17   substance in the driver's side door.  ██████ said it

18   was ice.  Lab analysis of the substance revealed it to

19   be methamphetamine.

20                A warrant is requested due to the belief

21   that this defendant is a danger to the safety of the

22   public.  He has multiple pending cases and has proven

23   he will reoffend out on bond.

24                It shows that you have pending

25   cause No. 19SL-CR07461, possession of controlled
```

1    substance out of St. Louis County.  1922-CR03928-01, a

2    receiving stolen property from St. Louis City.

3    2022-CR0199-01, burglary second, eight counts,

4    stealing felony eight count, property damage second.

5    Cause No. 2022-CR00310-01, burglary second, stealing

6    misdemeanor.  2022-CR000972, burglary second, three

7    counts stealing felony, three counts property damage

8    in the second, three counts.  2022-CR00313-01,

9    burglary second times 31 counts, stealing felony times

10   31 counts, property damage times 31 counts.  Cause

11   number 1922-CR03792-01, possession of a controlled

12   substance drug paraphernalia, that you have a prior

13   conviction for tampering with service where you

14   received a five-year SES and was revoked and sent to

15   the penitentiary in cause No. 2194R-01618-01.

16          The record will further reflect the Court

17   has reviewed Exhibit 16B which appears to show the

18   same pending cases that I mentioned.  It also list two

19   additional felony convictions to those that I

20   mentioned.  States that you were living with your

21   fiancee.  That you are a ███████████████ and

22   make approximately $850 a month.  That you have no

23   physical condition, mental health condition or alcohol

24   or drug abuse concerns.

25          Does the State have anything further?

1          **MR. HEITMAN:**  Nothing further.  I would just

2    emphasize the number of pending cases and reiterate

3    that I request no bond.

4          **THE COURT:**  Anything on behalf of defendant?

5          **MS. GRIFFIN:**  Yes, Judge.

6          Hi, Mr. ████████  I'm stepping in for

7    Ms. Lannert.  She informed me that the current charges

8    for possession of a controlled substance, as you

9    stated, are from December just been charged on

10   June 26th.  Prior to pending charge for this, he has

11   been out on GPS.  He has had only one bond violation

12   which was cleared at the time.  His child was sick so

13   he stayed at the hospital and was unable to charge his

14   GPS.  He was able to provide EMASS with those

15   hospitalized records.  Again, that was cleared.

16         He is on GPS.  He has been compliant and

17   Ms. Lannert has been in contact with Mr. ████████   In

18   addition, he has been approved for the circuit

19   attorney's drug classes in regards to this charge.  He

20   has already attended his first class.  He missed this

21   Monday's class because he was in custody, but he

22   intends to attend all the cases so that the charges

23   may be dropped.

24         In addition, last week he appeared in

25   Division 26 through video.  So as a result we would

1    request that he be back on his GPS bond and be

2    required to comply with bond conditions that he was

3    previously on.

4         **THE COURT:**  The Court finds considering

5    Missouri Supreme Court 33.01 generally, and as

6    specifically applied to this defendant that the

7    defendant presently has one, two, three, four, five,

8    six, seven pending felony cases with over 50 felony

9    counts and therefore poses a danger to the community

10   and the bond will remain at no bond.  That will

11   conclude the record.

12        (Proceedings were concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2               I, Sherry L. Gantner, Certified Court

 3   Reporter, do hereby certify that I am an official

 4   court reporter for the Circuit Court of the City of

 5   St. Louis; that on July 29, 2020, I was present and

 6   reported all the proceedings had in the case of STATE

 7   OF MISSOURI, Plaintiff, vs. ███████████  Defendant,

 8   Cause No. 2022-CR01201.

 9

10               I further certify that the foregoing

11   pages contain a true and accurate reproduction of the

12   proceedings.

13

14            _/S/Sherry Gantner_____

15            Sherry L. Gantner, CCR 839
                  RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23   TRANSCRIBED:  January 6, 2021

24

25
```

# EXHIBIT 148

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

**STATE OF MISSOURI,**    )
                          )
           Plaintiff,    )
                          )
v.                      )  No. 2022–CR01338
                          )
██████████    )
                          )
          Defendant.    )
_____

**TRANSCRIPT OF HEARING**
_____


On July 31, 2020, the above–entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty–Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by James Heitman, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Tony Muhlenkamp, ESQ., Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY–SECOND JUDICIAL CIRCUIT

**INDEX**

**JULY 31, 2020**

Direct Examination By Mr. Muhlenkamp . . . . . . . 5

Reporter's Certificate                                        13

1            July 31, 2020

2        (The proceedings commenced at 12:00 p.m.)

3        **THE COURT:**  The record will reflect we are

4  here in cause No. 2022-CR01338, State of Missouri

5  vs. ███████████   The record will further reflect

6  Mr. █████ is present via video camera from the Justice

7  Center due to COVID-19.

8            Mr. █████  Mr. Muhlenkamp is waving at you.

9  He is a private attorney that is here to represent you

10  in terms of the bond for today only.

11            The State is present by Assistant Circuit

12  Attorney James Heitman.  The State is charging that

13  the victim reported he was stabbed by the defendant

14  after the defendant showed up at his house and started

15  an altercation.  A next door neighbor witnessed the

16  stabbing and said that the defendant pushed the victim

17  down the stairs and then started kicking the victim,

18  pulled out a knife and began stabbing the victim while

19  he was on the ground.  The victim had stab wounds to

20  his face, chest, legs and went to Barnes Hospital for

21  stitches.

22            The victim positively identified the

23  defendant in a photo lineup and reported this is the

24  second time the defendant has assaulted him.  The

25  defendant was interviewed and at first denied being

1   involved and then later admitted to stabbing the

2   victim, but claimed he only stabbed him in the leg a

3   couple times and that it was in self-defense.

4           It is worth noting the victim's version was

5   corroborated by the next door neighbor statement that

6   victim was pushed down the stairs by the defendant,

7   kicked and then stabbed.

8           You are charged with assault in the first

9   degree, which is a Class A felony with a range of

10  punishment anywhere from ten years up to life

11  imprisonment with a mandatory serving of 85 percent,

12  and armed criminal action which is an unclassified

13  felony with a range of punishment beginning at every

14  day of three years up to 30 years or life

15  imprisonment.

16          The probable cause also states:  I believe

17  the defendant is a danger to the community due to his

18  extensive criminal history.  Some of his convictions

19  include robbery in the first degree, guilty June 21,

20  1996, seven years department of corrections.  Robbery

21  2nd degree and burglary first degree, guilty date

22  unknown, seven years department of corrections.

23  Violating an order of protection, guilty 12-1-2003,

24  one year SES.  Possession of a controlled substance,

25  guilty May 12, 2009, six year DOC.  Assault in the

1   third degree, guilty 5-14-2009, one year in jail.

2   Domestic assault in the second degree, guilty

3   July 15th, 2014, six months SES.

4           The Court has also received, reviewed and

5   takes judicial notice of Exhibit 16B contained in the

6   Court file which was filled out by the pretrial

7   commissioner.

8           It notes the cause numbers for the

9   previously mentioned -- it only list three of them.

10  It says the burglary first and robbery second was

11  cause No. 94CR-00543-01.  The possession of a

12  controlled substance was cause number 08SL-CR07417-01.

13  In cause -- domestic assault second was

14  cause No. 1322-CR05858-01.

15          It states that you have family ties of a

16  sister and that you lived in the community for your

17  life and lists your sister's address.  States you have

18  mental health condition, schizophrenia and seizures.

19  No alcohol or drug abuse issues and no interest in

20  services for either your mental health or your

21  physical condition.

22          It says that are you on Dilantin.  Are you

23  receiving that at the Justice Center, sir?

24          **THE DEFENDANT:**  Yes, ma'am.  Yes, ma'am.

25          **THE COURT:**  Okay.

1          **THE DEFENDANT:**  I am.

2          **THE COURT:**  And you are not on medication

3    for your schizophrenia; is that correct?

4          **THE DEFENDANT:**  They going to give me some.

5          **THE COURT:**  Okay.  You've already seen

6    somebody?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  Okay.

9          It list that you aren't receiving any public

10   assistance.  That you are not currently employed.

11   That you don't have any financial assets.  That you

12   don't have any children.  That you can't pay any bond.

13         Anything further on behalf of the State?

14         **MR. HEITMAN:**  No, Your Honor.  We are simply

15   requesting based on the violent nature of these

16   offenses and the fact this is not the first time he

17   attacked this particular victim, I believe that the

18   defendant still possesses a threat to the victim and

19   community at large so we are asking for no bond.

20         **THE COURT:**  Mr. Muhlenkamp, did you wish to

21   inquire?

22         **MR. MUHLENKAMP:**  Please, Judge.

23                  **DIRECT EXAMINATION**

24   BY MR. MUHLENKAMP:

25      Q.   Mr. ███████ can you hear okay?

 1       A.   Yes, sir, I can.

 2       Q.   Good afternoon, sir.  Like the Judge

 3  indicated, she appointed me to represent you for

 4  today's hearing only, okay?  I'm going to be asking

 5  you some questions about your background.  I'm not

 6  going to ask you about the facts of the case so don't

 7  volunteer anything about that.

 8            But my goal here is I want to make sure the

 9  Judge gets the right information so she can make an

10  informed decision about your bond, okay?

11       A.   Yes, sir.

12       Q.   So just please keep your voice up because we

13  are doing this via video and tell me the truth, okay?

14       A.   Yes, sir.

15       Q.   As you stand there today, do you have any

16  money to post bond in this case at all?  Can you come

17  up with anything?

18       A.   $500.

19       Q.   I'm sorry?  You think you can come up with

20  $500.

21       A.   Uh-huh.

22       Q.   Okay.  If you did make bond, would you still

23  live at ████████████████?

24       A.   Yes, sir.

25       Q.   You live there by yourself, correct?

1          A.   Yes, sir.

2          Q.   If the Court wanted you to wear an ankle

3     monitor so they knew where you were, kind of be on

4     house arrest, I'm assuming you would be okay with

5     that, right?

6          A.   Yes, sir.

7          Q.   If the Court wanted you to have no contact

8     whatsoever with the other individual involved, his

9     name is ██████████, I'm assuming you would be okay

10    with that too, right?

11         A.   Yes, sir.

12         Q.   Okay.  You indicated to the Judge that you

13    are getting your Dilantin for your seizures?

14         A.   Yes, sir.

15         Q.   They are giving that to you at the jail?

16         A.   Yes, sir.

17         Q.   Okay.  I see that you also have -- do you

18    get some services from Barnes-Jewish at the Hopewell

19    Center, Hopewell Clinic?

20         A.   They take my case, medication this week.

21    Appointment September 1st, get my medication.

22         Q.   Are those the folks that kind of monitor

23    your medication and make sure it's right?

24         A.   Yes, sir.

25         Q.   How long have you been going to see those

1  folks?

2       A.   I've been doing it since '07.

3       Q.   Okay.  Here's what I'm going to do, I don't

4  have any additional questions for you, okay?  I am

5  going to make an argument to the Judge and see if I

6  can get you a bond set today.  She might grant it, she

7  might not.  Either way, you need a lawyer moving

8  forward, okay?

9            So my recommendation to you, because I can't

10  represent you after today, you need to either hire a

11  private attorney, if you can't afford it, you need to

12  ask at the jail for the public defender paperwork.

13  Fill out that paperwork immediately so one of their

14  attorneys can see you and represent you, okay?

15       A.   Yes, sir.

16       **MR. MUHLENKAMP:**  Thank you, Mr. ██████  Just

17  stand there and listen carefully, okay?

18       **THE DEFENDANT:**  Yes, sir.

19       **MR. HEITMAN:**  Thank you, sir.

20       Judge, are you ready?

21       **THE COURT:**  I am.

22       **MR. MUHLENKAMP:**  Thank you, Your Honor.

23       Judge, I don't dispute any of the stuff that

24  you got out of him when you questioned him initially.

25  That all seems to jive with the paperwork I'm looking

1    at.  The main thing I would stress, this appears that

2    it happened back in February of 2020, about five or

3    six months ago.  The police, based upon the probable

4    cause statement, they seem to be involved

5    relatively -- neighbor was interviewed.  The alleged

6    victim or the victim in the case went to the hospital.

7    They have a lot of information.

8              It appears also that my client was

9    interviewed, gave him a statement, you know, he said

10   acted in self-defense.  He gave his version of what

11   happened.  I'm assuming he was released pending

12   application of warrants and they just let him go.

13   They let him go home.  And that was back in February,

14   back when this allegedly happened.

15             Five months have gone by, nothing has

16   changed in that time from when he was initially let

17   go.  He doesn't appear he picked up any new cases in

18   the prior five to six months.  I realize he does have

19   a history.  It is relatively old though.  The most

20   recent things from 2009 we are talking about assault

21   third degree -- I guess there is a 2014 domestic

22   assault second also.  So it's relatively distant.

23             I guess the main thing I would stress,

24   Judge, he was released pending application of warrant.

25   If he was that big of a threat to the victim, they get

1    these cases charged relatively quickly.

2            I'm not asking for the recog.  I get it's a

3    Class A felony, but something in the neighborhood,

4    probably going to end up being a public defender case

5    and bail project case hopefully.  I would ask for

6    something in the neighborhood of 30,000, 10 percent

7    authorized, maybe 40,000, 10 percent authorized so

8    Mr. ███████ could get an attorney, get his bond posted

9    and defend his case.  Thank you.

10           **THE COURT:**  Anything further on behalf the

11   State, Mr. Heitman?

12           **MR. HEITMAN:**  No, Your Honor.

13           **THE COURT:**  The Court does note that there

14   does seem to be a period of time between the incident

15   and when charges were issued and would ask that at the

16   seven day hearing the State be prepared to speak to

17   that issue.

18           The Court finds pursuant to 33.01 for today,

19   however, and considering each of the provisions

20   generally, and as applied to this defendant, namely

21   that he is unemployed, that he has schizophrenia and

22   another seizures disorder, that he has not only a

23   substantial criminal history of convictions, but

24   substantial violent history of convictions.

25           The Court does have a concern regarding his

1    mental state and whether or not he is on the proper

2    medication for schizophrenia and notes he testified he

3    did have a worker.  And BJC and Hopewell are two

4    different people, Mr. Muhlenkamp.  He has one or the

5    other, but I would like to find out if an attorney

6    representing him can find out who his worker is so we

7    are sure he is on the proper medication.

8              So for today's purposes the Court is going

9    to order the bond remain where it is.  I am going to

10   appoint the public defender.  I put in my order that I

11   do have concerns regarding the mental issue.

12             Mr. ███████  I want you to fill out an

13   application for a public defender because you are

14   going to have another hearing that's longer than the

15   one today seven days from today's date and it's the

16   Court's hope that you have an attorney at that hearing

17   who can speak to and would have spoken with your

18   sister and make sure that you have an alternate home

19   plan where the Court and the victim and the State

20   could not only be assured that you were medically

21   compliant, but that that place was somewhere away from

22   this particular neighbor.  Does that make sense?

23             **THE DEFENDANT:**  Yes, ma'am.

24             **THE COURT:**  So will you fill out an

25   application for public defender?  I already appointed

1    them and I put on there to try to speed up the process

2    of when they come to see you.  You are going to have

3    another hearing one week from today on August 7th, at

4    noon, and then your first court date is September 1st

5    at 9:15.  Okay?

6              **THE DEFENDANT:**  (Nods head.)

7              **THE COURT:**  That will conclude the hearing.

8              (Proceedings were concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2                  I, Sherry L. Gantner, Certified Court

 3      Reporter, do hereby certify that I am an official

 4      court reporter for the Circuit Court of the City of

 5      St. Louis; that on July 31, 2020, I was present and

 6      reported all the proceedings had in the case of STATE

 7      OF MISSOURI, Plaintiff, vs. ██████████ Defendant,

 8      Cause No. 2022-CR01338.

 9

10                  I further certify that the foregoing

11      pages contain a true and accurate reproduction of the

12      proceedings.

13

14               /S/Sherry Gantner

15               Sherry L. Gantner, CCR 839
                      RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23      TRANSCRIBED:  January 6, 2021

24

25
```

# EXHIBIT 149

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                      ) | No. 2022-CR01800 |
| ) | |
| **DEMETRIUS SHEGOG,** ) | |
| ) | |
| Defendant.   ) | |

_____

**TRANSCRIPT OF HEARING**
_____


On October 26, 2020, the above-entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Ken Jones and Chris Clark, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Eric Barnhart, ESQ., Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

**INDEX**

**OCTOBER 26, 2020**

Direct Examination By Mr. Barnhart . . . . . . . . 5

Reporter's Certificate                                    9

Dixon v. City of St. Louis 21001

```
 1                    October 28, 2020

 2         (The proceedings commenced at 12:00 p.m.)

 3         THE COURT:  The record will reflect we are

 4  here in cause No. 2022-CR01800, State of Missouri

 5  vs. Demetrius Shegog.  The record will further reflect

 6  all parties are present via WebEx due to the ongoing

 7  administrative order associated with COVID-19.

 8         The record will further reflect the State is

 9  present by Assistant Circuit Attorney Ken Jones and

10  Chris Clark.  That the defendant is present in person

11  via video and by Eric Barnhart who is waving at you,

12  Mr. Shegog.  Mr. Barnhart has been appointed to

13  represent you for today's hearing only, okay?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  The record will further reflect

16  the Court takes judicial notice of its file and

17  contents and notes Mr. Shegog that you have been

18  charged with unlawful possession of a firearm.

19         The State is alleging that the police

20  officer observed a vehicle driving at a high rate of

21  speed and then subsequently make a right turn without

22  stopping at the stop sign.  I then activated my

23  emergency lights and curbed the vehicle.  Upon making

24  contact with the driver he spontaneously stated that

25  he had a gun.  A computer inquiry revealed the
```

Dixon v. City of St. Louis 21002

1    defendant to be a convicted felon.  Upon seizing the

2    gun it was revealed to be a black Tisas?  Anyone?  I

3    don't know.  A black T-I-S-A-S Zig .45 caliber weapon.

4            On February 23, 2020, the defendant was

5    convicted of robbery in the first degree in

6    cause No. 22001-01699B.  Based on the foregoing and

7    the defendant's violent criminal history, I believe he

8    is a danger to the community.

9            The Court also notes it has received and

10   reviewed Exhibit 16B which is contained in the Court

11   file which notes additional convictions in cause

12   No. 2200101699B, robbery in the first degree, two

13   counts for which the defendant received 20 years --

14   this doesn't make sense, Mr. Barnhart.  I don't know

15   if you have it because it has 20 years confined and

16   then SES four years.  So I'm not sure if he got a 20

17   year SES or --

18           **MR. JONES:**  I think, Your Honor, that it was

19   a four-year SES with a 20-year backup.

20           **THE COURT:**  Well, that doesn't make sense

21   either.  Remember, it would have to be 20 years SES

22   with four years' probation.  So you couldn't have four

23   year SES with 20 years' probation.

24           **MR. JONES:**  I mean the four years is

25   probation.  The 20 years was a sentence that wasn't

1    executed.

2           **THE COURT:**  Okay.  Thank you.  In 1990 in

3    cause No. 00CR-003118, unlawful use of a weapon, a

4    three-year SES with five years probation.  In 2000 in

5    cause No. 0013420, robbery in the second degree and he

6    received 15 years confinement.  In cause            No.

7    011004823, possession of controlled substance for

8    which he received 18 year's confinement.  In 2022 in

9    cause No. 021000145, possession of a controlled

10   substance, 15 years confinement.

11          The defendant indicated he has ties to the

12   community with his mother, his significant other and

13   two children.  He had a failure to appear wanted from

14   2019.  He is unemployed and has no income.

15          The State can proceed.

16          **MR. JONES:**  Your Honor, from defendant's

17   history it seems like he decided to be a criminal and

18   he is driving -- particular stop he was compliant, he

19   was speeding, ran a stop sign on a turn, told the

20   police officer he had a gun.  Police officer finds out

21   that the defendant had an active city warrant.  Of

22   particular concern, despite the fact he is carrying a

23   gun, other than a robbery from 20 years ago, he is

24   simply a felon with a gun which he should not have,

25   but he has warrants that leads the State to believe

Dixon v. City of St. Louis 21004

1    that he probably would not participate in this process

2    if he is allowed to leave today, under any conditions

3    that is, Your Honor.

4            Beyond that, the State doesn't strongly

5    oppose a release, but just he has decided he is going

6    to be a criminal and I don't -- you know, he -- I

7    don't believe he is compliant, he shouldn't be

8    carrying a gun, and if he is released today on a

9    condition -- I mean, condition of being a felon is

10   that he not carry a gun.  If he is released today,

11   whatever conditions he has, the State doesn't have any

12   reason to believe that he would abide by those

13   conditions either.

14           Other than those convictions that you noted

15   for the record, Your Honor, he has numerous traffic

16   offenses and riding Metro Link without paying a fair

17   and driving without insurance.  So I don't think

18   Mr. Shegog has any respect for the administration of

19   justice.  That's all I have.

20           **THE COURT:**  Thank you.  Mr. Barnhart.

21           **MR. BARNHART:**  Thank you, Judge.

22                      **DIRECT EXAMINATION**

23   **BY MR. BARNHART:**

24   Q.   Mr. Shegog, I'm Eric Barnhart.  I'm your

25   attorney for today only.  I'm going to ask you a few

```
 1    questions and try to get your bond reduced.  It looks

 2    like you do seasonal landscape work with your uncle;

 3    is that correct?

 4         A.   Yes.

 5         Q.   And you missed a few days of work and you

 6    are worried about not getting your job back if you

 7    can't get out soon?

 8         A.   Yes.

 9         Q.   Okay.  And you've got four children?

10         A.   Yes, sir.

11         Q.   And you are actively raising them; is that

12    correct?

13         A.   Yes.

14              MR. BARNHART:   Judge, it looks like

15    community resource screening is recommending Mission

16    St. Louis for employment opportunities and mentorship.

17    Recommended employment connection for trade school

18    options, employment for those with a criminal record,

19    recommended Care STL for health insurance and as an

20    asthmatic in need of medication and behavior health

21    services.

22         Q.   (By Mr. Barnhart)  So you got bad asthma,

23    Mr. Shegog?

24         A.   No, sir.

25         Q.   You got some asthma?
```

Dixon v. City of St. Louis 21006

1      A.   Yes.

2      Q.   Can your family afford to post any sort of

3   10 percent bond?

4      A.   No, sir.

5      Q.   Okay.  I think I got what I needed.  Thank

6   you.

7           If you got released would you live -- where

8   would you live at?

9      A.   4111 Taylor.

10      Q.   Who lives there?

11      A.   My girlfriend.

12          **MR. BARNHART:**  All right.  Thank you.

13          Judge, I'm asking for a personal

14   recognizance, report to EMASS, GPS, waive the fees,

15   return back to work, no firearms or weapons of any

16   kind.

17          **THE COURT:**  Court having considered Missouri

18   Supreme Court Rule 33.01 generally and as applied to

19   this defendant finds that this is a weapons offense,

20   that at the time of the offense the defendant had

21   active warrants out for failing to appear in court,

22   that the State has indicated he has a history of

23   failing to appear in court as was indicated by his

24   numerous traffic incidents.

25          The Court notes in regards to public safety

1   the defendant has two prior robbery cases, one of

2   which had two separate victims and has another weapons

3   offense, as well as two drug convictions, and,

4   therefore, does find at this time there is no less

5   restrictive alternative that could either assure the

6   safety of the community or assure that the defendant

7   appeared in court and orders the defendant be detained

8   until his detention hearing.

9           Your detention hearing, sir, will be on

10  November 2, 2020, at nine o'clock in 26 -- never mind.

11          Your next hearing is on November 2nd.  That

12  will conclude the record.

13              (Proceedings were concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3    Reporter, do hereby certify that I am an official

 4    court reporter for the Circuit Court of the City of

 5    St. Louis; that on October 26, 2020, I was present and

 6    reported all the proceedings had in the case of STATE

 7    OF MISSOURI, Plaintiff, vs. DEMETRIUS SHEGOG,

 8    Defendant, Cause No. 2022-CR001800.

 9

10              I further certify that the foregoing

11    pages contain a true and accurate reproduction of the

12    proceedings.

13
                       /S/Sherry Gantner
14    _____

15            Sherry L. Gantner, CCR 839
                  RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23    TRANSCRIBED:  January 6, 2021

24

25
```

Dixon v. City of St. Louis 21009

# EXHIBIT 150

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2022–CR00755–01 |
| | ) | |
| **ASHLEY EVANS,** | ) | |
| | ) | |
| Defendant. | ) | |

_____

**TRANSCRIPT OF HEARING**
_____


On October 28, 2020, the above–entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty–Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Chris Clark, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by Robert Taaffe, ESQ., Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY–SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 21019

```
 1                     October 28, 2020

 2            (The proceedings commenced at 12:00 p.m.)

 3            THE COURT:  The record will reflect we are

 4   here in cause No. 2022-CR00755-01, State of Missouri

 5   vs. Ashley Evans.  The record will further reflect all

 6   parties are present via WebEx due to the ongoing

 7   administrative orders associated with COVID-19.

 8            The record will further reflect the State is

 9   present by Assistant Circuit Attorney Chris Clark.

10   The defendant is present by Robert Taaffe.

11            Ms. Evans, the State has charged and the

12   grand jury has indicted you on leaving the scene of an

13   accident resulting in a death alleging that on or

14   about February 1, 2020, while driving a black Infinity

15   SUV you struck two individuals, victims EC and QC,

16   while traveling on Cass Avenue.

17            Video surveillance depicts the Infinity

18   striking the victims and pull over where after

19   defendant exits the Infinity for a short time before

20   reentering and driving away.  The defendant was later

21   detained during a traffic stop and brought to central

22   patrol where during a Mirandized interview she stated

23   she was driving the Infinity when it struck the two

24   victims in the accident and left without providing any

25   information to the officers on scene.
```

Dixon v. City of St. Louis 21020

1          Victim EC was pronounced dead at the scene.

2     That is a Class D felony, and we are here -- an at

3     large warrant was issued for your arrest.

4          The Court takes judicial notice of its file,

5     as well as underlying file 2022-CR0755 and its

6     contents.

7          Mr. Taaffe, so you know, the Court has also

8     received and reviewed Exhibit 16B which states that

9     the defendant has no prior convictions.  She has a

10    sister in the area.  She is a lifelong resident of the

11    area.  She is unemployed but receives child support.

12    She has no physical conditions or disabilities.  No

13    mental health condition.  No alcohol or drug abuse.

14    No finances.  No financial assets.  She has seven

15    children ranging in age from 8 to 17.

16          That's all.  Mr. Clark, you can go ahead.

17    Before we start, was the victim or the victim's family

18    in this case notified about today's hearing?

19          **MR. CLARK:**  Yes, Your Honor.  The next of

20    kin of the deceased victim was notified.

21          **THE COURT:**  Okay.  Go ahead, sir.

22          **MR. CLARK:**  Your honor, this is a victim

23    impact statement from the mother of the deceased

24    victim in this case that was just submitted this

25    morning.  Let me pull it up.

1          Your Honor, I believe that Ashley Evans

2     needs to stay in jail because she has no compassion,

3     that she didn't feel the need to stay with her, being

4     the victim, after hitting them with her car and

5     leaving them for dead.  Apparently she is not

6     responsible enough to act in decent human nature.

7          Your Honor, while there is not a prior

8     conviction in this case, there is a 2017 arrest for

9     operating a vehicle on a highway without a valid

10    license in Richmond Heights which is troubling given

11    the facts of this particular case.

12          Further, I think there was some serious

13    concerns here about the victim -- the defendant

14    showing up for court.  I mean, after hitting two

15    individuals with her car she drove off.  After

16    stepping outside of the car for a while, that's

17    troubling, and then it also appears that this victim

18    has been at large since March.  I believe the warrant

19    was issued on the 9th of March.  Here we are in

20    October.  All of those facts together, Your Honor, we

21    would be asking for no bond in this case.

22          I understand that there is a lack of a

23    record, but the fact the defendant not taking time to

24    call the police or assist anyone after the accident,

25    combined with the fact that she has been at large

1  since March is extremely troubling.  So for those

2  reasons we would request no bond.

3       In the alternative, if the Court does find

4  that there should be a bond given in this case we

5  would ask that the defendant at least be on house

6  arrest so that we can insure that she will, in fact,

7  show up to court for the next date.

8       **THE COURT:**  Mr. Taaffe.

9       **MR. TAAFFE:**  Judge, I would point out that

10  Ms. Evans is 34 years old.  No prior convictions.

11  Very limited criminal history.  And as the Court

12  already noted for the file, if she was released on

13  bond she live at 3002 Keokuk Street.  She would reside

14  there with her mother and her seven children.  Time of

15  her arrest she was unemployed, but she is a licensed

16  med tech and can find work for that.

17       The housing that she lives in is Section 8.

18  She does receive child support.  Matter of fact, her

19  seven children, they all have the same father, Steven

20  Shaw, who actually came in and hired me on the case.

21  He has custody of the kids at this point.  He works

22  for Domino's rebuilding stores and he does provide

23  significant financial assistance the children and his

24  family, all seven of them.  And it's a financial

25  hardship on him at this time to be able to work and

 1   also to help support Ms. Evans.

 2            I would like to concede that the State is

 3   correct that it is troubling that Ms. Evans did not

 4   stop and leave information that could identify

 5   herself, and that is a concern for the Court for her

 6   potential flight risk.  I do not believe that

 7   Ms. Evans is a danger to the community; however, Your

 8   Honor, the charge itself speaks to that.

 9            The charge is leaving the scene of a motor

10   vehicle accident without providing identifiable

11   information.  She is not charge with voluntary or

12   involuntary manslaughter.  The investigation and

13   prosecution, when they reviewed the facts of the case,

14   they considered that.  The accident, there was no

15   criminal liability.  She did not either criminally

16   negligent or cause the death of the individuals in the

17   vehicle.  What she did do was she fled without leaving

18   identifying information and that's a D felony and

19   so -- by the legislature D felony.

20            She's 34 years old, never been involved in

21   the criminal justice system.  She panicked.  It was an

22   error in judgment, but I don't think it makes her a

23   danger to the community, nor do I believe it makes her

24   a flight risk.  I think the Court can control the risk

25   of flight risk by placing her on house arrest.  Given

Dixon v. City of St. Louis 21024

1    her financial condition, request the Court place her

2    on the house arrest at 3302 Keokuk and also ask the

3    Court to allow her to look for a job and to work, if

4    she can, and be able to take the kids to doctor's

5    visits and things like that.  That would be my

6    position, Your Honor.

7         **THE COURT:**  The Court having considered

8    Missouri Supreme Court Rule 33.01 generally and as

9    specifically applied to this defendant notes this is

10   the initial bond setting on initial appearance.  The

11   Court notes that it's particularly troubling that the

12   alleged facts in this case are that the defendant was

13   fully aware that she had injured two separate

14   individuals as she got out of the car after hitting

15   them and then elected to leave after the fact.

16         That additionally, she confessed to the

17   police but remained at large since the cases were

18   issued; therefore, the Court believes she is a flight

19   risk and there is no less restrictive alternative and

20   orders that she be detained pending trial.

21         Mr. Taaffe, as you are aware she will have a

22   seven day more detailed hearing on November 4th, 2020

23   at 9:00 o'clock in 16B.  And her next court date --

24   I'm not sure.  I think she is one more time in 25 or

25   26 before she gets sent out.

1          **MR. TAAFFE:**  Okay.  Do you know who is in

2    16B next week?

3          **THE COURT:**  Judge Higgins.  Thank you.

4          (Proceedings were concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATE
 2            I, Sherry L. Gantner, Certified Court
 3   Reporter, do hereby certify that I am an official
 4   court reporter for the Circuit Court of the City of
 5   St. Louis; that on October 28, 2020, I was present and
 6   reported all the proceedings had in the case of STATE
 7   OF MISSOURI, Plaintiff, vs. ASHLEY EVANS, Defendant,
 8   Cause No. 2022-CR00755-01.
 9
10            I further certify that the foregoing
11   pages contain a true and accurate reproduction of the
12   proceedings.
13
14               /S/Sherry Gantner
15            Sherry L. Gantner, CCR 839
                 RPR, CSR (IL and MO)
16
17
18
19
20
21
22
23   TRANSCRIBED:  January 6, 2021
24
25
```

Dixon v. City of St. Louis 21027

# EXHIBIT 151

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

**STATE OF MISSOURI,**    )
                          )
            Plaintiff,    )
                          )
v.                        )   No. 2022-CR01827
                          )
**TONISHA POWELL-BEY,**   )
                          )
            Defendant.    )
_____

**TRANSCRIPT OF HEARING**
_____


On October 30, 2020, the above-entitled cause came on regularly for hearing before the Honorable Elizabeth Hogan, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Chris Clark and Ken Jones, ESQ., Assistant Circuit Attorneys, City of St. Louis, State of Missouri.

The Defendant was present in person and was represented by TJ Matthes, ESQ., Attorney at Law.


SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 21028

```
 1                  October 30, 2020

 2          (The proceedings commenced at 12:00 p.m.)

 3          THE COURT:  The record will reflect we are

 4   here in cause No. 2022-CR01827, State of Missouri

 5   vs. Tonisha Christine Powell-Bey.

 6          The record will further reflect all parties

 7   are present for the initial appearance detention

 8   hearing by WebEx due to the ongoing administrative

 9   orders associated with COVID-19.

10          The record will further reflect the State is

11   present by Assistant Circuit Attorney Chris Clark and

12   Ken Jones.  The defendant is present by video camera

13   and by her attorney TJ Matthes.

14          The Court takes judicial notice of its file

15   and contents and Ms. Powell-Bey informs you that the

16   State has charged you with Count I, assault in the

17   first degree, a Class A felony; Count II, armed

18   criminal action, an unclassified felony; Count III,

19   assault in the second degree, a Class D felony; Count

20   IV, armed criminal action, unclassified felony; Count

21   V, assault in the second degree, a Class D felony; and

22   Count VI, armed criminal action, an unclassified

23   felony.

24          The State is alleging that on July 3rd

25   victims Bionica Stewart and Destiny Stewart were
```

```
 1    involved in an argument with a group of people in the

 2    area of 909 Manhattan Place in the City of St. Louis.

 3    During the argument defendant pistol-whipped each

 4    Bionica and Destiny in the head with a handgun.  The

 5    victim Ershentel Yarbrough arrived on scene once her

 6    sister called and asked for help.

 7              Yarbrough's sister had been involved in the

 8    argument and had been kicked in the stomach.

 9    Yarbrough arrived on scene with another one of her

10    sisters.  When they got out of the vehicle they were

11    immediately confronted by another woman.  This woman

12    pulled the victim's hair and began punching the

13    victim's sister.  The victim tried to stop the other

14    woman from fighting her sister when the defendant

15    approached.

16              The defendant raised her firearm and shot

17    the victim in the face, hitting her in the eye.  The

18    victim was taken to the hospital where her eye was

19    removed.  The defendant was identified in a photo

20    lineup by the victim, as well as other witnesses.  I

21    believe the defendant to be a danger to the victim

22    because of the nature of the offense and her knowledge

23    to where the victims reside.  I believe the defendant

24    to be a danger as well because of the nature of the

25    other offenses.
```

Dixon v. City of St. Louis 21030

1          The Court has also received and reviewed

2     Exhibit 16B, which is contained in the Court file and

3     notes no other criminal convictions.  That the

4     defendant indicated she lives by herself and is single

5     and has no children.  She is a lifelong resident of

6     the community.  She has no employment.  No income.  No

7     cash.  No physical, mental or drug or substance abuse

8     issues.  You can proceed.

9          **MR. CLARK:**  Thank you, Your Honor.

10          I would just note that -- a number of

11     things.  First, in terms of priors there are no

12     criminal convictions.  There are a number of stealing

13     arrests and local ordinances that have come up

14     throughout the last few years notably in 2016 and '17.

15     Furthermore, this is a troubling case because this

16     without the gun and gun being fired would have been a

17     relatively straightforward, troubling none the less,

18     but relatively straightforward assault, fist fight

19     between folks.  Ultimately, this seems to be a fist

20     fight that went very south very quickly that resulted

21     in the defendant here a making decision to, one, carry

22     a gun with her; second, to use that gun to escalated

23     what would have been an otherwise less severe fight,

24     and not only using that gun, but taking the time to

25     point that gun at the victim's face in this case, pull

1    the trigger and hit the victim in the eye.

2          Clearly, the resulting injuries were severe,

3    as indicated by the fact that the victim is now in a

4    situation where she has -- no longer has an eye.  The

5    eye had to be removed as a result of her injuries

6    here.  Given the severity of that, those actions, I

7    mean, this shows a significant lack of self-control.

8    It shows access to a weapon, and it shows a concerning

9    tendency to escalated what would have been otherwise a

10   much less severe altercation between a number of

11   people.

12          Because of those factors, Your Honor, we

13   would ask that there be no amendments made and bond be

14   kept at no bond.

15          **THE COURT:**  Mr. Matthes.

16          **MR. MATTHES:**  Thank you, Your Honor.

17          Tonisha is 22 years old.  She has no

18   priors -- I was going to say no priors, but I guess I

19   will say no prior felonies now.  She graduated from

20   Vashon High School, lived in St. Louis her entire

21   life.  Judge, she is not a flight risk.  This happened

22   on July 3rd of this year.  She reached out to our firm

23   that week to retain us.  We contacted the police.

24   There was obviously no warrant.  There also wasn't a

25   wanted at that time.  We told her to lay low and we

1    will wait for them to do their investigation.

2              That's what she did, Your Honor, until it

3    was -- the wanted was put out later on.  I'm not sure

4    exactly when, but she was turned in just recently

5    here.  I think it was yesterday, actually, and she was

6    turned in and the officer applied yesterday.

7              So, Judge, she stayed at her home the entire

8    time.  Wasn't -- didn't flee at all.  She knew this

9    was hanging over her head and she knew this was coming

10   and that they were investigating.

11             Your Honor, here is what the living

12   situation is.  She was with her mom and her

13   grandmother at that address off Eighth Street that's

14   listed in the exhibit.  But I think it was a few

15   months ago she moved out and got an apartment down in

16   Soulard and that's where we would ask the Court to

17   release her to on house arrest, along with 20,000,

18   10 percent bond, Your Honor.

19             So the situation is, Judge, her grandmother

20   has lung cancer and her grandmother is with her mom at

21   the Eighth Street address.  She worked out a deal with

22   her mom where if she was -- her mom is going to help

23   her out with this new apartment, paying for this new

24   apartment if she helps out taking care of grandmother.

25   She helps out feeding her and bathing her while her

1    mother who is a cook at St. Alexius Hospital works six

2    to seven days a week, depending on the week while she

3    is at work.

4           Judge, she listed in the exhibit that she

5    doesn't have a job.  She used to work at the Humane

6    Society Animal Shelter, but she got laid off because

7    of COVID.  And I talked to her mom right before the

8    hearing she said that other family members, her sister

9    and others can help out and they would be able to post

10   20,000, 10 percent.

11          So, again, I ask that she be released to

12   that house in Soulard, 921 Geyer address on house

13   arrest.

14          Your Honor, couple other things I want to

15   tell you about.  So in terms of the probable cause

16   statement.  The assault first charge, I think if we

17   take what the officer says here as true is more

18   consistent with an assault second charge in that she

19   knowingly caused serious physical injury under the

20   influence of sudden passion because if we look at the

21   second paragraph in the probable cause statement, jump

22   down in the middle of that paragraph, sentence

23   starting with this woman pulled the victim's hair and

24   began punching the victim's sister.  This woman,

25   that's actually Tonisha's sister, Jasmine.

1          So sees Jasmine in a fight with two other

2     girls, two v. one on Jasmine.  That's the sudden

3     passion.  She sees her sister in this fight getting

4     beat up and she comes over and shoots the other girl.

5     It is more consistent with an assault second charge.

6     I think that count is overcharged.

7          Other than that, Your Honor, again, she

8     lives there at the address on Geyer.  She lives there

9     alone.  She has got a boyfriend who sleeps there once

10    in a while, but that's what we would ask for, Your

11    Honor, GPS house arrest, 20,000, 10 percent, ask for

12    exception to be able to still continue to care for

13    grandmother over at the address off of Eighth Street

14    as well.  I think that set of conditions, that's

15    sufficient, but necessary to assure the Court the

16    safety of the community and assure the Court she is

17    not a flight risk.

18          **THE COURT:**  The Court having considered

19    Missouri Supreme Court Rule 33.01 generally and as

20    specifically applied to this defendant finds as

21    previously stated that she is charged with a Class A

22    felony, Class D felonies, arm criminal actions which

23    now run consecutive to the other in the event that she

24    is convicted finds there is no less restrictive

25    alternative that could insure the safety of the

Dixon v. City of St. Louis 21035

1    community as noted by the rendition of the facts by

2    the State, as well as contained in Exhibit B and that

3    she still is intending to leave the house as stating

4    she wants to take care of others.

5             This is, as you know, the initial appearance

6    hearing.  So the seven day detention hearing will be

7    on November 6th in 16B, and her next court date is

8    December 10th at nine o'clock in Division 25.

9             Thank you.

10            (Proceedings were concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3   Reporter, do hereby certify that I am an official

 4   court reporter for the Circuit Court of the City of

 5   St. Louis; that on October 30, 2020, I was present and

 6   reported all the proceedings had in the case of STATE

 7   OF MISSOURI, Plaintiff, vs. TONISHA POWELL-BEY,

 8   Defendant, Cause No. 2022-CR01827.

 9

10              I further certify that the foregoing

11   pages contain a true and accurate reproduction of the

12   proceedings.

13

14              /S/Sherry Gantner

15              Sherry L. Gantner, CCR 839
                RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23   TRANSCRIBED:  January 6, 2021

24

25
```

# EXHIBIT 152

IN THE CIRCUIT COURT OF MISSOURI
22nd JUDICIAL CIRCUIT, DIVISION 16B
Honorable Elizabeth Hogan, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2022—CR01758 |
| | ) |
| **DETRICH WILLIAMS,** | ) |
| | ) |
| Defendant. | ) |

_____

**TRANSCRIPT OF HEARING**
_____

On October 30, 2020, the above—entitled
cause came on regularly for hearing before the
Honorable Elizabeth Hogan, Judge of Division 16B of
the Twenty—Second Judicial Circuit in the City of St.
Louis.

**APPEARANCES**

The State of Missouri was represented
by Chris Clark, ESQ., Assistant Circuit Attorneys,
City of St. Louis, State of Missouri.

The Defendant was present in person and
was represented by Tony Muhlenkamp, ESQ., Attorney at
Law.

SHERRY L. GANTNER, CCR #839, RPR, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY—SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 21038

**INDEX**

**OCTOBER 30, 2020**

Direct Examination By Mr. Muhlenkamp . . . . . . . 7

Reporter's Certificate                          15

Dixon v. City of St. Louis 21039

 1                    October 30, 2020

 2            (The proceedings commenced at 12:00 p.m.)

 3            **THE COURT:**  The record will reflect we are

 4    here in cause No. 2022-CR01758, State of Missouri

 5    vs. Detrich Williams.

 6            The record will further reflect all parties

 7    are present via WebEx due to the ongoing

 8    administrative orders associated with COVID-19.

 9            The record will further reflect the State is

10    present by Assistant Circuit Attorney Chris Clark.

11    The defendant is present in person via video camera

12    from the Justice Center and by appointed attorney, who

13    is waving at you Mr. William, Anthony Muhlenkamp.

14    Mr. Muhlenkamp is a private attorney that has been

15    appointed to represent you for today's proceedings

16    only, which is your initial appearance on your

17    charges.

18            The State has charged you with Count I,

19    tampering in the first degree; Count II, resisting

20    arrest by flight; and Count III, resisting arrest for

21    a felony.

22            The State is alleged that on October 16th an

23    officer and his partner observed a vehicle with unique

24    identifying attributes consistent with a vehicle that

25    was reported taken at gunpoint.  The vehicle had no

1   plates.  The officer activated his emergency lights

2   and the vehicle accelerated at a high rate of speed

3   and led us on a lengthy chase that at various times

4   including driving 80 miles an hour down 270 when all

5   three lanes were occupied by vehicles moving at legal

6   speed.

7          Defendant used a shoulder to pass a vehicle,

8   forcing that vehicle partway into a lane occupied by a

9   semi struck, forcing the semi truck partway into the

10  next lane over, driving at a high rate of speed right

11  directly past and in unsafe proximity to a Calverton

12  police officer who was pulled over conducting a

13  traffic stop on a civilian, driving 50 miles an hour

14  in the residential neighborhoods in Castle Point,

15  driving over 100 miles an hour, driving in excess of

16  80 miles an hour going southbound in northbound lanes

17  of Route 367 with vehicle lights going off, going

18  uphill toward a crest in the hill.  Eventually the

19  vehicle was spike stripped and defendant fled on foot

20  before they apprehended him.

21          Defendant said he was fleeing because of the

22  car which he said he knew his cousin had done

23  something to.  I spoke to the owner of the vehicle who

24  confirmed that the defendant did not have permission

25  to have or drive the vehicle.  Defendant is currently

Dixon v. City of St. Louis 21041

1   wanted in Texas as an absconder from justice on a

2   charge for evading arrest and detention.  For the

3   forgoing reasons I believe defendant is a danger to

4   the community and will not attend on summons.

5           Notably, Mr. Muhlenkamp, is that he is

6   wanted out of Texas.

7           Mr. Clark, you can go ahead.

8           **MR. CLARK:**  Thank you, Your Honor, I would

9   just note that that Texas wanted is for failure to

10  appear, and that's case number CR202000861C.

11          And then, furthermore, there are no prior

12  convictions, but there is a 2009 arrest for assault

13  first, as well as the present charges.

14          Your Honor, this does not come across as

15  your standard tampering or resisting arrest charge.

16  Of particular concern is the total disregard for not

17  only officer safety, but the safety of the community

18  that was displayed during this police chase, including

19  going speeds over 100 miles per hour, going, you know,

20  city streets on speeds excess of 80 miles per hour,

21  making conscious decisions to really put at risk the

22  lives of the officers, as well as people around him.

23          This shows not only a concern for the safety

24  of the community, but a clear concern for the

25  defendant as a flight risk.  In fact, I don't know if

1    there could be a better evidence to indicate a

2    defendant's propensity to run from officers than a

3    police chase that lasted for a significant period of

4    time and spanned quite a few miles.

5            On top of that, the chase did not end after

6    the car was spiked, but instead continued as the

7    defendant decided to run and continued to evade police

8    after the car was immobilized.

9            Altogether, Your Honor, I think there is

10   serious concern for the safety of the community and

11   serious concern for flight risk.  So the State would

12   be requesting no bond.  Thank you.

13           **MR. MUHLENKAMP:**  Hi, Mr. Williams.  Can you

14   hear me okay, sir?

15           **THE DEFENDANT:**  Yeah.

16           **MR. MUHLENKAMP:**  The Judge appointed me to

17   represent you for today's purposes only.  What I'm

18   going to do is try to get some information for the

19   Judge that is accurate so she can make an informed

20   decision about your bond, okay.  I'm going to ask a

21   few questions about your background, not about the

22   facts of the case.  I just ask you keep your voice up

23   and tell me the truth, okay.

24           **THE DEFENDANT:**  Yes.

25           **MR. MUHLENKAMP:**  All right.  Thank you.

1                    **DIRECT EXAMINATION**

2    **BY MR. MUHLENKAMP:**

3         Q.   You are 18 years old, right?

4         A.   Yes.

5         Q.   And if you made bond you would live with

6    your mother, Ms. Johnson, on Lacey Drive; is that

7    correct?

8         A.   On Daisy Drive, but yes.

9         Q.   Daisy with a "D"?

10        A.   Yes.

11        Q.   You lived there for a while, right?

12        A.   Yes.

13        Q.   And you have one child that's pretty young,

14   correct?

15        A.   Yes.

16        Q.   You have another child on the way, correct?

17        A.   Yes.

18        Q.   Does the child that you have already, does

19   that child live with you?

20        A.   Somewhat.

21        Q.   Okay.  You think you help take care with the

22   child's mother?

23        A.   Yes.

24        Q.   Do you actively support your one-year-old

25   child?

1        A.    Yes.

2        Q.    Okay.  At some point somebody from the

3    social work network over there came over there and

4    talked with you and asked you a bunch of questions,

5    correct?

6        A.    Yes.

7        Q.    Okay.  They recognized a couple different

8    places that might help you in regard to Mission

9    St. Louis or Care St. Louis in order to get some help

10   finding a job, maybe get a mentor that's an older male

11   to help you with some mental health issues you had in

12   the past.  Do you remember that?

13       A.    Yes.

14       Q.    If the Judge were to make conditions of your

15   bond that you follow-up and actually do those thing,

16   I'm assuming that's something you would do, correct?

17       A.    Yes.

18       Q.    If the Judge wanted you to to wear an ankle

19   monitor so the Court knew where you were at, weren't

20   out messing around, assuming you would be okay with

21   that too?

22       A.    I would be fine with it.

23       Q.    Given the nature of these charges, if the

24   Court wanted you not to drive while this case was

25   pending, that might be a reasonable condition too,

1    assuming you would be okay with that?

2         A.   Yes.

3         Q.   Okay.  You got a warrant out of Texas.  Did

4    you live in Texas at one point?

5         A.   The warrant in Texas that's two years old.

6    I had been locked up like twice after that.  They

7    never cleared the warrant.

8         Q.   Slow down.  At some point did you live in

9    Texas?

10        A.   Not really.  It was just a visit.

11        Q.   Okay.  You have the financial means to get

12   back down to Texas or have you had the financial means

13   to do that in the last two years?

14        A.   No.  I've been having family problems.

15        Q.   Fair enough.  Okay.  I'll -- the last thing

16   I forgot to ask, I apologize, do you have any access

17   to any money to either post a bond or hire an

18   attorney?

19        A.   No.

20        Q.   You don't have a job right now, right?

21        A.   I had an interview -- actually, I had an

22   interview today.

23        Q.   Other than a couple hundred bucks in food

24   stamps, that's the only income you have right now?

25        A.   Yes.

1          **MR. MUHLENKAMP:**  Okay.  Mr. Williams, I'm

2     going to ask you to stand there, listen carefully.

3     I'm going to make my pitch to the Court, see what I

4     can do about your bond.  Regardless of what the Judge

5     does, you need a lawyer moving forward.  That means

6     your mom or your friends have to either hire you a

7     private attorney or you need to fill out paperwork for

8     the public defender.  Please make sure you do one of

9     those things, okay?

10         **THE DEFENDANT:**  Okay.

11         **MR. MUHLENKAMP:**  Thank you, sir.

12         Your Honor, I'm asking the Court to consider

13    a recognizance bond on this case in light of the fact

14    he was given the Class D felony and two Class E

15    felonies.  Those types of felonies often end up

16    getting probation anyway.  Point out to the Court this

17    stuff happened back in middle of August.  My client

18    was taken into custody and police just let him go.  So

19    I get the argument that he is a flight risk now

20    because of the speed, but they could have charged the

21    case immediately.  He has been out for two months,

22    hasn't picked up any other cases.

23         He's 18 years old.  Only criminal history

24    that I'm showing reference is made to this warrant,

25    failing to appear in Texas, but also said that is a

1    misdemeanor.  So I don't know what that is.

2              **THE COURT:**  Is that a hold Gary?

3              **DEPUTY:**  I don't think they come for

4    misdemeanor, only felony.

5              **MR. MUHLENKAMP:**  Now we are dealing with a

6    point we have a gentleman here, 18 years old, doesn't

7    have a job, has no money, got a misdemeanor warrant in

8    Texas.  I think his options will be he can hire a

9    lawyer in Texas to deal with it, which he doesn't have

10   any money.  Drive down to Texas, deal with it.  He

11   doesn't have any money, especially with what's going

12   on with COVID right now.  I get that it's a formal

13   failing to appear, but I ask the Court to take that

14   with a grain of salt, little bit here.  He has a place

15   to live.  He can live with his mother.  He has a young

16   child that he helps provide support for.  He has

17   another child coming in May.  Of specific note I would

18   also stress to the Court, I don't know if you were

19   able to see what they sent me from the Bail Project --

20             **THE COURT:**  No.

21             **MR. MUHLENKAMP:**  I'll read you the pertinent

22   part.  This is a social worker that comes and talks to

23   a lot of inmates.  But here they recommended Mission

24   St. Louis to address mentorship, employment and

25   fatherhood and recommended Care St. Louis to address

1   his mental health issues and his lack of health

2   insurance.

3          I would ask the Court to consider

4   recognizance bond with specific conditions.  I don't

5   think he should drive.  I think that would be fair.  I

6   think GPS would be fair, given the circumstances.  I

7   would put on there too or ask the Court to consider

8   putting on there that he engage with Mission STL and

9   Care STL to make himself amenable to their services or

10  available to their services.  That would be my

11  request, Judge.

12          **THE COURT:**  What's the State's response to

13  that request?

14          **MR. CLARK:**  Your Honor, I would just

15  reiterate our position that we prefer no bond in this

16  case.

17          **THE COURT:**  Why didn't you issue charges

18  while he was in custody then because now he has been

19  out of custody for three months?  As far as say saying

20  on the one hand he poses a danger, but he was released

21  before you all issued charges and then it took three

22  months to issue charges and he has been out in the

23  community with no further instances.

24          **MR. CLARK:**  Your Honor, I understand.  I

25  don't have an answer for why charges weren't issued

1    sooner in this case.

2         **THE COURT:**  Would you agree he has been out

3    in the community for three months and there haven't

4    been any further instances?

5         **MR. CLARK:**  That is my understanding that

6    that is correct, Your Honor.  I don't think that taken

7    in light of the facts of this particular case, I don't

8    think that negates -- I don't think that absolves the

9    significant risk of flight, as well as significant

10   risk to hinder toward the community given the facts of

11   the case listed in the probable cause.

12        **THE COURT:**  I'm not arguing about the fact

13   of the case and agree, but the State elected not to

14   issue the charges when he was in custody and so he's

15   been out in the community for three months and now

16   defense counsel is stating there is a less restrictive

17   alternative, which as you know the Court is required

18   to consider.  And so how would house arrest and ankle

19   bracelet and not being permitted to leave the house

20   for any reason without a court order not alleviate any

21   concern he would pick up additional cases or drive a

22   car or any of those things?

23        **MR. CLARK:**  Your Honor, I do believe that

24   that would work to alleviate, but I don't think that

25   would eliminate the concern that there is significant

1   risk just because of the facts of the case.  I think

2   defense counsel raised the point he was released

3   almost immediately upon his questioning at the time is

4   what I believe defense counsel stated.  So the charges

5   weren't issued immediately at that point.  May simply

6   have been just due to investigation of this case.  I

7   really can't speak to that more fully, Your Honor.

8           **THE COURT:**  All right.  But there is no

9   question three months have passed?

10          **MR. CLARK:**  That's correct.

11          **THE COURT:**  Mr. Muhlenkamp, I think it's a

12  close call and reason the Court is even inclined to

13  consider it is because of his age.  His behavior

14  obviously posed a danger to every single car that he

15  passed, every driver on the road at every single road

16  that they discussed.  So the Court would be interested

17  in more information from his mother about who would be

18  at the house insuring that they understood he wasn't

19  to leave the house and was to be on house arrest.  He

20  would not be going to Mission St. Louis in the

21  beginning because that would require him leaving the

22  house.

23          So we will continue this for seven day

24  hearing on 11/6.  His next court date, court date is

25  12/10.  At this time bond is to remain at no bond.

1   That will conclude the record.

2                 (Proceedings were concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                       CERTIFICATE

 2              I, Sherry L. Gantner, Certified Court

 3   Reporter, do hereby certify that I am an official

 4   court reporter for the Circuit Court of the City of

 5   St. Louis; that on October 30, 2020, I was present and

 6   reported all the proceedings had in the case of STATE

 7   OF MISSOURI, Plaintiff, vs. DETRICH WILLIAMS,

 8   Defendant, Cause No. 2022-CR01758.

 9

10              I further certify that the foregoing

11   pages contain a true and accurate reproduction of the

12   proceedings.

13

14              /S/Sherry Gantner

15              Sherry L. Gantner, CCR 839
                RPR, CSR (IL and MO)
16

17

18

19

20

21

22

23   TRANSCRIBED:  January 6, 2021

24

25
```

# EXHIBIT 153

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT

STATE OF MISSOURI,         )
                           )
      Plaintiff,           )
                           )
v.                         )   No. 2022-CR01196
                           )
ARTHUR JONES,              )
                           )
      Defendant.           )

## FIRST APPEARANCE HEARING

On Monday, July 13, 2020, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

### APPEARANCES

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Christopher H. Faerber, Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 21054

1          **THE COURT:**  All right.  This is

2     State vs. Arthur Jones, Line 11, 2022-CR01196.

3     Mr. Jones is charged with Domestic Assault 2nd and

4     Domestic Assault 3rd.  I am reviewing the pretrial

5     commissioner's report and the probable cause

6     statement.

7               Mr. Fischbach.

8          **MR. FISCHBACH:**  Thank you, Your

9     Honor.  Your Honor, the State would emphasize that

10    the defendant and victim are known to each other and

11    been in a relationship for approximately eight

12    months and were living together.  And the defendant

13    both struck the victim in the face with his hands,

14    choked her with both hands and stated, "I might as

15    well kill you.  I know I will be on the run for

16    this," according to the victim.

17               All of these factors are combined to

18    create a clear danger to the victim in this case.

19    Additionally, Your Honor, the State has a victim

20    impact statement, which I sent to Mr. Faerber just

21    now and will read once you tell me to begin.

22          **THE COURT:**  All right.  Hold on one

23    second.  Let me finish the probable cause statement.

24          **MR. FISCHBACH:**  Certainly, Your

25    Honor.

1          (Off the record.)

2          **THE COURT:**  Again, I won't have my

3    court reporter type the victim's statement but will

4    have that as an exhibit.  You may proceed to read

5    it.

6          (Statement read.)

7          **THE COURT:**  All right.  Thank you.

8    We're back on the record.

9          Mr. Faerber.

10         **MR. FAERBER:**  Thank you, Your Honor.

11   As you heard from my client for today, he does have

12   somewhere to go should he be released.  He has no

13   means of making bond at this point.  So the only

14   option would be a personal or sponsored

15   recognizance, so I would ask for one of those two.

16   As far as him being a danger, he managed to get to

17   the point where he's three weeks away from his

18   parole expiring.  And keep in mind these are all

19   alleged facts, so...

20              And as far as him doing this to other

21   people, that would be uncharged crimes and that's

22   not corroborated also.  So but he then could get out

23   and, as he said, hire an attorney because the money

24   is on his unemployment card which is in his

25   property.  Of course, should he get an attorney

4

1   between now and then.  Just in case Mr. Jones

2   applies for a public defender -- and that would be

3   my suggestion.

4            But he does have community ties.  He

5   would be able to stay away through a stayaway order,

6   potentially even GPS.

7            You would agree to that, right,

8   Mr. Jones, GPS and staying away from the victim?

9            **THE DEFENDANT:**  Yes, sir.

10           **MR. FAERBER:**  And as I said, he has

11  somewhere to go and that is not where the victim

12  stays, so I would ask for some level of recog either

13  personal or sponsored.

14           **THE COURT:**  All right.  I would also

15  point out, although it's in the record and the

16  probable cause statement, that the officers did

17  arrive at the scene, they observed the victim's

18  right eye to be swollen, bruising developing around

19  her eye, and they also saw red marks and scratches

20  on the victim's neck which corroborates her

21  statement as to what took place.

22           I'm going -- I don't find that the

23  factors give me the assurance that the victim in

24  this situation and possibly others, but the victim

25  would be safe.  We will set this for the seven-day

1    hearing July 20th at 12-noon.  The long date is

2    August 13th in Division 26.

3                    Good luck to you, Mr. Jones.

4                (Off the record.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     CERTIFICATE

 2        I, Jenna L. Higgins, Certified Court Reporter,

 3   do hereby certify that I am an official court

 4   reporter for the Circuit Court of the City of

 5   St. Louis; that on July 13, 2020, I was present and

 6   reported all the proceedings had in the case of

 7   State of Missouri vs. Arthur Jones,

 8   Cause No. 2022-CR01196.

 9        I further certify that the foregoing pages

10   contain a true and accurate reproduction of the

11   proceedings.

12

13

14

15         _____

16             Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24   TRANSCRIBED:  January 6, 2022

25
```

# EXHIBIT 154

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Michael J. Colona, Judge

STATE OF MISSOURI,              )
                                )
          Plaintiff,            )
                                )
     vs.                        )     2022-CRO1757
                                )
██████████████████              )
                                )
          Defendant.            )

FIRST APPEARANCE HEARING

On the 16TH day of October, 2020, the

above-entitled cause came on regularly for hearing before

the Honorable Michael J. Colona, in Division 16B of the

Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by

Natalia Ogurkiewicz, City of St. Louis, State of Missouri.

The Defendant was present by video and was

represented by Melinda Gorman.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

|   |   |
|---|---|
| 1 | OCTOBER 16, 2020 |
| 2 | THE COURT:    All right.  Now let's go to line one. |
| 3 | That would be ███████████    You're Miss ██████████ |
| 4 | THE DEFENDANT:    Yes, sir, yes, your Honor. |
| 5 | THE COURT:    All right.  So, Miss ████████  I'm |
| 6 | Judge Colona.  We can go on the record.  State of Missouri |
| 7 | versus █████████████  That's 2022-CR01757.  Present on |
| 8 | video from the Justice Center is Miss ██████████  Also |
| 9 | present on video for the State is Miss Ogurkiewicz. |
| 10 | Miss █████████  have you hired a private lawyer in this |
| 11 | matter? |
| 12 | THE DEFENDANT:    No, your Honor. |
| 13 | THE COURT:    Pardon me? |
| 14 | THE DEFENDANT:    No, your Honor. |
| 15 | THE COURT:    A couple things.  First off, there is |
| 16 | a court reporter that's here present.  She's recording |
| 17 | everything that I say and you say.  So I tell everybody just |
| 18 | like you hear on the TV, anything that you say can and will |
| 19 | be used against you.  Since you don't have an attorney for |
| 20 | today's bond hearing, it's not a big deal.  I'm going to |
| 21 | appoint an attorney just for today only.  It's Miss Gorman |
| 22 | right there.  She just waved at you.  So let me fill in some |
| 23 | blanks on your court order here today 'cause today is |
| 24 | October the 16th, and we are seeing you within 48 hours of |
| 25 | you being picked up. |

1                    One of the things that I've got to do is tell

2       you what you're charged with to make sure you know what

3       that is.  Looks like they are charging you with abuse or

4       neglect of a child, a Class D felony.  Range of punishment

5       on that is up to seven years in the Department of

6       Corrections or $10,000 fine or both jail time and fine.

7                    They are saying that on or about October the

8       12th, 2020 here in the City of St. Louis you knowingly

9       struck somebody with the initials DA, a child less than 18

10      years old, with an extension cord on the arms and

11      buttocks; and in the course thereof you caused DA to

12      suffer from physical injury.  So that's what you're being

13      charged with.

14                   We'll enter a plea of not guilty for you.  Let

15      me tell you what your bond is currently.  Looks like

16      you've got a no bond allowed currently.  Just out of

17      curiosity, Miss ▮▮▮▮▮▮▮ if I were to give you a cash

18      money bond, could you afford a cash money bond of

19      anything?

20                   THE DEFENDANT:   No, your Honor.  I have four kids

21      at home and I'm not working.

22                   THE COURT:   All right.  Miss Gorman.

23                   MS. GORMAN:   Thank you, your Honor.  All right,

24      Miss ▮▮▮▮▮▮ first I'd like to ask you -- it shows you

25      live alone with your children.  You said you have four of

1    them.  What are their ages?

2             THE DEFENDANT:   Eighteen, 14, 13, and 11.

3             MS. GORMAN:   Okay.  And how long have you been in

4    the City of St. Louis?

5             THE DEFENDANT:   My whole life.

6             MS. GORMAN:   Your whole life, okay.  Let's see

7    here.  On the paperwork I'm showing you have six children.

8    Are the other two moved out of the home?  Older?

9             THE DEFENDANT:   Yes, they're 24 and 28.

10            MS. GORMAN:   Okay.  Let's see here.  You've been

11   unemployed since April 2020.  Did you have a job before the

12   corona virus?

13            THE DEFENDANT:   Yes, ma'am.  I worked at the

14   school cafeteria.

15            MS. GORMAN:   Oh, okay.  What school is that?

16            THE DEFENDANT:   I worked at a temp service so I

17   worked at all different schools.  A different school

18   probably every day.

19            MS. GORMAN:   Okay.  And I'm showing that you do

20   have some college credits from ███████████?

21            THE DEFENDANT:   Correct.

22            MS. GORMAN:   Okay.  Where are your children

23   residing now since you've been arrested?

24            THE DEFENDANT:   I don't know.

25            MS. GORMAN:   You don't know.  Do you know if

1    they've been taken into state custody?

2            THE DEFENDANT:    I don't know.

3            MS. GORMAN:    Okay.  It looks like most of your

4    priors that I can see are for passing bad checks and they're

5    extremely old, about --

6            THE DEFENDANT:    Yes, ma'am.  I was like 18 when

7    that happened.

8            MS. GORMAN:    And then there is a 2016 possession

9    of controlled substance out of St. Charles that you received

10   an SIS on.  That was revoked and turned into an SES.  Are

11   you still on probation for that case?

12           THE DEFENDANT:    Yes, ma'am.

13           MS. GORMAN:    Have you spoken to your probation

14   officer any since you've been arrested for this case?

15           THE DEFENDANT:    No, ma'am.

16           MS. GORMAN:    So you don't know if there is any

17   sort of a probation hold or anything out of that St. Charles

18   case?

19           THE DEFENDANT:    No, ma'am.

20           MS. GORMAN:    Judge, if you could give me just a

21   few seconds, I will look that up.  Do you know -- do you

22   have any family members that DA could potentially reside

23   with if you would be allowed to make bond?

24           THE DEFENDANT:    Yes, ma'am.

25           MS. GORMAN:    Who in your family lives in the St.

1  Louis area that would potentially be a home for her while

2  this case is pending?

3        THE DEFENDANT:   Well, I have three candidates.  I

4  would have to talk to them and see if they would agree, but

5  I have a ████████████ a ██████████ and and a

6  ██████████

7        MS. GORMAN:   Those are all family members?

8        THE DEFENDANT:   Yes, ma'am.

9        MS. GORMAN:   Okay.  Your Honor, I would note just

10 for the record that none of Miss ████████ priors are

11 violent priors.  We don't know any of the circumstances

12 surrounding this allegation.  We don't see any history of

13 child abuse and she has six children.  I don't know anything

14 specific about a substance abuse case.

15       I know the 2016 case was a possession case, but

16 I don't see anything in the file that says that there's a

17 substance abuse issue at play currently.  I would ask that

18 she be granted a release on her own recognizance to get

19 back to her children and to have no contact with DA while

20 this case is pending and to follow any and all orders that

21 may come out of Children's Division related to this case.

22       THE COURT:   Miss Ogurkiewicz.

23       MS. OGURKIEWICZ:   Your Honor, this is a case where

24 defendant is charged with child abuse and neglect.  It is an

25 extraordinarily troubling case wherein the 11-year-old

1   victim called 911 on her own to report her mother for

2   beating her with an extension cord and bruising her body.

3           The police arrived and the defendant stated that

4   the victim got a whupping because her brother had caught

5   her under a blanket with a boy doing sexual things.  The

6   co-defendant in this case is the defendant's other son,

7   ███████.

8           And so once the victim returned home, defendant

9   began beating the victim with a plastic coat hanger until

10  it broke and then once the plastic coat hanger broke, she

11  instructed her son, the co-defendant, to go get an

12  extension cord and then began beating the 11-year-old

13  defendant with the extension cord.  And then the

14  co-defendant took off his belt and also started to beat

15  the victim with the belt.

16          In this case the victim was transmitted to

17  Cardinal Glennon Hospital where photographs of her

18  injuries including welting and bruising on her buttocks

19  and her arms was noted.  The defendant herself estimates

20  that she hit her daughter 30 times with the hanger, 30

21  times with the extension cords, and 30 times with the belt

22  on the victim's body.

23          The defendant does not have prior violent

24  convictions; however, the State has serious concerns for

25  the safety of the 11-year-old victim in this case.  The

1    defendant was arrested both last year and earlier this

2    year for domestic assault in the first degree.  And now,

3    of course, we don't know the circumstances surrounding

4    those arrests, but it does tend to indicate that there is

5    a domestic history and pattern going on in this household.

6            Furthermore, after the 11-year-old victim was

7    released from the hospital, she was released to a brother

8    who also has a violent past.  Therefore that indicates

9    that perhaps the person that the victim was released to

10   may not be reliable.

11           The State's concern is that if the defendant is

12   let out on bond, that there could be a situation where the

13   victim and the defendant are placed in the same room again

14   just because of the necessity of the 11-year-old needing

15   somewhere to live, which could create more potential for

16   domestic issues.

17           So therefore in this case the State does

18   recommend a no bond situation to protect the safety

19   especially of the victim in this case.  Thank you.

20           THE COURT:   All right.  So, Miss ▮▮▮▮▮▮ I know

21   you were just picked up on this last night.  I mean here's

22   the deal.  I don't know what's going on with your kids.  I

23   don't want to jam you up on anything or put your kids in any

24   danger.  So what I'm going to do for today anyway, I'm going

25   to make a note that we had this conversation about cash

1    money bond and you said you can't afford none.  That's not a

2    big deal.

3           But for now I'm going to deny your request to

4    modify your bond.  But I'm going to get you in front of

5    another judge on October the 23rd, so that's a week from

6    today, at 12 noon where you're going to get another bond

7    hearing and that judge can take a little bit more time to

8    go through some of the things that your appointed lawyer

9    today was trying to go through.  And that is like what's

10   going on with your kids, where can they be, where you are

11   normally staying at, those kind of things.

12          I'm also going to give you what we call a long

13   court date, meaning this is just your first court date

14   with the judge that you're assigned to -- oh, it was me,

15   how exciting.  I think anyway, yeah.  For December the 2nd

16   at 9:00.  You've got to keep that in the back of your mind

17   because really it's the hearing a week from today that you

18   need to be concerned about and remember.

19          One thing that I'd like you to do before you're

20   done today is fill out a public defender application,

21   okay.  They've got them there at the Justice Center.  When

22   you're filling it out just make sure you fill out the

23   front and the back 'cause they got questions on both the

24   front and back of the page.  Make sure you get it signed

25   and turn it in.  And then maybe by this time next week the

1   public defender will know whether or not they are going to

2   represent you.  You don't own a house, do you?

3                    THE DEFENDANT:    No.  But I live alone.

4                    THE COURT:    You're good, you're good.  You're

5   fine.  You don't like own a car, do you?

6                    THE DEFENDANT:    No.

7                    THE COURT:    All right.  So you've told me here

8   today that you are unemployed, you don't have a house, you

9   don't have a car?

10                   THE DEFENDANT:    I do have a house.

11                   THE COURT:    No, no, you're fine.  I know what you

12  mean.  I'm just saying you don't like own a house worth a

13  million dollars, right?

14                   THE DEFENDANT:    Oh, no, sir.

15                   THE COURT:    Yeah, all right.  So I am going to

16  mark here on the court order that I'm ordering the public

17  defender to represent you.  But I'm going to tell you

18  straight up they're going to look you in the face and say I

19  ain't representing you until you at least fill out that

20  application.  So by me checking this box right here, that

21  lets the judge know that will see you next week that we

22  already had this conversation and that judge will ask you or

23  she'll ask you questions if you filled out that application.

24                   THE DEFENDANT:    I already filled out one.

25                   THE COURT:    Pardon me?

| | |
|---|---|
| 1 | THE DEFENDANT:    I already filled out one. |
| 2 | THE COURT:    Okay.  All right, that's good then. |
| 3 | All right.  We'll see you back in a week on October 23rd at |
| 4 | 12:00 o'clock for your seven-day hearing, all right.  Thank |
| 5 | you. |
| 6 | THE DEFENDANT:    Wait, I'm confused, your Honor. |
| 7 | THE COURT:    What are you confused about? |
| 8 | THE DEFENDANT:    So you denied the bond? |
| 9 | THE COURT:    Your bond is staying -- you're right. |
| 10 | I denied the bond.  I'm not modifying your bond.  You're |
| 11 | going to get another bond hearing in seven days with a |
| 12 | different judge, okay? |
| 13 | THE DEFENDANT:    Because you think that I will put |
| 14 | my kids in danger? |
| 15 | THE COURT:    So, Miss Gorman, would you like to hop |
| 16 | in here?  I can continue with this hearing and make a |
| 17 | finding or -- |
| 18 | MS. GORMAN:    Yes, I can.  No, no, no, no, no. |
| 19 | Your Honor, if I may just a have a moment with |
| 20 | Miss ███████ |
| 21 | THE COURT:    Sure. |
| 22 | MS. GORMAN:    Miss ███████ what the judge has |
| 23 | done and what happened today -- can you hear me?  Hello? |
| 24 | THE DEFENDANT:    Yes, I can hear you. |
| 25 | MS. GORMAN:    Can you hear me? |

1           THE DEFENDANT:   Yes, yes.

2           MS. GORMAN:   Okay.  So the judge has decided not

3   to modify the conditions of your bond today.  He did not

4   make a finding that no combination of monetary or non

5   monetary conditions could ensure the safety of the community

6   or your return to court.

7           I know that sounds like a distinction without a

8   difference, but really what it means is at the seven-day

9   hearing you will get another chance to go through all of

10  the things that the Court considers when setting a bond

11  much more thoroughly and you'll have that week between now

12  and then to try to get a public defender on your case or

13  to hire a private attorney to go through these issues more

14  thoroughly to find out what's going on with your children,

15  what the status of things are that the Court would

16  consider very relevant in deciding what an appropriate

17  bond for your case would be.

18          So he's not telling you because you're not

19  getting out today you are never getting out.  He's telling

20  you that he is going to postpone this hearing for another

21  week and let another judge do a more thorough hearing on

22  the record to determine your bond.  Does that make sense?

23          THE DEFENDANT:   Yes, but it doesn't because how

24  would I, how would I get home and figure out any of this?

25          MS. GORMAN:   Well, what he would do -- the best

1    thing that you can do under this circumstance unfortunately

2    is just get your application turned in and try to get in

3    touch with the public defender's office to the best of your

4    ability because they have investigators, they have support

5    staff and they have attorneys themselves that can look into

6    these circumstances and try to find out what's going on with

7    the rest of the people in your home while you're currently

8    being detained.

9            THE DEFENDANT:    That's why I need to -- I can

10   figure all of that out, but I can't do that from here.  Like

11   I don't --

12           MS. GORMAN:    I understand that.

13           THE COURT:    So, Miss ███████ I've continued your

14   hearing for a week.  We'll see you back on October the 23rd.

15   Thank you.

1           CERTIFICATE

2           I, ELLEN L. VINCE, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on October

5    16, 2020, I was present and reported all the proceedings had

6    in the case of STATE OF MISSOURI, Plaintiff, vs. ███████

7    ██████████ Defendant, Cause No. 2022-CR01757.

8           I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15

16        /s/Ellen L. Vince

17

18   _____

19        ELLEN L. VINCE, CCR, CSR, CM
              CCR #350

20

21

22

23

24

25

# EXHIBIT 155

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CHRISTOPHER MCGRAUGH

STATE OF MISSOURI,              )
                                )
        Plaintiff,              )
                                )
v.                              )  No. 2022-CR01216
                                )
GARY HARLOW,                    )
                                )
        Defendant.              )

## FIRST APPEARANCE HEARING

On Wednesday, July 15, 2020, the above-entitled

cause came on regularly for hearing before the

Honorable Christopher McGraugh, Judge of Division

16B of the Twenty-Second Judicial Circuit in the

City of St. Louis.

### APPEARANCES

The State of Missouri was represented by

Nicholas Fischbach, Assistant Circuit Attorney, City

of St. Louis, State of Missouri.

The Defendant was represented by Eric Barnhart,

Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 21083

 1                    THE COURT:  We are here on the matter

 2     of State of Missouri vs. Gary Harlow, Cause No.

 3     2022-CR01274.  This matter is before the Court for

 4     an initial appearance.

 5                    Mr. Harlow, looks as though you were

 6     locked up a couple days ago.

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  Okay.  All right.

 9     Mr. Harlow, we're here for what's called an initial

10     appearance.  That's to discuss the offense, your

11     rights as it relates to the offense, particularly

12     your rights to an attorney, and what sort of

13     conditions of bond that would be plausible that

14     would assure your return here to court as well as

15     keep the community safe.

16                    Appearing by way of -- as a special

17     appearance solely for the purposes of this hearing

18     is Eric Barnhart.  He's here to represent your

19     interests solely for the purposes here, and also

20     present for this initial appearance is Nicholas

21     Fischbach as Assistant Circuit Attorney.

22                    Mr. Harlow -- well, first I'll ask

23     Mr. Barnhart.  Do you request that there be a formal

24     reading of the charges, Mr. Barnhart, to Mr. Harlow?

25                    MR. BARNHART:  We'll waive the formal

1    reading of the complaint and enter a plea of not

2    guilty.

3                    THE COURT:  Presently, Mr. Harlow,

4    the recommendation for the bond in this matter is no

5    bond.  Is there -- can you tell me what your

6    financial condition is, Mr. Harlow?  Is there any

7    bond that you can make?

8                    THE DEFENDANT:  I can -- if I get out

9    today, I could pay up to probably $500.

10                   THE COURT:  A $500 bond?

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  Do you have a job?

13                   THE DEFENDANT:  I have two jobs.

14                   THE COURT:  You have two jobs.  What

15   kind of work do you do?

16                   THE DEFENDANT:  I've been a carpenter

17   for 22 years.

18                   THE COURT:  It looks as though you

19   have another pending case, a domestic assault case.

20   Is that right?

21                   THE DEFENDANT:  Yes.  Yes, sir.

22   What's going on is --

23                   THE COURT:  Wait a minute.  You don't

24   want to talk about it.

25                   THE DEFENDANT:  Yes, sir.

```
 1                  THE COURT:  Here is the thing,
 2   Mr. Harlow, which I should have told you.  There's a
 3   court reporter sitting right next to me.  She's
 4   taking down everything I say and everything you say.
 5   You don't want to say anything that might hurt your
 6   case later, okay?
 7                  THE DEFENDANT:  Yeah.  And, well, do
 8   you mind if I say this?  I don't think it would hurt
 9   the case, but I mean, I'm not in your guys position.
10   I don't know, but can I say something?
11                  THE COURT:  I think it's better to
12   err on the side of caution because, you know, I
13   think a lot of times where we're sitting right now
14   we may not think it's going to hurt your case, but,
15   you know, it may read different later.
16                  So let me ask you.  What I'm
17   interested in is that I just noted that you
18   had -- you've got a pending case.  Does an attorney
19   represent you in that pending case?
20                  THE DEFENDANT:  No.  I go to Emass
21   and I go -- I have been checking into Emass monthly
22   for seven or eight months on that case, and then it
23   got held up and extended until September because of
24   COVID again, but I had already went seven times.
25                  THE COURT:  So you don't have an
```

1    attorney on that case?

2                    THE DEFENDANT:  No.

3                    THE COURT:  All right.

4                    Mr. Barnhart, is that correct, he's

5    not represented as to the cause 2920?

6                    MR. BARNHART:  I can look that up

7    really quickly.

8                    THE COURT:  While you're doing that,

9    Mr. Barnhart, let me ask Mr. Fischbach.

10   Mr. Fischbach, is the victim in the 2920 the same as

11   in this cause?

12                   MR. FISCHBACH:  It is, Your Honor.

13                   MR. BARNHART:  Judge, there is no

14   attorney on this case and it looks like, I think,

15   the State yesterday filed a motion to revoke bond

16   and it doesn't -- for some reason I can't click on

17   it, but there is a motion to revoke bond.

18                   THE COURT:  All right.  What's the

19   State's position as to this bond, Mr. Harlow's bond?

20                   MR. FISCHBACH:  Your Honor, in this

21   case the defendant is out on a PR bond as you've

22   already noted.  That is the only criminal history I

23   show, is that pending domestic assault third.

24   However, it is the same victim.  This strike to her

25   face, which the State submitted photos of both the

1    before and after, the stitchwork occurred in front

2    of their three children.

3              And, Your Honor, the fact that he

4    reoffended against the same victim, I recognize

5    these are allegations, but the State's position of

6    reoffending against the same victim represents

7    danger and, therefore, the State believes no bond is

8    appropriate.

9              Additionally, Your Honor, the State

10   has submitted the statement -- a lengthy statement

11   of the victim describing what this past year of

12   Mr. Harlow being on this PR bond has been like for

13   her, which I believe supports the State's position

14   that he is a danger.

15             THE COURT:  All right.  Mr. Barnhart.

16             MR. BARNHART:  I'm just reading a

17   letter from the complaining witness.  It indicates

18   that she wants him to do a little bit of jail time,

19   maybe a couple weeks.  But she really wants him to

20   get drug rehab and get him off the drugs.  She keeps

21   saying, I hope that he stays in custody for a little

22   while and when he gets out he is in drug rehab and

23   GPS monitoring and pays child support, which is a

24   desperation I have to file for.

25             I guess it sounds like she wants him

1    to do a little bit of shock time and then get some

2    drug treatment, and it sounds like she wants GPS

3    monitoring so they can help pay the child support

4    for the kids.  So I would ask -- I'm going to ask

5    Mr. Harlow a couple quick questions.

6                    THE COURT:  Sure.

7                    MR. BARNHART:  You said you can

8    afford $500 if you got out.  What happens if you

9    can't get out, Mr. Harlow?  You can't get out and

10   then post the money.  Somebody has to post the money

11   on your behalf.

12                   THE DEFENDANT:  Correct.

13                   MR. BARNHART:  Is there somebody out

14   there that can post the money?

15                   THE DEFENDANT:  Yes, sir.

16                   MR. BARNHART:  And you think $500 is

17   the most that you can come up with?

18                   THE DEFENDANT:  Maybe up to $700.

19   Whatever she -- she told me she'll do what it takes,

20   but I know that she's only got about $700 because

21   she was going to pay my rent because I ain't been

22   able to pay it because of all this stuff that's been

23   going on.  So I'm one month behind on my rent that

24   she was going to use to pay that and said she would

25   take care of this.  But I am not any danger to

1   anybody, I promise you that.

2              MR. BARNHART:  Okay.  Yeah.  I just

3   don't want you making any statements about anything.

4              THE DEFENDANT:  I understand.  Yes,

5   sir.

6              MR. BARNHART:  And GPS, you would

7   comply with GPS and stay away from the complaining

8   witness in this case, the kids?

9              THE DEFENDANT:  Yes, sir.  She moved

10  to West County, so she doesn't live anywhere around.

11             MR. BARNHART:  Okay.  And you would

12  comply with all the orders the Judge would want you

13  to -- the health exam, the drug treatment, you would

14  do it?

15             THE DEFENDANT:  Sure.

16             MR. BARNHART:  All right.  Thank you.

17  Judge, I'm going to ask for 7,000, 10 percent, put

18  him on GPS and Emass, stay away from complaining

19  witness, and have him do a -- maybe a drug

20  evaluation through Emass to see, you know, what sort

21  of problem that he has.

22             THE COURT:  Okay.  Mr. Harlow, what

23  presents a problem to me is, is that and if I -- I'm

24  laboring under an incorrect assumption, I need one

25  of the attorneys to tell me I am, but you have a

Dixon v. City of St. Louis 21090

1   pending charge in the cause that ends in 2920, a

2   domestic assault third, and that -- the victim in

3   that case is the victim in this case which occurred

4   on May of this year.  And I am assuming part of the

5   bond in the 2920 is that you're to have no contact

6   with that person, right?

7                     THE DEFENDANT:  No, sir.  That's not

8   correct.

9                     THE COURT:  All right.  Well --

10                    THE DEFENDANT:  She -- she --

11                    MR. BARNHART:  Don't say nothing,

12  okay?

13                    THE COURT:  Let me ask Mr. Barnhart

14  and Mr. Fischbach.  Is the victim in the cause that

15  ends 2920 the same victim as in this cause that ends

16  in 1274?

17                    MR. FISCHBACH:  It is the same

18  victim, Your Honor.

19                    THE COURT:  Okay.  Is a condition of

20  the bond in 2920 not to have any contact with the

21  victim in that cause?

22                    MR. FISCHBACH:  Your Honor, I am

23  looking at the bond order for that case.  It is a

24  personal recog, Emass, reporting with GPS, no

25  contact with victim.

1              THE COURT:  So I already have

2    evidence or I have some evidence that, you know,

3    even by the victim's impact statement, that you're

4    violating the conditions of your former bond.  And

5    because of that, the Court's going to deny any

6    modification of your condition of a release and is

7    going to order you to be held without bond.

8              This matter is set for first

9    appearance and review of your -- of these conditions

10   on July 22nd, 2020, at 12 o'clock.  The Court

11   further sets this matter for -- in Division 26 for

12   first appearance on August 14th, 2020, at 9:00 a.m.

13   All right.  Good luck to you, Mr. Harlow.

14           (End of proceeding)

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE

 2        I, Jenna L. Higgins, Certified Court Reporter,

 3   do hereby certify that I am an official court

 4   reporter for the Circuit Court of the City of

 5   St. Louis; that on July 15, 2020, I was present and

 6   reported all the proceedings had in the case of

 7   State of Missouri v. Gary Harlow,

 8   Cause No. 2022-CR01274.

 9        I further certify that the foregoing pages

10   contain a true and accurate reproduction of the

11   proceedings.

12

13

14

15        Jenna L. Higgins

16          Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24   TRANSCRIBED:  December 7, 2020

25
```

# EXHIBIT 156

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable Timothy J. Boyer, Judge**

STATE OF MISSOURI,           )
                             )
          Plaintiff,         )
                             )
vs.                          )     Cause No. 2122-CR00123
                             )
ERIC LAMONT CARLESS,         )
                             )
                             )
          Defendant.         )

**TRANSCRIPT OF BOND HEARING PROCEEDINGS**

        On the 20th day of January, 2021, the above-entitled cause came on for a remote videoconferenced hearing before the Honorable Timothy J. Boyer, Judge of Division 8 of the Circuit Court of the City of St. Louis, State of Missouri.

        The State of Missouri was represented by Jordan Smith, Assistant Circuit Attorney.

        The defendant was present in person via videoconferencing and was represented by his attorney, Andrew J. Sottile, Attorney at Law.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

Dixon v. City of St. Louis 21587

1           THE COURT:  All right.  We are on the record.

2      This is Cause No. 2122-CR00123, a case styled State

3      of Missouri vs. Eric Carless.  Mr. Carless is

4      present today by video.  He's present within 48

5      hours of his arrest in this case in which he faces

6      two charges, one is the Class D felony of unlawful

7      possession of a firearm, and the other is the Class

8      A misdemeanor of resisting or interfering with

9      arrest.

10          Present representing the State of Missouri is

11     Assistant Circuit Attorney Jordan Smith, and

12     Mr. Andy Sottile is here to represent Mr. Carless

13     for the purposes of this hearing and this hearing

14     alone.

15          Mr. Sottile, at this time do you waive formal

16     reading of the complaint and enter a not guilty

17     plea on behalf of Mr. Carless?

18          MR. SOTTILE:  I do, your Honor.  Thank you.

19          THE COURT:  We will enter a not guilty plea on

20     Mr. Carless' case.

21          I will notify Mr. Carless at this time that

22     the current conditions of your release are that you

23     are being held with no bond allowed; therefore,

24     I'll make a finding that you cannot make those

25     conditions of release and I'll advise you that you

                            2

1        have a right to hearings regarding the

2        modifications of those conditions.

3            We're going to conduct a hearing right now,

4        and if you still remain detained, you have a right

5        to a second hearing within seven days of today's

6        date under Rule 33.

7            THE DEFENDANT:  Do I have a bond at this time?

8            THE COURT:  You have no bond at this time, and

9        your attorney is going to argue that that should be

10       changed and I'm going to make a ruling.  Okay?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  First, I'm going to turn to Mr.

13       Smith.

14           Mr. Smith, your argument on behalf of the

15       State of Missouri with regard to Mr. Carless' bond.

16           MR. SMITH:  Yes, your Honor.  So this case

17       came out because officers were following a vehicle

18       that the plates on it came back as stolen.  They

19       were following in unmarked cars.  They saw the

20       defendant get into the car and drive it off.  They

21       followed it for a while.  He stopped and got out.

22       The police got out of their cars and announced

23       themselves.  At that point, when he realized they

24       were police officers, the defendant fled on foot.

25       While he was fleeing, detectives saw him drop a

                                3

1      gun.  They caught him and then they found the gun.

2           He has an extensive prior criminal history

3      dating back to 2012.  He was convicted of trespass

4      in the first degree, a B misdemeanor.  He was also

5      convicted of robbery in the second degree, an E

6      felony.  He received an SIS on the robbery case

7      which he did successfully complete.  In 2013 he got

8      a trespass first conviction.  He then got a

9      conviction for having a controlled substance

10     without a prescription in a jail.  He was given an

11     SIS on that, but his protection was suspended.

12          In 2015 he had distribution of controlled

13     substance, got an SIS and completed that.

14          How in 2015 he later got a UUW Subsection 1

15     for carrying and concealed.  He was given probation

16     on that, but the probation was revoked.  2017 he

17     had unlawful possession of a firearm and tampering

18     in the first degree, received probation, probation

19     revoked.

20          In 2019 he had a burglary second and stealing

21     less than $150 conviction as well as a tampering

22     first conviction.  It's my understanding he's

23     currently on parole for that, was on parole when

24     this offense occurred.  He also has a pending

25     warrant for murder in the first degree in St. Louis

4

Dixon v. City of St. Louis 21590

1    County.

2         Based on the extensive prior criminal history,

3    the numerous probation revocations, the fact that

4    he was on parole with this happened, we believe

5    that the only way to ensure his future return for

6    court dates, especially given that he also has a

7    pending murder first warrant, is to hold the

8    defendant on no bond.

9         THE COURT:  Just to check, Mr. Smith, my

10   reading of the pretrial report shows 14 prior

11   convictions and that he's on parole on four

12   separate cases.  Is that your understanding?

13        MR. SMITH:  The parole, yes.  With the

14   convictions, I was going off what we had in the

15   computer.  I know the pretrial report shows -- I

16   have no reason to doubt those additional

17   convictions, but that's what I could verify.

18        THE COURT:  Thank you, Mr. Smith.

19        Mr. Sottile, argument on behalf of Mr.

20   Carless?

21        MR. SOTTILE:  Yes, your Honor.

22        Can I ask Mr. Smith, is there a case filed or

23   is that just a wanted for questioning in the murder

24   in St. Louis County?

25        MR. SMITH:  I was looking for it, and I

                              5

1    couldn't find a case on case.net, so I think it's

2    just a wanted for questioning, but I don't know

3    where it is.  All I know is it's an active warrant

4    and it's for murder first.

5        MR. SOTTILE:  Your Honor, thank you.  I would

6    still ask the Court to consider releasing

7    Mr. Carless on bond.  I know he does have a lengthy

8    criminal record, some of it is fairly old, but I

9    know some of it does extend into the present as he

10   is on parole.

11       He's a lifelong resident of St. Louis.  He

12   lives here.  He has ties to the community.  His

13   girlfriend is here.  He has two children that live

14   with him and he's taking care of.  He was gainfully

15   employed before he's locked up on this, so I would

16   submit to the Court that the Court could put a

17   number of conditions in place such as house arrest,

18   GPS monitoring, et cetera, that would ensure the

19   safety of the community.  And I think also that he,

20   because of his ties to the community here, he's

21   going to make all court appearances.

22       And obviously the wanted, the Court is aware,

23   that's concerning, but it is just a wanted based on

24   the information that we have and the State has at

25   this point.  I think it would be different if there

6

1          was a case actually filed.  So I'd ask the Court to

2          consider releasing him.

3               THE COURT:  Mr. Sottile, based on, I know it's

4          been brief representation of Mr. Carless, do you

5          believe he has the capacity to post any monetary

6          bond?

7               MR. SOTTILE:  I do not believe he has the

8          capacity to post a bond since he's locked up right

9          now.  And I would advise him if no bond is set here

10         today, he needs to immediately apply for the

11         services of the public defender.  It takes them a

12         while to see him, but they could possibly get more

13         information at a later date which could be helpful

14         in front of another judge.

15              THE DEFENDANT:  I'm sorry, your Honor, I

16         just --

17              THE COURT:  Hold on, Mr. Carless.  Before you

18         say anything, I want to make sure that you

19         understand that in this hearing you have a right to

20         remain silent, you have a right to retain counsel

21         or request the appointment of counsel, and if you

22         choose not to remain silent, any statements you say

23         may be used against you.  I want to make sure you

24         understand your rights before you say anything, and

25         I would implore you to talk to Mr. Sottile about

                                    7

1          what you're considering saying before you say it.

2                  Does that make sense, Mr. Carless?

3                  THE DEFENDANT:  Yes, I do.

4                  THE COURT:  Let's go off the record briefly so

5          that you can talk to Mr. Sottile, and if you still

6          want to make a statement, we'll go back on the

7          record.  Okay?

8                  THE DEFENDANT:  Yes, sir.

9                  THE COURT:  So, Tina, we'll go off the record

10         for a moment.

11                 (Discussion off the record.)

12                 THE COURT:  Mr. Sottile, do you believe that

13         Mr. Carless would like to address the Court at this

14         time?

15                 MR. SOTTILE:  Yes, your Honor.

16                 THE COURT:  Would you like to do it in a Q and

17         A form or just let Mr. Carless talk?

18                 MR. SOTTILE:  I would probably present it, if

19         that's okay.

20                 Mr. Carless, is it okay if I summarize what

21         you just told me?

22                 THE DEFENDANT:  Yes, sir.

23                 THE COURT:  Thank you, Mr. Sottile.

24                 MR. SOTTILE:  Thank you, your Honor.

25                 Mr. Carless wanted me to let the Court know

                                8

1     and the prosecutor that he's a changed man and that

2     his intent is to work and take care of his

3     children.  Those are his primary goals.  So he

4     wanted me to convey that to the Court.  He asked

5     the Court to consider giving him a chance on bond

6     to show the Court that he is changed and he's just

7     going to take care of his kids and work.  Thank

8     you.

9          THE COURT:  Thank you, Mr. Sottile, and thank

10    you, Mr. Smith.

11         After hearing the evidence and considering all

12    of the factors under Rule 33, at this time the

13    Court will make a finding that it is going to deny

14    the request for modification of conditions of

15    release.  The Court relied on factors in making

16    that finding.

17         Specifically, the Court makes a finding that

18    the defendant has, the Court believes, 14 prior

19    convictions, including at least two prior

20    convictions involving firearms; that he's on parole

21    on at least four different cases; that he's wanted

22    for murder out of St. Louis County.  And the Court,

23    based on those factors specifically, does not

24    believe that the safety of the community can be

25    secured with a bond and will deny the request for

9

1      modification of conditions of release.

2           The Court will set the matter for an

3      additional bond hearing pursuant to Rule 33.05 on

4      January 27th, 2021, at 12 p.m., and the defendant's

5      next appearance on this case in general will be in

6      Division 25 on February 25th of 2021 at 9 a.m.

7           That will conclude the record.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10

1

2                          **REPORTER'S CERTIFICATE**

3              I, Tina M. Givens, Registered Professional
         Reporter & Certified Court Reporter, do hereby
4        certify that I am the Official Court Reporter for
         Division 8 of the Circuit Court of the City of St.
5        Louis, State of Missouri; that on September 9,
         2019, I was present in Division 16B and reported
6        all the proceedings had in the case of STATE OF
         MISSOURI, Plaintiff, vs. ERIC LAMONT CARLESS,
7        Defendant, Cause No. 2122-CR00123.

8

9              I further certify that the foregoing pages
         contain a true and accurate reproduction of the
10       proceedings.

11

12

13             I hereunto set my hand on this 10th day of
         February, 2021.

14

15

16

17

18

19             /s/ Tina Givens
               Tina Givens, CCR #481

20

21

22

23

24

25

                                   11

# EXHIBIT 157

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable Timothy J. Boyer, Judge**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause Nos. 2122-CR00135 |
| | ) | 2122-CR00141 |
| ROBERT E. DICKENS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**TRANSCRIPT OF BOND HEARING PROCEEDINGS**

On the 20th day of January, 2021, the above-entitled cause came on for a remote videoconferenced hearing before the Honorable Timothy J. Boyer, Judge of Division 8 of the Circuit Court of the City of St. Louis, State of Missouri.

The State of Missouri was represented by Jordan Smith, Assistant Circuit Attorney.

The defendant was present in person via videoconferencing and was represented by his attorney, Patricia Poe, Assistant Public Defender.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

Dixon v. City of St. Louis 21614

```
 1              THE COURT:  We are on the record and we are on

 2         the record in two cause numbers, Cause

 3         No. 2122-CR00135, where the defendant faces the

 4         charge of the Class D felony of unlawful possession

 5         of a firearm, and Cause No. 2122-CR00141 where the

 6         defendant faces three counts.  Counts 1 and 2 are

 7         the Class E felonies of unlawful use of a weapon,

 8         discharge into a home, and Count 3 is the Class B

 9         misdemeanor of property damage second degree.

10         Mr. Dickens appears today by video.  He appears

11         within 48 hours of his arrest on both of these

12         cases.

13              Present representing the State of Missouri is

14         Assistant Circuit Attorney Jordan Smith, and

15         representing the defendant is Ms. Patty Poe.

16              Ms. Poe, at this time, on behalf of

17         Mr. Dickens, do you waive formal reading of the

18         complaints in these cases and enter not guilty

19         pleas?

20              MS. POE:  Yes, your Honor.

21              THE COURT:  I'm going to enter not guilty

22         pleas for Mr. Dickens in this case.

23              Ms. Poe, let me ask.  I see that Ms. Curran

24         has entered in one case.  Is she -- yes, she's

25         entered in both of the cases.
```

2

Dixon v. City of St. Louis 21615

1          All right.  I will inform Mr. Dickens that in

2     both of these cases he's currently being held with

3     no bond allowed, therefore, the Court will make a

4     finding that Mr. Dickens cannot currently meet the

5     conditions of his release.

6          Mr. Dickens, you have a right both at this

7     hearing for a review of your bond conditions and,

8     if you're still detained after today, you will have

9     a right to another hearing within seven days on a

10    modification of your conditions of release under

11    Rule 33.

12         With all that being said, I'll turn it over to

13    Mr. Smith for his position with regard to the bond

14    in Mr. Dickens' case.

15         MR. SMITH:  Yes, your Honor.  I'll start with

16    the 141 case which has two counts of discharge UUW

17    Sub 3 and property damage second.  The background

18    of this case, the victim in this case and the

19    defendant were previously in a relationship for

20    roughly a year and at some point prior to the

21    incidents here they broke up.

22         The first incident was on January 11th.

23    Police got a call for a shots fired.  They

24    responded.  The victim showed them video footage of

25    an individual that she was able to identify as the

3

Dixon v. City of St. Louis 21616

1      defendant, her ex-boyfriend, who walked up to the

2      front door, fired a shot into it and then ran.  Two

3      days later she reported another shot, again showed

4      officers camera footage of the defendant, this time

5      firing a shot into the back door and running.

6          Two days after that, on the 15th, the victim

7      was actually watching the camera and saw the

8      defendant approach the rear of the home, draw a

9      pistol, and fire one round before fleeing.  I

10     should tell the Court that on that case, although

11     there was ballistic damage to the door frame, we're

12     unable to recover ballistic evidence which is why

13     that one was charged as property damage second.

14         Jumping to the 135 case, on January 18,

15     officers were actually trying to locate this

16     defendant who was wanted on these three incidents

17     and received information that he was in the Natural

18     Bridge and Newstead area, began to canvass, saw

19     someone who matched that description and stopped

20     him for a field interview.  He identified himself

21     as the defendant, was taken into custody, and a

22     search incident to arrest produced a firearm.

23         He has prior convictions dating back to 1989

24     for possession of a controlled substance.  He was

25     put on probation for that and revoked.  He has

4

Dixon v. City of St. Louis 21617

1        three domestic assault in the third degree

2        convictions from 2004, 2007, 2009.  This is prior

3        to the update in the statutes so two of them are A

4        misdemeanors, however the third one, because it was

5        his third or subsequent offense, was a D felony.

6        On two of those he also picked up two assault

7        third, one was for assaulting a law enforcement

8        officer.

9             I also have a statement from the victim that

10       I'd like to read at this time, your Honor.

11            THE COURT:  Go ahead, Mr. Smith.

12            MR. SMITH:  "Robert Dickens cannot be

13       released.  He is a danger to the community and me

14       and my family.  He's continuing to put me and my

15       children at risk, shooting into the house and

16       lighting my doors on fire on multiple occasions

17       with one-, five-, and 15-year-olds are in the home,

18       including his own son.  He's threatened that he'll

19       shoot me and leave me in the back of the house to

20       rot.  I had to get my own gun.  Please protect us."

21            Your Honor, given the escalating pattern of

22       violence, the fact it was with a firearm, the

23       defendant knows where the victim leaves and keeps

24       going to the victim's residence, firing shots in

25       the door, we believe there's an extreme danger to

5

Dixon v. City of St. Louis 21618

1        the victim should this defendant be allowed to be

2        released on bond.  I believe the only condition

3        that can secure the victim's safety in this case is

4        a condition of no bond.

5            THE COURT:  Mr. Smith, one question before I

6        turn it over to Ms. Poe.  What's the relation

7        between the victim and Mr. Dickens in this case?

8            MR. SMITH:  The victim and Mr. Dickens, they

9        are formerly in a relationship and have one child

10       in common.

11           THE COURT:  Ms. Poe, I'm going to turn it over

12       to you for argument that you want to make on behalf

13       of Mr. Dickens in both of these cases.

14           MS. POE:  Thank you, Judge.  So Mr. Dickens

15       also has two other pending cases that he's being

16       represented by Nora on.  Based on her notes that I

17       had an opportunity to review on, he was very active

18       in contacting her and keeping up with those cases.

19           Now, while with these new allegations seem

20       more serious and the State is citing that they have

21       video surveillance, we have not been provided that

22       video surveillance, and I won't believe a word of

23       that until I actually see the surveillance myself.

24           And I don't think he presents a danger to the

25       community.  The state may be able to argue that he

6

1        poses a danger to the alleged victim in the

2        shooting case, but a remedy to that would be to

3        release him on his own recognizance and house

4        arrest, GPS monitoring, I think with a stayaway

5        zone from the address of the victim's home should

6        be sufficient.

7                THE COURT:  Ms. Poe, what are the nature of

8        Mr. Dickens' other pending cases?

9                MS. POE:  I believe one of them is a delivery

10       of a controlled substance and -- or maybe it's --

11       and then an assault fourth, two counts, I believe.

12               THE COURT:  And a question that I ask on all

13       of these cases, obviously, if he's represented by

14       the public defender's office, there's been a

15       finding of indigency.  Does he have a recog on the

16       other cases and do you believe he has the

17       capability of posting any monetary bond on either

18       one of these cases?

19               MS. POE:  I'm not sure.  Unfortunately, it's

20       not in my notes from Nora regarding his bond

21       conditions in those two cases, but I would argue

22       that he's indigent as he is a public defender

23       client.

24               THE COURT:  Okay.  Anything else from either

25       Mr. Smith or Ms. Poe before I make a ruling in this

7

```
1    case?

2              MR. SMITH:  Your Honor, I know that the public

3        defender feels that there are other conditions that

4        could secure the safety.  I just want to underscore

5        for the Court that he has three separate times that

6        we know of gone to the victim's house with the sole

7        purpose of harassing her by firing shots into her

8        home.  So there's no conditions, even GPS, house

9        arrest, all he has to do is leave once, go to her

10       house once and hurt her, and there's nothing we can

11       do about it.  By the time we get the GPS

12       notification, it's too late.  That why we believe

13       the condition that secures her safety is no bond.

14             THE COURT:  Anything else?

15             MS. POE:  I would just ask that the written

16       statement be provided to me via e-mail.  It hasn't

17       been provided and I would like that for the file.

18             THE COURT:  I will ask Mr. Smith, since he's

19       provided that statement at the hearing, to make

20       sure that statement gets provided to Mr. Dickens'

21       attorney in a written form.

22             At this time, the Court is going to make a

23       finding that the defendant presents a danger to the

24       victim in this case.  I'm going to deny the request

25       for modifications of -- deny the request for
```

8

1    modification of the conditions of release.

2         In making that determination, I'm relying on

3    the fact that there's substantial evidence that

4    Mr. Dickens fired on multiple occasions into the

5    home of the victim in this case.  It's a victim he

6    was formerly in a relationship with.  On top of

7    that, he committed this crime on bond on other

8    pending cases.  He also has priors for domestic

9    violence, and this appears to be a domestic-related

10    case, and there's a prior conviction and is in

11    possession of a firearm.

12         For all of those reasons, I will deny any

13    modification to the conditions of release, and I

14    will set Mr. Dickens case for an additional hearing

15    under Rule 33.05 on January 27th, 2021, at 12 p.m.

16    in Division 16B.

17         Mr. Dickens, you'll be back here next

18    Wednesday for an additional hearing on your

19    conditions of release, so continue to work with

20    your attorneys on your cases.  Okay?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Thank you, sir.

23

24

25

9

Dixon v. City of St. Louis 21622

1

2                           **REPORTER'S CERTIFICATE**

3          I, Tina M. Givens, Registered Professional
    Reporter & Certified Court Reporter, do hereby
4   certify that I am the Official Court Reporter for
    Division 8 of the Circuit Court of the City of St.
5   Louis, State of Missouri; that on September 9,
    2019, I was present in Division 16B and reported
6   all the proceedings had in the case of STATE OF
    MISSOURI, Plaintiff, vs. ROBERT E. DICKENS,
7   Defendant, Cause Nos.  2122-CR00135 and
    2122-CR00141.

8

9          I further certify that the foregoing pages
    contain a true and accurate reproduction of the
10  proceedings.

11

12

13         I hereunto set my hand on this 10th day of
    February, 2021.

14

15

16

17

18         /s/ Tina Givens
19         Tina Givens, CCR #481

20

21

22

23

24

25

                                10

Dixon v. City of St. Louis 21623

# EXHIBIT 158

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**HONORABLE BRYAN L. HETTENBACH**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 2022-CR00725-01 |
| | ) | |
| MONIQUE LASHAE COLLIER, | ) | |
| | ) | |
| Defendant. | ) | |

**TRANSCRIPT**

**Initial Appearance Hearing held on November 30, 2020**

**APPEARANCES:**

**For the State:**

Mr. Christopher Clark
Assistant Circuit Attorney
1114 Market Street, Room 401
Saint Louis, MO 63101

**For the Defendant:**

Mr. Eric Selig
Attorney at Law
4542 W. Pine Boulevard
Saint Louis, MO 63108

**ALICE M. BAKER, CCR #0361**
**OFFICIAL COURT REPORTER**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**CITY OF ST. LOUIS**

1       **TRANSCRIPT OF PROCEEDINGS**

2              THE COURT:    We will go on the record in Case No.

3       2022-CR00725, State of Missouri versus Monique Lashae

4       Collier.  Ms. Collier is confined.  She's present by video.

5       The assistant circuit attorney is present by video.  The

6       lawyer appointed to represent Ms. Collier for this date is

7       also present by video.

8              If there is no objection, the Court will take

9       judicial notice of its file, including the pleadings and

10      documents, include those pleadings and documents as part of

11      the record in this case.

12             Ms. Collier is here on an initial appearance on a

13      hearing that has been timely scheduled following her

14      arrest.

15             Ms. Collier, we are going to do two things today.

16      Two things only.  Number one, we are going to make sure you

17      have a new court date.  Number two, I am going to review

18      the conditions of your bond or your release.  I have a

19      lawyer who is appointed to represent you for today only,

20      Mr. Eric Selig.  He'll advocate for you.

21             Mr. Selig, can we waive any formal reading of the

22      charging document, enter a plea of not guilty for the

23      defendant?

24             MR. SELIG:    Yes, Your Honor.  Thank you.

25             THE COURT:    It looks like Ms. Collier is charged

2

1    with unlawful use of a weapon and property damage, an A

2    felony and an E felony.

3            What do I need -- what is her bond now?

4            MR. CLARK:    Your Honor, the bond is set at no

5    bond.

6            THE COURT:    And what do I need to hear about

7    Ms. Collier?

8            MR. CLARK:    Your Honor, as you noted, this

9    defendant is charged with unlawful use of a weapon,

10   Subsection 9, a Class A felony, and property damage first.

11           On the 26th of this month around the area of the

12   1500 block of North 13th, City of St. Louis, officers were

13   requested by the victim in this case that he had exited off

14   of Highway I-70 at Cass and was nearly struck by a woman

15   later identified as the defendant.  She was driving a Kia

16   automobile.

17           At the stop it looks like she started displaying

18   at him.  When the light changed, she drove off and turned

19   into a gas station.  He parked his car and went in, having

20   some sort of words with her.  He was advised by an unknown

21   patron shortly after he walked away that the woman had shot

22   into his car, and surveillance video shows that her car

23   pulled up behind his and drove off quickly.

24           Several spent cartridges were found at the scene

25   and they matched with a 9-millimeter semiautomatic pistol

3

1     that was in the custody of the defendant.  The victim also

2     identified the defendant in a photo spread and lineup.

3              There is a victim statement from the -- just to

4     mention.  It starts:  My concern is not to have -- not

5     to --

6              THE COURT REPORTER:  I'm sorry.  Wait.

7     Something's wrong with the -- can we stop for a second and

8     start that over.

9              THE COURT:    Can you start -- start over on what

10    you just said.  We're having a connection difficulty with

11    you only, and my court reporter's having a hard time taking

12    down what you're saying.

13             MR. CLARK:    I apologize.  Can you hear me okay

14    right now?

15             THE COURT REPORTER:   Yes.

16             THE COURT:    That sounds better.  Whatever you did.

17             MR. CLARK:    Okay.  So the victim impact statement

18    starts:  My concern is for the defendant not to know me and

19    to fire a gun into my car.  I was dropping my grandbabies

20    off.  I worry of what she -- what would have happened had

21    she struck one of my children.  The bullet went through the

22    truck and into the back seat.

23             I think she is a danger to the community.  She did

24    not know me from a can of paint.  She was able to pull a

25    gun on me, and she did not know me at all.  What about the

4

1       people she does know.  I do not think that she is -- I do

2       not feel safe if she were to be let out.

3                    Your Honor, I would note a number of arrests for

4       domestic assaults in the defendant's criminal history.

5       There is a conviction, only a misdemeanor, 2018 conviction

6       of -- let's see -- of fleeing an arrest.  And it also

7       appears that there's a warrant out under Cause No.

8       1922-CR03346, which is an assault case that remains open.

9       An assault and a resisting case.  And that's an assault

10      where it looks like the defendant failed to appear for her

11      court date in October for that case.

12                   Your Honor, I would just note that the troubling

13      fact here is the immediate turn toward violence and the

14      immediate access to a firearm.  There was no, you know,

15      provocation whatsoever, and the defendant did not know the

16      victim at all in this case.  Given the fact that there's,

17      you know, a warrant out for an assault fourth because of a

18      failure to appear in October, I think there's also a flight

19      risk.  All those facts taken together, Your Honor, the

20      State would with be requesting no bond in this case.

21                   THE COURT:    All right.  Mr. Selig.

22                   MR. SELIG:    Your Honor, I'm sorry, I can't -- I'm

23      trying to pull up the notes from Pretrial Release.

24                   THE COURT:    What do you want to know?

25                   MR. SELIG:    I don't have -- I don't know anything

1      about Ms. Collier's background.  I don't know if she has a

2      job.  I don't know what her priors are like.  And I guess

3      it has to do with -- maybe it's because this is a -- it

4      looks like maybe she's been indicted.  There's been a grand

5      jury indictment.

6              But Your Honor, I guess I'm just going to ask that

7      you give Ms. Collier a personal recognizance bond with

8      house arrest and that that would ensure the safety of the

9      community.

10             THE COURT:    All right.  Ms. Collier, do you have a

11     lawyer?

12             THE DEFENDANT:    No, sir.

13             THE COURT:    Do you have any money to hire a

14     lawyer?

15             THE DEFENDANT:    I have a job.  I work at TGI

16     Fridays in Creve Coeur.  I'm a server.

17             THE COURT:    If I do not let you leave the building

18     today, if I continue your case for another week so you're

19     still confined for at least a few more days, are you going

20     to be able to hire a lawyer?

21             THE DEFENDANT:    Sir, my job -- I'm a server so

22     it's -- I work for minimum wage basically, but I work for

23     tips.  So I would definitely -- like Mr. Eric say, I would

24     be willing to consent to, like, a GPS monitor or arm wrist

25     system, but, you know, the majority of my income comes from

Dixon v. City of St. Louis 21681

1    myself.  I haven't been in any trouble.  This was an

2    accused incident that happened and --

3                THE COURT:    All right.  Let me ask -- let me you

4    this.  Do you have any money available today to hire a

5    lawyer?

6                THE DEFENDANT:    Not on -- not on my person, but

7    I'm able to get some.

8                THE COURT:    All right.  I'm going to make the

9    finding that the defendant is indigent and appoint the

10   Public Defender.  I am reminding Ms. Collier, you still

11   need to fill out paperwork, your application, if you want a

12   public defender.  We will transmit this order to the Public

13   Defender so they're aware of that appointment, but you need

14   to fill out the paperwork.

15               After consideration of the arguments made, I'm

16   going to hold Ms. Collier until next week.  We'll give her

17   a court date on December the 7th at 12:00 noon.  We'll give

18   her a further court date in Division 25 on January 20th,

19   2021, at 9:00 a.m.  With any luck, we can have a public

20   defender here next week who can have a little more

21   information, can better advocate for Ms. Collier.

22               Anything else we need to do for Ms. Collier today?

23               MR. SELIG:    No, Your Honor.

24               THE COURT:    Then that will conclude the hearing on

25   that matter.

Dixon v. City of St. Louis 21682

1 **CERTIFICATE**

2        I, Alice M. Baker, Certified Court Reporter, do

3 hereby certify that I am an Official Court Reporter for the

4 Circuit Court of the City of St. Louis; that on November

5 30, 2020, I was present and reported the proceedings had in

6 the case of STATE OF MISSOURI, Plaintiff, vs. MONIQUE

7 LASHAE COLLIER, Defendant, Cause No. 2022-CR00725-01.  I

8 further certify that the foregoing pages contain a true and

9 accurate reproduction of the proceedings.

10

11

12                    /s/ Alice M. Baker

13            ALICE M. BAKER, CCR #0361

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 159

# IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI
### HONORABLE BRYAN L. HETTENBACH

STATE OF MISSOURI,        )
                               )
         Plaintiff,        )
                               )
      vs.               )   Cause No. 2022-CR01986
                               )
WILLIAM JERMAINE CALHOUN,  )
                               )
         Defendant.     )

## TRANSCRIPT

**Initial Appearance Hearing held on November 30, 2020**

## APPEARANCES:

**For the State:**

Mr. Christopher Clark
Assistant Circuit Attorney
1114 Market Street, Room 401
Saint Louis, MO 63101

**For the Defendant:**

Mr. Eric Selig
Attorney at Law
4542 W. Pine Boulevard
Saint Louis, MO 63108

### ALICE M. BAKER, CCR #0361
### OFFICIAL COURT REPORTER
### TWENTY-SECOND JUDICIAL CIRCUIT
### CITY OF ST. LOUIS

## <u>TRANSCRIPT OF PROCEEDINGS</u>

1

2      THE COURT:    All right.  Then we will go on the

3  record in Case No. 2022-CR01986, styled State of Missouri

4  versus William Jermaine Calhoun.  Mr. Calhoun is confined

5  and is present by video.  The assistant circuit attorney is

6  present by video, and we have a lawyer representing

7  Mr. Calhoun for today who is also present by video.

8           If there is no objection, the Court will take

9  judicial notice of its file, including all of the pleadings

10  and documents in the file, include those pleadings and

11  documents as part of the record in this case.

12           Mr. Calhoun is here on his initial court

13  appearance following a timely scheduled appearance

14  following his arrest.

15           Mr. Calhoun, we're going to do two things today,

16  and only two things.  Number one, we're going to review

17  your conditions of bond or detention.  And number two,

18  we're going to make sure you have another court date.

19  There will be another date and a place and time for you to

20  tell your side of the story in this case.  Today is not

21  that date or that time.

22           So can I get you to agree to answer my questions

23  and any questions your lawyer may ask you only about your

24  court date and about the conditions of your bond?  Can we

25  agree on that, sir?

2

1          THE DEFENDANT:    Yes, sir.

2          THE COURT:    All right.  Then Mr. Selig, can we

3    waive any formal reading of the charging document and enter

4    a plea of not guilty for Mr. Calhoun?

5          MR. SELIG:    Yes, we can, Your Honor.  Thank you.

6          THE COURT:    All right.  Is Mr. Calhoun held now on

7    no bond?

8          MR. CLARK:    Yes, Your Honor, he is.

9          THE COURT:    And what do I need to hear from the

10   State about Mr. Calhoun?

11         MR. CLARK:    Your Honor, he is charged currently

12   with assault first, as well as armed criminal action.  The

13   incident in question took place on the 18th of this month

14   in the 4600 block of Minnesota Avenue in the City of St.

15   Louis.  The victim recorded that he -- or excuse me.  The

16   officer reported that he responded to a call at -- excuse

17   me.  The victim responded to a call from his sister about

18   being assaulted by the defendant in her home on the 4600

19   block of Minnesota.

20         Upon arrival, the defendant displayed a pistol and

21   ordered the victim to leave.  As the victim walked to his

22   vehicle, the defendant exited the side door of the home and

23   took several shots at the victim from the gangway of that

24   house in the 4600 block of Minnesota.  Officers seized

25   several shell casings from that gangway.

3

1          The victim and the witness present -- and a

2     separate witness present at the scene know the defendant,

3     and both verified his identity in a photographic lineup

4     with blind administrators.

5          Your Honor, the defendant here has a troubling

6     criminal record.  I'll just draw the Court's attention to

7     Cause No. 1322-CR02503-01, where the defendant was

8     convicted for shooting from a motor vehicle.  He was

9     sentenced to fifteen years for that.  Unlawful possession,

10     resisting, pled guilty on the 12th of -- or excuse me,

11     December of 2013 for all those.  So he's currently out on

12     parole for that charge.

13          In addition, there are several other convictions

14     for domestic assaults, and probation was revoked for that

15     domestic assault charge in 2008.  There are a number of

16     arrests.

17          The violent nature of this crime, Your Honor, as

18     well as kind of the pattern of violent activities, notably

19     that shooting from a car in 2013 for which the defendant is

20     still on parole while he committed this, the State would be

21     requesting no bond as the only option for ensuring the

22     safety of the community.

23          THE COURT:    All right.  Mr. Selig.

24          MR. SELIG:    Your Honor, I do have a question, and

25     it really is for Mr. Calhoun.  Maybe Mr. Clark can tell us,

4

Dixon v. City of St. Louis 21746

1     it looks like there's a possibility that he -- that

2     Mr. Calhoun is on federal supervised release?

3               Is that something that's current, Mr. Calhoun?

4               THE DEFENDANT:    Can you run that by me again?

5               MR. SELIG:    Are you currently on federal

6     supervised release?

7               THE DEFENDANT:    Yes, sir.

8               MR. SELIG:    Okay.  Your Honor, what I guess --

9     what I'm asking for is for him to actually be placed on a

10    personal recognizance so that he can get into the federal

11    system and be in temporary federal custody, which is

12    something that, you know, seems to work better for

13    individuals so that they don't end up getting consecutive

14    time for their state and their federal times.

15              THE COURT:    All right.  Mr. Calhoun, what is

16    the -- what is your plan for hiring a lawyer, sir?

17              THE DEFENDANT:    I don't have no lawyer.

18              THE COURT:    Do you have any money to hire a

19    lawyer?

20              THE DEFENDANT:    Not as of right now.

21              THE COURT:    Say that again.

22              THE DEFENDANT:    Not as of right now I don't.

23              THE COURT:    All right.  Then the Court is going to

24    make a finding that the defendant is indigent, and I'm

25    going to appoint the Public Defender pursuant to Rule

5

1      31.02.  I am reminding Mr. Calhoun that you still need to

2      fill out the paperwork that you can ask for over at the

3      jail to apply for Public Defender.  We will pass this memo

4      on so they'll get the notice that I've made this finding,

5      but they still want you to fill out the paperwork.

6                    Do you understand that, sir?

7                    THE DEFENDANT:    Mm-hmm.

8                    THE COURT:    All right.  Then the Court is going to

9      at this time deny the request for modification of condition

10     of release.

11                   Mr. Selig, I think you made a good argument about

12     the federal supervision.  However, I'm going to leave that

13     to next week, December the 7th, at 12:00 noon.  Perhaps

14     Mr. Calhoun can get his own lawyer who can advocate that

15     for him at that time.

16                   I'm going to set this matter for a hearing in

17     Division 26 on January 20th, 2021, at 9:00 a.m.

18                   Anything else we need to do for Mr. Calhoun today?

19                   MR. SELIG:    No, Your Honor.

20                   THE COURT:    Mr. Calhoun, do you have any

21     questions, sir?  We will see you back here next week with

22     your -- hopefully with your public defender.

23                   (The proceedings were concluded.)

24                           * * * * * * *

25

6

Dixon v. City of St. Louis 21748

## CERTIFICATE

1

2          I, Alice M. Baker, Certified Court Reporter, do

3     hereby certify that I am an Official Court Reporter for the

4     Circuit Court of the City of St. Louis; that on November

5     30, 2020, I was present and reported the proceedings had in

6     the case of STATE OF MISSOURI, Plaintiff, vs. WILLIAM

7     JERMAINE CALHOUN, Defendant, Cause No. 2022-CR01986.  I

8     further certify that the foregoing pages contain a true and

9     accurate reproduction of the proceedings.

10

11

12                    /s/ Alice M. Baker

13                ALICE M. BAKER, CCR #0361

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 160

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CHRISTOPHER MCGRAUGH

STATE OF MISSOURI,            )
                              )
    Plaintiff,              )
                              )
v.                            )   No. 1922-CR03849
                              )
█████████████████            )
                              )
    Defendant.              )

## FIRST APPEARANCE HEARING

On Wednesday, July 15, 2020, the above-entitled cause came on regularly for hearing before the Honorable Christopher McGraugh, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

### APPEARANCES

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Eric Barnhart, Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

```
 1                    THE COURT:  We are on the record in

 2    the matter of State of Missouri v. ████████    It's

 3    Cause No. 1922-CR03849.  This matter is before the

 4    Court for an initial appearance.

 5                    Mr. ████ this indicates that --

 6    when were you taken into custody, Mr. ████

 7                    THE DEFENDANT:  Judge, July the 7th

 8    -- or, I think, the 8th.

 9                    THE COURT:  July the 8th?

10                    THE DEFENDANT:  July the 8th, I

11    think, or the 7th.  One of them.  I think it was

12    Wednesday -- last Wednesday.

13                    THE COURT:  Okay.  I have it down for

14    an initial appearance.  Is this a detention?

15                    THE CLERK:  It's initial appearance.

16    They just gave it to me.

17                    THE COURT:  Okay.  All right.

18                    MR. FISCHBACH:  Your Honor, he may

19    have been in medical isolation.  Let me check.

20                    THE CLERK:  They didn't tell me he

21    was in medical.

22                    THE COURT:  He should appear within

23    48 hours.

24                    MR. FISCHBACH:  No, Your Honor.  This

25    is not one of the ones in medical.  I show he was --
```

3

1    the warrant was served on 7/9.

2                    THE COURT:  All right.  Well, it's

3    7/15.  Were you in a different jurisdiction,

4    Mr. ███████  Were you locked up somewhere else?

5                    THE DEFENDANT:  No.  The city.  I was

6    right here.  I was right here.

7                    THE COURT:  All right.  Well,

8    Mr. ███████ you're charged in a number of offenses:

9    Trafficking drugs, unlawful use of a weapon,

10   unlawful possession of a firearm, resisting arrest

11   and unlawful possession of drug paraphernalia.  You

12   have certain rights.  Particularly, you have a right

13   to counsel and you have rights at this initial

14   appearance.

15                   On appearing as a special -- for a

16   special appearance solely for this initial

17   appearance, Eric Barnhart is here to represent you

18   just for the purposes of this initial appearance.

19   Also appearing by way of video is Assistant Circuit

20   Attorney Nicholas Fischbach.

21                   Mr. Barnhart, do you request formal

22   reading of the charges in this matter?

23                   MR. BARNHART:  Judge, we'll waive the

24   reading of the charges and enter a plea of not

25   guilty.

1                    THE COURT:  Okay.  The Court will

2    receive the not guilty plea and enter that today.

3                    Mr. ███████ are you able to retain

4    counsel in this matter?  Are you able to hire a

5    lawyer?

6                    THE DEFENDANT:  Yes.  My father is

7    trying to get me one now.

8                    THE COURT:  I'm sorry?

9                    THE DEFENDANT:  Yes.  My father is

10   trying to get me an attorney.

11                   THE COURT:  Okay.  Your father is

12   hiring you an attorney.  Do you know what attorney

13   your father is hiring?

14                   THE DEFENDANT:  Jermaine.

15                   THE COURT:  Jermaine Wooten?

16                   THE DEFENDANT:  Yeah.

17                   THE COURT:  Okay.  Have you spoken to

18   Mr. Wooten?

19                   THE DEFENDANT:  My father is supposed

20   to be talking to him today.

21                   THE COURT:  Okay.  So you're not

22   requesting to be interviewed by the public defender

23   to determine whether you're eligible for their

24   services?

25                   THE DEFENDANT:  Yeah.  I mean, he can

1    get one.

2                THE COURT:  Do you want to talk to

3    the public defender's office to determine whether

4    you're eligible for their services?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Okay.  Prior to being

7    locked up, Mr. ████ did you have a job?

8                THE DEFENDANT:  I was working with my

9    father at his store.

10               THE COURT:  Your father owns a store?

11               THE DEFENDANT:  Yes, sir.

12               THE COURT:  Do you own any property?

13               THE DEFENDANT:  No.  No, sir.

14               THE COURT:  Do you have any bank

15   accounts?

16               THE DEFENDANT:  No, sir.

17               THE COURT:  Do you receive any

18   government benefits?

19               THE DEFENDANT:  No, sir.

20               THE COURT:  Mr. ████ I know your

21   bond is at 45,000 cash.  I'm assuming you're -- you

22   don't have $45,000 hanging around, do you?

23               THE DEFENDANT:  45,000, no, sir.

24               THE COURT:  What sort of bond can you

25   make, sir?

```
 1                    THE DEFENDANT:  I guess I've got to
 2      talk to my father and try to see.
 3                    THE COURT:  Do you think you can make
 4      some sort of cash bond?
 5                    THE DEFENDANT:  Probably so.  Yes,
 6      sir.
 7                    THE COURT:  Okay.  But you're not in
 8      the position now to tell us what sort of cash bond
 9      you would be able to make?
10                    THE DEFENDANT:  After talking with
11      him.  Not at this time, no.
12                    THE COURT:  What is the State's
13      position on Mr. ████████ bond?
14                    MR. FISCHBACH:  Your Honor, the State
15      would be requesting given the facts of his criminal
16      history, he's on probation at the moment, the State
17      would be requesting the defendant for a cash bond of
18      some variety with a no firearms position.
19                    THE COURT:  Mr. ██████ are you on
20      probation in another case?
21                    THE DEFENDANT:  Yes, sir.
22                    THE COURT:  Is there a hold on you as
23      it relates to that probation?
24                    THE DEFENDANT:  No.  She received it
25      yesterday.  She said if I get released, call her.
```

```
 1                    MR. BARNHART:  Judge, he's on

 2    probation with Judge Sullivan and no bond.

 3                    THE COURT:  Okay.  What is he on

 4    probation for?

 5                    MR. BARNHART:  I can look that up

 6    real quick.  I just know that on 2/29 of this year

 7    Judge Sullivan issued a warrant and a no bond.  I

 8    can look it up real quick.

 9                    THE COURT:  It looks like he has got

10    another UUW and a possession of a firearm from 2017

11    and he received seven years on it, so it looks like

12    he's got -- maybe he's got a seven-year backup.

13                    MR. BARNHART:  Yes.

14                    THE COURT:  Okay.  All right.  Well,

15    the purpose -- Mr. ███████  the purpose of this

16    hearing is to determine whether you're going to

17    receive -- whether you're going to obtain counsel to

18    represent you, to determine whether there is any

19    sort of bond condition that would either make sure

20    you would return to this jurisdiction for

21    adjudication of the pending charge as well as the

22    probation matter, as well as to advise you of your

23    rights as it relates to Missouri Supreme Court Rule

24    33.06, which means you have got a right to this

25    hearing now as well, and if I detain you, you have a
```

1    right to a detention hearing seven days from today.

2                    Presently the bond is at $45,000

3    cash.  It's my understanding that generally cash

4    bonds -- or at any time monetary bonds are not

5    permitted if, in fact, we're to determine that the

6    defendant is unable to make any sort of financial

7    bond.

8                    As such, I am going to modify the

9    condition of this bond and note this is to be a no

10   bond case, as, I believe, that given the fact that

11   Mr. ███ is on probation with seven years backup

12   that there is a question whether we can have

13   Mr. ███ return back here to court for adjudication

14   of this charge as well as the bond conditions; as

15   well as given the offenses, particularly the

16   trafficking drugs, a B felony, and the second UUW in

17   this case, the defendant presents a danger to the

18   community.

19                   The Court will set this matter for a

20   detention hearing on July 22nd, 2020, at noon, I

21   guess.  This case will go to Division 25 for an

22   arraignment on August 14th at 9:00 a.m., okay?

23                   Good luck to you, Mr. ███

24        (Proceedings concluded.)

25

```
 1                        CERTIFICATE

 2          I, Jenna L. Higgins, Certified Court Reporter,

 3     do hereby certify that I am an official court

 4     reporter for the Circuit Court of the City of

 5     St. Louis; that on July 15, 2020, I was present and

 6     reported all the proceedings had in the case of

 7     State of Missouri v. ███████████████

 8     Cause No. 1922-CR03849.

 9          I further certify that the foregoing pages

10     contain a true and accurate reproduction of the

11     proceedings.

12

13

14

15          _____Jenna L. Higgins_____

16               Jenna L. Higgins, CCR 998

17

18

19

20

21

22

23

24     TRANSCRIBED:  January 12, 2021

25
```

# EXHIBIT 161

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Lynne Perkins, Judge

STATE OF MISSOURI,            )
                              )
            Plaintiff,        )
                              )    Cause No. 1922-CR02384
                              )
vs.                           )
                              )
█████████████████ , )    Division No.16B
                              )
            Defendant.        )

BOND REVIEW HEARING

        On the 21st day of August, 2019, the

above-entitled cause came on for hearing before the

Honorable Lynne Perkins, Judge of Division No. 16-B of the

Circuit Court of the City of St. Louis.

        The State of Missouri was represented by Nick

Lake, Assistant Circuit Attorney, City of St. Louis.

        The defendant was present via video conference

and was represented by his attorney, Chris Faerber,

Attorney at Law.

                MARGARET R. COLE, CCR
                SWING COURT REPORTER
            CITY OF ST. LOUIS CIRCUIT COURT
            TWENTY-SECOND JUDICIAL CIRCUIT

1                          AUGUST 21, 2019

2                  THE COURT:    Today is August 21st, 2019.  We are in

3       Division 16-B of the 22nd Judicial Circuit Court for the

4       City of St. Louis.  We're here in Cause Number 1922-CR02384

5       styled State of Missouri versus ████████████████ .

6                  Let the record reflect the defendant,

7       Mr. ██████████ , is present in court via satellite

8       communication from the City of St. Louis Justice Center.

9       Also present in the courtroom is Assistant Circuit

10      Attorney Lake and a court appointed private attorney

11      representing the defendant, Mr. Chris Faerber.

12                  Mr. Lake, could you please relay to the court

13      the State's position as to Mr. ██████████ 's current bond

14      setting for -- listen up, Mr. ██████████ .  You are charged

15      with possession of a controlled substance, which is a

16      Class D felony, and unlawful possession of a firearm, also

17      a Class D felony.  Your current bond is set at no bond

18      allowed.

19                  Okay.  Mr. Lake, you may proceed.

20                  MR. LAKE:    Thank you, Your Honor.  The State would

21      request that the Court take judicial notice of its court

22      file and the Bond Commissioner's report in this case.

23                  THE COURT:    The Court shall take judicial notice

24      of both items.

25                  MR. LAKE:    Thank you, Your Honor.  The State's

1    position is that the bond, which is currently set at no bond

2    allowed, is appropriate to ensure the safety of the

3    community.

4              Your Honor, this is essentially a case where

5    police conducted a traffic stop.  During the course of

6    that stop they discovered the defendant to have in his

7    possession both illegal narcotics, which was later

8    analyzed to be methamphetamine, as well as a firearm.

9              In terms of prior convictions showing that the

10   defendant from -- has a prior conviction for robbery in

11   the second degree as well as assault in the second degree.

12   It should be noted that he did receive -- well, he was on

13   parole for these matters.

14             THE COURT:    Parole or probation?

15             MR. LAKE:    Parole.

16             THE COURT:    So he was sentenced to prison?

17             MR. LAKE:    Correct, Your Honor.

18             THE COURT:    What years were these?

19             MR. LAKE:    Let me back up.  This was from 2015,

20   Your Honor.  That was the finding of guilt.  He received

21   five years confinement.

22             MR. FAERBER:    It was a 2013 case so I imagine he

23   12/12'd in '18.

24             MR. LAKE:    Well, that's what I was going to say.

25   It should be noted that he completed parole or was taken off

1    of parole in June of last year but, nevertheless, I would

2    argue that just barely a year after being taken off of

3    parole here we are where the defendant again is found within

4    his possession a controlled substance as well as a firearm.

5               It should also be noted that I'm showing he does

6    have an active case in St. Louis County, which there is a

7    failure to appear.  It looks like he received a

8    recognizance and his current bond in that matter is set at

9    $5,000 cash only.  It looks like the charge is for

10   possession of a controlled substance.

11              Your Honor, the State's position again is that

12   given the defendant's prior history, violent history,

13   again, robbery second and assault second, the fact that he

14   was found with both drugs and a firearm in this case makes

15   him a danger to the community and so we will be opposed to

16   a bond reduction at this time.

17              THE COURT:    Mr. Lake, can you tell me where in the

18   criminal justice system is that St. Louis County possession

19   case?  Is it in Circuit Court or Associate Circuit Court, if

20   you have that information?  I'm curious.

21              MR. LAKE:    I can look it up on Casenet, Your

22   Honor.

23              THE COURT:    It's still Associate Circuit Court.

24              Mr. Faerber.

25              MR. FAERBER:    Your Honor, I have a few questions

1    for Mr.████████, if I may.

2                    THE COURT:    You may.

3                    MR. FAERBER:    Mr. ████████, my name is Chris

4    Faerber.  I'm the attorney appointed to represent you today

5    for this hearing and this hearing alone.  Let's not talk

6    about any facts in any way involved with this case.  This is

7    just going to be about you, your connections to the

8    community, and a little bit of your background, okay?

9                    THE DEFENDANT:    Yes.

10                    MR. FAERBER:    How long have you lived in St.

11   Louis, Mr. Johnson?

12                    THE DEFENDANT:    My entire life.

13                    MR. FAERBER:    Who do you live with?

14                    THE DEFENDANT:    Currently right now a family

15   member.

16                    MR. FAERBER:    What family member?  Cousin, uncle?

17                    THE DEFENDANT:    Yeah, a cousin.

18                    MR. FAERBER:    So you have a place to stay?

19                    THE DEFENDANT:    Yes.

20                    MR. FAERBER:    Were you working when you got picked

21   up?

22                    THE DEFENDANT:    Could you repeat that, please?

23                    MR. FAERBER:    Did you have a job when you got

24   arrested?

25                    THE DEFENDANT:    No, sir.  I just do on the side

1    and do a little grass cutting for the lady on our block

2    that's the Neighborhood Watch and cut a little grass and do

3    stuff for her.

4                    MR. FAERBER:    Have you ever held down a job like a

5    part time job or anything like that?

6                    THE DEFENDANT:    Can you repeat that?

7                    MR. FAERBER:    Have you ever held down a job like a

8    paycheck?

9                    THE DEFENDANT:    No, sir.

10                   MR. FAERBER:    Okay.  How far did you go in school?

11                   THE DEFENDANT:    To my junior year.

12                   MR. FAERBER:    Did you get a GED or anything?

13                   THE DEFENDANT:    No, sir.

14                   MR. FAERBER:    Would you be interested in doing

15   that?

16                   THE DEFENDANT:    Yes, sir.  I was fixin' to go

17   receive my GED.  I got released from prison so I never got

18   my certificate.

19                   MR. FAERBER:    Thank you.

20                   THE COURT:    Mr. Bond Commissioner, do you have

21   anything that you would like to add, please?

22                   BOND COMMISSIONER:    No, we don't have any

23   additional information, Judge.

24                   THE COURT:    Mr. Lake.

25                   MR. LAKE:    Your Honor, the State has nothing to

1     add to what it already stated in my opening argument.

2            THE COURT:    Mr. Faerber.

3            MR. FAERBER:    Your Honor, the Complaint -- well,

4     basically the recorded alleged facts of this case are the

5     defendant was pulled over with somebody else in a Ford F150

6     that was reported stolen.  They pulled over.  No one pulled

7     away.  No one ran away.  They did exit the truck and then

8     the officers placed my client in handcuffs and searched him.

9     They did not find a gun on him.  They found a gun under the

10    driver's seat in the truck.  Again, all this is allegedly.

11            But not his truck.  The gun very well could have

12    been there.  It's not on his person.  There's another

13    person there so as far as the gun, gun, gun tying it

14    directly to him is going to be a little bit difficult.

15    Otherwise, we're dealing with a drug case, which is a

16    non-violent offense.

17            So he was able to walk down parole, and while he

18    does have a failure to appear in the county that's only

19    one failure to appear.  I would ask that he be released on

20    his own recognizance.  Stay with his cousin.  I'm sure he

21    could provide an address.  And potentially go out and

22    enroll in a GED program.  GPS, if the Court thinks that's

23    appropriate.  If not, a PR bond, a matching $5,000 bond

24    might be appropriate in this case to what he has in the

25    County.

1          THE COURT:    Mr. Lake, I'm looking at this Probable

2     Cause Statement which tells me that the vehicle that the

3     defendant was in was reported stolen previously?

4          MR. LAKE:    Correct, Your Honor.  So according to

5     the PC statement officers received a hit for the license

6     plate of that vehicle.  It was reported stolen, and the

7     defendant, it's my understanding, was the one observed to be

8     in the driver's seat of that vehicle when they pulled him

9     over.

10          THE COURT:    Okay.

11          MR. LAKE:    And, for the record, Your Honor, I

12     guess I'll just briefly add also, although defense counsel

13     pointed out some potential difficulties in the case, this

14     isn't a trial.  We're here to determine whether or not the

15     defendant poses a danger to the community, and, again, the

16     fact that he was observed in a stolen vehicle, a firearm was

17     recovered under the driver's seat where the defendant was

18     located, and the fact that he did have illegal narcotics on

19     his person I think indicates he does pose a danger given the

20     fact he does have these prior convictions for robbery and

21     assault in the second degree.  So I'll just add that as

22     well.

23          THE COURT:    Thank you very much.  Mr. Lake, can

24     you do me one more favor?

25          MR. LAKE:    Absolutely, Your Honor.

1          THE COURT:   Can you take a look at that St. Louis

2    County case and see were there any conditions of bond that

3    Mr. ████████ is currently on?

4          MR. LAKE:   Okay.

5          BOND COMMISSIONER:   It's an active warrant, Judge,

6    so the warrant is out there for 5,000.  That's it.

7          THE COURT:   So it's an at large warrant?

8          BOND COMMISSIONER:   It's previously -- it's a

9    failure to appear.  He was on a recog.

10         THE COURT:   Okay.  The Court has heard enough

11   testimony from both parties in this matter in which to

12   render a decision.  The Court having heard testimony from

13   both the defendant and the State is going to grant the

14   defendant's request to reduce the bond in this matter.

15         The bond shall be set at $5,000 cash only with

16   the condition that if and when the defendant posts bond

17   that he be supervised by Emass.  The defendant is to not

18   have in his possession any firearms of any type.  This

19   case will be continued to September 25, 2019 in Division

20   26.

21         MR. LAKE:   Your Honor, if I may, I just wanted to

22   request as far as that order could we possibly add no

23   possession of firearms and also not to reside at any

24   residence where he knows firearms to be present?

25         THE DEFENDANT:   Your Honor --

1              MR. FAERBER:   Mr. ███████, Mr. ███████, let's not

2    talk, okay?

3              THE DEFENDANT:   Can I just have a few words?

4              MR. FAERBER:   I would advise you not to talk.  You

5    went from no bond to 5,000 that is a very large leap in

6    reduction.

7              THE DEFENDANT:   I understand, but I just want a

8    few words.  I understand you alls verdict is fine, but I

9    just want a few words.  I just want to say that I'm hearing

10   that the prosecutor -- they trying to bring up my past that

11   I got robberies, assaults, and all this.  Okay.  But I

12   walked down my parole perfectly.  Only had one violation.

13             MR. FAERBER:   Mr. ███████, the judge hasn't signed

14   anything yet.  The judge can still change his mind.  Silence

15   is probably your best route right now.

16             THE DEFENDANT:   Yes, sir.

17             THE COURT:   You know what, Mr. ███████?  You know

18   you have shown me something here while I was sitting here.

19   I've noticed you were very animated.  You seemed to get a

20   little bit upset and that concerns me.  You know why that

21   concerns me?

22             THE DEFENDANT:   Why?

23             THE COURT:   You know why that concerns me,

24   Mr. ███████?

25             THE DEFENDANT:   I don't, Your Honor.  Could you

1     please explain it to me?

2                    THE COURT:    Yes, I will.  I'll be more than happy

3     to.  It concerns me because I heard everything that the

4     prosecutor has said.  I do know that you have priors.  I do

5     know that you just completed a sentence in DOC.  I do know

6     that you currently have a case in St. Louis County and you

7     still get caught in a stolen vehicle driving with a gun in

8     the car, and then coupled that with your demonstration to

9     me, you know, I am now going to reconsider that bond and, in

10    fact, I'm going to rescind my previous order, and I am going

11    to decide that the Court, and the State, and you,

12    Mr. ███████, have convinced me beyond clear and convincing

13    evidence that no combination of non-monetary conditions and

14    monetary conditions will secure the safety of the community

15    or other persons and, therefore, I'm going to order that you

16    be held with no bond.  You are entitled --

17                    THE DEFENDANT:    Your Honor, Your Honor --

18                    THE COURT:    Let me finish.  Let me finish.

19    Pursuant to Missouri Supreme Court Rule 33.06 you have a

20    right to a second hearing.  This will be set for next

21    Wednesday, which will be August 28, 2019 at 10:30 a.m.  That

22    will be the Court's order.  That will complete the record.

23                    (End of proceedings.)

24

25

12

| | |
|---|---|
| 1 | CERTIFICATE |
| 2 | I, Margaret R. Cole, Certified Court Reporter, |
| 3 | do hereby certify that I am an official court reporter for |
| 4 | the Circuit Court of the City of St. Louis; that on August |
| 5 | 21, 2019,  I was present and reported all the proceedings |
| 6 | had in the case of State of Missouri, Plaintiff, vs. ███████ |
| 7 | ████████, Defendant, Cause No. 1922-CR02384. |
| 8 | I further certify that the foregoing pages |
| 9 | contain a true and accurate reproduction of the |
| 10 | proceedings. |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | /s/Margaret R. Cole |
| 17 | MARGARET R. COLE, CCR |
| 18 | #494 |
| 19 | |
| 20 | Date: |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

# EXHIBIT 162

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Michael J. Colona, Judge

STATE OF MISSOURI,            )
                              )
            Plaintiff,        )
                              )
      vs.                     )      1922-CR03687
                              )
████████████████             )
                              )
            Defendant.        )

INITIAL APPEARANCE HEARING

On the 9TH day of December, 2019, the
above-entitled cause came on regularly for hearing before
the Honorable Michael J. Colona, in Division 16B of the
Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by
Steven Payne, City of St. Louis, State of Missouri.

The Defendant was present by video and was
represented by Chris Faerber.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1                         December 9, 2019

2                 THE COURT:   Mr. ████?

3                 THE DEFENDANT:   Yes, sir.

4                 THE COURT:   Hang on.  Hang on, Mr. ████.  I'm

5      Judge Colona.  We're going to -- I'm going to tell you what

6      you're charged with.  You're charged with assault first,

7      which is a Class B felony here in the State of Missouri.  It

8      carries a range of punishment of five to 15 years.  We've

9      also got an armed criminal action charge which is an

10     additional three years on top of it.  Your bond currently is

11     at -- what's it at?

12                MR. PAYNE:   25,000, ten percent.

13                THE COURT:   25,000, ten percent.  In the courtroom

14     is an attorney for the State of Missouri who is going to

15     give me some suggestions on what to do on your bond.  There

16     is also a defense attorney who has been appointed for the

17     sole purpose of this hearing today who will, of course,

18     argue to have your bond reduced.

19                First off, we'll enter a plea of not guilty for

20     you.  State of Missouri, go.

21                MR. PAYNE:   Judge, we're requesting bond remain at

22     25,000 ten percent with the added conditions that he

23     complete a mental health evaluation, report to EMASS

24     monthly, that he make contact with Places for People, and

25     that he seek mental health treatment.

1          Judge, the facts surrounding this case are that

2     the victim was a family friend that was residing with the

3     defendant.  In the middle of the night the defendant

4     started acting a bit erratically, came into a bedroom that

5     was shared by the victim and another eyewitness.

6          They got into a physical altercation which then

7     continued to escalate until the defendant made statements

8     that he was going to attempt to kill one of them.  There

9     were lacerations made to the victim's ribs and I believe

10    two other places that did require medical attention at

11    ███████████  Hospital.

12          This matter was brought to law enforcement the

13    next day as the victim and the witness were more concerned

14    about the victim's injuries at that point.  I do not show

15    any prior criminal history for this defendant, but I do

16    think that he poses a serious risk to the community should

17    he not focus on his mental health issues.

18          THE COURT:    And what is your recommendation again?

19          MR. PAYNE:    25,000, ten percent, with a mental

20    health evaluation and that he make contact with Places for

21    People and be placed on supervision under EMASS.

22          THE COURT:    Defense.

23          MR. FAERBER:    Thank you, your Honor.  May I

24    inquire?

25          THE COURT:    Yes.

1              MR. FAERBER:    Mr. ████, my name is Chris Faerber.

2     I am a local criminal defense attorney appointed to

3     represent you today only and for the purposes of this

4     hearing only.  This hearing's purpose is to see if there is

5     a lower appropriate bond we can get for you, basically to

6     see if we can get you out.  So I want to go over some things

7     that you have probably already been asked so that the Court

8     can be informed.  You are a lifelong resident of St. Louis?

9              THE DEFENDANT:    Yes, sir.

10              MR. FAERBER:    You've got family here.  You've got

11     daughters.

12              THE DEFENDANT:    Yes, sir.  Two daughters -- three

13     daughters, sir.

14              MR. FAERBER:    But you live alone?

15              THE DEFENDANT:    Yes, sir.  And my wife died.

16              MR. FAERBER:    I'm sorry.  But you have your own

17     place?

18              THE DEFENDANT:    Yes, sir.  He was staying with me.

19     I was trying --

20              MR. FAERBER:    No, no.  Don't talk about your case

21     at all.  That's not the purpose of this.  We don't want you

22     saying something you can't take back because this is on the

23     record.  I see you get $944 monthly.  Is that disability or

24     something?

25              THE DEFENDANT:    Yes, sir.  Social Security.

1          MR. FAERBER:   Okay.  So social security

2   disability?

3          THE DEFENDANT:   Yes, sir.

4          MR. FAERBER:   What are you on disability for?

5          THE DEFENDANT:   Really just retiring.  I --

6          MR. FAERBER:   So you're not on disability?

7          THE DEFENDANT:   I was a army man, serviceman.

8   Been in the service.  It was, it was no race off to work.  I

9   got time and then when I got my own time it was just

10  push-ups, sit-ups and some more.

11         MR. FAERBER:   Well, let's --

12         THE DEFENDANT:   Real --

13         MR. FAERBER:   Mr. ██████, let's move away from your

14  experience in the army.

15         THE DEFENDANT:   Yes, sir.

16         MR. FAERBER:   But if you were told to go to court

17  for something, you could get yourself there or could your

18  daughter get you there?

19         THE DEFENDANT:   Well, I don't mind taking a cab.

20  The reason why I don't have trouble because I got hit this

21  year from behind.  And I said no, fix it.  And it's the

22  second new Concord that I bought in my lifetime.  The first

23  new car I bought in my lifetime -- I'm sorry.

24         MR. FAERBER:   Mr. ██████, let's keep it to the

25  questions I'm asking you as far as the answers.  We'll keep

1    them simple.  Would you be able to get yourself to court or

2    if you had trouble with transportation --

3                   THE DEFENDANT:    I could take a cab, sir, a cab.

4                   MR. FAERBER:    Okay, you can get a cab.  Or your

5    daughter could maybe --

6                   THE DEFENDANT:    No.  I take a cab and for my

7    transportation --

8                   THE COURT:    Mr. ███████, try not to over talk him.

9    He's got questions he's got to ask.

10                   MR. FAERBER:    Have you ever been diagnosed with

11   any sort of mental health issue?

12                   THE DEFENDANT:    Yes, sir.

13                   MR. FAERBER:    What's that?

14                   THE DEFENDANT:    Schizophrenia, sir.

15                   MR. FAERBER:    Are you on medication for that?

16                   THE DEFENDANT:    Yes, sir.

17                   MR. FAERBER:    Where do you get your medication?

18                   THE DEFENDANT:    From the VA, sir.

19                   MR. FAERBER:    From the VA, okay.  If you were to

20   get out, would you be able to stay away from the victims in

21   this case?

22                   THE DEFENDANT:    Well, I wasn't going to get into

23   my --

24                   MR. FAERBER:    If you were to get out and there was

25   an order saying you should have no contact with the victims,

1   could you obey that?

2                THE DEFENDANT:   Yes, sir.

3                MR. FAERBER:   Okay.  And if you got out -- and do

4   you have a specific psychiatrist at the VA?

5                THE DEFENDANT:   Yes, sir.

6                MR. FAERBER:   Okay.  If you were to get out and

7   were ordered to report to the VA within the next week or so

8   and speak to those psychiatrists, would you be able to do

9   that?

10                THE DEFENDANT:   Yes, sir.

11                MR. FAERBER:   Thank you.

12                THE DEFENDANT:   Yes, sir.

13                MR. FAERBER:   I have nothing further.  And, your

14   Honor, I would ask that you consider a recognizance in this

15   case.  The probable cause statement is simple and it says

16   that the victim was hit with a vase and had to get stitches.

17   And the complaint mentions stabbing, but I believe it's an

18   unknown object.  And again the wounds are not all of that.

19   And the two things actually don't line up if you read them

20   both side by side, but that's not for today.

21                He obviously has some mental health issues and

22   him checking in at the VA could hopefully right the ship

23   from anything that may or may not have allegedly

24   contributed to these alleged events.  Keeping him locked

25   up, keeping a schizophrenic in the workhouse or in the

1    Justice Center is just a recipe for things getting worse.

2    And he has a place to go.  He has doctors to see.  And he

3    knows how to get there.

4              THE COURT:    Anything further from the State?

5              MR. PAYNE:    No, your Honor.

6              THE COURT:    All right.  Mr. ████, I'm going to

7    leave your bond where it is for now, but I'm going to modify

8    it that if one of our social service agencies or whoever

9    posts or you end up posting the 10 percent, which is $2,500,

10   that you get a mental health evaluation and that you are

11   ordered to have no contact with the victim.

12              Now I'm going to put your case on for December

13   the 16th where we can revisit your bond.  At that point in

14   time your attorney can argue for another reduction.

15   Depending upon what's going on that may happen or may not.

16   I'm going to give you a new court date that's going to be

17   here in 16B.  So December the 16th at 10:30, 16B.  And I'm

18   going to give you another court date in one of our regular

19   trial divisions, which will be January the 10th in

20   Division 25 at 9 AM.  Okay?  Thank you.

21                        END OF TRANSCRIPT

22

23

24

25

1                             CERTIFICATE

2          I, ELLEN L. VINCE, Certified Court Reporter,

3  do hereby certify that I am an official court reporter for

4  the Circuit Court of the City of St. Louis; that on December

5  9, 2019, I was present and reported all the proceedings had

6  in the case of STATE OF MISSOURI, Plaintiff, vs. ██████

7  ██████, Defendant, Cause No. 1922-CR03687.

8         I further certify that the foregoing pages

9  contain a true and accurate reproduction of the

10  proceedings.

15         /s/Ellen L. Vince

17       _____

18       ELLEN L. VINCE, CCR, CSR, CM
                  CCR #350

# EXHIBIT 163

```
 1         IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                        STATE OF MISSOURI
 2             Honorable Joseph P. Whyte, Judge

 3

 4

 5    STATE OF MISSOURI,            )
                                    )
 6                    Plaintiff,    )
                                    )
 7              Vs.                 )
                                    )
 8    ██████  ███████,              )
                                    )
 9                    Defendant.    )

10

11

12
             TRANSCRIPT OF FIRST APPEARANCE HEARING
13                      July 5, 2019

14

15

16    Mr. Robert Taaffe
      Attorney at Law
17    On behalf of the Defendant.

18

19

20

21           TINA MARIE CATLETT, CCR #946
                OFFICIAL COURT REPORTER
22        CITY OF ST. LOUIS CIRCUIT COURT
            TWENTY-SECOND JUDICIAL CIRCUIT
23

24

25
```

1              (The following proceedings were had in

2      open court:)

3                   THE COURT: You are ████ ████.

4                   THE DEFENDANT: Yes, sir, Your Honor.

5                   THE COURT: And do you reside at ████

6      ████ ████ ████ ████████ ██

7                   THE DEFENDANT: Yes, sir, Your Honor.

8                   THE COURT: Okay. My name is Joe Whyte.

9      I'm a judge here in the Twenty-Second Judicial

10     Circuit.  I'm going to explain some of your rights

11     to you.  I'm going to advise you of the charges

12     pending against you.  And I'm going to make an

13     initial determination about the conditions of your

14     release, okay.

15                  THE DEFENDANT: Yes, sir, Your Honor.

16                  THE COURT: If you are not released

17     today, you will be back in court one week from

18     today where the conditions of your confinement will

19     again be determined subject to the rights of any

20     victim to be present and heard at that hearing.  Do

21     you understand that.

22                  THE DEFENDANT: Yes, sir, Your Honor.

23                  THE COURT: If you are released, there

24     will be conditions of your bond, do you understand

25     that.

1          THE DEFENDANT: Yes, sir, Your Honor.

2          THE COURT: Do you understand that if you

3   violate any of those conditions, then a warrant

4   will be issued for your arrest.  You will be taken

5   into custody again.  And in that event, you are not

6   likely to be released again prior to trial, do you

7   understand that.

8          THE DEFENDANT: Yes, sir, Your Honor.

9          THE COURT: Do you understand that you

10  have the right to remain silent.

11         THE DEFENDANT: Yes, sir, Your Honor.

12         THE COURT: Do you understand that

13  anything you say here this morning will quite

14  likely be used against you.

15         THE DEFENDANT: Yes, sir, Your Honor.

16         THE COURT: Do you understand that you

17  have the right to an attorney.

18         THE DEFENDANT: Yes, sir, Your Honor.

19         THE COURT: It's my understanding that

20  your family has hired Robert Taaffe.

21         THE DEFENDANT: Yes, sir, Your Honor.

22         THE COURT: Mr. Taaffe is here in the

23  courtroom this morning, okay.

24         THE DEFENDANT: Yes, sir, Your Honor.

25         THE COURT: What is the State's position

1    on bond release for ████ ███████.

2              MS. WILLIAMS: Your Honor, it's the

3    State's position that the cash only bond of $30,000

4    currently set is appropriate or in the alternative

5    if the court is not entertaining cash bond and no

6    bond allowed, for the limited purposes of this

7    hearing, the State would not allow --

8              THE COURT: I'm sorry.  I forgot to tell

9    him the charges.  I'm going to back us up just a

10   little bit and do that.

11             MS. WILLIAMS: No problem, Your Honor.

12             THE COURT: ████ ███████, do you understand

13   that in Count I you are charged with the Class D

14   felony of unlawful possession of a firearm under

15   section 571.070 of the revised statutes of

16   Missouri.

17             THE DEFENDANT: Yes, sir, Your Honor.

18             THE COURT: The State is alleging that on

19   or about July 3rd of this year in the City of St.

20   Louis, State of Missouri, you knowingly possessed a

21   Draco AK pistol, a firearm, and that on or about

22   April 9, 2018 you were convicted of the felony of

23   property damage in the 1st Degree in St. Charles

24   County.  Do you understand that in County II you

25   are charged with the Class D felony of unlawful

5

1    possession of a firearm under section 571.070 of

2    the revised statues of Missouri in that on or about

3    July 3rd, 2019 in the City of St. Louis, State of

4    Missouri you knowingly possess a 40 Caliber Taurus

5    semi-automatic handgun, a firearm, and on April 9,

6    2018, you are convicted of property damage first in

7    St. Charles County Circuit Court.  Do you

8    understand that.

9            THE DEFENDANT: Yes, Your Honor.

10           THE COURT: Those are the two counts

11   against you.

12           All right.  Now, you don't have to

13   repeat that you think that the 30,000 cash only or

14   no bond allowed is appropriate, just tell me why,

15   please.

16           MS. WILLIAMS: Your Honor, I would first

17   like to move to admit the probable cause statement

18   in this matter.

19           THE COURT: I will take judicial notice

20   of all of the filings in every case this morning.

21           MS. WILLIAMS: Thank you.  Your Honor, as

22   far as criminal history, I have a UUW from 2014 for

23   ██████  ██████  for which he was given SIS three years.

24   As you have mentioned, there is a property damage

25   first from St. Charles County from April 2018, last

```
1    year for which he is currently on probation with a
2    seven year SES five year.  In this case, Your
3    Honor, the defendant increased his speed, attempted
4    to avoid police, and then he had the two guns in
5    the vehicle with him.  Given that he is currently
6    on probation for that property damage charge, given
7    his past history with unlawfully possessing
8    weapons, and given the types of weapons, I believe
9    they were loaded, that were in the vehicle with him
10   at the time of the stop, we do believe that he is a
11   danger to the community, and we do believe his
12   reckless disregard for the law and his
13   unwillingness to abide by his current terms of
14   probation show that he poses a threat.
15             THE COURT:  Mr. Taaffe.
16             MR. TAAFFE:  Judge, ████ █████ is 22
17   years old.  Upon his release, he will be residing
18   at ████ ████ ████████  ████████ █ with his fiance
19   ██████  ██████.  If he was also released, he would
20   work with ████ ██████ █ It's called ████████
21   ██████████  As a construction worker, he makes
22   about $500 a week.  In terms of family ties, Your
23   Honor, he resided in East St. Louis his entire
24   life.  His mother, his father, and his extended
25   family all reside in St Louis, so he has extended
```

```
 1    family ties in St. Louis.  As far as failures to

 2    appear, Your Honor, I don't think the prosecution

 3    has noted any failures to appear on ███ ████████

 4    part.  In terms of assets, You Honor, ███ ████████

 5    does make that $500 a week working construction.

 6    He does not have a checking account or a savings

 7    account.  He doesn't own any property so he has no

 8    assets.  Financially, he is able to pay some money

 9    for a bond but not $30,000 cash.

10              THE COURT:  How much is he able to pay,

11    Mr. Taaffe.

12              MR. TAAFFE:  You're Honor, I think if

13    the court would allow the 10 percent bond in this

14    case, he would be able to make that.  He has a 9th

15    grade education.  Also, he does have one child two

16    years old.  He does provide care for that child.

17    The child does live with, I believe, with his

18    mother.  He does provide emotionally and

19    financially for that child as the mother, I

20    believe, is brain dead.

21              Your Honor, I would point out that one

22    thing the court is able to consider is his defense

23    pursuant to the statute was defendant's criminal

24    convictions, and it specifically states the new

25    rule.  It says criminal convictions and it says the
```

1    convictions that he has in front of you, Your

2    Honor, are two counts of property damage and a UUW

3    from 2014.  I would like to point out the UUW from

4    2014 was a carry and conceal charge, Your Honor.  A

5    UUW and CCW are no longer illegal in the State of

6    Missouri.

7              THE COURT:  Was it legal when he pled

8    guilty to it.

9              MR. TAAFFE:  It was, Your Honor.  The

10   thing the State neglected to point out in fairness,

11   Your Honor, and cater to the court, ███ ████████ is

12   on bond for unlawful possession of a firearm.  His

13   next court date is --

14             THE COURT:  Where.

15             MS. WILLIAMS:  It's also open here in

16   St. Louis City, Your Honor.

17             MR. TAAFFE:  In Division 16 at this

18   time.

19             THE COURT:  He was charged with felon in

20   possession of a firearm, he bonded out, and then he

21   picked up another felon in possession of a firearm.

22             MR. TAAFFE:  That's correct, Your Honor.

23   If you will take judicial notice of the probable

24   cause affidavit, Your Honor, I would like to point

25   out that --

9

1        THE COURT:  Are you going to point out

2   to me he took off at a high rate of speed when they

3   lit him up.

4        MR. TAAFFE:  No.

5        THE COURT:  I didn't think so.

6        MR. TAAFFE:  I would point out, Judge,

7   that the police are claiming whoever it was that

8   took off at a high rate of speed, that the car had

9   tinted windows and they were not able to identify

10  who the individual was who was driving the car.

11       I find it, Your Honor, interesting that

12  Figaro and Zwilling were able to locate the car and

13  just as they were able to locate the car, defendant

14  is exiting the car with a bag of marijuana they

15  claim that they see in his hand, thereby allowing

16  them to, I guess, search the vehicle and find what

17  they find on the passenger side floorboard.

18       It would be our position, Your Honor,

19  the defendant was not driving the car, and that he

20  was not in the car when the police approached him,

21  and he did not have a bag of marijuana in his hand,

22  and that the car was driven by someone else,

23  possessed by someone else, and the weapons thereby

24  in the car belonged to someone else.

25       MS. WILLIAMS:  Your Honor, the State may

1    add who is the person he would be living with?

2                    MR. TAAFFE:  Would be his fiance ███████

3    ███████.

4                    MS. WILLIAMS:  Your Honor, the defendant

5    previously had domestic assault against this very

6    person, ████ ████████ from back in 2018.  It also

7    looks like he has domestic assault third --

8                    THE COURT:  Are those arrests or

9    convictions.

10                   MS. WILLIAMS:  These are arrests either

11   the victim refused to assist or there were safety

12   issues.

13                   THE COURT:  Okay.  My understanding of

14   what Mr. Taaffe said about the rule is that it's

15   correct, that the rule that went into effect on

16   Monday, tells me that I am supposed to consider

17   records of convictions.

18                   MS. WILLIAMS:  Understood, Your Honor.

19                   THE COURT:  I don't mind if you tell me

20   about the arrests, but I don't know how much weight

21   I'm supposed to give those.

22                   MS. WILLIAMS:  I do believe it is

23   imperative to bring these arrests up not for the

24   fact of the arrest, but again, the home plan that

25   is set for ████ ████████ if he was to be released is

1    with someone he previously is alleged to have

2    assaulted.

3              THE COURT:  But I think he was living

4    there before he got picked up, right.

5              MS. WILLIAMS:  I'm not aware of that.

6              THE COURT:  ███ ███ -- Mr. Taaffe,

7    you can tell him not to answer any of this stuff

8    I'm going to ask him.

9              MR. TAAFFE:  I would have to advise him

10   at this point to remain silent.

11             THE COURT:  I want to know if the fiance

12   was living with him there at ███ ███ ███ ███

13   before Tuesday or Wednesday when he was arrested,

14   and I want to know if his father ███ ███ ███

15   --I have documentation from the bond commissioner

16   that says that ███ ███ ███ lives at the

17   same address.  His employer and father lives at the

18   same address, so I want to know if that's true.

19             MR. TAAFFE:  Go ahead.

20             THE COURT:  ███ ███ did you hear Mr.

21   Taaffe say it would be okay for you to answer my

22   questions.

23             THE DEFENDANT:  Yes, sir, Your Honor.

24             THE COURT:  Did your fiance live with

25   you before you were arrested on Wednesday at ███

1    ████ ████ ████.

2              THE DEFENDANT:  Yes, sir.  We just got

3    our own house.  We were staying together we got our

4    own residents we were in the motion of moving.

5              THE COURT:  So does that mean that you

6    are not going to stay at ████ ████ ████ ████ if

7    you are released.

8              THE DEFENDANT:  No.  If I'm released I

9    will be able to stay there.  Yes, sir.  Yes, sir.

10             THE COURT:  Does your father and

11   employee ████ ████       likewise live at ████

12   ████ ████ ████.

13             THE DEFENDANT:  Yes, sir.  ████ ████

14   ████ do.  I told my lawyer he owns the residence.

15             THE COURT:  Your father owns the

16   building.

17             THE DEFENDANT:  My father's brother owns

18   the building, sir, Your Honor.  Me and my father

19   stay there.

20             THE COURT:  In separate apartments or

21   something like that.

22             THE DEFENDANT:  The same, sir.

23             THE COURT:  So it would be you, your

24   father and your fiance living at ████ ████ ████

25   ████.

13

```
1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  Who else lives there.

3                    THE DEFENDANT:  In the building or just

4     in the one --

5                    THE COURT:  With you in your apartment

6     who else.

7                    THE DEFENDANT:  That's it, Your Honor.

8                    MS. WILLIAMS:  Your Honor, the State

9     would also like to point out that charges were

10    filed by us back in 2012 for a murder second with

11    this defendant.

12                   THE DEFENDANT:  I beat that.

13                   MR. TAAFFE:  Don't say anything, Donald.

14                   MS. WILLIAMS:  With this defendant as

15    well, again, just speaking I understand the weight

16    of arrest versus convictions but speaking to the

17    dangerous nature of this defendant, I mean, he's

18    had charges filed in that murder second, charges

19    filed in domestic assault and then a ███████ ███████

20    and his fiance ███████ ███████.  There are also

21    charges filed in a robbery first in 2016 by us.  So

22    we do believe that he is a serious danger to the

23    community overall and he still is walking around

24    with multiple weapons at a time including assault

25    rifles.
```

```
1              THE COURT:  What are your hours of

2    employment, ███  ████████

3              THE DEFENDANT:  Eight to 2:30.  It

4    depends on the job we got, Your Honor.  My uncle do

5    construction so we work for him so it depends what

6    job we have if it's a job roofing we be there until

7    6:00 that day depending on the job site, Your

8    Honor.

9              THE COURT:  It's going to be the court's

10   finding that the defendant is a danger to the

11   community and will be held without bond pending

12   trial in this case -- or, yes.  ███  ████████, you

13   will be back in this court one week from today and

14   you will be in Division 29 --

15             THE DEFENDANT:  Judge, can I say

16   something?

17             THE COURT:  No.

18             MR. TAAFFE:  May I say one more thing,

19   Your Honor?

20             THE COURT:  You may.

21             MR. TAAFFE:  I understand that the State

22   is pointing out his arrest history.  I think, Your

23   Honor --

24             THE COURT:  I'm considering the

25   convictions and the pending case.
```

1  MR. TAAFFE:  If we consider the

2  conviction like the statute requires, he's got two

3  property damage and unlawful use of a weapon.  I

4  understand while he was on probation he picks up

5  two unlawful use of a weapon charges and while on

6  bond he's picked up this other one, but there's no

7  where despite the allegations made by the circuit

8  attorney's office, there is no where -- nothing has

9  been alleged in terms of his criminal convictions,

10  that he's never been convicted with anything beyond

11  a C or D felony.  We are talking about an

12  individual who has never been convicted on assault

13  charges, or robbery charges, or murder first, or

14  has been convicted of any offense whatsoever

15  involving the use of a weapon in a violent manner.

16  I do not believe the State has met their burden by

17  clear and convincing evidence that given those

18  circumstance that ▇▇▇ ▇▇▇▇▇▇ presents a danger to

19  the community and others.  I do believe there are

20  least restrictive conditions of bond that could

21  modify ▇▇▇ ▇▇▇▇▇▇ behavior including house

22  arrest, GPS, and other restrictions including a

23  cash bond that would meet the requirements of the

24  statute, provide general at large safety to the

25  community and provide assurance that ▇▇▇ ▇▇▇▇▇▇

16

1    would show up in court.

2              THE COURT:  I will grant you,

3    Mr. Taaffe, that this one is a pretty close call,

4    but I'm not convinced and you will get a chance to

5    argue that a week from today in front of Judge

6    Noble at 1:30 p.m.

7              MR. TAAFFE:  In front of Judge Noble,

8    Your Honor.

9              THE COURT:  I believe it will be Judge

10   Noble next week.

11             MR. TAAFFE:  So, Judge, July 12 --

12             THE COURT:  No, it's August 1st in here

13   in 16 -- July 12th, I'm sorry.  It's in Division 26

14   on August 1st.  I said August 1st.  I meant July

15   12.  I misspoke.

16             MR. TAAFFE:  So I'm a little confused on

17   the procedure.  Maybe you can clarify for me.

18             THE COURT:  Well, I might be able to

19   help you.  I will certainly try.

20             MR. TAAFFE:  So I am confused why is he

21   back here on July the 12th.

22             THE COURT:  To comply with the new rule

23   that says if a determination is made he is held

24   without bond, then he gets an automatic review of

25   that within seven days.

1                    MR. TAAFFE:  Okay.  Thank you.

2                    THE COURT:  You're welcome.

3

4                    (The hearing was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE**

2

3          I, Tina Marie Catlett, Certified Court

4    Reporter, do hereby certify that I am an official

5    court reporter for the Circuit Court of the City of

6    St. Louis, State of Missouri, that on July 5, 2019,

7    I was present and reported all of the proceedings

8    had in the case of STATE OF MISSOURI, Plaintiff,

9    vs. ███████  ███████, Defendant, Cause No.

10   1922-CR02038.

11         I further certify that the foregoing pages

12   contain a true and accurate reproduction of the

13   proceedings.

14

15

16

17                      *Tina Marie Catlett, CCR #946*

18

19

20

21

22

23

24

25

# #

**#946** [2] - 1:21, 18:17

# $

**$30,000** [2] - 4:3, 7:9
**$500** [2] - 6:22, 7:5

# 1

**1** [2] - 2:6, 6:18
**10** [1] - 7:13
**12** [2] - 16:11, 16:15
**12th** [2] - 16:13, 16:21
**16** [2] - 8:17, 16:13
**1922-CR02038** [1] - 18:10
**1:30** [1] - 16:6
**1st** [4] - 4:23, 16:12, 16:14

# 2

**2012** [1] - 13:10
**2014** [3] - 5:22, 8:3, 8:4
**2016** [1] - 13:21
**2018** [4] - 4:22, 5:6, 5:25, 10:6
**2019** [3] - 1:13, 5:3, 18:6
**22** [1] - 6:16
**26** [1] - 16:13
**29** [1] - 14:14
**2:30** [1] - 14:3

# 3

**30,000** [1] - 5:13
**3rd** [2] - 4:19, 5:3

# 4

**40** [1] - 5:4
**4042** [7] - 2:5, 6:18, 11:12, 11:25, 12:6, 12:11, 12:24

# 5

**5** [2] - 1:13, 18:6
**571.070** [2] - 4:15, 5:1

# 6

**6:00** [1] - 14:7

# 9

**9** [2] - 4:22, 5:5

**9th** [1] - 7:14

# A

**abide** [1] - 6:13
**able** [9] - 7:8, 7:10, 7:14, 7:22, 9:9, 9:12, 9:13, 12:9, 16:18
**account** [2] - 7:6, 7:7
**accurate** [1] - 18:12
**add** [1] - 10:1
**address** [2] - 11:17, 11:18
**admit** [1] - 5:17
**advise** [2] - 2:11, 11:9
**affidavit** [1] - 8:24
**ahead** [1] - 11:19
**AK** [1] - 4:21
**allegations** [1] - 15:7
**alleged** [2] - 11:1, 15:9
**alleging** [1] - 4:18
**allow** [2] - 4:7, 7:13
**allowed** [2] - 4:6, 5:14
**allowing** [1] - 9:15
**alternative** [1] - 4:4
**answer** [2] - 11:7, 11:21
**apartment** [1] - 6:20
**apartment** [1] - 13:5
**Apartment** [2] - 2:6, 6:18
**apartments** [1] - 12:20
**appear** [2] - 7:2, 7:3
**APPEARANCE** [1] - 1:12
**approached** [1] - 9:20
**appropriate** [2] - 4:4, 5:14
**April** [3] - 4:22, 5:5, 5:25
**argue** [1] - 16:5
**arrest** [5] - 3:4, 10:24, 13:16, 14:22, 15:22
**arrested** [2] - 11:13, 11:25
**arrests** [4] - 10:8, 10:10, 10:20, 10:23
**assault** [5] - 10:5, 10:7, 13:19, 13:24, 15:12
**assaulted** [1] - 11:2
**assets** [2] - 7:4, 7:8
**assist** [1] - 10:11
**assurance** [1] - 15:25
**attempted** [1] - 6:3
**attorney** [1] - 3:17
**Attorney** [1] - 1:16
**attorney's** [1] - 15:8
**August** [3] - 16:12, 16:14

**automatic** [2] - 5:5, 16:24
**avoid** [1] - 6:4
**aware** [1] - 11:5

# B

**bag** [2] - 9:14, 9:21
**beat** [1] - 13:12
**behalf** [1] - 1:17
**behavior** [1] - 15:21
**[    ]** [1] - 2:6
**Belle** [6] - 6:18, 11:12, 12:1, 12:6, 12:12, 12:24
**belonged** [1] - 9:24
**beyond** [1] - 15:10
**bit** [1] - 4:10
**bond** [15] - 2:24, 4:1, 4:3, 4:5, 4:6, 5:14, 7:9, 7:13, 8:12, 11:15, 14:11, 15:6, 15:20, 15:23, 16:24
**bonded** [1] - 8:20
**brain** [1] - 7:20
**bring** [1] - 10:23
**brother** [1] - 12:17
**building** [3] - 12:16, 12:18, 13:3
**burden** [1] - 15:16

# C

**Caliber** [1] - 5:4
**car** [9] - 9:8, 9:10, 9:12, 9:13, 9:14, 9:19, 9:20, 9:22, 9:24
**care** [1] - 7:16
**carry** [1] - 8:4
**case** [6] - 5:20, 6:2, 7:14, 14:12, 14:25, 18:8
**cash** [5] - 4:3, 4:5, 5:13, 7:9, 15:23
**cater** [1] - 8:11
**CATLETT** [1] - 1:21
**Catlett** [2] - 18:3, 18:17
**CCR** [2] - 1:21, 18:17
**CCW** [1] - 8:5
**certainly** [1] - 16:19
**CERTIFICATE** [1] - 18:1
**Certified** [1] - 18:3
**certify** [2] - 18:4, 18:11
**chance** [1] - 16:4
**charge** [2] - 6:6, 8:4
**charged** [3] - 4:13,

**4:25, 8:19
**charges** [9] - 2:11, 4:9, 13:9, 13:18, 13:21, 15:5, 15:13
**Charles** [3] - 4:23, 5:7, 5:25
**checking** [1] - 7:6
**child** [4] - 7:15, 7:16, 7:17, 7:19
**CIRCUIT** [3] - 1:1, 1:22, 1:22
**Circuit** [3] - 2:10, 5:7, 18:5
**circuit** [1] - 15:7
**circumstance** [1] - 15:18
**City** [4] - 4:19, 5:3, 8:16, 18:5
**CITY** [1] - 1:1, 1:22
**claim** [1] - 9:15
**claiming** [1] - 9:7
**clarify** [1] - 16:17
**Class** [2] - 4:13, 4:25
**clear** [1] - 15:17
**close** [1] - 16:3
**commissioner** [1] - 11:15
**community** [5] - 6:11, 13:23, 14:11, 15:19, 15:25
**comply** [1] - 16:22
**conceal** [1] - 8:4
**concluded** [1] - 17:4
**conditions** [5] - 2:13, 2:18, 2:24, 3:3, 15:20
**confinement** [1] - 2:18
**confused** [2] - 16:16, 16:20
**consider** [3] - 7:22, 10:16, 15:1
**considering** [1] - 14:24
**Construction** [1] - 6:21
**construction** [3] - 6:21, 7:5, 14:5
**contain** [1] - 18:12
**convicted** [5] - 4:22, 5:6, 15:10, 15:12, 15:14
**conviction** [1] - 15:2
**convictions** [8] - 7:24, 7:25, 8:1, 10:9, 10:17, 13:16, 14:25, 15:9
**convinced** [1] - 16:4
**convincing** [1] - 15:17
**correct** [2] - 8:22, 10:15

**[    ]** [1] - 5:23
**[    ]** [2] - 1:8, 18:9
**[    ]** [19] - 2:3, 4:1, 4:12, 6:16, 6:20, 7:4, 8:11, 10:25, 11:6, 11:14, 11:16, 11:20, 12:11, 12:13, 13:19, 14:2, 14:12, 15:18, 15:25
**[    ]** [2] - 7:3, 15:21
**Count** [1] - 4:13
**counts** [2] - 5:10, 8:2
**County** [4] - 4:24, 5:7, 5:25
**COURT** [53] - 1:1, 1:21, 1:22, 2:3, 2:5, 2:8, 2:16, 2:23, 3:2, 3:9, 3:12, 3:16, 3:19, 3:22, 3:25, 4:8, 4:12, 4:18, 5:10, 5:19, 6:15, 7:10, 8:7, 8:14, 8:19, 9:1, 9:5, 10:8, 10:13, 10:19, 11:3, 11:6, 11:11, 11:20, 11:24, 12:5, 12:10, 12:15, 12:20, 12:23, 13:2, 13:5, 14:1, 14:9, 14:17, 14:20, 14:24, 16:2, 16:9, 16:12, 16:18, 16:22, 17:2
**Court** [3] - 5:7, 18:3, 18:5
**court** [10] - 2:2, 2:17, 4:5, 7:13, 7:22, 8:11, 8:13, 14:13, 16:1, 18:5
**court's** [1] - 14:9
**courtroom** [1] - 3:23
**criminal** [4] - 5:22, 7:23, 7:25, 15:9
**current** [1] - 6:13
**custody** [1] - 3:5

# D

**damage** [6] - 4:23, 5:6, 5:24, 6:6, 8:2, 15:3
**danger** [4] - 6:11, 13:22, 14:10, 15:18
**dangerous** [1] - 13:17
**date** [1] - 8:13
**days** [1] - 16:25
**dead** [1] - 7:20
**defendant** [9] - 1:9, 6:3, 9:13, 9:19, 10:4, 13:11, 13:14, 13:17,

14:10
**Defendant** [2] - 1:17, 18:9
**DEFENDANT** [25] - 2:4, 2:7, 2:15, 2:22, 3:1, 3:8, 3:11, 3:15, 3:18, 3:21, 3:24, 4:17, 5:9, 11:23, 12:2, 12:8, 12:13, 12:17, 12:22, 13:1, 13:3, 13:7, 13:12, 14:3, 14:15
**defendant's** [1] - 7:23
**defense** [1] - 7:22
**Degree** [1] - 4:23
**despite** [1] - 15:7
**determination** [2] - 2:13, 16:23
**determined** [1] - 2:19
**disregard** [1] - 6:12
**Division** [3] - 8:17, 14:14, 16:13
**documentation** [1] - 11:15
**domestic** [3] - 10:5, 10:7, 13:19
**DONALD** [2] - 1:8, 18:9
**Donald** [2] - 2:3, 13:13
**Draco** [1] - 4:21
**driven** [1] - 9:22
**driving** [2] - 9:10, 9:19

## E

**East** [1] - 6:23
**education** [1] - 7:15
**effect** [1] - 10:15
**eight** [1] - 14:3
**either** [1] - 10:10
**emotionally** [1] - 7:18
**employee** [1] - 12:11
**employer** [1] - 11:17
**employment** [1] - 14:2
**entertaining** [1] - 4:5
**entire** [1] - 6:23
**event** [1] - 3:5
**evidence** [1] - 15:17
**exiting** [1] - 9:14
**explain** [1] - 2:10
**extended** [2] - 6:24, 6:25

## F

**fact** [1] - 10:24
**failures** [2] - 7:1, 7:3
**fairness** [1] - 8:10
**family** [4] - 3:20, 6:22, 6:25, 7:1

**far** [2] - 5:22, 7:1
**father** [7] - 6:24, 11:14, 11:17, 12:10, 12:15, 12:18, 12:24
**father's** [1] - 12:17
**felon** [2] - 8:19, 8:21
**felony** [4] - 4:14, 4:22, 4:25, 15:11
**fiance** [6] - 6:18, 10:2, 11:11, 11:24, 12:24, 13:20
**Figaro** [1] - 9:12
**filed** [4] - 13:10, 13:18, 13:19, 13:21
**filings** [1] - 5:20
**financially** [2] - 7:8, 7:19
**firearm** [7] - 4:14, 4:21, 5:1, 5:5, 8:12, 8:20, 8:21
**FIRST** [1] - 1:1
**first** [5] - 5:6, 5:16, 5:25, 13:21, 15:13
**five** [1] - 6:2
**floorboard** [1] - 9:17
**following** [1] - 2:1
**foregoing** [1] - 18:11
**forgot** [1] - 4:8
**front** [3] - 8:1, 16:5, 16:7

## G

**general** [1] - 15:24
**given** [4] - 5:23, 6:6, 6:8, 15:17
**Given** [1] - 6:5
**GPS** [1] - 15:22
**grade** [1] - 7:15
**grant** [1] - 16:2
**guess** [1] - 9:16
**guilty** [1] - 8:8
**guns** [1] - 6:4

## H

**hand** [2] - 9:15, 9:21
**handgun** [1] - 5:5
**hear** [1] - 11:20
**heard** [1] - 2:20
**HEARING** [1] - 1:12
**hearing** [3] - 2:20, 4:7, 17:4
**held** [2] - 14:11, 16:23
**help** [1] - 16:19
**hereby** [1] - 18:4
**high** [2] - 9:2, 9:8
**hired** [1] - 3:20
**history** [3] - 5:22, 6:7, 14:22

**home** [1] - 10:24
**Honor** [44] - 2:4, 2:7, 2:15, 2:22, 3:1, 3:8, 3:11, 3:15, 3:18, 3:21, 3:24, 4:2, 4:11, 4:17, 5:9, 5:16, 5:21, 6:3, 6:23, 7:2, 7:4, 7:12, 7:21, 8:2, 8:4, 8:9, 8:11, 8:16, 8:22, 8:24, 9:11, 9:18, 9:25, 10:4, 10:18, 11:23, 12:18, 13:7, 13:8, 14:4, 14:8, 14:19, 14:23, 16:8
**Honorable** [1] - 1:2
**hours** [1] - 14:1
**house** [2] - 12:3, 15:21

## I

**identify** [1] - 9:9
**II** [1] - 4:24
**illegal** [1] - 8:5
**imperative** [1] - 10:23
**IN** [1] - 1:1
**including** [3] - 13:24, 15:21, 15:22
**increased** [1] - 6:3
**individual** [2] - 9:10, 15:12
**initial** [1] - 2:13
**interesting** [1] - 9:11
**involving** [1] - 15:15
**issued** [1] - 3:4
**issues** [1] - 10:12

## J

**job** [4] - 14:4, 14:6, 14:7
**Joe** [1] - 2:8
**Joseph** [1] - 1:2
**Judge** [6] - 1:2, 9:6, 16:5, 16:7, 16:9, 16:11
**judge** [2] - 2:9, 6:16, 14:15
**judicial** [2] - 5:19, 8:23
**Judicial** [1] - 2:9
**JUDICIAL** [1] - 1:22
**July** [8] - 1:13, 4:19, 5:3, 16:11, 16:13, 16:14, 16:21, 18:6

## K

▇▇▇▇▇ [3] - 6:19, 10:2, 13:20
**knowingly** [1] - 4:20,

5:4

## L

**large** [1] - 15:24
**last** [1] - 5:25
**Law** [1] - 1:16
**law** [1] - 6:12
**lawyer** [1] - 12:14
**least** [1] - 15:20
**legal** [1] - 8:7
**life** [1] - 6:24
**likely** [2] - 3:6, 3:14
**likewise** [1] - 12:11
**limited** [1] - 4:6
**lit** [1] - 9:3
**live** [3] - 7:17, 11:24, 12:11
**lives** [3] - 11:16, 11:17, 13:2
**living** [4] - 10:1, 11:3, 11:12, 12:24
**loaded** [1] - 6:9
**locate** [2] - 9:12, 9:13
**looks** [1] - 10:7
**LOUIS** [1] - 1:1, 1:22
**Louis** [7] - 4:20, 5:3, 6:23, 6:25, 7:1, 8:16, 18:6

## M

**manner** [1] - 15:15
**MARIE** [1] - 1:21
**Marie** [2] - 18:3, 18:17
**marijuana** [2] - 9:14, 9:21
**matter** [1] - 5:18
**mean** [2] - 12:5, 13:17
**meant** [1] - 16:14
**meet** [1] - 15:23
**mentioned** [1] - 5:24
**met** [1] - 15:16
**might** [1] - 16:18
**mind** [1] - 10:19
**Missouri** [6] - 4:16, 4:20, 5:2, 5:4, 8:6, 18:6
**MISSOURI** [3] - 1:1, 1:5, 18:8
**misspoke** [1] - 16:15
**modify** [1] - 15:21
**Monday** [1] - 10:16
**money** [1] - 7:8
**morning** [3] - 3:13, 3:23, 5:20
**mother** [3] - 6:24, 7:18, 7:19
**motion** [1] - 12:4
**move** [1] - 5:17

**moving** [1] - 12:4
**MR** [19] - 6:16, 7:12, 8:9, 8:17, 8:22, 9:4, 9:6, 10:2, 11:9, 11:19, 13:13, 14:18, 14:21, 15:1, 16:7, 16:11, 16:16, 16:20, 17:1
**MS** [13] - 4:2, 4:11, 5:16, 5:21, 8:15, 9:25, 10:4, 10:10, 10:18, 10:22, 11:5, 13:8, 13:14
**multiple** [1] - 13:24
**murder** [3] - 13:10, 13:18, 15:13

## N

**name** [1] - 2:8
**nature** [1] - 13:17
**neglected** [1] - 8:10
**never** [2] - 15:10, 15:12
**new** [2] - 7:24, 16:22
**next** [2] - 8:13, 16:10
**Noble** [3] - 16:6, 16:7, 16:10
**noted** [1] - 7:3
**nothing** [1] - 15:8
**notice** [2] - 5:19, 8:23

## O

**OF** [7] - 1:1, 1:1, 1:5, 1:12, 1:22, 18:8
**offense** [1] - 15:14
**office** [1] - 15:8
**OFFICIAL** [1] - 1:21
**official** [1] - 18:4
**old** [2] - 6:17, 7:16
**one** [8] - 2:17, 7:15, 7:21, 13:4, 14:13, 14:18, 15:6, 16:3
**open** [2] - 2:2, 8:15
**overall** [1] - 13:23
**own** [3] - 7:7, 12:3, 12:4
**owns** [3] - 12:14, 12:15, 12:17

## P

**p.m** [1] - 16:6
**pages** [1] - 18:11
**part** [1] - 7:4
**passenger** [1] - 9:17
**past** [1] - 6:7
**pay** [2] - 7:8, 7:10
**pending** [3] - 2:12,

14:11, 14:25
**percent** [1] - 7:13
**person** [2] - 10:1, 10:6
**picked** [3] - 8:21, 11:4, 15:6
**picks** [1] - 15:4
**pistol** [1] - 4:21
**Place** [6] - 2:6, 11:12, 12:1, 12:6, 12:12, 12:25
**Plaintiff** [2] - 1:6, 18:8
**plan** [1] - 10:24
**pled** [1] - 8:7
**point** [8] - 7:21, 8:3, 8:10, 8:24, 9:1, 9:6, 11:10, 13:9
**pointing** [1] - 14:22
**police** [3] - 6:4, 9:7, 9:20
**poses** [1] - 6:14
**position** [3] - 3:25, 4:3, 9:18
**possess** [1] - 5:4
**possessed** [2] - 4:20, 9:23
**possessing** [1] - 6:7
**possession** [5] - 4:14, 5:1, 8:12, 8:20, 8:21
**present** [2] - 2:20, 18:7
**presents** [1] - 15:18
**pretty** [1] - 16:3
**previously** [2] - 10:5, 11:1
**probable** [2] - 5:17, 8:23
**probation** [4] - 6:1, 6:6, 6:14, 15:4
**problem** [1] - 4:11
**procedure** [1] - 16:17
**proceedings** [3] - 2:1, 18:7, 18:13
**property** [7] - 4:23, 5:6, 5:24, 6:6, 7:7, 8:2, 15:3
**prosecution** [1] - 7:2
**provide** [4] - 7:16, 7:18, 15:24, 15:25
**purposes** [1] - 4:6
**pursuant** [1] - 7:23

## Q

**questions** [1] - 11:22
**quite** [1] - 3:13

## R

**rate** [2] - 9:2, 9:8
**reckless** [1] - 6:12

**records** [1] - 10:17
**refused** [1] - 10:11
**release** [3] - 2:14, 4:1, 6:17
**released** [7] - 2:16, 2:23, 3:6, 6:19, 10:25, 12:7, 12:8
**remain** [2] - 3:10, 11:10
**repeat** [1] - 5:13
**reported** [1] - 18:7
**REPORTER** [1] - 1:21
**Reporter** [1] - 18:4
**reporter** [1] - 18:5
**reproduction** [1] - 18:12
**requirements** [1] - 15:23
**requires** [1] - 15:2
**reside** [2] - 2:5, 6:25
**resided** [1] - 6:23
**residence** [1] - 12:14
**residents** [1] - 12:4
**residing** [1] - 6:17
**restrictions** [1] - 15:22
**restrictive** [1] - 15:20
**review** [1] - 16:24
**revised** [2] - 4:15, 5:2
**rifles** [1] - 13:25
**rights** [2] - 2:10, 2:19
**robbery** [2] - 13:21, 15:13
**Robert** [2] - 1:16, 3:20
**Robin** [1] - 13:19
**Rodney** [5] - 6:20, 11:14, 11:16, 12:11, 12:13
**roofing** [1] - 14:6
**rule** [4] - 7:25, 10:14, 10:15, 16:22

## S

**safety** [2] - 10:11, 15:24
**savings** [1] - 7:6
**search** [1] - 9:16
**SECOND** [1] - 1:22
**second** [2] - 13:10, 13:18
**Second** [1] - 2:9
**section** [2] - 4:15, 5:1
**see** [1] - 9:15
**semi** [1] - 5:5
**semi-automatic** [1] - 5:5
**senior** [1] - 12:14
**separate** [1] - 12:20
**serious** [1] - 13:22

**SES** [1] - 6:2
**set** [2] - 4:4, 10:25
**seven** [2] - 6:2, 16:25
**show** [2] - 6:14, 16:1
**side** [1] - 9:17
**silent** [2] - 3:10, 11:10
■■■■■ [4] - 6:19, 10:3, 10:6, 13:20
**SIS** [1] - 5:23
**site** [1] - 14:7
**someone** [4] - 9:22, 9:23, 9:24, 11:1
**sorry** [2] - 4:8, 16:13
**speaking** [2] - 13:15, 13:16
**specifically** [1] - 7:24
**speed** [3] - 6:3, 9:2, 9:8
**Sr** [4] - 6:20, 11:14, 11:16, 12:11
**St** [10] - 4:19, 4:23, 5:3, 5:7, 5:25, 6:23, 6:25, 7:1, 8:16, 18:6
**ST** [2] - 1:1, 1:22
**State** [11] - 4:7, 4:18, 4:20, 5:3, 8:5, 8:10, 9:25, 13:8, 14:21, 15:16, 18:6
**STATE** [3] - 1:1, 1:5, 18:8
**State's** [2] - 3:25, 4:3
**statement** [1] - 5:17
**states** [1] - 7:24
**statues** [1] - 5:2
**statute** [3] - 7:23, 15:2, 15:24
**statutes** [1] - 4:15
**stay** [3] - 12:6, 12:9, 12:19
**staying** [1] - 12:3
**still** [1] - 13:23
**stop** [1] - 6:10
**stuff** [1] - 11:7
**subject** [1] - 2:19
**supposed** [2] - 10:16, 10:21

## T

**TAAFFE** [19] - 6:16, 7:12, 8:9, 8:17, 8:22, 9:4, 9:6, 10:2, 11:9, 11:19, 13:13, 14:18, 14:21, 15:1, 16:7, 16:11, 16:16, 16:20, 17:1
**Taaffe** [9] - 1:16, 3:20, 3:22, 6:15, 7:11, 10:14, 11:6, 11:21, 16:3

**Taurus** [1] - 5:4
**terms** [4] - 6:13, 6:22, 7:4, 15:9
**THE** [76] - 1:1, 2:3, 2:4, 2:5, 2:7, 2:8, 2:15, 2:16, 2:22, 2:23, 3:1, 3:2, 3:8, 3:9, 3:11, 3:12, 3:15, 3:16, 3:18, 3:19, 3:21, 3:22, 3:25, 4:8, 4:12, 4:17, 4:18, 5:9, 5:10, 5:19, 6:15, 7:10, 8:7, 8:14, 8:19, 9:1, 9:5, 10:8, 10:13, 10:19, 11:3, 11:6, 11:11, 11:20, 11:23, 11:24, 12:2, 12:5, 12:8, 12:10, 12:13, 12:15, 12:17, 12:20, 12:22, 12:23, 13:1, 13:2, 13:3, 13:5, 13:7, 13:12, 14:1, 14:3, 14:9, 14:15, 14:17, 14:20, 14:24, 16:2, 16:9, 16:12, 16:18, 16:22, 17:2
**thereby** [2] - 9:15, 9:23
**third** [1] - 10:7
**threat** [1] - 6:14
**three** [1] - 5:23
**ties** [2] - 6:22, 7:1
**TINA** [1] - 1:21
**Tina** [2] - 18:3, 18:17
**tinted** [1] - 9:9
**today** [4] - 2:17, 2:18, 14:13, 16:5
**together** [1] - 12:3
**took** [2] - 9:2, 9:8
**TRANSCRIPT** [1] - 1:12
**trial** [2] - 3:6, 14:12
**true** [2] - 11:18, 18:12
**try** [1] - 16:19
**Tuesday** [1] - 11:13
**TWENTY** [1] - 1:22
**Twenty** [1] - 2:9
**TWENTY-SECOND** [1] - 1:22
**Twenty-Second** [1] - 2:9
**two** [6] - 5:10, 6:4, 7:15, 8:2, 15:2, 15:5
**types** [1] - 6:8

## U

**uncle** [1] - 14:4
**under** [2] - 4:14, 5:1
**understood** [1] -

10:18
**unlawful** [5] - 4:14, 4:25, 8:12, 15:3, 15:5
**unlawfully** [1] - 6:7
**unwillingness** [1] - 6:13
**up** [8] - 4:9, 8:21, 9:3, 10:23, 11:4, 15:4, 15:6, 16:1
**UUW** [4] - 5:22, 8:2, 8:3, 8:5

## V

**vehicle** [3] - 6:5, 6:9, 9:16
**versus** [1] - 13:16
**victim** [2] - 2:20, 10:11
**violate** [1] - 3:3
**violent** [1] - 15:15
**vs** [2] - 1:7, 18:9

## W

**walking** [1] - 13:23
**warrant** [1] - 3:3
**weapon** [3] - 15:3, 15:5, 15:15
**weapons** [4] - 6:8, 9:23, 13:24
**Wednesday** [2] - 11:13, 11:25
**week** [6] - 2:17, 6:22, 7:5, 14:13, 16:5, 16:10
**weight** [2] - 10:20, 13:15
**welcome** [1] - 17:2
**West** [7] - 2:6, 6:18, 11:12, 12:1, 12:6, 12:12, 12:24
**whatsoever** [1] - 15:14
**Whyte** [2] - 1:2, 2:8
**WILLIAMS** [13] - 4:2, 4:11, 5:16, 5:21, 8:15, 9:25, 10:4, 10:10, 10:18, 10:22, 11:5, 13:8, 13:14
**windows** [1] - 9:9
**worker** [1] - 6:21

## Y

**year** [4] - 4:19, 6:1, 6:2
**years** [3] - 5:23, 6:17, 7:16

## Z

**Zwilling** [1] - 9:12

# EXHIBIT 164

1          IN THE CIRCUIT COURT OF ST. LOUIS, MISSOURI
              22ND JUDICIAL CIRCUIT, DIVISION 16B
2               Honorable Christopher E. McGraugh

3

STATE OF MISSOURI,                    )
4                                      )
           PLAINTIFF,                  )
5                                      )CAUSE NO. 1922-CR02808
      vs                               )
6                                      )
DONALD DILLOW,                         )
7                                      )
           DEFENDANT.                  )
8

9               FIRST APPEARANCE HEARING
                   SEPTEMBER 3, 2019
10

11          Appearing on behalf of the plaintiff:  Nicholas

12   Lake.  Appearing on behalf of the defendant:  Melinda

13   Gorman.

14

15

16

17

18

19

20

21

22

23

24              JACQUELYN S. WILLIAMS, CCR,
                 OFFICIAL COURT REPORTER
25            CITY OF ST. LOUIS CIRCUIT COURT
              TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis, 04781

2

1          THE COURT:   We're here in the matter of State of

2     Missouri versus Donald Dillow, Cause No.  1922-CR02808.

3     We're here, Mr. Dillow, for an initial appearance.  The

4     docket here indicates that you were arrested three days

5     ago, and this is your initial appearance approximately 48

6     hours after.  We couldn't have your initial appearance

7     exactly 48 hours because this Court was closed Labor Day.

8     So that's the reason why you did not have the initial

9     appearance 48 hours from the date of your arrest.

10          We're here for an initial appearance, Mr.

11     Dillow.  Appearing also here is assistant circuit attorney

12     Nicholas Lake.  Also appearing is private counsel who will

13     be representing you solely for the purposes of this

14     hearing.  Her name is Melinda Gorman.

15          Ms. Gorman, are you waiving -- you understand,

16     Mr. Dillow, that you've been charged with sexual

17     misconduct involving a child.  You understand that?

18          THE DEFENDANT:   Yes, sir.

19          THE COURT:   Ms. Gorman, do you wish to have the

20     complaint read?

21          MS. GORMAN:   Your Honor, we will waive formal

22     reading of the complaint and enter a plea of not guilty at

23     this time.

24          THE COURT:   A plea of not guilty is being

25     entered on your behalf, Mr. Dillow.  Do you intend to

3

1    obtain counsel, Mr. Dillow, at this time?

2              THE DEFENDANT:    I can't afford one.

3              THE COURT:    Okay.  Have you applied to the

4    Missouri State Public Defender's office?

5              THE DEFENDANT:    No, sir.

6              THE COURT:    Okay.  That's what you're going to

7    need to do in order to obtain counsel in this matter for

8    them to determine whether you're, in fact, indigent.  Your

9    bond presently is $25,000 cash only.  Do you have any

10   means in order to make a bond in this matter?

11             THE DEFENDANT:    No, sir, I don't.

12             THE COURT:    I understand from the state that

13   they wish to offer a victim in this case.

14             MR. LAKE:    That is correct, Your Honor.

15             THE COURT:    Okay.  We can do that at this time.

16             MR. LAKE:    Good morning, Your Honor.  It's my

17   understanding that this is the mother of the victim in

18   this case.

19             THE COURT:    Will you please give your name to

20   the court reporter?

21             MS. JACKSON:    Evelyn Jackson.

22             THE COURT:    Ms. Jackson, what is it that you

23   want to tell me?

24             MS. JACKSON:    That he showed his privates to my

25   daughter for as long as he known her as much as he could

4

1   and he tried to see her private part.  He tried to touch

2   on her private part, and a four year old is the person

3   that told me this with her own mouth whether she want to

4   come and testify about it or not.

5            This is his second offense with this.  He needs

6   to be in jail for the rest of his life.  It's no reason

7   why a seven year old should ever see a grown man.  He's

8   too old.

9            THE COURT:   Okay.  All right, Ms. Jackson.

10   Thank you.  Mr. Lake, I'm interested as to this

11   allegation.  This is the second time for this.  Was there

12   a --

13            MS. GORMAN:   There's a prior from 2009, Your

14   Honor, for what looks like Mr. Dillow served five years in

15   the Missouri Department of Corrections.

16            MR. LAKE:   Correct, Your Honor.  The charge in

17   that was sexual misconduct involving a child under the age

18   of 15.  As defense counsel pointed out, the defendant

19   received five years confinement.  It should also be noted

20   that I'm showing a prior arrest out of Lexington, Kentucky

21   in 1999 for rape of a child.

22            THE COURT:   Mr. Dillow, where do you reside?

23            THE DEFENDANT:   3854 Illinois Avenue.

24            THE COURT:   Okay.  I first should tell you, Mr.

25   Dillow, that anything you say can and will be used against

5

1    you.  Everything is being recorded here.  So I want you to

2    be extremely careful as to anything you tell me, okay?

3              THE DEFENDANT:    Yes, sir.

4              THE COURT:    I'm going to try to stay away from

5    anything that relates to your prior offenses or this

6    charge that you're presently standing charged for.  What

7    I'm interested as to are you employed?

8              THE DEFENDANT:    Yes, sir.

9              THE COURT:    What do you do, sir?

10             THE DEFENDANT:    Truck driver at Produce Row.

11             THE COURT:    You're a truck driver?

12             THE DEFENDANT:    Yes, sir, on Produce Row.

13             THE COURT:    Does that take you I'm assuming out

14   of the jurisdiction?

15             THE DEFENDANT:    Yes, sir, it does.  Only a

16   couple places over in Illinois.  The furthest stop over in

17   Illinois is five miles.

18             THE COURT:    All right.  Anything from the state?

19             MR. LAKE:    Sure, Your Honor.  If I can provide a

20   little more background into the particulars of this case.

21             THE COURT:    I don't necessarily need any more

22   particulars to this case.

23             MR. LAKE:    Okay.  Then, Your Honor, just based

24   on the nature of the charges, the defendant's prior

25   convictions and arrests related to this same type of

Dixon v. City of St. Louis, 04785

6

1    conduct, the state believes he does pose a danger to the

2    victim in this case as well as the general community and

3    would be opposed to any kind of reduction at this time.

4              It should also be noted that it's my

5    understanding that the defendant knows the victim from

6    being around the neighborhood.  So it sounds like they --

7    it wouldn't be unforeseeable that they would have contact

8    should he be released and based on the questions that the

9    Court just asked, the state also believes that the

10   defendant does pose a potential flight risk given his

11   occupation.

12             THE COURT:   Okay.  Ms. Gorman.

13             MS. GORMAN:   Your Honor, if I may.  Looking at

14   the information on file, it would appear that Mr. Dillow

15   served in the Air Force from 1967 until 1992 and received

16   an honorable discharge for that service.  He has also

17   graduated from high school, has higher education and has

18   been in the community for 46 years.

19             I would ask that the Court, considering that the

20   bond is set at 25,000 cash only now, consider setting the

21   bond at 5,000 cash only with GPS, no contact with the

22   victim and see if this is something that the Bail Project

23   would be willing to post bond on.

24             THE COURT:   Okay.  Anything further?

25             MS. GORMAN:   No, Your Honor.

7

1          MR. LAKE:   No, Your Honor.

2          THE COURT:   All right.  As I stated, Mr. Dillow,

3    your cash bond is at 25,000 cash only.  Given the fact

4    that you do have prior offenses for the same or similar

5    conduct and as well that you live in the state of Illinois

6    and that your job is to actually -- as a truck driver, I

7    don't believe that there are any -- and given the nature

8    and circumstances of the offense, I believe that there is

9    really no condition under Missouri Supreme Court Rule

10   33.01 that would satisfy your return here to court, much

11   less keep the conditions or keep the public safe and as

12   such, I'm not modifying the conditions of your bond at

13   this time.  Although I am setting this for a bond hearing

14   next Monday -- I guess it would be next Tuesday, seven

15   days.

16          MR. LAKE:   Correct.

17          THE COURT:   Which would be the 10th,

18   September 10th at 10:30 a.m. at which time I would suggest

19   that you fill out some paperwork for the public defender's

20   office to determine whether you can get representation,

21   and at that bond haring you will be given an opportunity

22   to set up what possible conditions under the Missouri

23   Supreme Court Rule 33.01 which would assure the safety of

24   the community as well as would assure your return to

25   court.

Dixon v. City of St. Louis, 04787

8

1              So this case is continued to September 10th,

2    2019 at 10:30.  Is there anything further on behalf of the

3    parties?

4              MR. LAKE:    No, Your Honor.

5              MS. GORMAN:    No, Your Honor.

6              THE COURT:    That concludes the record.

7              (End of proceedings.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

## **REPORTER'S CERTIFICATE**

      I, Jacquelyn S. Williams, Certified Court Reporter, do hereby certify that I am an official court reporter for the Circuit Court of the City of St. Louis; that on September 3, 2019, I was present and reported the proceedings had in the case of State of Missouri, Plaintiff, vs. Donald Dillow, Defendant, Cause No. 1922-CR02808.

      I further certify that the foregoing pages contain a true and accurate reproduction of the proceedings.

"/s/JACQUELYN S. WILLIAMS, CCR #870"

Dixon v. City of St. Louis, 04789

# EXHIBIT 165

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Michael J. Colona, Judge

STATE OF MISSOURI,  )
                    )
        Plaintiff,  )
                    )
    vs.             )   1922-CR03801
                    )
FERNANDO ALENCAR,   )
                    )
        Defendant.  )

INITIAL APPEARANCE HEARING

On the 9TH day of December, 2019, the

above-entitled cause came on regularly for hearing before

the Honorable Michael J. Colona, in Division 16B of the

Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by

Steven Payne, City of St. Louis, State of Missouri.

The Defendant was present by video and was

represented by Chris Faerber.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

December 9, 2019

1

2      THE COURT:    Mr. Alencar, my name is Judge Colona.

3  Present in the courtroom is an attorney from the State of

4  Missouri, circuit attorney, and there is also an attorney

5  here that's standing in on your behalf to talk about your

6  pretrial release.

7          I'm sure you know, or if you don't, I'm going to

8  tell you, you are charged with robbery in the first degree

9  which is a Class A felony.  That carries with it a term of

10 imprisonment of ten years to 30 or life.  So it's a pretty

11 serious case.

12         Your present bond I believe is $100,000 cash

13 only.  So our purpose today is for me, one, to tell you

14 what you're charged with, let you know what the range of

15 punishment is.  And then the State of Missouri is going to

16 present an argument about your bond, their suggestion on

17 what to do, and then the attorney who is here representing

18 you will give me their opinion on what an appropriate bond

19 is.

20         I will have some follow-up questions for both

21 the attorneys and I may have a question for our bond

22 commissioner.  If I have a question for you, I will direct

23 it to your attorney.  And then if you wish to speak, you

24 got to check with your lawyer, okay.  'Cause sometimes

25 when people talk they just accidentally jam themselves up.

Dixon v. City of St. Louis, 04642

1    So before you say anything, I want to make sure that you

2    have the opportunity to kind of talk to your lawyer for a

3    sec because a lot of times the lawyer can tell me

4    everything it is that you might want to get out there,

5    okay?

6              So, the State of Missouri want to tell me what's

7    going on?

8              MR. PAYNE:    Judge, first the State would request

9    that there be some inquiry into his community ties and where

10   he would stay.  The bond commissioner's report did mention

11   that he's been homeless for approximately two years and that

12   would have an impact on our recommendation.

13             THE COURT:    So, Mr. Alencar, before you were

14   arrested for this where were you living?

15             THE DEFENDANT:    The Biddle House, sir.

16             THE COURT:    How long had you been at the Biddle

17   House?

18             THE DEFENDANT:    A homeless shelter.

19             THE COURT:    About how long had you been there?

20             THE DEFENDANT:    I have been there for three months

21   and I'd just gotten housing through them.

22             THE COURT:    Okay.  Prior to living at the Biddle

23   House, where did you reside?

24             THE DEFENDANT:    Oh, with my parents, sir.

25             THE COURT:    Where is that at?  Was that here in

1   St. Louis?

2                   THE DEFENDANT:    No.  That is in St. Charles.

3                   THE COURT:    St. Charles, okay.  And how long were

4   you living with your parents before you ended up at Biddle

5   House?

6                   THE DEFENDANT:    A couple years.

7                   THE COURT:    A couple years, okay.  Was there any

8   time that you spent in between living with your parents and

9   Biddle House somewhere else?

10                  THE DEFENDANT:    No, sir.

11                  THE COURT:    Okay.  So in other words when you got

12  done living with your parents, you ended up at Biddle House

13  like soon afterwards, right?

14                  THE DEFENDANT:    Right.

15                  THE COURT:    Okay.

16                  MR. PAYNE:    Judge, the defendant's bond currently

17  sits at $100,000 cash only.  It is the State's

18  recommendation that the bond be amended to 50,000

19  ten percent authorized, but with the added conditions he

20  make contact with Places for People and he complete a mental

21  health evaluation.  Additionally, he possess no firearms,

22  report to EMASS monthly, and that he seek full-time

23  employment.

24                  The facts surrounding this case involve the

25  defendant being at a local restaurant kitchen at 4 AM in

1   which he was seated in the booth, but then stood and began

2   pacing around the restaurant.  The victim in this case was

3   counting her tips at a table when the defendant approached

4   her and had his hand in his pocket as if he had a gun

5   demanding that she hand over all of her money.  Believing

6   it was a gun she did hand over the money and then he left.

7               Police responded and obtained a description of

8   the defendant.  He was shortly thereafter taken into

9   custody.  There is surveillance footage showing the

10  defendant was wearing the same hat and shoes in the video

11  of the robbery when he was picked up by the police.

12  Additionally, the victim was able to identify him through

13  a show-up procedure.

14              It should be important to note to the Court that

15  there are no prior convictions that were listed on the

16  bond commissioner's report and the State was unable to

17  locate any priors, which is the reason for our

18  recommendation.

19              MR. FAERBER:    May I inquire, your Honor?

20  Fernando, my name is Chris Faerber.  I'm a local private

21  defense attorney.  I'm representing you today and today only

22  for the purposes of this hearing.  This hearing is to

23  determine if we can get you out on some reasonable bond.

24              So I'm going to ask you some questions, but it's

25  just about your background, family ties, things like that.

Dixon v. City of St. Louis, 04645

1    Do not talk about any facts to do with the case against

2    you or the allegations against you, okay?

3                    THE DEFENDANT:    Okay.

4                    MR. FAERBER:    Okay.  So I see you have a child?

5                    THE DEFENDANT:    I do have a son.  He's two years

6    old.

7                    MR. FAERBER:    And he lives locally?

8                    THE DEFENDANT:    Yes.  He lives with his baby's

9    mother and my parents.

10                   MR. FAERBER:    Okay.  And you had been --

11                   THE DEFENDANT:    In St. Charles.

12                   MR. FAERBER:    And you had been living with your

13   parents at some point?

14                   THE DEFENDANT:    At some point, yes.

15                   MR. FAERBER:    You mentioned that you had obtained

16   housing.  You were about ready to move into that when you

17   got arrested?

18                   THE DEFENDANT:    Yes, sir.

19                   MR. FAERBER:    Okay.  You previously have worked

20   for Tyson Food; is that right?

21                   THE DEFENDANT:    Yes, sir.

22                   MR. FAERBER:    That was your last employment?

23                   THE DEFENDANT:    Yes, sir.

24                   MR. FAERBER:    And you graduated high school?

25                   THE DEFENDANT:    Yes, sir.

1          MR. FAERBER:    So I see you made actually pretty

2   decent salary at Tyson, 60,000 or something like that?

3          THE DEFENDANT:    Yes, sir.

4          MR. FAERBER:    So you're likely capable of finding

5   a job somewhere out there?

6          THE DEFENDANT:    Yes, sir.

7          MR. FAERBER:    Especially now that you have

8   housing?

9          THE DEFENDANT:    Yes, sir.

10          MR. FAERBER:    Thank you, your Honor.

11          THE COURT:    Anything else from the State?

12          MR. PAYNE:    Not at this time, your Honor.

13          MR. FAERBER:    Leave for argument, please, your

14   Honor?

15          THE COURT:    Yeah, but I have --

16          MR. FAERBER:    Unless you have more questions.

17          THE COURT:    Do you know anything about medical or

18   mental history?  I've got a note that -- I guess there is a

19   diagnosis for schizophrenia, anxiety, bipolar and history of

20   substance abuse with cocaine.

21          MR. PAYNE:    I think that likely came from him.

22          THE COURT:    Okay.  So, Mr. Alencar, I'm going to

23   ask you a couple questions and again this doesn't really go

24   to guilt or innocence.  What I'm trying to figure out is

25   whether or not to follow the recommendation of the State of

1    Missouri to modify your bond or to leave it where it

2    currently is.  And some of the things that I have to

3    consider before I reduce any bond or I change any bond is

4    public safety.

5              So I have some notes here that I guess came from

6    you when you did your intake when they arrested you.  Have

7    you been diagnosed with schizophrenia or bipolar disorder?

8              THE DEFENDANT:   Bipolar, yes.  Not schizophrenia.

9              THE COURT:   Have you ever been treated for

10   schizophrenia?

11             THE DEFENDANT:   No, no, sir.

12             THE COURT:   Okay.  Any idea where that came from,

13   why that's written down here?

14             THE DEFENDANT:   I do take one medication that's

15   for schizophrenia.  That's probably why I said that.  One of

16   the medications is for schizophrenia and bipolar, but I've

17   never been diagnosed with schizophrenia.  Only diagnosed

18   with bipolar.

19             THE COURT:   So when you were at Biddle House how

20   did you get your medication?

21             THE DEFENDANT:   Through the Salvation Army.  I

22   have a, I run a program at Salvation Army, a drug program.

23             THE COURT:   How often would you go to the

24   Salvation Army to get your medication and stay on top of

25   that?

1          THE DEFENDANT:    I, I go every day to Salvation

2    Army.

3          THE COURT:    Okay.

4          THE DEFENDANT:    Do ten classes a week.

5          THE COURT:    Mr. Alencar, so one concern is your

6    mental health condition.  So if I amend your bond, part of

7    the pretrial release requirements are that you take your

8    medication that's been prescribed to you as prescribed,

9    okay?

10          THE DEFENDANT:    Yes, sir.

11          THE COURT:    I got personal experience with family

12    members.  When they're taking their medication, they're

13    good.  But then when they're taking the medication, they're

14    like, well, I don't need to take my medication because I'm

15    good.  And then they stop taking their medication.  So if I

16    amend your bond, I want to make sure that the expectations

17    on you are crystal clear.  So if I amend your bond, I don't

18    care if you're feeling good or not, you have to take your

19    medication as prescribed.  If you don't, that would be a

20    violation, okay.  Now let me ask --

21          THE DEFENDANT:    Yes, sir.

22          THE COURT:    Let me ask you about the housing with

23    Biddle House.  You were just picked up on this, right?

24          THE DEFENDANT:    I was, I -- they just gave me

25    housing assistance for three months and I just find my place

Dixon v. City of St. Louis, 04649

1    and I was to, I was supposed to move in on Friday.

2            THE COURT:    So what does housing assistance mean?

3    What does that mean?

4            THE DEFENDANT:    Okay.  They are paying for three

5    months and double deposit, and then subsidized after that.

6    And then once I find employment I'll take over.

7            THE COURT:    Okay.  So I tell you what, here's what

8    I'm going to do.  I want to get a little bit more

9    information before I let you out, okay, because I still have

10   a concern about public safety and what you've got going on.

11           So first of all, you're going to get an

12   automatic return date to come back and look at your bond

13   within seven days, okay.  So next week your bond is going

14   to be revisited.  But in between now and next week, and I

15   believe I can do this, I want to get you evaluated by our

16   treatment courts to see maybe if you're eligible for one

17   of our treatment programs here.  Because if you are, that

18   will help you greatly in trying to get to a bond that

19   maybe you can manage, okay.

20           But the point is I want to get a little bit more

21   input from some of the professionals here to advise me on,

22   you know, what a good path to move forward on your case

23   would be, okay.

24           MR. FAERBER:    Your Honor, given the nature of the

25   charge I don't think he would be eligible for treatment

1    court, unless there is some new program that popped up.

2              THE COURT:    Is that an automatic box out for this

3    charge?

4              MR. PAYNE:    Yeah, I believe so, judge.

5              THE COURT:    Even though treatment court might be

6    completely warranted for mental health issues?

7              MR. PAYNE:    I am unaware of a program that he

8    would be eligible for for the charges that currently exist.

9              THE COURT:    Okay.

10             MR. FAERBER:    Could I ask him one more thing, your

11   Honor?

12             THE COURT:    Of course.

13             MR. FAERBER:    Fernando, is there any level of bond

14   that you could afford or potentially your mother could

15   afford, like a ten percent bond, like a 10,000, ten percent

16   or something along those lines?

17             THE DEFENDANT:    Something along those lines maybe.

18   But 5,000 something maybe.

19             MR. FAERBER:    Like 5,000 outright or 5,000,

20   ten percent?

21             THE DEFENDANT:    I don't know, I don't know if I --

22   you mean --

23             MR. FAERBER:    Like 10 percent would be $500 of

24   5,000.  So would your parents be able to afford like the

25   full 5,000 which would be the equivalent of what the State

1    is recommending, or would that be too much?  Would they only

2    be able to afford less?  Like 500?

3              THE DEFENDANT:    They would definitely be able to

4    afford 500, yes.

5              MR. FAERBER:    Is there an amount in between that

6    you think they could afford?

7              THE DEFENDANT:    A thousand, I would think so.

8              MR. FAERBER:    Okay, thank you.

9              THE DEFENDANT:    They paid 2500.  I think they

10   would, 2500.  I'm not sure.

11             MR. FAERBER:    Okay, thank you.  All right.

12             DEPUTY CAIN:    Any further from the State?

13             MR. PAYNE:    No, your Honor.

14             THE COURT:    Any victim here?

15             MR. PAYNE:    Not on this one.

16             THE COURT:    Okay.

17             MR. FAERBER:    Your Honor, if I may?

18             THE COURT:    Yeah.

19             MR. FAERBER:    As far as the two prong test

20   attached here, the Supreme Court Rule 33.01, I do not

21   believe there is much of a, if at all, a risk of danger to

22   society in general.  It sounds like he was just on the cusp

23   of getting his feet underneath him.  He does not have

24   priors.  This is not a case where even the allegations

25   include a weapon.  There's no charged weapon.  And also

1   there is no spree here.  So there's no pattern of behavior.

2          He does have family ties locally.  He had lived

3   with his parents.  He has a child.  And he has the ability

4   given his past to go out and find a good job.  And I think

5   that is a distinct possibility now that he has a base such

6   as housing paid for over the next three months.

7          So if we could find something lower than the

8   50,000 ten percent, as he won't be able to afford that and

9   part of this test has an affordability aspect, so one

10  cannot continue to be held simply because that person

11  cannot afford a bond.  If we could do a 25,000,

12  ten percent or a 10,000, ten percent, I think that would

13  be more appropriate, your Honor.

14          THE COURT:    So my concerns again are the

15  seriousness of the crime with a Class A felony, the

16  allegations of homelessness and some mental health issues.

17          MR. FAERBER:    Which it seems like he is addressing

18  all those.

19          THE COURT:    Let's be real.  The family ties are in

20  a county far, far away where if I have homelessness issues,

21  I also have transportation issues.  I, you know, I don't

22  know where Biddle House set Mr. Alencar up for residency.  I

23  don't know if the family in St. Charles is going to be able

24  to help him get back and forth to court.  Really no reason

25  that you should have known that or tried to inquire.

1               So for today I'm going to leave the bond where

2        it is.  But I think these are some issues that you can dig

3        into for the seven day call back to see if there is any

4        support there, to make sure that he can not only get back

5        and forth to court from a transportation perspective, but

6        also have some support when it comes to making sure

7        there's a follow-through with the mental health treatment

8        that he's currently getting.

9               And you can feel free to put that in the order

10       that perhaps these are issues that should be revisited

11       that might shed some additional light to the judge next

12       week.

13              So, Mr. Alencar, your lawyer has done a really

14       good job at trying to highlight some of the issues out

15       there that would work in your favor to reduce your bond.

16       But you also just heard me express my concerns.  So again

17       you will be brought back here within a week -- or within

18       seven days and hopefully the attorney that's been working

19       on your case can provide the answer to some of those

20       questions that I proposed.  And then your bond will be

21       revisited on that date, okay?  And then we -- I give him a

22       call back date of December 16th?

23              CLERK:   Yes.

24              THE COURT:    So will that be at 1:30 or 9 for the

25       16th?

| | |
|---|---|
| 1 | CLERK:    10:30. |
| 2 | THE COURT:    So, Mr. Alencar, I'm going to give you |
| 3 | two court dates.  One, your bond will be revisited on |
| 4 | December the 16th at 10:30 in the morning just like this. |
| 5 | And then I'm also going to give you a court date in one of |
| 6 | our other divisions to move your case forward, you know, as |
| 7 | far as getting it ready for trial.  And that court date will |
| 8 | be January the 10th, looks like in Division 25 at 9 AM. |
| 9 | Okay?  So you'll be back here within a week.  Try and touch |
| 10 | base with your attorney if you can to give him or her some |
| 11 | more information that they can use when we revisit your bond |
| 12 | issue next week, all right?  Very good. |
| 13 | THE DEFENDANT:    All right.  So what is the bond |
| 14 | right now? |
| 15 | THE COURT:    Your bond right now is $100,000 cash |
| 16 | only, okay. |
| 17 | THE DEFENDANT:    Okay. |
| 18 | THE COURT:    Thank you. |
| 19 | END OF TRANSCRIPT |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1                          CERTIFICATE

2             I, ELLEN L. VINCE, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on December

5    9, 2019, I was present and reported all the proceedings had

6    in the case of STATE OF MISSOURI, Plaintiff, vs. FERNANDO

7    ALENCAR, Defendant, Cause No. 1922-CR03801.

8             I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15                 /s/Ellen L. Vince

16

17   _____
                ELLEN L. VINCE, CCR, CSR, CM
18                      CCR #350

19

20

21

22

23

24

25

# EXHIBIT 166

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT

STATE OF MISSOURI,          )
                            )
        Plaintiff,          )
                            )
v.                          )   No. 1922-CR03421
                            )
GREGORY POWERS,             )
                            )
        Defendant.          )
_____

**FIRST APPEARANCE HEARING**
_____

On Monday, October 28, 2019, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Jonathan Phipps, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Eric Barnhart, Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

1          **THE COURT:**  All right.  We are on the record

2     in 1922-CR03421, State vs. Gregory Powers.  Entering a

3     plea of not guilty and waiving formal reading of the

4     complaint, Mr. Barnhart?

5          **MR. BARNHART:**  Yes, Your Honor.

6          **THE COURT:**  The State with regard to the

7     bond.

8          **MR. PHIPPS:**  Yes, Judge.  We first ask that

9     the Court take judicial notice of its file along with

10    the bond commissioner's report.

11         **THE COURT:**  I do and I have read both.

12         **MR. PHIPPS:**  Judge, as indicated in the

13    probable cause statement this is an altercation that

14    got rather violent which involved her garments

15    ripping, her phone being thrown out of the cab window

16    while moving preventing her from communicating with

17    others for help.  Also causing extensive bruising to

18    her back, arm and injuring her foot.

19         The defendant then proceeded to urinate on

20    the victim and threw her on the ground in some bushes.

21    Also grabbed her purse ripping it and destroying the

22    items.  She was also unable to use her dominant right

23    hand to write.  The victim did go to the hospital

24    again recently and found out that her hand was broken

25    during this altercation.  We would ask to defer to the

1    bond commissioner as to the defendant's criminal

2    history.

3            **BOND COMMISSIONER:**  Judge, Mr. Powers'

4    history is that he had a -- is presently on probation

5    for possession of a controlled substance in 2017.

6    Five years probation on that.  Looks like he was

7    revoked and did five years in the department of

8    corrections.  In 2016, unlawful possession of a

9    weapon.  Three years imprisonment on that and that was

10   in Illinois.  2015, possession of a firearm.  24

11   months probation on that.  That was in Illinois.  And

12   2015, again a mob action.  30 days imprisonment and

13   that was in Illinois.

14           **MR. PHIPPS:**  Judge, the State has a great

15   concern for the safety of this victim.  She was going

16   to attend today but was unable to make it.  She has

17   stated to our office that she's very fearful of the

18   defendant and is concerned that if he was released her

19   safety is at risk.  As such, the State would be

20   requesting $25,000 cash only with an order to stay

21   away from the victim and residence along with GPS

22   monitoring through Emass.

23           **THE COURT:**  I thought I showed that that's

24   what it was set at currently.

25           **MR. PHIPPS:**  It is currently set at 25,000,

1    Judge.

2          **THE COURT:**  I also show in the pretrial

3    release report -- Mr. Powers, it says length of

4    residence in the community one day.

5          **THE DEFENDANT:**  Excuse me?

6          **THE COURT:**  It says length of residence in

7    the community being one day.  Am I reading that right?

8    How long have you lived --

9          **THE DEFENDANT:**  No.  I don't live in

10   St. Louis.  I live actually in Granite with my mother.

11         **THE COURT:**  That's what you meant by --

12   okay.

13         I also show that you're a student.  Where

14   are you a student?

15         **THE DEFENDANT:**  At SIUE.

16         **THE COURT:**  Are you still currently?

17         **THE DEFENDANT:**  Yes, sir.  Well, as of today

18   I don't know.  I am sure if I miss up to three days

19   they'll request for me to be dropped from the classes.

20   I missed one as of right now with it being Monday.

21         **THE COURT:**  Financial resources, you show a

22   student loan and your parents assistance.  How much

23   was your student loan?

24         **THE DEFENDANT:**  My student loan was

25   48 -- 38.  I ended up with my mom because my mom and

1    my dad they pay for literally everything, so I gave

2    them -- it was actually financial aid, a student loan.

3              **THE COURT:**  3,800 or 38,000?

4              **THE DEFENDANT:**  3,800 bucks.

5              **THE COURT:**  Mr. Barnhart.

6              **MR. BARNHART:**  Thank you.

7              Good afternoon, Mr. Powers.  I'm Eric

8    Barnhart.  I'm your attorney for today only.  I'm

9    going to try to get your bond reduced today, okay?

10             **THE DEFENDANT:**  Thank you.

11             **MR. BARNHART:**  The judge already asked a lot

12   of my questions.  What do you think your mom could

13   afford if I would ask for a 10 percent bond?  Could

14   she afford a 25,000, 10 percent which would be 2,500

15   with the Court?

16             **THE DEFENDANT:**  Honestly, no, I don't think

17   she would be able to.

18             **MR. BARNHART:**  What about 10,000, 10

19   percent, a thousand dollars?

20             **THE DEFENDANT:**  Possible.  I honestly don't

21   think so, no, but -- no.  I don't think so.  I'm

22   sorry.  But, I mean, the lower the bigger possibility.

23             **MR. BARNHART:**  I am just trying to get the

24   judge --

25             **THE DEFENDANT:**  I don't know.

1          **MR. BARNHART:**  -- to grant it.  So the

2    higher the better.  I understand you want it lower the

3    better, but I'm just trying to come up with something

4    that would convince the judge that he might --

5          **THE DEFENDANT:**  Yes, sir.

6          **MR. BARNHART:**  -- approve.

7          All right.  Thank you.  Judge, my argument

8    is this.  It is a Class E felony the way it is

9    charged, so the maximum punishment is up to four

10   years.  If he's prior and persistent it would be up to

11   seven years.  The rest of them are all misdemeanors,

12   so I guess there's six charges.  Five of them are

13   misdemeanors and one of them is a felony.

14         He is going to school.  He's taken out

15   loans.  Sounds like his -- you know, mom.  He lives

16   with his mom.  I mean, he's presumed to be innocent,

17   so I'm going to ask for a 10,000, 10 percent, put him

18   on GPS through Emass and stay away from the

19   complaining witness.  Thank you.

20         **THE COURT:**  Anything else?

21         **MR. PHIPPS:**  Judge, if the Court was going

22   to be granting a reduction in bond, we would also

23   request the stay-away encompass SLU's medical campus

24   and regular campus.  The victim is a student and she

25   is present in both of those campuses.

1          **THE COURT:**  Okay.  What about with regard to

2     his residency in Illinois?  Does that cause a problem

3     for his bond?

4          **MR. PHIPPS:**  I don't know whether that would

5     cause an issue with GPS.

6          **BOND COMMISSIONER:**  No, it wouldn't, Judge.

7     They will still be able to track him.

8          **THE COURT:**  All right.  Two competing

9     factors.  One is it is an E felony and the rest are

10    misdemeanors.  So I want to set a bond that's in

11    conjunction with that level of the charged offense.

12    On the other hand, I agree with the State.  There's a

13    lot of concern about the safety of the alleged victim

14    in this matter.

15         So I am going to reduce the bond to 15,000,

16    10 percent with whatever conditions need to be added

17    with regard to any contact whatsoever with the victim

18    which, Mr. Powers, you understand any contact -- and I

19    assume you can include with that calling or --

20         **MR. PHIPPS:**  Any and all contact.

21         **THE COURT:**  Any contact whatsoever is going

22    to be an immediate violation of your bond.  Do you

23    understand that?

24         **THE DEFENDANT:**  Yes, I do, Your Honor.

25         **THE COURT:**  And special conditions -- were

1   you saying GPS monitoring through Emass?

2        **MR. BARNHART:**  Yes.

3        **THE COURT:**  Do you understand that,

4   Mr. Powers?

5        **THE DEFENDANT:**  I didn't understand your

6   last comment.

7        **THE COURT:**  Your whereabouts will be

8   monitored by an ankle bracelet or whatever they use

9   now.

10       **THE DEFENDANT:**  Yes.  That's completely fine

11   now.

12       **THE COURT:**  All right.  Your next court date

13   will be November 4th at 10:30 if needed.  Otherwise,

14   it will be Division 25 at 9:15 on November 26th.

15   Anything else on the record for Mr. Powers?

16       **MR. BARNHART:**  No, Judge.  Thank you.

17       **MR. PHIPPS:**  No, Judge.

18       **THE COURT:**  That will conclude the record.

19   You will get a copy of the paperwork.

20       **THE SHERIFF:**  Excuse me.  Judge, Mr. Powers

21   has a question for you.

22       **THE COURT:**  Yes.

23       **THE DEFENDANT:**  Is there a possibility you

24   would consider a recognizance considering my mother is

25   probably not capable of financially funding the bond?

1   I have -- like I'm not necessarily like a flight risk.

2   I live literally 15 minutes from the bridge and I have

3   also turned myself in on the last Missouri case.  My

4   failure to appear actually came about.

5          **THE COURT:**  I think that that is a

6   possibility, but I think between now and next Monday

7   if you're not going to be able to make this bond you

8   should have your mom -- who can she get a hold of?

9          **MR. BARNHART:**  Like --

10         **THE COURT:**  Do they intend to hire an

11   attorney?  Do you know, Mr. Powers?

12         **THE DEFENDANT:**  No, I do not.  I don't think

13   so.  My mom actually just came back home on a business

14   trip and she ended up spending money there ruining her

15   car, so I don't think she's going to be capable of

16   financially funding the bond which is why I asked for

17   a recog.

18         **MR. BARNHART:**  There is The Bail Project

19   potentially.

20         **THE COURT:**  Mr. Barnhart has pointed out

21   that there is The Bail Project which they sometimes

22   will make bonds for individuals who can't afford them.

23   Are you in contact with your mom now that she's back

24   in town?

25         **THE DEFENDANT:**  I can try and contact her,

1    yes, sir.

2              **THE COURT:**  Okay.  The Bail Project would be

3    an option, also.  Your next court date is next Monday,

4    one week from today, at 10:30.  Would she be available

5    to be present at that court date?

6              **THE DEFENDANT:**  Yes, sir, if she gets notice

7    that court is that day, yes, sir.  She will take off

8    for that.

9              **THE COURT:**  All right.  I would say that

10   that's the best avenue to strengthening your argument

11   for a lower bond.  Anything else?

12             **THE DEFENDANT:**  Yes, sir.

13             **THE COURT:**  All right.

14             **THE DEFENDANT:**  No, sir.

15             **THE COURT:**  That will end the record.

16             (End of proceeding.)

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATE
 2              I, Jenna L. Higgins, Certified Court
 3   Reporter, do hereby certify that I am an official
 4   court reporter for the Circuit Court of the City of
 5   St. Louis; that on October 28, 2019, I was present and
 6   reported all the proceedings had in the case of State
 7   of Missouri vs. Gregory Powers,
 8   Cause No. 1922-CR03421.
 9              I further certify that the foregoing
10   pages contain a true and accurate reproduction of the
11   proceedings.
12
13
14              Jenna L. Higgins
15              Jenna L. Higgins, CCR 998
                CSR (IL and MO)
16
17
18
19
20
21
22
23   TRANSCRIBED:  July 30, 2020
24
25
```

# EXHIBIT 167

1

```
 1              IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                            STATE OF MISSOURI
 2                  Michael K. Mullen, Circuit Judge

 3

 4   STATE OF MISSOURI,            )
                                   )
 5                 Plaintiff,      )
                                   )
 6             vs.                 )   Cause No. 1922-CR02307
                                   )
 7                                 )      Division No. 16B
                                   )
 8   HERMAN CANAMORE III,          )
                                   )
 9                 Defendant.  )

10

11

12

13
                       FIRST APPEARANCE HEARING
14                         July 25, 2019

15

16

17   JEREMY CROWLEY
       Assistant Circuit Attorneys
18     1114 Market Street
       St. Louis, MO  63101
19            on behalf of the State;

20   CHARLES BARBERIO
       St. Louis, MO  63108
21            on behalf of the Defendant.

22   Also Present:  Victor Kelly, Bond Commissioner

23

24              LAURIE A. BENNETT, CCR #407
                  OFFICIAL COURT REPORTER
25            CITY OF ST. LOUIS CIRCUIT COURT
               TWENTY-SECOND JUDICIAL CIRCUIT
```

Dixon v. City of St. Louis, 04217

```
 1              THE COURT:  This is Cause Number 1922-CR02307.

 2     It's styled State of  Missouri versus Herman Canamore.

 3     Mr. Canamore is present in the courtroom via

 4     videoconference.  The Circuit Attorney's Office is

 5     represented by assistant circuit attorney Jeremy Crowley.

 6              Mr. Canamore, Mr. Charles Barberio is in the

 7     courtroom.  He is representing you for the limited

 8     purposes of this initial appearance only; do you

 9     understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  So you can't see him, but he can see

12     you, and he'll probably talk to you about what went on

13     today to answer any questions you might have if you're

14     not let out, but I want you to know that he's here for

15     that.

16              I want to let you know that you're charged with

17     domestic assault in the 2nd degree.  That is a Class D

18     felony, okay.

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  My next job is to determine what bond

21     I'm going to set on you, if I set a bond.  Your bond

22     right now is set at no bond.  We might ask you some

23     questions about some things.  I don't want you to talk

24     about the facts of your case, like what did happen or did

25     not happen or what did you do or did not do.  We might
```

1    ask you some background stuff, like whether you work or

2    how much money you make or what property you own, because

3    we're trying to figure out what might be an appropriate

4    bond.  Okay.

5              **THE DEFENDANT:**  Yes, sir.

6              **THE COURT:**  Let me ask the state first what their

7    position is on the bond.

8              **MR. CROWLEY:**  Your Honor, the state is requesting

9    the defendant be detained at this time due to safety

10   concerns for the victim.

11             The basic facts of the case are that on July 23th,

12   2019, the victim and defendant had been in a romantic

13   relationship for about twenty years.  When the officers

14   were called out to the scene, when they arrived they

15   found the victim in the front yard crying and screaming

16   for help yelling that he was inside breaking her stuff.

17   She had blood dripping from her lip.  She described him

18   as very controlling, a very controlling person.  Said

19   that he was angry with her because she went out the night

20   before with her sister.

21             This day he was still angry with her.  He left

22   early in morning.  When he came back, he was still angry,

23   left again for a short time.  And when he came back, he

24   saw she was writing a letter, in which she was basically

25   writing a letter to him to kind of explain what was going

4

 1      on in their relationship.  He believed she was writing a

 2      letter to another man.  He demanded to read it.  She

 3      wouldn't give it to him.  An argument started.  She asked

 4      him to leave.  He said, "Bitch, you pack my things and

 5      I'll leave."

 6              She called her son for help.  He accused her of

 7      calling another man and began punching her in the face

 8      multiple times.  He also pushed her onto the couch where

 9      her infant grandchild was sitting with a 10-year old

10      niece.  He then held her down and repeatedly hit her in

11      the face.  She was able to break his hold, threw a

12      picture frame at him, and that's how she was able to get

13      away.

14              In the meantime, he remained inside and began

15      smashing the property, including two TV sets.  When the

16      officers arrived, they found blood dripping from her lip

17      and her nose.  They found that a front tooth was missing.

18      They also saw that there was substantial bruising around

19      her eye, and the apartment was in extreme disarray.

20              Defendant also has prior convictions.  They're a

21      bit older, but possession of a controlled substance from

22      1995, which appears was seven years confinement;

23      trafficking and drugs, ten year confinement from 1995 as

24      well; and also a distribution or delivery of a

25      manufactured controlled substance.  And in 1998 a

5

1    trafficking drugs -- looks like attempted trafficking

2    drugs in the 2nd degree for which he received 15 years

3    confinement.

4         I'm going to ask the bond commissioner if he has

5    any additional information related to defendant's priors.

6         **BOND COMMISSIONER KELLY:**  Judge, we show in 2012

7    he had a possession of a controlled substance, two

8    counts, three years probation.  I think the prosecuting

9    attorney has giving you all the other information.

10        **MR. CROWLEY:**  I also have a statement from the

11   victim.  It's short if the Court would allow me to read

12   it.

13        **THE COURT:**  Sure.

14        **MR. CROWLEY:**  This is from Ms. McKorvy (phonetic).

15   She writes, "Dear Judge, please do not allow Herman to

16   get out because I'm in fear of my life and for my

17   daughter's safety.  He's very abusive and controlling.

18   He knocked my teeth out.  He pushed my daughter on

19   Tuesday, July 23rd.  He held me down and punched me and

20   stomped on my stomach.  Please do not allow him out on

21   bond.  Sincerely, Ms. McKorvy."

22        Based on the nature of the offense, the

23   circumstances involved, the relationship between

24   defendant and the victim, we believe he does pose a

25   danger to her if he's released at this time and therefore

6

1    I'm asking he be detained pending trial.

2           **THE COURT:**  Mr. Barberio?

3           **MR. BARBERIO:**  Thank you, Judge.

4           Herman, I'm going to speak on your behalf today in

5    a general capacity, and if you're ordered detained or

6    your bond is high, I'll come and see you tomorrow before

7    your detention hearing which would be seven days from

8    today.  You understand that?

9           **THE DEFENDANT:**  Yes, sir.

10          **MR. BARBERIO:**  All right.  Judge, what I will say

11   is this looks like a domestic dispute.  They have been in

12   a relationship for 20 years, which is basically the last

13   time Mr. Canamore was in any real trouble with the law.

14   They have been together that long.  I think that if

15   Mr. Canamore was ordered to stay away perhaps with other

16   safety mechanisms in place with that stay-away, such as

17   home detention or GPS monitoring and no contact, I

18   believe that that would keep Mr. Canamore away from the

19   victim and therefore not a danger to the community.

20          He had no other alleged incidents of violence,

21   anything other than what the bond commissioner or the

22   state just talked about, just drugs.  So maybe another

23   condition of his bond would be drug testing or no

24   alcohol.

25          So at this time, Judge, I'd ask for a more

7

1    appropriate bond than no bond.  If Mr. Canamore has no

2    funds to make a bond, we request recognizance with the

3    special conditions that I mentioned.  However, if he does

4    have a bond, Judge, anything -- 25,000, ten percent might

5    ensure a little skin in the game for him to come back to

6    Court.

7            **THE COURT:**  Mr. Canamore, is that your -- what is

8    the victim's name?

9            **MR. CROWLEY:**  It's McCorvey.

10           **THE COURT:**  Ms. McCorvey, is she your wife, are

11   you married; or just been in a relationship with her?

12           **THE DEFENDANT:**  No, that's my child's mama.

13           **THE COURT:**  Okay.  Do you live with her?  Do you

14   have a place to live that's not with her?

15           **THE DEFENDANT:**  Yes, I do.

16           **THE COURT:**  Were you living with her when this

17   happened?

18           **THE DEFENDANT:**  No.  Well, I was living with her.

19   We was fine; wasn't going through any problems.  We had a

20   child before I started living with her, and I took her

21   and my child before -- when I was living with her, she

22   ended up going on, like -- it wasn't suspension, but it

23   was at the end of her job, a summer job.  Well, no, it

24   wasn't summer, it was a regular job, but she ended up

25   going on vacation for the summer.

8

```
 1              So when I was staying with her, I was helping her
 2      with her bills, taking care of my daughter.  When I go to
 3      work, she would drive my car.
 4              THE COURT:  Where do you work?
 5              THE DEFENDANT:  Plastic molding.
 6              THE COURT:  How long have you worked there?
 7              THE DEFENDANT:  Four -- almost going -- it's
 8      four -- a little over four years.
 9              THE COURT:  And you make 15 dollars an hour?
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  And you work 40 hours a week?
12              THE DEFENDANT:  Yes, sir.
13              THE COURT:  How much -- can you post a thousand
14      dollar bond to get out?
15              THE DEFENDANT:  At this time, no, I can't, because
16      I had to pay the car note, and the car insurance.  And
17      then I had helped her with her bills, so at this time I
18      probably wouldn't be able to pay it.
19              THE COURT:  Can you post any bond at all?  Can you
20      post $500?
21              THE DEFENDANT:  I can probably -- I can round up
22      close to $500.
23              THE COURT:  If I order you to have no contact with
24      her, how would that work out?  How old is your child
25      together?
```

1          THE DEFENDANT:  My child is eight years old.  And

2     that's fine because I had already explained to her after

3     we got into it about the argument that, you know, it's

4     fine that we can split up.  As long as we both have

5     assigned responsibility when it comes to our baby child,

6     I have no problem with it.

7          THE COURT:  So where would you live, what would

8     the address be where you would live, and who would live

9     there?

10          THE DEFENDANT:  4329 College, my aunt and my

11     mother.

12          THE COURT:  Is that in St. Louis?

13          THE DEFENDANT:  St. Louis, Missouri.

14          THE COURT:  Okay.  I'm going to order Mr. Canamore

15     released on a $5,000, 10 percent authorized bond.

16     Special conditions of that bond would be that he stay

17     at -- what's the address?

18          THE DEFENDANT:  4329 college.

19          THE COURT:  -- 4329 College.

20          Mr. Canamore, your next court date is going to be

21     August 23d in Division 25.  I recommend you get an

22     attorney by that time.  With your priors and this being a

23     felony, you're looking at some time in the Missouri

24     Department of Corrections, so it's important you get an

25     attorney.  You filled out a public defender application

Dixon v. City of St. Louis, 04225

1    it looks like, but if you're not confined, they won't

2    come find you.  You're going to need to come find them.

3    They're in this building, in the Carnahan courthouse.

4         All right.  Anything other questions,

5    Mr. Canamore?

6         **THE DEFENDANT:**  I mean, sir, yeah.  I mean five

7    hundred is reasonable, but I don't think that I can

8    actually just go and just pay a $500 bond, because I do

9    have to get back out and work before I would be able to

10   pay the five so I have the money on my own to pay the

11   bond.

12        **THE COURT:**  Okay.  I'm going to leave it there for

13   now.

14        **MR. BARBERIO:**  Tell him I'll come see him.

15        **THE COURT:**  And Mr. Barberio said he'll come see

16   you and answer any questions you might have about that.

17   Okay?

18        **THE DEFENDANT:**  All right.

19        **THE COURT:**  All right.  Thank you.

20

21

22

23

24

25

```
 1                              CERTIFICATE

 2

 3              I, Laurie A. Bennett, Certified Court Reporter, do

 4      hereby certify that I am an Official Court Reporter for the

 5      Circuit Court of the City of St. Louis; that on July 25,

 6      2019, I was present and reported all the proceedings had in

 7      the case of STATE OF MISSOURI, Plaintiff, vs. HERMAN

 8      CANAMORE III, Defendant, Cause No. 1922-CR02307.

 9              I further certify that the foregoing 10 pages

10      contain a true and accurate reproduction of the proceedings.

11

12

13

14
                    /s/ Laurie A. Bennett
15              _____

16                    LAURIE A. BENNETT CCR #407

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 168

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable James E. Sullivan, Judge

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1922-CR02027 |
| | ) | 1922-CR02455 |
| JAMESHA HUGHES, | ) | |
| | ) | |
| Defendant. | ) | |

INITIAL APPEARANCE HEARING

On the 6TH day of August, 2019, the

above-entitled cause came on regularly for hearing before

the Honorable James E. Sullivan, in Division 16B of the

Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by

Nicholas Lake, City of St. Louis, State of Missouri.

The Defendant was present by video and was

represented by Andy Sottile.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1                    August 6, 2019

2              THE COURT:   Are you -- is it Jamesha Hughes?

3              THE DEFENDANT:   Yes, sir.

4              THE COURT:   Miss Hughes, I am Judge Sullivan.  I'm

5      a circuit judge in the 22nd judicial circuit and I

6      understand this is your first court appearance since your

7      arrest.  I'm going to explain the charges to you, explain

8      certain rights to you, and I'm going to make an initial

9      determination of your conditions of release.

10              If you are not released and if you are detained,

11     you'll be back in court in a week when your conditions of

12     release will be again reviewed, subject to the right of

13     any victim to be informed of and to be heard at any

14     hearing.

15              With that being stated this is Cause Number

16     1922-CR02027.  And so, Miss Hughes, at this time I intend

17     to advise you that you're currently represented in this

18     court by Mr. Andy Sottile, a criminal defense attorney,

19     who is here by contract for this court date only.  It's a

20     limited appearance for today only.  Do you understand

21     that?

22              THE DEFENDANT:   Yes, sir.

23              THE COURT:   The State of Missouri is represented

24     by Assistant Circuit Attorney Mr. Nicholas Lake.  And so at

25     this time I will advise you of the charges against you.  And

Dixon v. City of St. Louis, 04541

1    I want to remind you that anything you say can and will be

2    held against you in the court of law.  You have a right not

3    to make any statements.  You may remain silent.  Do you

4    understand that?

5                     THE DEFENDANT:   Yes, sir.

6                     THE COURT:   You are charged with property damage

7    in the first degree, that you allegedly committed a Class E

8    felony.  Upon conviction, punishable upon conviction of

9    Sections 558.002 and 558.011 RSMO, that on or about

10   June 8th, 2019 in the City of St. Louis, State of Missouri,

11   that you knowingly damaged an EKG machine in the infirmary

12   which is a property owned by St. Louis City Justice Center

13   by picking it up and throwing it against the wall, and the

14   damages to such property exceeded $750.

15                   Do you understand that charge of property in the

16   first degree -- property damage in the first degree, a

17   Class E felony?

18                     THE DEFENDANT:   Yes, sir.  I'm currently working

19   right now to try to pay off -- get a lawyer.

20                     THE COURT:   Very well.  And so at this time,

21   Mr. Lake, do you wish to be heard on this matter?

22                     MR. LAKE:   Yes, your Honor.  The State would

23   request that the Court take judicial notice of its court

24   file and the bond commissioner report in this matter.

25                     THE COURT:   Very well.  It will.

1          MR. LAKE:    Thank you, your Honor.  The State

2     believes that the current bond which I believe is set at

3     $10,000 cash only is appropriate in this matter.

4          THE COURT:    Excuse me, I think that we have -- I

5     have one cause number of 1922-CR02027.  But I have some

6     additional paperwork here.  She must have more than one

7     case; is that correct, gentlemen?

8          BOND COMMISSIONER:    Judge, she has a total of

9     three cases.  Two of them are cases that you will be

10    hearing.  The first the one you just stated and the second

11    case is 1922-CR02455.  The charge is assault third, felony,

12    and it looks like four counts of assault fourth,

13    misdemeanor, and a resisting arrest misdemeanor.

14         THE COURT:    Very well.  I have been advised that

15    you have additional cases, Miss Hughes, and I will read to

16    you the charges relative to the second case, that being

17    1922-CR02455.  In that matter you are charged with the

18    following cases, following charges:  Assault in the third

19    degree, a Class D felony.  That they're charging on or about

20    August the 5th, 2019 at 4703 Sacramento Avenue in the City

21    of St. Louis, that you knowingly caused physical injury to

22    Joshua B Nicks, a law enforcement officer and a special

23    victim, by striking Officer Nicks in the mouth, thereby

24    causing a laceration to the inside of the officer's lip.

25         Count Number II in that same case is assault in

1    the fourth degree, that you're charged in violation of

2    Section 565.056, committed a Class A misdemeanor of

3    assault in the fourth degree, punishable upon conviction

4    under Sections 558.002 and 558.010 -- or, excuse me,

5    558.011 RSMO in that on or about August the 5th, 2019 in

6    the City of St. Louis, State of Missouri, that you

7    knowingly caused physical contact with Ronsanto Parriott

8    Powell, a special victim, knowing that such person would

9    regard such conduct as offensive or provocative.

10                 Count Number III you're charged with assault in

11   the fourth degree pursuant to Subsections 3 and 6, special

12   victims, a Class A misdemeanor.  That was Count III.  That

13   you allegedly on or about August 5th, 2019 in the city of

14   St. Louis, State of Missouri, the defendant knowingly

15   caused physical contact with Gregory P Schaffer, a special

16   victim, knowing that such person would regard such conduct

17   as offensive or provocative.

18                 Count Number IV, you are charged another count

19   of assault in the fourth degree in that on or about August

20   the 5th, 2019 in violation of Section 565.056 RSMO, you

21   committed the Class A misdemeanor in the City St. Louis,

22   State of Missouri, in that you knowingly caused physical

23   contact with Steven M Ortinau, a special victim, knowing

24   that such person would regard such conduct as offensive or

25   provocative.

1          You're charged in Count Number V with assault in

2    the fourth degree that you allegedly in violation of

3    Section 565.070 RSMO committed the Class A misdemeanor of

4    assault in the fourth degree, punishable upon conviction

5    under Section 558.002 and 558.011 RSMO in that on or about

6    August the 5th, 2019 in the City of St. Louis, State of

7    Missouri, that you knowingly caused physical contact with

8    Keith Dale, a special victim, knowing that such person

9    would regard such conduct as offensive or provocative.

10          In Count Number VI you are charged in violation

11    of Section 575.150 RSM0, you allegedly committed the Class

12    A misdemeanor resisting a lawful detention punishable

13    under conviction under Sections 558.002 and 558.011 RSMO

14    in that on or about August the 5th, 2019 in the City of

15    St. Louis, State of Missouri, Ronsanto Powell and Joshua

16    Nicks, law enforcement officers, were attempting to make a

17    lawful detention of defendant and the defendant knew or

18    reasonably should have known that the officers were making

19    a lawful detention.

20          And for the purposes of preventing the officers

21    from effecting the detention, resisted the detention of

22    defendant by using or threatening the use of violence,

23    physical force, or physical interference in that defendant

24    held tight to a vehicle steering wheel and kicked Officer

25    Powell and therefore struck Officer Nicks in the mouth.

Dixon v. City of St. Louis, 04545

| | |
|---|---|
| 1 | So those are the six charges, counts against you in that |
| 2 | specific cause number. |
| 3 | THE DEFENDANT:   Yes, sir. |
| 4 | THE COURT:   Let me see if there's any other cause |
| 5 | number today.  If I'm not mistaken, that appears to be the |
| 6 | only other cause number against Miss Hughes today; is that |
| 7 | correct, gentlemen? |
| 8 | BOND COMMISSIONER:   Out of this division, Judge, |
| 9 | that's the only two she has. |
| 10 | THE COURT:   Very well.  So, Miss Hughes, you |
| 11 | understand that you have two different cause numbers and it |
| 12 | reflects six counts which include assault in the third |
| 13 | degree, a Class D felony; four counts of assault in the |
| 14 | fourth degree, a Class A misdemeanor; and resisting arrest, |
| 15 | a Class A misdemeanor in one case and property damage in the |
| 16 | first degree, a Class E felony, in the other matter.  Do you |
| 17 | understand, Miss? |
| 18 | THE DEFENDANT:   Yes, sir.  I'm trying to get a |
| 19 | lawyer.  I work at Taco Bell. |
| 20 | THE COURT:   Do you understand that if you cannot |
| 21 | afford to hire your own lawyer, that you can make an |
| 22 | application for the public defender's office and they may be |
| 23 | able to represent you.  Do you understand that? |
| 24 | THE DEFENDANT:   Yes.  But I know I probably won't |
| 25 | be eligible because I'm not even eligible to put my daughter |

1    in daycare and get it paid for by the State.  So I doubt I'd

2    be eligible for a public defender.

3              THE COURT:   Very well.  Mr. Lake, what is the

4    State's condition -- position on bond in this case?

5              MR. LAKE:   Your Honor, the State would be opposed

6    to a reduction at this time because we believe that the

7    defendant does pose a danger to the community in that she

8    assaulted numerous law enforcement officers, and then also

9    we believe that she poses a flight risk given that she has a

10   number of failures to appear.

11             Just by my count I'm showing a total of five

12   pending cases that the defendant currently has open.  And

13   just to make sure --

14             THE DEFENDANT:   And I showed up at every court

15   date.

16             THE COURT:   Okay, ma'am, you'll have your

17   opportunity in just a moment if you wish to to speak, okay.

18   Just please hold on.  You may continue, Mr. Lake.

19             MR. LAKE:   Thank you, your Honor.  The first case,

20   I just want to make sure I have this correct for the record.

21   The first case is again the 1922-CR02455 case.  That's the

22   case that's on today's docket where she is charged with the

23   assault third degree and the four counts of assault in the

24   fourth degree and the resisting arrest.

25             The second case that I have is under Cause

1   Number 1922-CR02027 where she's charged with one count of

2   property damage in the first degree.

3           The third case I show that's pending is one

4   count of endangering the welfare of a child in the second

5   degree.  That's under Cause Number 1922-CR01729.

6           Fourth case I have is in the 16th Judicial

7   Circuit Court.  It's listed under Cause Number

8   1816-CR03879.  And that's one count of stealing $750 or

9   more.  And I'm showing that defendant did have a failure

10  to appear on January 17th of this year for that case.

11          And the final case that I have that's pending is

12  under Cause Number 1822-CR02878 where it looks like the

13  defendant is charged with three counts of assault in the

14  fourth degree and one count of resisting arrest.

15          And I'm showing a failure to appear January --

16  excuse me -- July 31st of this year and then a failure to

17  appear September 24th of last year.  So she went capias

18  September 24th of last year.  She reappeared, she

19  reappeared looks like June 27th of this year and then she

20  missed her court date again, which was set for that

21  July 31st date of this year.

22          Your Honor, given the sheer number of times that

23  the defendant has failed to appear, the State has serious

24  concerns about her appearing if she's released on any kind

25  of bond in this matter, personal recognizance bond in this

1    matter.

2              THE DEFENDANT:    You all can put me on house

3    arrest.

4              MR. LAKE:    So we would be opposed to a reduction

5    at this time.  And furthermore at this time, your Honor, I

6    would like to inquire of the bond commissioner about any

7    additional information that he has in regards to the

8    defendant's failure to appear history and things of that

9    nature.

10              THE COURT:   Very well.  The Court will entertain

11   any statement from the bond commissioner.

12              BOND COMMISSIONER:    Judge, we weren't able to get

13   an interview from Miss Hughes.  We do show one additional

14   charge.  That was 1716-CR00271-01.  That was passing a bad

15   check.  That was in 2017.  She got one day confinement on

16   that charge.

17              THE COURT:   Very well.  The attorney who

18   represents you today is Mr. Sottile.  Mr. Sottile, is there

19   anything you would like to say on your client's behalf?

20              MR. SOTILLE:   Yes, your Honor.  Your Honor, I

21   would ask the Court to consider a recognizance bond in this

22   case.  In speaking with the bond commissioner I don't think

23   there's any special conditions on any of these bonds that

24   she's on in these other cases which would require her to

25   report to EMASS or require her to be subjected to electronic

1    monitoring or any kind of curfew or any kind of drug testing

2    or any kind of mental health evaluation and/or follow-up

3    treatment.

4              Those would all be resources that could be

5    utilized in conditions of her release.  And as such I

6    think if those conditions were put in place, then that

7    would satisfy the requirements of the statute that she

8    appear in court and that I don't believe she would pose a

9    danger to the community.

10             So for those reasons I'd ask the Court to

11   consider recognizance.  I don't think at this point the

12   State has proven by clear and convincing evidence that

13   she's a danger to the community and that she won't appear

14   in court.

15             If I could one moment, I'm going to look on one

16   of these cases to see if she has a public defender or an

17   attorney on that 'cause I think sometimes when someone

18   doesn't have an attorney on a case and they miss court,

19   that can be a factor as opposed to someone who has an

20   attorney.  So if I may have one moment to look up one of

21   these.

22             THE COURT:    You may.

23             MR. SOTILLE:    Your Honor, looking at that

24   particular case it doesn't appear, I can't see that any

25   counsel has entered, private counsel or the public defender.

1    If I may inquire, Miss Hughes, do you have a public defender

2    or private attorney on any of these cases that are pending?

3            THE COURT:   Miss Hughes?

4            THE DEFENDANT:   You talking to me?

5            THE COURT:   Yes, ma'am.

6            THE DEFENDANT:   Yes?

7            MR. SOTTILE:   Do you have a private attorney or

8    public defender on any of these cases?

9            THE DEFENDANT:   No.  I literally just started

10    working.  I have a two-month-old baby at home.  So on the

11    13th I was, I already had a -- was gonna hire an attorney.

12    He told me to put $400 down.  And I get paid on the 13th and

13    that's what I was going to do.  But I can't while I'm in

14    here 'cause I don't have no way to contact my job and tell

15    them that I'm incarcerated.

16            MR. SOTILLE:   So you never interviewed with the

17    public defender; is that correct?

18            THE DEFENDANT:   Correct.  I told them I was trying

19    to hire an attorney of my own.

20            MR. SOTILLE:   Who is the attorney you spoke with?

21            THE DEFENDANT:   But I just started working and I

22    get -- my first paycheck is on the 13th.

23            MR. SOTILLE:   Who is the attorney you spoke with?

24            THE DEFENDANT:   They were sending letters in the

25    mail.  I'm not sure.  I'm not from here.  I can't guarantee

1   the name.  But I know it's with Onder something, Hoening,

2   something like that, law enforcement -- law attorneys'

3   office.

4              MR. SOTILLE:   Okay.  Thank you.  Thank you, your

5   Honor.  That's all I have at this point.

6              THE COURT:   Is there anything further by either

7   party?

8              MR. LAKE:   Nothing from the State your Honor.

9              MR. SOTILLE:   Nothing from the defense, your

10  Honor, thank you.

11             THE COURT:   The Court finds that there is a bond

12  set of $10,000 cash only in Cause Number 1922-CR02455, as

13  well as $5,000 cash only on the companion case.

14             The Court believes that in light of the

15  defendant's statements that she wishes to hire her own

16  private counsel and she has financial resources to do so,

17  that in light of her current employment that that bond

18  amount is restrictively high.  The Court therefore will

19  amend the bond amount from 10,000 cash only, it will be

20  amended to cash only 10,000, 10 percent authorized in

21  Cause Number 1922-CR02455, and $5,000 cash only will be

22  amended --

23             THE DEFENDANT:   Sir, I'm not going to be able to

24  pay that.

25             THE COURT:   -- to $5,000, 10 percent authorized.

1          THE DEFENDANT:    I'm not going to be able to pay

2   that if I can't go to work.

3          THE COURT:    I'll be more than happy to set this

4   matter for a hearing, bond hearing set for next week.  And

5   so I will schedule a bond hearing for August the 13th, 2019

6   at 10:30 AM.

7          THE DEFENDANT:    Is that going to be a actual judge

8   or is it going to be a TV judge?

9          THE COURT:    You will see actually a judge who

10  happens to be on TV.  I suggest that you contact the public

11  defender's office, make an application for the public

12  defender's office, Miss.  Your new court date --

13         THE DEFENDANT:    How do I do that?

14         THE COURT:    -- in both --

15         THE DEFENDANT:    How do I do --

16         THE COURT:    -- in both of these matters will be

17  August the 13th, 2019 at 10:30 AM.  There are forms

18  available for you in the Justice Center to apply for

19  representation by the public defender's office.  That will

20  be all.  Thank you.

21         THE DEFENDANT:    Thank you.

22

23

24

25

CERTIFICATE

1
2          I, ELLEN L. VINCE, Certified Court Reporter,

3   do hereby certify that I am an official court reporter for

4   the Circuit Court of the City of St. Louis; that on August

5   6, 2019, I was present and reported all the proceedings had

6   in the case of STATE OF MISSOURI, Plaintiff, vs. JAMESHA

7   HUGHES, Defendant, Cause No. 1922-CR02027 and 1922-CR02455.

8          I further certify that the foregoing pages

9   contain a true and accurate reproduction of the

10  proceedings.

16          /s/Ellen L. Vince

18      _____
        ELLEN L. VINCE, CCR, CSR, CM
19              CCR #350

# EXHIBIT 169

IN THE CIRCUIT COURT OF ST. LOUIS, MISSOURI
22ND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Christopher E. McGraugh

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CAUSE NO. 1922-CR02799 |
| vs | ) | |
| | ) | |
| JARED SMITH-BURNS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

FIRST APPEARANCE HEARING
SEPTEMBER 3, 2019

Appearing on behalf of the plaintiff:  Nicholas Lake.  Appearing on behalf of the defendant:  Charles Barberio.

JACQUELYN S. WILLIAMS, CCR,
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 04838

2

1          THE COURT:   We're here in the matter of State of

2   Missouri versus Jared Smith-Burns, Cause No.

3   1922-CR02799.  Mr. Burns, it looks as though you were

4   locked up about five days ago.  Is that correct?

5          THE DEFENDANT:   Yes, sir.

6          THE COURT:   What we're here is for an initial

7   appearance which typically occurs 48 hours from your

8   arrest, but I assume you were arrested on Thursday or

9   Friday?

10          THE DEFENDANT:   Yes, sir.

11          THE COURT:   Okay.  So we couldn't have a hearing

12   48 hours after that because that would have been a

13   Saturday or a Sunday.  You understand that?

14          THE DEFENDANT:   Yes, sir.

15          THE COURT:   So this was the first available date

16   in order to have your initial appearance.  Initial

17   appearance is to advise you of what you're charged with,

18   but also to determine what conditions that could be

19   considered for your release in this matter, particularly

20   as to what conditions would enure the safety of the

21   community as well as ensure your return to court to answer

22   these charges.  You understand that, sir?

23          THE DEFENDANT:   Yes, sir.

24          THE COURT:   Okay.  Mr. Burns, appearing here is

25   assistant circuit attorney Nicholas Lake.  Also appearing

3

1   is an attorney or your behalf Charles Barberio.

2   Apparently you've hired Mr. Barberio.  Is that correct?

3         MR. BARBERIO:   His mother.

4         THE COURT:   Your mom did.  All right, great.

5   Mr. Burns, you're charged with assault in the first

6   degree, serious physical injury special victim, a Class A

7   felony.  Mr. Barberio, do you wish to have the charges

8   read?

9         MR. BARBERIO:   For the purposes of the initial

10   appearance, Judge, no, we don't need the charges read and

11   we will plead not guilty.

12         THE COURT:   A plea of not guilty is entered on

13   behalf of Mr. Smith-Burns today.  Mr. Smith-Burns, your

14   cash bond is at 100,000 cash only.  You don't happen to

15   have that on you, do you?

16         THE DEFENDANT:   No, sir.

17         THE COURT:   Okay.  I'm assuming there's no way

18   you can come up with that.

19         THE DEFENDANT:   Nah.

20         THE COURT:   I'm assuming if I can't come up with

21   that, you probably can't come up with that either.  Does

22   the state wish to be heard as to bond on this matter?

23         MR. LAKE:   Yes, Your Honor.

24         MR. BARBERIO:   Your Honor, if I may before the

25   state has something lengthy, may I just say something to

Dixon v. City of St. Louis 04840

4

1   my client?

2                    THE COURT:    Sure.

3                    MR. BARBERIO:    Mr. Smith-Burns, as the state

4   talks and as this hearing proceeds, just remain silent and

5   I'll see you some time afterwards to talk more in detail.

6   You don't need to respond to anything necessarily that

7   they're saying.  You understand?

8                    THE DEFENDANT:    Yes.

9                    MR. BARBERIO:    Okay.

10                    THE COURT:    Actually, I appreciate Mr. Barberio

11   saying that.  You understand, Mr. Smith-Burns, that

12   anything you say can and will be used against you.

13   Sitting right next to me, you probably can't see her, is

14   my court reporter.  She's taking down everything I say and

15   she's taking down everything you say, okay?

16                    THE DEFENDANT:    Okay.

17                    THE COURT:    All right.  Mr. Lake.

18                    MR. LAKE:    Thank you, Your Honor.  The state

19   would first request that the Court take judicial notice of

20   its court file and the bond commissioner's report in this

21   case.

22                    THE COURT:    Okay.  I do have that.  The Court

23   will take judicial notice of the bond commissioner's

24   report.

25                    MR. LAKE:    Thank you, Your Honor.  The state's

1   position is that the bond is appropriate where it's set to

2   ensure the safety of the victim in this case as well as

3   the general community.

4          Your Honor, this is a case where the defendant

5   approached the victim who's an off duty probation officer

6   outside of a bar.  He then proceeded to punch the victim

7   multiple times in her eye, her mouth, and her face.  He

8   also put his hand on her neck and choked her.

9          It should be noted that the victim's optical

10  nerves were damaged as a result of this incident, and she

11  has suffered what could be permanent vision issues in one

12  of her eyes.  It should be noted that the victim

13  subsequently identified the defendant out of a lineup.

14         In terms of prior convictions, Your Honor, the

15  only conviction that I'm showing it looks like from 2013

16  is a theft of a credit card.  Nevertheless, the state's

17  position is that given the nature of these charges and the

18  facts of the case, the defendant does pose a danger to the

19  general community.  It should also be noted that it's my

20  understanding that these two didn't actually know each

21  other prior to this incident.  So it appears to be a

22  random act of violence.

23         At this time, Your Honor, we do have the victim

24  present in the courtroom today, and she would like to

25  provide a statement.

6

| | |
|---|---|
| 1 | THE COURT:   Okay. |
| 2 | MR. LAKE:   I apologize, Your Honor.  This will |
| 3 | actually be read by the victim's mother. |
| 4 | THE COURT:   Okay. |
| 5 | MS. HINES:   I'm the mother of victim. |
| 6 | THE COURT:   Could you give your name to the |
| 7 | court reporter, please? |
| 8 | MS. HINES:   Evelyn Hines, H-I-N-E-S.  On behalf |
| 9 | of my daughter, this incident occurred on 8/27/19 has not |
| 10 | only affected me physically but emotionally as well.  My |
| 11 | family has been affected by the result of my emotional and |
| 12 | physical state as well. |
| 13 | Since that day, I have reoccurring nightmares of |
| 14 | harm coming to myself and even my child and being unable |
| 15 | to help her.  I have found myself sleeping only short |
| 16 | times at night and have had to be pulled out of a |
| 17 | nightmare by my eight year old daughter.  Having to |
| 18 | explain to her that I won't get hurt just walking to my |
| 19 | car or taking the trash out is emotionally painful. |
| 20 | As an officer of the court, she already fears my |
| 21 | job and now daily asks questions about why this happened |
| 22 | and if it's safe to go to work.  As a mother, this has |
| 23 | been hard to watch my child go through but the youngest of |
| 24 | three having to face my siblings and elderly mother has |
| 25 | been life altering. |

7

1    The shock and pain that showed on my daughter's

2  face when she saw me, no one should have to go through

3  this.  The pain and fear that my mother has every time I

4  leave the house is exhausting.

5    I go to work as much as I can but between

6  doctor's appointments, emotional breakdowns and

7  embarrassment, it's hard.  I work as a probation and

8  parole officer and have to face my clients each and every

9  day and give off a persona that I cannot be a victim as

10  part of my survival from day to day, but now I walk in

11  there and I'm a billboard screaming I'm a victim.

12    Physically I am healing as best as possible

13  considering.  My left eye is still not reacting to light

14  as it should and as of today, I am to wear a patch at all

15  times to rest it.  Just another way of the shame and

16  embarrassment to be thrown at me.  I have possible nerve

17  damage to the pupil and to the structure of my eye.  We

18  are not sure if this is going to be permanent.

19    I have healing cuts and a bruise that takes up

20  the whole back of my upper arm where he bit me.

21  Emotionally I honestly don't know.  A dump truck comes

22  down the alley and jumps me out of my sleep.  The person

23  at the gas station picking out his soda makes me sit for a

24  while until he walks off, and one of my clients expressing

25  themself too loudly has me backing up.

8

1    I awaken from nightmares and tears crying for

2    the next 30 minutes until I'm able to fall back asleep and

3    start the process over again.  I don't leave my house

4    other than to go to work and that's it.  I don't take my

5    daughter to get ice cream or to see movies because I'm not

6    sure if I'm not going to scare her.  I cry randomly

7    sitting there thinking about that night.

8    Financially and professionally, I've missed a

9    lot of time at work due to this incident due to medical

10   appointments, working with the police, and just dealing.

11   Medical bills are piling up daily and will continue to.

12   I will have to think about this day at least for

13   the next 12 months as I will have to be tested for HIV

14   aids in six and 12 months.

15   THE COURT:   All right.  Thank you, ma'am.  Any

16   additional on behalf of the state?

17   MR. LAKE:   Not at this time, Your Honor.

18   THE COURT:   Mr. Barberio.

19   MR. BARBERIO:   Thank you, Judge.  While I

20   respect the victim's plight and the emotional journey

21   she's going to have to be on while this case is

22   progressing, today as far as we're talking about the

23   circumstances that we know of in this crime and the least

24   restrictive means to make sure that the public is safe and

25   that Mr. Smith-Burns appears at any future court dates

9

1    while we're dealing with this I'll say this.

2              Although Mr. Smith-Burns doesn't have any

3    substantial form of income, he was a Grub Hub driver when

4    he wasn't incarcerated.  He does live with his mother who

5    would agree to allow him to continue to live there, and we

6    could put a GPS and, in fact, even an EHD where he's not

7    allowed to leave that house which would ensure that he had

8    no contact with the victim which would also be included.

9              I'd also like to include no drinking and there

10   was something else I was going to include besides no

11   contact.  EHD, no drinking.

12             I would say that this happened outside of a bar

13   at 12:30 at night.  Mr. Smith-Burns has no prior criminal

14   history of any violence.  There was a picture of the

15   defendant that was taken by the victim's friend prior to

16   this altercation.  It seems to me they are strangers that

17   had an altercation outside a bar with no real menacing

18   motive.

19             He will have to have his day in court and face

20   the charges but for now, I think that a recognizance bond

21   is also served with the GPS requiring to be paid for

22   before he's released and then to be registered to his

23   mother's address on Keokuk until further notice.

24             Again, Judge, I guess let me just reiterate that

25   he has no prior violent history.  There's no weapon

10

1    involved here.  I mean, it appears to be an altercation.

2    The motive or the circumstances surround it I think will

3    probably take a while to unfold.

4              THE COURT:    Mr. Lake.

5              MR. LAKE:    Judge, the only comment that I'll

6    make in regards to this is that again, given the severity

7    of the injuries that were sustained by the victim, the

8    state believes that this individual does pose a

9    significant danger to the general community.

10             The fact that this does appear at least this

11   point in time to be a random act of silence and

12   furthermore, this did occur outside of a bar.  Even on

13   house arrest GPS monitoring, it doesn't ensure that the

14   defendant will avoid any use of any substances or alcohol

15   or anything to that effect.

16             So again, the state's position is that bond

17   should remain as it is currently set pending trial.

18             THE COURT:    Okay.  I believe given the nature

19   and circumstances of the offense as well as that the

20   defendant has a prior conviction from 2013 which he was

21   placed on five years probation for, which would have taken

22   up to 2018.

23             In addition, it would be difficult, given his

24   occupation as a driver, to maintain a distance even

25   inadvertently from the victim in this case.  I'm going to

11

1    deny any modifications to the current bond at this time.

2                    I'm going to set this matter for next Tuesday,

3    9/10/2019 at 10:30 for a review of bond.  That concludes

4    the record on this matter.

5                    (End of proceedings.)

12

## REPORTER'S CERTIFICATE

I, Jacquelyn S. Williams, Certified Court
Reporter, do hereby certify that I am an official court
reporter for the Circuit Court of the City of St. Louis;
that on September 3, 2019, I was present and reported the
proceedings had in the case of State of Missouri,
Plaintiff, vs. Jared Smith-Burns, Defendant, Cause No.
1922-CR02799.

I further certify that the foregoing pages contain a
true and accurate reproduction of the proceedings.

"/s/JACQUELYN S. WILLIAMS, CCR #870"

# EXHIBIT 170

```
1
2                    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                      TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
3                            Honorable David Roither, Judge
4
5    STATE OF MISSOURI,                )
                                       )
6              Plaintiff,              )
                                       )      Cause No. 1922-CR02350
7                                      )
     vs.                               )
8                                      )
     JASMINE BOLDEN,                   )            Division No.16B
9                                      )
               Defendant.              )
10
11                         BOND REVIEW HEARING
12
13            On the 29th day of July, 2019, the
14   above-entitled cause came on for hearing before the
15   Honorable David Roither, Judge of Division No. 16-B of the
16   Circuit Court of the City of St. Louis.
17            The State of Missouri was represented by Alexus
18   Williams, Assistant Circuit Attorney, City of St. Louis.
19            The defendant was present via video conference
20   and was represented by his attorney, Sarah Boyce, Attorney
21   at Law.
22
23                    MARGARET R. COLE, CCR
                      SWING COURT REPORTER
24            CITY OF ST. LOUIS CIRCUIT COURT
                TWENTY-SECOND JUDICIAL CIRCUIT
25
```

Dixon v. City of St. Louis, 04904

```
 1                       JULY 29, 2019
 2            THE COURT:    We are on the record in Cause Number
 3    1922-CR02350, the matter of State of Missouri versus Jasmine
 4    Bolden.  Appearing in the Court today are Miss Williams from
 5    the Circuit Attorney's Office representing the State of
 6    Missouri.  Miss Bolden appears through video conference, and
 7    I have appointed a private defense counsel, Miss Boyce, for
 8    the limited purposes of today's hearing.
 9            Miss Bolden, I am Judge Roither.  We are here
10    today to handle your initial appearance before the Court.
11    I do want to remind you that you have the right to remain
12    silent and that anything you say may very well be used
13    against you in the future prosecution of this matter.
14            There is a Circuit Attorney sitting very near me
15    listening to everything that you and I say this afternoon.
16    Having said that, I do not intend discussing with you the
17    pending charges.  The purpose of today's hearing is to go
18    over your conditions of release, if any, pending trial.
19            You are currently being charged, Miss Bolden,
20    with domestic assault in the first degree, a Class B
21    felony.  Assault in the first degree, a Class B felony.  A
22    second count of assault in the first degree, also a Class
23    B felony.  Endangering the welfare of a child, a Class D
24    felony.  Do you understand everything that I've said to
25    you so far, Miss Bolden?
```

1          THE DEFENDANT:   Yes, sir.

2          THE COURT:   Miss Williams, what is the State's

3   position regarding appropriate conditions of release in Miss

4   Bolden's matter?

5          MS.WILLIAMS:   Your Honor, it's the State's

6   position that the bond, which is currently set at no bond in

7   this case, is appropriate.  Before moving forward I would

8   like to have the Court take notice of the case file for Miss

9   Bolden.

10          THE COURT:   The Court will take judicial notice of

11   Miss Bolden's case file and all contents therein.

12          MS.WILLIAMS:   Thank you, Your Honor.  As far as

13   priors, I show a 2011 theft for which she received an SIS

14   five years.  I also show a 2014 theft, both of these in the

15   21st Circuit, for which she received a five year SES,

16   probation with a seven-year back-up.  I show a stealing

17   under $500 from the 21st Circuit.  That was a two-year SES

18   with a six month back-up.  I show a trespass first from 2015

19   for which she received an SIS six months, and that was here

20   in the 22nd Circuit.  I show a 2016 robbery second in the

21   21st Circuit where she received a five-year SES with a seven

22   year back-up.

23          Additionally, Miss Bolden has two other open

24   cases.  There's a domestic assault -- I'm sorry, that's

25   this case.  So there's one other open case an assault

1   fourth.  That's a felony case.  It was like from July

2   21st.  Actually, Your Honor, I think that these cases were

3   maybe merged together.  Yes, I'm sorry, Your Honor.  I

4   think these case were actually merged together.

5          Given the defendant's criminal history and given

6   the alleged facts in this case we do believe that she's a

7   danger to the victims in this case and a danger to the

8   community.  I'm trying to load the Probable Cause

9   Affidavit, but my computer is giving me a hard time.

10          THE COURT:   Commissioner.

11          BOND COMMISSIONER:   Judge, we weren't able to get

12   an interview from Miss Bolden.  We do show that she does

13   have pending cases in St. Louis County.  One is for

14   receiving stolen property.  That case number is 18SLCR05600.

15   She has a court appearance on August 1st on that case.

16          She also has a stealing case.  17SLCR07932.

17   Same court date of August 1st.  St. Louis County.  We do

18   show that she has a prior conviction of shoplifting 2013.

19   Twenty-four months probation.  That's in Illinois.

20          MS.WILLIAMS:   Your Honor, I do have the Probable

21   Cause Statement up now.  The reason this case is concerning

22   is because it looks like the victim in this case is an

23   individual that the defendant was previously in a romantic

24   relationship with.  They also share two children.

25          While the victim was driving his vehicle and had

1    another passenger as well as a minor child, who is two

2    years old, the defendant drove alongside the victim and

3    repeatedly collided into the vehicle from the rear and on

4    the side, and then attempted to drive the victim and the

5    two passengers, including the two-year old child who was

6    in the back seat, off of the road.

7              THE COURT:    Thank you.  Miss Boyce.

8              MS. BOYCE:    Thank you, Your Honor.  May I ask Miss

9    Bolden some questions?

10             THE COURT:    Please.

11             MS. BOYCE:    Miss Bolden, are you currently

12   represented by private counsel in your St. Louis County

13   cases?

14             THE DEFENDANT:    Yes.

15             MS. BOYCE:    And who is representing you in those

16   matters?

17             THE DEFENDANT:    Dramon Foster.

18             MS. BOYCE:    Have you had a chance to contact him?

19             THE DEFENDANT:    No.  I haven't been able to use

20   the phone.

21             MS. BOYCE:    Okay.  Judge, I would note the charge

22   of domestic assault in the first degree, the two assault

23   first degrees and endangering the welfare of a child is

24   simply an allegation at this stage.  We haven't heard from

25   any alleged victims or witnesses in this matter, so

1    certainly it's just a charge for which the State hasn't

2    presented any clear and convincing evidence that Miss Bolden

3    is a danger to the community.

4              We didn't hear any evidence, Judge, that she is

5    a flight risk or that she failed to appear in her St.

6    Louis County cases.  I would note that a no bond is in

7    violation of the 8th Amendment stating that everybody

8    should have a bailable offense unless, again, charged with

9    murder in the first degree.  Judge, I would ask that you

10   set a reasonable bond such that Miss Bolden can post.

11   Thank you.

12             THE COURT:    The Court having determined upon clear

13   and convincing evidence that no combination of non-monetary

14   conditions and monetary conditions will secure the safety of

15   the community, including but not limited to the victims of

16   the crimes.

17             Therefore, Miss Bolden, I'm going to hold you

18   without bond.  However, I am going to set a future

19   detention hearing for next Monday August 5th at 10:30 a.m.

20   Additionally, this matter will be set on an initial

21   appearance docket for August 28th at 9 a.m.  That will be

22   in Division 26.  That will conclude the hearing on this

23   matter.  Thank you, Miss Bolden.

24                            (End of proceedings.)

25

7

1                           CERTIFICATE

2                 I, Margaret R. Cole, Certified Court Reporter,

3     do hereby certify that I am an official court reporter for

4     the Circuit Court of the City of St. Louis; that on July 29,

5     2019,  I was present and reported all the proceedings had in

6     the case of State of Missouri, Plaintiff, vs. Jasmine

7     Bolden, Defendant, Cause No. 1922-CR02350.

8                 I further certify that the foregoing pages

9     contain a true and accurate reproduction of the

10    proceedings.

11

12

13

14

15

16                          /s/Margaret R. Cole

17                          MARGARET R. COLE, CCR

18                                #494

19

20    Date:

21

22

23

24

25

# EXHIBIT 171

1          IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
          TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
2               Honorable David A. Roither, Judge

3
   STATE OF MISSOURI,              )
4                                  )
            Plaintiff,             )
5                                  )
   V.                              )     Cause No. 1922-CR03481
6                                  )
   Jessie Williams,               )
7                                  )
            Defendant.            )
8

9           TRANSCRIPT OF FIRST APPEARANCE HEARING

10

11       On Tuesday, November 5, 2019, the above cause came on

12   regularly for hearing before the Honorable David A. Roither,

13   Judge of Division 16B of the Twenty-Second Judicial Circuit in

14   the City of St. Louis.  The State of Missouri was represented

15   by Buddy Phipps, Esq., Assistant Circuit Attorney.  The

16   defendant was present in person and was represented by his

17   attorney, Melinda Gorman, Esq.

18

19

20

21

22                      Tamara L. Young
                          CCR, RPR, CSR
23                      Official Reporter

24

25

1

```
 1              THE COURT:  We are on the record in Cause Number
 2    1922-CR03481, the matter of the State of Missouri versus
 3    Jessie Williams.  Appearing in court today are Mr. Phipps on
 4    behalf of the State of Missouri from the circuit attorney's
 5    office.  Mr. Williams appears via video conferencing.
 6              Mr. Williams, the Circuit Court routinely arranges
 7    for attorneys to represent individuals on this docket in order
 8    that we can conduct your initial appearance while having you
 9    represented.  Unfortunately the attorney who is assigned that
10    duty today has been hired by your codefendant; therefore, I
11    cannot conduct fully your hearing today.
12              There are a couple of victims involved in this
13    matter that are willing to provide me with a victim statement.
14    So I'm going to allow them to provide their statement to the
15    Court today.  Unfortunately, the remainder of the hearing, I
16    am going to have to continue until tomorrow at 1:30.  We will
17    have a different attorney in the courtroom to handle your file
18    at that time.
19              Do you understand everything that I have told you so
20    far?
21              THE DEFENDANT:  Yes, Judge.
22              THE COURT:  Okay, Mr. Williams.
23              Mr. Phipps, could we have the victim step forward,
24    please?
25              Ma'am, if you want to step all the way up here.
```

2

| | |
|---|---|
| 1 | THE COURT:  I understand you are here to provide a |
| 2 | victim impact statement.  Please tell me what is on your mind. |
| 3 | MS. SMILEY:  I am here because I believe he should |
| 4 | stay in jail.  I have real safety concerns because he and a |
| 5 | group of others ambushed my home.  He had a gun.  He put it to |
| 6 | my head and threatened me.  Said that he would kill me.  And |
| 7 | the fact is I don't even know this man, but he knew where I |
| 8 | stayed at and kicked my door down.  Also my children were |
| 9 | there, ages thirteen and eleven.  My kids normally go to and |
| 10 | from school on their own because they are in middle school.  I |
| 11 | haven't been able to do that.  It's just true safety concerns |
| 12 | around my house.  And I don't know him.  So I am concerned |
| 13 | about my safety and my kids'. |
| 14 | THE COURT:  Okay.  Thank you, Miss Smiley.  Thank |
| 15 | you for your time. |
| 16 | Sir, did you wish to make a statement as well? |
| 17 | MR. WILLIAMS:  Yes, sir. |
| 18 | THE COURT:  Your name, please? |
| 19 | MR. WILLIAMS:  Lavon Williams. |
| 20 | THE COURT:  Tell me what you wanted to share with me |
| 21 | about Mr. Williams' conditions of release. |
| 22 | MR. WILLIAMS:  I would rather he stay in as well, |
| 23 | because I am concerned about my safety and my daughter.  My |
| 24 | daughter was taken with the group of people that came.  And he |
| 25 | did threaten me with a gun.  And I am concerned about my |

3

Dixon v. City of St. Louis, 04765

```
1    career, because I enlisted on the 9th of October, and I leave

2    December 18th, a few weeks, for the United States Navy.  I am

3    concerned about my career, and I don't know if I'll be able to

4    leave because of this incident.

5              THE COURT:  Thank you, Mr. Williams.  I appreciate

6    your time.  Thank you.

7              Mr. Williams, that concludes the victims' statement

8    in this matter.

9              Again, I cannot conduct the remainder of your

10   hearing today.  We will re-group tomorrow at 1:30 at which

11   time I'll go over the charges with you, your current bond

12   amount and will conclude your initial appearance.  We will see

13   you tomorrow at 1:30.

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1    STATE OF MISSOURI      )
                             )           SS.
 2    COUNTY OF ST. LOUIS    )

 3

 4

 5

 6        I, TAMARA L. YOUNG, Certified Court Reporter, hereby

 7    certify that I was the official court reporter for Division

 8    16B of the Circuit Court of the City of St. Louis; that on

 9    Tuesday, November 5, 2019, I was present and reported all the

10    proceedings had in the case of STATE OF MISSOURI, Plaintiff,

11    vs. Jessie Williams, Defendant, Cause No. 1922-CR03481; and I

12    further certify that the foregoing pages contain a true and

13    accurate reproduction of the proceedings.

14

15        I certify that the cost of preparing this transcript is

16    as follows:

17

18        5 pages @ $4.00 per page ............ $20.00 TOTAL

19

20

21                               /Tamara L. Young/ CCR, RPR, CSR

22                               Official Court Reporter

23                               CCR No. 0348

24

25
```

5

Dixon v. City of St. Louis, 04767

# EXHIBIT 172

```
 1       IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                       STATE OF MISSOURI
 2            Honorable Joseph P. Whyte, Judge

 3

 4

 5   STATE OF MISSOURI,              )
                                     )
 6                    Plaintiff,     )
                                     ) Cause # 1922-CR02021
 7            Vs.                    )
                                     )
 8   ██████ ███████,                 )
                                     )
 9                    Defendant.     )

10

11

12
            TRANSCRIPT OF FIRST APPEARANCE HEARING
13                     July 3, 2019

14

15

16   Anthony Muhlenkamp
     Attorney at Law
17   On behalf of the Defendant.

18

19

20

21
              TINA MARIE CATLETT, CCR #946
22             OFFICIAL COURT REPORTER
           CITY OF ST. LOUIS CIRCUIT COURT
23         TWENTY-SECOND JUDICIAL CIRCUIT

24

25
```

2

1           (The following proceedings were had in

2      open court:)

3           THE COURT:  We are on the record in

4      cause number 1922-CR02021.  State of Missouri

5      against ████ ██████.  ████ ██████, my name is

6      Joe Whyte.  I'm a judge here in the Twenty-Second

7      Judicial Circuit.  This should be your first

8      appearance since you have been confined; is that

9      correct?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  I'm going to explain the

12     charges against you.  I'm going to advise you of

13     some of the rights you have and I'm going to make

14     an initial determination about the conditions of

15     your release.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  If you are not released, you

18     will be back in court next week where the

19     conditions of your release will again be reviewed

20     subject to the rights of any victim to be notified

21     of and be heard at any such hearing, do you

22     understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  If you are released, you

25     will have to comply with all conditions of your

3

1    bond.  If you do not do that, a warrant will be

2    issued for your arrest, you will be re-arrested and

3    you are not likely to be released prior to trial in

4    that instance, do you understand that?

5               THE DEFENDANT:  Yes, sir.

6               THE COURT:  Do you understand that you

7    have the right to remain silent?

8               THE DEFENDANT:  Yes, sir.

9               THE COURT:  Do you understand that any

10    statement you make may be used against you?

11               THE DEFENDANT:  Yes, sir.

12               THE COURT:  Do you understand that you

13    have the right to a lawyer and that a lawyer will

14    be appointed to represent you if you can't afford

15    to hire your own lawyer?

16               THE DEFENDANT:  Yes, sir.

17               THE COURT:  Do you have a lawyer?

18               THE DEFENDANT:  No, sir.  I've got a lot

19    going on, sir.  I just left court yesterday and I

20    got a lot of courts going on.  I got to go to court

21    today and I'm trying to take care of court.  I am

22    trying not to go to jail, sir.

23               THE COURT:  ███████  ███████  --

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  This will go alot smoother

4

1    if you jus answer my questions.

2              THE DEFENDANT:  No, I don't have no

3    lawyer.  I'm trying to get a lawyer for my other

4    case.  I don't have no public defender on this

5    case, sir.

6              THE COURT:  So what I'm going do then,

7    I'm going to appoint a lawyer to represent you just

8    for today and just for the purposes of this

9    hearing, okay?

10             THE DEFENDANT:  Okay.  Yes, sir.

11             THE COURT:  His name is Andrew

12   Muhlenkamp.  He's in the courtroom and he's a very

13   experienced lawyer in the private bar and he will

14   represent you just for today and for this hearing,

15   okay.

16             THE DEFENDANT:  All right.

17             THE COURT:  Ms. Williams, what is the

18   position of the State?

19             MS. WILLIAMS:  It's the State's position

20   at this time that the defendant be detained pending

21   trial on a no bond allowed.  For the limited

22   purposes of this hearing, now I would also like to

23   move to admit the probable cause statement in this

24   matter.  This is a domestic violence case.  The

25   defendant is alleged to have punched the victim of

5

1    this crime, ripped her out of the vehicle.  He also

2    broke her phone during this time.  Victim services

3    has been in contact with her on and off.  It's a

4    little difficult right now because he broke her

5    phone during the incident.  What is most concerning

6    about ████  ████████ is that in addition to this

7    current case, he has a felony, possession of a

8    controlled substance, also open in the

9    Twenty-second Judicial Circuit.  Cause number on

10   that case is 1922-CR00512.  That is still open.  I

11   believe it's already currently set for a

12   preliminary hearing.

13            Additionally, I have a lengthy criminal

14   history.  He has an aggravated assault out of St.

15   Clair County from 2009, a battery and bodily harm

16   from St. Clair County in 2010, a burglary with two

17   counts from St. Clair County in 2010 for which he

18   received a 30-day detention and two-year probation

19   on top of that $840 fine which I'm assuming may be

20   restitution.  He has a retail theft also from 2010,

21   one year probation $350 fine again presuming for

22   restitution.  He has aggravated assault, battery,

23   and harm as well as a retail theft.  Those counts

24   are together from September of 2010 in St. Clair

25   County.  He was on an 18 month special probation,

1    six months intensive probation, and got one year

2    imprisonment on the theft charge.  And it looks

3    like his probation was revoked in 2011 on that

4    case.  Additionally, I show the August 2011

5    probation revocation must be in connection with

6    another retail theft in August 2011 for which he

7    received 18 months imprisonment.  He has a

8    possession of a cannabis in 2014, 30 days

9    imprisonment, a robbery from 2014, three years

10   imprisonment, and then another retail theft, two

11   years probation, six month intensive probation, 28

12   days confinement, over $1,200 in cost, and then

13   another retail theft from July of 2015, and then

14   another retail theft out of St. Clair County from

15   October 2017 for which he received one-year

16   confinement.

17            The defendant additionally has multiple

18   domestic violence based arrests going all the way

19   from 2009 up to currently in 2018, multiple arrests

20   for possession of controlled substance, burglary,

21   endangerment of a child, battery, obstructing,

22   identification, more theft cases, criminal property

23   damage.  He's been wreaking havoc on St. Clair

24   County and St. Louis City for a very, very long

25   time, Your Honor.  We do now believe the $1,500

1    cash only would be appropriate.  We would be asking

2    no bond allowed.  Additionally, the victim does

3    have safety concerns in this case.  I'm not 100

4    percent aware of the nature of the relationship.

5    He is either a current or former boyfriend is my

6    understanding at this time.

7              Again, we couldn't get a statement from

8    her, an additional statement from her given she

9    does have a cell phone because that was broken by

10   the defendant in this incident.

11             MR. MUHLENKAMP:  Are you ready for me,

12   Judge?

13             THE COURT:  Is it M-U-H-L-E-M-K-A-M-P?

14             MR. MUHLENKAMP:  Yes.  ██████ ████████, I

15   see your hand raising.  You will get a chance to

16   talk too.  Can you hear me okay?

17             THE DEFENDANT:  Yes, sir.

18             MR. MUHLENKAMP:  I'm going to ask you a

19   series of questions about your current situation.

20             THE COURT:  This is your lawyer talking.

21   Mr. Muhlenkamp is your lawyer.  You can't see him,

22   but that's who's talking now.

23             THE DEFENDANT:  Okay.

24             MR. MUHLENKAMP:  Does that make sense?

25   I'm your lawyer for today, okay?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  I know it's strange because

3    I haven't actually met you and you can't see me.

4    Trust me.  I'm your lawyer for today and I'm going

5    to do my best here today, okay?

6            THE DEFENDANT:  All right.

7            MR. MUHLENKAMP:  When I ask you

8    questions, just answer to the best of your ability

9    and tell the truth.

10            THE DEFENDANT:  Can I say something real

11    quick, sir?

12            MR. MUHLENKAMP:  No.  I'm going to ask

13    you the right questions and then at the end we will

14    see if you have any questions, okay?

15            THE DEFENDANT:  Alright.

16            MR. MUHLENKAMP:  Sit tight and wait for

17    me.

18            Before I ask any questions of

19    ███ ███████, I want to clarify on the record,

20    Judge.  The alleged victim in this case, ███ ████,

21    she is having phone trouble, I guess, because of

22    the alleged incident, but she has contacted Victim

23    Services, correct?

24            MS. WILLIAMS:  Yes.

25            THE DEFENDANT:  I --

1          MR. MUHLENKAMP:   ███ ████████, when I ask

2    you a question, answer.  I'm not asking you a

3    question yet, okay?

4          THE DEFENDANT:  Alright.

5          THE COURT:  You should follow the advice

6    of your lawyer and only answer his questions, okay?

7          THE DEFENDANT:  I can't hear him, Your

8    Honor.  That's what I'm saying.  Yes, sir, no, sir

9    I can't hear him.  I'm not trying to be rude, sir.

10          MR. MUHLENKAMP:  I'm going to speak up

11   when I ask you a question.  I want to verify

12   something for the record.  Can you hear me now?

13          THE DEFENDANT:  Yes, sir.

14          MR. MUHLENKAMP:  Okay.  Sit tight for

15   one minute.  The State was going to clarify whether

16   the victim was -- her contact with your office?

17          MS. WILLIAMS:  Yes.  The victim was

18   present during the warrant application.  She did

19   not believe the defendant needs to be released.  At

20   this time, she fears for her safety.  Again, she's

21   a former or current girlfriend.

22          MR. MUHLENKAMP:  When was the warrant

23   application?

24          MS. WILLIAMS:  That was yesterday.

25          MR. MUHLENKAMP:  July 2nd.

```
 1              MS. WILLIAMS:  That was yesterday.

 2              MR. MUHLENKAMP:  I assume, correct me if

 3   I am wrong.  I assume she would have been informed

 4   the detention hearing is today, she had a right to

 5   be here today also.

 6              MS. WILLIAMS:  I don't know.  I don't

 7   work for Victim Services to say what was said to

 8   her.

 9              THE DEFENDANT:  Excuse me.  Can I ask a

10   question?

11              MR. MUHLENKAMP:  ████  ████, could you

12   hold on?  You have got to sit tight, okay?

13              THE DEFENDANT:  Okay.

14              MR. MUHLENKAMP:  I assume, but correct

15   me I am wrong, but with the Circuit Attorney's

16   Office, that's policy to let your victims know they

17   have a right to be heard and let the victim's know

18   when the court dates are and they have a right to

19   show up, correct?

20              MS. WILLIAMS:  That's correct.  I would

21   assume she has been notified.

22              MR. MUHLENKAMP:  From your office.

23              MS. WILLIAMS:  Correct.  But I cannot

24   verify that for you regardless of the victim being

25   here or not.
```

1          MR. MUHLENKAMP:  You went through a

2     significant criminal history.  I guess my question

3     is this.  Which one of those are felonies?  I heard

4     about a robbery and the three-year sentence.  I

5     assume that's a felony?

6          MS. WILLIAMS:  The robberies, the

7     burglaries.  I believe that all of -- I'm not sure

8     about the retail thefts.  Some of them are at a

9     high enough amount.  The burglaries, the robberies,

10     one of the retail thefts was over $1,200 which I

11     would presume is also a felony.  But I'm not sure

12     to the aggravated assault and robberies.

13          MR. MUHLENKAMP:  Let me ask this.  You

14     mentioned a drug case in the City of St. Louis.

15          MS. WILLIAMS:  That's a bond.

16          MR. MUHLENKAMP:  What is the bond in

17     that case?

18          THE COURT:  Deputies, when you are

19     speaking, I can't hear the lawyers.  So can you

20     please try and keep it down?  I'd appreciates it.

21     Thank you.  Okay.

22          MS. WILLIAMS:  The bond on that other

23     currently open case, it looks like it was -- It's

24     currently 5,000, 10 percent, then the defendant

25     went capias, so there's that flight risk there, met

12

```
1    as well by clear and convincing evidence, and then

2    it was set up $500 cash only because he was capias.

3                 MR. MUHLENKAMP:  And then he posted it?

4                 MS. WILLIAMS:  Yes.

5                 MR. MUHLENKAMP:  And he was released?

6                 MS. WILLIAMS:  Yes.

7                 MR. MUHLENKAMP:  And he's got a next

8    court date when?

9                 MS. WILLIAMS:  August 1.

10                MR. MUHLENKAMP:  Okay.  ███ ███████, now

11   I got questions for you.  Can you hear me okay?

12                THE DEFENDANT:  Yes, sir.

13                MR. MUHLENKAMP:  Your current case, the

14   circuit attorney represented you have a drug case

15   pending in the City of St. Louis.  Are you familiar

16   with that?

17                THE DEFENDANT:  Yes, sir.  I went to the

18   court for that yesterday, sir.  I posted bond for

19   that for my possession charge.  I've been on bond

20   for like two months, probably longer than that.  I

21   don't know why my possession charge but I've been

22   to court since then.  I don't jump bond.  I go to

23   my court dates.  And then --

24                MR. MUHLENKAMP:  ███ ███████?

25                THE DEFENDANT:  Yes.
```

1          MR. MUHLENKAMP:  I'm going to ask real

2     basic questions and going to be direct questions,

3     so please try to bear with me here.  I know it's a

4     tough setup here but this is how we are doing it.

5     So the answer, yes or no.  You are familiar with

6     your city drug case, correct?  Yes?

7          THE DEFENDANT:  Yes, sir.  Yes, sir.

8          MR. MUHLENKAMP:  Did you hire an

9     attorney on this yet?

10          THE DEFENDANT:  You are saying what,

11     sir?

12          MR. MUHLENKAMP:  Do you have an attorney

13     representing you on that case, yet.

14          THE DEFENDANT:  No, I'm working on it.

15          MR. MUHLENKAMP:  But you are in the

16     process of finding a lawyer?

17          THE DEFENDANT:  Yes, sir.

18          MR. MUHLENKAMP:  You are currently on

19     bond in that case, correct?

20          THE DEFENDANT:  Yes, sir.

21          MR. MUHLENKAMP:  And your next court

22     date is not until August 1st, correct?

23          THE DEFENDANT:  I'm not sure.  I can't

24     remember.  When I go home I will check my -- the

25     case file when I go to court.

1            MR. MUHLENKAMP:  How long have you been

2     in jail now.  Did you just get arrested yesterday?

3            THE DEFENDANT:  I got arrested

4     yesterday.  I just left court yesterday.  I just

5     left court yesterday.  I got arrested from court

6     yesterday leaving the courtroom for my drug charge,

7     and then when I'm leaving court, my victim actually

8     was at my courthouse stalking me.  I got proof.

9            MR. MUHLENKAMP:  Hang on.  Hang on.  I

10    want to make sure I got all this information right.

11    Yesterday, you came to court on your drug case.

12    You were not in cuffs, you came on your own,

13    correct?

14            THE DEFENDANT:  I came on my own.  I had

15    two different court dates.  I had city court at

16    nine and I had -- I don't know -- traffic court at

17    nine too.  I had two different courts.  The main

18    court --

19            MR. MUHLENKAMP:  ███  ███████  just

20    listen to my question.  I know this is tough but

21    just listen to my question, it's a pretty easy

22    answer yes or no.

23            THE DEFENDANT:  Alright.

24            MR. MUHLENKAMP:  Yesterday you came to

25    court in the City of St. Louis, correct?

```
1              THE DEFENDANT:  Yes.  I came on my own,

2     yes, sir.

3              MR. MUHLENKAMP:  Thank you.  And when

4     you came to court you were not in custody, you came

5     on your own to talk to the judge, correct?

6              THE DEFENDANT:  Yes, sir.  Yes, sir.

7              MR. MUHLENKAMP:  At some point you were

8     informed there was a new charge for this case and

9     you were taken into custody; is that correct?

10             THE DEFENDANT:  I don't know why I was

11    taken into custody because when I left the

12    courtroom, my baby mama was in the courthouse

13    stalking me, waiting on me outside the courthouse.

14             MR. MUHLENKAMP:  ███████  ███████.  I'm

15    trying to help you here, man.  Listen to my

16    question.  When you were in court yesterday, you

17    were at some point arrested because of this new

18    case, correct?

19             THE DEFENDANT:  Yes, sir.

20             MR. MUHLENKAMP:  So you do know why you

21    are in jail.  It's because of that case, right?

22             THE DEFENDANT:  Yes.

23             MR. MUHLENKAMP:  And ever since then you

24    have been in jail for the last day, correct?

25             THE DEFENDANT:  I've been in here since
```

1    yesterday.

2                    MR. MUHLENKAMP:  Fair enough.  Do you

3    currently have a job?

4                    THE DEFENDANT:  Yes, sir.  I work at ████

5    ████ ██████ ██████ ██████        I don't know the phone

6    number.  It's in my phone.

7                    MR. MUHLENKAMP:  What do you do there,

8    sir?

9                    THE DEFENDANT:  It's stocking tissue.

10   Like I stock stuff, put it in a box and they ship

11   it to big companies like Walmart, Target, stuff

12   like that.

13                   MR. MUHLENKAMP:  So you like working in

14   a warehouse?

15                   THE DEFENDANT:  Yeah.  I work in a

16   warehouse.  It's a warehouse.

17                   MR. MUHLENKAMP:  How long have you had a

18   job, sir?

19                   THE DEFENDANT:  I just got it two weeks

20   ago.  Like, I said, I'm trying to pay to fight this

21   case.  I mean, to fight my drug case.

22                   MR. MUHLENKAMP:  How much money do you

23   make at that job?

24                   THE DEFENDANT:  You said what I get paid

25   an hour?

```
 1                    MR. MUHLENKAMP:  Yeah.  How much money

 2    do you make?

 3                    THE DEFENDANT:  I make $9.61 per hour.

 4                    MR. MUHLENKAMP:  Do you work full time?

 5                    THE DEFENDANT:  Yeah, full time, five

 6    days out of the week.

 7                    MR. MUHLENKAMP:  If you are not

 8    released, are you going to lose that job probably?

 9                    THE DEFENDANT:  You said what, sir?

10                    MR. MUHLENKAMP:  If you do not get out

11    of jail, are you going to lose that job.

12                    THE DEFENDANT:  If I don't get out of

13    jail, I'm going to lose my job and have no way to

14    make money, sir.

15                    MR. MUHLENKAMP:  That's what I'm asking.

16    Where do you live?  What is your address.

17                    THE DEFENDANT:  I live at ▮▮

18    ▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮ but I stay

19    current at ▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮  ▮▮▮▮▮.

20                    MR. MUHLENKAMP:  If you got out of jail

21    today where would you sleep tonight.

22                    THE DEFENDANT:  I would sleep at ▮▮▮

23    ▮▮▮▮▮▮ ▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮.

24                    MR. MUHLENKAMP:  Who lives at that

25    address besides you?
```

18

```
 1                    THE DEFENDANT:  It's ████  ████.

 2                    MR. MUHLENKAMP:  I understand.  Who

 3      lives there besides you?

 4                    THE DEFENDANT:  A girl named ████

 5      ████.

 6                    MR. MUHLENKAMP:  Is that your

 7      girlfriend?

 8                    THE DEFENDANT:  That's my witness on

 9      this case right here.  That's my girlfriend.

10                    MR. MUHLENKAMP:  So you live with your

11      girlfriend, correct?

12                    THE DEFENDANT:  Yes, sir.

13                    MR. MUHLENKAMP:  If the court were to

14      enter an order forbidding you to not --

15                    THE DEFENDANT:  What?

16                    MR. MUHLENKAMP:  Can you hear me okay?

17                    THE DEFENDANT:  I really can't.  You

18      keep breaking in and breaking out, sir.  You said

19      what now?

20                    MR. MUHLENKAMP:  If the court were to

21      enter an order telling you not to have any contact

22      whatsoever with ████ ████, would you abide by that

23      order?

24                    THE DEFENDANT:  Yes, sir.

25                    MR. MUHLENKAMP:  Can you hear me okay
```

1    now?

2              THE DEFENDANT:  Yes, sir.  You said no

3    contact with my girlfriend?

4              MR. MUHLENKAMP:  With ███ ████, not your

5    girlfriend, ███ ████.

6              THE DEFENDANT:  Oh, you talking about my

7    baby momma?

8              MR.  MUHLENKAMP:  I'm talking about the

9    woman involved in this case, ███ ████.

10             THE DEFENDANT:  Sir, I'm not trying to

11   be rude.  You said ████ like my baby momma, right?

12             MR. MUHLENKAMP:  You tell me.

13             THE DEFENDANT:  I don't talk to my baby

14   momma.  I ain't talked to my baby momma in eight

15   months.

16             MR. MUHLENKAMP:  I understand.  Let me

17   back up.  I shouldn't have said that.  The woman

18   involved in this case is ██████ ████, right?

19             THE DEFENDANT:  Yes.  That's the

20   daughter of my mother, sir.  When I contact her, I

21   contact my own mother.

22             MR. MUHLENKAMP:  Okay.

23             THE DEFENDANT:  No, I won't contact her.

24             MR. MUHLENKAMP:  ████ ███████ --

25             THE DEFENDANT:  I don't contact her and

1    I wont contact her.

2                    MR. MUHLENKAMP:   ███  ██████  --

3                    THE COURT:   ███  ██████.  For the

4    record, ███  ██████.  For the record --

5                    THE DEFENDANT:  No, I won't contact her.

6                    THE COURT:  Will you please let me ask

7    my question before you talk.

8                    THE DEFENDANT:  I'm sorry, sir.  I

9    apologize.

10                   THE COURT:  That's okay.

11                   MR. MUHLENKAMP:  Judge, I think I got

12   everything unless we need to clarify something for

13   the record.

14                   THE COURT:  We need to clarify something

15   for the record because multiple people including

16   yourself were talking at one time.  Our court

17   reporter --

18                   THE DEFENDANT:  I'm sorry about that.

19                   THE COURT:  Please don't say anything

20   until I ask you this question.  Can you do that?

21                   THE DEFENDANT:  Yes, sir.

22                   THE COURT:  When you contact your baby

23   momma, do you contact her mother or your mother?

24                   THE DEFENDANT:  I contact my mother.

25                   THE COURT:  Thank you.  That's what we

1    needed for the record.  Now, your lawyer is going

2    to make an argument to me.  You are just going to

3    listen.  Do you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Thank you.

6              MR. MUHLENKAMP:  Your Honor, I'm asking

7    the court to release ███ ████ on a personal

8    recognizance bond.  The mitigating circumstances of

9    this case I would reference.  He was coming to

10   court.  He came to court yesterday on his other

11   case.  So whether he's a flight risk or not, he's

12   showing up to the court to answer to much more

13   serious charges which seems to be an indication

14   that he is going to come back to court.  He has a

15   job.  He's currently employed.  If he doesn't get

16   out of jail he is going to lose his job.  He's

17   willing to abide by no contact with the alleged

18   victim in this case.  I think that makes sense.

19             The fact the State is asking for a no

20   bond on the Class A misdemeanor is a little

21   ludicrous since there's nobody here to testify to

22   that.  They listed a long list of criminal history.

23   That smells like misdemeanors to me, Judge.  The

24   initial bond in this case was $1,500 cash only.

25   That in and of itself is a little steep.  I got a

1    number of clients that get a summons in this type

2    of case and if they show up great, if they don't

3    show up, then they go to jail.  At this point to go

4    no bond allowed with a Class A misdemeanor when

5    there is no victim here asking for that, I would

6    ask the court to grant an ER bond or authorize 10

7    percent of the current bond to get out on a more

8    reasonable amount.  And obviously he can't have any

9    contact with this woman.  I think that would make

10   sense.

11             MS. WILLIAMS:  If the State may?

12             THE COURT:  Yes.

13             MS. WILLIAMS:  The victim in this case

14   was present at the warrant application yesterday.

15   I actually can verify the victim services did

16   attempt to give her information on this court date,

17   but they were not able to because she does not have

18   a working phone.  That's what's noted.  Given the

19   bond was set at a cash bond outright, I believe

20   that it is due to the circumstances and the

21   concerns of the victim, and the victim was very

22   clear at the time of the warrant application that

23   she does not believe he should be released.

24             The new court order allows us to

25   consider a multitude of things.  Included in that

1       is whether or not the defendant would be a flight

2       risk or if the defendant is reliable or credible to

3       come to court.  Going capias is clear and

4       convincing evidence that this defendant is not

5       reliable to come to court.  Again, he went capias

6       on May 7.  He showed up randomly yesterday.  That

7       being the case, he's shown us that he is not

8       reliable to come to court on much more serious

9       charges.  And based on the injuries to this victim,

10      based on her belief that he would harm her if he is

11      released, based on the havoc he has wreaked since

12      2009 on St. Clair County, St. Louis City, with all

13      of these steps, all of these aggravated assaults

14      and batteries, whether these are misdemeanors or

15      not, these are still against people and companies.

16      He is clearly a threat to society.  He is clearly a

17      threat to this victim.  And he is clearly not

18      liable to show up in court since he's been capias.

19                  MR. MUHLENKAMP:  Judge, can I respond to

20      this briefly?

21                  THE DEFENDANT:  I understand this is a

22      new rule.  If going capias on a case that you later

23      come to court for is clear and convincing evidence,

24      I think we are going to have a lot of issues if

25      that is going to be our standard going forward.

```
1     The guy came to court.  That's the point.  Whether

2     he went warrant once or warrant twice, clients,

3     defendant's, they do that all the time.  The issue

4     is did he remedy the issues.  Did he remedy the

5     issue, he did.  It's not like he is still capias.

6     He came to court and posted another bond.  He is

7     not a flight risk.  Again, this is a misdemeanor.

8     You are asking for no bond allowed on a

9     misdemeanor.  She references injuries.  These cases

10    do not even reference that she has injuries at all

11    and again she is not here.  So no bond allowed on a

12    Class A misdemeanor?

13              THE COURT:  What's the current bond?

14              MR. MUHLENKAMP: $1,500.

15              MS. WILLIAMS: $1,500 cash only.

16              THE COURT:  It will be the order of the

17    court that the cash component of the bond be

18    reduced to $250 cash only.  It will be the order of

19    the court that ███  ███████  stay 100 yards away from

20    ██████ ████████

21              THE DEFENDANT:  Can I say something?

22    It's important I was going to get a restraining

23    order on my baby momma.

24              MR. MUHLENKAMP: ███ ████████ time out.

25              THE COURT:  He said he was going to get
```

1     a restraining order on his baby momma.

2              MR. MUHLENKAMP:     ███ ██████, I'm your

3     attorney.

4              THE DEFENDANT:  I want to get a

5     restraining order on my baby momma.

6              MR. MUHLENKAMP:  I'm your attorney --

7              THE DEFENDANT:  I want to get a

8     restraining order.

9              THE COURT:   ████ ███████ if you can make

10    your bond, you can go get whatever order anybody

11    will issue.  It doesn't have anything to do with

12    what we are deciding here today.  Your lawyer has

13    advised you not to the say anything else.  And I'm

14    advising you to take his advice.

15             THE DEFENDANT:  All right, sir.

16             MR. MUHLENKAMP:  Thank you, judge.

17             MS. WILLIAMS:  Your Honor, this is only

18    pertaining to this case, not the open drug case,

19    correct?

20             THE COURT:  He's not on my docket for

21    the open drug case.  I'm setting his bond on the

22    misdemeanor charge.

23             MS. WILLIAMS:  Got it.  Thank you, Your

24    Honor.

25             (This concludes the hearing.)

1                          **CERTIFICATE**.

2

3              I, Tina Marie Catlett, Certified Court

4    Reporter, do hereby certify that I am an official

5    court reporter for the Circuit Court of the City of

6    St. Louis, State of Missouri, that on July 5, 2019,

7    I was present and reported all of the proceedings

8    had in the case of STATE OF MISSOURI, Plaintiff,

9    vs. ███████  ███████ , Defendant, Cause No.

10   1922-CR02021.

11             I further certify that the foregoing pages

12   contain a true and accurate reproduction of the

13   proceedings.

14

15

16

17                          *Tina Marie Catlett, CCR #946*

18

19

20

21

22

23

24

25

## #

**#946** [2] - 1:21, 26:17

## $

**$1,200** [2] - 6:12, 11:10
**$1,500** [4] - 6:25, 21:24, 24:14, 24:15
**$250** [1] - 24:18
**$350** [1] - 5:21
**$500** [1] - 12:2
**$840** [1] - 5:19
**$9.61** [1] - 17:3

## 1

**1** [1] - 12:9
**10** [2] - 11:24, 22:6
**100** [2] - 7:3, 24:19
**18** [2] - 5:25, 6:7
**1922-CR00512** [1] - 5:10
**1922-CR02021** [3] - 1:6, 2:4, 26:10
**1946** [3] - 17:19, 17:22, 18:1
**1st** [1] - 13:22

## 2

**2009** [3] - 5:15, 6:19, 23:12
**2010** [4] - 5:16, 5:17, 5:20, 5:24
**2011** [3] - 6:3, 6:4, 6:6
**2014** [2] - 6:8, 6:9
**2015** [1] - 6:13
**2017** [1] - 6:15
**2018** [1] - 6:19
**2019** [2] - 1:13, 26:6
**28** [1] - 6:11
**2nd** [1] - 9:25

## 3

**3** [1] - 1:13
**30** [1] - 6:8
**30-day** [1] - 5:18
**32** [1] - 17:17

## 5

**5** [1] - 26:6
**5,000** [1] - 11:24

## 7

**7** [1] - 23:6

## A

**abide** [2] - 18:22, 21:17
**ability** [1] - 8:8
**able** [1] - 22:17
**accurate** [1] - 26:12
**addition** [1] - 5:6
**additional** [1] - 7:8
**additionally** [4] - 5:13, 6:4, 6:17, 7:2
**address** [2] - 17:16, 17:25
**admit** [1] - 4:23
**advice** [2] - 9:5, 25:14
**advise** [1] - 2:12
**advised** [1] - 25:13
**advising** [1] - 25:14
**afford** [1] - 3:14
**aggravated** [4] - 5:14, 5:22, 11:12, 23:13
**ago** [1] - 16:20
**ain't** [1] - 19:14
**alleged** [4] - 4:25, 8:20, 8:22, 21:17
**allowed** [5] - 4:21, 7:2, 22:4, 24:8, 24:11
**allows** [1] - 22:24
**alot** [1] - 3:25
**alright** [2] - 8:15, 9:4
**Alright** [1] - 14:23
**amount** [2] - 11:9, 22:8
[redacted]
**answer** [7] - 4:1, 8:8, 9:2, 9:6, 13:5, 14:22, 21:12
**Anthony** [1] - 1:16
**apologize** [1] - 20:9
**appearance** [1] - 2:8
**APPEARANCE** [1] - 1:12
**application** [4] - 9:18, 9:23, 22:14, 22:22
**appoint** [1] - 4:7
**appointed** [1] - 3:14
**appreciates** [1] - 11:20
**appropriate** [1] - 7:1

## B

**baby** [9] - 15:12, 19:7, 19:11, 19:13, 19:14, 20:22, 24:23, 25:1, 25:5
**bar** [1] - 4:13
**based** [4] - 6:18, 23:9, 23:10, 23:11
**basic** [1] - 13:2
**batteries** [1] - 23:14
**battery** [3] - 5:15, 5:22, 6:21
**Beach** [1] - 16:5
**bear** [1] - 13:3
**behalf** [1] - 1:17
**belief** [1] - 23:10
[redacted] [1] - 17:18
[redacted] [3] - 17:19, 17:23, 18:1
**best** [2] - 8:5, 8:8
**big** [1] - 16:11
**bodily** [1] - 5:15
**bond** [25] - 3:1, 4:21, 7:2, 11:15, 11:16, 11:22, 12:18, 12:19, 12:22, 13:19, 21:8, 21:20, 21:24, 22:4, 22:6, 22:7, 22:19, 24:6, 24:8, 24:11, 24:13, 24:17, 25:10, 25:21
**box** [1] - 16:10
**boyfriend** [1] - 7:5

## A (column 3)

**argument** [1] - 21:2
**arrest** [1] - 3:2
**arrested** [5] - 3:2, 14:2, 14:3, 14:5, 15:17
**arrests** [2] - 6:18, 6:19
**Ashley** [1] - 19:18, 24:20
**assault** [3] - 5:14, 5:22, 11:12
**assaults** [1] - 23:13
**assume** [5] - 10:2, 10:3, 10:14, 10:21, 11:5
**assuming** [1] - 5:19
**attempt** [1] - 22:16
**Attorney** [1] - 1:16
**attorney** [5] - 12:14, 13:9, 13:12, 25:3, 25:6
**Attorney's** [1] - 10:15
**August** [4] - 6:4, 6:6, 12:9, 13:22
**authorize** [1] - 22:6
**aware** [1] - 7:4

## B (column 3)

**breaking** [2] - 18:18
**briefly** [1] - 23:20
**broke** [2] - 5:2, 5:4
**broken** [1] - 7:9
**burglaries** [2] - 11:7, 11:9
**burglary** [2] - 5:16, 6:20

## C

**cannabis** [1] - 6:8
**cannot** [1] - 10:23
**capias** [7] - 11:25, 12:2, 23:3, 23:5, 23:18, 23:22, 24:5
**care** [1] - 3:21
[redacted] [8] - 8:20, 18:22, 19:4, 19:5, 19:9, 19:11, 19:18, 24:20
**case** [38] - 4:4, 4:5, 4:24, 5:7, 5:10, 6:4, 7:3, 8:20, 11:14, 11:17, 11:23, 12:13, 12:14, 13:6, 13:13, 13:19, 13:25, 14:11, 15:8, 15:18, 15:21, 16:21, 18:9, 19:9, 19:18, 21:9, 21:11, 21:18, 21:24, 22:2, 22:13, 23:7, 23:22, 25:18, 25:21, 26:8
**cases** [2] - 6:22, 24:9
**cash** [7] - 7:1, 12:2, 21:24, 22:19, 24:15, 24:17, 24:18
**Catlett** [2] - 26:3, 26:17
**CATLETT** [1] - 1:21
**CCR** [2] - 1:21, 26:17
**cell** [1] - 7:9
**CERTIFICATE** [1] - 26:1
**Certified** [1] - 26:3
**certify** [2] - 26:4, 26:11
**CFA** [1] - 16:4
**chance** [1] - 7:15
**charge** [6] - 6:2, 12:19, 12:21, 14:6, 15:8, 25:22
**charges** [3] - 2:12, 21:13, 23:9
**check** [1] - 13:24
**child** [1] - 6:21
**circuit** [1] - 12:14
**CIRCUIT** [3] - 1:1, 1:22, 1:23
**Circuit** [4] - 2:7, 5:9, 10:15, 26:5

## C (column 4)

**circumstances** [2] - 21:8, 22:20
**City** [6] - 6:24, 11:14, 12:15, 14:25, 23:12, 26:5
**city** [3] - 13:6, 14:15
**CITY** [2] - 1:1, 1:22
**Clair** [6] - 5:15, 5:16, 5:17, 5:24, 6:14, 6:23
**clair** [1] - 23:12
**clarify** [4] - 8:19, 9:15, 20:12, 20:14
**Class** [3] - 21:20, 22:4, 24:12
**clear** [4] - 12:1, 22:22, 23:3, 23:23
**clearly** [3] - 23:16, 23:17
**clients** [2] - 22:1, 24:2
**coming** [1] - 21:9
**companies** [2] - 16:11, 23:15
**comply** [1] - 2:25
**component** [1] - 24:17
**concerning** [1] - 5:5
**concerns** [2] - 7:3, 22:21
**concludes** [1] - 25:25
**conditions** [3] - 2:14, 2:19, 2:25
**confined** [1] - 2:8
**confinement** [2] - 6:12, 6:16
**connection** [1] - 6:5
**consider** [1] - 22:25
**contact** [15] - 5:3, 9:16, 18:21, 19:3, 19:20, 19:21, 19:23, 19:25, 20:1, 20:5, 20:22, 20:23, 20:24, 21:17, 22:9
**contacted** [1] - 8:22
**contain** [1] - 26:12
**controlled** [2] - 5:8, 6:20
**convincing** [3] - 12:1, 23:4, 23:23
**correct** [17] - 2:9, 8:23, 10:2, 10:14, 10:19, 10:20, 13:6, 13:19, 13:22, 14:13, 14:25, 15:5, 15:9, 15:18, 15:24, 18:11, 25:19
**Correct** [1] - 10:23
**cost** [1] - 6:12
**counts** [2] - 5:17, 5:23
**County** [7] - 5:15, 5:16, 5:17, 5:25,

6:14, 6:24, 23:12
**Court** [2] - 26:3, 26:5
**COURT** [35] - 1:1, 1:22, 1:22, 2:3, 2:11, 2:17, 2:24, 3:6, 3:9, 3:12, 3:17, 3:23, 3:25, 4:6, 4:11, 4:17, 7:13, 7:20, 8:2, 9:5, 11:18, 20:3, 20:6, 20:10, 20:14, 20:19, 20:22, 20:25, 21:5, 22:12, 24:13, 24:16, 24:25, 25:9, 25:20
**court** [45] - 2:2, 2:18, 3:19, 3:20, 3:21, 10:18, 12:8, 12:18, 12:22, 12:23, 13:21, 13:25, 14:4, 14:5, 14:7, 14:11, 14:15, 14:16, 14:18, 14:25, 15:4, 15:16, 18:13, 18:20, 20:16, 21:7, 21:10, 21:12, 21:14, 22:6, 22:16, 22:24, 23:3, 23:5, 23:8, 23:18, 23:23, 24:1, 24:6, 24:17, 24:19, 26:5
**courthouse** [3] - 14:8, 15:12, 15:13
**courtroom** [3] - 4:12, 14:6, 15:12
**courts** [2] - 3:20, 14:17
**credible** [1] - 23:2
**crime** [1] - 5:1
**criminal** [4] - 5:13, 6:22, 11:2, 21:22
**cuffs** [1] - 14:12
**current** [8] - 5:7, 7:5, 7:19, 9:21, 12:13, 17:19, 22:7, 24:13
**custody** [3] - 15:4, 15:9, 15:11

## D

**damage** [1] - 6:23
**date** [3] - 12:8, 13:22, 22:16
**dates** [3] - 10:18, 12:23, 14:15
**daughter** [1] - 19:20
**days** [3] - 6:8, 6:12, 17:6
**deciding** [1] - 25:12
**DEFENDANT** [78] - 2:10, 2:16, 2:23, 3:5, 3:8, 3:11, 3:16, 3:18, 3:24, 4:2, 4:10, 4:16,

7:17, 7:23, 8:1, 8:6, 8:10, 8:15, 8:25, 9:4, 9:7, 9:13, 10:9, 10:13, 12:12, 12:17, 12:25, 13:7, 13:10, 13:14, 13:17, 13:20, 13:23, 14:3, 14:14, 14:23, 15:1, 15:6, 15:10, 15:19, 15:22, 15:25, 16:4, 16:9, 16:15, 16:19, 16:24, 17:3, 17:5, 17:9, 17:12, 17:17, 17:22, 18:1, 18:4, 18:8, 18:12, 18:15, 18:17, 18:24, 19:2, 19:6, 19:10, 19:13, 19:19, 19:23, 19:25, 20:5, 20:8, 20:18, 20:21, 20:24, 21:4, 23:21, 24:21, 25:4, 25:7, 25:15
**defendant** [10] - 1:9, 4:20, 4:25, 6:17, 7:10, 9:19, 11:24, 23:1, 23:2, 23:4
**Defendant** [2] - 1:17, 26:9
**defendant's** [1] - 24:3
**defender** [1] - 4:4
**deputies** [1] - 11:18
**detained** [1] - 4:20
**detention** [2] - 5:18, 10:4
**determination** [1] - 2:14
**different** [2] - 14:15, 14:17
**difficult** [1] - 5:4
**direct** [1] - 13:2
**docket** [1] - 15:20
**domestic** [2] - 4:24, 6:18
**down** [1] - 11:20
**drug** [8] - 11:14, 12:14, 13:6, 14:6, 14:11, 16:21, 25:18, 25:21
**due** [1] - 22:20
**during** [3] - 5:2, 5:5, 9:18

## E

**easy** [1] - 14:21
**eight** [1] - 19:14
**either** [1] - 7:5
**employed** [1] - 21:15
**end** [1] - 8:13
**endangerment** [1] -

6:21
**enter** [2] - 18:14, 18:21
**ER** [1] - 22:6
**evidence** [3] - 12:1, 23:4, 23:23
**excuse** [1] - 10:9
**experienced** [1] - 4:13
**explain** [1] - 2:11

## F

**fact** [1] - 21:19
**fair** [1] - 16:2
**familiar** [2] - 12:15, 13:5
**fears** [1] - 9:20
**felonies** [1] - 11:3
**felony** [3] - 5:7, 11:5, 11:11
**fight** [2] - 16:20, 16:21
**file** [1] - 13:25
**fine** [2] - 5:19, 5:21
**FIRST** [1] - 1:12
**first** [1] - 2:7
**five** [1] - 17:5
**flight** [4] - 11:25, 21:11, 23:1, 24:7
**follow** [1] - 9:5
**following** [1] - 2:1
**forbidding** [1] - 18:14
**foregoing** [1] - 26:11
**former** [2] - 7:5, 9:21
**forward** [1] - 23:25
**full** [2] - 17:4, 17:5

## G

**girl** [1] - 18:4
**girlfriend** [6] - 9:21, 18:7, 18:9, 18:11, 19:3, 19:5
**given** [2] - 7:8, 22:18
**grant** [1] - 22:6
**great** [1] - 22:2
**guess** [2] - 8:21, 11:2
**guy** [1] - 24:1

## H

**hand** [1] - 7:15
**hang** [1] - 14:9
**harm** [3] - 5:15, 5:23, 23:10
**havoc** [2] - 6:23, 23:11
**hear** [8] - 7:16, 9:7, 9:9, 9:12, 11:19, 12:11, 18:16, 18:25
**heard** [3] - 2:21, 10:17, 11:3

**HEARING** [1] - 1:12
**hearing** [7] - 2:21, 4:9, 4:14, 4:22, 5:12, 10:4, 25:25
**help** [1] - 15:15
**hereby** [1] - 26:4
**high** [1] - 11:9
**hire** [2] - 3:15, 13:8
**history** [3] - 5:14, 11:2, 21:22
**hold** [1] - 10:12
**home** [1] - 13:24
**Honor** [5] - 6:25, 9:8, 21:6, 25:17, 25:24
**Honorable** [1] - 1:2
**hour** [2] - 16:25, 17:3

## I

**identification** [1] - 6:22
**Illinois** [2] - 16:5, 17:18
**important** [1] - 24:22
**imprisonment** [4] - 6:2, 6:7, 6:9, 6:10
**IN** [1] - 1:1
████████████ [1] - 17:18
**incident** [3] - 5:5, 7:10, 8:22
**included** [1] - 22:25
**including** [1] - 20:15
**indication** [1] - 21:13
**information** [2] - 14:10, 22:16
**informed** [2] - 10:3, 15:8
**initial** [2] - 2:14, 21:24
**injuries** [3] - 23:9, 24:9, 24:10
**instance** [1] - 3:4
**intensive** [2] - 6:1, 6:11
**involved** [2] - 19:9, 19:18
**issue** [3] - 24:3, 24:5, 25:11
**issued** [1] - 3:2
**issues** [2] - 23:24, 24:4
**itself** [1] - 21:25

## J

**jail** [9] - 3:22, 14:2, 15:21, 15:24, 17:11, 17:13, 17:20, 21:16, 22:3
**job** [8] - 16:3, 16:18,

16:23, 17:8, 17:11, 17:13, 21:15, 21:16
**Joe** [1] - 2:6
**Joseph** [1] - 1:2
**Judge** [5] - 1:2, 7:12, 8:20, 20:11, 21:23
**judge** [4] - 2:6, 15:5, 23:19, 25:16
**JUDICIAL** [1] - 1:23
**Judicial** [2] - 2:7, 5:9
**July** [4] - 1:13, 6:13, 9:25, 26:6
**jump** [1] - 12:22
**jus** [1] - 4:1
**JUSTIN** [1] - 1:8, 26:9
**Justin** [1] - 2:5

## K

**keep** [2] - 11:20, 18:18

## L

**last** [1] - 15:24
**Law** [1] - 1:16
**lawyer** [16] - 3:13, 3:15, 3:17, 4:3, 4:7, 4:13, 7:20, 7:21, 7:25, 8:4, 9:6, 13:16, 21:1, 25:12
**lawyers** [1] - 11:19
**leaving** [2] - 14:6, 14:7
**left** [4] - 3:19, 14:4, 14:5, 15:11
**lengthy** [1] - 5:13
**liable** [1] - 23:18
**likely** [1] - 3:3
**limited** [1] - 4:21
**list** [1] - 21:22
**listed** [1] - 21:22
**listen** [4] - 14:20, 14:21, 15:15, 21:3
**live** [3] - 17:16, 17:17, 18:10
**lives** [2] - 17:24, 18:3
**looks** [2] - 6:2, 11:23
**lose** [4] - 17:8, 17:11, 17:13, 21:16
**LOUIS** [2] - 1:1, 1:22
**Louis** [8] - 6:24, 11:14, 12:15, 14:25, 17:19, 17:23, 23:12, 26:6
**ludicrous** [1] - 21:21

## M

**main** [1] - 14:17
**mama** [1] - 15:12
**man** [1] - 15:15

**MARIE** [1] - 1:21
**Marie** [2] - 26:3, 26:17
**matter** [1] - 4:24
**mean** [1] - 16:21
**mentioned** [1] - 11:14
**met** [2] - 8:3, 11:25
**minute** [1] - 9:15
**misdemeanor** [6] - 21:20, 22:4, 24:7, 24:9, 24:12, 25:22
**misdemeanors** [2] - 21:23, 23:14
**MISSOURI** [3] - 1:1, 1:5, 26:8
**Missouri** [3] - 2:4, 17:23, 26:6
**mitigating** [1] - 21:8
**momma** [8] - 19:7, 19:11, 19:14, 20:23, 24:23, 25:1, 25:5
**money** [3] - 16:22, 17:1, 17:14
**month** [2] - 5:25, 6:11
**months** [4] - 6:1, 6:7, 12:20, 19:15
**most** [1] - 5:5
**mother** [5] - 19:20, 19:21, 20:23, 20:24
**move** [1] - 4:23
**MR** [74] - 7:11, 7:14, 7:18, 7:24, 8:7, 8:12, 8:16, 9:1, 9:10, 9:14, 9:22, 9:25, 10:2, 10:11, 10:14, 10:22, 11:1, 11:13, 11:16, 12:3, 12:5, 12:7, 12:10, 12:13, 12:24, 13:1, 13:8, 13:12, 13:15, 13:18, 13:21, 14:1, 14:9, 14:19, 14:24, 15:3, 15:7, 15:14, 15:20, 15:23, 16:2, 16:7, 16:13, 16:17, 16:22, 17:1, 17:4, 17:7, 17:10, 17:15, 17:20, 17:24, 18:2, 18:6, 18:10, 18:13, 18:16, 18:20, 18:25, 19:4, 19:8, 19:12, 19:16, 19:22, 19:24, 20:2, 20:11, 21:6, 23:19, 24:14, 24:24, 24:25, 25:2, 25:6, 25:16
**MS** [19] - 4:19, 8:24, 9:17, 9:24, 10:1, 10:6, 10:20, 10:23, 11:6, 11:15, 11:22, 12:4, 12:6, 12:9, 22:11, 22:13, 24:15,
25:17, 25:23
**MUHLEMKAMP** [1] - 7:13
**Muhlenkamp** [3] - 1:16, 4:12, 7:21
**MUHLEMKAMP** [74] - 7:11, 7:14, 7:18, 7:24, 8:7, 8:12, 8:16, 9:1, 9:10, 9:14, 9:22, 9:25, 10:2, 10:11, 10:14, 10:22, 11:1, 11:13, 11:16, 12:3, 12:5, 12:7, 12:10, 12:13, 12:24, 13:1, 13:8, 13:12, 13:15, 13:18, 13:21, 14:1, 14:9, 14:19, 14:24, 15:3, 15:7, 15:14, 15:20, 15:23, 16:2, 16:7, 16:13, 16:17, 16:22, 17:1, 17:4, 17:7, 17:10, 17:15, 17:20, 17:24, 18:2, 18:6, 18:10, 18:13, 18:16, 18:20, 18:25, 19:4, 19:8, 19:12, 19:16, 19:22, 19:24, 20:2, 20:11, 21:6, 23:19, 24:14, 24:24, 25:2, 25:6, 25:16
**multiple** [3] - 6:17, 6:19, 20:15
**multitude** [1] - 22:25
**must** [1] - 6:5

**N**

**name** [2] - 2:5, 4:11
**named** [1] - 18:4
**nature** [1] - 7:4
**need** [2] - 20:12, 20:14
**needed** [1] - 21:1
**needs** [1] - 9:19
**new** [4] - 15:8, 15:17, 22:24, 23:22
**next** [3] - 2:18, 12:7, 13:21
**nine** [2] - 14:16, 14:17
**nobody** [1] - 21:21
**noted** [1] - 22:18
**notified** [2] - 2:20, 10:21
**number** [4] - 2:4, 5:9, 16:6, 22:1

**O**

**obstructing** [1] - 6:21
**obviously** [1] - 22:8
**October** [1] - 6:15
**OF** [7] - 1:1, 1:1, 1:5, 1:12, 1:22, 26:8
**office** [2] - 9:16, 10:22
**Office** [1] - 10:16
**OFFICIAL** [1] - 1:22
**official** [1] - 26:4
**once** [1] - 24:2
**one** [7] - 5:21, 6:1, 6:15, 9:15, 11:3, 11:10, 20:16
**one-year** [1] - 6:15
**open** [6] - 2:2, 5:8, 5:10, 11:23, 25:18, 25:21
**order** [11] - 18:14, 18:21, 18:23, 22:24, 24:16, 24:18, 24:23, 25:1, 25:5, 25:8, 25:10
**outright** [1] - 22:19
**outside** [1] - 15:13
**own** [6] - 3:15, 14:12, 14:14, 15:1, 15:5, 19:21

**P**

**pages** [1] - 26:11
**paid** [1] - 16:24
**pay** [1] - 16:20
**pending** [2] - 4:20, 12:15
**people** [2] - 20:15, 23:15
**per** [1] - 17:3
**percent** [3] - 7:4, 11:24, 22:7
**personal** [1] - 21:7
**pertaining** [1] - 25:18
**phone** [7] - 5:2, 5:5, 7:9, 8:21, 16:5, 16:6, 22:18
**Plaintiff** [2] - 1:6, 26:8
**point** [4] - 15:7, 15:17, 22:3, 24:1
**policy** [1] - 10:16
**Pontoon** [1] - 16:5
**position** [2] - 4:18, 4:19
**possession** [5] - 5:7, 6:8, 6:20, 12:19, 12:21
**posted** [3] - 12:3, 12:18, 24:6
**preliminary** [1] - 5:12
**present** [3] - 9:18, 22:14, 26:7
**presume** [1] - 11:11
**presuming** [1] - 5:21
**pretty** [1] - 14:21
**private** [1] - 4:13
**probable** [1] - 4:23
**probation** [8] - 5:18, 5:21, 5:25, 6:1, 6:3, 6:5, 6:11
**proceedings** [3] - 2:1, 26:7, 26:13
**process** [1] - 13:16
**proof** [1] - 14:8
**property** [1] - 6:22
**Pruitt** [1] - 18:5
**public** [1] - 4:4
**punched** [1] - 4:25
**purposes** [2] - 4:8, 4:22
**put** [1] - 16:10

**Q**

**questions** [10] - 4:1, 7:19, 8:8, 8:13, 8:14, 8:18, 9:6, 12:11, 13:2
**quick** [1] - 8:11

**R**

**raising** [1] - 7:15
**randomly** [1] - 23:6
**re** [1] - 3:2
**re-arrested** [1] - 3:2
**ready** [1] - 7:11
**real** [2] - 8:10, 13:1
**really** [1] - 18:17
**reasonable** [1] - 22:8
**received** [3] - 5:18, 6:7, 6:15
**recognizance** [1] - 21:8
**record** [8] - 2:3, 8:19, 9:12, 20:4, 20:13, 20:15, 21:1
**reduced** [1] - 24:18
**reference** [2] - 21:9, 24:10
**references** [1] - 24:9
**regardless** [1] - 10:24
**Rejyah** [1] - 18:4
**relationship** [1] - 7:4
**release** [3] - 2:15, 2:19, 21:7
**released** [8] - 2:17, 2:24, 3:3, 9:19, 12:5, 17:8, 22:23, 23:11
**reliable** [3] - 23:2, 23:5, 23:8
**remain** [1] - 3:7
**remedy** [2] - 24:4
**remember** [1] - 13:24
**reported** [1] - 26:7
**REPORTER** [1] - 1:22
**Reporter** [1] - 26:4
**reporter** [2] - 20:17, 26:5
**represent** [3] - 3:14, 4:7, 4:14
**represented** [1] - 12:14
**representing** [1] - 13:13
**reproduction** [1] - 26:12
**respond** [1] - 23:19
**restitution** [2] - 5:20, 5:22
**restraining** [4] - 24:22, 25:1, 25:5, 25:8
**retail** [8] - 5:20, 5:23, 6:6, 6:10, 6:13, 6:14, 11:8, 11:10
**reviewed** [1] - 2:19
**revocation** [1] - 6:5
**revoked** [1] - 6:3
**rights** [2] - 2:13, 2:20
**ripped** [1] - 5:1
**risk** [4] - 11:25, 21:11, 23:2, 24:7
**robberies** [3] - 11:6, 11:9, 11:12
**robbery** [2] - 6:9, 11:4
**rude** [2] - 9:9, 19:11
**rule** [1] - 23:22

**S**

**safety** [2] - 7:3, 9:20
**SECOND** [1] - 1:23
**second** [1] - 5:9
**Second** [1] - 2:6
**see** [4] - 7:15, 7:21, 8:3, 8:14
**sense** [3] - 7:24, 21:18, 22:10
**sentence** [1] - 11:4
**September** [1] - 5:24
**series** [1] - 7:19
**serious** [2] - 21:13, 23:8
**services** [2] - 5:2, 22:15
**Services** [2] - 8:23, 10:7
**set** [3] - 5:11, 12:2, 22:19
**setting** [1] - 25:21
**setup** [1] - 13:4
**ship** [1] - 16:10
**show** [5] - 6:4, 10:19, 22:2, 22:3, 23:18

**showed** [1] - 23:6
**showing** [1] - 21:12
**shown** [1] - 23:7
**significant** [1] - 11:2
**silent** [1] - 3:7
**sit** [3] - 8:16, 9:14, 10:12
**situation** [1] - 7:19
**six** [2] - 6:1, 6:11
**sleep** [2] - 17:21, 17:22
**smells** [1] - 21:23
**smoother** [1] - 3:25
**society** [1] - 23:16
**sorry** [2] - 20:8, 20:18
**speaking** [1] - 11:19
**special** [1] - 5:25
**St** [15] - 5:14, 5:16, 5:17, 5:24, 6:14, 6:23, 6:24, 11:14, 12:15, 14:25, 17:19, 17:23, 23:12, 26:6
**ST** [2] - 1:1, 1:22
**stalking** [2] - 14:8, 15:13
**standard** [1] - 23:25
**STATE** [3] - 1:1, 1:5, 26:8
**State** [6] - 2:4, 4:18, 9:15, 21:19, 22:11, 26:6
**State's** [1] - 4:19
**statement** [4] - 3:10, 4:23, 7:7, 7:8
**stay** [2] - 17:18, 24:19
**steep** [1] - 21:25
**steps** [1] - 23:13
**still** [3] - 5:10, 23:15, 24:5
**stock** [1] - 16:10
**stocking** [1] - 16:9
**strange** [1] - 8:2
**stuff** [2] - 16:10, 16:11
**subject** [1] - 2:20
**substance** [2] - 5:8, 6:20
**summons** [1] - 22:1

**T**

**Target** [1] - 16:11
**testify** [1] - 21:21
**THE** [112] - 1:1, 2:3, 2:10, 2:11, 2:16, 2:17, 2:23, 2:24, 3:5, 3:6, 3:8, 3:9, 3:11, 3:12, 3:16, 3:17, 3:18, 3:23, 3:24, 3:25, 4:2, 4:6, 4:10, 4:11, 4:16, 4:17,

7:13, 7:17, 7:20, 7:23, 8:1, 8:2, 8:6, 8:10, 8:15, 8:25, 9:4, 9:5, 9:7, 9:13, 10:9, 10:13, 11:18, 12:12, 12:17, 12:25, 13:7, 13:10, 13:14, 13:17, 13:20, 13:23, 14:3, 14:14, 14:23, 15:1, 15:6, 15:10, 15:19, 15:22, 15:25, 16:4, 16:9, 16:15, 16:19, 16:24, 17:3, 17:5, 17:9, 17:12, 17:17, 17:22, 18:1, 18:4, 18:8, 18:12, 18:15, 18:17, 18:24, 19:2, 19:6, 19:10, 19:13, 19:19, 19:23, 19:25, 20:3, 20:5, 20:6, 20:8, 20:10, 20:14, 20:18, 20:19, 20:21, 20:22, 20:24, 20:25, 21:4, 21:5, 22:12, 23:21, 24:13, 24:16, 24:21, 24:25, 25:4, 25:7, 25:9, 25:15, 25:20
**theft** [8] - 5:20, 5:23, 6:2, 6:6, 6:10, 6:13, 6:14, 6:22
**thefts** [2] - 11:8, 11:10
**threat** [2] - 23:16, 23:17
**three** [2] - 6:9, 11:4
**three-year** [1] - 11:4
**tight** [3] - 8:16, 9:14, 10:12
**TINA** [1] - 1:21
**Tina** [2] - 26:3, 26:17
**tissue** [1] - 16:9
**today** [10] - 3:21, 4:8, 4:14, 7:25, 8:4, 8:5, 10:4, 10:5, 17:21, 25:12
**together** [1] - 5:24
**tonight** [1] - 17:21
**top** [1] - 5:19
**tough** [2] - 13:4, 14:20
**traffic** [1] - 14:16
**TRANSCRIPT** [1] - 1:12
**trial** [2] - 3:3, 4:21
**trouble** [1] - 8:21
**true** [1] - 26:12
**trust** [1] - 8:4
**truth** [1] - 8:9
**try** [2] - 11:20, 13:3
**trying** [7] - 3:21, 3:22, 4:3, 9:9, 15:15,

16:20, 19:10
**TWENTY** [1] - 1:23
**Twenty** [2] - 2:6, 5:9
**TWENTY-SECOND** [1] - 1:23
**Twenty-second** [2] - 2:6, 5:9
**twice** [1] - 24:2
**two** [7] - 5:16, 5:18, 6:10, 12:20, 14:15, 14:17, 16:19
**two-year** [1] - 5:18
**type** [1] - 22:1

**U**

**unless** [1] - 20:12
**up** [10] - 6:19, 9:10, 10:19, 12:2, 19:17, 21:12, 22:2, 22:3, 23:6, 23:18

**V**

**vehicle** [1] - 5:1
**verify** [3] - 9:11, 10:24, 22:15
**victim** [17] - 2:20, 4:25, 5:2, 7:2, 8:20, 9:16, 9:17, 10:24, 14:7, 21:18, 22:5, 22:13, 22:15, 22:21, 23:9, 23:17
**Victim** [2] - 8:22, 10:7
**victim's** [1] - 10:17
**victims** [1] - 10:16
**violence** [2] - 4:24, 6:18
**vs** [2] - 1:7, 26:9

**W**

**wait** [1] - 8:16
**waiting** [1] - 15:13
**Walmart** [1] - 16:11
**warehouse** [3] - 16:14, 16:16
**warrant** [7] - 3:1, 9:18, 9:22, 22:14, 22:22, 24:2
**week** [2] - 2:18, 17:6
**weeks** [1] - 16:19
**whatsoever** [1] - 18:22
**Whyte** [2] - 1:2, 2:6
**Williams** [1] - 4:17
**WILLIAMS** [19] - 4:19, 8:24, 9:17, 9:24, 10:1, 10:6, 10:20, 10:23, 11:6, 11:15,

11:22, 12:4, 12:6, 12:9, 22:11, 22:13, 24:15, 25:17, 25:23
**willing** [1] - 21:17
**witness** [1] - 18:8
**woman** [3] - 19:9, 19:17, 22:9
**wreaked** [1] - 23:11
**wreaking** [1] - 6:23

**Y**

**yards** [1] - 24:19
**year** [5] - 5:18, 5:21, 6:1, 6:15, 11:4
**years** [2] - 6:9, 6:11
**yesterday** [16] - 3:19, 9:24, 10:1, 12:18, 14:2, 14:4, 14:5, 14:6, 14:11, 14:24, 15:16, 16:1, 21:10, 22:14, 23:6
**yourself** [1] - 20:16

# EXHIBIT 173

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
     STATE OF MISSOURI
2    Honorable Calea Stovall-Reid, Judge

3    STATE OF MISSOURI,              )
                                     )
4              Plaintiff,            )
                                     )
5        vs.                         )   Cause No. 1922-CR02482-01
                                     )
6    JUSTIN BUGGS,                   )
                                     )
7              Defendant.            )

8              BOND HEARING - INITIAL APPEARANCE

9                    October 21, 2019

10

11
     FOR THE PLAINTIFF:            FOR THE DEFENDANT:
12
     Mr. Jonathan Phipps          Mr. Aaron Banks
13   Ms. Sydney Haberberger       Assistant Public Defender
     Assistant Circuit Attorneys  1114 Market Street, #602
14   1114 Market Street, #401     St. Louis, MO  63101
     St. Louis, MO  63101
15

16

17

18

19

20

21

22

23         KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                  OFFICIAL COURT REPORTER
24           CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT
25

| | |
|---|---|
| 1 | THE COURT:   Are you Mr. Buggs? |
| 2 | THE DEFENDANT:   Yes. |
| 3 | MR. BANKS:   I'm here for Mr. Buggs, Your Honor. |
| 4 | THE COURT:   Let's hear from the State first. |
| 5 | MR. PHIPPS:   Thank you, Your Honor.  Justin Buggs |
| 6 | has been charged with resisting arrest, risking injury or |
| 7 | death, and is currently held on no bond.  We would ask that |
| 8 | the Court take judicial notice of its file in this case, |
| 9 | including the bond commissioner's report. |
| 10 | THE COURT:   All right.  Mr. Kearbey, do you have |
| 11 | anything you want to add? |
| 12 | COMMISSIONER KEARBEY:   Judge, we show priors: |
| 13 | 2008, possession of a controlled substance; 2009, robbery |
| 14 | second; 2016, a receiving stolen property; a 2016 theft, |
| 15 | over; a 2016 tampering first motor vehicle, and he has a |
| 16 | pending case on resisting. |
| 17 | MR. PHIPPS:   Ma'am, the facts of this case are |
| 18 | that a stolen vehicle is reported -- |
| 19 | THE COURT:   Counsel, I'm reading the probable |
| 20 | cause statement, so if you don't have anything to add, you |
| 21 | don't have to keep doing that because I'm looking at it. |
| 22 | MR. PHIPPS:   Yes, Your Honor. |
| 23 | THE COURT:   Do you have anything else you want to |
| 24 | add? |
| 25 | MR. PHIPPS:   No.  We would simply point out, Your |

Dixon v. City of St. Louis, 04307

1   Honor, that his lengthy criminal history that was just
2   pointed out by the bond commissioner included an ongoing
3   series of thefts and robberies and the fact that he has a
4   pending case right now.
5          THE COURT:   All right.
6          MR. PHIPPS:   And the State would recommend a
7   $25,000 cash bond.
8          THE COURT:   Okay.  All right.  Mr. Banks?
9          MR. BANKS:   Thank you.  I would like to ask the
10  State actually -- I appreciate them giving a recommendation
11  at this time for their bond amount.  What is that
12  calculation based on in this particular case?
13         MR. PHIPPS:   In this particular case, looking at
14  Mr. Buggs' criminal history, his ongoing criminal history,
15  especially the fact that he previously served probation and
16  had that revoked, because of his repeated criminal actions,
17  and the fact that he currently has another pending resisting
18  arrest charge when he picked up this one, we believe that a
19  $25,000 cash bond is what's necessary to secure the safety
20  of the community.
21         MR. BANKS:   Okay, and that was the basis?
22         MR. PHIPPS:   Yes, sir.
23         MR. BANKS:   So I would like to point out, Your
24  Honor, here that, to my knowledge, the State hasn't spoken
25  with my client.  They don't know what my client can afford.

1   They don't know what his family can afford.  I can say he
2   was recently picked up on this case, and I do represent him
3   on the previous case.  That is also a resisting charge.
4           This is what I can say about Mr. Buggs.  Mr. Buggs
5   does not have a problem showing up in court.  He showed up
6   to court last week successfully and provided me with an
7   updated phone number in order to contact him.  He is not a
8   flight risk in this particular case, Your Honor.  There
9   should be no clear and convincing evidence that he would be
10  anything to the contrary to be a flight risk.  He is not a
11  threat to the community, Your Honor.
12          Again, these charges are, again, resisting
13  charges.  I don't see anything about tampering or anything
14  else like that.  His family -- his mother, father, brother,
15  sister -- they're all from St. Louis City and St. Louis
16  County.  He does have a support system here.  He has been
17  gainfully employed.  He's working at Campbell's Construction
18  Company, and it's his stepfather's construction company.
19  He's done that for quite some time.
20          He completed high school, Mehlville High School.
21  He was a Harris-Stowe business administration major and
22  entrepreneurship back in 2013, and he was able to complete
23  his freshman year.
24          He's been in the community his entire life, since
25  about 1986, and yes, he does have several convictions, but

1   that should not be the sole basis of why he would be

2   detained at this particular point in time.

3           Again, as I said before, just a week ago he was on

4   bond, he was reporting to Division 16 with no problems

5   without me even having to remind him, so he's well aware of

6   the importance of coming to court and resolving his issues

7   here with the Court.  He has no problem with doing that.  I

8   am much better able to assist him and interact with him when

9   he is out on bond, and I'm able to communicate that way, and

10  he's able to work, go home and be a productive individual.

11          I understand that this is a new charge, but again,

12  he would have no problem appearing just the same as he

13  already has for his court dates, Your Honor.  If anything,

14  if it would really -- if the Court really feels it's

15  necessary, he would be open to GPS monitoring; perhaps the

16  Court would entertain doing that, and then maybe removing

17  him off of GPS monitoring once he's shown that he's

18  successfully able to show up.  Although, he is already

19  showing up for court anyway.

20          THE COURT:   Yeah, but he's picking up new cases

21  while he's on bond.

22          MR. BANKS:   And I understand that.  So again, I

23  don't have the discovery.  I don't have the police report.

24  I don't have any of that information to really dispute the

25  facts, and again, because I just received notice of this, I

1    haven't been able to speak with him on this particular case.

2                 But again, I have a lot of knowledge of Mr. Buggs,

3    and I do -- have had the chance to get to know him, so I'm

4    presenting to you what I do have.  If they have discovery,

5    I'll review that.

6                 THE DEFENDANT:   Excuse me, Your Honor.

7                 THE COURT:   He wants to make a statement.

8                 MR. BANKS:   Now, Mr. Buggs, remember, we're in

9    open court here.  There's a prosecutor.  So if you have a

10   question, just be mindful of that; okay?  I would rather you

11   just wait until --

12                THE DEFENDANT:   I understand that.  I was just in

13   court Friday, Your Honor, when they locked me up, when I got

14   incarcerated.  This is the charge that they picked up --

15   they TUA'd it.  This happened like three, four, five months

16   ago.  They're just now picking it up on me.  I didn't even

17   know I had a warrant and I got locked up in court.  I was in

18   court, reporting.  I'm out on bond.  I went to court, and

19   they locked me up in court.  I was trying to see if I

20   could get a recognizance bond, your Honor.

21                MR. BANKS:   So again, your Honor, threat to the

22   community, flight risk, he is neither of those.  He's

23   interested in resolving his cases.

24                THE DEFENDANT:   I've shown up for every court date

25   I had.

1          MR. BANKS:   He's interested in doing some

2     diversion programs that we're trying to work out right now,

3     Your Honor.  So there is an end in sight, and it would be

4     important if I could actually get him out reporting to the

5     sixth floor and talking with me as he's been doing before

6     and reporting to this Court.  There's no need for him to be

7     detained in this particular situation; although, I do

8     understand he's picked up a new case.

9          THE COURT:   So Buggs, you're saying this was from

10    June of '19, and it was pending before you picked up the

11    case that you're on bond for now?

12         THE DEFENDANT:   Yes, ma'am.  They just picked this

13    up I guess last month or something, whatever.  I went to

14    city court and then I went to county court and they locked

15    me up, said I had a warrant for the city.  I didn't know

16    what this was about.  That's not even the charges they had

17    charged me with, so I don't even know what's going on.

18         THE COURT:   And what's his bond on the other case,

19    the one that he's on bond for now?

20         COMMISSIONER KEARBEY:   I don't have it, Judge.

21    She's going to look it up for us.

22         MR. BARNHART:   It says $500 cash, according to

23    this.

24         MS. HABERBERGER:   $500 cash, Judge, that's

25    correct.

1          THE COURT:   Are you working, Buggs?

2          THE DEFENDANT:   Yes, ma'am.

3          THE COURT:   Where are you working at?

4          THE DEFENDANT:   Campbell's Construction Company

5    for my stepfather.

6          THE COURT:   Doing what?

7          THE DEFENDANT:   -- my landlord tomorrow.  What did

8    you say, Your Honor?

9          THE COURT:   What are you doing?  Are you a laborer

10   or what?

11         THE DEFENDANT:   Yes, ma'am, a laborer for his

12   construction company.  Yes, ma'am.

13         THE COURT:   So the case you're on bond for now is

14   from a March 23rd stop, and the case that you were just

15   arrested on is from June 9, so it did happen after the case

16   you're on bond for now.

17         THE DEFENDANT:   Yes, they just picked it up I

18   guess like a month ago.

19         THE COURT:   Right, but what I'm saying to you,

20   it's based on conduct that occurred after you were already

21   on bond.

22         THE DEFENDANT:   Yes, Your Honor.  They charged me

23   with something else, and when I went to court, that's what

24   they said.  They said I had a warrant for the city, but I

25   didn't know what it was for.

1            THE COURT:   Yes, Mr. Banks?

2            MR. BANKS:   I was just going to clarify.  I don't

3    think he was saying whether or not it happened before.  I

4    think he was saying it happened some time ago and that he

5    was unaware of any pending warrant.

6            THE DEFENDANT:   Yes, Your Honor.  I didn't know

7    that they had issued on it.  I was just going to court,

8    doing the right thing, and I got locked up in court, Your

9    Honor.

10           MR. BANKS:   And he's been consistent with that,

11   Your Honor, as far as showing up.

12           THE DEFENDANT:   I haven't missed one court date.

13   Please, Your Honor, can I get a second chance, a

14   recognizance bond?

15           MR. BANKS:   Just wait a minute, Mr. Buggs.  She's

16   here.  She hears you.

17           THE DEFENDANT:   Okay.

18           THE COURT:   All right.  The Court will modify the

19   bond to $25,000, 10 percent with GPS, so that means you need

20   $2,500, and you're going to have to pay for the GPS

21   monitoring.

22           THE DEFENDANT:   Okay.  What if I can't pay it,

23   Your Honor?

24           THE COURT:   If you can't pay it, then you're not

25   going anywhere because the condition of your bond is that

1   you be on GPS monitoring -- on the GPS.

2            MR. BANKS:   And Mr. Buggs, I'll be in to meet with

3   you this week; okay?

4            THE DEFENDANT:   Okay.

5            MR. BANKS:   If for some reason you can't post

6   that; all right?

7            THE DEFENDANT:   Okay.

8            THE COURT:   Who's filling out the paperwork?

9            MR. BARNHART:   I'm helping him.

10           THE COURT:   Okay.  So it's $25,000, 10 percent,

11  plus GPS, report to EMASS.  Yes, sir, who is this?

12           SHERIFF:   Judge, up next is line 3 on page 2 of

13  the state's afternoon docket, a Charles Gates.

14           MR. BANKS:   Your Honor, is that secured or not

15  secured?

16           THE COURT:   Oh, the 10 percent, 10 percent cash.

17           MR. BARNHART:   Judge, do you want him reporting to

18  EMASS to install the GPS?

19           THE COURT:   He's got to do it through EMASS, so

20  yes, so he'll have to pay that $30-a-month fee plus the

21  13 --

22           MR. BANKS:   300.

23           THE COURT:   Well, the 300 is the initial

24  installation.  Then I think it's $13 a day or something like

25  that, plus $30 reporting fee.  I believe that's it.

1    **<u>CERTIFICATE</u>**

2          I, Kristine A. Toennies, Registered Merit

3    Reporter, Certified Realtime Reporter, and Certified Court

4    Reporter, do hereby certify that I am an official court

5    reporter for the Circuit Court of the City of St. Louis;

6    that on October 21, 2019, I was present and reported all the

7    proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8    vs. JUSTIN BUGGS, Defendant, Cause No. 1922-CR02482-01.

9          I further certify that the foregoing pages contain

10   a true and accurate transcription of the proceedings.

11

12

13        /s/ Kristine A. Toennies
          _____
14        Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 174

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**
**Honorable David L. Dowd, Judge**

```
STATE OF MISSOURI,           )
                             )
           Plaintiff,        )    Cause No. 1922-CR02197
                             )
      vs.                    )
                             )    Division 16B
███████████,                 )
                             )
           Defendant.        )
```

**FIRST APPEARANCE HEARING**
**TRANSCRIPT**

APPEARANCES

For the Plaintiff:            For the Defendant:

Mr. Nicholas Lake            Mr. Eric Selig
Asst. Circuit Attorney       Attorney at Law
1114 Market St., Room 602    120 S. Central Ave., Ste. 130
St. Louis, MO 63101          St. Louis, MO 63105

SHANA L. CRANE, CCR
Official Court Reporter
St. Louis, Missouri

```
 1                THE COURT:      Mr. ███████████?

 2                DEFENDANT:      Yes, sir.

 3                THE COURT:      I'm Judge Dowd. This

 4      case is on our docket to review your bond,

 5      currently set at 2,500 cash only. That was set

 6      yesterday. This is a charge of domestic assault

 7      third. Did you know what your bond currently is?

 8                DEFENDANT:       No, I just found out,

 9      sir.

10                THE COURT:       Okay.  Are you working?

11                DEFENDANT:       No, sir.

12                THE COURT:       What's the last job

13      that you held?

14                DEFENDANT:       I worked at ████████

15      ██████████.

16                THE COURT:       What was your last day

17      that you were working?

18                DEFENDANT:       2010.

19                THE COURT:       All right.  The

20      prosecutor is here, and he is going to present

21      some information to the Court about your case,

22      and there's also an attorney here, Mr. Eric

23      Selig, and he's going to represent you for this

24      hearing only while we review the conditions of

25      your release, if any. All right?
```

2

```
1              DEFENDANT:      Yes, sir.

2              THE COURT:      Okay, Mr. Lake?

3              MR. LAKE:       Thank you, Your Honor.

4    Just one second. Your Honor, I would ask that the

5    Court take judicial notice of the court file and

6    the Bond Commissioner Report.

7              THE COURT:      Granted.

8              MR. LAKE:       Thank you.  Your Honor,

9    the state believes that the bond currently set at

10   $2500 cash only is appropriate in this matter.

11   This is a case where the defendant and the victim

12   had been dating for about a year and were living

13   together. Evidently, the defendant and the victim

14   were in a car driving when the victim informed

15   the defendant that she no longer wanted to

16   continue their relationship. The defendant

17   subsequently struck the victim in the side of the

18   head and forced her out of the vehicle. The

19   victim had to contact her adult children to come

20   pick her up. I have a victim impact statement I

21   would like to share with the Court.

22        [The prosecutor handed the document to the

23   Court and the Court reviewed it at this time.]

24             THE COURT:      All right.

25             MR. LAKE:       Your Honor, may I just
```

1    briefly add, having reviewed the defendant's

2    criminal history, I don't show any prior felony

3    convictions, however, I will point out that I am

4    showing a finding of guilt in 1993 for a weapons

5    offense out of the State of Illinois. It looks

6    like it was a one-year probation for that, it's a

7    misdemeanor. And from 2012, I'm showing a driving

8    while revoked. And finally, I'll just add that in

9    this matter, the defendant actually struck -- is

10   said to have struck the victim on the side of her

11   head with a handgun. I don't know if I stated

12   that earlier, but having reviewed the statement,

13   I wanted to make that clear to the Court as well.

14          THE COURT:     Thank you. Mr. Selig?

15          MR. SELIG:     Sure.  Mr. ████, I

16   just want to remind you, you're on screen and

17   stop -- stop, sir.  I just want to remind you

18   that you're not to talk out of turn, okay? You

19   should remain silent. Got it?

20          [No response.]

21          Thank you, Judge.  Mr. ████ has no priors,

22   although, the charge is a felony, but it's the

23   lowest level felony that there is. I don't have

24   information if Mr. ████ is employed or not.

25          Sir, are you employed? Do you work, Mr.

                                                           4

```
 1                   ███████?

 2                   DEFENDANT:      No, sir.

 3                   MR. SELIG:      No?

 4                   DEFENDANT:      No, sir.

 5                   MR. SELIG:      How long have you lived

 6   in the St. Louis metropolitan area?

 7                   DEFENDANT:      Almost eight years.

 8                   MR. SELIG:      Almost eight years,

 9   okay.  So, Your Honor, what we are asking for is

10   that he be placed on a personal recognizance with

11   GPS monitoring and with orders that he remain

12   away from the woman who has made the allegations

13   against him.

14                   THE COURT:      All right.  Have you

15   seen this?

16                   MR. SELIG:      I did look at it. I

17   read it, though briefly.

18                   THE COURT:      I have some concerns

19   about the allegations that he has threatened to

20   kill himself.

21                   MR. SELIG:      Well, Your Honor, then

22   I would ask that perhaps Mr. ███████ have some

23   kind of mental health review and that he

24   participate in counseling while his case is

25   pending, if that's deemed necessary by mental
```

5

1      health experts. You know, we do have -- Places

2      for People does do intakes. One of the things

3      that they concentrate on are substance abuse and

4      mental health intake, and I know they do intakes

5      Monday through Friday 8:30 to 11:30. That might

6      be an organization that could help him if there

7      is concerns about Mr. ███████ hurting himself.

8             THE COURT:     Mr. ██████, I don't

9      want you to talk about this case, but let me ask

10     you generally, do you believe you're a threat to

11     harm yourself or anyone else?

12            DEFENDANT:     I was about to go to

13     ████████████████ psych ward before this

14     happened.

15            THE COURT:     All right. I appreciate

16     that honesty. That's my concern. Of course, I'm

17     concerned about the alleged victim as well, but

18     we have concern about your mental health also.

19     So, Mr. Selig, I would like to have that

20     evaluation done prior to Mr. ██████'s release, if

21     that's -- I don't want to necessarily order a

22     psych evaluation because it takes so long but, do

23     you have any other ideas? I think I'm going to

24     maintain the bond and give us a chance to tend

25     to, as Mr. ██████ acknowledges, some mental

6

1   health issues.

2            MR. SELIG:      Judge, I don't think

3   Places for People would come and visit in the

4   Department of -- in the Justice Center.

5        [Mr. Selig confers with a Places for People

6        representative off the record.]

7            THE COURT:      I think what we are

8   going to do, Mr. ████, we are going to keep you

9   where you are and we are going to try to get you

10  on the docket for this Friday to be assessed by

11  the -- if you keep shaking your head, it's only

12  going to get worse for you, Mr. ████, so I

13  don't appreciate the reaction.  If you read the

14  impact statement that I read, it might be a no

15  bond. So, if you want to continue to have a

16  reaction to this proceeding, go ahead. Do you

17  understand me?

18           DEFENDANT:      Yes, sir.

19           THE COURT:      So, we are going to set

20  you for this Friday, if that's doable, for

21  assessment on the treatment court mental health

22  docket, I think with Judge Sullivan, and have a

23  more informed review of your current mental

24  health state and the facts surrounding this case.

25  So that will be the Court's ruling.

```
1              MR. SELIG:      Judge, just to be

2    clear, his bond remains the same, but he is

3    ordered to be assessed on the treatment mental

4    health -- I'm just writing it out here so I want

5    to make sure to get it correct.

6              THE COURT:      Yes.  That will be this

7    Friday at 9:30.  All right, thank you.

8              [End of Proceeding.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              **REPORTER'S CERTIFICATE**

2                    I, Shana L. Crane, Certified Court

3      Reporter, do hereby certify that I was the

4      official court reporter for Division 16B of the

5      City of St. Louis Circuit Court, St. Louis,

6      Missouri, and that I was present and reported all

7      of the proceedings in State of Missouri,

8      Plaintiff, vs. ██████████, Defendant, case

9      number 1922-CR02197.  I further certify that the

10     foregoing pages contain a true and accurate

11     transcription of the proceedings.

12

13

14

15

16     _____

17     /s/Shana L. Crane, CCR

18     Official Court Reporter

19

20

21     Transcript completed on:  July 21, 2020

22

23

24

25

9

# EXHIBIT 175

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT


| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR03411 |
| | ) | |
| KEVIN LAMARR GILLUM, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**FIRST APPEARANCE HEARING**
_____

On Monday, October 28, 2019, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Jonathan Phipps, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Eric Barnhart, Attorney at Law.


JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis05265

1          **THE COURT:**  We're here on the record,

2    1922-CR03411; State vs. Kevin Lamarr Gillum, charged

3    with stalking first degree.  The pretrial release

4    shows several current or prior matters.

5          **BOND COMMISSIONER:**  Both, Judge.  Mr. Gillum

6    has possession of a controlled substance, unlawful use

7    of a weapon.  In 1993, he got one year on that.

8    Domestic assault third, '05.  Two years confinement on

9    that.  Resisting arrest, 2014.  Two years confinement

10   on that.  Assault fourth in violation of an order of

11   protection -- violating Adult Abuse Act, 2017.  Two

12   years on that.  That was completed and that was on

13   probation and then was completed 7/19 of this year.

14          He's presently on parole for a stalking

15   first, two counts.  That conviction was in 2018.

16   Three years in the department of corrections on that.

17   And he had a larceny in '91.  180 days jail time and

18   that was in Utah.

19          **THE COURT:**  All right.  The State.

20          **MR. PHIPPS:**  Judge, the State would request

21   that the Court take judicial notice of its file and

22   the bond commissioner's report.

23          **THE COURT:**  I have done so and read both.

24          **MR. PHIPPS:**  All right.  Judge, as indicated

25   in the probable cause statement on this case, this is

3

1   a relationship with multiple events occurring against

2   this victim at the hands of this defendant.

3           As was just read by the bond commissioner,

4   there are multiple violations of order of protection

5   and stalking charges.  Additionally, the victim has

6   made a statement.  Would the Court like me to read

7   that into the record?

8           **THE COURT:**  You may.

9           **MR. PHIPPS:**  Your Honor --

10          **THE COURT:**  How long is it?

11          **MR. PHIPPS:**  Two paragraphs.

12          **THE COURT:**  Let me see it.

13          Mr. Barnhart, have you seen this?

14          **MR. BARNHART:**  No.

15          **THE COURT:**  Just for the record, I've read

16   the victim's statement.

17          Mr. Barnhart, is Mr. Gillum entering a plea

18   of not guilty and waiving formal reading?

19          **MR. BARNHART:**  Yes, Your Honor.

20          **MR. PHIPPS:**  Judge, our concern for the

21   victim in this case is obviously this defendant can't

22   seem to stay away from this victim.  The State would

23   be requesting that the bond be amended 45,000 cash

24   only with the added conditions of GPS, stay away from

25   the victim and her residence, and Emass.

Dixon v. City of St. Louis05267

| 1 | **THE COURT:**  It is currently set at no bond. |
|---|---|
| 2 | **MR. PHIPPS:**  That is correct, Judge. |
| 3 | **THE COURT:**  The State is suggesting 45,000 |

4  cash only?

| 5 | **MR. PHIPPS:**  Yes, Judge. |
|---|---|
| 6 | **THE COURT:**  Mr. Barnhart. |
| 7 | **MR. PHIPPS:**  Thank you, Judge. |
| 8 | Mr. Gillum, I'm Eric Barnhart.  I'm your |

9  attorney for today only.  I'm going to ask you a few

10  questions in hopes to try to get your bond reduced,

11  okay?

| 12 | **THE DEFENDANT:**  Okay. |
|---|---|
| 13 | **MR. BARNHART:**  Are you working? |
| 14 | **THE DEFENDANT:**  (Nodding). |
| 15 | **THE COURT:**  Did you say you are? |
| 16 | **THE DEFENDANT:**  Yes. |
| 17 | **MR. BARNHART:**  Where are you working at? |
| 18 | **THE DEFENDANT:**  A.W.Neal Electric. |
| 19 | **MR. BARNHART:**  Is that a 40-hour week job? |
| 20 | **THE DEFENDANT:**  Yes. |
| 21 | **MR. BARNHART:**  And what do you do there? |
| 22 | **THE DEFENDANT:**  Laborer. |
| 23 | **MR. BARNHART:**  And how much do you make an |

24  hour?

| 25 | **THE DEFENDANT:**  $12. |
|---|---|

Dixon v. City of St. Louis05268

5

1          **MR. BARNHART:**  And where would you live if

2   you got released?

3          **THE DEFENDANT:**  I'm in a transitional center

4   at 1621 North 1st Street, a halfway house.

5          **MR. BARNHART:**  Okay.  Is that part of your

6   parole?

7          **THE DEFENDANT:**  Yes.

8          **MR. BARNHART:**  Is that also called The

9   Honors Center?

10          **THE DEFENDANT:**  Yes.

11          **MR. BARNHART:**  Is there anybody in your

12   family that can afford to post 10 percent bond?

13          **THE DEFENDANT:**  No.  No.

14          **MR. BARNHART:**  Okay.  All right.  Thank you.

15          Judge, I'm going to ask for a 5,000, 10

16   percent.  Hopefully, The Bail Project can post it.

17   Report to Emass.  GPS.  Stay away from the alleged

18   victim and basically keep, I guess, following the

19   terms of his parole living at the Transition Center.

20   Thank you.

21          **THE COURT:**  Anything further?

22          **MR. PHIPPS:**  No, Judge.

23          **THE COURT:**  I'm misunderstanding something

24   with regard to Mr. Gillum.  It says in Count I that it

25   is in violation of a condition of an order of

1   protection.

2          **MR. PHIPPS:**  Yes, Judge.

3          **THE COURT:**  Do you know why that's not a

4   charge?

5          **MR. PHIPPS:**  I do not off the top of my

6   head, but we are currently looking up the -- I do not

7   see any notes as to why that decision was made, Judge.

8          **THE COURT:**  I'm not able to refresh my

9   screen on the bond commissioner's page, but I believe

10  the original recommendation was 20,000.  I thought I

11  saw that.

12         **BOND COMMISSIONER:**  Yes, Judge.  20,000 cash

13  only.

14         **THE COURT:**  Based on the charge being -- at

15  this point being a D felony, I will reduce the bond to

16  the 20,000-dollar cash only level.  And based upon the

17  responses to Mr. Barnhart, I will assume that we need

18  to set this for November 4th at 10:30 to have a more

19  formal review of the matter with the possibility of

20  family or a living situation that can be verified

21  along with his employment.

22              It will be set for November 4th at

23  10:30 a.m. to review that.  In the meantime, your bond

24  is reduced to 20,000 cash only.  All right,

25  Mr. Gillum?

1          **THE DEFENDANT:**  Okay.

2          **MR. PHIPPS:**  Judge, while it's unlikely

3     based off the answers, can we add the stay-away

4     conditions?

5          **THE COURT:**  Yes.  I would consider that to

6     always be a factor with a victim, let alone some sort

7     of matter like stalking or order of protection and

8     such.

9          Thank you, Mr. Gillum.  That will end the

10    record.

11          (End of proceeding.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8

```
 1                     CERTIFICATE
 2              I, Jenna L. Higgins, Certified Court
 3   Reporter, do hereby certify that I am an official
 4   court reporter for the Circuit Court of the City of
 5   St. Louis; that on October 28, 2019, I was present and
 6   reported all the proceedings had in the case of State
 7   of Missouri vs. Kevin Lamarr Gillum,
 8   Cause No. 1922-CR03411.
 9              I further certify that the foregoing
10   pages contain a true and accurate reproduction of the
11   proceedings.
12
13
14              _Jenna L. Higgins_
15              Jenna L. Higgins, CCR 998
                     CSR (IL and MO)
16
17
18
19
20
21
22
23   TRANSCRIBED:  July 30, 2020
24
25
```

# EXHIBIT 176

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR03443 |
| | ) | |
| KEVIN A. PATRICK, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**FIRST APPEARANCE HEARING**
_____

On Monday, October 30, 2019, the above-entitled
cause came on regularly for hearing before the
Honorable Clinton R. Wright, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of
St. Louis.

**APPEARANCES**

The State of Missouri was represented by Derek
Spencer, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

The Defendant was represented by Joel J.
Schwartz, Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

 1              **THE COURT:**  Good afternoon, Mr. Patrick.

 2     Mr. Patrick, you have friends in the courtroom and

 3     also your attorney Mr. Schwartz.

 4              **THE DEFENDANT:**  Yes, sir.

 5              **THE COURT:**  I'm going to review some

 6     documents real quick and we'll be right with you.

 7              **THE DEFENDANT:**  Yes, Your Honor.

 8              **THE COURT:**  Mr. Payne.

 9              **MR. SPENCER:**  Judge, actually I'm going to

10     appear on behalf of the State for this case.  Derrick

11     Spencer, assistant circuit attorney.

12              **THE COURT:**  What is your name again?

13              **MR. SPENCER:**  Derek Spencer.

14              **THE COURT:**  All right.  Mr. Spencer.

15              **MR. SPENCER:**  Judge, I have a member of the

16     victim's family here today, and I think she would like

17     to briefly address the Court regarding bond.  Would

18     you like to hear from her now?

19              **THE COURT:**  Yes.

20              **MR. SPENCER:**  Judge, where would you like

21     her to stand at?

22              **THE COURT:**  Right there is fine.  She won't

23     be on a camera, so it's close for the court reporter

24     to hear.

25              **THE VICTIM:**  Hi, Your Honor.

1            **THE COURT:**  Good afternoon.

2            **THE VICTIM:**  I'm his youngest daughter.  I

3    just want to say this man has recklessly took my

4    father; a husband, a grandfather, a brother away from

5    his family.  My father was a good man.  He was never a

6    threatening person.  He hated guns.  He hated drugs.

7    He always encouraged and wanted to be with family.  He

8    was a hardworking man.  He helped anyone he could.

9            This man, Kevin, decided to be a reckless

10   drunk carelessly using a weapon on an innocent man

11   that had good intentions trying to help others.  I'm

12   opposed to any reduction.  He is a careless and

13   reckless individual who has no regard for the safety

14   of others.

15           **THE COURT:**  All right.  Thank you, ma'am.

16           **MR. SPENCER:**  Judge, I'm going to ask that

17   you take into consideration today as part of the

18   determination whether or not Mr. Patrick is a danger

19   to the community, the fact that in 2014 Mr. Patrick

20   was arrested by the St. Louis County Police Department

21   involving an incident which happened in a house that

22   Mr. Patrick was rehabbing.

23           In that case, the victim was found inside

24   the house beaten, bloodied and told police that

25   Mr. Patrick is the one that had done this to him.

Dixon v. City of St. Louis05317

1   Mr. Patrick was the owner of that house.  Neighbors

2   across the street told police that they saw

3   Mr. Patrick carrying cleaning supplies in and out of

4   this house prior to the police arriving there.

5           There were never charges filed in this case

6   and he was not convicted of it, but I would like to

7   enter in as State's Exhibit 1 a copy of that police

8   report that outline the facts that the police gathered

9   as part of that.  And I will give you that, a copy.  I

10  have provided Mr. Schwartz a copy of that in advance

11  of today's hearing.

12          **THE COURT:**  All right.

13          **MR. SPENCER:**  And, Judge, also Mr. Patrick

14  was found guilty of possessing a firearm here in this

15  circuit in 2008, I believe.  I'm sorry in 2000 --

16  July 28th, 2009, is when that finding of guilt was.

17  Judge, he's got a history of having firearms on him

18  while he's intoxicated.  We believe that's what

19  happened in this case to some extent.

20          The State, Judge, is going to request that

21  bond be set at a 100,000 cash only.  No 10 percent.

22  And if there were to be -- if the defendant were to

23  post that 100,000 cash bond, that he be put on SCRAM

24  and that he not be allowed to possess firearms.

25          The State feels that that is the least

5

1    restrictive amount of bond to ensure the safety of the

2    community as far as some of the past that Mr. Patrick

3    has with individuals getting hurt while they are at

4    some of these houses that he works on and the fact

5    that he's had a history of possessing these guns.  And

6    guns and alcohol do not mix well with Mr. Patrick,

7    Judge.  That's all I have to say.

8            **THE COURT:**  Just to clarify --

9            **MR. SPENCER:**  Sure.

10           **THE COURT:**  -- that the event that you've

11   handed me in this police report from the past, are you

12   suggesting that this is a similar occurrence as to

13   what we have here today?

14           **MR. SPENCER:**  Judge, I would just say that

15   there is two individuals now potentially with this

16   first one, a second one.  I know nothing has been

17   proven in a court of law, but there are two

18   individuals who have made similar claims that they

19   have been injured to some extent by Mr. Patrick.

20           Now, I know this one appears to be an

21   individual that Mr. Patrick knew and he had let stay

22   in the house and for whatever reason he ends

23   up -- you'll see he's this individual if you read the

24   police report who was very severely beaten and left

25   there.  There was -- left there long enough there was

1    dried blood all around him.  He had been bleeding

2    profusely.

3         It's very, very possible this individual

4    could have ended up deceased just as Mr. Johnson ended

5    up deceased in the defendant's house that he was

6    rehabbing.  There is kind of a similar fact pattern to

7    these cases while they are a little different, but

8    Judge, I do believe that --

9         **THE COURT:**  What was the result of this

10    matter?

11         **MR. SPENCER:**  This matter was -- charges

12    were never filed in this matter, Judge.  The only note

13    I have in this police report is, I believe it says at

14    the end, that Matt Durbin was the prosecutor on that

15    case and that he refused the case based upon lack of

16    evidence concerning the serious physical injury of the

17    victim they had received from this incident.  That's

18    the only note on there from the -- it is on the very

19    last page.

20         But I still do -- I still would ask you to

21    consider the hearsay that is in this police report

22    here and also consider the facts of this case, Judge,

23    and the fact that he does have a conviction for

24    unlawful use of a weapon.  Thank you.

25         **THE COURT:**  All right.  Mr. Schwartz.

Dixon v. City of St. Louis05320

1          **MR. SCHWARTZ:**  Judge, let me first note that

2    Mr. Patrick's mother, brother and uncles are both here

3    in the courtroom.

4          **THE COURT:**  Thank you all for being present.

5          **MR. SCHWARTZ:**  He does have family support.

6    Let me --

7          **THE COURT:**  Thank you all for being present.

8          **MR. SCHWARTZ:**  Let me address this.

9    Regarding this report from 2014, if you want to look

10   at the hearsay the first thing that this alleged

11   homeless person says, is that he initially stated a

12   group of men unknown race, physical or clothing

13   description entered the residence at an unknown time

14   throughout the night and attacked him using their

15   hands, feet and fists.

16          He then retracts that and changes the story

17   later.  And according to Mr. Patrick, he went to a

18   home that he owned and was rehabbing and this -- and

19   there was a homeless individual, the alleged victim,

20   in that home.  I don't know what the relevance is

21   here, but for the fact that the law has changed

22   somewhat in the fact that there is now this castle

23   doctrine in the State of Missouri.

24          The home that Mr. Patrick was rehabbing was

25   his home.  I don't think the State would argue that.

1    They agree it was at 1005 Bates, which is not the

2    greatest area.  He owned the house.  He was in the

3    house and he did have a firearm for protection.  I

4    don't think it's abandoned at all that the victim in

5    this case walked into the house.  There is maybe some

6    discrepancy as to what his reasons were for going into

7    the house and whether or not there was a threat, but

8    the law is such that if someone walks into your home

9    you are allowed to under these necessary

10   circumstances.

11           Mr. Patrick has worked consistently for the

12   last decade.  By the way, the case we're talking about

13   was an SIS on a plea; one year SIS from 2009.  I

14   brought a copy of his tax returns in addition to his

15   recent pay stub.  He works two jobs.  He works

16   approximately 60 hours a week as an RN at BJC as well

17   as the St. Louis Psychiatric Center.  He makes a nice

18   living if the Court wishes to see any of this

19   information.  I can give you the last one and I can

20   give you the other pay stub as well.  Here is the last

21   tax return.  We don't have 18s yet, but I have them

22   for all the previous years.  Here is the pay stub.  I

23   only have BJC from this year.  I don't have the

24   psychiatric center.  And here is a copy of the

25   warrantee deed.

1           Judge, there's obviously details and minutia

2     that will go into this in front of a different judge

3     or a jury significantly down the road from here.

4     Given his lack of history and given that it was, in

5     fact, his home and I believe there is a significant

6     legal issue that will come into play, I would ask the

7     Court to consider a bond of 50,000 with 10 percent

8     authorized with the condition of SCRAM which would

9     address any alcohol issues.  And I would also remind

10    the Court that as charged it is a C felony at this

11    point.

12          **THE COURT:**  I do see that.

13          Mr. Spencer, anything further?

14          **MR. SPENCER:**  Judge, I would note that while

15    potentially the victim entered the house, that does

16    not give you unfeathered right to use force.  There is

17    absolutely no evidence at this time that there was any

18    threat of any type of physical force from the victim.

19          As you heard from the victim's daughter, he

20    is a good man.  I'll be honest with you.  He doesn't

21    have a type of a criminal history that indicates he is

22    a violent person, so we are planning to refute that

23    claim of the fact that he was in there trying to use

24    some type of physical force and it does believe that

25    someone lost their life.  That's a very serious matter

1    and just -- it may be a C felony, but somebody lost

2    their life.

3            And additionally, Judge, there is evidence

4    that the defendant pulled the victim back out of the

5    doorway into the house after the shooting and shut the

6    door.  And I think based upon that and the facts of

7    this case, the State does believe it is a very, very

8    serious matter.  It's a very serious type of killing

9    that, Judge, we think there's some potential that this

10   individual is dangerous to other people, to people

11   that could just come onto a site and he shoots first

12   and asks questions later.

13           And due to that type of behavior, we're

14   asking bond be set at 100,000.

15           **THE COURT:**  All right.  Very well.  Anything

16   else?

17           **MR. SPENCER:**  No, Your Honor.

18           **THE COURT:**  All right.  I don't disagree

19   with either position.  I have to be bound by what

20   there is in front of me.  And, obviously, the loss of

21   a life is tragic.  It can't be undone.  That doesn't

22   automatically mean in every situation whether it be an

23   accident or the most vicious of a terrible situation,

24   the person is going to be therefore locked up forever.

25   I do have to look at the fact that the charge here is

1    a C felony.

2           Whether or not -- and I didn't characterize

3    your position, Mr. Schwartz, as trying the case today

4    and that there's an argument there is innocence.  That

5    comes at a later date.  The level of guilt or the

6    level of innocence comes at a later date.

7           I will say, though, that from the probable

8    cause statement and from the family's statement, I

9    also share the concern that it appears from the

10   allegations that alcohol played a role in it and that

11   is something that can't be controlled and would cause

12   you to have continued fear, although Mr. Schwartz, you

13   have offered he be on a SCRAM bracelet.  If you're

14   familiar with that, you can't have any alcohol

15   whatsoever without it lighting up the bracelet and

16   therefore you would be taken off your bond is my

17   understanding.

18           **MR. SCHWARTZ:**  Yes.

19           **THE COURT:**  I would authorize a bond setting

20   of $70,000, 10 percent authorized, a SCRAM bracelet.

21   Does the SCRAM bracelet serve also the additional

22   benefit of GPS monitoring?

23           **MR. SCHWARTZ:**  No.

24           **THE COURT:**  Can you do both?

25           **MR. SCHWARTZ:**  We can't.  We'd just ask the

```
 1    Court to authorize now the maximum hours because he
 2    works two jobs and there is a time limit.  You're not
 3    asking for house arrest?
 4          THE COURT:  I'm not.
 5          MR. SCHWARTZ:  I don't know if you can do
 6    both, two bracelets.
 7          UNIDENTIFIED SPEAKER:  Emass charges you for
 8    both.
 9          MR. SCHWARTZ:  I don't think there is any
10    issues with that.  He works 60 hours a week.
11          THE COURT:  It is burdensome; however, not
12    as burdensome on the family who has lost their loved
13    one, so I think that would be an appropriate
14    requirement on his part in order to have the possible
15    opportunity of proceeding with this criminal matter on
16    bond.
17          MR. SPENCER:  Judge, would we be able to
18    also order he not possess any firearms or is that
19    already a standard?
20          MR. SCHWARTZ:  That is fine.
21          THE COURT:  That will be.  And in addition
22    to that with regard to the concern that alcohol was
23    involved, it does get somewhat mirky if someone
24    wrongly or rightly, I'm not passing judgment, defended
25    themself or whether it is the castle doctrine or
```

1    anything else, whether that can or can't be done.  And

2    sometimes under influence.

3          I mean, there's a lot of questions down the

4    road that will be answered on that and possibly all

5    two as you've said, Mr. Spencer, but I feel as though

6    these conditions would give us some comfort in knowing

7    where he is and knowing that there is no alcohol

8    intake.

9          **MR. SCHWARTZ:**  Judge, we would waive formal

10   reading of the indictment or the -- I'm sorry.  The

11   charges at this point and enter a plea of not guilty

12   and just request a court date.

13         **THE COURT:**  Court date is going to be in

14   Division 25 December 2nd at 9:15 a.m.

15         Mr. Patrick, did you understand all that?

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  All right.  You have some

18   conditions on your bond.  If those conditions are

19   violated, your bond would be revoked and you would be

20   locked up.  Do you understand that?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Anything else for the record?

23         **MR. SCHWARTZ:**  No, Your Honor.

24         **MR. SPENCER:**  No, Your Honor.

25         **THE COURT:**  That concludes the record.  Good

1    luck to you all.

2              (End of proceeding.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15

```
 1                        CERTIFICATE

 2              I, Jenna L. Higgins, Certified Court

 3    Reporter, do hereby certify that I am an official

 4    court reporter for the Circuit Court of the City of

 5    St. Louis; that on October 30, 2019, I was present and

 6    reported all the proceedings had in the case of State

 7    of Missouri vs. Kevin A. Patrick,

 8    Cause No. 1922-CR03443.

 9              I further certify that the foregoing

10    pages contain a true and accurate reproduction of the

11    proceedings.

12

13

14                   Jenna L. Higgins

15                   Jenna L. Higgins, CCR 998
                          CSR (IL and MO)
16

17

18

19

20

21

22

23    TRANSCRIBED:  July 30, 2020

24

25
```

Dixon v. City of St. Louis05329

# EXHIBIT 177

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT, DIVISION 16B
Honorable MICHAEL J. COLONA, Judge


STATE OF MISSOURI,          )
                            )
              Plaintiff,)
                            ) Cause No. 1922-CR03819
vs.                         )
                            )
                            )
AKA: ▮▮▮▮▮▮▮                )
AKA: ▮▮▮▮▮▮▮                )
                            )
              Defendant.)


TRANSCRIPT OF PROCEEDINGS/INITIAL APPEARANCE

        The following proceedings were had in Division 16B

of the 22nd Judicial Circuit, City of St. Louis Circuit

Court, State of Missouri, on the 11th day of December, 2019.


        Mr. Payne, Assistant Circuit Attorney, appeared

for the State of Missouri.


        The defendant, ▮▮▮▮▮▮▮; AKA: ▮▮▮▮

▮▮▮▮ AKA: ▮▮▮▮▮▮▮, appeared in person via video

and with Mr. Wold, Attorney At Law.


Rita T. DeFilio, RMR
C.C.R. #0192
22nd Judicial Circuit
City of St. Louis, Missouri

2

```
1           THE COURT:  So, you're ███████████████?  Are you

2    Ms. █████████████.

3           THE DEFENDANT:  No.

4           THE COURT:  You're not ████████████?

5           THE DEFENDANT:  No.

6           MR. WOLD:  There is some confusion regarding her

7    actual name.  I think they booked her under an alias.

8           THE COURT:  So, what is your name?

9           MR. WOLD:  ████████████

10          THE COURT:  How do you spell that?

11          THE DEFENDANT:  █████████████████████

12          THE COURT:  And then how do you spell ███████?

13          THE DEFENDANT:  ███████████████

14          MR. PAYNE:  I do have that name on the State's

15   docket.

16          THE COURT:  All right.  Give me just a moment to

17   call that electronic case up.  Mr. Circuit Attorney, do we

18   have an information that perhaps has an AKA or something on

19   there?

20          MR. PAYNE:  I can check.

21          THE COURT:  ████████, what's your date of birth?

22          THE DEFENDANT:  My date of birth is 10/27/1985.

23          BOND COMMISSIONER:  All they have in the system is

24   ██████████████  I ran the FBI records.  She has both names,

25   no priors.
```

3

 1         THE COURT:  All right.  Well, Mr. Circuit

 2   Attorney, what are we doing here?

 3         MR. PAYNE:  Judge, we -- I believe we reached an

 4   agreement that we can do a personal recognizance on this

 5   bond, but that she report to eMass once monthly and stay

 6   away from the Grand Center Arts Academy.  She does not have

 7   a criminal history that we were able to locate.  Initially,

 8   it appears that officers were called out for a trespassing.

 9   It was during the removal of her from the Grand Center Arts

10   Academy premises that these charges occurred.

11         THE COURT:  Mr. Payne, I don't want to play any

12   games with ███████████████████.  So, I don't want to

13   accidentally give somebody a recognizance bond when they

14   don't deserve a recognizance bond because you're playing

15   games with names.

16         MR. PAYNE:  We've conducted searches, we still

17   find no prior convictions.

18         THE COURT:  So, Ms. Pearson, the purpose of

19   today's hearing --

20         THE DEFENDANT:  Yes.

21         THE COURT:  -- is, one, I'm going to tell you what

22   you're charged with.  You're charged with three Class A

23   misdemeanors:  Resisting Arrest, Assault, and Assault.  Each

24   one of those counts carry with it up to a year in the county

25   jail, which is MSI, and a fine of up to $2,000.  We're going

to enter in a plea of not guilty for you.  We're also going

to talk about your bond today.  Your bond is currently set

at a thousand dollars cash only; no entry in the Grand

Center Arts Academy.

          In the courtroom today is attorney for the State

of Missouri.  There's also an attorney that's been appointed

to represent you for this bond matter only.  The two

attorneys in the room have handed me a document that says

that they have agreed for you to be let out on a personal

recognizance bond, which is your promise to come back to

court.

          I got to be honest.  I don't know if I want to do

it, I mean, because my answer is why?  If we can't get our

names straight and we try to play games with catching cases

and with getting booked, I'm afraid for public safety

because if I let you out of jail today and you go right on

to Grand Center or someplace else and commit a crime, and

the next thing you know you're telling me, Judge Colona, and

then Judge Colona is booked [sic].  I'm at a loss.  So

here's what we're going to do.  Here's what we're going to

do.

          I'm going to -- I'm going to deny putting you out

on recognizance bond.  Say something.  Go ahead and say

something and I'll jack your bond up even more, okay?  It's

my suggestion not to speak.  I'm going to leave your bond

5

1   where it is, all right?  So you want to find somebody to

2   post a bond for you, great.

3           Now, I also understand that sometimes I might go

4   off the chain for no reason, so I'm going to give you

5   another hearing date on December the 18th at 10:30 in

6   Division 16B where another judge is going to look at your

7   case.  Maybe we'll know who you really are by that time.

8   Maybe we'll have some additional information about aliases

9   and criminal history, but at the end of the day I ain't

10  taking a chance to put the public at risk to put you back

11  out on the street.

12          Another judge is going to look at this on December

13  the 18th at 10:30 in Division 16B.  In addition, in order to

14  get your case moving forward, I'm going to give you a court

15  date of January the 14th in Division 25, and that's to make

16  sure that your case starts moving forward and you just don't

17  sit there and people forget about you.  All right.  Thank

18  you.

19          MR. WOLD:  Judge, I have the paperwork out there,

20  but I'm asking did you -- do you want me to redo this?

21          THE COURT:  Anything else, deputy?

22          THE SHERIFF:  No, sir.

23          THE COURT:  Okay.

24  [END OF HEARING.]

25

6

CERTIFICATE OF COURT REPORTER

        I, Rita T. DeFilio, certified court reporter, do
hereby certify that I am an official court reporter for the
Circuit Court of the City of St. Louis; that on the 11th day
of December, 2019, I was present and reported all the
proceedings had in the case of STATE OF MISSOURI vs. ███
███████ AKA: ████████████ ████████████████, Cause
No. 1922-CR03819.

        I further certify that the foregoing pages contain
a true and accurate reproduction of the proceedings.




"/s/ Rita T. DeFilio"

Rita T. DeFilio, RMR

Official Court Reporter

CCR No. 0192

**BOND COMMISSIONER: [1]** 2/22
**MR. PAYNE: [4]** 2/13 2/19 3/2 3/15
**MR. WOLD: [3]** 2/5 2/8 5/18
**THE COURT: [13]**
**THE DEFENDANT: [6]** 2/2 2/4 2/10 2/12 2/21 3/19
**THE SHERIFF: [1]** 5/21

**$**

**$2,000 [1]** 3/25

**/**

**/s [1]** 6/15

**0**

**0192 [2]** 1/24 6/18

**1**

**10/27/1985 [1]** 2/22
**10:30 [2]** 5/5 5/13
**11th [2]** 1/14 6/5
**14th [1]** 5/15
**16B [4]** 1/1 1/12 5/6 5/13
**18th [2]** 5/5 5/13
**1922-CR03819 [2]** 1/5 6/9
**1985 [1]** 2/22

**2**

**2019 [2]** 1/14 6/6
**22ND [3]** 1/1 1/13 1/25
**25 [1]** 5/15

**A**

**able [1]** 3/7
**about [3]** 4/2 5/8 5/17
**Academy [3]** 3/6 3/10 4/4
**accidentally [1]** 3/13
**accurate [1]** 6/11
**actual [1]** 2/7
**addition [1]** 5/13
**additional [1]** 5/8

**afraid [1]** 4/15
**agreed [1]** 4/9
**agreement [1]** 3/4
**ahead [1]** 4/23
**ain't [1]** 5/9
**AKA [7]**
**alias [1]** 2/7
**aliases [1]** 5/8
**all [6]** 2/16 2/23 3/1 5/1 5/17 6/6
**also [3]** 4/1 4/6 5/3
**am [1]** 6/4
**another [3]** 5/5 5/6 5/12
**answer [1]** 4/13
**any [1]** 3/11
**Anything [1]** 5/21
**apostrophe [1]** 2/11
**APPEARANCE [1]** 1/11
**appeared [2]** 1/16 1/20
**appears [1]** 3/8
**appointed [1]** 4/6
**are [3]** 2/1 3/2 5/7
**Arrest [1]** 3/23
**Arts [3]** 3/6 3/9 4/4
**asking [1]** 5/20
**Assault [2]** 3/23 3/23
**Assistant [1]** 1/16
**attorney [6]** 1/16 1/21 2/17 3/2 4/5 4/6
**attorneys [1]** 4/8
**away [1]** 3/6

**B**

**back [2]** 4/10 5/10
**be [2]** 4/9 4/12
**because [3]** 3/14 4/13 4/16
**been [1]** 4/6
**believe [1]** 3/3
**birth [2]** 2/21 2/22
**bond [11]**
**booked [3]** 2/7 4/15 4/19
**both [1]** 2/24

**C**

**C.C.R [1]** 1/24

**call [1]** 2/17
**called [1]** 3/8
**can [2]** 2/20 3/4
**can't [1]** 4/13
**carry [1]** 3/24
**case [5]** 2/17 5/7 5/14 5/16 6/7
**cases [1]** 4/14
**cash [1]** 4/3
**catching [1]** 4/14
**Cause [2]** 1/5 6/8
**CCR [1]** 6/18
**Center [4]** 3/6 3/9 4/4 4/17
**CERTIFICATE [1]** 6/2
**certified [1]** 6/3
**certify [2]** 6/4 6/10
**chain [1]** 5/4
**chance [1]** 5/10
**charged [2]** 3/22 3/22
**charges [1]** 3/10
**check [1]** 2/20
**CIRCUIT [9]**
**CITY [4]** 1/1 1/13 1/25 6/5
**Class [1]** 3/22
**COLONA [3]** 1/2 4/18 4/19
**come [1]** 4/10
**commit [1]** 4/17
**conducted [1]** 3/16
**confusion [1]** 2/6
**contain [1]** 6/10
**convictions [1]** 3/17
**counts [1]** 3/24
**county [1]** 3/24
**court [9]**
**courtroom [1]** 4/5
**CR03819 [2]** 1/5 6/9
**crime [1]** 4/17
**criminal [2]** 3/7 5/9
**currently [1]** 4/2

**D**

**date [4]** 2/21 2/22 5/5

**D**

**date... [1]**  5/15
**day [3]**  1/14 5/9 6/5
**December [4]**  1/14 5/5 5/12 6/6
**defendant [2]**  1/9 1/19
**DeFilio [4]**  1/24 6/3 6/15 6/16
**deny [1]**  4/22
**deputy [1]**  5/21
**deserve [1]**  3/14
**did [1]**  5/20
**DIVISION [5]**  1/1 1/12 5/6 5/13 5/15
**do [10]**
**docket [1]**  2/15
**document [1]**  4/8
**does [1]**  3/6
**doing [1]**  3/2
**dollars [1]**  4/3
**don't [5]**  3/11 3/12 3/14 4/12 5/16
**during [1]**  3/9

**E**

**Each [1]**  3/23
**electronic [1]**  2/17
**else [2]**  4/17 5/21
**eMass [1]**  3/5
**end [2]**  5/9 5/24
**enter [1]**  4/1
**entry [1]**  4/3
**even [1]**  4/24

**F**

**FBI [1]**  2/24
**find [2]**  3/17 5/1
**fine [1]**  3/25
**following [1]**  1/12
**foregoing [1]**  6/10
**forget [1]**  5/17
**forward [2]**  5/14 5/16
**further [1]**  6/10

**G**

**games [3]**  3/12 3/15 4/14
**get [2]**  4/13 5/14
**getting [1]**  4/15
**give [4]**  2/16 3/13 5/4 5/14
**go [3]**  4/16 4/23 5/3
**going [12]**
**got [1]**  4/12
**Grand [4]**  3/6 3/9 4/3 4/17
**great [1]**  5/2
**guilty [1]**  4/1

**H**

**had [2]**  1/12 6/7
**handed [1]**  4/8
**has [2]**  2/18 2/24
**have [8]**
**hearing [3]**  3/19 5/5 5/24
**her [3]**  2/6 2/7 3/9
**here [1]**  3/2
**here's [2]**  4/20 4/20
**hereby [1]**  6/4
**history [2]**  3/7 5/9
**honest [1]**  4/12
**Honorable [1]**  1/2
**how [2]**  2/10 2/12

**I**

**I'll [1]**  4/24
**I'm [9]**
**information [2]**  2/18 5/8
**INITIAL [1]**  1/11
**Initially [1]**  3/7
**is [14]**
**it [5]**  3/8 3/9 3/24 4/13 5/1
**It's [1]**  4/24

**J**

**jack [1]**  4/24
**jail [2]**  3/25 4/16
**January [1]**  5/15
**judge [7]**
**JUDICIAL [3]**  1/1 1/13

1/25
**just [2]**  2/16 5/16

**K**

**know [3]**  4/12 4/18 5/7

**L**

**L-A [1]**  2/11
**LA'VUE [4]**  1/7 1/20 2/9 6/8
**LATOYA [10]**
**Law [1]**  1/21
**leave [1]**  4/25
**let [2]**  4/9 4/16
**locate [1]**  3/7
**look [2]**  5/6 5/12
**loss [1]**  4/19
**LOUIS [4]**  1/1 1/13 1/25 6/5

**M**

**make [1]**  5/15
**matter [1]**  4/7
**Maybe [2]**  5/7 5/8
**me [4]**  2/16 4/8 4/18 5/20
**mean [1]**  4/13
**MICHAEL [1]**  1/2
**might [1]**  5/3
**misdemeanors [1]**  3/23
**MISSOURI [6]**  1/4 1/14 1/17 1/25 4/6 6/7
**moment [1]**  2/16
**monthly [1]**  3/5
**more [1]**  4/24
**moving [2]**  5/14 5/16
**Mr [2]**  1/16 1/21
**Mr. [3]**  2/17 3/1 3/11
**Mr. Circuit [2]**  2/17 3/1
**Mr. Payne [1]**  3/11
**Ms [5]**  2/1 2/2 2/21 3/12 3/12
**Ms. [1]**  3/18
**▬▬▬▬ [1]**  3/18
**MSI [1]**  3/25
**my [3]**  2/22 4/13 4/25

**N**

names **[3]**  2/24 3/15 4/14
next **[1]**  4/18
no **[10]**
not **[4]**  2/4 3/6 4/1 4/25
Now **[1]**  5/3

**O**

occurred **[1]**  3/10
off **[1]**  5/4
officers **[1]**  3/8
official **[2]**  6/4 6/17
okay **[2]**  4/24 5/23
once **[1]**  3/5
one **[2]**  3/21 3/24
only **[2]**  4/3 4/7
order **[1]**  5/13
our **[1]**  4/13
out **[6]**  3/8 4/9 4/16 4/22
 5/11 5/19

**P**

[redacted]
pages **[1]**  6/10
paperwork **[1]**  5/19
PARSON **[9]**
 **[2]**  1/16 3/11
PEARSON **[7]**
people **[1]**  5/17
perhaps **[1]**  2/18
person **[1]**  1/20
personal **[2]**  3/4 4/9
PETERSON **[3]**  1/7 1/20
 6/8
Plaintiff **[1]**  1/5
play **[2]**  3/11 4/14
playing **[1]**  3/14
plea **[1]**  4/1
post **[1]**  5/2
premises **[1]**  3/10
present **[1]**  6/6
prior **[1]**  3/17
priors **[1]**  2/25
proceedings **[4]**  1/11
 1/12 6/7 6/11

PROCEEDINGS/INITIAL
 **[1]**  1/11
promise **[1]**  4/10
public **[2]**  4/15 5/10
purpose **[1]**  3/18
put **[2]**  5/10 5/10
putting **[1]**  4/22

**R**

ran **[1]**  2/24
reached **[1]**  3/3
really **[1]**  5/7
reason **[1]**  5/4
recognizance **[5]**  3/4 3/13
 3/14 4/10 4/23
records **[1]**  2/24
redo **[1]**  5/20
regarding **[1]**  2/6
removal **[1]**  3/9
report **[1]**  3/5
reported **[1]**  6/6
reporter **[4]**  6/2 6/3 6/4
 6/17
represent **[1]**  4/7
reproduction **[1]**  6/11
Resisting **[1]**  3/23
right **[5]**  2/16 3/1 4/16
 5/1 5/17
risk **[1]**  5/10
Rita **[4]**  1/24 6/3 6/15
 6/16
RMR **[2]**  1/24 6/16
room **[1]**  4/8

**S**

safety **[1]**  4/15
say **[2]**  4/23 4/23
says **[1]**  4/8
searches **[1]**  3/16
set **[1]**  4/2
she **[3]**  2/24 3/5 3/6
sic **[1]**  4/19
sir **[1]**  5/22
sit **[1]**  5/17
so **[7]**
some **[2]**  2/6 5/8

somebody **[2]**  3/13 5/1
someplace **[1]**  4/17
something **[3]**  2/18 4/23
 4/24
sometimes **[1]**  5/3
speak **[1]**  4/25
spell **[2]**  2/10 2/12
ST **[4]**  1/1 1/13 1/25 6/5
starts **[1]**  5/16
STATE **[5]**  1/4 1/14 1/17
 4/5 6/7
State's **[1]**  2/14
stay **[1]**  3/5
still **[1]**  3/16
straight **[1]**  4/14
street **[1]**  5/11
suggestion **[1]**  4/25
sure **[1]**  5/16
system **[1]**  2/23

**T**

taking **[1]**  5/10
talk **[1]**  4/2
tell **[1]**  3/21
telling **[1]**  4/18
Thank **[1]**  5/17
that **[17]**
that's **[2]**  4/6 5/15
then **[2]**  2/12 4/19
there **[4]**  2/6 2/19 5/17
 5/19
There's **[1]**  4/6
these **[1]**  3/10
they **[4]**  2/7 2/23 3/13
 4/9
thing **[1]**  4/18
think **[1]**  2/7
this **[4]**  3/4 4/7 5/12 5/20
those **[1]**  3/24
thousand **[1]**  4/3
three **[1]**  3/22
time **[1]**  5/7
today **[3]**  4/2 4/5 4/16
today's **[1]**  3/19
TRANSCRIPT **[1]**  1/11

**T**

**trespassing [1]** 3/8
**true [1]** 6/11
**try [1]** 4/14
**two [1]** 4/7

**U**

**under [1]** 2/7
**understand [1]** 5/3
**up [4]** 2/17 3/24 3/25 4/24

**V**

**V-U-E [1]** 2/11
**via [1]** 1/20
**video [1]** 1/20

**W**

**want [5]** 3/11 3/12 4/12 5/1 5/20
**was [2]** 3/9 6/6
**we [9]**
**we'll [2]** 5/7 5/8
**we're [4]** 3/25 4/1 4/20 4/20
**We've [1]** 3/16
**Well [1]** 3/1
**were [3]** 1/12 3/7 3/8
**what [5]** 2/8 3/2 3/21 4/20 4/20
**what's [1]** 2/21
**when [1]** 3/13
**where [2]** 5/1 5/6
**which [2]** 3/25 4/10
**who [1]** 5/7
**why [1]** 4/13
**Wold [1]** 1/21

**Y**

**year [1]** 3/24
**Yes [1]** 3/20
**you [22]**
**you're [6]** 2/1 2/4 3/14 3/22 3/22 4/18
**your [10]**

# EXHIBIT 178

**IN THE CIRCUIT COURT OF MISSOURI**
**22ND JUDICIAL CIRCUIT, DIVISION 16B**
Honorable Michael F. Stelzer, Judge


STATE OF MISSOURI,          )
        Plaintiff,       )
                  )
                  )
vs.                         ) Cause No. 1922-CR03633
                  )
                  )
                  )
LATRAVIA WOODS             )
        Defendant.       )

**FIRST APPEARANCE HEARING**

On Wednesday, November 20, 2019, the above cause came on for hearing before the Honorable Michael F. Stelzer, Judge of Division 16B of the City of St. Louis Circuit Court, Missouri.


APPEARANCES

The State, was represented by Steven Payne, Assistant Circuit Attorney, 1114 Market Street, Suite 401, St. Louis, Mo. 63101.

The Defendant, Latravia Woods, was represented by Melinda Gorman, a private attorney, 3703 Watson Road, St. Louis, Mo. 63109.

**Sherry A. Marshall**
**Official Court Reporter**
**22nd Judicial Circuit**
**St. Louis, Missouri**

Dixon v. City of St. Louis 05423

1    (Wednesday, November 20, 2019)

2              THE COURT:  Okay.  Ma'am, you are Latravia

3    Woods?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Okay.  I'm Judge Stelzer.  This is

6    your initial appearance.

7              THE DEFENDANT:  How are you doing?

8              THE COURT:  I'm doing fine.  You've been

9    charged with one count of robbery in the second degree.

10   That's a B felony.  What is the maximum punishment on

11   that?

12             MS. GORMAN:  Fifteen years, Your Honor.

13             THE COURT:  Fifteen years is the maximum

14   punishment on that.  Do you understand that, Ms. Woods?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you have a lawyer that

17   represents you?  Have you hired a lawyer or applied to

18   the public defender?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Okay.  So we have a lawyer here,

21   Ms. Gorman, that is here to represent you on this

22   initial appearance.  Your bond is currently set at --

23             MR. PAYNE:  Seventy-five thousand dollars, ten

24   percent.

25             THE COURT:  Seventy-five thousand, ten percent

```
 1    bond.  That means if you can post ten percent of that
 2    amount, 7,500, you can bond out today.  I'm assuming you
 3    might not be able to do that; is that correct?
 4                 THE DEFENDANT:  Yes, sir.
 5                 THE COURT:  Ma'am, are you a city resident?
 6    Do you live in the city?
 7                 THE DEFENDANT:  No, sir.
 8                 THE COURT:  Well, where do you live?
 9                 THE DEFENDANT:  Yes, sir.
10                 THE COURT:  Well, which one is it?
11                 THE DEFENDANT:  I'm homeless at the time, sir,
12    for real.
13                 THE COURT:  How long have you been homeless?
14                 THE DEFENDANT:  Four years going on five.
15                 THE COURT:  Four to five years you've been
16    homeless?
17                 THE DEFENDANT:  Yes, sir.
18                 THE COURT:  This seems like a rather obvious
19    question to ask you, but where is your family?
20                 THE DEFENDANT:  My daddy never been in my life
21    and my mama is somewhere in the county.
22                 THE COURT:  Why aren't you living with her?
23                 THE DEFENDANT:  Because she recently put me
24    out, sir.
25                 THE COURT:  When you say recently, but you
```

```
 1   told me you were homeless for four to five years; right?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Okay.  Say that again.

 4            THE DEFENDANT:  I mean recently.  I'm sorry.

 5   I apologize.

 6            THE COURT:  So I mean are you literally just

 7   living on the street then?

 8            THE DEFENDANT:  Yes, sir.

 9            THE COURT:  Okay.  Ms. Gorman.

10            MS. GORMAN:  Yes, Your Honor.

11            THE COURT:  Oh, hold on.  Ma'am, just so you

12   know, we're on the record.  I have a court reporter

13   taking everything down.  So we're going to ask you

14   questions but they have nothing to do with what actually

15   happened or what you're accused of, okay?  So please be

16   careful when you are answering these questions; okay?

17   So only answer the question that we ask you, and do not

18   talk about the specific facts of what did or did not

19   happen with this robbery second degree charge that's

20   been filed against you; okay?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Thank you.

23            MS. GORMAN:  Ms. Woods, this is Melinda your

24   attorney.  Can you hear me, dear?

25            THE DEFENDANT:  Yes, ma'am.
```

1             MS. GORMAN:  Okay.  I am looking at all of the

2    same records that the Judge is looking at here, and it

3    looks like you've been homeless since you were about 13

4    years old; is that correct?

5             THE DEFENDANT:  Yes, ma'am.

6             MS. GORMAN:  Okay.  Now one of the big things

7    that judges consider when they're trying to decide an

8    appropriate bond on a case is a person's ties to the

9    community; okay?

10            THE DEFENDANT:  Yes.

11            MS. GORMAN:  So I can tell you that you're

12   facing a very serious charge, but you're also very young

13   and you don't have any priors.  So I want to ask you

14   some questions so we can maybe kind of flush out some of

15   the things the Judge is going to have to take into

16   consideration when he decides what an appropriate bond

17   is.

18            So if you are living on the streets how would

19   you make it to and from your court appearances?

20            THE DEFENDANT:  I can sneak on the train for

21   free.

22            MS. GORMAN:  Okay.  So let me ask you this:  I

23   am sitting here.  I know you can't see myself or the

24   prosecutor.  I know the camera only goes one way, but

25   there is a social worker sitting with me, and he is

```
 1    involved with a program through BJC called Relink.  I'm
 2    going to actually let him take the stage for a hot
 3    second, and talk about how a program like that might
 4    suit your needs, and then I'm going to come back and ask
 5    you a couple more questions.
 6                 THE COURT:  Go ahead.
 7                 MR. BROOKS:  My name is Mr. Brooks.
 8                 THE COURT:  Can you hear Mr. Brooks?
 9                 THE DEFENDANT:  Barely, sir.
10                 THE COURT:  Okay.
11                 MR. BROOKS:  My name is Phillips Brooks.  I
12    spoke with Ms. Woods earlier this morning.
13                 THE COURT:  Oh, okay.
14                 MR. BROOKS:  And what I found out after
15    talking to her is that she has a lot of issues going on,
16    but I feel like we could assist with her, especially
17    with the housing, and then getting her back in school
18    and working on the educations.  She's had some previous
19    mental health diagnoses, and I'm sure that probably
20    plays some part, but we have a re-entry program that's
21    been contracted with the city for about five years now,
22    and we work with 18 to 26 year olds that are getting out
23    and helping them get stable.
24                 THE COURT:  How do we get -- in other words,
25    let's say I do something with the bond.  I'm not saying
```

 1   that's what I'm going to do, but let's say I do

 2   something with the bond.  I would make that a condition,

 3   but how do we link you up with her before she's

 4   released?

 5           MR. BROOKS:  My office is 1520 Market Street,

 6   and if she goes on a GPS or something I can give her all

 7   the information.  I staple that to her paperwork,

 8   whether she gets out today or not today so she can reach

 9   out to me.

10           THE COURT:  Okay.

11           MS. GORMAN:  And, Your Honor, GPS, if it is a

12   condition of the bond, I would ask that the Court

13   obviously waive the cost as we are dealing with an

14   extremely young person of literally no means.

15           THE COURT:  Okay.  All right.  Anything else?

16           MS. GORMAN:  She would be on my caseload

17   personally.

18           THE COURT:  What's the name of the program?

19           MR. BROOKS:  Relink Reentry Community.

20           THE COURT:  Relink is the program.

21           All right.  Do you remember meeting this

22   gentleman this morning?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Okay.  And he gave you some

25   information.  Do you still have that?

1            THE DEFENDANT:  He put it in with the

2    paperwork that I'm supposed to have when I get released.

3            THE COURT:  Okay.  All right.  So if you get

4    released that paperwork will be given to you is what

5    your understanding is; correct?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  All right.  So, ma'am, I want to

8    ask you a few other questions.  So you are 17 years old;

9    correct?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Did you finish -- have you ever

12    attended high school?

13            THE DEFENDANT:  Yes, sir, I have but I never

14    finished.

15            THE COURT:  Okay.  What high school did you

16    attend and for how long?

17            THE DEFENDANT:  Northwest Academy of Law and

18    probably two or three months before I got into a

19    physical altercation with another female.

20            THE COURT:  Okay.  All right.  So you don't

21    work; correct?

22            THE DEFENDANT:  Yes, sir, that's correct.

23            THE COURT:  You do not have any money;

24    correct?

25            THE DEFENDANT:  Yes, sir, that's correct.

1           THE COURT:  Okay.  All right.  Can you take

2    her off the screen for a moment, deputy?

3           DEPUTY:  Yes, sir.

4           THE COURT:  So let's say I give her some sort

5    of a bond that I guess the Bail Project can't bond

6    everybody out though, right?  But let's say I lower this

7    to a point where she's at least eligible.  Where is she

8    going to live?

9           MR. BROOKS:  We have some resources at

10   Salvation Army and she's already connected to BJC

11   Behavioral Health.

12          THE COURT:  Has she been following up with

13   them?  Has there been a gap?

14          MR. BROOKS:  I think there's been a gap.

15          THE COURT:  Okay.  Good God.  Okay.

16          MR. BROOKS:  There is Safe Haven and I'm

17   reaching out to Dr. Jerry Dunn, who's at UMSL to see if

18   they take 17 year-olds.

19          THE COURT:  All right.

20          Can you bring her back in, deputies?

21          DEPUTY:  Yes, sir.

22          THE COURT:  All right.  Ms. Woods, I have

23   reviewed your bond conditions, and here's what I'm going

24   to do today.  I'm going to do several things.  I'm going

25   to set your bond at 35,000, ten percent.  It's possible

```
 1    that the Bail Project will bond you out but I can't
 2    guarantee that.  Do you understand that?  So you may not
 3    bond out on this.  Do you understand that?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  Okay.  If you do you have to get a
 6    hold of this gentleman -- and your name again, sir?  I'm
 7    sorry.
 8              MR. BROOKS:  Phillip Brooks.
 9              THE COURT:  Phillip Brooks.  You have his
10    information at Relink.  You have to get a hold of him
11    immediately upon your release.  You have to reengage
12    with Barnes Jewish Christian.  I understand that they've
13    been giving you some help maybe with some mental health
14    issues; is that correct?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  Okay.  And you're going to have to
17    have a home plan which maybe they can help you with at
18    Relink.
19              Anything else you can think of, Mr. Payne?
20              MR. PAYNE:  Judge, we were going to ask that
21    she have a curfew of 6:00 p.m., but obviously she would
22    need a home plan for that.
23              THE COURT:  Yes.  I agree with that.  There
24    would be a curfew from 6:00 p.m. to 7:00 a.m. and we'll
25    have to establish a home plan.
```

Dixon v. City of St. Louis 05432

1                 MR. PAYNE:  And that she stays away from the

2    Marriott Hotel on Washington Avenue.

3                 THE COURT:  Yes.

4                 MR. PAYNE:  And just for the record it was the

5    State's recommendation that bond be continued at 75,000,

6    ten percent.

7                 THE COURT:  I understand.

8                 MR. PAYNE:  But I didn't get a chance to do it

9    on the record.

10                THE COURT:  Yes, of course.  Go ahead.

11                MR. PAYNE:  Mainly due to the fact that this

12   case involved seven individuals including the defendant

13   striking an individual, the victim on the street who

14   fell to the ground and was then kicked repeatedly in the

15   face.  While on the ground it was the defendant who went

16   through the victim's pockets and took approximately $350

17   worth of the victim's possessions.

18                Additionally, the officer did observe the

19   victim to have a black eye and lacerations to his face

20   and nose.  He was connected to a convention here in the

21   City of St. Louis.  Since this event occurred he has

22   received emergency room care.  He does have a fractured

23   eye socket, a broken nose and heavy contusions to his

24   head.  He, so far, has approximately $5,000 in medical

25   bills due to this incident.  The victim is opposed to

11

```
 1    her being released.

 2               THE COURT:  I'm not releasing her.

 3               MR. PAYNE:  I'm just giving this victim's

 4    statement.

 5               THE COURT:  I'm modifying the bond conditions

 6    and I'll set this for the more formal review under Rule

 7    33.06 for next week at 11/27 at 10:30 a.m.

 8               MS. GORMAN:  Ms. Wood, this is Melinda talking

 9    to you again.  In between now and then the best thing

10    that you can do to help yourself is to make application

11    with the Bail Project, and should they elect to post

12    your bond for you, make sure that the very first thing

13    that you do upon hitting the streets is to make contact

14    with Mr. Brooks; okay?

15               THE DEFENDANT:  Yes.

16               THE COURT:  All right.  Ms. Woods, did you

17    hear what she just told you?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  All right.  Do you have any

20    questions for me?

21               THE DEFENDANT:  Nope.

22               THE COURT:  I am making a finding of indigency

23    on this after what she's told me.  So you would be

24    eligible for a public defender services but you need to

25    apply with them; okay?
```

```
 1              THE DEFENDANT:  Yes, sir.

 2              MR. PAYNE:  Can we have her stay away from the

 3    other co-defendants in this case as well?

 4              THE COURT:  Well, do we know their names?  I'm

 5    happy to do that, but I need to know what their names

 6    are.

 7              MR. PAYNE:  All right.  Give me just a second.

 8              THE COURT:  All right.  Another one of your

 9    bond conditions it to stay away from the Marriott Hotel

10    on Washington, and you cannot be in the presence of any

11    of the other individuals that the State alleges you were

12    with the evening of this robbery second degree.  Do you

13    understand all of that?

14              THE DEFENDANT:  Yes, sir.  Can I say

15    something, sir?

16              THE COURT:  You can.  Having said that, let me

17    caution you before you say something.  We've already

18    been over that this is not the time to discuss the facts

19    of the case, in other words, what did or did not happen,

20    whether you did this or did not do this.  So, yes, you

21    can say something, but if it's going to be on that topic

22    I would strongly suggest that you do not say it.

23              Having given you that warning, go ahead.

24              THE DEFENDANT:  Nevermind then.

25              THE COURT:  Okay.  Very good.
```

13

1              MR. PAYNE:  Judge, it is Ronnie Edmond.

2              THE COURT:  All right.  We'll just put him on

3    there.

4              All right.  Thank you, Ms. Woods.

5              THE DEFENDANT:  Thank you.

6                    (Off the record.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### *REPORTER'S CERTIFICATE*

I, Sherry A. Marshall, a Certified Court Reporter, hereby certify that I was the Official Court Reporter for Division 16 B of the City of St. Louis, 22nd Judicial Circuit Court; that on November 20, 2019 was present and reported all of the proceedings in State of Missouri vs. Latravia Woods, Defendant, Cause No.1922-CR03633.

I further certify that the foregoing 14 pages contain a true and accurate reproduction of the proceedings transcribed.

15 pages @ $4.00 per page

 Total   $60.00

_____

/s/Sherry A. Marshall

Sherry A. Marshall, CCR  # 486

**Completed:  July 21, 2020**

# EXHIBIT 179

**IN THE CIRCUIT COURT OF MISSOURI**
**22ND JUDICIAL CIRCUIT, DIVISION 16B**
Honorable Michael F. Stelzer, Judge


STATE OF MISSOURI,             )
          Plaintiff,           )
                               )
                               )
vs.                            ) Cause No. 1922-CR03578
                               )
                               )
                               )
LESTER ALLEN SMITH             )
          Defendant.           )


**FIRST APPEARANCE HEARING**

On Wednesday, November 20, 2019, the above cause came on for hearing before the Honorable Michael F. Stelzer, Judge of Division 16B of the City of St. Louis Circuit Court, Missouri.


APPEARANCES

The State, was represented by Steven Payne, Assistant Circuit Attorney, 1114 Market Street, Suite 401, St. Louis, Mo. 63101.

The Defendant, Lester Allen Smith, was represented by Melinda Gorman, a private attorney, 3703 Watson Road, St. Louis, Mo. 63109.


**Sherry A. Marshall**
**Official Court Reporter**
**22nd Judicial Circuit**
**St. Louis, Missouri**

Dixon v. City of St. Louis 05438

```
 1    (Wednesday, November 20, 2019)

 2              THE COURT:  You are Alan Lester Smith?

 3              THE DEFEDANT:  Yes, sir.

 4              THE COURT:  Mr. Smith, you understand what you

 5    are charged with here?  You have one count of making a

 6    terrorist threat, which is an E felony, and you have

 7    three counts of assault in the fourth degree, which are

 8    all C misdemeanors; do you understand that?

 9              THE DEFEDANT:  Yes.

10              THE COURT:  What is his bond set at?

11              MR. PAYNE:  Ten thousand dollars cash only,

12    Judge.

13              THE COURT:  So your bond is $10,000 cash only.

14    Do you understand that?

15              THE DEFEDANT:  Yes, sir.

16              THE COURT:  Okay.  All right.  So we have a

17    lawyer here, Ms. Gorman, who is here to represent you

18    today.  I want to have her talk to you.  I know you

19    can't see her, but she's sitting right in front of me at

20    the counsel table.  She is going to discuss a few topics

21    with you, and when she's finished, then you I are going

22    to have to discuss some additional topics.  So, please,

23    give her your attention; okay?

24              THE DEFEDANT:  Yes, sir.

25              THE COURT:  Thank you, Mr. Smith.
```

Dixon v. City of St. Louis 05439

```
 1            MS. GORMAN:  Mr. Smith, this is Melinda Gorman
 2   speaking to you.  Can you hear me all right, sir?
 3            THE DEFEDANT:  Not very well.
 4            MS. GORMAN:  Okay.  I can speak up.  I'm not
 5   shy.  I got a pretty loud voice.  Is that better?
 6            THE DEFEDANT:  Yes.
 7            MS. GORMAN:  Okay, sir.  So today is your
 8   initial appearance.  We are going to be waiving formal
 9   reading of your charges, entering a plea of not guilty
10   on your behalf, and then trying to ask a couple of
11   questions about your finances, and see if you need a
12   public defender.  What the whole situation for me trying
13   to be arguing a bond for you that you can make and be
14   able to get out of here.
15            So I'm assuming it's safe to say that you
16   don't have $10,000 cash laying around; is that fair?
17            THE DEFEDANT:  That's fair to say, yes, I do
18   not.
19            MS. GORMAN:  Sir, what kind of bond could you
20   afford to post should the Court grant you a bond
21   reduction today?
22            THE DEFEDANT:  Between two to five hundred
23   cash.
24            MS. GORMAN:  Did you say between two and five
25   hundred cash?
```

Dixon v. City of St. Louis 05440

1               THE DEFEDANT:  Yes, ma'am.

2               MS. GORMAN:  Okay.  It's my understanding that

3     you've been in the same home for the last 48 years; is

4     that correct?

5               THE DEFEDANT:  Yes, ma'am.

6               MS. GORMAN:  Okay.  And you own that home;

7     right?

8               THE DEFEDANT:  It's a family owned home.  It's

9     in a trust.

10              MS. GORMAN:  Okay.  And you have been employed

11    as a carpenter for the last 20 years with the same

12    company; is that also correct, sir?

13              THE DEFEDANT:  Yes, ma'am.

14              MS. GORMAN:  Okay.  Now, I'm also seeing in

15    the notes here that you spent some time at the Psych

16    Center on Delmar?

17              THE DEFEDANT:  Yes, ma'am.

18              MS. GORMAN:  Okay.  And you've been previously

19    deemed unfit for confinement in your past; is that

20    correct?

21              THE DEFEDANT:  I didn't understand what you

22    said.  I'm sorry.

23              MS. GORMAN:  Okay.  You're on about 15

24    different medications; is that correct, sir?

25              THE DEFEDANT:  Yes.  That's from being in

 1   construction for so many years.

 2           MS. GORMAN:  Okay.  And you're not getting

 3   those medications in the jail?

 4           THE DEFEDANT:  No.

 5           MS. GORMAN:  Okay.

 6           Those are about all of the questions I have of

 7   my client at this time, Your Honor.  And the State can

 8   go ahead.

 9           MR. PAYNE:  Judge, it's the State's position

10   that bond remain at $10,000 cash only on this case.  The

11   facts surrounding this case are that on or about

12   November 13, 2019 officers were called for a suspicious

13   person at the intersection of Gravois and Bates Avenue

14   near 7-11 in the City of St. Louis.  When the officers

15   arrived on the scene they had been informed by multiple

16   victims that the defendant had what was presumed to be a

17   firearm that he was directing at multiple vehicles,

18   which did cause at least one of the victims to back her

19   car into another vehicle.  He was flourishing a hand gun

20   out in public in the middle of a busy street, causing a

21   severe public safety risk to the city residents, along

22   with putting himself in danger.

23           Furthermore, the defendant has prior

24   convictions dating back to 1985, Your Honor, starting

25   with receiving stolen property.  He also had a

1   conviction for DWI misdemeanor in 1995.  In 1995 he also

2   had an assault third conviction where he was on

3   probation for 731 days.

4           In 1997 he had a stealing felony where he had

5   a suspended execution of sentence, which I believe was

6   completed with a seven year back up.

7           He also had another DWI in 1998, which was an

8   SIS that I believe he completed, and then in 2006 he had

9   another domestic assault third that was originally a six

10   month SES that was revoked, and he ending up serving a

11   six-months confined.  He does have another pending case

12   in the City of St. Louis, Cause No. 1522-CR05573.  Bond

13   on that case is currently at $2,500 cash only.

14           THE COURT:  Is that a probation matter?

15           MR. PAYNE:  Judge, it's unclear, but it looks

16   like the warrant was outstanding and then wasn't served.

17   I'm seeing I believe when I looked it up there were

18   events that happened in 2018 on it.  That's what I was

19   trying to determine.  I'll pull it back up.

20           THE COURT:  Is anybody here on behalf of Mr.

21   Smith?

22           UNIDENTIFIED SPEAKER:  I am.

23           THE COURT:  Okay.  His brother is apparently

24   in the courtroom.  Mr. Smith.

25           MR. PAYNE:  Judge, there was an indictment on

1    that case in April of 2018.

2              THE COURT:  On a 2015 case?

3              MR. PAYNE:  Yes.

4              THE COURT:  What's the charge?

5              MR. PAYNE:  Possession of a controlled

6    substance.

7              THE COURT:  Mr. Smith, who do you live with?

8              THE DEFEDANT:  Myself.

9              THE COURT:  That's it?  Yourself?

10             THE DEFEDANT:  Yes.

11             THE COURT:  Do you drive?  Do you have a valid

12   driver's license?

13             THE DEFEDANT:  Not at this time, but I do have

14   a way back and forth, and I have a way with the company

15   I work with, and as well my brother to be anywhere I

16   need to be.

17             THE COURT:  Okay.  All right.

18             MR. PAYNE:  And, Judge, just for

19   clarification --

20             THE DEFEDANT:  And, I --

21             THE COURT:  Hold on, Mr. Smith.

22             MR. PAYNE:  On the 2015 case --

23             THE DEFEDANT:  Yes, Your Honor.

24             MR. PAYNE:  -- it is outstanding because there

25   was a failure to appear from 2016 that had been issued

Dixon v. City of St. Louis 05444

1    that was just served.

2              THE COURT:  Is that a misdemeanor?

3              MR. PAYNE:  That is a felony possession of a

4    controlled substance, Judge.

5              THE COURT:  Okay.  And what's the bond set at

6    on that one?

7              MR. PAYNE:  Twenty-five hundred cash only.

8    Due to the serious nature of these charges along with

9    the events that occurred leading to his arrest, it is

10   the State's position that he does pose a safety risk.  I

11   also do have a statement from the victims on this case.

12             THE COURT:  Go ahead.

13             MR. PAYNE:  Your Honor, the truth is that I do

14   not want other people to have the same thing that

15   happened to me happen to them.  If he is released I will

16   not feel pleased.  I am very scared.  I feel very bad.

17   I'm very afraid.  I cannot sleep.  I'm afraid of people.

18   I think that everyone that comes near me is going to do

19   me harm.  For this I'm very scared.  I cannot overcome

20   this trauma.  I go through the area where this happened

21   on my way to work and back every day near Bates and

22   Gravois.  He lives close to this.  I'm scared when I

23   pass through there.  My life is not the same.  Do not

24   let him free because this trauma is very serious and I

25   cannot overcome it.  I feel very traumatized.  I respect

```
 1    the decision of the judges of the court, but the fact is
 2    that he will be in the street causing more trauma to
 3    more people because he threatened us with a weapon.  No
 4    one wants to be threatened with a weapon, because on
 5    this morning I was not the only person that was
 6    threatened.  He threatened me directly.  The most
 7    beautiful thing we have is life.  Thank you.
 8              THE COURT:  All right.  Ms. Gorman, you've had
 9    an opportunity to speak with Mr. Smith's brother;
10    correct?
11              MS. GORMAN:  I have, Your Honor.
12              THE COURT:  Any additional information that
13    may be of some help to the Court?
14              MS. GORMAN:  Yes, I believe so, Your Honor.
15    First and foremost I would point out to the Court, as
16    the Court is already aware, that Mr. Smith does have a
17    support system; okay?  He does have family in the
18    community.  He has strong ties to the community.  He's
19    been in the same house for 48 years.  In the same job
20    for 20.
21              What I see, Judge, is that Mr. Smith may
22    struggle with drinking; okay?  And I think that as
23    opposed to holding him without bond, I think that the
24    community would best be served if this Court ordered a
25    bond that either he could pose or that the Bail Project
```

1    could pose and ordered him to attend AA meetings,

2    potentially wear a SCRAM bracelet while his case is

3    pending, or get some sort of help to take care of the

4    alcoholism, because I think with the different

5    medications that he is on, Judge, because there are 16

6    of them, that it's very potentially probable that

7    alcohol interfered with those medications, and that

8    that's where some of these impulsive decisions may come

9    from.

10           So I think that if we tackle the drinking

11   we'll be tackling the problem, and that he would not be

12   a threat to the community.  I think that he's got enough

13   stability that he is definitely not a flight risk.

14           THE COURT:  Mr. Smith, how long have you been

15   working at your current job?

16           THE DEFEDANT:  Over 20 years, Your Honor.

17           THE COURT:  Do you make an hourly rate there?

18           THE DEFEDANT:  No.  I make a salary.

19   Approximately 30,000 a year.

20           THE COURT:  Thirty thousand a year.

21           THE DEFEDANT:  Yes, Your Honor.

22           THE COURT:  Okay.

23           THE DEFEDANT:  If I may add something.  On

24   that time, I was struck in the leg by the vehicle.

25           THE COURT:  Okay.  Hold on.  Don't talk about

1    the case.

2              THE DEFEDANT:  Thank you.  Thank you.

3              MS. GORMAN:  That's the reason we're not going

4    to do that is because we have a court reporter and the

5    State here.  Why don't we save those conversations for a

6    time where you have confidentiality.

7              THE COURT:  All right.  So you make 30,000 a

8    year.  You live in a house that's in a trust; correct?

9              THE DEFEDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  Are you getting any

11   treatment for any substance abuse issues you might be

12   having?

13             THE DEFEDANT:  No, Your Honor, but I would be

14   gladly to do anything you deemed that I need to do.

15             THE COURT:  Well, but I mean what's prevented

16   you from having done anything up to this point?

17             THE DEFEDANT:  Well, it --

18             THE COURT:  I mean why do you need me to tell

19   you that?

20             THE DEFEDANT:  Well, it wasn't a very ongoing

21   occurrence.  It was a random occurrence.

22             THE COURT:  Well, here is the problem:  You're

23   waving a gun around in the street is what they're saying

24   you did.  They say it's on video.  Obviously you're

25   innocent until proven guilty.

1           I'm not going to do anything with the older

2     case.  That's still set at 2,500 cash.  I'll give you a

3     ten percent option on this case, but if you get out

4     you're going to have to report to EMASS.  You're going

5     to have to do a drug evaluation.  You're going to have

6     to be on the SCRAM bracelet, which means you will not be

7     drinking alcohol.  If you are then you can -- that's a

8     condition of your release.  You can be revoked.

9           I don't think I can make a finding that you

10    are indigent at this point given what you told me about

11    your $30,000 a year salary.  Do you have any dependents

12    that you have to pay for, children, an elderly parent or

13    is this $30,000 just for you?

14           THE DEFEDANT:  No.  I do have child support

15    pay.

16           THE COURT:  How much do you pay in child

17    support?

18           THE DEFEDANT:  Four seventy-six a month.

19           THE COURT:  Four seventy-six a month.  Okay.

20    All right.  I still don't think it would be appropriate

21    for me to make a finding that you're indigent.  You're

22    going to have to hire a lawyer on this case.  We'll set

23    a bond review next week on the 27th at 10:30 a.m.  And

24    your next court date will be December 17th in Division

25    26 at 9:15 a.m.

Dixon v. City of St. Louis 05449

1          All right.  So you have a ten percent option

2     on this bond but you have another case out there that's

3     a $2,500 cash bond, so I don't know if the Bail Project

4     would be willing to help you out with this, or if your

5     brother can make the bond, I don't know, but you have

6     two separate bonds you have to make.  One is going to

7     cost you a thousand and one is going to cost you 2,500.

8     Do you understand that?

9          THE DEFEDANT:  Yes, I do know, Your Honor.

10    Yes, sir.

11         THE COURT:  Okay.  All right.  Any questions

12    for me, Mr. Smith?

13         THE DEFEDANT:  The Bail Project, if I could

14    get into that somehow, I would definitely look into

15    that.  I might be able to work it.

16         THE COURT:  Talk to the social worker at the

17    jail, but I'll see what I can do on this end; okay?

18         MR. PAYNE:  Judge, the State would request

19    that he stay away from the 7-11.

20         THE COURT:  Yes.  You can't be over at the

21    7-11 on Gravois and Bates.  That's another condition of

22    your bond.  Do you understand that?

23         THE DEFEDANT:  Yes, I do.

24         THE COURT:  Again, if you violate conditions

25    of bond, the bond can be revoked, and you can be put

13

```
 1   back in the workhouse while your case is pending.  Do

 2   you understand that?

 3              THE DEFEDANT:  Yes, I do.

 4              THE COURT:  All right.  Thank you, Mr. Smith.

 5   Hold on, Mr. Smith.

 6              MS. GORMAN:  First off, Mr. Smith, I don't

 7   know if we actually did this out loud, but we are going

 8   to waive your formal reading and enter a plea of not

 9   guilty in your behalf, and I just wanted to circle back

10   and ask the Judge, we have him reporting to EMASS and we

11   have SCRAM.  Do we have substance abuse evaluation and

12   treatment?

13              THE COURT:  I thought I did that.

14              MS. GORMAN:  I was just checking because I

15   didn't write it down.  I was going to say SCRAM is not

16   really a solution then in itself without the treatment.

17              THE COURT:  No, no, it's not.

18              All right.  Thank you, Mr. Smith.

19              THE DEFEDANT:  Thank you, Your Honor.

20                    (Off the record.)

21

22

23

24

25
```

### *REPORTER'S CERTIFICATE*

I, Sherry A. Marshall, a Certified Court Reporter, hereby certify that I was the Official Court Reporter for Division 16 B of the City of St. Louis, 22nd Judicial Circuit Court; that on November 20, 2019 was present and reported all of the proceedings in State of Missouri vs. Lester Allen Smith, Defendant, Cause No.1922-CR03578.

I further certify that the foregoing 14 pages contain a true and accurate reproduction of the proceedings transcribed.

15 pages @ $4.00 per page

 Total    $60.00

_____

/s/Sherry A. Marshall

Sherry A. Marshall, CCR  # 486

             **Completed:  July 21, 2020.**

# EXHIBIT 180

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Lynne Perkins, Judge

STATE OF MISSOURI,              )
                                )
              Plaintiff,         )
                                )    Cause No. 1922-CR01811
                                )
vs.                             )
                                )
LOUENDO MOSS,                   )          Division No.16B
                                )
              Defendant.         )

BOND REVIEW HEARING

On the 19th day of August, 2019, the
above-entitled cause came on for hearing before the
Honorable Lynne Perkins, Judge of Division No. 16-B of the
Circuit Court of the City of St. Louis.

The State of Missouri was represented by Alexus
Williams, Assistant Circuit Attorney, City of St. Louis.

The defendant was present via video conference
and was represented by his attorney, Melinda Gorman,
Attorney at Law.

MARGARET R. COLE, CCR
SWING COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis, 04923

1                     AUGUST 19, 2019

2              THE COURT:    Today is August 19, 2019.  We are in

3     Division 16-B of the 22nd Judicial Circuit Court for the

4     City of St. Louis.  We are here in Cause Number 1922CR01811

5     styled State of Missouri versus Louendo Moss.  Let the

6     record reflect that the defendant is present in court today

7     via video hook-up from the St. Louis City Justice Center.

8              Also in court is Assistant Circuit Attorney

9     Alexus Williams representing the State of Missouri and

10    Melinda Gorman who has been retained by the Court for the

11    limited purposes of representing Mr. Moss here today.

12             Mr. Moss, have you heard everything I've said

13    thus far?

14             THE DEFENDANT:    Yes, sir, Your Honor, I have.

15             THE COURT:    So what I'm going to do next,

16    Mr. Moss, I'm going to ask the prosecuting attorney, Miss

17    Williams, to comment on the current bond setting in your

18    case, which right now is set at no bond allowed.

19             You are currently charged with the following

20    felonies:  Count I robbery in the first degree, which is a

21    Class A felony.  Count II is the unclassified felony of

22    armed criminal action.  Count III is the Class E felony of

23    assault third degree.  Is that what you knew what you were

24    confined for, Mr. Moss?

25             THE DEFENDANT:    Yes, sir, Your Honor.  I did.

1              THE COURT:    You also were aware that right now

2    your bond is currently set at no bond allowed and that was

3    set by Judge Michael Noble on August 9, 2019 when the

4    warrant was issued?

5              THE DEFENDANT:    Yes, sir, Your Honor.  I did.

6              THE COURT:    And this is your first appearance

7    before a judge and this is for your initial appearance as

8    well as your first bond hearing.

9              Miss Williams, I'm going to ask you to go ahead

10   and provide the State's position, if you would, on the

11   current bond setting for Mr. Moss.

12             MS. WILLIAMS:    Your Honor, so Mr. Moss does not

13   have any prior felony convictions and I don't show any prior

14   arrests.  I do believe, however, that strongly contributed

15   to by him only being 18 years old.  As far as getting to the

16   facts of this case, on or about May 19, 2019, police

17   responded to a call for a robbery.  They made contact with

18   the victim who stated he had parked his car in front of his

19   residence and as he got out he was approached by an

20   unidentified male that was armed with two handguns and the

21   male struck the victim in the arm with one handgun and

22   ordered him out of the vehicle.  The victim dropped his keys

23   and ran away and he witnessed the defendant drive away in

24   his vehicle.

25             The vehicle was later located by the OnStar

1    system and a canine dog was able to track the scent of the

2    defendant from the vehicle to a nearby residence that was

3    possibly approximately a hundred feet away from the

4    vehicle where the defendant was inside cutting off his

5    locks.  At that time he was taken into custody and he was

6    identified from a photo line-up.

7              THE COURT:   Where did this robbery occur at?

8              MS. WILLIAMS:   I show it occurring in the 1900

9    block of Angelrodt Street.

10             THE COURT:   Is that in the City of St. Louis?

11             MS. WILLIAMS:   Yes, Your Honor.

12             THE COURT:   At that time was the defendant held

13   and taken into custody?

14             MS. WILLIAMS:   Yes.

15             THE COURT:   As far as you know was there any

16   statements made by the defendant allegedly?

17             MS. WILLIAMS:   I don't have any statements that

18   were made by him based off of the PC statements.  I just

19   have that he was identified from a photo line-up.

20             THE COURT:   Okay.  Miss Gorman, you may inquire.

21             MS. GORMAN:   Louendo, I'm going to ask you a

22   couple of questions and then I have an argument to make to

23   the court.  The first question I have for you is how long

24   have you lived in St. Louis, where do you live, and who do

25   you live with?

1              THE DEFENDANT:    I never stayed in St. Louis.  I

2    have always stayed in East St. Louis with my grandmother at

3    4303 Caseyville in East St. Louis, Illinois.  63204 is the

4    Zip Code.

5              MS. GORMAN:    And, sir, how far did you go in

6    school?  Are you a graduate of high school?  Were you still

7    in high school?

8              THE DEFENDANT:    Yes.  I have my high school

9    diploma.  I have finished the 12 grade and I'm currently

10   enrolled in Swift, but I supposed to be going up there on

11   the 1st of August to get enrolled, but then I missed it.  I

12   overslept, so I supposed to be going back on the 6th so I

13   can get my papers so I can start Swift on the 15th.

14             MS. GORMAN:    Sir, and so you graduated from high

15   school and it's your intention to pursue a higher education?

16             THE DEFENDANT:    Yes.

17             MS. GORMAN:    So I take it at this point and time

18   having just graduated high school and trying to move on to

19   college, do you have a job?

20             THE DEFENDANT:    Yes, ma'am.  I have worked in

21   Sauget, Illinois.  I have worked at KFC, Kentucky Fried

22   Chicken in Cahokia, Illinois.  Like, 9.25 an hour.  I was

23   getting paid like maybe $10 an hour.  I was working there

24   for like a week and when the warrant was issued I was

25   actually not aware of it and then the police came and had me

1    for some charges in St. Louis.

2                    MS. GORMAN:    Okay, sir.  That's all the questions

3    I have.  I just have argument for the Court.

4                    THE COURT:    I have a couple of questions, please,

5    Miss Gorman.  You heard Miss Williams indicate that the

6    police canine tracked the defendant to a home on Anglerodt

7    Street.  That's within the City of St. Louis?

8                    MS. WILLIAMS:    Correct.

9                    THE COURT:    Your client just testified that he has

10   never lived in St. Louis.  He's only lived in East St. Louis

11   his entire life with his grandmother.  So I'm curious whose

12   house was he on Angelrodt?

13                   MS. GORMAN:    Did you hear the Judge, Mr. Moss?

14                   THE DEFENDANT:    Yes.

15                   MS. GORMAN:    He's asking who resides at 1924

16   Angelrodt Street, if you know?

17                   THE DEFENDANT:    Oh, that was my girlfriend's

18   house.  That wasn't my family members.  I was at my

19   girlfriend's house.

20                   THE COURT:    You also indicated, Miss Williams, I

21   just want to make sure I understood correctly, that the

22   defendant when he was apprehended in the house he was in the

23   process of cutting off his locks.  I just want to clarify

24   that for the record.  That he was cutting his hair, is that

25   correct?

Dixon v. City of St. Louis, 04928

1                    MS. WILLIAMS:   Correct, Your Honor.

2                    THE COURT:   Was there ever any show up

3      identification by the victim of this defendant?

4                    MS. WILLIAMS:   Yes.  He was picked out of a photo

5      line-up by the victim.

6                    THE COURT:   He was not shown at a show up.  A show

7      up is where the victim is taken to the police where the

8      defendant may have been or vice-versa and make an in person

9      identification.

10                   MS. WILLIAMS:   No.  He was pulled from my

11     understanding and I have the copy of the photo line-up.  He

12     was pulled from a photo line-up.  Not in person.

13                   THE COURT:   You may or may not know the answer to

14     this question, Miss Williams.  But how long after the

15     incident, the actual robbery, was Mr. Moss apprehended?

16                   MS. WILLIAMS:   Your Honor, I'm not sure, but if

17     you give me a moment.  It looks like the time of the

18     occurrence is listed in the report as 1525.  So that's 3:25.

19     The time of the report was 3:30.

20                   THE COURT:   It sounds like a matter of minutes.

21                   MS. WILLIAMS:   Yes.  So it seems to have been

22     rather quickly because they tracked the vehicle with OnStar,

23     so I think they were able to track it rather quickly.  Given

24     that OnStar as soon as they -- if he activated it or as soon

25     as they call OnStar it activates it.  I'm not a hundred

1    percent sure how OnStar works so don't let me tell you a

2    story, but it was tracked with OnStar and found because all

3    they had to do was track it.  But that time frame I can't

4    speak to for sure.

5              THE COURT:   Anything else you want to add?

6              MS. WILLIAMS:   No, Your Honor.  I mean, it's a

7    dangerous -- there was a firearm involved.  He did actually

8    injure the victim, which is most concerning, although I do

9    understand he does not have any prior criminal history.

10             THE COURT:   Was a firearm recovered at the scene?

11   Do you know the answer to that question?

12             MS. WILLIAMS:   I haven't had enough time to go

13   through the report to know, Your Honor.  I didn't -- I don't

14   want to say yes or no.  I don't know.  But not based off the

15   PC statement.

16             THE COURT:   Miss Gorman, argument on behalf of

17   your client?

18             MS. GORMAN:   It would appear, Your Honor, if this

19   car was tracked as quickly as the Probable Cause Statement

20   indicates it's curious to me why he was not arrested and

21   charged on a 24-hour hold and applied for in custody

22   warrant.

23             It would appear to me that, obviously, Mr. Moss

24   was taken into custody without incident.  He was not

25   charged with this crime until June 13, 2019, almost a

1    month later.  He was only 18 by five days, Your Honor, at

2    the time this incident was committed, and despite the

3    allegations that he had two handguns no shots were alleged

4    to have been fired.  You know, the victim is claiming that

5    he was hit with a gun in the arm, but not actually shot by

6    any means.

7              It doesn't appear that there was any resisting

8    or anything else when he was taken into custody.  Given

9    his young age, and given the probability of the outcome

10   even if everything in the Probable Cause Statement is

11   later proven true beyond a reasonable doubt, given

12   Mr. Moss's extremely young age and lack of criminal

13   history, I think that there is a high likelihood this case

14   would end in a dropping of the ACA and probation, just

15   relatively speaking.

16             That being said, I don't think that it's

17   appropriate to hold Mr. Moss without bond under these

18   facts.  We don't have a serious physical injury.  It would

19   appear that the car was recovered and recovered, in fact,

20   so we don't have, you know, the loss of property by the

21   victim.

22             I do understand that if the Probable Cause

23   Statement is assumed to be true, obviously, that would be

24   scary, but it also shows there was not a high speed chase

25   or anything like this.  When confronted by police Mr. Moss

1   was perfectly compliant.

2                    That being said, I understand the charges are

3   serious.  I would ask that the Court if it's not so

4   inclined to give him a recognizance bond with a GPS and

5   Emass to set the bond at $5,000 cash only so that the

6   defendant is eligible to reach out to the Bail Project to

7   post his bond.

8                    THE COURT:    Thank you very much.

9   Mr. Commissioner, anything you would like to add?

10                    BOND COMMISSIONER:    Judge, other than Mr. Moss

11   gave us a complete interview, if the Court chooses to I can

12   relay what he stated to us.

13                    THE COURT:    Is it essentially the same thing?

14                    BOND COMMISSIONER:    It's basically the same thing

15   he had stated to you.  That information is being

16   corroborated by his interview with us.

17                    THE COURT:    Okay.

18                    MS. GORMAN:    If you were to be placed on GPS

19   monitoring, Mr. Moss, the cost is approximately $10 per day.

20   Right around $300 a month.  If the Court were to grant you a

21   bond and make that a special condition would you be able to

22   comply with that condition?

23                    THE DEFENDANT:    Yes, ma'am, I would be able to

24   comply with that condition.  I would go back to my job and

25   start back working and start back and pay you guys the GPS

1    monitoring, and I will let you guys monitor me and I will

2    also bring job papers to show where I'm getting money from,

3    and also let you guys have me on GPS and be compliant with

4    your allegations.

5              THE COURT:    All right.  The Court's only concern

6    right now is the age of the defendant being only 18.  He's

7    indicated to the Court he has lived in East St. Louis his

8    entire life with his grandmother.  What's her name?

9              THE DEFENDANT:    Hortense Moss.

10             THE COURT:    And who else lives at that home with

11   Miss Moss?

12             THE DEFENDANT:    Her husband Brad Moss.  I think

13   it's Brad Moss.  I'm not really sure.  He was married into

14   the family through her and I think my dad stays there, but

15   like his name is on but he don't be there.  He has his own

16   house and stuff like that with his own girlfriend.  His

17   girlfriend has her own house and he stays with her, but his

18   name is still on the lease if that makes sense.

19             THE COURT:    Here's what I'm inclined to do.  I'm

20   inclined to reduce the defendant's bond to $5,000 cash only

21   with conditions.  One, that he maintain full time employment

22   if he's not in school.  If he is in school full-time then

23   the Court will order him to at least maintain some type of

24   part-time employment.

25             The Court is going to order that the defendant

Dixon v. City of St. Louis, 04933

1    be monitored by GPS through Emass and that the defendant

2    pay for those services whatever they may be.  The Court is

3    going to order, let me ask you this, Mr. Moss.  Aside from

4    your girlfriend, do you have any other reason to be in the

5    City of St. Louis?

6                    THE DEFENDANT:    No, sir, your Honor.

7                    THE COURT:    Good.  The Court is going to order

8    that the defendant not venture into the City of St. Louis

9    for any reason other than educational purposes, employment

10   purposes, to attend all of his court dates, or to meet with

11   his attorney, whoever eventually enters on this case.

12                   MS. WILLIAMS:    So you're doing 5,000, GPS

13   monitoring upon release, the curfew.

14                   THE COURT:    What is your work hours generally,

15   Mr. Moss?

16                   THE DEFENDANT:    Normally when I was working at KFC

17   I had worked hours from 9:30 to 4:30.  When I was working at

18   Holties Meat Company it was like 12:00 to 1:00.

19                   THE COURT:    Stop right there.  Twelve, what, to

20   one?  What are we talking about there?

21                   THE DEFENDANT:    Like 12:00 in the afternoon.  Like

22   in the afternoon from like 12:00 to 1:00, but it was like

23   that was -- they will just call me up there at Holties and

24   tell me come if they need me because I was such a good

25   worker.  But I normally go into work from 2:00 to 10:00, but

Dixon v. City of St. Louis, 04934

1    I stay overtime.  But if I tell them I'm on a GPS monitor

2    they'll understand and I can be home at a certain time.  Not

3    1 a.m.  Like.1:00 p.m.

4              MS. WILLIAMS:    Midnight to 1:00 p.m. is what he is

5    saying.

6              THE COURT:    Mr. Moss, obviously, I've indicated

7    and you've indicated to me that you intend to go back to

8    school, right?  That you are registering with college?

9              THE DEFENDANT:    Yes, sir.

10             THE COURT:    I want to encourage you to do that.

11   If that is the case, that's why I said you either be

12   gainfully employed full time or if you were in school at

13   least maintain part time employment.  Now with that said, I

14   do not want you out running the streets at 12:00, 1:00,

15   2:00 o'clock in the morning if you're in school and working,

16   so that's not going to fly.

17             I'm going to maintain a curfew for you, but I

18   want to be reasonable because I want you to be able to

19   work part-time and go to school either full or part time.

20   But there is a limitation on my willingness to let you be

21   out on the street at all times in the morning.

22             So, Miss Williams, what do you think is an

23   appropriate time for an 18 year-old to be working no later

24   than at night?

25             MS. WILLIAMS:   My mother wouldn't let me work past

1    9 o'clock.  So I would think special conditions of GPS

2    monitoring, being either in school and/or employed are fine.

3    I would do a curfew of 9:00 or 10:00 p.m and I would request

4    no firearms.

5              MS. GORMAN:    Judge, I would add to that just given

6    the nature as far as work and if that's what he's typically

7    done, my grandma always said nothing good ever happens after

8    midnight.  So I would ask for something closer to

9    11:00 o'clock that would give the employer some flexibility

10   to work with his schedule since it sounds like if he would

11   be in school during the day he will probably be working

12   evenings.  That would give him more flexibility to work and

13   pay for the GPS.  That being said, I think 11:00 o'clock is

14   appropriate.  I think that no weapons is also an appropriate

15   restriction on bond.

16             THE COURT:    Mr. Moss, you have a 11:00 p.m.

17   curfew.  So whatever employment you get you and your

18   employer are going to have to work around that schedule.

19             MS. WILLIAMS:    11:00 to what time, Your Honor?

20             THE COURT:    No.  He should be back in the house no

21   later than 11:00 p.m.

22             MS. WILLIAMS:    What is the cut-off in the morning?

23   There's not a morning curfew?

24             THE COURT:    No.  There's not a morning curfew.

25   I'm not going to add a morning time.  You are to be in the

Dixon v. City of St. Louis, 04936

1 house no later than 11:00 p.m.  That includes your

2 transportation from work and back home or whatever.  All

3 right.

4           Also, I'm going to order that you not possess

5 any firearms at all and that you stay away from the victim

6 in this case and have no contact with him whatsoever

7 either personally or via social media, telephone, text,

8 email, Facebook, Facetime, or whatever.  I want that in

9 the order as well.  Any violation of any of those terms or

10 conditions of bond, Mr. Moss, will result in that bond

11 being revoked and you will be subject to rearrest and

12 placed back in jail until your court date.

13           Now, in the meantime we're going to pass this

14 case until August 26th, which is next Monday at 10:30 a.m.

15 for bond review.  That means if you get out between now

16 and next Monday you need to show up in court at 10:30 a.m.

17 That is one of the exceptions when you can come to St.

18 Louis to come to court or meet with an attorney.

19           Also, I'm going to order that you meet with and

20 fill out an application with the Public Defenders here at

21 the courthouse, which is located on the 6th floor of the

22 Carnahan Courthouse when you're here that day.  That

23 morning.

24           THE DEFENDANT:   Okay.  Before 10:30?

25           THE COURT:   You can do it when you get done here

1    in the courtroom, but I want you to take this opportunity

2    next Monday to interview with the Public Defender's Office.

3               THE DEFENDANT:    All right.

4               THE COURT:    Have you understood everything that

5    I've said?

6               THE DEFENDANT:    Yes, sir, Your Honor.  Fully.

7               THE COURT:    Do you have any questions?

8               THE DEFENDANT:    No, sir.

9               THE COURT:    Do you think you can adhere to the

10   conditions of this bond if, in fact, if you make this bond?

11              THE DEFENDANT:    Yes, sir.  I can and will comply

12   with the regulations.

13              THE COURT:    Last, but not least, I'm going to

14   direct you to interview with the Bail Project individuals

15   that have been making bails at this time for people accused

16   of crimes in the City of St. Louis.  You need to do that as

17   soon as possible.  If you are not released by next Monday

18   you will appear on a video again and we will discuss your

19   bond conditions again at that time.  But you have to make

20   the effort to apply with the Bail Project personnel.  That

21   will be the Court's order.  That will complete the record in

22   this matter.

23              (End of proceedings.)

24

25

1                         CERTIFICATE

2              I, Margaret R. Cole, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on August

5    19, 2019,  I was present and reported all the proceedings

6    had in the case of State of Missouri, Plaintiff, vs. Louendo

7    Moss, Defendant, Cause No. 1922-CR01811.

8              I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15

16                         /s/Margaret R. Cole

17                         MARGARET R. COLE, CCR

18                              #494

19

20   Date:

21

22

23

24

25

# EXHIBIT 181

1

1              IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                           STATE OF MISSOURI
2                  Honorable Joseph P. Whyte, Judge

3

4

5      STATE OF MISSOURI,              )
                                       )
6                      Plaintiff,      )
                                       ) Cause #1922-CR01943
7               Vs.                    )
                                       )
8      MAHDI GAYAR,                    )
                                       )
9                      Defendant.      )

10

11

12
              TRANSCRIPT OF FIRST APPEARANCE HEARING
13                        July 3, 2019

14

15

16     Ms. Shelby Cowley
       Attorney at Law
17     On behalf of the Defendant.

18

19

20

21

22            TINA MARIE CATLETT, CCR #946
                OFFICIAL COURT REPORTER
           CITY OF ST. LOUIS CIRCUIT COURT
23         TWENTY-SECOND JUDICIAL CIRCUIT

24

25

Dixon v. City of St. Louis 05179

```
1              (The following proceedings were had in
2    open court:)

3

4              THE COURT:  We are on the record in
5    cause number 1922-CR01943, State of Missouri
6    against Mahdi Gayar.  This is a bond reduction
7    hearing being conducted without the defendant
8    present because his counsel has waived his presence
9    in writing at this hearing today.  I've read your
10   motion, counsel.  Would you identify yourself for
11   the record and tell me what you want me to hear.
12              MS. COWLEY:  Shelby Cowley for defendant
13   Mahdi Gayar.  This charge is a result of an
14   accident that happened back in December of 2017.
15   Mr. Gayar has no significant criminal history.  He
16   has a significant number of traffic tickets on his
17   record.  I just spoke to Jeff about that.
18   Mr. Gayar is willing to surrender his passport.  In
19   the probable cause statement, the police officer
20   noted that he's originally from Iraq.  That is
21   true.  His family fled Iraq when he was 9 years
22   old.  He has now an American citizen.  He became a
23   citizen in 2014.  He has not been back to Iraq, has
24   no plans to, but should the court deem it
25   appropriate, he's willing to surrender his passport
```

3

1   pending the outcome of this case.  Another issue

2   that we talked about is his driving record and

3   potentially being or the court viewing him as a

4   danger to society.  He's willing to surrender his

5   driver's license pending the outcome of this case

6   as well and make himself available to EMass should

7   the court deem that appropriate as well.

8           Mr. Gayar is 18 years old.  He will be

9   19 next week.  He was severely injured in the

10  accident and is receiving ongoing medical treatment

11  as a result of that.  And we think a no bond

12  allowed which is currently what is set is

13  unreasonable and excessive for this kind of case.

14  And in my motion, I gave the suggestion of a

15  reasonable bond being set at $50,000, 10 percent

16  surety.  I think that's about it for the defense.

17          MR. ESTES:  Your Honor, I have a number

18  of family members here.  I would like to have at

19  least one speak to the court.

20          THE COURT:  I will listen to all that

21  want to talk to me.

22          DAVE DOMIAN:  I am Dave Domian,

23  D-O-M-I-A-N?

24          THE COURT:  Are you Daniel Domian's

25  father.

1          DAVE DOMIAN:  I am Daniel Domian's twin

2     brother.

3          THE COURT:  Twin brother.

4          DAVE DOMIAN:  Dan Domian was a lovable

5     man and he was loved.  We have a big family.  He

6     was married.  His mother is 97.  His wife of 20

7     years is here.  We have suffered a tremendous loss.

8     There is a lot of loneliness and sadness in this

9     family.  Dan was the individual who could walk in

10    and smile and make such a difference in people's

11    lives.  He did that all of the time for a lot of

12    people.  We didn't know until actually the funeral

13    how big an impact this guy actually had on people

14    that we had not even met.  But it's been a

15    tremendous hardship on his wife both emotionally,

16    financially, physically, his mother of 97 years and

17    just the entire family.  He was -- He was so well

18    thought of, so well loved.  This has just been a

19    devastating loss.  I know there's nothing we can do

20    to bring him back.  It has been a long time to get

21    here.  And we are just looking whatever justice can

22    come of this.  It could have been anyone out there.

23    It happened to be Dan.  And -- Anybody's family,

24    anybody's kids, anybody's grand kids.  It

25    just painful.  It's a tragedy.  It's a tragedy.  We

1     just really want to support first his wife.  She's

2     the one that needs it most, and just do whatever we

3     can to see that justice is served.

4              MR. ESTES:  His wife is here by the way

5     but I think she was too nervous to say anything.  I

6     will double-check.

7              THE COURT:  That's understandable.

8     Mr. Domian, do you mind if I ask you a couple of

9     questions about this?

10             Ma'am, did you want to speak?

11             PAM DOMIAN:  Yeah.  I'm Dan's wife, Pam

12    Domian.  I wanted to -- since the day of the

13    accident, I've lost my most bestest friend.  Dan

14    and I had such a wonderful love relationship and

15    the loss has been so devastating to me.  It was

16    just the two of us.  We had no kids.  We had a cat

17    and a dog.  Every day his plan for the day was

18    always to take care of me.  He would like to make

19    me breakfast.  He would make my lunch for work.  He

20    would want to take me to work because we had time

21    together, you know.  Then he would pick me up.  He

22    would call me to say I'm coming, coming to get you.

23    He would be so happy.  He was the most joyfulest

24    man I've ever known.  We were so happy and we

25    laughed every day and I've not had a day where I've

Dixon v. City of St. Louis 05183

6

1    had a good laugh since his passing.  I just can't

2    imagine how each day I make it through it because

3    it has been so horribly hard not to have him with

4    me.

5            THE COURT:  Well, I want to tell both of

6    you that I'm very sorry for your loss.  What I'm

7    supposed to do here this morning really doesn't

8    have much to do with the ultimate outcome of the

9    case, the justice.

10           PAM DOMIAN:  I understand.

11           THE COURT:  What I'm supposed to do is

12   to assure that this man comes back to court to face

13   these charges.  I'm supposed to determine whether

14   he's a danger to society.  Are you opposed to me

15   releasing him on some sort of bond that would be

16   significant financially and would require him to

17   surrender his driver's license and surrender his

18   passport so that we can be sure that he comes back

19   to court and stands trial or pleads guilty to these

20   charges?

21           And I will just say, you know, he's 18

22   years old.  Little more than a kid.  I haven't been

23   provided any information that he was intoxicated.

24   I don't know what time this happened.

25           PAM DOMIAN:  It happened at like 3:30 in

Dixon v. City of St. Louis 05184

1    the afternoon.

2              MR. ESTES:  On Gravois.  He was doing

3    90.  He was tested.  He was not intoxicated.  Just

4    driving like --

5              PAM DOMIAN:  I don't know why he felt

6    the need that he needed to drive so reckless.

7              THE COURT:  I don't think I can answer

8    that for you either.  It took a lot of guts for

9    both of you to come in here this morning.

10             PAM DOMIAN:  I fear for other people out

11   there should he decide if he's not monitored and he

12   gets behind a wheel, I don't think he cares whether

13   he has a license or not that he would drive again

14   and someone else could be hurt.  I fear that.  You

15   know, my family and Dan's family, they live in

16   Affton and I live in South City.  We have family in

17   South City.  You know, I lay in bed at night and I

18   hear people racing down Holly Hills and

19   Kingshighway and I wonder to myself if it's him or

20   if it's some other kid that he knows.  It's scarey.

21   It's terrifying.

22             MR. ESTES:  Don't they use your ally

23   too?

24             PAM DOMIAN:  Yeah, they've got family

25   that go down my ally every day.

1          MR. ESTES:  Speaking specifically now

2     about defendant's family.

3          PAM DOMIAN:  Correct.  They live on

4     Eichelberger so it's a quick down to their

5     backyard, I would guess.

6          THE COURT:  Is there anything else from

7     the State?

8          MR. ESTES:  Well, Your Honor, I don't

9     think we have any other family that wanted to say

10    anything.  I do have a brief argument to make.

11    First of all, we are not necessarily asking he be

12    held with no bond, but we want a pretty significant

13    bond on him.  Counsel advised they don't have a lot

14    of money.  They had a Maserati, an expensive car

15    even though it was a used car.  So I would suggest

16    maybe $100,000 or $200,000 would be more

17    appropriate than $50,000.  I appreciate counsel's

18    offer to surrender his driver's license if you

19    would let him out, we would agree that would be

20    necessary, and further ordered not to drive.  I

21    appreciate the offer for him to report to EMass, we

22    would agree with that too, and we would also like

23    him to be on electronic monitoring so we can figure

24    out if he is on the monitor going really, really,

25    really fast, we can figure out that he's driving,

1    and of course we would like for him to surrender

2    his passport.  I appreciate the offer in advance of

3    them offering for him to surrender his passport as

4    well.

5            We do have a very strong case.  We have

6    the forensic evidence from the company that shows

7    they were doing 90 miles an hour.  We have a

8    witness who said that he passed by so fast it

9    rocked her Jeep Cherokee.  She's a nurse.  She got

10   out and tried to help.  And she guesstimated 80

11   miles an hour was the speed.  That's a pretty good

12   estimate but kind of confirms the technical data.

13   Multiple people know that he was driving, so we

14   have a really solid case.

15           THE COURT:  It's going to be the order

16   of the court that the motion be granted, that bond

17   will be set at $225,000, 10 percent or surety

18   authorized, EMass reporting, surrender his

19   passport, surrender his driver's license and

20   electronic monitoring.  I'm going to say house

21   arrest with electronic monitoring.

22           MR. ESTES:  He does have a job I

23   understand and I think he's starting school in the

24   fall.  I think it would be appropriate to let him

25   go to those.

 1          MS. COWLEY:  That is correct.  I'm sure

 2    EMass can work out his schedule as far as work and

 3    school goes unless you want to impose a curfew.

 4          THE COURT:  What is his job?

 5          MS. COWLEY:  He works at a mechanic

 6    shop.

 7          THE COURT:  So during normal business

 8    hours.

 9          MS. COWLEY:  Normal business hours.

10          THE COURT:  And school is he going to go

11    in the day.

12          MS. COWLEY:  It's in the day.

13          THE COURT:  I'm going to have a six p.m.

14    curfew.  I didn't know this was going to be on.  I

15    don't have an order.  If you want to write it up.

16          MS. COWLEY:  I will write it up for you.

17          THE COURT:  The ones that I have assumed

18    that it was a 48-hour first appearance.  Again, I'm

19    sorry for your loss.

20          PAM DOMIAN:  Thank you.

21          THE COURT:  I'm trying to do what's

22    right here and what I'm constrained to do under the

23    law.  I believe that the conditions that I've set

24    will protect the public and ensure that this

25    defendant returns to court and answers these

11

1    charges.

2              PAM DOMIAN:  Thank you.

3              THE COURT:  Thank you.

4              MR. ESTES:  Thank you, Your Honor.

5              MS. COWLEY:  Thank you.

6              (The hearing was concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **CERTIFICATE**

2

3              I, Tina Marie Catlett, Certified Court

4       Reporter, do hereby certify that I am an official

5       court reporter for the Circuit Court of the City of

6       St. Louis, State of Missouri, that on July 3, 2019,

7       I was present and reported all of the proceedings

8       had in the case of STATE OF MISSOURI, Plaintiff,

9       vs. MAHDI GAYAR, Defendant, Cause No. 1922-CR01943.

10             I further certify that the foregoing pages

11      contain a true and accurate reproduction of the

12      proceedings.

13

14

15

16                              *Tina Marie Catlett, CCR #946*

17

18

19

20

21

22

23

24

25

## #

**#1922-CR01943** [1] - 1:6
**#946** [2] - 1:21, 12:16

## $

**$100,000** [1] - 8:16
**$200,000** [1] - 8:16
**$225,000** [1] - 9:17
**$50,000** [2] - 3:15, 8:17

## 1

**10** [2] - 3:15, 9:17
**18** [1] - 3:8, 6:21
**19** [1] - 3:9
**1922-CR01943** [2] - 2:5, 12:9

## 2

**20** [1] - 4:6
**2014** [1] - 2:23
**2017** [1] - 2:14
**2019** [2] - 1:13, 12:6

## 3

**3** [2] - 1:13, 12:6
**3:30** [1] - 6:25

## 4

**48-hour** [1] - 10:18

## 8

**80** [1] - 9:10

## 9

**9** [1] - 2:21
**90** [2] - 7:3, 9:7
**97** [2] - 4:6, 4:16

## A

**accident** [3] - 2:14, 3:10, 5:13
**accurate** [1] - 12:11
**advance** [1] - 9:2
**advised** [1] - 8:13
**Affton** [1] - 7:16
**afternoon** [1] - 7:1
**agree** [2] - 8:19, 8:22
**allowed** [1] - 3:12
**ally** [2] - 7:22, 7:25

**American** [1] - 2:22
**answer** [1] - 7:7
**answers** [1] - 10:25
**APPEARANCE** [1] - 1:12
**appearance** [1] - 10:18
**appreciate** [3] - 8:17, 8:21, 9:2
**appropriate** [4] - 2:25, 3:7, 8:17, 9:24
**argument** [1] - 8:10
**arrest** [1] - 9:21
**assumed** [1] - 10:17
**assure** [1] - 6:12
**Attorney** [1] - 1:16
**authorized** [1] - 9:18
**available** [1] - 3:6

## B

**backyard** [1] - 8:5
**became** [1] - 2:22
**bed** [1] - 7:17
**behalf** [1] - 1:17
**behind** [1] - 7:12
**bestest** [1] - 5:13
**big** [2] - 4:5, 4:13
**bond** [7] - 2:6, 3:11, 3:15, 6:15, 8:12, 8:13, 9:16
**breakfast** [1] - 5:19
**brief** [1] - 8:10
**bring** [1] - 4:20
**brother** [2] - 4:2, 4:3
**business** [2] - 10:7, 10:9

## C

**car** [2] - 8:14, 8:15
**care** [1] - 5:18
**cares** [1] - 7:12
**case** [7] - 3:1, 3:5, 3:13, 6:9, 9:5, 9:14, 12:8
**cat** [1] - 5:16
**Catlett** [2] - 12:3, 12:16
**CATLETT** [1] - 1:21
**CCR** [2] - 1:21, 12:16
**CERTIFICATE** [1] - 12:1
**Certified** [1] - 12:3
**certify** [2] - 12:4, 12:10
**charge** [1] - 2:13
**charges** [3] - 6:13, 6:20, 11:1
**check** [1] - 5:6

**Cherokee** [1] - 9:9
**Circuit** [1] - 12:5
**CIRCUIT** [3] - 1:1, 1:22, 1:23
**citizen** [2] - 2:22, 2:23
**CITY** [2] - 1:1, 1:22
**City** [3] - 7:16, 7:17, 12:5
**coming** [1] - 5:22
**company** [1] - 9:6
**concluded** [1] - 11:6
**conditions** [1] - 10:23
**conducted** [1] - 2:7
**confirms** [1] - 9:12
**constrained** [1] - 10:22
**contain** [1] - 12:11
**correct** [2] - 8:3, 10:1
**counsel** [2] - 2:10, 8:13
**counsel's** [1] - 8:17
**couple** [1] - 5:8
**course** [1] - 9:1
**Court** [2] - 12:3, 12:5
**COURT** [20] - 1:1, 1:22, 1:22, 2:4, 3:20, 3:24, 4:3, 5:7, 6:5, 6:11, 7:7, 8:6, 9:15, 10:4, 10:7, 10:10, 10:13, 10:17, 10:21, 11:3
**court** [10] - 2:2, 2:24, 3:3, 3:7, 3:19, 6:12, 6:19, 9:16, 10:25, 12:5
**COWLEY** [7] - 2:12, 10:1, 10:5, 10:9, 10:12, 10:16, 11:5
**Cowley** [2] - 1:16, 2:12
**criminal** [1] - 2:15
**curfew** [2] - 10:3, 10:14

## D

**dan** [1] - 4:4
**Dan** [3] - 4:9, 4:23, 5:13
**Dan's** [2] - 5:11, 7:15
**danger** [1] - 3:4, 6:14
**Daniel** [2] - 3:24, 4:1
**data** [1] - 9:12
**DAVE** [3] - 3:22, 4:1, 4:4
**Dave** [1] - 3:22
**December** [1] - 2:14
**decide** [1] - 7:11
**deem** [1] - 2:24, 3:7
**defendant** [4] - 1:9,

**2:7, 2:12, 10:25
Defendant** [2] - 1:17, 12:9
**defendant's** [1] - 8:2
**defense** [1] - 3:16
**determine** [1] - 6:13
**devastating** [2] - 4:19, 5:15
**difference** [1] - 4:10
**dog** [1] - 5:17
**DOMIAN** [13] - 3:22, 3:23, 4:1, 4:4, 5:11, 6:10, 6:25, 7:5, 7:10, 7:24, 8:3, 10:20, 11:2
**domian** [1] - 5:8
**Domian** [3] - 3:22, 4:4, 5:12
**Domian's** [2] - 3:24, 4:1
**double** [1] - 5:6
**double-check** [1] - 5:6
**down** [3] - 7:18, 7:25, 8:4
**drive** [3] - 7:6, 7:13, 8:20
**driver's** [4] - 3:5, 6:17, 8:18, 9:19
**driving** [4] - 3:2, 7:4, 8:25, 9:13
**during** [1] - 10:7

## E

**Eichelberger** [1] - 8:4
**either** [1] - 7:8
**electronic** [3] - 8:23, 9:20, 9:21
**EMass** [4] - 3:6, 8:21, 9:18, 10:2
**emotionally** [1] - 4:15
**ensure** [1] - 10:24
**entire** [1] - 4:17
**ESTES** [8] - 3:17, 5:4, 7:2, 7:22, 8:1, 8:8, 9:22, 11:4
**estimate** [1] - 9:12
**evidence** [1] - 9:6
**excessive** [1] - 3:13
**expensive** [1] - 8:14

## F

**face** [1] - 6:12
**fall** [1] - 9:24
**family** [12] - 2:21, 3:18, 4:5, 4:9, 4:17, 4:23, 7:15, 7:16, 7:24, 8:2, 8:9
**far** [1] - 10:2

**fast** [2] - 8:25, 9:8
**father** [1] - 3:25
**fear** [2] - 7:10, 7:14
**felt** [1] - 7:5
**figure** [2] - 8:23, 8:25
**financially** [2] - 4:16, 6:16
**first** [3] - 5:1, 8:11, 10:18
**FIRST** [1] - 1:12
**fled** [1] - 2:21
**following** [1] - 2:1
**foregoing** [1] - 12:10
**forensic** [1] - 9:6
**friend** [1] - 5:13
**funeral** [1] - 4:12

## G

**GAYAR** [2] - 1:8, 12:9
**Gayar** [5] - 2:6, 2:13, 2:15, 2:18, 3:8
**grand** [1] - 4:24
**granted** [1] - 9:16
**Gravois** [1] - 7:2
**guess** [1] - 8:5
**guesstimated** [1] - 9:10
**guilty** [1] - 6:19
**guts** [1] - 7:8
**guy** [1] - 4:13

## H

**happy** [2] - 5:23, 5:24
**hard** [1] - 6:3
**hardship** [1] - 4:15
**hear** [2] - 2:11, 7:18
**HEARING** [1] - 1:12
**hearing** [3] - 2:7, 2:9, 11:6
**held** [1] - 8:12
**help** [1] - 9:10
**hereby** [1] - 12:4
**Hills** [1] - 7:18
**himself** [1] - 3:6
**history** [1] - 2:15
**Holly** [1] - 7:18
**Honor** [3] - 3:17, 8:8, 11:4
**Honorable** [1] - 1:2
**horribly** [1] - 6:3
**hour** [2] - 9:7, 9:11
**hours** [2] - 10:8, 10:9
**house** [1] - 9:20
**hurt** [1] - 7:14

## I

**identify** [1] - 2:10

CATLETT REPORTING

imagine [1] - 6:2
impact [1] - 4:13
impose [1] - 10:3
IN [1] - 1:12
individual [1] - 4:9
information [1] - 6:23
injured [1] - 3:9
intoxicated [2] - 6:23, 7:3
Iraq [3] - 2:20, 2:21, 2:23
issue [1] - 3:1

## J

Jeep [1] - 9:9
Jeff [1] - 2:17
job [2] - 9:22, 10:4
Joseph [1] - 1:2
joyfulest [1] - 5:23
Judge [1] - 1:2
JUDICIAL [1] - 1:23
July [2] - 1:13, 12:6
justice [3] - 4:21, 5:3, 6:9

## K

kid [2] - 6:22, 7:20
kids [3] - 4:24, 5:16
kind [2] - 3:13, 9:12
Kingshighway [1] - 7:19
known [1] - 5:24
knows [1] - 7:20

## L

laugh [1] - 6:1
laughed [1] - 5:25
Law [1] - 1:16
law [1] - 10:23
lay [1] - 7:17
least [1] - 3:19
license [5] - 3:5, 6:17, 7:13, 8:18, 9:19
listen [1] - 3:20
live [3] - 7:15, 7:16, 8:3
lives [1] - 4:11
loneliness [1] - 4:8
looking [1] - 4:21
loss [5] - 4:7, 4:19, 5:15, 6:6, 10:19
lost [1] - 5:13
Louis [1] - 12:6
LOUIS [2] - 1:1, 1:22
lovable [1] - 4:4
love [1] - 5:14
loved [2] - 4:5, 4:18

lunch [1] - 5:19

## M

ma'am [1] - 5:10
MAHDI [2] - 1:8, 12:9
Mahdi [2] - 2:6, 2:13
man [3] - 4:5, 5:24, 6:12
MARIE [1] - 1:21
Marie [2] - 12:3, 12:16
married [1] - 4:6
Maserati [1] - 8:14
mechanic [1] - 10:5
medical [1] - 3:10
members [1] - 3:18
met [1] - 4:14
miles [1] - 9:7, 9:11
mind [1] - 5:8
MISSOURI [3] - 1:1, 1:5, 12:8
Missouri [2] - 2:5, 12:6
money [1] - 8:14
monitor [1] - 8:24
monitored [1] - 7:11
monitoring [3] - 8:23, 9:20, 9:21
morning [2] - 6:7, 7:9
most [3] - 5:2, 5:13, 5:23
mother [2] - 4:6, 4:16
motion [3] - 2:10, 3:14, 9:16
MR [8] - 3:17, 5:4, 7:2, 7:22, 8:1, 8:8, 9:22, 11:4
MS [7] - 2:12, 10:1, 10:5, 10:9, 10:12, 10:16, 11:5
multiple [1] - 9:13

## N

necessarily [1] - 8:11
necessary [1] - 8:20
need [1] - 7:6
needed [1] - 7:6
needs [1] - 5:2
nervous [1] - 5:5
next [1] - 3:9
night [1] - 7:17
normal [2] - 10:7, 10:9
noted [1] - 2:20
nothing [1] - 4:19
number [3] - 2:5, 2:16, 3:17
nurse [1] - 9:9

## O

OF [7] - 1:1, 1:1, 1:5, 1:12, 1:22, 12:8
offer [3] - 8:18, 8:21, 9:2
offering [1] - 9:3
officer [1] - 2:19
OFFICIAL [1] - 1:22
official [1] - 12:4
old [3] - 2:22, 3:8, 6:22
one [2] - 3:19, 5:2
ones [1] - 10:17
ongoing [1] - 3:15
open [1] - 2:2
opposed [1] - 6:14
order [2] - 9:15, 10:15
ordered [1] - 8:20
originally [1] - 2:20
outcome [3] - 3:1, 3:5, 6:8

## P

p.m [1] - 10:13
pages [1] - 12:10
painful [1] - 4:25
PAM [9] - 5:11, 6:10, 6:25, 7:5, 7:10, 7:24, 8:3, 10:20, 11:2
Pam [1] - 5:11
passed [1] - 9:8
passing [1] - 6:1
passport [6] - 2:18, 2:25, 6:18, 9:2, 9:3, 9:19
pending [2] - 3:1, 3:5
people [5] - 4:12, 4:13, 7:10, 7:18, 9:13
people's [1] - 4:10
percent [2] - 3:15, 9:17
physically [1] - 4:16
pick [1] - 5:21
Plaintiff [2] - 1:6, 12:8
plan [1] - 5:17
plans [1] - 2:24
pleads [1] - 6:19
police [1] - 2:19
potentially [1] - 3:3
presence [1] - 2:8
present [2] - 2:8, 12:7
pretty [2] - 8:12, 9:11
probable [1] - 2:19
proceedings [3] - 2:1, 12:7, 12:12
protect [1] - 10:24
provided [1] - 6:23

public [1] - 10:24

## Q

questions [1] - 5:9
quick [1] - 8:4

## R

racing [1] - 7:18
read [1] - 2:9
really [6] - 5:1, 6:7, 8:24, 8:25, 9:14
reasonable [1] - 3:15
receiving [1] - 3:10
reckless [1] - 7:6
record [4] - 2:4, 2:11, 2:17, 3:2
reduction [1] - 2:6
relationship [1] - 5:14
releasing [1] - 6:15
report [1] - 8:21
reported [1] - 12:7
REPORTER [1] - 1:22
Reporter [1] - 12:4
reporter [1] - 12:5
reporting [1] - 9:18
reproduction [1] - 12:11
require [1] - 6:16
result [2] - 2:13, 3:11
returns [1] - 10:25
rocked [1] - 9:9

## S

sadness [1] - 4:8
scarey [1] - 7:20
schedule [1] - 10:2
school [3] - 9:23, 10:3, 10:10
SECOND [1] - 1:23
see [1] - 5:3
served [1] - 5:3
set [4] - 3:12, 3:15, 9:17, 10:23
severely [1] - 3:9
Shelby [1] - 1:16
shelby [1] - 2:12
shop [1] - 10:6
shows [1] - 9:6
significant [4] - 2:15, 2:16, 6:16, 8:12
six [1] - 10:13
smile [1] - 4:10
society [2] - 3:4, 6:14
solid [1] - 9:14
someone [1] - 7:14
sorry [2] - 6:6, 10:19
sort [1] - 6:15

South [2] - 7:16, 7:17
speaking [1] - 8:1
specifically [1] - 8:1
speed [1] - 9:11
ST [2] - 1:1, 1:22
St [1] - 12:6
stands [1] - 6:19
starting [1] - 9:23
STATE [3] - 1:1, 1:5, 12:8
State [3] - 2:5, 8:7, 12:6
statement [1] - 2:19
strong [1] - 9:5
suffered [1] - 4:7
suggest [1] - 8:15
suggestion [1] - 3:14
support [1] - 5:1
supposed [2] - 6:7, 6:11, 6:13
surety [2] - 3:16, 9:17
surrender [10] - 2:18, 2:25, 3:4, 6:17, 8:18, 9:1, 9:3, 9:18, 9:19

## T

technical [1] - 9:12
terrifying [1] - 7:21
tested [1] - 7:3
THE [19] - 1:1, 2:4, 3:20, 3:24, 4:3, 5:7, 6:5, 6:11, 7:7, 8:6, 9:15, 10:4, 10:7, 10:10, 10:13, 10:17, 10:21, 11:3
they've [1] - 7:24
tickets [1] - 2:16
Tina [2] - 12:3, 12:16
TINA [1] - 1:21
today [1] - 2:9
together [1] - 5:21
took [1] - 7:8
traffic [1] - 2:16
tragedy [2] - 4:25
TRANSCRIPT [1] - 1:12
treatment [1] - 3:10
tremendous [2] - 4:7, 4:15
trial [1] - 6:19
tried [1] - 9:10
true [2] - 2:21, 12:11
trying [1] - 10:21
TWENTY [1] - 1:23
TWENTY-SECOND [1] - 1:23
twin [2] - 4:1, 4:3
two [1] - 5:16

CATLETT REPORTING

## U

**ultimate** [1] - 6:8
**under** [1] - 10:22
**understandable** [1] - 5:7
**unless** [1] - 10:3
**unreasonable** [1] - 3:13
**up** [3] - 5:21, 10:15, 10:16

## V

**viewing** [1] - 3:3
**vs** [2] - 1:7, 12:9

## W

**waived** [1] - 2:8
**walk** [1] - 4:9
**week** [1] - 3:9
**wheel** [1] - 7:12
**Whyte** [1] - 1:2
**wife** [5] - 4:6, 4:15, 5:1, 5:4, 5:11
**willing** [3] - 2:18, 2:25, 3:4
**witness** [1] - 9:8
**wonder** [1] - 7:19
**wonderful** [1] - 5:14
**works** [1] - 10:5
**write** [2] - 10:15, 10:16
**writing** [1] - 2:9

## Y

**years** [5] - 2:21, 3:8, 4:7, 4:16, 6:22
**yourself** [1] - 2:10

CATLETT REPORTING

# EXHIBIT 182

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT


| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR03412 |
| | ) | |
| MAURICE K. THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**FIRST APPEARANCE HEARING**
_____

On Monday, October 28, 2019, the above-entitled cause came on regularly for hearing before the Honorable Clinton R. Wright, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

**APPEARANCES**

The State of Missouri was represented by Jonathan Phipps, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was represented by Eric Barnhart, Attorney at Law.


JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 05281

```
 1              THE COURT:  Good afternoon, Mr. Thomas.

 2              THE DEFENDANT:  How are you doing?

 3              THE COURT:  You're charged with unlawful

 4     possession of a firearm.  Let me pull your matter up.

 5     Mr. Thomas, it looks like you applied to the public

 6     defender's office.  For the record, this is

 7     1922-CR03412, State vs. Maurice Thomas.  Have you

 8     heard back yet if you have been accepted?

 9              THE DEFENDANT:  Huh-uh.  No.

10              THE SHERIFF:  You have to speak up because

11     the court reporter is recording everything.  So you

12     have to speak up.

13              THE COURT:  All right.  The State.

14          MR. PHIPPS:  Judge, first, the State would

15     request that the Court take judicial notice of its

16     file including the bond commissioner's report.

17              THE COURT:  I have read the bond

18     commissioner's report and the probable cause

19     statement.

20          MR. PHIPPS:  All right.  Judge, just to

21     truncate the facts here.  The State's great concern

22     with this would be that the defendant has admitted to

23     volunteering that he had this firearm knowing that he

24     shouldn't have possession of this firearm based off

25     the probable cause statement.  Additionally, we will
```

Dixon v. City of St. Louis05282

1    defer to the bond commissioner as to the defendant's

2    criminal history.

3           **BOND COMMISSIONER:**  Judge, Mr. Thomas' prior

4    convictions are in 2011 burglary second, two counts.

5    Two years probation.  And 2013, possession and sale of

6    manufacturing an illegal weapon, assault third, two

7    counts.  He was convicted in 2018 and got 90 days

8    confinement.  2016, possession of a controlled

9    substance.  Five years confinement.  2016, domestic

10   assault second, two counts of domestic assault third.

11   Seven years confinement.  2016, trafficking drugs

12   second, unlawful use of a weapon two counts,

13   distributing, delivery and manufacturing of controlled

14   substance, possession of drug paraphernalia.  Ten

15   years confinement.  The past -- the prior three

16   convictions are he's presently on parole for each one.

17          **THE COURT:**  Mr. Thomas, when were you

18   released on parole?

19          **THE DEFENDANT:**  April 4th.

20          **THE COURT:**  Of this year?

21          **THE DEFENDANT:**  Yes, sir.

22          **THE COURT:**  So you have several priors.  It

23   looks like they all probably were the same.  They were

24   disposed of all together.  Is that right?

25          **THE DEFENDANT:**  Yes, sir.

Dixon v. City of St. Louis05283

1          **THE COURT:**  Bond is currently 30,000 cash

2  only?

3          **MR. PHIPPS:**  That is correct, Judge.  And we

4  would be requesting that the bond be amended to

5  30,000, 10 percent authorized with Emass in addition

6  to no weapons and GPS monitoring.  We think

7  supervision would be necessary if he were out based

8  off of his prior history.

9          **THE COURT:**  All right.  Mr. Barnhart.

10          **MR. BARNHART:**  Thank you.

11          **THE COURT:**  I think I stated before it was

12  Mr. Thomas that had applied for a public defender.

13          **MR. BARNHART:**  I think he did.  I think

14  you're right.

15          Mr. Thomas, I'm Eric Barnhart.  I'm your

16  attorney for today only.  And have you applied for the

17  public defender yet?

18          **THE DEFENDANT:**  Yes.

19          **MR. BARNHART:**  Okay.  And I'm just going to

20  ask you a few questions.  I'm trying to get your bond

21  lowered.  The State has recommended it be lowered from

22  30,000 cash only to 30,000, 10 percent.  Is there

23  anybody in your family or friends that can afford

24  posting 3,000 with the Court to get you out?

25          **THE DEFENDANT:**  No, sir.

1        **MR. BARNHART:**  What do you think you can

2    afford, as I was going to ask for a 10 percent bond?

3        **THE DEFENDANT:**  I can probably come up with

4    a thousand.

5        **MR. BARNHART:**  Okay.  Like 10,000, 10

6    percent?  Okay.  Do you -- where would you be living

7    if you were released?

8        **THE DEFENDANT:**  With my girlfriend.

9        **MR. BARNHART:**  And what's that address.

10       **THE DEFENDANT:**  3004 Miami.

11       **MR. BARNHART:**  Did I already ask you are you

12   working at all?

13       **THE DEFENDANT:**  Yes.

14       **MR. BARNHART:**  Where are you working at?

15       **THE DEFENDANT:**  Faultless Linen.

16       **MR. BARNHART:**  Is that a full-time job.

17       **THE DEFENDANT:**  Yes, sir.

18       **MR. BARNHART:**  All right.  I'm going to do

19   the best I can for you, okay?

20       **THE DEFENDANT:**  Okay.

21       **MR. BARNHART:**  Judge, I'm asking for 10,000,

22   10 percent.  It is a D felony.  He does have a

23   full-time job.  He does have a stable residence.  The

24   way that they wrote the probable cause statement, a

25   lot of these are the same -- the same case number and

1    makes it look like he's got 20 priors.

2         **THE COURT:**  I saw that it was all one --

3         **MR. BARNHART:**  Right.

4         **THE COURT:**  -- resolution, although it's

5    problematic that he's been out since April and picks

6    this up again on parole.

7         **MR. BARNHART:**  I mean, I won't speculate but

8    sometimes people are afraid out there.  They have guns

9    for their protection.  I know he's not allowed to have

10   a gun.  That's if he had the gun.  You can have him

11   report to Emass, GPS with 10,000, 10 percent.  Thank

12   you.

13        **THE COURT:**  Anything else?

14        **MR. PHIPPS:**  No, Judge.

15        **THE COURT:**  Mr. Thomas, you know, as

16   Mr. Barnhart said as anyone will tell you, you're not

17   allowed to possess a firearm.  I recognize the fact

18   that in a sense an active crime didn't take place, but

19   for you a possession of a firearm is a crime.  You get

20   that, right?

21        **THE DEFENDANT:**  Yes, sir.

22        **THE COURT:**  The fact that you're working

23   full-time is a very positive thing, but that is

24   negated by the fact that you're riding around in this

25   particular state.

7

1           I will reduce the bond to 15,000, 10

2    percent.  And we'll set your matter again in case you

3    don't make that bond for November 4th at 10:30, and

4    also your next court date after that will be in

5    Division 25 at 9:15 on November -- I'm sorry.

6    Division 26 on November 26 at 9:15.  And there will be

7    conditions of Emass, GPS, and whatever else you all

8    had recommended.  That will conclude your record, all

9    right, Mr. Thomas?

10           **THE DEFENDANT:**  Yes, sir.

11           (End of proceeding.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis05287

```
 1                      CERTIFICATE

 2              I, Jenna L. Higgins, Certified Court

 3  Reporter, do hereby certify that I am an official

 4  court reporter for the Circuit Court of the City of

 5  St. Louis; that on October 28, 2019, I was present and

 6  reported all the proceedings had in the case of State

 7  of Missouri vs. Maurice K. Thomas,

 8  Cause No. 1922-CR03412.

 9              I further certify that the foregoing

10  pages contain a true and accurate reproduction of the

11  proceedings.

12

13

14              _Jenna L. Higgins_

15              Jenna L. Higgins, CCR 998
                    CSR (IL and MO)
16

17

18

19

20

21

22

23  TRANSCRIBED:  July 30, 2020

24

25
```

# EXHIBIT 183

1

```
                 IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                      22ND JUDICIAL CIRCUIT, DIVISION 16B
                       Honorable DAVID A. ROITHER, Judge


STATE OF MISSOURI,              )
                                )
                    Plaintiff,)
                                ) Cause No. 1922-CR02956
vs.                             )
                                )
PRESTON MONTGOMERY,             )
                                )
                    Defendant.)


            TRANSCRIPT OF PROCEEDINGS/INITIAL APPEARANCE

            The following proceedings were had in Division 16B

of the 22nd Judicial Circuit, City of St. Louis Circuit

Court, State of Missouri, on the 16th day of September,

2019.



            Mr. Crowley, Assistant Circuit Attorney, appeared

for the State of Missouri.



            The defendant, PRESTON MONTGOMERY, appeared in

person via video and with Mr. Dulle, Attorney At Law.
```

```
                       Rita T. DeFilio, RMR
                          C.C.R. #0192
                       22nd Judicial Circuit
                     City of St. Louis, Missouri
```

Dixon v. City of St. Louis 05530

1           THE COURT:  We are on the record in Cause Number

2    1922-CR02956, the matter of the State of Missouri versus

3    Preston Montgomery.  Appearing before the Court today are

4    Mr. Crowley on behalf of the State of Missouri;

5    Mr. Montgomery in person through video conferencing; and a

6    member of the private defense bar, Mr. Dulle, who appears

7    having been appointed by the Court for the limited purposes

8    of today's hearing.

9           Mr. Montgomery, my name is Judge Roither.  I'll be

10    conducting your initial appearance today.  There is some

11    preliminary matters we need to get to and then we'll discuss

12    your conditions of release.

13           First off, sir, you're currently charged with one

14    count of Tampering with a Motor Vehicle in the First Degree,

15    which is a Class D Felony; resisting or Resisting Arrest by

16    Fleeing, which is a Class E Felony; and Resisting or

17    Interfering with Arrest, which is also a Class E Felony.

18    Your bond in this matter has been set in the amount of

19    $5,000 cash only.

20           Mr. Montgomery, you do have the right to remain

21    silent.  Anything that you say in today's hearing may very

22    well be used against you in the future prosecution of this

23    matter.  There is a prosecuting attorney sitting and

24    listening to everything that you and I say to one another

25    and everything that you and your defense attorney say with

1   one another.

2          Having said that, it's not my intention to get

3   into the facts of the case with you as much to discuss with

4   you appropriate conditions for your release.  Do you

5   understand everything that I have said so far?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  Mr. Dulle, are you asking the

8   Court to waive the formal reading of the complaint?

9          MR. DULLE:  We are, Your Honor.

10          THE COURT:  How does the defendant plead in this

11   matter?

12          MR. DULLE:  Your Honor, we are entering a plea of

13   not guilty in this matter.

14          THE COURT:  Thank you.  Mr. Montgomery, after

15   today's hearing, is it your intention to apply to the Public

16   Defender's Office for services or will you be hiring private

17   counsel?

18          THE DEFENDANT:  Yeah, I'll sign up for the Public

19   Defender's, so I can't afford an attorney.

20          THE COURT:  Okay, sir.  The Public Defender will

21   process that application.  You should hear from them

22   shortly.

23          Mr. Montgomery, the State and your attorney today

24   have agreed that you should be released upon the payment of

25   $250 cash, that is 10 percent of a total bond of $2,500.  Is

4

1   that something that you or your family can afford for your

2   release today?

3          THE DEFENDANT:  Can I say --

4          THE COURT:  Can we zero in on your ability to post

5   that bond first?

6          THE DEFENDANT:  Yeah, yeah, I could call around

7   and try to make the bond, but I was going to ask you because

8   I never failed to appear to any court, I was going to ask

9   you could you give me a court date and recog, please?

10         THE COURT:  Okay.  One moment, sir.  How did we

11   arrive at the $250 bond?

12         MR. CROWLEY:  The defendant has a pending case in

13   St. Charles, has a prior and pending, according to records.

14         MR. DULLE:  There was a stolen vehicle involved

15   and however they came upon the defendant, it says eventually

16   found the stolen vehicle.  They were chasing, refused to

17   stop, and drove off, and while I'm not sure they can connect

18   that stolen vehicle and the person who drove off to the

19   person that they eventually found, the defendant here, I

20   understand that, you know, with the prior and a pending case

21   that you need to secure the safety of the community.  We

22   came down from $5,000 cash only.  The State suggested

23   10 percent of that and I -- we negotiated to half of that

24   2,500, ten percent.

25         THE COURT:  Mr. Montgomery --

5

1           MR. DULLE:  Additionally, Judge, I think he had a

2     secured bond posted elsewhere, which seemed to indicate to

3     the both of us that there were -- there were means.

4           THE COURT:  Mr. Montgomery, I have been discussing

5     with the State and with your attorney that there are prior

6     charges and pending charges and that other bonds have been

7     posted and some of these files indicating that you do have

8     some ability to post a cash bond.  If your request of me is

9     for personal recognizance, I would deny that request today.

10    Do you believe it is within your ability to post that $250

11    cash bond?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Okay.  As an additional condition of

14    your release, I'm requiring that you report to eMass within

15    48 hours of your release.  Do you understand?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you believe those are two

18    conditions that you can live by?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Okay, sir.  I will sign off on those

21    conditions amending your bond from $5,000 cash only to $250,

22    being 10 percent of $2,500; along with the condition to

23    report to eMass.  I will set your case for an initial

24    appearance in the criminal Division 26 on October 16th and

25    that will be at 9:15 a.m.

Dixon v. City of St. Louis 05534

6

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Thank you, Mr. Montgomery.  That will

3    conclude today's hearing.

4

5

6    {END OF HEARING]

7

1

2                         CERTIFICATE OF COURT REPORTER

3              I, Rita T. DeFilio, certified court reporter, do

4     hereby certify that I am an official court reporter for the

5     Circuit Court of the City of St. Louis; that on 16th day of

6     September, 2019, I was present and reported all the

7     proceedings had in the case of STATE OF MISSOURI vs. PRESTON

8     MONTGOMERY, Cause No. 1922-CR02956.

9              I further certify that the foregoing pages contain

10    a true and accurate reproduction of the proceedings.

11

12

13

14    "/s/ Rita T. DeFilio"

15    Rita T. DeFilio, RMR

16    Official Court Reporter

17    CCR No. 0192

18

19

20

21

22

23

24

25

**MR. CROWLEY: [1]** 4/11
**MR. DULLE: [4]** 3/8 3/11 4/13 4/25
**THE COURT: [13]**
**THE DEFENDANT: [8]**

**$**

**$2,500 [2]** 3/25 5/22
**$250 [4]** 3/25 4/11 5/10 5/21
**$5,000 [3]** 2/19 4/22 5/21

**/**

**/s [1]** 7/14

**0**

**0192 [2]** 1/24 7/17

**1**

**10 percent [3]** 3/25 4/23 5/22
**16B [2]** 1/1 1/11
**16th [3]** 1/13 5/24 7/5
**1922-CR02956 [3]** 1/5 2/2 7/8

**2**

**2,500 [1]** 4/24
**2019 [2]** 1/14 7/6
**22ND [3]** 1/1 1/12 1/25
**26 [1]** 5/24

**4**

**48 [1]** 5/15

**9**

**9:15 [1]** 5/25

**A**

**a.m [1]** 5/25
**ability [3]** 4/4 5/8 5/10
**according [1]** 4/13
**accurate [1]** 7/10
**additional [1]** 5/13
**Additionally [1]** 5/1
**afford [2]** 3/19 4/1

**after [1]** 3/14
**against [1]** 2/22
**agreed [1]** 3/24
**all [1]** 7/6
**along [1]** 5/22
**also [1]** 2/17
**am [1]** 7/4
**amending [1]** 5/21
**amount [1]** 2/18
**another [2]** 2/24 3/1
**any [1]** 4/8
**Anything [1]** 2/21
**appear [1]** 4/8
**appearance [3]** 1/10 2/10 5/24
**appeared [2]** 1/16 1/19
**Appearing [1]** 2/3
**appears [1]** 2/6
**application [1]** 3/21
**apply [1]** 3/15
**appointed [1]** 2/7
**appropriate [1]** 3/4
**are [7]** 2/1 2/3 3/7 3/9 3/12 5/5 5/17
**around [1]** 4/6
**Arrest [2]** 2/15 2/17
**arrive [1]** 4/11
**as [2]** 3/3 5/13
**ask [2]** 4/7 4/8
**asking [1]** 3/7
**Assistant [1]** 1/16
**attorney [7]** 1/16 1/20 2/23 2/25 3/19 3/23 5/5

**B**

**bar [1]** 2/6
**be [5]** 2/9 2/22 3/16 3/24 5/25
**because [1]** 4/7
**been [4]** 2/7 2/18 5/4 5/6
**before [1]** 2/3
**behalf [1]** 2/4
**being [1]** 5/22
**believe [2]** 5/10 5/17
**bond [9]**

**bonds [1]** 5/6
**both [1]** 5/3

**C**

**C.C.R [1]** 1/24
**call [1]** 4/6
**came [2]** 4/15 4/22
**can [5]** 4/1 4/3 4/4 4/17 5/18
**can't [1]** 3/19
**case [5]** 3/3 4/12 4/20 5/23 7/7
**cash [6]** 2/19 3/25 4/22 5/8 5/11 5/21
**Cause [3]** 1/5 2/1 7/8
**CCR [1]** 7/17
**CERTIFICATE [1]** 7/2
**certified [1]** 7/3
**certify [2]** 7/4 7/9
**charged [1]** 2/13
**charges [2]** 5/6 5/6
**Charles [1]** 4/13
**chasing [1]** 4/16
**CIRCUIT [7]** 1/1 1/1 1/12 1/12 1/16 1/25 7/5
**CITY [4]** 1/1 1/12 1/25 7/5
**Class [3]** 2/15 2/16 2/17
**community [1]** 4/21
**complaint [1]** 3/8
**conclude [1]** 6/3
**condition [2]** 5/13 5/22
**conditions [4]** 2/12 3/4 5/18 5/21
**conducting [1]** 2/10
**conferencing [1]** 2/5
**connect [1]** 4/17
**contain [1]** 7/9
**could [2]** 4/6 4/9
**could you [1]** 4/9
**counsel [1]** 3/17
**count [1]** 2/14
**court [12]**
**CR02956 [3]** 1/5 2/2 7/8
**criminal [1]** 5/24

## C

**Crowley [2]**  1/16 2/4
**currently [1]**  2/13

## D

**date [1]**  4/9
**DAVID [1]**  1/2
**day [2]**  1/13 7/5
**defendant [6]**  1/8 1/19 3/10 4/12 4/15 4/19
**Defender [1]**  3/20
**Defender's [2]**  3/16 3/19
**defense [2]**  2/6 2/25
**DeFilio [4]**  1/24 7/3 7/14 7/15
**Degree [1]**  2/14
**deny [1]**  5/9
**did [1]**  4/10
**discuss [2]**  2/11 3/3
**discussing [1]**  5/4
**DIVISION [3]**  1/1 1/11 5/24
**do [7]**  2/20 3/4 5/7 5/10 5/15 5/17 7/3
**does [1]**  3/10
**down [1]**  4/22
**drove [2]**  4/17 4/18
**Dulle [3]**  1/20 2/6 3/7

## E

**elsewhere [1]**  5/2
**eMass [2]**  5/14 5/23
**END [1]**  6/6
**entering [1]**  3/12
**eventually [2]**  4/15 4/19
**everything [3]**  2/24 2/25 3/5

## F

**facts [1]**  3/3
**failed [1]**  4/8
**family [1]**  4/1
**far [1]**  3/5
**Felony [3]**  2/15 2/16 2/17
**files [1]**  5/7
**first [3]**  2/13 2/14 4/5

**Fleeing [1]**  2/16
**following [1]**  1/11
**foregoing [1]**  7/9
**formal [1]**  3/8
**found [2]**  4/16 4/19
**further [1]**  7/9
**future [1]**  2/22

## G

**get [2]**  2/11 3/2
**give [1]**  4/9
**going [2]**  4/7 4/8
**guilty [1]**  3/13

## H

**had [3]**  1/11 5/1 7/7
**half [1]**  4/23
**has [3]**  2/18 4/12 4/13
**have [6]**  2/20 3/5 3/24 5/4 5/6 5/7
**having [2]**  2/7 3/2
**he [1]**  5/1
**hear [1]**  3/21
**hearing [5]**  2/8 2/21 3/15 6/3 6/6
**here [1]**  4/19
**hereby [1]**  7/4
**hiring [1]**  3/16
**Honor [4]**  3/6 3/9 3/12 5/16
**Honorable [1]**  1/2
**hours [1]**  5/15
**How [2]**  3/10 4/10
**however [1]**  4/15

## I

**I'll [2]**  2/9 3/18
**I'm [2]**  4/17 5/14
**indicate [1]**  5/2
**indicating [1]**  5/7
**initial [3]**  1/10 2/10 5/23
**intention [2]**  3/2 3/15
**Interfering [1]**  2/17
**involved [1]**  4/14
**is [11]**
**it [3]**  3/15 4/15 5/10

**it's [1]**  3/2

## J

**Judge [3]**  1/2 2/9 5/1
**JUDICIAL [3]**  1/1 1/12 1/25

## K

**know [1]**  4/20

## L

**Law [1]**  1/20
**limited [1]**  2/7
**listening [1]**  2/24
**live [1]**  5/18
**LOUIS [4]**  1/1 1/12 1/25 7/5

## M

**make [1]**  4/7
**matter [5]**  2/2 2/18 2/23 3/11 3/13
**matters [1]**  2/11
**may [1]**  2/21
**me [2]**  4/9 5/8
**means [1]**  5/3
**member [1]**  2/6
**MISSOURI [7]**  1/4 1/13 1/17 1/25 2/2 2/4 7/7
**moment [1]**  4/10
**MONTGOMERY [12]**
**Motor [1]**  2/14
**Mr [5]**  1/16 1/20 3/23 4/25 5/4
**Mr. [8]**
**Mr. Crowley [1]**  2/4
**Mr. Dulle [2]**  2/6 3/7
**Mr. Montgomery [5]**  2/5 2/9 2/20 3/14 6/2
**much [1]**  3/3
**my [2]**  2/9 3/2

## N

**name [1]**  2/9
**need [2]**  2/11 4/21
**negotiated [1]**  4/23
**never [1]**  4/8

**N**

**No [3]**  1/5 7/8 7/17
**not [3]**  3/2 3/13 4/17
**Number [1]**  2/1

**O**

**October [1]**  5/24
**October 16th [1]**  5/24
**off [4]**  2/13 4/17 4/18
5/20
**Office [1]**  3/16
**official [2]**  7/4 7/16
**Okay [5]**  3/7 3/20 4/10
5/13 5/20
**one [4]**  2/13 2/24 3/1
4/10
**only [3]**  2/19 4/22 5/21
**other [1]**  5/6

**P**

**pages [1]**  7/9
**payment [1]**  3/24
**pending [4]**  4/12 4/13
4/20 5/6
**percent [4]**  3/25 4/23
4/24 5/22
**person [4]**  1/20 2/5 4/18
4/19
**personal [1]**  5/9
**Plaintiff [1]**  1/5
**plea [1]**  3/12
**plead [1]**  3/10
**please [1]**  4/9
**post [3]**  4/4 5/8 5/10
**posted [2]**  5/2 5/7
**preliminary [1]**  2/11
**present [1]**  7/6
**PRESTON [4]**  1/7 1/19
2/3 7/7
**prior [3]**  4/13 4/20 5/5
**private [2]**  2/6 3/16
**proceedings [4]**  1/10
1/11 7/7 7/10
**PROCEEDINGS/INITIAL
[1]**  1/10

**process [1]**  3/21
**prosecuting [1]**  2/23
**prosecution [1]**  2/22
**Public [3]**  3/15 3/18 3/20
**purposes [1]**  2/7

**R**

**reading [1]**  3/8
**recog [1]**  4/9
**recognizance [1]**  5/9
**record [1]**  2/1
**records [1]**  4/13
**refused [1]**  4/16
**release [5]**  2/12 3/4 4/2
5/14 5/15
**released [1]**  3/24
**remain [1]**  2/20
**report [2]**  5/14 5/23
**reported [1]**  7/6
**reporter [4]**  7/2 7/3 7/4
7/16
**reproduction [1]**  7/10
**request [2]**  5/8 5/9
**requiring [1]**  5/14
**resisting [3]**  2/15 2/15
2/16
**right [1]**  2/20
**Rita [4]**  1/24 7/3 7/14
7/15
**RMR [2]**  1/24 7/15
**ROITHER [2]**  1/2 2/9

**S**

**safety [1]**  4/21
**said [2]**  3/2 3/5
**say [4]**  2/21 2/24 2/25
4/3
**says [1]**  4/15
**secure [1]**  4/21
**secured [1]**  5/2
**seemed [1]**  5/2
**September [2]**  1/13 7/6
**services [1]**  3/16
**set [2]**  2/18 5/23
**shortly [1]**  3/22
**should [2]**  3/21 3/24

**sign [2]**  3/18 5/20
**silent [1]**  2/21
**sir [7]**  2/13 3/20 4/10
5/12 5/19 5/20 6/1
**sitting [1]**  2/23
**so [2]**  3/5 3/19
**some [3]**  2/10 5/7 5/8
**something [1]**  4/1
**ST [5]**  1/1 1/12 1/25 4/13
7/5
**STATE [9]**
**stolen [3]**  4/14 4/16 4/18
**stop [1]**  4/17
**suggested [1]**  4/22
**sure [1]**  4/17

**T**

**Tampering [1]**  2/14
**ten [1]**  4/24
**Thank [2]**  3/14 6/2
**that [30]**
**them [1]**  3/21
**then [1]**  2/11
**there [6]**  2/10 2/23 4/14
5/3 5/3 5/5
**these [1]**  5/7
**they [4]**  4/15 4/16 4/17
4/19
**think [1]**  5/1
**this [4]**  2/18 2/22 3/10
3/13
**those [2]**  5/17 5/20
**through [1]**  2/5
**today [5]**  2/3 2/10 3/23
4/2 5/9
**today's [4]**  2/8 2/21 3/15
6/3
**total [1]**  3/25
**TRANSCRIPT [1]**  1/10
**true [1]**  7/10
**try [1]**  4/7
**two [1]**  5/17

**U**

**understand [3]**  3/5 4/20
5/15

Dixon v. City of St. Louis 05539

**U**

**up [1]** 3/18
**upon [2]** 3/24 4/15
**us [1]** 5/3
**used [1]** 2/22

**V**

**vehicle [4]** 2/14 4/14
4/16 4/18
**versus [1]** 2/2
**very [1]** 2/21
**via [1]** 1/20
**video [2]** 1/20 2/5

**W**

**waive [1]** 3/8
**was [4]** 4/7 4/8 4/14 7/6
**we [8]**
**we'll [1]** 2/11
**well [1]** 2/22
**were [4]** 1/11 4/16 5/3
5/3
**which [4]** 2/15 2/16 2/17
5/2
**while [1]** 4/17
**who [2]** 2/6 4/18
**will [6]** 3/16 3/20 5/20
5/23 5/25 6/2
**within [2]** 5/10 5/14
**would [1]** 5/9

**Y**

**yeah [3]** 3/18 4/6 4/6
**Yes [5]** 3/6 5/12 5/16
5/19 6/1
**you [26]**
**you're [1]** 2/13
**your [21]**

**Z**

**zero [1]** 4/4

# EXHIBIT 184

1          IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
        TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
2               Honorable Timothy Boyer, Judge

3
STATE OF MISSOURI,              )
4                               )
            Plaintiff,          )
5                               )
V.                              )      Cause No. 1922-CR02744
6                               )
RAYMOND GARDNER,                )
7                               )
            Defendant.          )
8

9          TRANSCRIPT OF FIRST APPEARANCE HEARING

10

11     On Friday, September 13, 2019, the above cause came on

12 regularly for hearing before the Honorable Timothy Boyer,

13 Judge of Division 16B of the Twenty-Second Judicial Circuit in

14 the City of St. Louis.  The State of Missouri was represented

15 by Jeremy Crawley, Esq., Assistant Circuit Attorney.  The

16 defendant was present in person and was represented by his

17 attorney, Chris Faerber, Esq.

18

19

20

21

22                      Tamara L. Young
                        CCR, RPR, CSR
23                      Official Reporter

24

25

1

```
1              THE COURT:  We are on the record in Cause Number
2    1922-CR02744, State of Missouri versus Raymond Gardner.
3    Mr. Gardner is present in person within 48 hours of his arrest
4    in this case.  Mr. Gardner faces one count of the unclassified
5    felony of enticement or attempted enticement of a child.  The
6    current bond in this case is set at $30,000 cash only.
7              Mr. Gardner, I am the judge that's going to preside
8    over your detention hearing this morning.  I am Judge Boyer.
9    Can you see me and can you hear me?
10             THE DEFENDANT:  Yes, sir.
11             THE COURT:  If at any point you can't hear me, will
12   you let me know?
13             THE DEFENDANT:  Yes, I will, sir.
14             THE COURT:  Present on behalf of the State of
15   Missouri is Assistant Circuit Attorney Jeremy Crowley.  And
16   present representing Mr. Gardner for the purposes of this
17   hearing and this hearing only is attorney Chris Faerber.
18             Mr. Faerber, at this time do you waive formal
19   reading of the complaint and enter a not guilty plea on behalf
20   of Mr. Gardner?
21             MR. FAERBER:  I do, Your Honor.
22             THE COURT:  All right.  The Court will enter that
23   not guilty plea at this time.
24             I have informed Mr. Gardner of his current
25   conditions of release, and the Court now intends to conduct an
```

2

```
 1    initial appearance detention hearing under Rule 33.

 2              Before we get to the next stage of that hearing, I

 3    will ask the attorneys, does either attorney object to the

 4    Court taking judicial notice of the Court's own file and the

 5    bond commissioner's file in this case, and making those

 6    documents part of the record of this hearing?

 7              MR. CROWLEY:  No.

 8              MR. FAERBER:  No.

 9              THE COURT:  Then I will turn to Mr. Crowley and ask

10    for your argument on behalf of the State.

11              MR. CROWLEY:  As you indicated, the defendant is

12    charged with the unclassified felony of child enticement.

13    There's investigation involved with the St. Louis Police

14    Department which alleged that the victim in this case, who's

15    initials are T.G.  She's ten years old.  She had been in

16    communication with the defendant through an on-line dating ap

17    that is called Kick.  She had been communicating with this

18    defendant.  During one of their communications she advised him

19    she was, in fact, twelve years old, although she's actually

20    ten.  And upon explaining to him or telling him that she was

21    twelve, the defendant began to ask her questions about whether

22    she was a virgin, whether she would be willing to sneak away

23    to go to his house for a sexual encounter.  There was also

24    some explicit video that was exchanged.  Defendant also asked

25    victim if she would be able to have sexual intercourse with
```

3

```
 1    him.

 2            If the defendant was convicted of this, I am not

 3    quite certain what the upper end is.  I know on the lower end

 4    it's five years without eligibility of parole.  I don't show

 5    that the defendant has any priors, but in part, due to the

 6    fact that this was involving a child, I do believe the

 7    defendant is a danger to the community.

 8            I also have a statement from the child's mother that

 9    I would like to read into the record, if that would be

10    alright.

11            THE COURT:  Go ahead.

12            MR. CROWLEY:  The victim's mother writes:  I am

13    writing this impact letter for my daughter.  She's age ten.

14    Let me start off by saying how angry and disgusted I am that

15    the defendant took advantage of her daughter.  She writes:  My

16    daughter has low self esteem, but she's one of the sweetest

17    kids you would meet.  The defendant decided to take an

18    opportunity to steal a little girl's innocence by having her

19    sending naked photos of herself, for whatever sick reason.

20    Then the defendant gained her trust and got our home address.

21    I feel unsafe knowing this defendant has that information,

22    since he did try to lure her out to meet with him and do God

23    knows what.  I know my daughter has a part of fault in this,

24    and she's dealing with those consequences, but the defendant

25    is an adult.  He's supposed to help guide youth in positive
```

4

Dixon v. City of St. Louis, 04718

```
 1    roles.  He chose not to do that.  And for that I hope the
 2    justice system makes an example out of him and others like
 3    him.  I know my daughter was probably not the only child that
 4    he took advantage of.  I pray that whatever punishment is
 5    served upon him that she will be the last.
 6              It's signed by the mother.
 7              THE COURT:  Thank you, Mr. Crowley.
 8              Mr. Faerber, before I ask for your argument on
 9    behalf of Mr. Gardner, do you have any questions that you
10    would like to ask him?
11              MR. FAERBER:  I do, Your Honor.
12              Mr. Gardner, my name is Chris Faerber.  I'm a local
13    private defense attorney appointed to represent you today and
14    today only for this hearing.
15              Can you hear me okay?
16              THE DEFENDANT:  Yes, sir, I can.
17              MR. FAERBER:  I am not seeing much information on
18    your interview sheets.  Are you working currently?
19              THE DEFENDANT:  Yes.  I am employed for three years.
20              MR. FAERBER:  And you have got a place to live
21    locally, right?
22              THE DEFENDANT:  Say that again.
23              MR. FAERBER:  Do you live in St. Louis?
24              THE DEFENDANT:  Yes, sir, I do.
25              MR. FAERBER:  Okay.  And it doesn't look like you
```

5

Dixon v. City of St. Louis, 04719

```
1    have any convictions whatsoever in your past.

2              THE DEFENDANT:  Not at all.

3              MR. CROWLEY:  Okay.  Thank you.

4              THE COURT:  Mr. Faerber, your argument.

5              MR. FAERBER:  Your Honor, allegations are

6    allegations.  And moving beyond that, the purpose of this

7    hearing is to determine whether or not my client is a danger

8    or a flight risk.  He lives locally, and he works locally.  He

9    still has a job.  And as far as a danger, despite what the

10   mother's victim's statement mentioned, there's no evidence,

11   absolutely no evidence that this is a pattern of behavior or

12   this has happened in the past.  And he has no other

13   convictions.  He's not a danger to society.  I would ask that

14   Mr. Gardner be released on his own recognizance with the

15   condition that he stay off of any and all social media sites,

16   including dating sites, romantic sites, whatever, but any and

17   all social media sites so as to have no contact with anyone in

18   the fashion that these allegations outline.

19             THE COURT:  Thank you, Mr. Faerber.

20             Having heard the arguments of the attorneys, having

21   reviewed the record and the court file in this case, at this

22   time the Court will deny the request for modification of

23   conditions of release.

24             I will set this case under Rule 33.05 for an

25   additional bond hearing within seven working days of this
```

6

```
1    appearance.

2              Mr. Gardner, you have a right to a second bond

3    hearing on this case.  That hearing will occur on

4    September 20th, next Friday, at 10:30 a.m.  You will be

5    brought back over.  Okay?

6              THE DEFENDANT:  Can I ask a question?

7              THE COURT:  Sure.

8              MR. FAERBER:  Is it about the case or is it about

9    procedure?

10             THE DEFENDANT:  It's about the bond.

11             THE COURT:  The bond is $30,000, cash only.

12             THE DEFENDANT:  I have to pay $30,000?

13             THE COURT:  Correct.

14             Thank you, Mr. Gardner.

15

16

17

18

19

20

21

22

23

24

25
```

7

```
 1   STATE OF MISSOURI      )
                            )         SS.
 2   COUNTY OF ST. LOUIS    )

 3

 4

 5

 6        I, TAMARA L. YOUNG, Certified Court Reporter, hereby

 7   certify that I was the official court reporter for Division

 8   16B of the Circuit Court of the City of St. Louis; that on

 9   Friday, September 13, 2019, I was present and reported all the

10   proceedings had in the case of STATE OF MISSOURI, Plaintiff,

11   vs. RAYMOND GARDNER, Defendant, Cause No. 1922-CR02744; and I

12   further certify that the foregoing pages contain a true and

13   accurate reproduction of the proceedings.

14

15        I certify that the cost of preparing this transcript

16   is as follows:

17

18        8 pages @ $4.00 per page ............ $32.00 TOTAL

19

20

21                         /Tamara L. Young/ CCR, RPR, CSR

22                              Official Court Reporter

23                              CCR No. 0348

24

25
```

8

# EXHIBIT 185

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Lynne Perkins, Judge

STATE OF MISSOURI,              )
                                )
            Plaintiff,          )
                                )   Cause No. 1922-CR02428
                                )
vs.                             )
                                )
█████████████ ,                 )        Division No.16B
                                )
            Defendant.          )

BOND REVIEW HEARING

On the 21st day of August, 2019, the
above-entitled cause came on for hearing before the
Honorable Lynne Perkins, Judge of Division No. 16-B of the
Circuit Court of the City of St. Louis.

The State of Missouri was represented by Nick
Lake, Assistant Circuit Attorney, City of St. Louis.

The defendant was present via video conference
and was represented by his attorney, Chris Faerber,
Attorney at Law.

MARGARET R. COLE, CCR
SWING COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1                              AUGUST 21, 2019

2              THE COURT:    Today is August 21st, 2019.  We are in

3    Division 16-B of the 22nd Judicial Circuit Court for the

4    City of St. Louis.  We're here in Cause Number 1922-CR02428

5    styled State of Missouri versus ███████.

6              Let the record reflect that the defendant,

7    Mr. █████, is present in court via video conferencing from

8    the St. Louis City Justice Center.  Also present in the

9    courtroom today is Assistant Circuit Attorney Mr. Lake and

10   private court provided attorney Mr. Chris Faerber, who is

11   representing the defendant for the limited purposes of

12   this bond review hearing only.

13                   Mr. █████, the State of Missouri has charged you

14   with three felonies.  They are:  Count I, delivery of a

15   controlled substance.  That's a Class C felony.  Count II,

16   two unlawful possession of a firearm.  That is a Class D

17   felony.  Count III, unlawful use of a weapon, Subsection

18   11, and possession of a weapon, and a felony controlled

19   substance.  That is a Class E felony.

20              Currently your bond is set at $80,000 cash only.

21   $80,000 cash only.  Mr. █████, do you understand what

22   you've been charged with today?

23              THE DEFENDANT:    Yes, sir.

24              THE COURT:    Do you understand what your bond is

25   currently set at?  That was set on August 2nd, 2019 by Judge

1    Joe Whyte.  Do you up understand what your bond is currently

2    set at?

3                    THE DEFENDANT:    Yes, sir.

4                    THE COURT:    Mr. Lake, can you please share the

5    State's position as it relates to the adequacy of

6    Mr. ████'s bond as set?

7                    MR. LAKE:    Yes, Your Honor.  The State would first

8    request that the Court take judicial notice of its court

9    file and the Bond Commissioner's report in this case.

10                    THE COURT:    The Court will take judicial notice of

11   both items.

12                    MR. LAKE:    Thank you, Your Honor.  The State's

13   position in this case is that the bond should remain as it

14   is currently set due to the fact that it's the State's

15   opinion that the defendant does pose a danger to the

16   community.

17                    Your Honor, this is a case where police officers

18   were executing a search warrant at a residence where the

19   defendant had been residing.  Upon entering that residence

20   the officers recovered a firearm as well as numerous

21   baggies of suspected narcotics at a location where the

22   defendant had actually been sleeping.

23                    Furthermore, they recovered a couple of boxes of

24   sandwich baggies as well as a digital scale, your Honor.

25   Furthermore, under the couch where the defendant had

1    appeared to have been sleeping they recovered a dinner

2    plate which included a spoon, a razor blade, a straw, two

3    playing cards as well as white powder, and it should be

4    noted that a subsequent analysis of this suspected

5    narcotics revealed Fentanyl.

6              In terms of priors, Your Honor, I'm showing the

7    defendant has significant criminal history dating back to

8    1990's primarily for drug related offenses.  From 1997 I'm

9    showing possession of marijuana.  The defendant received

10   an SIS with one year probation which he successfully

11   completed.

12             From 1999 I'm showing a finding of guilt for

13   possession of a controlled substance for which the

14   defendant received an SIS with one year probation and,

15   again, successfully completed.  I'm also showing that

16   during the lifetime of that case the defendant was capias

17   on two separate occasions.

18             From 2002 I'm showing a finding of guilt for

19   possession of a controlled substance.  It looks like the

20   defendant was sentenced to an SES, two years probation,

21   with a one year back-up and that probation was revoked.

22   Furthermore, during the lifetime of that case I'm showing

23   three instances in which the defendant was capias.

24             From 2011 I'm showing one count of assault it

25   looks like on law enforcement and one count of resisting

1    arrest for which the defendant received an SES with one

2    year probation with six months back-up for both counts.

3    Also, out of that case I'm showing three instances in

4    which the defendant failed to appear.

5              From 2013 I'm showing several matters.  In one

6    cause number that is 1222-CR00720-01 I'm showing a finding

7    of guilt on one count of distributing, delivering, and

8    manufacturing a controlled substance for which the

9    defendant was sentenced to 15 years in the Department of

10   Corrections.  Showing one count of possession of a

11   controlled substance for which he was sentenced to 7 years

12   in the Department of Corrections.  Two counts of

13   possession of marijuana for which he received one year

14   incarceration on both of those counts.

15             Also, from 2013 in a separate cause under

16   1222-CR06277-01 I'm showing a finding of guilt for one

17   count of possession of marijuana for which the defendant

18   was sentenced to one year incarceration, as well as two

19   counts of possession of a controlled substance for which

20   the defendant was sentenced to 15 years in the Department

21   of Corrections on both of those counts.

22             Finally, Your Honor, from 2013 in a separate

23   matter I'm showing under Cause Number 1322-CR00698-01, the

24   defendant was sentenced to 15 years in the Department of

25   Corrections for three counts of possession of a controlled

6

1    substance and he was sentenced to one year incarceration

2    for one count of possession of marijuana.

3            It should also be noted, Your Honor, in those

4    last three cases that I referenced, the one ending in

5    0698, the one ending in 0720, and the one ending in 6277

6    the defendant was on parole at the time -- or is on

7    parole, was on parole, obviously, at the time this

8    incident occurred.

9            So, Your Honor, given the defendant's lengthy

10   criminal history, especially the fact that it revolves

11   around possession and drug related offenses, the fact that

12   this current incident before us is another drug related

13   offense, the State believes that the defendant does pose a

14   danger to the community and that the bond should not be

15   reduced at this time.

16           THE COURT:   All right.  Mr. Faerber.

17           MR. FAERBER:   Your Honor, let me just start off

18   with some clarification then I will move onto asking

19   Mr. ████ some questions.  As far as the laundry list of

20   what was found during this search warrant execution I'll

21   quote from the Probable Cause Statement.  In the kitchen

22   Matea (phonetic), that's the detective, discovered inside a

23   cabinet containing hand towels and pasta a digital scale and

24   a box of sandwich bags, so it's not like everything was all

25   rolled up together in one neat place.  It was spread out

1    over multiple rooms.

2                Moving on, may I inquire with Mr. ██████ on a few

3    things?

4                THE COURT:    You may.

5                MR. FAERBER:    Mr. ██████, my name is Chris Faerber.

6    I represent you for today and today only and for the

7    purposes of this hearing.  I'm a local private attorney.

8    Were you working before you got arrested?

9                THE DEFENDANT:    Yes, I was.

10               MR. FAERBER:    Where at?

11               THE DEFENDANT:    I was working at ██████ and I was

12   doing some electrician work with my brother.

13               MR. FAERBER:    So you had some income, right?

14               THE DEFENDANT:    Yes.

15               MR. FAERBER:    You were working?

16               THE DEFENDANT:    Yes.

17               MR. FAERBER:    You mentioned your brother.  Who

18   would you stay with if you were to be released or make bond?

19               THE DEFENDANT:    Probably my mom or my girlfriend.

20               MR. FAERBER:    And you have addresses for both of

21   them?

22               THE DEFENDANT:    Yes, sir.

23               MR. FAERBER:    Okay.  How far did you go in school?

24               THE DEFENDANT:    I got my GED.

25               MR. FAERBER:    Okay.  When was the last time you

1   saw your parole officer?

2           THE DEFENDANT:    Um, I supposed to see them -- I

3   supposed to see them right before they had issued the

4   warrant for me.

5           MR. FAERBER:    Okay.

6           THE DEFENDANT:    But I talked to my -- I had talked

7   to my P.O. and she let me know if, you know, if I was to get

8   out just to call her and come see her.  She didn't put a

9   warrant out for me or nothing like that.

10          MR. FAERBER:    Okay.  The place where you were

11  arrested, who all was living there?

12          THE DEFENDANT:    You say where I was arrested at?

13          MR. FAERBER:    Yeah.

14          THE DEFENDANT:    When, today?  I mean --

15          MR. FAERBER:    Don't answer that.  Don't answer

16  that.  I have nothing further.

17          THE COURT:    Mr. Commissioner.

18          BOND COMMISSIONER:    Yes, sir.  So we show the same

19  priors, Judge.  He's been in and out of jail from 2004 to

20  his last stint he got released on parole in 2018.  August

21  30, 2018.  So he is on parole currently for three different

22  cases.

23          THE COURT:    Mr. Lake.

24          MR. LAKE:    Yes, Your Honor.

25          THE COURT:    Let me make sure, help me out, and

1    Mr. Faerber you can follow along with me on this as well.

2    I'm counting prior felony convictions.  I'm counting 17

3    priors and all but two of them are drug cases.  I see an

4    assault on a law enforcement officer in 2011.  That was a

5    third degree, six months, SES one year, and a criminal

6    non-support in 2012.

7                MR. LAKE:    That's what I have as well, Your Honor.

8                THE COURT:    As well as it looks like misdemeanor

9    resisting arrest, is that correct?

10                MR. LAKE:    That's what I have, Your Honor.

11                THE COURT:    I'm not so much concerned about a

12   danger to the community because he doesn't have a violent

13   history, but with this history of missing court dates that's

14   what causes me some concern.  Looks like Mr. ████ don't

15   like showing up for court.

16                Now, Mr. ████ -- Mr. Faerber, ask your client,

17   if you don't mind, considering what he's charged with and

18   the fact that he does work and have a job, what type of

19   bond could he come up with considering his history?

20                MR. FAERBER:    Thank you, Your Honor.  Mr. ████, I

21   don't know if you can hear the judge.  What kind of bond do

22   you believe you could come up with or possibly your family

23   or people?

24                THE DEFENDANT:    You mean like right now?  We kind

25   of in a situation right now.  We just lost a family member

1    so right now they, you know, like getting the funeral

2    together for Thursday.  So our money has kind of been tight,

3    sir.  Just lost two of my little cousins last week in his

4    sleep.  So that would be kind of dealing with that right

5    now.

6              THE COURT:    So, Mr. Faerber, I'm going to take

7    that answer as zero.

8              MR. FAERBER:    That's what I took it as, Your

9    Honor.

10             THE COURT:    Okay.  All right.

11             MR. FAERBER:    Your Honor, GPS monitoring I think

12   would help keep track of him and probably encourage him to

13   keep his court dates as well as his parole officer.

14             THE DEFENDANT:    I see my parole officer every

15   week, sir.

16             THE COURT:    Do we know if there's a parole hold on

17   Mr. ████ or not, Mr. Lake?

18             BOND COMMISSIONER:    There is not at this time,

19   Your Honor.

20             THE COURT:    There is not?  When were you locked

21   up, Mr. ████?

22             THE DEFENDANT:    I was locked up from 2012 to 2018.

23             MR. FAERBER:    No.  No.  When did you get arrested

24   on this?

25             BOND COMMISSIONER:    He was arrested August 20th,

1    Judge.

2              THE COURT:    So yesterday is when he got arrested?

3              THE DEFENDANT:    Yes, sir.  Like I have been

4    calling trying to see how I can -- because I know that they

5    have a couple warrants out for me.  I know that they put the

6    warrant out on August 6th.

7              MR. FAERBER:    Mr. ███.  Mr. █████, this is Chris

8    Faerber.  Let's not talk about the goings on surrounding

9    this case, okay?

10             THE DEFENDANT:    Okay.

11             THE COURT:    When was Mr. █████ released from

12   custody from DOC?

13             BOND COMMISSIONER:    August 30, 2018.

14             THE COURT:    Mr. Faerber, what are you asking for?

15             MR. FAERBER:    Your Honor, I would ask for a

16   personal recognizance with GPS monitoring.  Monitoring

17   through Emass.  I would also ask that fees be waived on that

18   as it doesn't sound like he can afford $300 a month nor

19   could his family.  And a condition that he maintain some

20   form of verifiable employment.

21             THE COURT:    Anything else, Mr. Lake?

22             MR. LAKE:    No, Your Honor.

23             THE COURT:    All right.  The Court has heard enough

24   testimony from both the State and the defendant in this

25   case.  The Court is not convinced by clear and convincing

1   evidence that the defendant is a danger to the community, or

2   witness, or a victim.

3          However, the Court does have grave concerns

4   about the history of missed court dates by this defendant.

5   Therefore, the Court is going to grant the defendant's

6   request to reduce the bond.  Bond shall be reduced to

7   $5,000 cash only with the additional condition that he

8   report to Emass, and that he be monitored via GPS.  The

9   Court will grant defense's request to waive the fees for

10  that GPS monitoring.  That will be the Court's order and

11  that will complete the record in this case.

12          (End of proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2                    I, Margaret R. Cole, Certified Court Reporter,

3     do hereby certify that I am an official court reporter for

4     the Circuit Court of the City of St. Louis; that on August

5     21, 2019,  I was present and reported all the proceedings

6     had in the case of State of Missouri, Plaintiff, vs. █████

7     █████, Defendant, Cause No. 1922-CR2428.

8                    I further certify that the foregoing pages

9     contain a true and accurate reproduction of the

10    proceedings.

11

12

13

14

15

16                              /s/Margaret R. Cole

17                              MARGARET R. COLE, CCR

18                                   #494

19

20    Date:

21

22

23

24

25

# EXHIBIT 186

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Scott Millikan, Judge

STATE OF MISSOURI,        )
                                )
           Plaintiff,    )
                                )      Cause No.1922-CR02664
                                )
vs.                         )
                                )
RONALD WHITE,         )      Division No.16B
                                )
           Defendant.    )

BOND REVIEW HEARING

On the 26th day of August, 2019, the above-entitled cause came on for hearing before the Honorable Scott Millikan, Judge of Division No. 16-B of the Circuit Court of the City of St. Louis.

The State of Missouri was represented by Roland Swanson, Assistant Circuit Attorney, City of St. Louis.

The defendant was present via video conference and was represented by his attorney, Eric Barnhart, Attorney at Law.

MARGARET R. COLE, CCR
SWING COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis, 04976

1                    AUGUST 26, 2019

2           THE COURT:    We're on the record in Cause Number

3    1922-CR02664.  The State of Missouri is here and represented

4    by Assistant Circuit Attorney Roland Swanson.  Also present

5    in this matter is the defendant.  He's here via video.

6    Ronald White.

7               Mr. White, at this time I need to inform you

8    that we have a private attorney here that's here for the

9    purposes solely for this initial hearing, okay?  This is

10   called an initial appearance and arraignment.  We're also

11   going to address your bond.

12              A couple things could happen.  We could modify

13   your bond.  We could set this for a full bond hearing in 7

14   days to give the State some time to contact any victims in

15   this matter, or we'll reduce the bond, or release you on

16   your personal recognizance.

17              I have to hear the evidence from the State and

18   then they're going to turn it over then to Mr. Barnhart

19   and he'll argue on your behalf, okay?  Do you understand

20   that?

21           THE DEFENDANT:    Yes, sir.

22           THE COURT:    We're here within 48 hours of the

23   defendant's arrest.

24              Mr. Barnhart, do you wish to waive formal

25   reading of the Complaint in this matter?

Dixon v. City of St. Louis, 04977

1                    MR. BARNHART:    Yes, Your Honor.

2                    THE COURT:    And enter a plea of not guilty at this

3       time?

4                    MR. BARNHART:    Yes, Your Honor.

5                    THE COURT:    Mr. White, are you going to hire

6       private counsel for this case going forward or are you going

7       to make an application with the Public Defender?

8                    THE DEFENDANT:    I thought I had a lawyer, sir.

9                    THE COURT:    You have a lawyer for this hearing,

10      Mr. Barnhart.  Did you hire private counsel for this?

11                   THE DEFENDANT:    Yeah, my dad told me I had one.

12                   THE COURT:    Who did he hire, do you know?

13                   THE DEFENDANT:    Donnell Smith.

14                   THE COURT:    All right.  I'm not showing an Entry

15      of Appearance yet from Mr. Donnell Smith.  He may very well

16      have entered on the case, but I don't have that yet, okay?

17      So what we're going to do today is have this initial

18      appearance, which we've already began, we're going to decide

19      what we're going to do if we're going to do anything with

20      this bond in this matter, and maybe Mr. Smith will have an

21      opportunity to come in and be heard on this in the near

22      future, okay?

23                   THE DEFENDANT:    Yes, sir.

24                   THE COURT:    Mr. Swanson, you may begin.

25                   MR. SWANSON:    Thank you, Your Honor.  Your Honor,

1    in this matter the defendant is charged with rape in the

2    second degree based on the belief that the date of this

3    incident there was some altercation between the defendant

4    and the victim in this matter who is a coworker.

5            It is believed that the two were at a residence

6    together and the victim expressed that she did not want to

7    engage in any type of sexual activity.  The defendant

8    proceeded to try to rip her pants and was unsuccessful.

9    Was subsequently successful in pulling her pants down and

10   then engaging in sexual relations with the victim without

11   her consent.  I do have a statement from the victim, if it

12   pleases the court.

13           THE COURT:   I would like to see it.  Thank you.

14           MR. SWANSON:   I think the Court will note in that

15   statement the victim expresses safety concerns based upon

16   the fact that the two individuals did at one point work

17   together.  He's aware of where the victim resides.  Given

18   the nature of the case there may obviously pose a threat to

19   the safety of the victim.

20           I'm showing as far as prior convictions are

21   concerned there were prior convictions for burglary in the

22   second degree as well as a felony theft and both of which

23   the defendant received six years confinement in 2012.

24           THE COURT:   That's enough, Mr. Swanson.

25           Mr. Barnhart.

1                    MR. BARNHART:    Thank you.

2                    THE COURT:    Mr. White, Mr. Barnhart will have some

3          questions for you, okay?

4                    THE DEFENDANT:    Yes, sir.

5                    MR. BARNHART:    Mr. White, I'm Eric Barnhart.  I'm

6          your attorney for today only.  You said you hired Donnell

7          Smith.  Do you want me to try to make an argument to lower

8          your bond or do you want Mr. Smith to do that?

9                    THE DEFENDANT:    Yes, sir, I would like you to try

10         to do it.

11                   MR. BARNHART:    Okay.  If you got released where

12         would you live?

13                   THE DEFENDANT:    1003 Cole, St. Louis Missouri.

14                   MR. BARNHART:    What's the Zip Code?

15                   THE DEFENDANT:    I don't know the Zip Code.  It's

16         downtown.

17                   MR. BARNHART:    Who would you live with?

18                   THE DEFENDANT:    I stay with my cousin Jerry

19         Carries (phonetic).

20                   MR. BARNHART:    I see you were working as a prep

21         cook?

22                   THE DEFENDANT:    Yeah, I got two jobs.  I work as a

23         prep cook at Salt and Smoke and as a line cook.

24                   MR. BARNHART:    Okay.  We're not allowed to get

25         into the facts of the case, obviously, so don't make any

6

1    statements about anything involving the case.  We're doing

2    things for your bond right now, okay?

3            THE DEFENDANT:    Yes, sir.

4            MR. BARNHART:    Cause anything you say can be used

5    against you.  There's a court reporter taking everything

6    down so don't make any statements about the facts of the

7    case.  I have no further questions for you.  Thank you,

8    Mr. White.

9            THE COURT:    Mr. Barnhart.

10           MR. BARNHART:    Just argument.  Judge, this is a

11   Class D felony.  It's rape second, a Class D felony.  It's

12   the same classification as a drug case, which is also a D

13   felony.  I know they're worlds apart on the spectrum, but

14   the range of punishment is anywhere from one day to one year

15   in the Workhouse or Justice Center, or two years to seven

16   years in the Missouri Department of Corrections, or a fine

17   up to $10,000.

18           It's a serious charge.  I'm not saying it's not,

19   but it's not a forcible rape, which I believe would be an

20   A felony, which is a mandatory minimum of 10 to 30 or life

21   and 85 percent.  He's presumed to be innocent and he

22   should be treated as such.  I would say if you didn't want

23   to give a recognizance bond then -- Mr. White, what could

24   you afford if the Court would do a 10 percent bond?

25           THE DEFENDANT:    A thousand dollars.

1                    MR. BARNHART:    Okay.  So like a 10,000,

2      ten percent.  So I would ask for $10,000, ten percent, and

3      if the Court wanted to put him on GPS this might be the case

4      to do so even though I know it does cost money.  So that's

5      what I would be asking is 10,000, ten percent and report to

6      Emass with GPS, and live with his cousin at 1003 Cole.

7                    THE COURT:    All right.  Thank you, Mr. Barnhart.

8                    THE DEFENDANT:    Your Honor, can I say one thing?

9                    MR. BARNHART:    Only if it deals with your bond and

10     not the facts of the case.  I mean, do you understand that?

11                   THE DEFENDANT:    Yes, sir.

12                   THE COURT:    I wouldn't bring up the victim, okay?

13     A couple things, Mr. White.  One of my responsibilities is

14     to -- I think one of the highest duties I have in these

15     hearings is to make sure that the public is safe.  Make sure

16     that the community and victim is safe in this matter.

17                    The Victim Impact Statement was provided to me,

18     which gives me grave concerns regarding that matter.  What

19     I am going to do, though, is you're going to have an

20     opportunity to have this bond hearing in full, okay?

21     You'll have your -- hopefully, Mr. Smith will be entered

22     as your attorney at that time.

23                    But what I'm going to do today is deny the

24     request for any bond change and set the matter for a bond

25     hearing within seven working days of this appearance,

Dixon v. City of St. Louis, 04982

1    which is going to be September 3rd, 2019 at 10:30.  So

2    you'll come back in here next week and, hopefully,

3    Mr. Smith will have entered on your case by then and the

4    State may have reached out to the victim or have more

5    information at that time and you'll be given the

6    opportunity to have a full bond hearing at that time.  Do

7    you understand?

8                    THE DEFENDANT:    Yes, sir.

9                    THE COURT:    All right.  That concludes the record.

10                    (End of proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

1                        CERTIFICATE

2              I, Margaret R. Cole, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on August

5    21, 2019,  I was present and reported all the proceedings

6    had in the case of State of Missouri, Plaintiff, vs. Ronald

7    White, Defendant, Cause No. 1922-CR02664.

8              I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15

16                     /s/Margaret R. Cole

17                     MARGARET R. COLE, CCR

18                          #494

19

20   Date:

21

22

23

24

25

# EXHIBIT 187

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable James E. Sullivan, Judge

STATE OF MISSOURI,                )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )     1922-CR02481
                                  )     1922-CR02265
██████████████,                   )
                                  )
            Defendant.            )

INITIAL APPEARANCE HEARING

On the 8TH day of August, 2019, the

above-entitled cause came on regularly for hearing before

the Honorable James E. Sullivan, in Division 16B of the

Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by

Nicholas Lake, City of St. Louis, State of Missouri.

The Defendant was present by video and was

represented by Chris Faerber.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

August 8, 2019

1
2          THE COURT:     So, Mr. ███████, you have two matters
3  that appear on this afternoon's docket.  This is your first
4  initial appearance in court.  I need for you to understand
5  that anything that you say to me can and will be used
6  against you in a court of law.  You don't have to make any
7  statements at all if you don't want to, okay?
8          THE DEFENDANT:    Yes, your Honor.
9          THE COURT:    At this time you are limited -- you
10  have an attorney for a limited appearance.  Mr. Chris
11  Faerber is a private criminal defense attorney.  He is
12  representing you today on a limited contract basis for only
13  today, sir, so you do have a lawyer present.  The State of
14  Missouri is represented by Mr. Nicholas Lake, an assistant
15  circuit attorney.
16          So, sir, I'm going to at this time advise you of
17  certain rights that you have and make sure that you
18  understand what's going on here today.  I want to make
19  sure you understand the nature of the charges.  You have
20  two different cases pending.  In Cause Number 1922-CR02265
21  you are charged in violation of Section 575.150 RSMO with
22  committing the Class E felony of resisting a lawful stop
23  punishable under conviction Section 558.002 and 558.011
24  RSMO in that on or about April the 18th, 2019 in the City
25  of St. Louis, State of Missouri, Martinous Walls, a law

1    enforcement officer, was attempting to make a lawful stop

2    of a vehicle being operated by you for a stop sign

3    violation.  And the defendant knew that the officer was

4    attempting to make a stop, a lawful stop, and for the

5    purpose of preventing the officer from effecting the stop,

6    the lawful stop, resisted the stop by fleeing from the

7    officer.  And the defendant fled in such a manner that

8    created a substantial risk of serious physical injury or

9    death to other persons, and that the defendant drove at a

10   high rate of speed violating traffic control devices,

11   passing vehicles on the opposite lane of traffic and

12   nearly striking another vehicle.

13           In Count Number II, you are charged in violation

14   of Section 571.015 RSMO, committed the felony of armed

15   criminal action punishable under conviction under Section

16   571.015.1 RSMO in that on or about May 18 in the City of

17   St. Louis, State of Missouri, the defendant committed the

18   felony of resisting a lawful stop charged in Count I, all

19   allegations of which are incorporated herein by reference,

20   and the defendant committed the foregoing felony of

21   resisting a lawful stop with and through the knowing use,

22   assistance and aid of a dangerous instrument, to wit:  A

23   2016 Kia Forte automobile.

24           THE DEFENDANT:   Your Honor --

25           THE COURT:   Sir, just a moment, please.  I believe

1    that your attorney probably would like to speak with you

2    before you make any statements to the Court.  And at this

3    time I'm going to go to the other cause number.  I'm going

4    to handle both cause numbers.  The second cause number is

5    1922-CR02481.

6                    And in that case, sir, you're charged as

7    follows:  In a grand jury indictment you have been charged

8    in Count I in violation of Section 565.050 RSMO you

9    committed the Class A felony of assault in the first

10   degree punishable under conviction under Section 558.011

11   RSMO.  And that on or about May 3rd, 2019 in the City of

12   St. Louis, State of Missouri, the defendant struck Brendan

13   Byers with a flashlight and such conduct was a substantial

14   step toward the commission of the offense of assault in

15   the first degree of Brendan Byers, a law enforcement

16   officer and special victim, and was done for the purpose

17   of committing such assault.

18                   Count Number II.  Defendant in violation of

19   section 571.015 RSMO committed the felony of armed

20   criminal action punishable under conviction, upon

21   conviction under Section 571.015.1 RSMO in that on or

22   about May 3rd, 2019 in the City of St. Louis, State of

23   Missouri, the defendant committed the felony of assault in

24   the first degree charged in Count I, all allegations of

25   which are incorporated herein by reference.

1       The defendant committed the felony, the

2    foregoing felony of assault in the first degree by, with

3    and through the knowing use and assistance and aid of a

4    dangerous instrument.

5           Count Number III you are charged as follows:  In

6    violation of Section 575.150 RSM0 committed the Class E

7    felony of resisting a lawful stop punishable under

8    conviction under Section 558.002 and 558.011, and that on

9    or about May 3rd, 2019 in the City of St. Louis, State of

10   Missouri, Chase Worth, a law enforcement officer, was

11   attempting to make a lawful stop of a vehicle being

12   operated by the defendant and the defendant knew or

13   reasonably should have known that the officer was making a

14   lawful stop and for the purpose of preventing the officer

15   from effecting the stop, resisted the stop of the

16   defendant by fleeing from the officer and the defendant

17   fled in such a manner that created a substantial risk of

18   serious physical injury or death to other persons in that

19   defendant operated a motor vehicle at high speeds in

20   residential areas, drove through a yard, drove the wrong

21   way on city streets and ignored traffic signals.

22          In Count Number IV in violation of Section

23   571.015 RSMO you committed the felony of armed criminal

24   action punishable under conviction under Section 571.015.1

25   RSMO in that on or about May 3, 2019 in the City of St.

1  Louis, State of Missouri, the defendant committed the

2  felony of resisting a lawful stop charged in Count III,

3  all allegations of which are incorporated by reference.

4  And the defendant committed the foregoing felony of

5  resisting a lawful stop by, with and through the knowing

6  use, assistance and aid of a dangerous instrument.

7          And those are four counts that are charged on

8  the second case, sir.  And so before you make a statement

9  I need for you to understand again that anything that you

10  say can be used against you in a court of law.  You do not

11  have to make any statement.  You might want to speak with

12  your lawyer before you make a statement.

13          Mr. Faerber, is there anything you would like to

14  say to your client at this time?

15          MR. FAERBER:   Yes.  Mr. █████, this is Chris

16  Faerber.  I am representing you today for the purpose of

17  this hearing.  I would advise you not to talk about your

18  case, anything to do with your case, because as the judge

19  told you anything you say could be used against you and you

20  don't want to misspeak about anything.

21          If you have anything to say, just talk about if

22  you would have a place to live, which I will ask you.  If

23  you were to be released, would you have a place to stay?

24  It lists here that your father is local, but can you stay

25  with your father?

```
 1              THE DEFENDANT:   Yes.  I still want to speak to
 2   your Honor if I may.  My mother in hospice right now.  She
 3   on hospice and that's why I would like to if I could get
 4   house arrest or GPS monitoring if we have the money to pay
 5   for it today or tomorrow, your Honor.  I have 90 days and
 6   just picked up these cases.  As my lawyer said anything, not
 7   to say anything about my case --
 8              THE COURT:    Sir, you'll have to speak up.  We have
 9   a court reporter attempting to take down everything you're
10   saying so if you would speak a little bit more loudly if you
11   wish to speak.
12              THE DEFENDANT:   I'm asking for mercy of the Court,
13   your Honor, and can I please be let go on GPS or house
14   arrest.  My mother is on hospice, ████████, and my father,
15   ████████.  And I am disabled and I am on probation and
16   my probation judge is willing to see me to release me back
17   out to society to be with my mama, but I have to finish this
18   first so I'm asking for lenience to be released to St. Louis
19   County so I can go home and be with my mom on house arrest
20   or GPS with my father ████████ at ████████ with my
21   mother, ████████, who is on hospice again, sir.  Please.
22   And I am disabled so I really don't consider myself or see
23   myself being fit to be a threat to society or run and my
24   family doesn't have a vehicle.  We don't have a vehicle, so
25   won't be no more driving, sir.
```

1              THE COURT:    All right.  At this time, sir, I'm

2    attempting to determine if there is any conditions of

3    release of bond to be fit to release you out of confinement.

4    In the event that you are detained and not released from

5    confinement, you'll be back in court in seven days' time for

6    a reevaluation of the conditions of any proposed bond

7    situation.

8              So you've been advised of the nature of the

9    charges.  Your attorney is present.  At this time I'm

10   going to ask Mr. Lake, as a prosecutor in the case do you

11   wish to be heard relative to the bonds in both cases?

12             MR. LAKE:    Yes, your Honor.  Before we begin can

13   we have a brief moment?  It's my understanding the bond

14   commissioner just stepped out to make a phone call to the

15   defendant's father to verify some of the claims he just made

16   in regards to his mother.  And before I announce the State's

17   position, I'd like to see if he's able to make contact with

18   the defendant's father.

19             THE COURT:    Very well.

20             MR. LAKE:    Thank you.

21             MR. FAERBER:    Your Honor, can we go off the record

22   quickly?

23             THE COURT:    We'll be off the record.

24             (At this time a discussion was held off the

25   record.)

1           THE COURT:   We'll be on the record at this time

2   and we are at this time unmuted.  Can you hear me, sir?

3           THE DEFENDANT:   (Nodding head.)

4           THE COURT:   You may.

5           BOND COMMISSIONER:   Judge, I did talk with his

6   father, Mr. ████████. He did state to us that his wife

7   is in hospice.  She's been there two weeks, that she's in

8   poor health.  I addressed the issue of him staying with

9   them.  He stated that at this time that he did not want him

10   to stay with them, that he would probably have to get money

11   together to have him housed.

12           He said this is an agreement that him and his

13   wife had come to that their son kinda drains them of their

14   money and it's up to him to do what he can to stand on his

15   own two feet.  He said he'll try to make some type of

16   arrangements to get him a place to stay, but he won't be

17   staying with them and his wife agrees to that.

18           THE COURT:   Very well, I appreciate that

19   information.  Mr. Lake, do you have anything further, sir?

20           MR. LAKE:   Your Honor, the State's position in

21   this case is that the bond, which I believe it's currently

22   set at no bond allowed --

23           THE COURT:   Well, my understanding there's two

24   different bond amounts.  And in one cause number it's set at

25   $20,000, 10 percent authorized in Cause Number 1922-CR02265.

1    And in the other cause number it's set at no bond.  That is

2    correct.

3                MR. LAKE:    Correct.  So for the cause number

4    ending in 2481, your Honor, the State believes that the bond

5    could appropriately be modified to $50,000, 10 percent

6    authorized.  The Court already reviewed most of the facts

7    when reading the charge to the defendant, so the only thing

8    that the State will provide at this point are the

9    defendant's priors.

10               From 2002 I'm showing a conviction for unlawful

11   use of a weapon for which the defendant received an SES,

12   three years' probation with a one-year backup.  That was

13   revoked.

14               Also in 2002 I'm showing a finding of guilt for

15   tampering with a motor vehicle in the first degree, for

16   which the defendant was sentenced to five years'

17   confinement.

18               In 2007 I'm showing a conviction for a

19   distributing, delivering and/or manufacturing a controlled

20   substance for which the defendant received eight years

21   confinement.

22               Also from 2007 in a separate case I'm showing a

23   conviction for robbery in the second degree.  Defendant

24   received eight years' confinement.  Burglary first, eight

25   years' confinement.  Assault on law enforcement, he

1   received seven years' confinement.  And a charge for

2   resisting arrest for which the defendant received four

3   years' confinement.

4          From 2013 I'm showing a finding of guilt for

5   harassment.  Defendant was sentenced to six months'

6   confinement.

7          In 2018 I'm showing a conviction for stealing

8   leased or rented property.  The defendant received an SES,

9   five years' probation with a five year backup.

10          And finally, your Honor, also from 2018 I'm

11   showing a finding of guilt for domestic assault in the

12   fourth degree for which the defendant received a sentence

13   of three months' confinement.

14          Based on the facts of the case and again the

15   defendant's prior convictions and taking into

16   consideration the rules and finding the least restrictive

17   means, the State again would be asking the Court to modify

18   the bond to $50,000 with 10 percent authorized.

19          I'm sorry, your Honor, in terms of the cause

20   number ending in 2265, the State would move for the bond

21   to remain as it is currently set.

22          THE COURT:   What is the defendant's position,

23   Mr. Faerber?

24          MR. FAERBER:   Well, your Honor, I would ask that

25   he be released on his own recognizance so he can deal with

1    his county probation cases.  And while the cause number

2    ending in 2481 on its face looks serious, ultimately it is

3    allegedly hitting a police officer with a flashlight and

4    driving away.  So looks very serious, but ultimately I'm not

5    even sure if those charges would stick as is.

6              And as far as an armed criminal action attached

7    to the resisting arrest, while I know that is legally

8    possible and is done, I would also look at the legislative

9    intent of a Class E felony that tops out at four years

10   being paired with an unclassified felony that has a

11   minimum of three years, no parole allowed or probation.

12             So if your Honor will not consider a personal

13   recog, I would ask that your Honor follow the State's

14   position of the 50,000 ten percent.  That would give his

15   family some ability to do something should they choose to.

16   I have nothing further.

17             BOND COMMISSIONER:    Judge, I will state that in

18   terms of if -- as the attorney stated, if the family can do

19   something.  His father stated that they're in the process of

20   bankruptcy.  They've already lost their car.  The mother is

21   in poor health and he's got to scrap together some money in

22   order for him to find him a place to stay.

23             THE COURT:    Mr. ████, you kind of indicated that

24   you wished to say something, but I want you to know that

25   your attorney perhaps would like to say a couple words to

1    you before you say something.

2              MR. FAERBER:    Yeah, Mr. ███, do not talk about

3    the cases against you, any facts, any circumstances.  Is

4    what you're about to say to do with your family or your

5    potential housing?

6              THE DEFENDANT:    Yes.  This is about the housing,

7    sir.

8              MR. FAERBER:    Okay.  Go ahead.

9              THE DEFENDANT:    On and about the alleged crime of

10   May 3rd, that's where I was residing at, at ██████

11   ███████████ in Ballwin, Missouri ██████ with a ██████

12   ██████ who rents the property, and she let me rent a back

13   room for 150 a month and that's where I was trying to go

14   reside.  I wasn't going to be staying with my parents

15   because of the past instance which was brought up about the

16   ex-girlfriend.  That's what made it where I couldn't get

17   that housing unit.  So that's where I was going to be

18   staying at was being since my mother --

19             MR. FAERBER:    So is that a place you would be able

20   to go back to?  Is that a place you would be able to return

21   to?

22             THE DEFENDANT:    Yes, sir, if that was okay.  I

23   mean I have the number also and the name.  If you need the

24   name and number it's ████████.  ██████████████

25   ███████████ sir.  That's what I was saying 150 a

1    month to her and her sister, sir.

2            MR. FAERBER:   Okay, thank you.

3            THE DEFENDANT:   Yes, sir.

4            THE COURT:   Relative to Cause Number 1922-CR02265

5    the bond currently is set at $20,000, 10 percent authorized.

6    I will deny the request for a bond change.  That bond will

7    remain the same at the previously stated amount.  I will set

8    the matter for a bond hearing within seven working days.

9    That will be August the 15th, 2019 at 10:30 AM.  And if

10   there are any victims, please notify them.

11           Relative to Cause Number 1922-CR02481, the

12   defendant's request for recog bond is hereby denied.  I do

13   see that the defendant has previously been convicted of

14   assault second of a law enforcement officer and got seven

15   years in jail.  And the State is requesting an amendment

16   of the bond from no bond to that of $50,000, 10 percent

17   authorized.  I find that concerning.

18           I see that the defendant is on crutches.  His

19   mother is in a dire state.  I also understand he has some

20   matters in St. Louis County that he must answer to before

21   he hits the street.  I do not believe that Mr. ▮▮▮▮ will

22   be able to post the bond.  As a result I will go along

23   with the State's recommendation.  Bond will be amended

24   from that of no bond to $50,000, 10 percent authorized.

25           I will schedule the matter for a bond hearing on

1   August the 15th, 2019 at 10:30 AM in this division,

2   Division 16B.  Mr. ████, if there's some way that you get

3   out of confinement on these charges, you still need to

4   appear in court on August the 15th, 2019 at 10:30 AM.  Are

5   you aware of that, sir?

6                    THE DEFENDANT:    Yes, sir, your Honor.

7                    THE COURT:    That is your next court date.  If you

8   fail to appear in court on your next court date, all bets

9   are off.  Capias warrants will be issued and you will be

10  detained after that.  Do you understand, Mr. ████?

11                   THE DEFENDANT:    Yes, sir, your Honor.

12                   THE COURT:    All right.  That will be all.

13                            END OF TRANSCRIPT

```
 1                          CERTIFICATE

 2            I, ELLEN L. VINCE, Certified Court Reporter,

 3   do hereby certify that I am an official court reporter for

 4   the Circuit Court of the City of St. Louis; that on August

 5   8, 2019, I was present and reported all the proceedings had

 6   in the case of STATE OF MISSOURI, Plaintiff, vs. ██████████,

 7   Defendant, Cause No. 1922-CR02481 and 1922-CR02265.

 8            I further certify that the foregoing pages

 9   contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15                 /s/Ellen L. Vince

16

17            _____

18                 ELLEN L. VINCE, CCR, CSR, CM
                            CCR #350
19

20

21

22

23

24

25
```

# EXHIBIT 188

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI
### Honorable Timothy Boyer, Judge

| | |
|---|---|
| **STATE OF MISSOURI,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Cause No. 1922-CR02887** |
| | ) **1922-CR02888** |
| | ) |
| **SHANIKA EVANS,** | ) |
| **Defendant.** | ) |

## <u>TRANSCRIPT OF FIRST APPEARANCE HEARING</u>
September 10, 2019

**Mr. Nick Lake**
Assistant Circuit Attorney
    on behalf of the State of Missouri,

**Ms. Jessica Diamond**
Attorney At Law
    on behalf of the Defendant.

JENNIFER A. DUNN, RPR, CCR #485
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1          (The following proceedings were had in open

2     court:)

3          THE COURT:    We are on the record on two cause

4     numbers, Cause Number 1922-CR02887 and Cause Number 1922-

5     CR02888, each of those cases are styled State of Missouri

6     versus Shanika Evans.

7          Ms. Evans is present via the closed circuit video,

8     at this time, within 48 hours of her arrest on these

9     charges.

10          I'll go through the cases.  On the case ending

11     887, Ms. Evans faces three counts.  Count I is the Class D

12     felony of domestic assault in the second degree.  Count II

13     is the Class D felony of assault in the third degree on a

14     special victim.  And Count III is the Class D felony of

15     assault in the third degree on a special victim.

16          The conditions of release on that case are that

17     she is being held on a $15,000 cash only bond.

18          The case ending 888, Ms. Evans faces one count of

19     assault in the third degree with a special victim, which is

20     also a Class D felony.  The conditions of release on that

21     case are that Ms. Evans is being held on a bond that's

22     $7,500 with 10 percent authorized.

23          Ms. Evans, my name is Judge Boyer.  I'm the judge

24     presiding over your hearing this morning.  Can you see me

25     and can you hear me?

1          THE DEFENDANT:   Yes, your Honor.

2          THE COURT:   All right.  If at any point you

3  can't hear me, will you let me know?

4          THE DEFENDANT:   Yes, sir.

5          THE COURT:   Present in the courtroom and

6  representing the State of Missouri is Assistant Circuit

7  Attorney Nick Lake, and present on behalf of Ms. Evans is an

8  attorney who's representing Ms. Evans for the purposes of

9  this hearing and this hearing only, and that's attorney

10  Jessica Diamond.

11          I've read Ms. Evans her charges, and I've also

12  described to her the conditions of release on each of her

13  cases.

14          At this time, Ms. Diamond, on behalf of Ms. Evans

15  on each case, do you waive formal reading on each and enter

16  pleas of not guilty?

17          MS. DIAMOND:   Yes, your Honor.

18          THE COURT:   The Court will enter not guilty

19  pleas on behalf of Ms. Evans on each of these cases.

20          I've informed her of the conditions of release,

21  and the Court now intends to conduct an initial appearance

22  detention hearing under Rule 33.

23          Before we get to the argument portion of that

24  hearing, does either counsel object to me taking judicial

25  notice on each of the cases of the underlying court files

1    and the bond commissioner's report in making those documents

2    part of the record of this hearing?

3                        MR. LAKE:   No, your Honor.

4                        MS. DIAMOND:    No, your Honor.

5                        THE COURT:    Mr. Lake, argument on behalf of

6    the State.

7                        MR. LAKE:    Thank you, your Honor.

8              The State's position in both of these cases is

9    that the bond should remain as they are currently set to

10   ensure the safety of the victim in this case.

11             The primary victim in this case, your Honor, and

12   the defendant, were in an ongoing romantic relationship on

13   the day of this particular incident.  The two became

14   involved in a verbal altercation.

15             The defendant then stabbed the victim in the back

16   with a pair of scissors causing a puncture wound in the

17   victim's back.  Upon arrest and placing the defendant in a

18   police cruiser, the defendant bit and kicked one officer and

19   kicked a second officer.

20             The defendant was transported to the hospital to

21   receive a fit for confinement, where the defendant kicked a

22   nurse in the face causing the nurse's tongue to split open.

23             In terms of prior convictions, your Honor.  From

24   2008, I am showing a conviction for resisting arrest and one

25   count of assault in the third degree.  The defendant

1    received an SIS, six months' probation.

2           From 2010, I'm showing a stealing out of Creve

3    Coeur Municipal Court.  From 2014, I'm showing a finding of

4    guilt for assault in the first degree.  The defendant was

5    sentenced to 31 days confinement.

6           And from 2018, I'm showing a finding of guilt for

7    assault and driving while revoked out of Bridgeton.

8           It should also be noted, your Honor, that the

9    defendant has a list of prior arrests that are also a bit

10   troubling.

11          From 2009, I'm showing an arrest for assault

12   third, as well as a resisting arrest.  From 2010, I'm

13   showing an arrest for assault third.  From 2011, I'm showing

14   an arrest for domestic assault in the first degree.

15          From 2014, I'm showing an arrest for property

16   damage in the first degree, domestic assault the second

17   degree, and assault in the third degree.  From 2015, I'm

18   showing an arrest for assault in the third degree.  And also

19   from 2015, on a separate matter, I'm showing an arrest for

20   property damage in the second degree.

21          Your Honor, based -- it should also be noted that

22   our office has been in contact with, again, the victim in

23   this case.  He was planning to be present today, but due to

24   unforeseen circumstances, that was not able to happen, but

25   he's indicated that he does have safety concerns and safety

1    for his well-being.

2              Your Honor, based on the facts of this case, the

3    defendant's prior convictions and arrest history, the State

4    believes that she does pose a danger to the victim and

5    potential general community, so the State's opposed to a

6    reduction in either of the cases at this time.

7              THE COURT:   Ms. Diamond, argument on behalf

8    of Ms. Evans.

9              MS. DIAMOND:   Your Honor, I believe that the

10   priors that the prosecutor is talking about are very minor,

11   all misdemeanors.

12             The victim in this case, I believe, is -- there's

13   only a victim on one of the counts that is in any sort of

14   relationship with or was in any sort of relationship with

15   the suspect, I'm sorry, the defendant.

16             So that is only in regard to one count, I believe.

17   There were no weapons involved in any other counts.

18             I would ask that she be placed on electronic home

19   monitoring, and in light of the financial burden that the

20   bonds placed on her, that she be released on a recognizance

21   bond with a home detention.

22             THE COURT:   Based on the evidence that the

23   Court has heard at this time, based on the argument of

24   counsel, the record in this case, at this time on each of

25   the two counts, the Court is going to deny a request for

1   modifications of the conditions of release.  So the bonds

2   will remain of $15,000 cash only on the case ending 887, and

3   $7,500 with 10 percent authorized on the case ending 888.

4           Under Rule 33.05, should Ms. Evans remain

5   confined, she has a right to an additional bond hearing

6   within 7 working days of this initial appearance.

7           The Court will set that hearing on 9/17 of 2019,

8   at 10:30 a.m.  Should Ms. Evans post that bond, the Court

9   will set her initial appearance in Division 25 on

10  October 10th, 2019, at 9:15 a.m.

11          Ms. Evans, if you don't post your bond, you have a

12  right to an additional bond hearing, and that will occur

13  next Tuesday at 10:30 a.m., okay?

14          THE DEFENDANT:   Yes, your Honor.  I do have

15  one other thing because me and my baby daddy --

16          THE COURT:   I want to stop you for one

17  second.  I'm not going to tell you you can't talk, but I

18  just want to say one thing to you.

19          I want to -- I sense that you're going to talk to

20  me about something that happened with regard to the case,

21  one of the cases that we're talking about, okay.  I know

22  you're shaking your head at me, but I just want to remind

23  you that you do have a right to remain silent and anything

24  you say, even in this hearing, can and will be used against

25  you, and you have the right to have an attorney.

1          You have an attorney who's representing you just

2     for the limited purpose of this hearing, but in the case

3     going forward, you have a right to have an attorney, and if

4     you can't afford one, one will be appointed for you.

5          I've read you your rights.  I've informed you I do

6     not think it's in your best interest to talk about the facts

7     in this case.

8          Having said that, is there something you want to

9     share with me, Ms. Evans?

10          THE DEFENDANT:    Hiring a public defender.

11          THE COURT:    Okay.  Have you filled out a

12     public defender application yet?

13          THE DEFENDANT:    No.

14          THE COURT:    All right.  They have those.

15     They can give you those.  The case workers at the jail have

16     them.  The sooner you fill one out the better.

17          If you fill one of those applications out today

18     and you're eligible for the public defender, you'll have

19     them representing you at your hearing next Tuesday, okay?

20          THE DEFENDANT:    Next Tuesday at 10 o'clock?

21          THE COURT:    Next Tuesday at 10:30 in the

22     morning.

23          THE DEFENDANT:    In Division 25?

24          THE COURT:    It will be in this same division,

25     16B.  It will be in front of Judge Roither.

1          Thank you, Ms. Evans.

2                (The hearing was concluded.)

1                                **CERTIFICATE**

2               I, Jennifer A. Dunn, Registered Professional

3 Reporter and Certified Court Reporter, do hereby certify

4 that I am an official court reporter for the Circuit Court

5 of the City of St. Louis; that on September 10, 2019, I was

6 present and reported all the proceedings had in the case of

7 STATE OF MISSOURI, Plaintiff, vs. SHANIKA EVANS, Defendant,

8 Cause No. 1922-CR02887 and 1922-CR02888.

9               I further certify that the foregoing pages

10 contain a true and accurate reproduction of the proceedings.

11

12

13

14

15

16           **"/S/JENNIFER A. DUNN, RPR, CCR #485"**

17

18

19

20

21

22

23

24

25

# EXHIBIT 189

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable James E. Sullivan, Judge

STATE OF MISSOURI,                    )
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )    1922-CR02454
                                      )
THELMA WHITE                          )
                                      )
          Defendant.                  )

INITIAL APPEARANCE HEARING

On the 6TH day of August, 2019, the

above-entitled cause came on regularly for hearing before

the Honorable James E. Sullivan, in Division 16B of the

Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by

Nicholas Lake, City of St. Louis, State of Missouri.

The Defendant was present by video and was

represented by Andy Sottile.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

| | |
|---|---|
| 1 | August 6, 2019 |
| 2 | THE COURT:    Are you Miss White? |
| 3 | THE DEFENDANT:    Yes, sir. |
| 4 | THE COURT:    Miss White, I am Judge Sullivan.  I |
| 5 | understand you were recently arrested.  I'm going to read to |
| 6 | you the current charges, advise you of certain rights and so |
| 7 | I need to make sure that you understand the following:  You |
| 8 | have a right to remain silent.  You don't have to make any |
| 9 | statements.  Anything that you say can and will be used |
| 10 | against you in a courtroom.  Do you understand that? |
| 11 | THE DEFENDANT:    Yes, sir. |
| 12 | THE COURT:    You have an attorney today for a |
| 13 | limited representation of this hearing only.  His name is |
| 14 | Mr. Andrew Sottile.  He is here today for a limited purpose |
| 15 | for this day only.  He does not represent you throughout the |
| 16 | case.  Do you understand that? |
| 17 | THE DEFENDANT:    Yes, sir. |
| 18 | THE COURT:    The State of Missouri is represented |
| 19 | by Assistant Circuit Attorney Mr. Nicholas Lake.  At this |
| 20 | time I will read to you the charges in Cause Number |
| 21 | 1922-CR02454.  You are charged as follows:  Violation of |
| 22 | order of protection for an adult first degree.  You are |
| 23 | charged in violation of Section 455.010 and 455.085 RSMO. |
| 24 | You committed the Class A misdemeanor of violation of order |
| 25 | of protection punishable under conviction under Sections |

1    455.085 and 558.002 and 558.011 in that on or about August

2    the 4th, 2019 the defendant, having been served with a copy

3    of an order of the Circuit Court of the City of St. Louis,

4    cause number 1922-PN01021 that prohibited the defendant from

5    being within 100 feet of petitioner MB and/or communicating

6    with MB knowingly violated the terms and conditions of the

7    order by being within 100 feet of MB and communicating with

8    MB.  Do you understand that charge?

9                  THE DEFENDANT:    (No response.)

10                  THE COURT:    You can say no or yes, I mean --

11                  THE DEFENDANT:    Yes, sir.  Yes, sir.

12                  THE COURT:    -- if you understand the charge.  Does

13   the State wish to be heard on the bond situation?

14                  MR. LAKE:    Yes, your Honor.  This is another case

15   where I believe that the State and defense counsel have

16   reached an agreement.  Before I announce that agreement I

17   just want to note that our office has been in contact with

18   the victim in this case and he has indicated to us that he's

19   opposed to all bond reduction and bond reductions unless the

20   defendant can receive drug treatment.  He's indicated that

21   he wants the defendant to be in the lives of his children,

22   but only if the defendant remains off drugs and can control

23   her anger.

24                  The agreement that we've reached is that the

25   defendant should be released on her own personal

Dixon v. City of St. Louis, 04557

1   recognizance with the condition that she be screened in

2   Division 25A for drug treatment.  And we would also

3   request that she also receive anger management through

4   EMASS.  However, I'm not sure of her current financial

5   status so if defense counsel wants to inquire as to

6   whether or not that's something that she might be able to

7   do.

8            THE COURT:   I don't think we have Miss White's

9   attention right now because she seems to be laughing

10  throughout this.  So, Miss White, is there something funny

11  that I don't understand?

12           THE DEFENDANT:   No, sir.

13           THE COURT:   Because as far as I'm concerned if you

14  want to continue to laugh, I'll be doing this docket

15  tomorrow and I can see you tomorrow.

16           THE DEFENDANT:   No, sir.

17           THE COURT:   Do I have your attention now?

18           THE DEFENDANT:   Yes, sir.

19           THE COURT:   I certainly hope so, Miss White.

20  Mr. Sottile, do you want to talk to your client or shall I

21  continue to talk with her?

22           MR. SOTTILE:   Your Honor, if I may inquire for a

23  moment?

24           THE COURT:   You may.

25           MR. SOTTILE:   My name is Andy Sottile.  I'm a

1    private attorney who is entering today for this limited

2    purpose on the bond hearing.  The prosecutor and I spoke and

3    we reached an agreement if it's okay with you that you be

4    released on your own personal recognizance bond, okay.  Do

5    you understand that?

6              THE DEFENDANT:   Yes.

7              MR. SOTTILE:   Okay.  And as a condition of that

8    bond you would also be screened for treatment court in 25A,

9    meaning you'd have to come back to court and fill out an

10   application.  You'd get information about what treatment

11   court is.  You'd learn about that and you'd be screened for

12   that.  That would be a possible option for you, okay.  Would

13   you be willing to do that?

14             THE DEFENDANT:   Yes.  I don't know what he said

15   that -- something about coming back within a certain amount

16   of days.  I cannot hear.

17             THE COURT:   Gentlemen, before we go too much

18   further, is this a Class A misdemeanor?

19             THE DEFENDANT:   Yes, sir.

20             THE COURT:   And treatment court is normally for

21   individuals charged with felonies.  And so unless there's

22   some sort of special proviso allowing her to be involved

23   with treatment court, it quite candidly ain't gonna happen.

24   And looking at this individual standing in front of me she

25   ain't gonna do it.

1          MR. SOTTILE:    Your Honor, in light of that I'd ask

2     the Court if the Court would have her report to EMASS and --

3          THE COURT:    I'm thinking about just detaining her

4     and she can come back next week.

5          MR. SOTTILE:    Your Honor, I haven't spoken with

6     her before, but I think possibly the reason why she was

7     smiling earlier, she probably wanted to make a comment about

8     the validity of the charges which obviously this is not the

9     time to do that regarding contesting the charges.  Maybe

10    she, you know, doesn't -- believes she shouldn't be charged

11    in this and maybe -- ma'am, you understand this is just a

12    detention hearing, correct?  This is not --

13         THE DEFENDANT:    Yes.  I do apologize.  I can't

14    hear.

15         MR. SOTTILE:    This is not the place you would

16    contest the charges.  Do you understand that?

17         THE DEFENDANT:    Yes.

18         MR. SOTTILE:    So, your Honor, I'd ask the Court to

19    consider as a condition of the bond making her report to

20    EMASS and then they can offer an anger management program.

21    Do you work, ma'am?

22         THE DEFENDANT:    No.  I was supposed to be at my

23    job yesterday 11:00, but now I don't have a job anymore.

24         MR. SOTTILE:    Where did you work?

25         THE DEFENDANT:    I started work at Texas de Brazil

1   in the Galleria.

2              MR. SOTTILE:   So, your Honor, I'd ask the Court to

3   consider placing her on the condition that she report to

4   EMASS and be ordered to complete an anger management program

5   through them.

6              THE COURT:   What do you do for money, Miss White?

7              THE DEFENDANT:   Well, like I said I was just

8   supposed to start my job yesterday at 11.  Now I have no

9   money or nothing at all.

10             THE COURT:   What did you do before you were

11  supposed to start your job?

12             THE DEFENDANT:   Prior to that I was bartending at

13  Cotter's and at Tuckers.  I was working two jobs prior.  I

14  wanted a change of pace.  I didn't want to be a bartender

15  anymore.  I wanted to go back into a fine dining restaurant

16  and not do the bartending.

17             THE COURT:   Where do you live, Miss White?

18             THE DEFENDANT:   I was residing in Memphis.  I just

19  came back here for court for the children.

20             THE COURT:   So you don't live at 2211 Prather?

21             THE DEFENDANT:   That was my address that I resided

22  at for many years.  It was my parents' home and my

23  grandparents' home and we just sold it, literally just sold

24  it.

25             THE COURT:   Where do you live?

1          THE DEFENDANT:    My father passed away.  My sister

2     passed away.  Like I said, I just moved back from Memphis is

3     where I was residing and I moved here for court, for court.

4     I just came back here for court.  Did not move here.  Came

5     back here for court.  And now I'm literally headed out back

6     to Memphis.

7          MR. SOTTILE:    Ma'am, do you have any other

8     relatives that stay here that you could possibly stay here?

9          THE DEFENDANT:    I have no family or friends, sir.

10    I -- I -- my family died.  All's I have is no one.  I have

11    no one.

12          MR. SOTTILE:    When you say you're coming back here

13    for court, is that for a custody hearing?

14          THE DEFENDANT:    Correct.  I will be back for court

15    just like I was just back here for my last court.  I will

16    not miss it, no, sir.  If I have to stay here, I can find a

17    place to stay.  If you feel, Judge, that I should, then I'm

18    sure I could find a place to stay.  But I'd rather not be

19    here.  I'd rather go back to Memphis.  But if I have to for

20    court, then I'm going to have to do what I have to do,

21    right?

22          MR. SOTTILE:    Ma'am, can I ask you, you were

23    supposed to start here a job here, correct, at the Galleria?

24          THE DEFENDANT:    Correct, and I was going to stay

25    here.  But now that I lost the job that I wanted, and I was

1    supposed to be there yesterday, I had nothing to be here

2    for.  Nothing.  I have no one.  I've lost everything.  So

3    but I can find a friend to stay with.  I can stay at 313

4    West Courtois Street.

5              MR. SOTTILE:   Whose address is that?

6              THE DEFENDANT:   That's Josh, Joshua Welch's

7    address.

8              MR. SOTTILE:   Is that a friend of yours?

9              THE DEFENDANT:   Yes, sir.

10             MR. SOTTILE:   You're sure that he would let you

11   stay there?

12             THE DEFENDANT:   Positive.  He's my ex-boyfriend

13   so --

14             MR. SOTTILE:   Your Honor, I would argue that she

15   does have a viable address, home placement here.  This is a

16   misdemeanor.  She could still report through EMASS.  She

17   did -- and you, how long -- so you're confident you'd be

18   able to apply for another job and get another job fairly

19   quickly?

20             THE DEFENDANT:   Most definitely.

21             MR. SOTTILE:   Would you be trying to work --

22             THE DEFENDANT:   Buffalo Wild Wings just called me

23   as a matter of fact right before all this happened.

24             MR. SOTTILE:   Who did, I'm sorry?

25             THE DEFENDANT:   Buffalo Wild Wings just called me

1   for an interview prior to all this happening.  So I mean I

2   have put my résumé in many places.  I'm sure I've gotten

3   phone calls back.  I'm sure I already have a job to tell you

4   the truth.  And I'm sure I could call this job back and tell

5   them that I had a minor setback.  I had court or something,

6   I got the date misconstrued, whatever, and probably still

7   keep this job to tell you the truth.

8           MR. SOTTILE:   Okay.  Your Honor, again I would

9   request the Court to release her on her own recognizance.  I

10  think that it sounds like she's going to be able to get

11  another job.  She's willing to stay here, so I think she's

12  going to make her appearance in court.

13          THE COURT:   The bond is set at $250 cash only.  I

14  think that's not unreasonable for the situation.

15          MR. SOTTILE:   Ma'am, can I ask you -- the bond is

16  $250.  The friend you were going to stay at, is that a

17  possibility he would help you make that bond?

18          THE DEFENDANT:   No, sir, I don't have anyone, I

19  don't have any money.  I don't have anyone with money and

20  I'm not going to ask anyone for money, absolutely not.  If I

21  had the money, I would bond out for sure, but I don't have

22  the money.  I don't have a job.  I don't have money.  I can

23  pay you guys the money back soon as I get a job, but I can't

24  do it now, no.

25          MR. SOTTILE:   Thank you, ma'am.

Dixon v. City of St. Louis, 04564

1      THE DEFENDANT:   Thank you.

2      THE COURT:   The bond will remain after

3  consideration of all the arguments made at the initial

4  appearance, as well as the factors that the Court needs to

5  consider under Rule 33.01.  The Court is of the belief that

6  a bond of $250 cash only is reasonable.  As a result that

7  will be the bond.  The bond remains set at $250 cash only.

8  This matter will be scheduled for a hearing on August the

9  13th, 2019 at 10:30 AM in the event the defendant is not

10  able to post the bond.  That will be all.

11                    END OF TRANSCRIPT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE

2          I, ELLEN L. VINCE, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on August

5    6, 2019, I was present and reported all the proceedings had

6    in the case of STATE OF MISSOURI, Plaintiff, vs. THELMA

7    WHITE, Defendant, Cause No. 1922-CR02454.

8          I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15          /s/Ellen L. Vince

16

17   _____

         ELLEN L. VINCE, CCR, CSR, CM
18                 CCR #350

19

20

21

22

23

24

25

# EXHIBIT 190

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT, DIVISION 16B
Honorable Scott Millikan, Judge

STATE OF MISSOURI,            )
                              )
                Plaintiff,    )
                              )    Cause No.1922-CR02664
                              )
vs.                           )
                              )
THOMAS WRIGHT,                )        Division No.16B
                              )
                Defendant.    )

BOND REVIEW HEARING

On the 26th day of August, 2019, the
above-entitled cause came on for hearing before the
Honorable Scott Millikan, Judge of Division No. 16-B of
the Circuit Court of the City of St. Louis.

The State of Missouri was represented by Roland
Swanson, Assistant Circuit Attorney, City of St. Louis.

The defendant was present via video conference
and was represented by his attorney, Eric Barnhart,
Attorney at Law.

MARGARET R. COLE, CCR
SWING COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis, 05015

1                    AUGUST 26, 2019

2              THE COURT:    We're on the record in Cause Number

3    1922CR02701.  The State of Missouri is here represented by

4    Assistant Circuit Attorney Roland Swanson.  Also present via

5    video is the defendant in this matter Thomas Wright.

6              Mr. Wright, also present is a private attorney

7    that's contracted to handle the bond hearings and initial

8    appearances on these cases.  His name is Eric Barnhart.

9    He's here to represent you today, do you understand that?

10             THE DEFENDANT:    Yes, sir.

11             THE COURT:    He's only representing you for the

12   purpose of this initial appearance though, okay?

13             THE DEFENDANT:    Yes, sir.

14             THE COURT:    Mr. Wright, you're charged with

15   robbery second degree, a B felony.  You're also charged with

16   assault in the third degree, which is an E felony.  The

17   Court will note that the defendant appeared within 48 hours

18   of his arrest on this date.

19             Mr. Barnhart, do you wish to waive formal

20   reading of the Complaint in this matter?

21             MR. BARNHART:    Yes, Your Honor.

22             THE COURT:    Do you wish to enter a plea of not

23   guilty for Mr. Wright?

24             MR. BARNHART:    Yes, Your Honor.

25             THE COURT:    All right.  The bond is currently set

1     at 75,000 cash only.  What we're here to do today, Mr.

2     Wright, is to determine whether we're going to keep the bond

3     the same, set this matter for a full bond hearing in seven

4     days, or if we're going to make any modifications to the

5     bond and do something differently.

6              I'll hear from the State first and then I'll

7     have an opportunity to hear from Mr. Barnhart, okay?

8     Mr. Wright, I remind you that you have the right to remain

9     silent and anything you say can and will be used against

10    you in a court of law in any future proceedings in this

11    matter.

12             Therefore, I'm going to ask you to be careful

13    when you do make any statements to the Court.

14    Mr. Barnhart will probably do the same.  He may stop you

15    from talking at some point if you're trying to do that,

16    okay?

17             THE DEFENDANT:    Okay.

18             THE COURT:    That's only done because we don't want

19    to violate any of your rights.

20             Mr. Swanson, you may proceed.

21             MR. SWANSON:    Thank you, Your Honor.  Your Honor,

22    the underlying facts of this case the victim in this matter,

23    or actually maybe two victims I should say, are teenagers.

24    What is alleged to have occurred is that the victim was here

25    in St. Louis from Columbia, Illinois in order to pick up

4

1    some parts for his vehicle and he saw a friend at a gas

2    station.  The defendant was present there as well and ended

3    up getting a ride from the defendant as well as a third

4    party who was with the defendant, a female.

5            At some point in the vehicle the defendant is --

6    they're driving around and the defendant requests to use

7    the victim's phone.  At some point thereafter the victim

8    requests to receive the phone back and at that point the

9    defendant extended the phone towards the victim and when

10    he reached to grab it punched him in the face, took the

11    car keys, which were in the victim's hand at that point.

12            There was a struggle that ensued and at some

13    point the defendant was stabbed in the torso with a small

14    pocket knife that the victim had I guess in his

15    possession.  Ultimately, the defendant was able to leave

16    the scene of this incident.

17            When officers eventually caught up with the

18    defendant he was observed to be holding a bloodstained

19    shirt to his torso in the area where it was believed the

20    victim was able to -- or made contact with the person of

21    the individual who was in the vehicle.  I also have a

22    statement from which would be the victim's father in this

23    matter, if the Court would like to see that.

24            THE COURT:   Sure.

25            MR. SWANSON:   This would be --

1              THE COURT:    Mr. Swanson, did he leave with the

2    victim's car in this matter?

3              MR. SWANSON:    I don't believe that he left with

4    the vehicle, Your Honor, or was able to leave with the

5    vehicle.

6              THE COURT:    When you see the Complaint, what the

7    complaint indicates, correct, or am I on the wrong --

8              MR. SWANSON:    Excuse me, I misspoke, Your Honor.

9    The defendant was apprehended the next day asleep in that

10   vehicle so, yes.

11             THE COURT:    Okay.

12             THE DEFENDANT:    Your Honor --

13             MR. BARNHART:    Mr. Wright, please don't make any

14   statements.

15             THE COURT:    You'll get an opportunity, Mr. Wright.

16   Any priors?

17             MR. SWANSON:    As far as the history is concerned,

18   Your Honor, I would defer to the Bond Commissioner for that.

19             BOND COMMISSIONER:    Judge, the history that we

20   have is that in 2006 he had a tampering with a motor

21   vehicle.  Originally he was given a five-year probation and

22   that was revoked.  Seven years Department of Corrections.

23             Also in 2006 forgery.  Five years probation.

24   Revoked.  Seven years Department of Corrections.  2006

25   failure to return rental property.  Five years probation.

1    Revoked.  Seven years Department of Corrections.  2014

2    possession of a controlled substance.  Five years

3    confinement.  2010 driving with license revoked, driving

4    while intoxicated, five days confinement.  2009 driving

5    while intoxicated.  730 days confinement.  We show he has

6    a pending case of unlawful possession of a firearm.  He

7    got a personal recog on that.  He has a court appearance

8    on September 3rd in Division Court 25.

9              THE COURT:    This is important, did this event

10   occur while he was out on bond?

11             MR. SWANSON:    I believe so, Your Honor.  I believe

12   that matter was from August 2nd.  Then this matter is

13   alleged to have occurred on or about August 21st.  Excuse

14   me, August 23rd.

15             THE COURT:    So he's on bond when this occurred on

16   August 24th?  Gentlemen, is that correct?  He was on bond

17   when this occurred on August 24th then?

18             MR. SWANSON:    Yes, Your Honor, I believe so.

19             THE DEFENDANT:    Judge, if I could say something?

20             MR. SWANSON:    He was out on bond on the pending

21   case 1922-CR02427.

22             THE COURT:    He was granted a recog bond on that,

23   correct?

24             BOND COMMISSIONER:    That's correct, Judge.

25             THE COURT:    All right.  Thank you.  Mr. Barnhart.

Dixon v. City of St. Louis, 05020

1              MR. BARNHART:   Thank you.  Mr. Wright, I'm Eric

2    Barnhart.  I'm your attorney for today only.  You filled out

3    an Intake Form with somebody from St. Louis University

4    Occupational Therapy Transition Integration Services.  They

5    took some notes and they were nice enough to provide those

6    notes to me.  It's my understanding that you are homeless

7    but your mother has agreed to let you stay with her, is that

8    correct?

9              THE DEFENDANT:   Yeah.  As long as I get the mental

10   health treatment that I'm supposed to be getting and take my

11   medication.

12             MR. BARNHART:   Right.  It looks like they also

13   noted that you've got Bipolar, Tourette and Attention

14   Deficit Disorder Hyperactivity Disorder, ADHD.

15             THE DEFENDANT:   Correct.

16             MR. BARNHART:   They basically told you they have

17   walk-in services at Places for People and there's Gateway to

18   Better Health to basically get you insurance through Affina

19   Health Care.  They've given you some options, is that

20   correct?

21             THE DEFENDANT:   They gave me a lot of options.

22   They also told my mom options.  She say she's more than

23   willing to let me stay with her and have me get to those

24   programs and do those programs and get my mental health back

25   on track.

1              MR. BARNHART:    Where does your mom live?

2              THE DEFENDANT:    My mom lives in Union, Missouri.

3    She's Vice-President of the United Bank of Union.

4              THE COURT:    Do you know the exact address?

5              THE DEFENDANT:    103 Cheshire Lane.  Union,

6    Missouri, 63084.

7              MR. BARNHART:    Thank you.

8              THE DEFENDANT:    She's very supportive and very

9    strong on me getting my mental health treatment because I

10   don't know what I do sometime if --

11             MR. BARNHART:    I don't want you talking about this

12   exact case.  That could be used as an admission of guilt if

13   you make a statement.  So that's why I don't want you to

14   make any statements about what happened, okay?  Cause it

15   could hurt you later.  It could hurt negotiations.  It

16   could -- like I said, it's bad so I don't want you talking

17   about the case with anybody but an attorney, okay?

18             THE COURT:    Speaking of that, Mr. Wright, are you

19   going to hire a Public Defender -- who's representing you on

20   the gun case?

21             THE DEFENDANT:    Well, I get a Public Defender, but

22   my mom, she said if I were to get my mental health under

23   control and do the things she asked me to do she would try

24   to help me get an attorney.

25             THE COURT:    Right now on the gun case is all I

1    need to know.  You're represented by the Public Defender's

2    Office, correct?

3              THE DEFENDANT:   Right now, yes.

4              MR. BARNHART:   Thank you, Mr. Wright.

5              THE DEFENDANT:   I just need to get to some type --

6    I need to get some type of treatment for my mental health,

7    Your Honor, bad.

8              THE COURT:   Well, Mr. Wright, I've said this

9    before, but one of my main duties here is to try to keep the

10   community safe or at least I feel that's probably my main

11   responsibility when I review these bond hearings.

12             Normally on a case like this I would have no

13   issue probably releasing you on your own recognizance, but

14   that's already happened once and you showed even while on

15   bond you were able to get yourself in this mess while on

16   bond.  Now I understand that may be due to some of your

17   mental issues you're dealing with, but nonetheless it

18   happened and that gives me some serious concern.

19             THE DEFENDANT:   I understand that, Your Honor.  I

20   was wondering maybe if there was a condition of my bond

21   would be for me to go to my mental health.  I can go to St.

22   John Mercy and get a three-day evaluation.  They'll give me

23   some programs if you make that a condition of my bond.  I

24   know that's what I need to do to keep myself safe and to

25   keep -- I know that's my health.  If you could make that

10

1    condition of my bond I would do that within 12 hours.  I'll

2    do it tonight.

3            THE COURT:   Hold on.  Thank you.  How come we have

4    not had a motion to revoke his bond on the gun case?  Have

5    we had that yet?

6            MR. SWANSON:   Your Honor, I'm not sure if that has

7    been filed by the office.  I'm not sure of the status of

8    that or if it will be filed.

9            THE COURT:   Why don't we do this?  Again, Mr.

10   Wright, this is an initial appearance, okay?  This does not

11   mean that your rights are denied as far as having a full

12   hearing on your bond.  What I would like to do is I would

13   like the Assistant Circuit Attorney to go back to his office

14   and find out what we're going to do with the recog bond that

15   you had on the gun case while you were out and then got in

16   trouble while you were out on bond and see if they're going

17   to do anything with that or not, and if they're not what I'm

18   going to do is set this for another bond hearing in seven

19   days.  That will be September 3rd.  Come back at 10:30.

20   Maybe we'll have some more information and see if we have

21   any more contact with the victims on this matter.  Your case

22   will be fully heard regarding the bond on that day.  So at

23   this time the Court denies the request for a bond change and

24   sets it for bond hearing on September 3rd.

25           MR. BARNHART:   Mr. Wright, it might be a good idea

Dixon v. City of St. Louis, 05024

1    for your mom to appear at that hearing.  Because I think if

2    a judge sees your mom vouching for you and saying I'm going

3    to give him a place to live and I'm going to get him mental

4    health, you know, help him, the judge might take that into

5    consideration.

6              THE COURT:    I think that's very good advice.  That

7    will conclude the hearing.

8              (End of proceedings.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis, 05025

12

1                          CERTIFICATE

2                  I, Margaret R. Cole, Certified Court Reporter,

3      do hereby certify that I am an official court reporter for

4      the Circuit Court of the City of St. Louis; that on August

5      26, 2019,  I was present and reported all the proceedings

6      had in the case of State of Missouri, Plaintiff, vs. Thomas

7      Wright, Defendant, Cause No. 1922-CR02701.

8                  I further certify that the foregoing pages

9      contain a true and accurate reproduction of the

10     proceedings.

11

12

13

14

15

16                          /s/Margaret R. Cole

17                          MARGARET R. COLE, CCR

18                               #494

19

20     Date:

21

22

23

24

25

# EXHIBIT 191

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR03194 |
| | ) | 1922-CR03437 |
| TIMOTHY M. HOLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**FIRST APPEARANCE HEARING**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

On Monday, October 30, 2019, the above-entitled
cause came on regularly for hearing before the
Honorable Clinton R. Wright, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of
St. Louis.

**APPEARANCES**

The State of Missouri was represented by Steven
Payne, Assistant Circuit Attorney, City of St. Louis,
State of Missouri.

The Defendant was represented by Melinda L.
Gorman, Attorney at Law.

JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis05342

1           **THE SHERIFF:**  Judge, up next is two lines,

2    Line Nos. 6 and Line 7 on Page 4 of the State's

3    afternoon confined docket.  This is a Timothy Hollins.

4           **THE COURT:**  All right.  Good afternoon,

5    Mr. Hollins.

6           **THE DEFENDANT:**  Good afternoon, Your Honor.

7           **THE COURT:**  How tall are you?

8           **THE DEFENDANT:**  Six-five.

9           **THE COURT:**  I was going to guess six-five.

10   All right.  You have two matters.  The first one is

11   violation of an order of protection, a Class A

12   misdemeanor.  And the second case is burglary,

13   stealing, domestic assault fourth and domestic assault

14   fourth.  So we'll take these up somewhat as one.  Is

15   that correct?

16          **MR. PAYNE:**  Yes, Judge.  My

17   understanding -- that's fine, Judge.  I just want to

18   make sure on the misdemeanor case that I have the

19   right -- is the bond currently set on that?

20          **MS. GORMAN:**  I will tell you in two seconds.

21          **MR. PAYNE:**  Judge, the State would first

22   like to mention that we do have the victim present and

23   she would wish to give a statement.  The

24   bond -- currently on the case 1922-CR03437, the bond

25   is currently set at no bond and the State will be

1    requesting that that remain at no bond.

2              **THE COURT:**  Let me stop you.  Who did you

3    say was present?

4              **MR. PAYNE:**  The victim.

5              **THE COURT:**  All right.

6              **MR. PAYNE:**  On the case ending -- or case

7    No. 1922-CR03194, the bond is currently at $7,500 cash

8    only and the State will be requesting that that bond

9    remain at $7,500 cash only.

10              **THE COURT:**  Did you make a recommendation on

11    the other one, the 3437?

12              **MR. PAYNE:**  It remains at no bond.

13              **THE COURT:**  That is your recommendation?

14              **MR. PAYNE:**  Yes.

15              **THE COURT:**  Okay.

16              **MR. PAYNE:**  Judge, would you prefer to hear

17    from the victim now?  She is present in the courtroom.

18              **THE COURT:**  It is your argument.

19              **MR. PAYNE:**  Come on up.

20              **THE COURT:**  Good afternoon, ma'am.  Yes.

21              **THE VICTIM:**  Good afternoon.  My name is

22    Jacqueline Crump.

23              **THE COURT:**  Jacqueline --

24              **THE VICTIM:**  Jacqueline Crump.

25              **THE COURT:**  How do you spell Crump?

1              **THE VICTIM:**  C-R-U-M-P.

2              **THE COURT:**  All right.  Ma'am, thank you for

3    being here.

4              **THE VICTIM:**  Thank you for allowing me to be

5    here to get this done.  His life mentally and

6    physically is totally messed up.  This man was barred

7    from my property.  He's still around.  Comes around

8    because people stay down there.

9              You know, this man -- the last episode, he

10   robbed me of my gold earrings.  This man has been

11   stressful to me.  The last thing that happened he

12   climbed through my window.  I called police.  They

13   happened to catch him.  They say they had been looking

14   for him.  I feel my life is in danger.  I'm scared for

15   my life, Your Honor.  Please hold him.  Please in the

16   name of Jesus.  I'm tired.

17             **THE COURT:**  I can't do it in the name of

18   Jesus, but I appreciate your position very much and I

19   appreciate you being here.  Thank you, ma'am, very

20   much.

21             **THE VICTIM:**  All right.  And he's also

22   threatening me for my life saying he will kill me.

23             **THE COURT:**  I think you have made that very

24   clear and I appreciate it.

25             **MR. PAYNE:**  Judge, as the victim just

1    indicated, she is afraid of this defendant.  It's --

2    we already have a pending case for a violation of an

3    order of protection, same victim and same defendant.

4    Reading the probable cause statement there were three

5    different interactions; October 13, 2019,

6    October 19th, 2019 and October 29, 2019.

7            She has repeatedly asked the defendant to

8    leave her alone and it's not happening.  She is

9    fearful for her life.  He's threatened her.  She has

10   reached out to law enforcement each time.  In order to

11   ensure public safety and this particular victim's

12   safety, it is the State's position that he be detained

13   pending trial.

14           These interactions keep escalating and

15   there's the prior murder second charge, his prior from

16   1991 murder second, along with ACA robbery second, the

17   ACA he was confined for 25 years.  That was in

18   St. Louis City's jurisdiction.  There is a history of

19   violence for this defendant, and I just don't know

20   that there are any alternatives available in the

21   community pending trial that protect this victim.

22           **THE COURT:**  So the burglary first on the

23   second case is entering the dwelling in order to

24   commit the domestic assault and the stealings?

25           **MR. PAYNE:**  Yes, Judge.

Dixon v. City of St. Louis05346

1              **THE COURT:**  Just to clarify, Ms. Crump.  I

2     wasn't being flippant.  Separation of church and

3     state.  I can't make a decision based on in unison

4     with Jesus Christ, but I do respect everybody's

5     religious beliefs, all right?  I'm confined by the

6     law.

7              All right.  Anything else, Mr. Payne?

8              **MR. PAYNE:**  Not at this time, Judge.

9              **THE COURT:**  Ms. Gorman.

10             **MS. GORMAN:**  Your Honor, I would just note

11     for the first case, the one ending in 3194, it's a

12     Class A misdemeanor.  $7,500 on a misdemeanor seems

13     awfully excessive.  I would point out that the

14     defendant does have ties to the community; his

15     grandmother, his mother, his four children.

16             He's been employed for 15 years with a

17     moving company.  He is 50 years old.  He has a GED.

18     He does have a murder second prior.  I understand that

19     that's a significant consideration by the Court, but I

20     think if the Court is inclined to set any bond in this

21     case that we need to be more focused on protecting the

22     community.

23             I would say that house arrest would be

24     appropriate.  GPS would be appropriate.  Any sort of

25     secured bond where he needs to report to a bondsman or

1    to Emass or to anything else.  Any restrictions that

2    the Court feels would be safe or appropriate, I think

3    would be good in this case.  But I mean, like I said,

4    we're dealing with three Class A misdemeanors, the

5    burglary first --

6              **THE COURT:**  I recognize the charges.

7              **MS. GORMAN:**  Yes.

8              **THE COURT:**  And that that is often a

9    concern.

10             Ms. Crump, do you think an ankle bracelet

11   and a restraining order is going to keep you safe?

12             **THE VICTIM:**  No.  I don't at this point.

13             **THE COURT:**  Okay.  The problem we have in

14   circumstances sometimes is that the behavior can be

15   very frightening, but the charges that can be applied

16   to it may not match what appears to be a very

17   realistic fear.  That makes it difficult.  Sometimes

18   the difficulty lies in having to give a lower bond

19   than you want and sometimes it means giving a higher

20   bond than that is normal.  A lower bond than is normal

21   and sometimes a higher bond than is normal.

22             In this particular matter, it seems

23   Ms. Crump has expressed very clearly her concern with

24   regard to her safety and I believe that the bonds as

25   they are set now is the least restrictive to secure

1    safety of Ms. Crump and others.

2            The next court date to have a formal review

3    is November 6th at 10:30 a.m.  Do I go ahead and give

4    him the other date, too, now on everybody?

5            **MS. GORMAN:**  Because the bonds -- are either

6    of them no bonds allowed?

7            **THE COURT:**  Yes.

8            **MS. GORMAN:**  One is 3,000 and the other is

9    no bond -- or one is 7,500 and the other no bond, yes.

10           **THE COURT:**  Okay.  So Division 25,

11   December 2nd at 9:15 a.m. is also the next upcoming

12   court date.  Well, one is odd and one is even.

13           **MS. GORMAN:**  The one with no bond allowed

14   shouldn't probably be given another one until after

15   the next bond hearing.

16           **THE COURT:**  All right.  With regard to

17   1922-CR03437, the next court date is November 6th at

18   10:30 a.m.  No other court dates following that yet.

19           With regard to 1922-CR03194, it will also be

20   set for November 6th at 10:30 a.m., but a follow-up

21   date in Division 26, December 2nd at 9:15.

22           Is that clear, Jim?

23           **THE SHERIFF:**  Yes, sir.  We have got it.

24           **THE COURT:**  All right.  That will end the

25   record.

Dixon v. City of St. Louis05349

1          (End of proceeding.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Dixon v. City of St. Louis05350

```
 1                        CERTIFICATE
 2              I, Jenna L. Higgins, Certified Court
 3   Reporter, do hereby certify that I am an official
 4   court reporter for the Circuit Court of the City of
 5   St. Louis; that on October 30, 2019, I was present and
 6   reported all the proceedings had in the case of State
 7   of Missouri vs. Timothy M. Hollins,
 8   Cause No. 1922-CR03194; 1922-CR03437.
 9              I further certify that the foregoing
10   pages contain a true and accurate reproduction of the
11   proceedings.
12
13
14                    _Jenna L. Higgins_
15                 Jenna L. Higgins, CCR 998
                        CSR (IL and MO)
16
17
18
19
20
21
22
23   TRANSCRIBED:  July 30, 2020
24
25
```

Dixon v. City of St. Louis05351

# EXHIBIT 192

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Timothy Boyer, Judge

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1922-CR02883 |
| | ) |
| | ) |
| TONYA MCGUIRE, | ) |
| | ) |
| Defendant. | ) |

**TRANSCRIPT OF FIRST APPEARANCE HEARING**
September 10, 2019

**Mr. Nick Lake**
Assistant Circuit Attorney
    on behalf of the State of Missouri,

**Ms. Jessica Diamond**
    Attorney At Law
    on behalf of the Defendant.

JENNIFER A. DUNN, RPR, CCR #485
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1              (The following proceedings were had in open

2      court:)

3              THE COURT:   We are on the record.  This is

4      Cause Number 1922-CR02883, a case styled State of Missouri

5      versus Tonya McGuire.

6              Ms. McGuire is present via the closed circuit

7      video system.  She is appearing today within 48 hours of her

8      arrest on this case.

9              Ms. McGuire, you face three charges at this time.

10     Count I is the Class D felony of assault in the second

11     degree, Count II is the unclassified felony of armed

12     criminal action, and Count III is the Class A misdemeanor of

13     violation of an order of protection.

14             Your bond is currently set at $5,000 cash only,

15     with an order that you also stay away from the victim in

16     this case.

17             Before we go any further, Ms. McGuire, I want to

18     introduce myself.  I'm Judge Boyer.  I'm conducting a

19     detention hearing on your case today.

20             Can you see me and can you hear me?

21             THE DEFENDANT:   Yes, I can.

22             THE COURT:   Okay.  If at any point you can't

23     hear me, will you let me know?

24             THE DEFENDANT:   Yes.

25             THE COURT:   Okay.  The Court, at this time,

3

1   has read Ms. McGuire her charges and notified her of her

2   current conditions of release.

3         The Court will also note that present in the

4   courtroom for the State of Missouri is Assistant Circuit

5   Attorney Nick Lake, and appearing on behalf of Ms. McGuire

6   for the purposes of this hearing and this hearing only is

7   Attorney Jessica Diamond.

8         Ms. Diamond, at this time do you waive a formal

9   reading of the complaint for your client and enter a plea of

10  not guilty?

11        MS. DIAMOND:   Yes, your Honor.

12        THE COURT:   All right.  Then we will enter a

13  not guilty plea in this case.

14        At this time, the Court will conduct a detention

15  hearing, an initial appearance, hearing under Rule 33, to

16  hear whether or not the Court will modify the conditions of

17  release under that rule.

18        Before we get to any argument on this hearing, I

19  first want to ask counsel, does either counsel object to the

20  Court taking judicial notice of its own court file and the

21  bond commissioner's file in making those records part of the

22  record of the hearing here today?

23        MS. DIAMOND:   No objection, your Honor.

24        MR. LAKE:   No objection, your Honor.

25        THE COURT:   The Court will take judicial

Dixon v. City of St. Louis 05563

1    notice of those documents.

2            I'll turn to Mr. Lake for the argument on behalf

3    of the State of Missouri with regard to Ms. McGuire.

4                    MR. LAKE:   Thank you, your Honor.  The

5    State's position in this case is that the bond, which I

6    believe is currently set at $5,000 cash only, is appropriate

7    to assure the safety of the victim in this case, as well as

8    ensure that the defendant appears at all future court

9    proceedings.

10           Just a brief summary of the facts of this case,

11   your Honor.  The defendant was served with a full order of

12   protection on March 27, 2019.  On September 1st, 2019, the

13   defendant violated the order of protection by going to the

14   victim's home with three other people, starting an argument,

15   and the group attacked the victim, and during the struggle

16   the defendant grabbed a knife and stabbed the victim in the

17   arm, which resulted in the victim having to receive stitches

18   for her injury.

19           In terms of prior convictions, your Honor, the

20   only prior that I show is from 2005.  It's a municipal

21   stealing for which the defendant received an SIS, two years

22   probation.

23           However, I realize that, you know, the charges

24   here are a D felony, as well as an A misdemeanor, but I

25   think just given the nature of the case, the fact that the

1  defendant was served with a full order of protection, yet

2  chose to not only violate it, but to commit a violent act

3  against the victim in this case at her own home does

4  indicate she poses a significant danger to the victim.

5          Furthermore, I also realize that at $5,000 cash

6  only, the defendant is within the range that she could have

7  bond posted by Bail Project, so if the bond is to remain the

8  same, the State would request that the Court also impose

9  conditions if and when the defendant is released.

10          Those conditions would include -- it's a bit

11  redundant, but no contact and stay away order from the

12  victim, as well as GPS monitoring to ensure, again, she does

13  stay away from the victim.

14          THE COURT:   Is there -- has the victim been

15  notified of this hearing, Mr. Lake?

16          MR. LAKE:   The victim has been notified.  Our

17  office has been in contact, and the victim has cited safety

18  concerns and concerns for her well-being.

19          THE COURT:   Ms. Diamond, do you wish to --

20  before you make any argument, do you wish to ask my

21  questions of Ms. McGuire.

22          MS. DIAMOND:   I don't believe I have any

23  specific questions at this point in time.

24          THE COURT:   Then your argument, Ms. Diamond.

25          MS. DIAMOND:   Your Honor, I would ask that

1    the cash only be lifted from the bond with the condition

2    that she be on GPS monitoring or EHD, in light of the lack

3    of criminal history for the most part.

4           In addition, it doesn't appear from the charging

5    documents that she brought any sort of weapon or was

6    carrying any sort of weapon over there as far as going there

7    with an intent to cause any harm.

8           In light of that, it doesn't appear that she would

9    be as much of a risk to society or danger considering that

10   she doesn't appear to have gone over there armed or with an

11   intention to necessarily get in some sort of dispute, other

12   than violating the order.

13          THE COURT:   Any additional argument from

14   either counsel before I make a ruling in this case?

15          MR. LAKE:   No, Judge.

16          THE COURT:   All right.  Having heard the

17   arguments of counsel, having reviewed the records in this

18   case, I guess in the most technical sense I'm amending the

19   conditions of bond.

20          I'm going to leave the cash only aspect of the

21   bond at $5,000  cash only.  I'm going to order that the

22   defendant have no contact with the victim, report to EMASS,

23   and engage in GPS monitoring.

24          I'm going to set this for an additional bond

25   hearing on 9/17, September 17th of 2019, at 10:30 a.m.,

1     should Ms. McGuire still be confined one week from today.

2              I will also, since she could have that bond

3     posted, give her her first appearance date in Division 25.

4     Her first appearance date in Division 25 will be

5     October 10th, 2019 at 9:15 a.m.

6              So, Ms. McGuire, if someone posts your $5,000 cash

7     only bond, you'll have to adhere to those conditions of

8     release.

9              Do you understand that?

10             THE DEFENDANT:   Yes.

11             THE COURT:   And those conditions would be

12    that you cannot have any contact with the victim, you must

13    report to EMASS and engage in GPS monitoring through EMASS?

14             THE DEFENDANT:   Yes.

15             THE COURT:   If your bond is not posted, you

16    have a right to an additional hearing under Rule 33, and

17    that hearing will occur on September 17th at 10:30 a.m.

18             Do you understand that?

19             THE DEFENDANT:   Yes.

20             THE COURT:   And if you are released, if

21    someone does post your bond, do you understand that you must

22    appear at your next court date of October 10th, 2019, at

23    9:15 a.m.?

24             THE DEFENDANT:   Yes.

25             THE COURT:   Last thing I need to tell you,

1    Ms. McGuire, if someone does post your bond, do you

2    understand if you violate any of the conditions of your

3    bond, that will result in re-arrest?

4                   THE DEFENDANT:   Yes.

5                   THE COURT:   Okay.  Then that will conclude

6    the hearing at this time.

7                   Thank you, Ms. McGuire.

8                      (The hearing was concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **<u>CERTIFICATE</u>**

2          I, Jennifer A. Dunn, Registered Professional

3    Reporter and Certified Court Reporter, do hereby certify

4    that I am an official court reporter for the Circuit Court

5    of the City of St. Louis; that on September 10, 2019, I was

6    present and reported all the proceedings had in the case of

7    STATE OF MISSOURI, Plaintiff, vs. TONYA MCGUIRE, Defendant,

8    Cause No. 1922-CR02883.

9          I further certify that the foregoing pages

10   contain a true and accurate reproduction of the proceedings.

11

12

13

14

15

16   **<u>"/S/JENNIFER A. DUNN, RPR, CCR #485"</u>**

17

18

19

20

21

22

23

24

25

# EXHIBIT 193

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable James E. Sullivan, Judge

STATE OF MISSOURI,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　)　　1922-CR02456
　　　　　　　　　　　　　　　)
TRACEY FREEMAN-SNELLING　　　)
　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　)

INITIAL APPEARANCE HEARING

On the 6TH day of August, 2019, the above-entitled cause came on regularly for hearing before the Honorable James E. Sullivan, in Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Nicholas Lake, City of St. Louis, State of Missouri.

The Defendant was present by video and was represented by Andy Sottile.

ELLEN L. VINCE, CSR, CCR, CM
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1                    August 6, 2019

2            THE COURT:    All right.  Mr. Tracey

3    Freeman-Snelling, I am Judge Sullivan.  I'm a circuit judge

4    in the 22nd circuit.  I understand you were recently

5    arrested and this is your first court appearance after that

6    arrest.

7            I'm going to explain certain rights to you.  I'm

8    also going to advise you of the nature of the charge

9    pending against you in this case.  If there's -- you also

10   need to understand that if you make any statements,

11   anything that you say can and will be used against you in

12   a court of law.  Do you understand that?

13           THE DEFENDANT:    Yes, sir.

14           THE COURT:    You have a right to remain silent.

15   You have a right to retain an attorney or you can apply for

16   a public defender if you're not able to hire your own

17   lawyer.  Do you understand that, sir?

18           THE DEFENDANT:    Yes, sir.

19           THE COURT:    This is cause number 1922-CR02456.

20   Style of the case is State of Missouri versus Tracey

21   Freeman-Snelling.  Sir, you are charged with unlawful

22   possession of a firearm, a Class D felony, in violation of

23   Section 571.070 RSMO.  You committed the Class D felony of

24   unlawful possession of a firearm punishable under Sections

25   558.002 and 558.011 RSMO in that on or about August the 4th,

1  2019 in the City of St. Louis, State of Missouri, the

2  defendant knowingly possessed a 380 Taurus semiautomatic

3  pistol, a firearm; that on or about October the 28th, 2013

4  the defendant was convicted of the felony of robbery in the

5  second degree in the circuit court of the City of St. Louis

6  in Cause Number 1322-CR03760.  Do you understand the nature

7  of the charge, sir?

8           THE DEFENDANT:   I only got the UUW?

9           THE COURT:    That's the only thing, that's the only

10  charge I see pending against you at this time, sir.

11           THE DEFENDANT:   Okay.  That's all.  Thank you,

12  sir.

13           THE COURT:    Today you are represented by a private

14  attorney, Mr. Andy Sottile.  He's in the courtroom.  He will

15  represent you solely for this hearing on your initial

16  appearance and for the conditions of release.

17           The circuit attorney's office is represented by

18  Assistant Circuit Attorney Mr. Nicholas Lake.  Mr. Lake,

19  do you wish to be heard relative to the bond in this

20  matter?

21           MR. LAKE:    Yes, your Honor.  This is a case where

22  the State's position is that the bond, which I believe is

23  currently set at $30,000 cash only is appropriate to ensure

24  the safety of the general community.  The State would

25  request that the Court take judicial notice of its court

1     file and the bond commissioner's report.

2            THE COURT:   The Court will -- so I'm looking at,

3     I'm looking for a bond commissioner's report and -- oh,

4     okay, here we go.  Yes, I do have it.  Yes, the Court will

5     take judicial notice of the reports.

6            MR. LAKE:   Thank you, your Honor.  Your Honor,

7     this is a case where officers responded to a call for shots

8     being fired at the MetroLink station.  Once they arrived

9     they were able to view surveillance footage which showed the

10     defendant engaged with some type of dispute with another

11     individual.  The footage shows the other individual firing

12     shots in the defendant's direction and the defendant

13     returning shots.  The defendant was subsequently taken into

14     custody at the scene.

15            Normally, your Honor, this would be a case where

16     a personal recognizance might be appropriate.  However,

17     the fact is this is a case where they -- the officers

18     responded to a call for shots being fired at the MetroLink

19     station.  This is a public area where potential for other

20     individuals to be struck was very high.  And so I think

21     that that poses a significant danger to the general

22     community.

23            As the Court already indicated the defendant is

24     a convicted felon.  2013, a robbery in the second degree.

25     I believe he was sentenced to five years in Department of

1    Corrections for that conviction.

2            Your Honor, again based on the facts of this

3    case in particular the State believes that the defendant

4    does pose a danger to the community and would be opposed

5    to reduction at this time.

6            THE COURT:    Mr. Sottile, do you wish to be heard

7    on this matter?

8            MR. SOTTILE:    Yes, your Honor, thank you.  Your

9    Honor, I would ask the Court to consider changing, modifying

10   the bond, possibly reducing it, but still making it a

11   10 percent bond.

12           Looking at the report filed by the bond

13   commissioner's office, Mr. Freeman-Snelling is a lifelong

14   member of the community.  He's been two years at his

15   current residence.  He has three children.  He had been

16   employed before he was confined.  He was making $10 an

17   hour, working 40 hours a week.

18           I think conditions could be set in place which

19   would ensure the safety of the community.  He could be

20   made to report to EMASS.  He could be ordered to home

21   confinement except for employment purposes.  He could be

22   made to have a curfew.

23           So I would argue to the Court that there are

24   conditions that could be placed on him that would ensure

25   the safety of the community and also ensure he appears in

1  court.  So for those reasons I'd ask the Court to consider

2  some sort of reduction on bond, even if it's not a

3  personal recognizance bond, maybe 15,000 ten percent,

4  10,000 ten percent, with those particular conditions that

5  I mentioned.  Thank you.

6            THE COURT:    Anything further from the State?

7            MR. LAKE:    No, your Honor.

8            THE COURT:    Mr. Snelling, when did you get out of

9  the Department of Corrections?

10            THE DEFENDANT:    May 12th, 2016.

11            THE COURT:    Mr. Snelling, I see that you have a

12  number of bench warrants for municipal charges that you

13  failed to appear in court previously.  Why was that?

14            THE DEFENDANT:    Because I posted it.  I just got a

15  new case right there, the property damage.  My baby mama got

16  the money for them, but they told me the 21st I supposed to

17  came and I got another letter coming on the 25th and I

18  didn't know what to do.  And I called down there and they

19  said just pay, just pay when you can.  And I'm like, well, I

20  have a warrant for this.  They was like you might do and we

21  was fittin' to pay on it.  Then she got paid today, but I'm

22  in jail, though.  'Cause I ain't got no money for him and

23  then he calls me a violator.  And I told them it would take

24  some time to get the money for that, though.  I got a job

25  and everything and stuff.  I got three kids.  I'm doing

1    everything right.  I just messed up at the end of it.

2              THE COURT:    I'll amend the bond as follows after

3    consideration of the arguments made by counsel:  I will

4    amend the bond.  Bond will be set at $30,000, 10 percent

5    will be authorized.  I believe that you should be able to

6    make that kind of a bond.  However, I will schedule a bond

7    hearing for next week, August the 13th, 2019 at 10:30 AM in

8    the event that you're not able to post the bond.  If you're

9    able to post the bond, it goes without saying you should not

10   have on or about your person any weapons because you are a

11   convicted felon, aren't you, Mr. Snelling?

12             MR. SOTTILE:    Yes.

13             THE COURT:    Yeah.  All right.

14             MR. SOTTILE:    Your Honor, what division was that?

15             THE COURT:    It's going to be still here.  Because

16   I got a feeling that he may still be confined, but if he

17   gets released, then he will be given a date if he posts

18   bond, correct?

19             BOND COMMISSIONER:    Well, a date has to be set.

20   Otherwise, if he posts the bond, he'll come to court here

21   next week and then they will give him another court date.

22   It's entirely up to how you want to do it.

23             THE COURT:    Let's leave it that way because I

24   just -- all right, so if you post the bond, Mr. Snelling,

25   you still need to appear in court next week at 10:30 in this

1    division.  If you remain confined, you'll be back on the

2    docket next week and you or your attorney can try to get the

3    bond reduced.  If you want to apply for the public

4    defender's office, I suggest you do exactly that in the

5    meantime.  I think the public is threatened and you should

6    not be having a gun if the allegations are accurate.  That

7    will be all, sir.

8                          END OF TRANSCRIPT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   CERTIFICATE

2            I, ELLEN L. VINCE, Certified Court Reporter,

3   do hereby certify that I am an official court reporter for

4   the Circuit Court of the City of St. Louis; that on August

5   6, 2019, I was present and reported all the proceedings had

6   in the case of STATE OF MISSOURI, Plaintiff, vs. TRACEY

7   FREEMAN-SNELLING, Defendant, Cause No. 1922-CR02456.

8            I further certify that the foregoing pages

9   contain a true and accurate reproduction of the

10  proceedings.

11

12

13

14

15            /s/Ellen L. Vince

16

17  _____

18            ELLEN L. VINCE, CCR, CSR, CM
                       CCR #350

19

20

21

22

23

24

25

# EXHIBIT 194

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI
### Honorable Timothy J. Boyer, Judge

STATE OF MISSOURI,              )
                                )
          Plaintiff,            )
                                )
vs.                             )    Cause No. 1922-CR01912
                                )
TYRELL DEANDRE DARRIS,          )
                                )
                                )
          Defendant.            )

### TRANSCRIPT OF BOND HEARING PROCEEDINGS

On the 12th day of September, 2019, the above-entitled cause came on for hearing before the Honorable Timothy J. Boyer, Judge of Division 8 of the Circuit Court of the City of St. Louis, State of Missouri.

The State of Missouri was represented by Jeremy Crowley, Assistant Circuit Attorney.

The defendant was present in person via videoconferencing and was represented by his attorney, Guy Wold, Attorney at Law.

Tina M. Givens, CCR, RPR
Official Court Reporter, Division 8
St. Louis City Circuit Court
22nd Judicial Circuit

1          THE COURT:  All right.  We are on the record.

2     This is Cause No. 1922-CR01912, a case styled State

3     of Missouri vs. Tyrell Darris.  Mr. Darris is

4     present via closed circuit video within 48 hours of

5     his arrest in this case.  Mr. Darris faces three

6     charges.  Count 1 is the Class C felony of

7     trafficking drugs in the second degree; Count 2 is

8     the Class E felony of unlawful use of a weapon,

9     possession of a weapon with a felony controlled

10    substance; and Count 3 is the Class D felony of

11    unlawful possession of a firearm.

12         At this time the conditions of release for

13    Mr. Darris are that he's being held with no bond

14    allowed.

15         Mr. Darris, I'm Judge Boyer.  I'm presiding

16    over your hearing today.  Can you see me and can

17    you hear me?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  If at any point you can't hear me,

20    will you let me know?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Present for the State of Missouri

23    is assistant circuit attorney Jeremy Crowley, and

24    representing Mr. Darris for the purposes of this

25    hearing and this hearing only is attorney Guy Wold.

                              2

1          Mr. Wold, on behalf of your client, do you

2     waive a formal reading of the complaint and enter a

3     plea of not guilty?

4          MR. WOLD:  I do, your Honor.

5          THE COURT:  All right.  The Court will enter a

6     not guilty plea.

7          I've advised Mr. Darris of his current charges

8     and conditions of release.  I'll make a

9     determination that he cannot meet those conditions

10    and I'll turn to the attorneys for argument.

11    Before we do that, does either counsel object to

12    the Court taking judicial notice of the underlying

13    court file in this case and the bond commissioner's

14    file in this case and all of the documents

15    contained therein?

16         MR. WOLD:  No, your Honor.

17         MR. CROWLEY:  No, your Honor.

18         THE COURT:  All right.  Mr. Crowley, your

19    argument on behalf of the State of Missouri?

20         MR. CROWLEY:  Your Honor, the defendant, as

21    you indicated, is charged with trafficking and

22    unlawful possession of a firearm.  The facts of the

23    case are that on or about June 13th of this year,

24    officers were driving past the Wells Goodfellow

25    neighborhood.  They observed the defendant as the

3

Dixon v. City of St. Louis, 05000

1           driver of the vehicle pull up to a vacant

2           residence, exit his car, and approach that

3           residence.  After a period of time without anyone

4           answering the door, the defendant and the other

5           individual from that car were sort of loitering

6           about in that residence, so the officers approached

7           for a pedestrian check.  They determined that the

8           defendant had an outstanding warrant.  He was taken

9           into custody, and in a search incident to arrest,

10          they located a knotted bag of a substance that was

11          analyzed to be 22.73 grams of cocaine base.  They

12          also located a loaded Smith & Wesson 40-caliber

13          semiautomatic pistol.  They also noted the

14          defendant has prior felony convictions, including

15          one from 2014 for possession of controlled

16          substance, that's 14SL-CR05400-01, and he pled

17          guilty to another possession case, it's

18          1122-CR06709, out of the City of St. Louis.  That

19          was for possession of controlled substance, and he

20          received an SIS on that case.

21               The concern that the State has -- and,

22          actually, before I get to that, let me ask the bond

23          commissioner if there's any other record of

24          criminal history for this defendant.

25               MR. KELLY:  No, it's not.

                                4

1          MR. CROWLEY:  The concern that the State has,

2     your Honor, is the significant amount of crack

3     cocaine that was found with the defendant.  He is

4     charged with trafficking because of that amount.

5     This is not a simple possession amount.  And he had

6     a loaded firearm on him.  The City right now is

7     going through a substantial period of drug-related

8     violence involving firearms where kids are getting

9     killed and a lot of other people are getting

10     injured.  This is exactly the kind of activity that

11     is putting the community at risk.

12          So I would ask either that the defendant be

13     given a bond that is set substantially that could

14     be secure so we can at least keep track of him or,

15     because he's indicated an inability to make much

16     posting for that, that he be detained in this

17     matter just due to the dangerous nature of his

18     behavior and the very significant amount of drugs

19     that were located on his person.

20          THE COURT:  Mr. Wold, before I ask for your

21     argument, are there any additional questions you

22     want to ask Mr. Darris?

23          MR. WOLD:  Not at this time.

24          THE COURT:  Your argument, Mr. Wold?

25          MR. WOLD:  Okay.  Judge, while I appreciate

5

Dixon v. City of St. Louis, 05002

1          the State's position on that, the actual actions in

2          this case are simply approaching a house.  He has

3          not pulled his gun, shot at anybody, or done

4          anything else, even under their bare allegations

5          themselves.

6               We would concede, obviously, that 22 grams of

7          crack cocaine is a fair of amount, and under most

8          of my life this would have been a situation here he

9          would be facing time without probation and parole,

10         but, of course, all that has changed, at least at

11         this point.

12              That being said, he does live here, he's had

13         prior probation situations, he has managed to

14         finish that off here and without having any

15         significant violations, because obviously he don't

16         seem to be revoked and turned into anything else.

17              Beyond that, I can understand why the State

18         would have the position that this is a defendant

19         that, you know, is a threat of some kind here, but

20         I think this is one where actually the risk of him

21         being purely dangerous in of itself in the sense of

22         shooting, robberies, doesn't seem to be there.

23              This defendant has lived here his entire life,

24         he does appear to have family ties in the

25         community.  He has a mother that lives here, he has

                                6

1     a child that lives here.

2          This is one where actually I think there might

3     be a good argument to have some form of a secured

4     bond with a dollar value that he could reach.

5     We've indicated $1,000 might be a possibility.

6     Maybe there's some number around that number that

7     he could get to, where he could potentially have a

8     secured bond at that point where the professional

9     bondsman could make sure that he gets back to

10    court.

11         I don't want to belittle the concept of

12    trafficking being a nondangerous issue here, but

13    obviously it's significantly different than robbery

14    or first degree assault or murder or something

15    along these lines.  So I ask the Court to at least

16    consider that as a possibility.

17         He does seem to have some recourses that he

18    could tap into.  It may just be too high a number

19    at this point to be able to get there.  We had been

20    discussing 30.  He can't get there.  But if the

21    Court would consider maybe 15 or 20, something like

22    that, or maybe even 10, that could allow for the

23    possibility to get him back here.

24         THE COURT:  Can I ask a question?  Did the

25    parties discuss 30,000 secured as a possibility?  I

                              7

1      know you're not consenting to that, Mr. Crowley.

2      Was that discussed as a possibility?

3           MR. WOLD:  It was.

4           MR. CROWLEY:  It was, your Honor.

5           THE COURT:  All right.  Having heard the

6      arguments of counsel and the -- given the facts of

7      this case, the Court will amend the conditions of

8      bond, and I'll make it 30,000 secured.  I don't

9      know if you're going to be able to come up with

10     that money, Mr. Darris, that's up to you, so I'm

11     going to give you two court dates.  Your first

12     court date will be next Thursday, September 12th,

13     at 10:30 a.m.  If you are still confined, you get

14     an additional bond hearing on that date under Rule

15     33.05.  If you do come up with the money and you

16     make that bond, your next court date will be in

17     Division 26 on October 15th at 9:15 a.m.

18          Do you understand that, Mr. Darris?

19          THE DEFENDANT:  By secure, what do you mean?

20          MR. WOLD:  Professional bond agent.

21          THE COURT:  It means you can tell your people

22     they can go see a bondsman and they might be able

23     to get you out.  Okay?

24          THE DEFENDANT:  Which dollar amount?

25          THE COURT:  30,000 secured.  It will be

8

1          between your family and the bondsman what you have

2          to put up.  Okay?  And if you're still confined

3          next Thursday on the 19th, you'll have an

4          additional bond hearing.

5               MR. WOLD:  Judge, you did say the 12th?

6               THE COURT:  I meant the 19th.

7               All right.  Thank you, Mr. Darris.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

1                    **REPORTER'S CERTIFICATE**

2          I, Tina M. Givens, Registered Professional
   Reporter & Certified Court Reporter, do hereby
3   certify that I am the Official Court Reporter for
   Division 8 of the Circuit Court of the City of St.
4   Louis, State of Missouri; that on September 129,
   2019, I was present in Division 16B and reported
5   all the proceedings had in the case of STATE OF
   MISSOURI, Plaintiff, vs. TYRELL DEANDRE DARRIS,
6   Defendant, Cause No. 1922-CR01912.

7

8          I further certify that the foregoing pages
   contain a true and accurate reproduction of the
9   proceedings.

10

11

12

13

14
           I hereunto set my hand on this 20th day of
15   July, 2020.

16

17

18

19

20
           /s/ Tina Givens
21         Tina Givens, CCR #481

22

23

24

25

                                10

# EXHIBIT 195

1

```
                IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                    22ND JUDICIAL CIRCUIT, DIVISION 16B
                      Honorable MICHAEL J. COLONA, Judge


STATE OF MISSOURI,              )
                                )
                   Plaintiff,)
                                ) Cause No. 1922-CR03823
vs.                             )
                                )
WALLACE JACKSON,                )
                                )
                   Defendant.)


            TRANSCRIPT OF PROCEEDINGS/INITIAL APPEARANCE
```

        The following proceedings were had in Division 16B
of the 22nd Judicial Circuit, City of St. Louis Circuit
Court, State of Missouri, on the 11th day of December, 2019.


        Mr. Payne, Assistant Circuit Attorney, appeared
for the State of Missouri.


        The defendant, WALLACE JACKSON, appeared in person
via video and with Mr. Wold, Attorney At Law.


```
                      Rita T. DeFilio, RMR
                         C.C.R. #0192
                       22nd Judicial Circuit
                    City of St. Louis, Missouri
```

Dixon v. City of St. Louis 05513

2

```
 1              THE COURT:  You are Mr. Wallace Jackson?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  Okay.  Well, Mr. Jackson, this is

 4    Judge Colona.  This is your first appearance, so going to do

 5    a couple things.  First of all, I'm going to tell you what

 6    you're charged with.  You're charged with Unlawful Use of a

 7    Weapon, which is Class E Felony here in the State of

 8    Missouri, and that carries a range of punishment of up to

 9    four years in the Missouri Department of Corrections.

10              You have also got an Assault Fourth, which is a

11    Class A Misdemeanor, that's a term of imprisonment of up to

12    one year in the county jail or MSI.  So, we're going to go

13    ahead and enter a plea of not guilty for you.

14              Now, the second thing we are going to do today is

15    try and talk about your bond and see what we want to do with

16    it.  I think currently you're at no bond.

17              MR. WOLD:  That's what I show, Your Honor.

18              THE COURT:  Okay.  Currently, your bond is no

19    bond, but we have an attorney from the State of Missouri

20    representing the Circuit Attorney's Office that's going to

21    give their opinion on what should happen with your bond.

22    And we also have an attorney that's been appointed for you

23    just for today only, just for this bond hearing, that will

24    represent you and talk to the Court about reducing your

25    bond.
```

Dixon v. City of St. Louis 05514

3

1          You should know that everything that's being said

2     is being copied down by a court reporter.  So, you know, I

3     would suggest that you not say anything.  There will be a

4     point, though, where your appointed attorney will probably

5     ask you some questions.  Just remember, everything you say

6     is being taken down.  You want to be careful about what you

7     say so you don't accidentally jam yourself up.  All right.

8          So, Mr. Circuit Attorney, what's going on with

9     bond?

10          MR. PAYNE:  Judge, currently it's set at no bond

11     and it's the Circuit Attorney's position that the bond

12     should be amended to $30,000 cash only with the added

13     conditions that he have no contact with the victim, KJ; that

14     he report to eMass; be placed on GPS; possess no firearms;

15     and have a curfew of 8:00 p.m. to 6:00 a.m.

16          He currently has another pending case, Cause

17     Number 1622-CR04191-01, receiving stolen property.  He did

18     post a $5,000/10 percent bond in that case on November the

19     1st.

20          The history of that case, however, is that he

21     failed to appear on July 29th; was released on his own

22     personal recognizance on 9/18; and then he failed to appear

23     on 9/25; and was released again on 11/1 on that $5,000/$500

24     bond.  So there's two failures to appear on that other case

25     pending here in the City of St. Louis.

Dixon v. City of St. Louis 05515

4

```
1              THE COURT:  Is there a failure to appear --

2              MR. PAYNE:  This case was just issued.

3              THE COURT:  No, no.  On the 1622.

4              MR. PAYNE:  No, he was just released on 11/1.  I

5    don't know if he has had his next court date on that yet.

6              THE COURT:  Okay.

7              MR. PAYNE:  I don't remember seeing that this

8    morning when I checked.

9              THE COURT:  Okay.

10             MR. PAYNE:  Judge, the facts of this case are that

11   him and the victim are in a romantic relationship and that

12   on or about December 9th, 2019, police officers of the St.

13   Louis Metropolitan Police Department responded to 4763

14   Genevieve Avenue, where the defendant reportedly on

15   December 8, 2019, pointed a gun -- well, the victim's gun,

16   KJ's gun, a black Taurus pistol, at her with an angry look

17   on his face and said, "I will blow your head off."

18             Shortly after, the police officers arrived.  They

19   noticed or they located the defendant hiding in a closet in

20   the residence.  He was arrested.  Search incident to arrest

21   revealed the 9mm caliber bullet located in his left-hand

22   pocket.

23             Additionally, on November 21, 2019, an argument

24   had erupted between him and the victim, who are living

25   together in an intimate relationship, and during the
```

Dixon v. City of St. Louis 05516

1  argument he grabbed her by her neck.  She did manage to

2  escape, but he then, subsequently, struck her with closed

3  fist in the face and head until a neighbor intervened and

4  ended the incident.

5           Victim has been co-operative in the assault

6  matter, Judge.  She has indicated that it's her wishes that

7  she has absolutely no contact whatsoever with him and wants

8  nothing to do with him.  That does raise concerns for the

9  State if he would be released from custody since they do

10 reside together.

11          Additionally, since he does have a history of

12 failing to appear based on the docket sheet in the other

13 pending case, I don't know that he's ever actually appeared

14 when not in custody, getting released, that he would not

15 return to court; therefore, we think a cash bond is

16 warranted.

17          THE COURT:  And do you have any type of a victim

18 impact statement?

19          MR. PAYNE:  There is no victim impact.  I mean, I

20 do have a statement I can read.  It is basically:  "In

21 regards to if the defendant is released until trial, I would

22 like to tell the State I want nothing to do with Wallace

23 Jackson, not any kind of contact."

24          THE COURT:  And the defense?

25          MR. WOLD:  Judge, gives me a second, please.

6

1          THE COURT:  Sure.  Mr. Jackson, do you have an

2  attorney on your other case?

3          THE DEFENDANT:  Which case, sir?

4          THE COURT:  The receiving stolen property case?

5          THE DEFENDANT:  No, I was working on my attorney

6  until this happened -- I mean, my lawyer.  When I came to

7  see you, Judge, I was in a car accident so I had been out of

8  work three weeks.  Monday was my first day back to work.

9          THE COURT:  I'm sorry.  Mr. Wold.

10          MR. WOLD:  Judge, I was looking -- I was trying to

11  figure this out looking through the entries on this other

12  case, but it does look like the PD is withdrawing, so old

13  that they're no longer in the case.  He doesn't seem to have

14  counsel actively assigned to the case that's still on the

15  file.

16          With the cash bond, from what I can tell, the Bail

17  Project posted that.  Seems to be the way it was assigned

18  backwards.  That being said, Judge, can I turn this one over

19  to Mr. Brooks to carry on then?

20          THE COURT:  Mr. Brooks do what?

21          MR. WOLD:  He interviewed him for purposes of

22  services, he's able to go through with that.

23          THE COURT:  Sure.

24          MR. WOLD:  Knows his background much better than I

25  do.

Dixon v. City of St. Louis 05518

7

```
 1              THE COURT:  Go ahead.

 2              MR. BROOKS:  So, upon screening Mr. Jackson this

 3    morning, we noticed that or we learned that he's currently

 4    housed with his girlfriend, that she's the victim, but he

 5    does have another place to go.  He's full time employed with

 6    Better Properties.  Makes 16, $17 an hour.  He's been there

 7    for about seven and a half months.  He has priors or

 8    convictions besides the cases that are pending currently and

 9    doesn't have any money for bond currently, as well, that we

10    found.

11              THE COURT:  So what is the State's recommendation

12    again?

13              MR. PAYNE:  $30,000 cash only.

14              THE COURT:  Mr. Wold, any final thoughts?

15              MR. WOLD:  Judge, the problem, obviously, with a

16    straight cash bond, be it from here -- I mean, nobody can

17    post that obviously from what it sounds like, but going

18    through -- the issue we have going to the Bail Project might

19    put him in a scenario where if he misses, they can't really

20    chase him.

21              We would ask the Court for the possibility of

22    maybe $15,000 and secured bond or something with the idea

23    that he doesn't go back to live with his, I guess, his wife

24    at this point, and live at an alternative residence.  Does

25    look like they have a history of problems between the two of
```

1  them.  Other than his failure to appear history in his other

2  cases, but if that would be true you would have someone

3  chasing him down on this one.

4         THE COURT:  From a practical perspective, is there

5  anything in the works coming down from your office with a

6  new charge?

7         MR. PAYNE:  Let me check for you.

8         THE COURT:  Mr. Jackson, on the documentation that

9  the Circuit Attorney filed yesterday charging you, they

10  wanted to charge you with an additional crime, a more

11  serious crime that I refused to issue because their probable

12  cause statement, I believe, wasn't enough to charge you,

13  there wasn't enough evidence there to charge you with a

14  case.

15         MR. PAYNE:  Judge, I --

16         THE COURT:  It's the Circuit Attorney's procedure

17  when that happens to normally just go right back and try and

18  do it again.  So I -- what I'm trying to find out is if the

19  Circuit Attorney has a new case that's coming down within

20  the next day or two, which would make whatever we do here no

21  good because you might have a new case coming.

22         MR. PAYNE:  I'm showing that there are things

23  under review.

24         THE COURT:  Okay.  All right.  Well, here's the

25  deal.  You've got a job.  You don't have that much of a

9

1   criminal history.  We don't have a whole lot -- I mean, we

2   don't have any serious injuries.  And by serious, you know,

3   it looks like -- give me just a minute.  My screen just

4   closed by accident.  No hospital visits; no treatment.  The

5   Bond Project posted bond on the other case?

6           BOND COMMISSIONER:  Yes, Judge.

7           MR. WOLD:  I think so.  If you look at it, they

8   submit their return bond assignment, it always comes back

9   someplace.

10          BOND COMMISSIONER:  I checked it, so, yeah.

11          THE COURT:  All right.  The State wants -- what

12  was that?  $50,000 cash only?

13          MR. PAYNE:  Yes, Judge.

14          THE COURT:  All right.

15          MR. PAYNE:  No, no.  It was $30,000 cash only.

16          THE COURT:  So, all right.  Look, I'll reduce your

17  bond to $30,000 and I'll authorize a surety on that.  If

18  you're released, there will be special conditions.  That you

19  have no contact with the victim, KJ; and that you're not to

20  enter on the property at 4763 Genevieve, which I assume is

21  where KJ lives.  Those are the only special conditions for

22  your release.  So he gets the seven-day call back, right?

23          THE CLERK:  Yes.

24          THE COURT:  So, Mr. Jackson, I'm going to give you

25  two court dates.  The first is going to be December the 18th

10

1    at 10:30 here in Division 16B.  At that point in time

2    another judge will review your bond again.  You know, they

3    could do something different or they could leave it where it

4    is.

5              But, then, I'm also going to give you a court date

6    on January 14th in Division 25 at nine o'clock, and that's

7    to just keep your case moving forward so it doesn't just sit

8    there with nothing happening on it, okay?  Very good.  Thank

9    you.

10

11

12

13   [END OF HEARING]

14

15

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis 05522

11

1

2                           CERTIFICATE OF COURT REPORTER

3               I, Rita T. DeFilio, certified court reporter, do

4       hereby certify that I am an official court reporter for the

5       Circuit Court of the City of St. Louis; that on the 11th day

6       of December, 2019, I was present and reported all the

7       proceedings had in the case of STATE OF MISSOURI vs. WALLACE

8       JACKSON, Cause No. 1922-CR03823.

9                   I further certify that the foregoing pages contain

10      a true and accurate reproduction of the proceedings.

11

12

13

14      "/s/ Rita T. DeFilio"

15      Rita T. DeFilio, RMR

16      Official Court Reporter

17      CCR No. 0192

18

19

20

21

22

23

24

25

**BOND COMMISSIONER:**
**[2]**  9/5 9/9
**MR. BROOKS: [1]**  7/1
**MR. PAYNE: [12]**
**MR. WOLD: [7]**  2/16 5/24
6/9 6/20 6/23 7/14 9/6
**THE CLERK: [1]**  9/22
**THE COURT: [25]**
**THE DEFENDANT: [3]**  2/1
6/2 6/4

**$**

**$15,000 [1]**  7/22
**$17 [1]**  7/6
**$30,000 [4]**  3/12 7/13
9/15 9/17
**$5,000 [2]**  3/18 3/23
**$5,000/$500 [1]**  3/23
**$5,000/10 percent [1]**
3/18
**$50,000 [1]**  9/12
**$500 [1]**  3/23

**/**

**/s [1]**  11/14

**0**

**01 [1]**  3/17
**0192 [2]**  1/23 11/17

**1**

**10:30 [1]**  10/1
**11/1 [2]**  3/23 4/4
**11th [2]**  1/13 11/5
**14th [1]**  10/6
**16 [1]**  7/6
**1622 [1]**  4/3
**1622-CR04191-01 [1]**
3/17
**16B [3]**  1/1 1/11 10/1
**18 [1]**  3/22
**18th [1]**  9/25
**1922-CR03823 [2]**  1/5
11/8
**1st [1]**  3/19

**2**

**2019 [5]**  1/13 4/12 4/15
4/23 11/6
**21 [1]**  4/23
**22ND [3]**  1/1 1/12 1/24
**25 [2]**  3/23 10/6
**29th [1]**  3/21

**4**

**4763 [2]**  4/13 9/20

**6**

**6:00 [1]**  3/15

**8**

**8:00 p.m [1]**  3/15

**9**

**9/18 [1]**  3/22
**9/25 [1]**  3/23
**9mm [1]**  4/21
**9th [1]**  4/12

**A**

**a.m [1]**  3/15
**able [1]**  6/22
**about [5]**  2/15 2/24 3/6
4/12 7/7
**absolutely [1]**  5/7
**accident [2]**  6/7 9/4
**accidentally [1]**  3/7
**accurate [1]**  11/10
**actively [1]**  6/14
**actually [1]**  5/13
**added [1]**  3/12
**additional [1]**  8/10
**Additionally [2]**  4/23
5/11
**after [1]**  4/18
**again [4]**  3/23 7/12 8/18
10/2
**ahead [2]**  2/13 7/1
**all [7]**  2/5 3/7 8/24 9/11
9/14 9/16 11/6
**also [3]**  2/10 2/22 10/5
**alternative [1]**  7/24

**always [1]**  9/8
**am [1]**  11/4
**amended [1]**  3/12
**angry [1]**  4/16
**another [3]**  3/16 7/5 10/2
**any [5]**  5/17 5/23 7/9
7/14 9/2
**anything [2]**  3/3 8/5
**appear [6]**  3/21 3/22
3/24 4/1 5/12 8/1
**appearance [2]**  1/10 2/4
**appeared [3]**  1/15 1/18
5/13
**appointed [2]**  2/22 3/4
**are [8]**  2/1 2/14 4/10
4/11 4/24 7/8 8/22 9/21
**argument [2]**  4/23 5/1
**arrest [1]**  4/20
**arrested [1]**  4/20
**arrived [1]**  4/18
**as [1]**  7/9
**ask [2]**  3/5 7/21
**assault [2]**  2/10 5/5
**assigned [2]**  6/14 6/17
**assignment [1]**  9/8
**Assistant [1]**  1/15
**assume [1]**  9/20
**attorney [10]**  1/15 1/19
2/19 2/22 3/4 3/8 6/2 6/5
8/9 8/19
**Attorney's [3]**  2/20 3/11
8/16
**authorize [1]**  9/17
**Avenue [1]**  4/14

**B**

**back [5]**  6/8 7/23 8/17
9/8 9/22
**background [1]**  6/24
**backwards [1]**  6/18
**Bail [2]**  6/16 7/18
**based [1]**  5/12
**basically [1]**  5/20
**be [10]**  3/3 3/6 3/12 3/14
5/9 6/17 7/16 8/2 9/18

**B**

**be... [1]**  9/25
**because [2]**  8/11 8/21
**been [4]**  2/22 5/5 6/7 7/6
**being [4]**  3/1 3/2 3/6
6/18
**believe [1]**  8/12
**besides [1]**  7/8
**better [2]**  6/24 7/6
**between [2]**  4/24 7/25
**black [1]**  4/16
**blow [1]**  4/17
**bond [22]**
**Brooks [2]**  6/19 6/20
**bullet [1]**  4/21

**C**

**C.C.R [1]**  1/23
**caliber [1]**  4/21
**call [1]**  9/22
**came [1]**  6/6
**can [4]**  5/20 6/16 6/18
7/16
**can't [1]**  7/19
**car [1]**  6/7
**careful [1]**  3/6
**carries [1]**  2/8
**carry [1]**  6/19
**case [19]**
**cases [2]**  7/8 8/2
**cash [7]**  3/12 5/15 6/16
7/13 7/16 9/12 9/15
**cause [4]**  1/5 3/16 8/12
11/8
**CCR [1]**  11/17
**CERTIFICATE [1]**  11/2
**certified [1]**  11/3
**certify [2]**  11/4 11/9
**charge [4]**  8/6 8/10 8/12
8/13
**charged [2]**  2/6 2/6
**charging [1]**  8/9
**chase [1]**  7/20
**chasing [1]**  8/3
**check [1]**  8/7

**checked [2]**  4/8 9/10
**CIRCUIT [13]**
**CITY [5]**  1/1 1/12 1/24
3/25 11/5
**Class [2]**  2/7 2/11
**closed [2]**  5/2 9/4
**closet [1]**  4/19
**co [1]**  5/5
**co-operative [1]**  5/5
**COLONA [2]**  1/2 2/4
**comes [1]**  9/8
**coming [3]**  8/5 8/19 8/21
**concerns [1]**  5/8
**conditions [3]**  3/13 9/18
9/21
**contact [4]**  3/13 5/7 5/23
9/19
**contain [1]**  11/9
**convictions [1]**  7/8
**copied [1]**  3/2
**Corrections [1]**  2/9
**could [2]**  10/3 10/3
**counsel [1]**  6/14
**county [1]**  2/12
**couple [1]**  2/5
**court [14]**
**CR03823 [2]**  1/5 11/8
**CR04191 [1]**  3/17
**crime [2]**  8/10 8/11
**criminal [1]**  9/1
**curfew [1]**  3/15
**currently [7]**  2/16 2/18
3/10 3/16 7/3 7/8 7/9
**custody [2]**  5/9 5/14

**D**

**date [2]**  4/5 10/5
**dates [1]**  9/25
**day [5]**  1/13 6/8 8/20
9/22 11/5
**deal [1]**  8/25
**December [5]**  1/13 4/12
4/15 9/25 11/6
**December 8 [1]**  4/15
**defendant [5]**  1/8 1/18

4/14 4/19 5/21
**defense [1]**  5/24
**DeFilio [4]**  1/23 11/3
11/14 11/15
**Department [2]**  2/9 4/13
**did [2]**  3/17 5/1
**different [1]**  10/3
**DIVISION [4]**  1/1 1/11
10/1 10/6
**do [15]**
**docket [1]**  5/12
**documentation [1]**  8/8
**does [5]**  5/8 5/11 6/12
7/5 7/24
**doesn't [4]**  6/13 7/9 7/23
10/7
**don't [7]**  3/7 4/5 4/7 5/13
8/25 9/1 9/2
**down [5]**  3/2 3/6 8/3 8/5
8/19
**during [1]**  4/25

**E**

**eMass [1]**  3/14
**employed [1]**  7/5
**END [1]**  10/13
**ended [1]**  5/4
**enough [2]**  8/12 8/13
**enter [2]**  2/13 9/20
**entries [1]**  6/11
**erupted [1]**  4/24
**escape [1]**  5/2
**ever [1]**  5/13
**everything [2]**  3/1 3/5
**evidence [1]**  8/13

**F**

**face [2]**  4/17 5/3
**facts [1]**  4/10
**failed [2]**  3/21 3/22
**failing [1]**  5/12
**failure [2]**  4/1 8/1
**failures [1]**  3/24
**Felony [1]**  2/7
**figure [1]**  6/11
**file [1]**  6/15

**F**

filed **[1]**  8/9
final **[1]**  7/14
find **[1]**  8/18
firearms **[1]**  3/14
first **[4]**  2/4 2/5 6/8 9/25
fist **[1]**  5/3
following **[1]**  1/11
foregoing **[1]**  11/9
forward **[1]**  10/7
found **[1]**  7/10
four **[1]**  2/9
Fourth **[1]**  2/10
full **[1]**  7/5
further **[1]**  11/9

**G**

Genevieve **[2]**  4/14 9/20
gets **[1]**  9/22
getting **[1]**  5/14
girlfriend **[1]**  7/4
give **[4]**  2/21 9/3 9/24
10/5
gives **[1]**  5/25
go **[6]**  2/12 6/22 7/1 7/5
7/23 8/17
going **[11]**  2/4 2/5 2/12
2/14 2/20 3/8 7/17 7/18
9/24 9/25 10/5
good **[2]**  8/21 10/8
got **[2]**  2/10 8/25
GPS **[1]**  3/14
grabbed **[1]**  5/1
guess **[1]**  7/23
guilty **[1]**  2/13
gun **[3]**  4/15 4/15 4/16

**H**

had **[5]**  1/11 4/5 4/24 6/7
11/7
half **[1]**  7/7
hand **[1]**  4/21
happen **[1]**  2/21
happened **[1]**  6/6
happening **[1]**  10/8

happens **[1]**  8/17
has **[7]**  3/16 4/5 5/5 5/6
5/7 7/7 8/19
have **[20]**
he **[21]**
he's **[5]**  5/13 6/22 7/3 7/5
7/6
head **[2]**  4/17 5/3
hearing **[2]**  2/23 10/13
her **[5]**  4/16 5/1 5/1 5/2
5/6
here **[5]**  2/7 3/25 7/16
8/20 10/1
here's **[1]**  8/24
hereby **[1]**  11/4
hiding **[1]**  4/19
him **[8]**  4/11 4/24 5/7 5/8
6/21 7/19 7/20 8/3
his **[10]**  3/21 4/5 4/17
4/21 6/24 7/4 7/23 7/23
8/1 8/1
history **[5]**  3/20 5/11
7/25 8/1 9/1
Honor **[1]**  2/17
Honorable **[1]**  1/2
hospital **[1]**  9/4
hour **[1]**  7/6
housed **[1]**  7/4
however **[1]**  3/20

**I**

I'll **[2]**  9/16 9/17
I'm **[6]**  2/5 6/9 8/18 8/22
9/24 10/5
idea **[1]**  7/22
impact **[2]**  5/18 5/19
imprisonment **[1]**  2/11
incident **[2]**  4/20 5/4
indicated **[1]**  5/6
INITIAL **[1]**  1/10
injuries **[1]**  9/2
intervened **[1]**  5/3
interviewed **[1]**  6/21
intimate **[1]**  4/25
is **[21]**

issue **[2]**  7/18 8/11
issued **[1]**  4/2
it **[16]**
it's **[4]**  3/10 3/11 5/6 8/16

**J**

JACKSON **[10]**  1/7 1/18
2/1 2/3 5/23 6/1 7/2 8/8
9/24 11/8
jail **[1]**  2/12
jam **[1]**  3/7
January **[1]**  10/6
January 14th **[1]**  10/6
job **[1]**  8/25
judge **[14]**
JUDICIAL **[3]**  1/1 1/12
1/24
July **[1]**  3/21
July 29th **[1]**  3/21
just **[10]**  2/23 2/23 3/5
4/2 4/4 8/17 9/3 9/3 10/7
10/7

**K**

keep **[1]**  10/7
kind **[1]**  5/23
KJ **[3]**  3/13 9/19 9/21
KJ's **[1]**  4/16
know **[6]**  3/1 3/2 4/5
5/13 9/2 10/2
Knows **[1]**  6/24

**L**

Law **[1]**  1/19
lawyer **[1]**  6/6
learned **[1]**  7/3
leave **[1]**  10/3
left **[1]**  4/21
left-hand **[1]**  4/21
Let **[1]**  8/7
like **[5]**  5/22 6/12 7/17
7/25 9/3
live **[2]**  7/23 7/24
lives **[1]**  9/21
living **[1]**  4/24
located **[2]**  4/19 4/21

Dixon v. City of St. Louis 05526

## L

**longer [1]** 6/13
**look [5]** 4/16 6/12 7/25 9/7 9/16
**looking [2]** 6/10 6/11
**looks [1]** 9/3
**lot [1]** 9/1
**LOUIS [6]** 1/1 1/12 1/24 3/25 4/13 11/5

## M

**make [1]** 8/20
**Makes [1]** 7/6
**manage [1]** 5/1
**matter [1]** 5/6
**maybe [1]** 7/22
**me [3]** 5/25 8/7 9/3
**mean [4]** 5/19 6/6 7/16 9/1
**Metropolitan [1]** 4/13
**MICHAEL [1]** 1/2
**might [2]** 7/18 8/21
**minute [1]** 9/3
**Misdemeanor [1]** 2/11
**misses [1]** 7/19
**MISSOURI [8]** 1/4 1/13 1/16 1/24 2/8 2/9 2/19 11/7
**Monday [1]** 6/8
**money [1]** 7/9
**months [1]** 7/7
**more [1]** 8/10
**morning [2]** 4/8 7/3
**moving [1]** 10/7
**Mr [7]** 1/15 1/19 2/1 2/3 6/1 6/19 7/2
**Mr. [6]** 3/8 6/9 6/20 7/14 8/8 9/24
**Mr. Brooks [1]** 6/20
**Mr. Circuit [1]** 3/8
**Mr. Jackson [2]** 8/9 9/24
**Mr. Wold [2]** 6/9 7/14
**MSI [1]** 2/12
**much [2]** 6/24 8/25
**my [4]** 6/5 6/6 6/8 9/3

## N

**neck [1]** 5/1
**neighbor [1]** 5/3
**new [3]** 8/6 8/19 8/21
**next [2]** 4/5 8/20
**nine [1]** 10/6
**no [21]**
**nobody [1]** 7/16
**normally [1]** 8/17
**not [6]** 2/13 3/3 5/14 5/14 5/23 9/19
**nothing [3]** 5/8 5/22 10/8
**noticed [2]** 4/19 7/3
**November [2]** 3/18 4/23
**November 21 [1]** 4/23
**Now [1]** 2/14
**Number [1]** 3/17

## O

**o'clock [1]** 10/6
**obviously [2]** 7/15 7/17
**off [1]** 4/17
**office [2]** 2/20 8/5
**officers [2]** 4/12 4/18
**official [2]** 11/4 11/16
**okay [6]** 2/3 2/18 4/6 4/9 8/24 10/8
**old [1]** 6/12
**one [3]** 2/12 6/18 8/3
**only [6]** 2/23 3/12 7/13 9/12 9/15 9/21
**operative [1]** 5/5
**opinion [1]** 2/21
**other [7]** 3/24 5/12 6/2 6/11 8/1 8/1 9/5
**out [3]** 6/7 6/11 8/18
**over [1]** 6/18
**own [1]** 3/21

## P

**p.m [1]** 3/15
**pages [1]** 11/9
**Payne [1]** 1/15
**PD [1]** 6/12
**pending [4]** 3/16 3/25

5/13 7/8
**percent [1]** 3/18
**person [1]** 1/18
**personal [1]** 3/22
**perspective [1]** 8/4
**pistol [1]** 4/16
**place [1]** 7/5
**placed [1]** 3/14
**Plaintiff [1]** 1/5
**plea [1]** 2/13
**please [1]** 5/25
**pocket [1]** 4/22
**point [3]** 3/4 7/24 10/1
**pointed [1]** 4/15
**police [3]** 4/12 4/13 4/18
**position [1]** 3/11
**possess [1]** 3/14
**possibility [1]** 7/21
**post [2]** 3/18 7/17
**posted [2]** 6/17 9/5
**practical [1]** 8/4
**present [1]** 11/6
**priors [1]** 7/7
**probable [1]** 8/11
**probably [1]** 3/4
**problem [1]** 7/15
**problems [1]** 7/25
**procedure [1]** 8/16
**proceedings [4]** 1/10 1/11 11/7 11/10
**PROCEEDINGS/INITIAL [1]** 1/10
**Project [3]** 6/17 7/18 9/5
**Properties [1]** 7/6
**property [3]** 3/17 6/4 9/20
**punishment [1]** 2/8
**purposes [1]** 6/21
**put [1]** 7/19

## Q

**questions [1]** 3/5

## R

**raise [1]** 5/8
**range [1]** 2/8

Dixon v. City of St. Louis 05527

## R

**read [1]** 5/20
**really [1]** 7/19
**receiving [2]** 3/17 6/4
**recognizance [1]** 3/22
**recommendation [1]** 7/11
**reduce [1]** 9/16
**reducing [1]** 2/24
**refused [1]** 8/11
**regards [1]** 5/21
**relationship [2]** 4/11 4/25
**release [1]** 9/22
**released [7]** 3/21 3/23 4/4 5/9 5/14 5/21 9/18
**remember [2]** 3/5 4/7
**report [1]** 3/14
**reported [1]** 11/6
**reportedly [1]** 4/14
**reporter [5]** 3/2 11/2 11/3 11/4 11/16
**represent [1]** 2/24
**representing [1]** 2/20
**reproduction [1]** 11/10
**reside [1]** 5/10
**residence [2]** 4/20 7/24
**responded [1]** 4/13
**return [2]** 5/15 9/8
**revealed [1]** 4/21
**review [2]** 8/23 10/2
**right [7]** 3/7 8/17 8/24 9/11 9/14 9/16 9/22
**Rita [4]** 1/23 11/3 11/14 11/15
**RMR [2]** 1/23 11/15
**romantic [1]** 4/11

## S

**said [3]** 3/1 4/17 6/18
**say [3]** 3/3 3/5 3/7
**scenario [1]** 7/19
**screen [1]** 9/3
**screening [1]** 7/2
**Search [1]** 4/20
**second [2]** 2/14 5/25

**secured [1]** 7/22
**see [2]** 2/15 6/7
**seeing [1]** 4/7
**seem [1]** 6/13
**Seems [1]** 6/17
**serious [3]** 8/11 9/2 9/2
**services [1]** 6/22
**set [1]** 3/10
**seven [2]** 7/7 9/22
**seven-day [1]** 9/22
**she [3]** 5/1 5/6 5/7
**she's [1]** 7/4
**sheet [1]** 5/12
**Shortly [1]** 4/18
**should [3]** 2/21 3/1 3/12
**show [1]** 2/17
**showing [1]** 8/22
**since [2]** 5/9 5/11
**sir [2]** 2/2 6/3
**sit [1]** 10/7
**so [17]**
**some [1]** 3/5
**someone [1]** 8/2
**someplace [1]** 9/9
**something [2]** 7/22 10/3
**sorry [1]** 6/9
**sounds [1]** 7/17
**special [2]** 9/18 9/21
**ST [6]** 1/1 1/12 1/24 3/25 4/12 11/5
**STATE [9]** 1/4 1/13 1/16 2/7 2/19 5/9 5/22 9/11 11/7
**State's [1]** 7/11
**statement [3]** 5/18 5/20 8/12
**still [1]** 6/14
**stolen [2]** 3/17 6/4
**straight [1]** 7/16
**struck [1]** 5/2
**submit [1]** 9/8
**subsequently [1]** 5/2
**suggest [1]** 3/3
**Sure [2]** 6/1 6/23
**surety [1]** 9/17

## T

**taken [1]** 3/6
**talk [2]** 2/15 2/24
**Taurus [1]** 4/16
**tell [3]** 2/5 5/22 6/16
**term [1]** 2/11
**than [2]** 6/24 8/1
**Thank [1]** 10/8
**that [46]**
**that's [8]** 2/11 2/17 2/20 2/22 3/1 6/14 8/19 10/6
**their [3]** 2/21 8/11 9/8
**them [1]** 8/1
**then [4]** 3/22 5/2 6/19 10/5
**there [10]** 3/3 4/1 5/19 7/6 8/4 8/13 8/13 8/22 9/18 10/8
**there's [1]** 3/24
**therefore [1]** 5/15
**they [9]** 4/18 4/19 5/9 7/19 7/25 8/9 9/7 10/2 10/3
**they're [1]** 6/13
**thing [1]** 2/14
**things [2]** 2/5 8/22
**think [3]** 2/16 5/15 9/7
**this [13]**
**Those [1]** 9/21
**though [1]** 3/4
**thoughts [1]** 7/14
**three [1]** 6/8
**through [3]** 6/11 6/22 7/18
**time [2]** 7/5 10/1
**today [2]** 2/14 2/23
**together [2]** 4/25 5/10
**TRANSCRIPT [1]** 1/10
**treatment [1]** 9/4
**trial [1]** 5/21
**true [2]** 8/2 11/10
**try [2]** 2/15 8/17
**trying [2]** 6/10 8/18
**turn [1]** 6/18
**two [4]** 3/24 7/25 8/20

Dixon v. City of St. Louis 05528

**T**

**two...** [1] 9/25
**type** [1] 5/17

**U**

**under** [1] 8/23
**Unlawful** [1] 2/6
**until** [3] 5/3 5/21 6/6
**up** [3] 2/8 2/11 3/7
**upon** [1] 7/2
**Use** [1] 2/6

**V**

**Very** [1] 10/8
**via** [1] 1/19
**victim** [8] 3/13 4/11 4/24
5/5 5/17 5/19 7/4 9/19
**victim's** [1] 4/15
**video** [1] 1/19
**visits** [1] 9/4

**W**

**WALLACE** [5] 1/7 1/18
2/1 5/22 11/7
**want** [3] 2/15 3/6 5/22
**wanted** [1] 8/10
**wants** [2] 5/7 9/11
**warranted** [1] 5/16
**was** [14]
**wasn't** [2] 8/12 8/13
**way** [1] 6/17
**we** [13]
**we're** [1] 2/12
**Weapon** [1] 2/7
**weeks** [1] 6/8
**well** [4] 2/3 4/15 7/9 8/24
**were** [1] 1/11
**what** [11] 2/5 2/15 2/17
2/21 3/6 6/16 6/20 7/11
7/17 8/18 9/11
**what's** [1] 3/8
**whatever** [1] 8/20
**whatsoever** [1] 5/7
**when** [4] 4/8 5/14 6/6
8/17
**where** [5] 3/4 4/14 7/19

9/21 10/3
**which** [5] 2/7 2/10 6/3
8/20 9/20
**who** [1] 4/24
**whole** [1] 9/1
**wife** [1] 7/23
**will** [6] 2/23 3/3 3/4 4/17
9/18 10/2
**wishes** [1] 5/6
**withdrawing** [1] 6/12
**within** [1] 8/19
**Wold** [3] 1/19 6/9 7/14
**work** [2] 6/8 6/8
**working** [1] 6/5
**works** [1] 8/5
**would** [8] 3/3 5/9 5/14
5/21 7/21 8/2 8/2 8/20

**Y**

**yeah** [1] 9/10
**year** [1] 2/12
**years** [1] 2/9
**Yes** [4] 2/2 9/6 9/13 9/23
**yesterday** [1] 8/9
**yet** [1] 4/5
**you** [32]
**you're** [5] 2/6 2/6 2/16
9/18 9/19
**You've** [1] 8/25
**your** [14]
**yourself** [1] 3/7

# EXHIBIT 196

1          IN THE CIRCUIT COURT OF ST. LOUIS, MISSOURI
             22ND JUDICIAL CIRCUIT, DIVISION 16B
2               Honorable Christopher E. McGraugh

3
   STATE OF MISSOURI,                    )
4                                        )
             PLAINTIFF,                  )
5                                        )CAUSE NO. 1922-CR02803
        vs                               )
6                                        )
   WILLIE POWELL,                        )
7                                        )
             DEFENDANT.                  )
8

9                FIRST APPEARANCE HEARING
                    SEPTEMBER 3, 2019
10

11          Appearing on behalf of the plaintiff:  Nicholas

12   Lake.  Appearing on behalf of the defendant:  Melinda

13   Gorman.

14

15

16

17

18

19

20

21

22

23

24          JACQUELYN S. WILLIAMS, CCR,
               OFFICIAL COURT REPORTER
25          CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT

Dixon v. City of St. Louis 04818

2

1

2          THE COURT:    We're here in the matter of State of

3    Missouri versus Willie Powell, Cause No.  1922-CR02803.

4    This matter is before the Court for an initial appearance.

5    My docket indicates you were arrested four days ago.  Is

6    that correct?

7          THE DEFENDANT:    Yes, sir.

8          THE COURT:    It was on Thursday?

9          THE DEFENDANT:    Yes.

10          THE COURT:    Okay.  Due to the weekend and the

11    holiday, this was the first opportunity we've had to have

12    this initial appearance.  Typically they are held 48 hours

13    after your arrest.

14          This initial appearance is to advise you what

15    you're charged with, to determine whether you're going to

16    be represented in this matter, and also to discuss any

17    possible conditions of release which would secure the

18    community as well as secure your return to court to answer

19    for these charges.

20          Appearing here is assistant circuit attorney

21    Nicholas Lake.  Appearing on your behalf is a private

22    attorney solely for the purposes of this hearing and

23    that's Melinda Gorman.

24          Ms. Gorman, do you wish to have the charges

25    formally read to Mr. Powell?

3

1          MS. GORMAN:    No, Your Honor.  We will waive

2   formal reading and enter a plea of not guilty.

3          THE COURT:    You understand, Mr. Powell, that

4   Ms. Gorman has waived formal reading of the charges and

5   has entered a plea of guilty to these two charges?

6          MS. GORMAN:    Not guilty, Judge.

7          THE COURT:   I'm sorry.  Not guilty.

8          MS. GORMAN:    Not guilty, sir.

9          THE COURT:    All right.  She's entered a plea of

10  not guilty to burglary in the first degree and stealing

11  physical taking.  You understand that, sir?

12         THE DEFENDANT:    Yes, sir.

13         THE COURT:    Okay.  I note from your application

14  to the public defender's office you're on disability.  Is

15  that correct?

16         THE DEFENDANT:    Yes, sir.

17         THE COURT:    So can I assume that you cannot make

18  a $50,000 cash bond.  Is that also true?

19         THE DEFENDANT:    No, sir.

20         THE COURT:    No dice.

21         THE DEFENDANT:    I can't make it.

22         THE COURT:    Is there any sort of bond you think

23  you or your family could make?

24         THE DEFENDANT:    A signature bond on my own

25  recognizance, but whatever you set the next day I'll be

4

1    back.

2              THE COURT:    It says here you're living in a

3    boarding house?

4              THE DEFENDANT:    Yes.

5              THE COURT:    It appears by your application that

6    the public defender should represent you in this matter.

7    Does the state wish to be heard as to bond on this matter?

8              MR. LAKE:    Yes, Your Honor.  The state would

9    first request that the Court take judicial notice of its

10   court file and the bond commissioner's report in this

11   case.

12             THE COURT:    The Court will do so.

13             MR. LAKE:    Thank you, Your Honor.  The state's

14   position is that the bond which, again, is currently set

15   at $50,000 cash only is appropriate to assure the safety

16   of both the victim as well as the general community.

17             Your Honor, this case is fairly straightforward.

18   The defendant forced his way into the victim's home at

19   which time he took the victim's cell phone and demanded

20   that she turn over her credit card after a physical

21   struggle ensued.

22             In term of priors, Your Honor, I'm showing

23   several prior convictions for both burglary and

24   theft-related offenses.  And so here we are yet again with

25   another offense that is a burglary first and stealing.

5

1          So given the facts of this case, Your Honor, the

2     fact that the defendant has prior convictions that extend

3     all the way back into the 1990s for the same related

4     offenses, the state believes that the defendant does pose

5     a danger to the community and would be opposed to a

6     reduction at this time.

7               MS. GORMAN:    Sir, may I ask you a couple of

8     questions really quickly, please?

9               THE DEFENDANT:    Ma'am?

10              MS. GORMAN:    Can you hear me?

11              THE DEFENDANT:    Yes, ma'am, I can hear you.

12              MS. GORMAN:    I want to ask you a couple of

13    questions.  First off, what is the situation that has you

14    living at the boarding house and what are the -- can you

15    just tell me a little bit about your living situation

16    there?

17              THE DEFENDANT:    Yes.  I had to have my personal

18    space.

19              MS. GORMAN:    Okay.  Go ahead.  Where were you

20    living before the boarding house?

21              THE DEFENDANT:    Ma'am, I was living with my

22    sister and her father Benny Gorman on Kansas Street.

23              MS. GORMAN:    Okay.  So you left there to have

24    personal space living in a boarding house.  Is that a

25    place where you pay rent to live and just get a room?

6

1          THE DEFENDANT:    Yes.

2          MS. GORMAN:    Okay.  If the Court were to impose

3   the condition of house arrest, would that be something

4   that you could do at the boarding house?

5          THE DEFENDANT:    I would have to get my phone

6   turned on.

7          MS. GORMAN:    Okay.

8          THE DEFENDANT:    Excuse me, ma'am.  Would my cell

9   phone be active or?

10          MS. GORMAN:    I think sometimes with the house

11   arrest, depending on the way they do it, that you might

12   have to have a landline.

13          Like I said, I just really kind of wanted to

14   inquire a little bit before we go on an argument as to the

15   living arrangement.  Is this like rent a room with someone

16   you know?  Did you find this on line?

17          THE DEFENDANT:    Well, I was cutting grass and I

18   ran across this lady who owns the boarding house.

19          MS. GORMAN:    Okay.  And so you struck a deal

20   with her?

21          THE DEFENDANT:    Yes.  And I spoke with her about

22   renting a room, and she said she had a couple rooms

23   available in this boarding house.

24          MS. GORMAN:    All right.  Are there other people

25   live in the boarding house too?

7

1          THE DEFENDANT:    Yes.

2          MS. GORMAN:    How many people live there?

3          THE DEFENDANT:    Three I guess.

4          MS. GORMAN:    Okay.  That's all the questions I

5    have at this time, sir.

6          THE COURT:    Okay.  Anything more on behalf of

7    the state?

8          MR. LAKE:    I'll just briefly say, Your Honor, it

9    should be noted that our office has been in contact with

10   the victim in this case and while she wasn't able to be

11   present today, she has indicated that she is fearful for

12   her safety and is opposed to a reduction as well.

13         THE COURT:    Ms. Gorman.

14         MS. GORMAN:    Your Honor, I would just point out

15   to the Court that although the defendant does have priors

16   for similar offenses, none of the offenses that he has

17   priors for are violent.  They are all burglary and

18   stealing related.

19              As a matter of fact, even according to the

20   probable cause statement in this case, although, you know,

21   he's alleged to have gone into someone's dwelling while

22   they were present and physically taking something from

23   them, there was no weapon used.  There was no weapon

24   brandished or threatened.

25              So this was a stealing from a person assuming

8

1    that all the facts and probable cause statement are what

2    they are, and I would like the Court to take that into

3    consideration when determining bond on behalf of

4    Mr. Powell.

5                    THE COURT:    Okay.  Mr. Powell, I've listened to

6    the argument of counsel.  I've looked through your record.

7    I've also read through the probable cause statement.  The

8    only thing really you got going for you is your age.  At

9    60 years old, there's no reason for you to be sitting

10   being charged with this kind of business.

11                   It is rather alarming in the probable cause

12   statement in that it seems as though this was a random act

13   where -- however, it is a B felony which carries a range

14   of punishment of up to five to 15 years.  You do have a

15   record of burglaries and stealings; last one being in 2009

16   where you did six years in the Missouri Department of

17   Corrections.

18                   I don't believe that there's any condition under

19   Missouri Supreme Court Rule 33.01 that would secure the

20   safety of the community nor secure your return back to

21   court, particularly given that there seems to be an

22   unstable living arrangement at this time.  And given the

23   nature of the offense, I believe the Court denies the

24   request for modification of the bond release at this time.

25                   I will set a bond hearing next Tuesday,

9

1   9/10/2019 at 10:30 for another judge to review these

2   conditions.

3           Mr. Powell, I see you have your hand up, but I

4   want to remind you again, anything you say can be used

5   against you and everything is being recorded here.

6           THE DEFENDANT:   Yes, sir.  I just want to ask

7   you if I was to move back to my sister's house and she

8   have a landline there, would that be okay?

9           THE COURT:   I definitely -- before -- yes, sir.

10  Sorry to interrupt you.  Definitely before next Tuesday,

11  hopefully you will have a public defender and hopefully at

12  that time those arrangements -- some sort of arrangement

13  like that can be made where I think a judge would be

14  inclined to modify these conditions of bond and place you

15  on house arrest, okay?

16          THE DEFENDANT:   So I was just wondering if I get

17  out on my own recognizance and move all my stuff from

18  there.

19          MS. GORMAN:   Mr. Powell, you're going to have

20  another opportunity to address those issues and ask the

21  Court for a recognizance bond potentially with house

22  arrest on the court date that the judge has given you on

23  9/10.

24          So even though nothing is happening with regards

25  to movement on your bond at this time, that doesn't mean

10

1    that these same issues can't be addressed again in a week,

2    sir.  You understand?

3            THE COURT:    All right.  So hopefully by next

4    week you'll have a public defender.  You can talk with

5    your public defender about your very proposal there.  I

6    think it's actually a very good proposal and if you can

7    set something like that up by next week, I think Judge

8    Clark who I think follows me will be inclined to grant you

9    a recognizance bond on those conditions.  All right?  That

10   concludes the record.

11           (End of proceedings.)

11

1        **REPORTER'S CERTIFICATE**

2            I, Jacquelyn S. Williams, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on

5    September 3, 2019, I was present and reported the

6    proceedings had in the case of State of Missouri, Plaintiff,

7    vs. Willie Powell, Defendant, Cause No. 1922-CR02803.

8            I further certify that the foregoing pages contain a

9    true and accurate reproduction of the proceedings.

10

11

12

13

14

15

16

17

18

19

20    "/s/JACQUELYN S. WILLIAMS, CCR #870"

21

22

23

24

25

# EXHIBIT 197

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
HONORABLE CLINTON R. WRIGHT


| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1922-CR03395 |
| | ) | |
| ███████████ | ) | |
| | ) | |
| Defendant. | ) | |

_____

**FIRST APPEARANCE HEARING**
_____

On Monday, October 30, 2019, the above-entitled
cause came on regularly for hearing before the
Honorable Clinton R. Wright, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of
St. Louis.

**APPEARANCES**

The State of Missouri was represented by Steven
Payne, Assistant Circuit Attorney, City of St. Louis,
State of Missouri.

The Defendant was represented by Melinda L.
Gorman, Attorney at Law.




JENNA L. HIGGINS, CCR #998, CSR (MO & IL)
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT

1              **THE COURT:**  Good afternoon, ███████.  We

2      are on the record, ████████████████████

3      ██████.  You're charged with stealing, a Class D

4      felony.

5              **MS. GORMAN:**  Your Honor, at this time we'll

6      waive formal reading and enter a plea of not guilty.

7      We're getting our stuff together.

8              **THE COURT:**  That's the way we should do it.

9              ████████, let me look at a couple of

10     things.

11             I have reviewed the probable cause statement

12     and the pretrial release commissioner's investigation.

13             Mr. Payne.

14             **MR. PAYNE:**  Yes, Judge.  The State would

15     request that the Court take judicial notice of its

16     case file along with the bond commissioner's report.

17             **THE COURT:**  I will.

18             **MR. PAYNE:**  Judge, as indicated in the

19     probable cause statement, the victim reported on

20     June 6th, 2019, the defendant struck her in order to

21     still two SSI checks and $30 in U.S. currency from

22     her.

23             The victim was unarmed at the time.

24     Officers responded and found the defendant there and

25     in possession of two firearms along with a Glock nine

1    millimeter.

2           **MS. GORMAN:**  I don't see that.

3           **MR. PAYNE:**  I'm sorry, Judge.  When I copied

4    these over from our drive, someone else's got onto

5    this piece of paper.

6           **THE COURT:**  I am reading it in front of me.

7    That's fine.

8           **MR. PAYNE:**  I would refer to the bond

9    commissioner as to the defendant's criminal history.

10          **THE COURT:**  All right.

11          **BOND COMMISSIONER:**  Judge, we show seven

12   priors.  '94 robbery first, ACA.  2006 possession.

13   2008 assault second.  2003 possession.  And he's got a

14   2017 possession.  2017 burglary second, property

15   damage first.  And a 2017 theft over 500.  He's

16   currently on parole for the theft over 500 and the

17   burglary second and the property damage.

18          **THE COURT:**  I show in the writing that there

19   was a 2017 possession of controlled substance and ten

20   years confinement.  1622 --

21          **BOND COMMISSIONER:**  That did not show up as

22   far as being probation, so let me --

23          **THE COURT:**  Gotcha.  Anything else from the

24   State?

25          **MR. PAYNE:**  Judge, the bond is currently set

1    at $30,000 cash only.  It is the State's

2    recommendation that bond be set at 10,000 cash only

3    with the added condition he stay away from the victim

4    and GPS.

5            **THE COURT:**  Ms. Gorman.

6            **MS. GORMAN:**  Your Honor, I would ask the

7    Court set the bond at 10,000 with 10 percent

8    authorized.  This is a Class D felony.  We are in a

9    situation where there were no physical injuries.  No

10   weapon was used in this case.

11           Although the defendant does have somewhat of

12   an extensive history, it is quite old.  I do think

13   that a special condition of reporting to Emass once a

14   month and no contact with the victim would be

15   sufficient for the safety of the community.

16           **THE COURT:**  Anything else?

17           **MS. GORMAN:**  No, Your Honor.

18           **MR. PAYNE:**  No, Your Honor.

19           **THE COURT:**  Based upon the history and

20   relative lack of violence, but still the allegations

21   and probable cause were of some level, which is of

22   concern, I believe the least restrictive means with

23   regard to his bond would be $3,000 cash and Emass.

24   And were there any other -- and no contact with the

25   victim.  Was it parole or probation?

1            **BOND COMMISSIONER:**  Parole.

2            **THE DEFENDANT:**  Parole.

3            **THE COURT:**  Do you know --

4            **MS. GORMAN:**  Sir -- sorry.

5            **THE COURT:**  Do you know if they are

6    going -- if you're being sent back or do you know?

7            **THE DEFENDANT:**  If I was to get an OR, I

8    would have to go --

9            **THE COURT:**  Not an OR.

10           **THE DEFENDANT:**  The Honor Center, the

11   Department of Corrections Honor Center because they

12   put me in there because I caught these cases.  So I

13   would be confined in the downtown Honor Center, the

14   St. Mary's --

15           **THE COURT:**  Understood.

16           **THE DEFENDANT:**  -- Correctional Facility.

17   That's where my PO is going to put me if I was to get

18   out.

19           **THE COURT:**  Understood.  Again, 3,000 cash

20   only.  Your next court date will be November 6th at

21   10:30 and back-up date of December 2 in Division 25 at

22   9:15 a.m.  Anything else?

23           **MS. GORMAN:**  May I advise him briefly?

24           Sir, McCurry, your bond --

25           **THE DEFENDANT:**  Yes, sir.

```
 1              MS. GORMAN:  -- does fall within the range

 2    that The Bail Project will post for you.  So between

 3    now and your court date on 11/6, I would strongly

 4    recommend that you make application with that

 5    organization and they may be able to post your bond

 6    for you.

 7              THE DEFENDANT:  Yes, ma'am.

 8              THE COURT:  All right.  Have a good day.

 9              (End of proceeding.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        CERTIFICATE
 2               I, Jenna L. Higgins, Certified Court
 3    Reporter, do hereby certify that I am an official
 4    court reporter for the Circuit Court of the City of
 5    St. Louis; that on October 30, 2019, I was present and
 6    reported all the proceedings had in the case of State
 7    of Missouri vs. ███████████████████
 8    Cause No. 1922-CR03395.
 9               I further certify that the foregoing
10    pages contain a true and accurate reproduction of the
11    proceedings.
12
13
14               _____
15               Jenna L. Higgins, CCR 998
                      CSR (IL and MO)
16
17
18
19
20
21
22
23    TRANSCRIBED:  July 30, 2020
24
25
```

# EXHIBIT 198

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Calea Stovall-Reid, Judge

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 2022-CR00427 |
| ███████████, | ) |
| Defendant. | ) |

BOND HEARING - INITIAL APPEARANCE

February 6, 2020

FOR THE PLAINTIFF:                    FOR THE DEFENDANT:

Mr. Jonathan Phipps                   Mr. Chris Faerber
Assistant Circuit Attorney            FaerberLaw, LLC
1114 Market Street, #401              1015 Locust Street, Suite 914
St. Louis, MO  63101                  St. Louis, MO  63101

KRISTINE A. TOENNIES, RMR, CRR, CCR #769
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1    THE COURT:   Okay, who is ████████? Faerber,
2  are you going to talk to ████?
3    MR. FAERBER:   Yes.  One moment, Your Honor.
4    (Discussion off the record.)
5    MR. FAERBER:   Thank you, Your Honor.
6    MR. PHIPPS:   Your Honor, the defendant stands
7  charged with assault in the second degree and
8  stealing-physical taking.  His bond is currently set at
9  $30,000, 10 percent cash allowed.  Your Honor, I would ask
10 the Court to take judicial notice of its file in this case,
11 including the bond commissioner's report.
12    THE COURT:   Yes.
13    MR. PHIPPS:   I would start by directing you to the
14 disturbing nature of this particular case.  The probable
15 cause statement includes the allegation that the defendant
16 struck the victim in the side of the head with a jig saw and
17 stole her cell phone.
18    Your Honor, I would also like to bring your
19 attention to the defendant's criminal history, which
20 includes from way back in the day a possession of marijuana,
21 which I'm sure Your Honor doesn't care about directly, but
22 he was given probation in that case which was later revoked.
23    In a 2015 cause number I've got possession of a
24 controlled substance and violation of an order of
25 protection.  I'll note that that violation of an order of

1    protection is against a different victim than the one in

2    this case, for which he was given probation which was later

3    revoked and then later replaced with another probation,

4    which was later suspended.  Then he was given 120-day shock

5    and an early release.

6             In a separate 2015 cause number, he was convicted

7    of domestic assault in the third degree against a third

8    victim, so separate from the violation order of the

9    protection, separate from this case here.  Sentenced to 90

10   days MSI and somehow a stayaway on the 90 days as well.  I'm

11   not sure how that works.

12            I'll also note that in my files on both those

13   cases the victims expressed some concern for the defendant's

14   mental condition.  I inquire of the bond commissioner, am I

15   missing any relevant criminal history?

16            COMMISSIONER KELLY:   Judge, there's no additional

17   information.

18            THE COURT:   All right.  Mr. Faerber?

19            MR. PHIPPS:   Your Honor, if I might make a

20   recommendation in this case.  Recognizing that the defendant

21   has limited financial resources, though has some college,

22   and there seems to be some conflict between the bond

23   commissioner's report and his statements here, I believe the

24   bond commissioner's report lists him as having no kids;

25   today he said he has two kids.  But either way he's a

1    life-long resident who lives with his mom, 36 years old.  I

2    still believe that in light of the serious nature of this

3    offense and in light of his troubling criminal history, it

4    seems to indicate a general lack of respect for others and

5    difficulty in relationships with others.

6              We believe he represents a serious threat to this

7    victim and to the community at large.  We would ask the bond

8    be set at $25,000 cash only with the added conditions that

9    he stay away from and have no contact with the victim,

10   possess no weapons, be placed under house arrest with

11   electronic monitoring to effectuate the house arrest, be

12   given a mental health evaluation through EMASS, and follow

13   all recommendations that come out of it.

14             THE COURT:   Mr. Faerber?

15             MR. FAERBER:   Thank you, Your Honor.  Well, first

16   off, the recommendation of a $25,000 cash only bond, as I

17   believe the whole court heard, he can't afford any bond, so

18   that is not only the rough equivalent of a no bond allowed,

19   but having a bond that someone cannot afford flies in the

20   face of Rule 33.01.

21             And I know that that is the state's policy for

22   whatever reason to not recommend no bonds allowed, but on

23   the other side of that, while the state did list off a

24   domestic third from 2015, that's back when domestic third

25   was a misdemeanor, and as far as anything that victims have

1  said in the past, that's hearsay.  They're not here saying

2  anything.  There's no ability to confront them right now,

3  and the victim in this case -- well, first off, isn't here.

4  Second off, attacked with a jig saw, there's no description

5  or word or anything in the probable cause statement that she

6  appeared injured.  This is just something she told the

7  police.  She did go over to his place to get some stuff.  We

8  don't know if she went over to his place to take or steal

9  some stuff.

10         So I think as with any domestic basis situation,

11  the truth is likely somewhere in the middle, whether it be

12  more toward him or more toward her, but I think a stayaway

13  order would suffice in this case because it appears they

14  don't even stay together.  They don't live together.  They

15  have no reason to see each other.  So he just stays away

16  from her.  He can go about getting job assignments cleaning

17  places, which he described he's been working on doing.  And

18  he then lives with his mother.

19         So I do not believe that he is a threat to

20  society.  I mean, looking again at his criminal history, we

21  have possession and an SIS that looks like he walked down.

22  He's able to follow directions, orders, whatever.  So he

23  does not have a history of running or disappearing, and

24  again, as far as an overall danger to society, he has

25  nonviolent priors in his past, and then the one that one

1    could argue is a violent prior is a misdemeanor.

2         So again, I would ask for a personal or sponsored

3    recognizance.  He can't get ahold of his mother right now.

4    He doesn't have her phone number.  Like many of us, I'm sure

5    it's in his cell phone under "Mom," but a sponsored

6    recognizance may also not work.  I would just ask for a

7    personal recognizance, a reporting structure to EMASS, and a

8    stayaway order.

9         THE COURT:   All right.  The Court will order a

10   sponsored recognizance by the mother.  What is your mother's

11   name?

12        THE DEFENDANT:   ▬▬▬▬▬▬.

13        THE COURT:   ▬▬▬▬▬▬?

14        THE DEFENDANT:   ▬▬▬.

15        THE COURT:   I'm sorry?

16        THE DEFENDANT:   ▬▬▬.

17        THE COURT:   Oh, ▬▬▬?

18        THE DEFENDANT:   Yes.

19        THE COURT:   All right, ▬▬▬▬▬.

20        MR. FAERBER:   How do you spell that?

21        THE DEFENDANT:   ▬▬▬▬▬.

22        THE COURT:   Defendant shall stay away from the

23   victim in this case and shall stay away from the victim

24   wherever she may be found.  Next court date is 2/14 -- I'm

25   sorry -- 3/10 in Division 26.

1          MR. FAERBER:   And we will waive formal reading and

2    enter a plea of not guilty for the record.

3          MR. PHIPPS:   Your Honor, could I just ask is there

4    any reporting structure or monitoring that you wanted as a

5    part of that bond?

6          THE COURT:   What do you mean reporting structure?

7    You're asking that he report to EMASS?

8          MR. PHIPPS:   I believe I was originally asking for

9    house arrest and GPS monitoring, but I was wondering if you

10   intended there to be some monitoring or reporting --

11         THE COURT:   Well, I really did not.  I just

12   intended him to stay away from the victim.  I don't think

13   monitoring is necessary in this case.

14         MR. PHIPPS:   Yes, Your Honor.

15            (Hearing was held for next defendant.)

16         THE COURT:   All right, ███████, I'm adding a

17   condition to your bond that $15,000 secured or 10 percent,

18   so that means your mother will have to post $1,500 cash or

19   she can get a bondsman, and then she still has to sign you

20   out.

21         MR. PHIPPS:   I'm sorry, Your Honor, was that 1,500

22   secured or 10 percent?  Is that what you said?

23         THE COURT:   I said $15,000 secured or 10 percent.

24         THE DEFENDANT:   So it's 1,500, you said?

25         THE COURT:   No.  If your mother wants to pay cash,

1    then she can pay $1,500.  That's 10 percent of 15,000.  So

2    she needs either 1,500 cash or she needs to go to a

3    bondsman, and some of them take payments.  So she won't have

4    to have the whole 1,500 at once.

5            THE DEFENDANT:   Is there any way I could get out

6    my own recognizance just because --

7            THE COURT:   No.

8            THE DEFENDANT:   -- because her mother just died,

9    and she kind of needs help around the house.

10           THE COURT:   I understand that.

11           THE DEFENDANT:   And she currently doesn't have a

12   vehicle either, and to go to the store, my sister has to go

13   to the store for her.

14           THE COURT:   Okay.  What's that got to do with

15   anything?

16           THE DEFENDANT:   I don't have a way to contact her.

17   I don't have a way to call her.

18           THE COURT:   You don't have anybody's number?

19           THE DEFENDANT:   I don't, ma'am.

20           THE COURT:   Well, I suggest you call some friend

21   and then ask them to go to her house and tell her, anybody's

22   number you can think of.

23           THE DEFENDANT:   I don't have anyone's phone

24   number.

25           THE COURT:   Well, then I guess you'll just sit

1   because those are the requirements.  I'm not going to

2   release you on your own recognizance because you don't know

3   anybody's phone number.  That doesn't make any sense.

4                   THE DEFENDANT:    I wouldn't break it; I wouldn't.

5                   THE COURT:    I understand that's what you say.

6                   MR. PHIPPS:    I'm sorry, Your Honor, what case did

7   you just add that on to?

8                   THE COURT:    That was on █████.

9                   MR. FAERBER:    So he now has a bond instead of

10  sponsored?

11                  THE COURT:    No, he has a dual bond.  He has

12  sponsored recognizance, and then the mother has to either do

13  secured 15,000 or post 10 percent.  So he has a dual bond.

1    CERTIFICATE

2        I, Kristine A. Toennies, Registered Merit

3    Reporter, Certified Realtime Reporter, and Certified Court

4    Reporter, do hereby certify that I am an official court

5    reporter for the Circuit Court of the City of St. Louis;

6    that on February 6, 2020, I was present and reported all the

7    proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8    vs. ███████████, Defendant, Cause No. 2022-CR00427.

9        I further certify that the foregoing pages contain

10   a true and accurate transcription of the proceedings.

11

12

13       /s/ Kristine A. Toennies
         _____
14       Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 199

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,              )
                                )
            Plaintiff,          )
                                )
        vs.                     )   Cause No. 2022-CR00339
                                )
ANTOINE LARON JONES             )
                                )
            Defendant.          )

BOND REVIEW HEARING

        on the 31st day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

            The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

            The Defendant was present by video link and
was represented by Tony Muhlenkamp, Attorney at Law.

            Mr. Don Kirby, Bond Commissioner

            DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
                   OFFICIAL COURT REPORTER
               CITY OF ST. LOUIS CIRCUIT COURT
                 TWENTY-SECOND JUDICIAL CIRCUIT

---

**JANUARY 31, 2020**

1
2       THE COURT:  We're on the record which should
3  reflect this is 2022-CR339, State of Missouri versus
4  Antoine L. Jones.  Mr. Jones appears in court via video
5  link with the benefit of legal assistance, Tony
6  Muhlenkamp.  The State of Missouri is represented by
7  Assistant Circuit Attorney Nicholas Fischbach.  Mr. Jones
8  faces a one-count indictment, unlawful possession of a
9  firearm, a Class D felony.  His bond is currently set at
10 $30,000 cash only.
11      Having said that, Mr. Jones, did you hear me
12 identify your attorney on the record?
13      THE DEFENDANT:  I did not catch his name fully.
14      THE COURT:  His name is Tony Muhlenkamp.  You
15 heard me identify him for the record?
16      THE DEFENDANT:  Yes, sir.
17      THE COURT:  Now he's waving his hand at you.  Do
18 you see that?
19      THE DEFENDANT:  Yes, sir.
20      THE COURT:  He's the attorney who is going to
21 represent you for the limited purposes of this proceeding
22 only.  Do you understand?
23      THE DEFENDANT:  Yes, sir.
24      THE COURT:  In other words, he'll represent you
25 in your bond review momentarily.  However, after today's

2

---

1  court date, it's your responsibility to return to court
2  with an attorney whether you're confined or not.  Do you
3  understand that?
4       THE DEFENDANT:  Yes, sir.
5       THE COURT:  If you wish to pursue the services
6  of the public defender's office, you're invited to do so.
7  You have to fill out an application and follow up with
8  their processing of your application.  Do you understand?
9       THE DEFENDANT:  Yes, sir.
10      THE COURT:  In other words, they do not have to
11 represent you.  Do you understand that?
12      THE DEFENDANT:  Yes, sir.
13      THE COURT:  If you wish to pursue the services
14 of a private attorney, that's fine as well.  You're
15 invited to do so.  Do you understand?
16      THE DEFENDANT:  Yes, sir.
17      THE COURT:  Thank you.  Now, Mr. Muhlenkamp is
18 going to be representing you in your bond review as we
19 previously discussed.  I'm going to discourage you from
20 saying anything outside of his instructions or direction.
21 Do you understand?
22      THE DEFENDANT:  Yes, sir.
23      THE COURT:  In other words, don't say anything
24 unless he tells you to.  Do you understand?
25      THE DEFENDANT:  Yes, sir.

3

---

1       THE COURT:  You're being recorded, and you're in
2  a public environment.  Anything you say can be held
3  against you.  Do you understand?
4       THE DEFENDANT:  Yes, sir.
5       THE COURT:  Thank you.  All right.
6  Mr. Fischbach -- or pardon me.  Is there an announcement
7  at this time, Mr. Muhlenkamp?
8       MR. MUHLENKAMP:  There is, Your Honor.  We'll
9  waive formal reading and enter a plea of not guilty.
10      THE COURT:  Thank you.  Mr. Fischbach, you may
11 proceed.
12      MR. FISCHBACH:  First, the state requests the
13 court take judicial notice of the court file.
14      THE COURT:  So ordered.
15      MR. FISCHBACH:  Thank you, Your Honor.  In this
16 case an officer was on routine patrol when he observed a
17 Barnes Hospital security vehicle driving at high speed.
18 The officer followed it and both the Barnes security
19 officer and the police officers came upon the defendant
20 who was verbally abusing a young woman.  As the officers
21 approached, the defendant removed a 32 caliber revolver
22 from his waistband and discarded it along with a small bag
23 containing five live cartridges.  The defendant stated he
24 had taken the woman from -- the same woman he was
25 currently berating several days previously.

4

Dixon v. City of St. Louis, 04234

1    The defendant has a prior felony conviction
2  which the state shows as being a conviction for two counts
3  of robbery in Cause No. 14JO-CR00739 for which he was
4  revoked on probation in January 2019 and placed on four
5  years supervised release with 12 years suspended.  Turning
6  to the bond commissioner.
7        THE COURT:  He's on probation for robbery one
8  out of Warrensburg?
9        MR. KIRBY:  Yes, Judge.
10        THE COURT:  Anything else?
11        MR. KIRBY:  That's the only conviction, Judge.
12  He does have other arrests.  That's the only conviction.
13        THE COURT:  Mr. Muhlenkamp.
14        MR. MUHLENKAMP:  Thank you.  Your Honor, may I
15  inquire?
16        THE COURT:  You may.
17        MR. MUHLENKAMP:  Good afternoon, Mr. Jones.  Can
18  you hear me okay?
19        THE DEFENDANT:  Yes, sir.
20        MR. MUHLENKAMP:  Thank you.  I'm going to ask
21  you keep your voice up and answer my questions truthfully.
22        THE DEFENDANT:  Okay.
23        MR. MUHLENKAMP:  As the Judge indicated, he's
24  only appointed me to represent you for today.  My job,
25  because this is an initial appearance, I want to make sure

5

1  the Court has accurate information so the Judge can make
2  an informed decision about your bond.
3        THE DEFENDANT:  Right.
4        MR. MUHLENKAMP:  I do not want to talk about the
5  facts of your case.  Please do not volunteer the facts of
6  your case.
7        THE DEFENDANT:  Understood.
8        MR. MUHLENKAMP:  I'm going to say what I can do
9  for you.  Did you speak to the bonding office about your
10  background?
11        THE DEFENDANT:  Yes, sir, I did.
12        MR. MUHLENKAMP:  They asked you a whole bunch of
13  questions about your history?
14        THE DEFENDANT:  I filled out a piece of paper.
15        MR. MUHLENKAMP:  Fair enough.  You told the
16  truth on that paperwork?
17        THE DEFENDANT:  Yes, sir.
18        MR. MUHLENKAMP:  You're currently working.
19  Where do you work?
20        THE DEFENDANT:  I have two jobs.  Red Lion
21  Hotel.  I also work at Galleria Mall at market and
22  research.  I am an interviewer.  I give people surveys.
23  Basically go in and give surveys.  I give people the
24  survey and get paid at the front desk.
25        MR. MUHLENKAMP:  That's a job at the mall?

6

1        THE DEFENDANT:  Yes, sir.
2        MR. MUHLENKAMP:  What do you do at Red Lion?
3        THE DEFENDANT:  I am a houseman.  I work
4  housekeeping.  I clean the public area rest.
5        MR. MUHLENKAMP:  That's the hotel right by where
6  the Blues play?
7        THE DEFENDANT:  Exactly.
8        MR. MUHLENKAMP:  You're 24 years old.  High
9  school graduate?
10        THE DEFENDANT:  Yes, sir.
11        MR. MUHLENKAMP:  Your bond is currently $30,000
12  cash only.  If you were able to make your bond, you would
13  live with Ms. Davis; is that right?
14        THE DEFENDANT:  Yes, sir.
15        MR. MUHLENKAMP:  How long have you lived there,
16  sir?
17        THE DEFENDANT:  We have lived at that address
18  since October.
19        MR. MUHLENKAMP:  That's the address at 2411
20  Brown?
21        THE DEFENDANT:  No, sir.  That is the 9301
22  Elias, E-L-I-A-S.
23        MR. MUHLENKAMP:  Sorry about that.  I read over
24  that too quickly.  Is Ms. Davis your girlfriend?
25        THE DEFENDANT:  Yes, sir.

7

1        MR. MUHLENKAMP:  You have a child?
2        THE DEFENDANT:  Yes, sir.
3        MR. MUHLENKAMP:  How old is your child?
4        THE DEFENDANT:  Four years old.
5        MR. MUHLENKAMP:  Does your child live with you?
6        THE DEFENDANT:  No, sir.  He stays with his mom.
7        MR. MUHLENKAMP:  His mom is someone different?
8        THE DEFENDANT:  Yes, sir.
9        MR. MUHLENKAMP:  Do you help financially support
10  your child?
11        THE DEFENDANT:  Yes, sir.
12        MR. MUHLENKAMP:  I'm showing here you're
13  currently on probation in Johnson County, Missouri.
14  That's in Warrensburg?
15        THE DEFENDANT:  That's correct.
16        MR. MUHLENKAMP:  Who is your probation officer
17  on that case?  Do you know the name?
18        THE DEFENDANT:  Her name is Jacqueline Jenkins
19  out of the north district on Lucas and Hunt, 8501 Lucas
20  and Hunt.
21        MR. MUHLENKAMP:  You're on probation out of
22  Warrensburg, but you see someone here locally?
23        THE DEFENDANT:  Correct.
24        MR. MUHLENKAMP:  When is the last time you saw
25  Ms. Jenkins?

8

Dixon v. City of St. Louis, 04235

```
1          THE DEFENDANT:  Like Monday.
2          MR. MUHLENKAMP:  Monday like four days ago?
3          THE DEFENDANT:  Yes, sir.
4          MR. MUHLENKAMP:  Are you able to come up with
5   any money to post a bond or hire an attorney in this case,
6   sir?
7          THE DEFENDANT:  If I hand over money to hire an
8   attorney, I wouldn't have any money for a bond.
9          MR. MUHLENKAMP:  Can you come up with any money
10  for either one?
11         THE DEFENDANT:  Yes, sir.
12         MR. MUHLENKAMP:  How much?
13         THE DEFENDANT:  Honestly, like 800 to a
14  thousand.
15         MR. MUHLENKAMP:  You're going to hear me make an
16  argument on your behalf in a moment to the Court.  I'm
17  going to try to get your bond reduced.  The Judge might
18  reduce or he might not.  Regardless of what he does, I'm
19  telling you now you need to apply for a public defender if
20  you have not done so already.  If you have not, make sure
21  to ask the guards can you please give me some public
22  defender paperwork.  You're going to need an attorney
23  after today.
24         THE DEFENDANT:  Yes, sir.
25         MR. MUHLENKAMP:  Mr. Jones, just hang tight
```
9

```
1   there for a minute.  I'm going to make an argument to the
2   Court.  You're going to hear me talk.  The circuit
3   attorney might talk.  You're going to hear the Judge.
4   Argument, Judge?
5          THE COURT:  Please.
6          MR. MUHLENKAMP:  Your Honor, this is a strange
7   case.  I'm looking at the probable cause statement.  It's
8   hard right now to make a completely understandable
9   argument, because I don't have discovery.  Obviously it's
10  a new case.  Based upon the probable cause statement, it
11  appears that the officers are alerted to a security
12  vehicle from Barnes driving strangely.  I'm assuming that
13  my client was driving the vehicle or inside the vehicle.
14  I don't want to get in too many facts of the case.  At
15  some point it appears that, I'm assuming from this, that
16  there wasn't an accident or anything.  He pulled over.  It
17  seems that as the officers approached, my client
18  surrendered the firearm.  He also gave them a bag that had
19  the ammunition in it which is strange.  That shows us the
20  gun wasn't loaded.  I'm not asking the Court to make a
21  credibility determination.  There was some type of strange
22  circumstance going on here.  My point is he didn't just
23  have a loaded gun in his belt.  He seems to have
24  surrendered to the police.  It seems to not have been
25  loaded.  It doesn't get violent.  They're able to deal
```
10

```
1   with the situation and do their job.  I do know the Court
2   is going to be concerned about his criminal history,
3   because he is on probation for a serious crime.  I ran him
4   on Casenet on the docket.  It appears on that case he got
5   continued on probation as recently as January 29, 2019.
6   I'm sorry.  He was revoked and it became an SES.  The
7   Judge gave him 12 years suspended.  He's not currently on
8   warrant on that case.  He saw his PO about four days ago.
9   I want to stress all those things to the Court.  30,000
10  cash only.  He's never going to be able to post that.
11  Given the circumstances of the possession of the firearm
12  here, and there are some mitigating circumstances, I would
13  ask the Court to consider recog.  If you're not going to
14  do that, I guess something along the lines of 10 percent.
15  If the public defender gets involved in this case, they
16  might be able to use the bond project to help him post the
17  bond.  That's my request, Judge.
18         THE COURT:  Thank you.
19         MR. FISCHBACH:  Your Honor, may I clarify.  I
20  believe the defense attorney -- the state is not claiming
21  the defendant was in the Barnes-Jewish security vehicle.
22  The officer observed the security vehicle traveling in
23  such a way as to indicate that there was an incident
24  occurring and followed it.  With the security vehicle
25  parked, the police officer got out and made contact with
```
11

```
1   the Barnes-Jewish security officer at which time they
2   discovered an altercation between the defendant and a
3   young woman.
4          MR. MUHLENKAMP:  That's a little bit of
5   information.
6          THE COURT:  I wonder if Judge Collins is going
7   to revoke you.  It doesn't look like you've had a very
8   good experience with him.  What was the other place Red
9   Lion and where?
10         MR. MUHLENKAMP:  Red Lion and Galleria, the
11  mall.
12         THE COURT:  The Court has considered whether any
13  additional conditions of release are required pursuant to
14  Rule 33.  Based on the available information, the Court
15  has taken into consideration the nature and circumstances
16  of the offense charged, the weight of the evidence against
17  the defendant, his family ties, employment, financial
18  resources, his length of residence in the community, his
19  troubling record of convictions specifically being on
20  probation for robbery first degree two counts.  The Court
21  reduces the bond -- pardon me.  The Court restructures the
22  bond to $30,000 10 percent cash only.  You've heard me
23  restructure your bond to $30,000 10 percent cash only.
24  Your next court date is February 7.  Like I explained to
25  you before, you need to return with an attorney.  Do you
```
12

1  understand me?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  If you successfully bond out, your

4  next court date will be March 4 in Division 25.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                      13

1                    CERTIFICATE

2         I, Dawn L. McTeer, Certified Court Reporter,

3  do hereby certify that I am an official court reporter for

4  the Circuit Court of the City of St. Louis; that on January

5  31, 2020, I was present and reported all the proceedings had

6  in the case of STATE OF MISSOURI, Plaintiff, vs. ANTOINE

7  LARON JONES, Defendant, Cause No. 2022-CR00339.

8         I further certify that the foregoing pages

9  contain a true and accurate reproduction of the

10  proceedings.

11

12

13

14

15              /s/Dawn L. McTeer

16         _____

17         Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                        CCR #429

18

19

20

21

22

23

24

25

                                                      14

Dixon v. City of St. Louis, 04237

# EXHIBIT 200

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,              )
                                )
          Plaintiff,            )
                                )
     vs.                        )  Cause No. 2022-CR00354
                                )
BARON H. SIMMONS                )
                                )
          Defendant.            )

BOND REVIEW HEARING

          On the 31st day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Tony Muhlenkamp, Attorney at Law.

          Mr. Don Kirby, Bond Commissioner


          DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
               OFFICIAL COURT REPORTER
             CITY OF ST. LOUIS CIRCUIT COURT
               TWENTY-SECOND JUDICIAL CIRCUIT

---

                    JANUARY 31, 2020

          THE COURT: We're on the record which should
reflect this is 2022-CR354, State of Missouri versus
Barron Simmons. The defendant appears in open court via
video link with the benefit of legal assistance, Tony
Muhlenkamp, Esquire. Mr. Muhlenkamp is waving at the
defendant who appears via video link.

          Did you hear me say that, Mr. Simmons? Do you
see your attorney at this time?

          THE DEFENDANT: Yes, sir.

          THE COURT: Thank you. I appreciate your
efforts to speak out loud. I appreciate that. You're
doing fine. You're doing fine. I realize it's an effort.
The deputy was nice enough to explain to me you're
hampered by the tracheotomy. I understand that. I was
trying to acknowledge your efforts.

          The State of Missouri is represented by
Assistant Circuit Attorney Nicholas Fischbach. Just so
we're clear, Mr. Simmons, Mr. Muhlenkamp, who is in court
and who will advocate on your behalf regarding the bond
reduction, he only represents you for the limited purposes
of today's proceeding only. Do you understand?

          THE DEFENDANT: Yes, sir.

          THE COURT: If it's okay with you, I'll say for
the record that you're nodding your head indicating you

---

understand. Is that okay with you? That way you don't
have to keep adjusting your finger to your neck. Would
that make things more comfortable for you? Thank you very
much for responding. Let the record reflect that the
defendant is nodding his head in agreement.

          Mr. Muhlenkamp represents you for today's
proceeding only. I said that correct? The defendant is
nodding his head in agreement.

          I say that to you, because it's your obligation
to find an attorney and come back with an attorney at all
future court appearances. Do you understand? The
defendant is nodding his head in agreement.

          If you wish to pursue the services of the public
defender's office, you are invited to do so. However, to
do that, Mr. Simmons, you have to fill out an application
and follow up with them. Do you understand? Let the
record reflect he's nodding his head in agreement.

          You also have to follow up with them and inquire
about the status of your application, because they will
not necessarily agree to represent you. Do you understand
that? Let the record reflect he's nodding his head in
agreement.

          If you wish to retain the services of a private
attorney, you're invited to do that as well. Do you
understand? Thank you for nodding your head in agreement.

Dixon v. City of St. Louis, 04241

1          Okay.  Mr. Muhlenkamp is going to be now
2   representing you in a review of the conditions of your
3   bond.  Please resist saying anything without any direction
4   or guidance from him to the contrary.  Okay.  I say that
5   to you, because you're in an open environment in an open
6   forum.  You're being recorded, and anything you say can be
7   held against you.
8          Mr. Muhlenkamp, in light of that, is there an
9   announcement on behalf of Mr. Simmons?
10         MR. MUHLENKAMP:  On Mr. Simmons' behalf, I'll
11  waive formal reading and enter a plea of not guilty today.
12         THE COURT:  Thank you.  Mr. Simmons, for the
13  record, as Mr. Muhlenkamp indicated, you're charged with
14  three counts of violating an order of protection, a Class
15  A misdemeanor.  Is that two counts?
16         MR. FISCHBACH:  We show three counts, Your
17  Honor.
18         THE COURT:  Your bond is set at $3,000 cash.
19  You may proceed, Mr. Fischbach.
20         MR. FISCHBACH:  Thank you, Your Honor, first,
21  the state requests the Court take judicial notice of the
22  court file.
23         THE COURT:  So noted.
24         MR. FISCHBACH:  Thank you, Your Honor.  In this
25  case the victim and the defendant had previously been in a

5

1   romantic relationship which had recently ended.  On
2   January 2nd the victim was granted an ex parte order of
3   protection against the defendant that prohibited his
4   communication with the victim.  The defendant was served
5   with the ex parte order on January 3rd of this year.  On
6   January 15th, 2020, the victim was granted a full order of
7   protection against this defendant.  The defendant was
8   served with that full order of protection on that same
9   date.  Since the first order of protection, the defendant
10  has contacted the victim multiple times, including three
11  recorded incidents on January 14, 2020, January 20, 2020,
12  and January 24, 2020.
13         Your Honor, turning to the defendant's criminal
14  history.  The state shows a conviction in 2008 for
15  kidnapping in the first degree, assault in the first
16  degree, robbery in the first degree, and property damage
17  misdemeanor for which the defendant received 12 years of
18  confinement.
19         I will turn to the bond commissioner in case I
20  missed any convictions.
21         MR. KIRBY:  That's the only felony we show.
22  Actually take that back.  He did have a 1994 burglary
23  second and a stealing misdemeanor.  He also has a
24  misdemeanor from 2004 out of the State of California for
25  battery.  A 2006 misdemeanor out of California for drug

6

1   paraphernalia.  And it's not shown here.  He does have an
2   active wanted for the State of California on a drug case
3   and robbery case.  They won't extradite him outside of
4   California.  It does pop up in the REJIS.
5          MR. FISCHBACH:  Your Honor, we also have a
6   victim impact statement.
7          THE COURT:  You may proceed, Mr. Muhlenkamp.
8          MR. MUHLENKAMP:  Thank you, Judge.  Your Honor,
9   could we move Mr. Simmons for a moment?  Is that possible?
10  So I could side-bar with the Court.
11         (The following discussion held out of the hearing
12  of the defendant.)
13         THE COURT:  It says microphones are muted.  Can
14  you hear me, Jacob?  Go ahead.
15         MR. MUHLENKAMP:  Your Honor, based upon the
16  circumstances, we're dealing with --
17         THE COURT:  Do you want to go off the record?
18         MR. MUHLENKAMP:  We don't have to go off the
19  record.  Is it safe to assume if the Court --
20         THE COURT:  I'm not going to lower it.
21         MR. MUHLENKAMP:  I was going to discuss with my
22  client, especially with his physical issue, he needs to
23  have an in person discussion with the PD over at the jail.
24  I'd like to inquire with him about agreeing to waive it
25  for a week and just get him a public defender.

7

1          THE COURT:  If you want to try and do that,
2   that's fine.  I don't want to surprise you.  I don't have
3   any problems telling you that.  I wouldn't restructure.  I
4   wouldn't lower it.  I won't find him a danger to the
5   community.  Although, it's tempting considering his
6   criminal history.  He's clearly violent.  I agree with you
7   to that.  I agree with you.  If you want to get him to waive
8   it.
9          (The following discussion held in the hearing of
10  the defendant.)
11         THE COURT:  Mr. Simmons, we're back.  Can you
12  hear us?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  Let the record reflect he answered
15  out loud.
16         MR. MUHLENKAMP:  Good afternoon, Mr. Simmons.
17  Can you hear me okay?  If you want to shake your head,
18  that's fine.
19         THE DEFENDANT:  Yes, sir.
20         MR. MUHLENKAMP:  You're shaking your head up and
21  down.  I know it's hard for you to talk.  If I'm asking
22  you a yes or no question, you can shake your head.  We can
23  all see you.  I see you shaking up and down.  Mr. Simmons,
24  here's my concern.  Your bond right now is set at $3,000
25  cash only.  Shake your head yes or no.  Are you able to

8

1    post that bond at all?

2            THE DEFENDANT:  I can post a percentage.

3            MR. MUHLENKAMP:  You don't have any money to

4    hire a private attorney, do you?

5            THE DEFENDANT:  (Nods head).

6            MR. MUHLENKAMP:  You do currently have a job?

7            THE DEFENDANT:  (Nods head).

8            MR. MUHLENKAMP:  Here's my concern, Mr. Simmons.

9    As your attorney, I have some realistic concerns that, if

10   we go forward with a hearing today, your bond might

11   actually get raised.  It might not go any lower.  I'm not

12   basing that on anything personal, just the facts of the

13   case knowing your criminal history.  It is what it is, and

14   knowing the current venue we're in today.  Given your

15   physical condition, I think what makes sense and giving

16   you the best chance of getting a bond I'm going to

17   recommend you waive your hearing for today, apply for a

18   public defender so an attorney can actually come over here

19   and specifically talk to you at the jail, come back in

20   a week with more information and make a more persuasive

21   argument.  You don't have to do this.  If you want to go

22   forward today, we will.  I want you to know that.  Knowing

23   all that, are you okay with waiving your hearing today and

24   coming back in a week, or do you want me to proceed with

25   the hearing?

9

1            THE DEFENDANT:  Proceed.

2            MR. MUHLENKAMP:  I don't want to make you waive

3    your hearing.  That being the case, I'm going to ask you

4    some questions.  Then I'll make additional argument to the

5    Court and try to get your bond reduced.  When you talk out

6    loud, do as best you can.  What I'm going to do is repeat

7    what you said so the court reporter can hear it.

8            THE DEFENDANT:  Yes, sir.

9            MR. MUHLENKAMP:  Mr. Simmons, if you were to

10   make bond in this case and be released, where would you

11   live?

12           THE DEFENDANT:  I'm going to live at 464 Park

13   Avenue, St. Louis, Missouri.

14           THE COURT:  Can you ask him yes or no questions?

15           MR. MUHLENKAMP:  He wasn't interviewed.  I'll do

16   my best.  Mr. Simmons, tell me if I have this right.  If

17   you were released on bond, you would live at 464 Parker?

18           THE DEFENDANT:  Avenue.  Parker Avenue.

19           MR. MUHLENKAMP:  Parker Avenue in St. Louis with

20   your mom?

21           THE DEFENDANT:  Yes, sir.

22           MR. MUHLENKAMP:  Answer this for me yes or no.

23   If the Judge ordered, as a condition of your bond, to stay

24   away from the alleged victim in this case, her initials

25   are J.H., I'm assuming -- shake you're head yes or no --

10

1    you would agree with that?

2            THE DEFENDANT:  (Nods head).

3            MR. MUHLENKAMP:  You would stay away from her

4    address which is referenced in the court file?

5            THE DEFENDANT:  Yes.

6            MR. MUHLENKAMP:  You are telling me you have a

7    job.  Tell me where you work.

8            THE DEFENDANT:  I work for Service Metal.

9            MR. MUHLENKAMP:  What's the back of it?

10           THE DEFENDANT:  Metal.

11           MR. MUHLENKAMP:  Service Metal?

12           THE DEFENDANT:  Yes, sir.

13           MR. MUHLENKAMP:  How long have you worked at

14   Service Metal for?

15           THE DEFENDANT:  Three weeks.  It's a full-time

16   job.

17           MR. MUHLENKAMP:  You told me that you get paid

18   weekly.  You've worked there about three weeks.  It's a

19   full-time job?

20           THE DEFENDANT:  Yes, sir.

21           MR. MUHLENKAMP:  You work at Service Metal,

22   correct?

23           THE DEFENDANT:  Yes, sir.

24           MR. MUHLENKAMP:  If the Judge made a condition

25   of your bond to go to work and wear a GPS monitor so he

11

1    knew you aren't close to this woman, that's something you

2    would do too, correct?

3            THE DEFENDANT:  Yes, sir.

4            MR. MUHLENKAMP:  Mr. Simmons, you've given me a

5    lot of good information.  I'm going to make an argument on

6    your behalf.  The Judge is going to give us a decision.

7    Regardless of what happens, you're going to need an

8    attorney moving forward after today whether he reduces the

9    bond, lowers it, or whatever.  I'm going to encourage you

10   you should apply for the public defender regardless of

11   what the Judge does today, because they're going to help

12   you move forward.  If you want to hire a private attorney

13   later, you can always do that later.  Thank you,

14   Mr. Simmons.  You're nodding up and down.

15           Argument when you're ready.

16           THE COURT:  You may proceed.

17           MR. MUHLENKAMP:  Your Honor, I want to remind

18   the Court these are misdemeanor offenses.  They're not

19   felonies.  I think we can deal with the main concerns.

20   This is a domestic issue.  Traditionally he would have to

21   stay away from this young lady.  I think electronic

22   monitoring could help monitor that.  You could also have

23   him monitored through a probation agency.  He would reside

24   with his mother at the Parker Address and stay away from

25   the alleged victim J.H.  I'm asking the Court to consider

12

Dixon v. City of St. Louis, 04243

1  recognizance bond with those conditions in place.  If the
2  Court is not inclined to do that, I would ask the Court to
3  keep the bond where it's at, not raise it.
4        THE COURT:  With all due respect, Mr.
5  Muhlenkamp, your client's criminal history is highly
6  troubling.  I won't find him a danger to the community at
7  this time.  But for those reasons your request for a
8  restructuring of the bond is denied.  The Court has
9  considered whether any of the following additional
10 conditions of release are required pursuant to Rule 33.
11 The Court has taken judicial notice of its court file, the
12 allegations, the impact statement provided in writing by
13 the complaining witness, as well as all available
14 information available to the Court, as well as the nature
15 and circumstances of the offense charged, the weight of
16 the evidence against the defendant, family ties,
17 employment, financial resources, as well as his health
18 conditions and health limitations.  However, as I stated,
19 the prior history for your defendant is highly concerning.
20 For those reasons any revision in the bond is denied at
21 this time.
22        Mr. Simmons, thanks for being patient with this.
23 Your next court date is one week from today, February 7.
24 As I explained to you, it will be your obligation to come
25 with an attorney at that time.  Following that your next

13

1  court date is March 4 in Division 26.  Thank you.

14

1              CERTIFICATE
2        I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on January
5  31, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. BARON H.
7  SIMMONS, Defendant, Cause No. 2022-CR00354.
8        I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10 proceedings.

15      /s/Dawn L. McTeer
16 _____
17 Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                  CCR #429

15

Dixon v. City of St. Louis, 04244

# EXHIBIT 201

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,       )
              Plaintiff, )
     vs.                 )   Cause No. 2022-CR00252
              Defendant. )

BOND REVIEW HEARING

On the 29th day of January, 2020, the above-entitled cause came on regularly for hearing before the Honorable Thomas C. Clark II, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was present by video link and was represented by Robert Taaffe, Attorney at Law.

Mr. Don Kirby, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 29, 2020

THE COURT: We're on the record which should reflect this is 2022-CR252, State of Missouri versus ████. Mr. ████ faces a two-count indictment, kidnapping first degree a Class A felony, and assault third degree a Class E felony. The defendant appears -- the defendant appears in court via video link, and with the benefit of legal assistance Robert Taaffe, Esquire. State of Missouri appears by and through Assistant Circuit Attorney Nicholas Fischbach.

Mr. ████, you heard me identify your attorney on the record I assume?

THE DEFENDANT: Yes, sir.

THE COURT: Hopefully, you can see him in the courtroom. I point those out to you, because I strongly encourage you to follow any direction he provides regarding any statements that you may be inclined to make. In other words, please listen to him closely. You are in a public forum. You are being recorded, and anything you say can and will be held against you. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you. Mr. Fischbach, you may proceed.

MR. FISCHBACH: Thank you, Your Honor. First, the state requests the Court take judicial notice of the

---

court file.

THE COURT: So noted.

MR. FISCHBACH: Thank you, Your Honor. On January 19th, 2020, the victim reported to central patrol where she informed officers once she was permitted to speak with them privately she was being held against her will by the defendant. She told the officers that at 5:30 on that day, 5:30 A.M. she was woken up by the defendant punching her in the face. He threw her on the ground. Dragged her by the hair to the police station and directed her to report someone stole his money. While on that drive, he continued to hit her. The officers observed injuries to the victim's neck and face and did memorialize those in photos. Turning to the defendant's criminal history, the state does not show any prior convictions. I will turn to the bond commissioner.

MR. KIRBY: That's correct. No priors, Judge.

THE COURT: Thank you.

MR. FISCHBACH: Your Honor, the victim -- attempts were made to contact the victim. The state does not have any victim impact statement from the victim at this time. However, the state would request, based on the nature of the allegations and the fact that the defendant was found at the police station when the victim identified him, he represents a clear danger to society, and that any

---

bond including a stay away order from the victim.

THE COURT: I'm showing the bond is at 50,000 10 percent.

MR. TAAFFE: That's correct.

THE COURT: You may proceed.

MR. TAAFFE: Judge, Mr. ████ is 46 years old. As the prosecution has indicated, he has no prior criminal history. I would like the Court to -- the complaint indicates he's five-11 and weighs 250 pounds. Your Honor, if he was released, he would be living at ████████. That's a house he owns. He works, is gainfully employed at ████████ as a ████████ since 2013. He's been working there off and on for 11 years. He graduated high school Parkway West. No criminal history. Your Honor, I think what's being left out of the probable cause affidavit, the alleged kidnapping charge, Mr. ████ is the one that brought S.T. to the police station. It's not like S.T. showed up at the police station on her own. He brought her to the police station, because his complaint was that he spent the night at S.T.'s house with another individual and they robbed him. He brought her down to the police station, because he wanted her to make a statement against her roommate who he believed had stolen money from him, approximately $400. So I want the Court to think about this for a minute.

**Page 5**

1  He's accused of kidnapping the victim by grabbing her and
2  bringing her to the police.  So what happened was he
3  brings her in so he can make his complaint that his money
4  was stolen.  Then she's there with him at the window.  The
5  cops observe, I guess, injury to her.  They bring her back
6  in private.  They elicit this statement.  Doesn't surprise
7  me, Your Honor, that S.T. -- I don't know her name.  It
8  doesn't surprise me she didn't give a victim impact
9  statement.  It's my understanding from my examination of
10  Mr. ███ cell phone that she is a lady of the evening.  I
11  believe that she may or may not be a prostitute.  Given
12  all of those facts, there's no weapon involved here.
13  Again, it's a kidnapping where the kidnapper takes the
14  victim to the police.  I would request that the Court
15  consider 10, 15,000 10 percent secured with conditions
16  whatever the Court deems reasonable.
17       THE COURT:  What's his relationship with the
18  complaining witness?
19       MR. FISCHBACH:  Your Honor, I do not have any
20  information about their relationship.
21       MR. TAAFFE:  Friends with benefits.
22       THE COURT:  He can make 20,000 10 percent?
23       MR. TAAFFE:  Secure.
24       THE COURT:  He can make that?
25       MR. TAAFFE:  I believe so.

**Page 6**

1       THE COURT:  Do you want to ask him?
2       MR. TAAFFE:  Can you make 20,000 10 percent
3  secured?  Mr. ███, what kind of cash can you post?
4       THE DEFENDANT:  Right now currently I have a
5  thousand dollars in my account.  It's in my personal
6  property.  I'm not able to get ahold of the bondsman,
7  because I don't know his number.
8       THE COURT:  Having taken into consideration the
9  following additional conditions of release as required
10  under Rule 33, as well as the additional allegations
11  offered by the State of Missouri, the defendant's lack of
12  a criminal history, his long-standing employment in the
13  community, his ties to the community, graduating from an
14  area high school, the Court reduces the bond to 15,000 or
15  10 percent cash only.  Your next court date, if you are
16  unable to bond out under the new conditions of bond, will
17  be one week from today, February 5.  If you successfully
18  bond out, your next court date is March 2 in Division 26.
19  An additional condition is you are to stay away from the
20  complaining witness, stay away from -- was that the ███
21  ███?
22       MR. TAAFFE:  ███.
23       THE COURT:  ███ and report to
24  EMASS as directed.  Those three conditions.  Do you
25  understand?

**Page 7**

1       THE DEFENDANT:  Yes, sir.
2       THE COURT:  Let the record reflect that the
3  defendant indicated he understood the conditions of his
4  bond.

**Page 8**

1                      CERTIFICATE
2       I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on January
5  29, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. ███
7  ███, Defendant, Cause No. 2022-CR00252.
8       I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10  proceedings.
15            /s/Dawn L. McTeer
16       ─────────────────────────────
17       Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                        CCR #429

Dixon v. City of St. Louis, 04263

# EXHIBIT 202

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
        Plaintiff,          )
                            )
    vs.                     )   Cause No. 2022-CR00270
                            )
JOSEPH RAMONE GRANT, JR.    )
                            )
        Defendant.          )

BOND REVIEW HEARING

On the 29th day of January, 2020, the above-entitled cause came on regularly for hearing before the Honorable Thomas C. Clark II, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was present by video link and was represented by Patrick Conroy, Attorney at Law.

Mr. Don Kirby, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 29, 2020

THE COURT: We're on the record which should reflect this is 2022-CR270, State of Missouri versus Joseph Grant. Mr. Grant appears in court via video link with the benefit of legal assistance, Patrick Conroy, Esquire. Let the record reflect that the State of Missouri is represented by Assistant Circuit Attorney Nicholas Fischbach.

Mr. Grant, did you hear me identify your attorney for the record?

THE DEFENDANT: Yes, sir.

THE COURT: He's in the courtroom as he communicated with you off the record. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you. One of the reasons I mention to you is because I strongly encourage you to follow any directives or instructions he has for you about commenting. I say that to you, because you're in an open forum. You're being recorded, and anything you say can and will be held against you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you. Mr. Grant faces a multiple count indictment, including possession, resisting arrest, assault third degree. His bond is presently set

---

at 30,000 cash or secured. Mr. Fischbach, you may proceed.

MR. FISCHBACH: Thank you, Your Honor. First, the state requests the Court take judicial notice of the court file.

THE COURT: Granted and so ordered.

MR. FISCHBACH: Thank you, Your Honor. Your Honor, while on routine patrol, two officers saw a car being driven by the defendant violate a stop sign and then an electric signal, and then pull into a convenience express station parking plot. They pulled up and activated their emergency equipment. At that time they instructed the driver to exit. The defendant accelerated and struck the convenience express building. The defendant was pulled out of the vehicle, and the officers attempted to place him under arrest. He began physically resisting which required both officers assist in the arrest. He was tased and he managed to twist his body such that he injured one of the officer's knee during the struggle. The officer was off duty for a number of days. The defendant was taken to the hospital where he continued to resist. In the process of a, gum container fell from his pocket. The contents were later analyzed and found to be cocaine base and a combination of heroin and Fentanyl.

Your Honor, turning to the defendant's criminal

---

history, the state shows that he was in 1992 found guilty of a robbery first for which he received three years probation. That was later revoked and a robbery first, and an ACA, and a tampering first for which he received seven years with a suspended sentence of three years of probation. A 2000 unlawful use of a weapon. A 2001 violence to employee of DOC or inmate to inmate. And, Your Honor, we show he has a pending assault fourth for which he is on summons, and, according to our records, he has not missed a court date, Your Honor. I will turn to the bond commissioner in case I missed anything.

MR. CONROY: Judge, one thing. Mr. Grant received a 25-year sentence approximately 20 years ago from Judge Edwards on some robberies, and had been confined a better part of the last two decades. With that, Mr. Kirby.

MR. KIRBY: We show it was from that 1992 case he had two counts robbery first, two counts ACA. The sentence was three years. He is currently on parole for that right now.

THE COURT: Are you just showing one robbery, the one robbery case with two counts?

MR. KIRBY: I show on that same case he had two counts robbery first. He got three years probation. Revoked 10 years MDC. Two more counts robbery first, two

1 counts of ACA 30 years.
2        THE COURT:  Those are separate cause numbers?
3        MR. KIRBY:  It was the same cause number
4 according to REJIS.
5        THE COURT:  How was he awarded probation and
6 sentenced to jail in the same cause number?
7        MR. KIRBY:  That's a good question.
8        MR. CONROY:  I don't think that's correct.  I
9 reviewed the minutes of the case.  I apologize.  I thought
10 it was 25.  Not 30 years.  It looks like Mr. Grant 20
11 years ago entered a blind plea in front of Judge Edwards,
12 and was sentenced to the previously mentioned three years.
13 What I can tell the Court about Mr. Grant is the
14 following.  He has an alcohol problem.  This is an alcohol
15 related offense.  He — I think this happened New Year's
16 Eve or New Year's morning.
17        THE COURT:  1-1.
18        MR. CONROY:  He was with another individual.
19 They went out for New Year's Eve.  Mr. Grant has almost no
20 recollection of the event.  Were the Court to grant a
21 reduction in bond, it would be the defense recommendation
22 that, A, he not consume any alcohol.  He's coming to my
23 office.  He turned himself in yesterday to his PO upon my
24 request for his scheduled appointment.  He knew that he
25 would be taken into custody on this.  I have counseled his

5

1 family he needs to immediately commence Narcotics
2 Anonymous preferably or Alcohols Anonymous in the
3 alternative.  Show proof at least three to four meetings a
4 week.  That's pretty much everything I've got on Mr. Grant
5 right now.  I feel, as long as Mr. Grant is sober, I think
6 he understands the very unfortunate gravity of the
7 situation he's put himself in.  I'm also confident if he
8 is so —
9        THE COURT:  Who does he live with?
10        MR. CONROY:  Mr. Grant, who are you living with
11 right now, with your girlfriend?
12        THE DEFENDANT:  Yes, sir.
13        MR. CONROY:  What address do you live at right
14 now?
15        THE DEFENDANT:  I'm staying at 1209 Long Bridge.
16 That's my current address.  1209 Long Bridge.
17        MR. CONROY:  What's the zip code?
18        THE DEFENDANT:  63137.
19        MR. CONROY:  Is that the girlfriend's address or
20 your mother's?
21        THE DEFENDANT:  No, sir.  This is my aunt.
22 That's who I was paroled to.
23        MR. CONROY:  What's your aunt name?
24        THE DEFENDANT:  Regina Muex, M-U-E-X.
25        MR. CONROY:  I've also told Mr. Grant any

6

1 condition of bond is going to involve GPS.  I defer to the
2 Court as to what the Court would think is appropriate
3 bond.  We would ask respectfully for 10,000 10 percent.
4        THE COURT:  The Court has considered whether any
5 of the following conditions of release are required
6 pursuant to Rule 33.  Based on the Court file, including
7 the probable cause statement, and the Court has taken into
8 consideration the nature and circumstances of the offense
9 charged, the weight of the evidence against the defendant,
10 his family ties, employment, and financial resources,
11 including his ability to pay, and the length of his
12 residence in the community, the Court lowers the bond to
13 15,000 10 percent cash only.  As a condition of his bond,
14 he shall report to EMASS at a minimum of a weekly basis.
15 That will conclude the record.  Pardon me.  That will
16 conclude the conditions of the bond.  If you do not bond
17 out, your next court date is one week from today,
18 February 5.  If you successfully bond out, your next court
19 date is March 2 in Division 26.  If you do bond out, I
20 expect you to report to EMASS.  Do you understand me?
21        THE DEFENDANT:  Yes, sir.
22        THE COURT:  You better not pick up any more laws
23 violations.  Am I clear with you?
24        THE DEFENDANT:  Very clear.
25        THE COURT:  We're off the record.

7

1        MR. CONROY:  The other thing is he had a court
2 date on a misdemeanor on 2-4 in Division 25.  I ask Madam
3 Clerk if we could consolidate both of those dates.
4        THE COURT:  That's fine.  Make sure it's
5 reflected in the judgment.  In light of the fact there's
6 an indictment, do you have an announcement?
7        MR. CONROY:  Standing before the Court is
8 defendant Joseph Grant.  He waives formal reading of the
9 indictment against him and enters a formal plea of not
10 guilty pursuant to the Court's next court date.
11        THE COURT:  Thank you.

8

```
                              CERTIFICATE
 1
 2           I, Dawn L. McTeer, Certified Court Reporter,
 3   do hereby certify that I am an official court reporter for
 4   the Circuit Court of the City of St. Louis; that on January
 5   29, 2020, I was present and reported all the proceedings had
 6   in the case of STATE OF MISSOURI, Plaintiff, vs. JOSEPH
 7   RAMONE GRANT, JR., Defendant, Cause No. 2022-CR00270.
 8           I further certify that the foregoing pages
 9   contain a true and accurate reproduction of the
10   proceedings.
11
12
13
14
15           /s/Dawn L. McTeer
16   _____
17           Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                         CCR #429
18
19
20
21
22
23
24
25
                                                                    9
```

Dixon v. City of St. Louis, 04274

# EXHIBIT 203

1       IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
2        Honorable Calea Stovall-Reid, Judge

3  STATE OF MISSOURI,       )
                         )
4        Plaintiff,    )
                         )
5       vs.           )   Cause No. 2022-CR00382
                         )
6  MICHAEL GREEN,       )
                         )
7        Defendant.    )

8

        BOND HEARING - INITIAL APPEARANCE
9
             February 3, 2020
10

11

12  FOR THE PLAINTIFF:       FOR THE DEFENDANT:

13  Mr. Jonathan Phipps     Mr. Eric Barnhart
    Assistant Circuit Attorney   The Law Office of Eric V.
14  1114 Market Street, #401   Barnhart, L.L.C.
    St. Louis, MO  63101     7751 Carondelet Ave., Ste. 202
15                     Clayton, MO  63105

16

17

18

19

20

21

22

23      KRISTINE A. TOENNIES, RMR, CRR, CCR #769
          OFFICIAL COURT REPORTER
24      CITY OF ST. LOUIS CIRCUIT COURT
       TWENTY-SECOND JUDICIAL CIRCUIT
25

1          THE COURT:   We're going to do Michael Green.

2          SHERIFF:   Present, Your Honor.

3          THE COURT:   All right, Mr. Green.  Let's see

4    what's going on with you.

5          MR. BARNHART:   I just found it, but I don't

6    know if -- that may have been one you gave back.

7          THE COURT:   Yeah, because this is one I set during

8    the week.  I remember this one.  You can go ahead and ask

9    him the questions and whatnot.

10          MR. BARNHART:   Okay.  Hi, Mr. Green.  I'm Eric

11    Barnhart.  I'm your attorney for today only.  I'm trying to

12    get your bond reduced.  I tried to get it reduced to a 5000,

13    10 percent bond, but the judge did not agree with it, so

14    what can you afford to post?  If we moved it up to let's say

15    a 10,000, 10 percent or a 15,000, 10 percent, can you afford

16    that?

17          THE DEFENDANT:   Like if I need to take 10 percent

18    on that, that would be like what?

19          THE COURT:   He's saying if he did 10,000, 10

20    percent, that's $1000.  He's asking can you do that?  Right

21    now it's set at $25,000 cash only.  He's trying to find out

22    how much can you afford to post?

23          THE DEFENDANT:   I can't do that.  The only person

24    I have helping me is my fiancee, so I don't know like what

25    she can do, like a thousand.  She is trying to move in.

1    She's trying to get her another vehicle, so a thousand might

2    be over her ability.

3              THE COURT:    Does he have priors?  Yes, you have

4    priors and whatnot.

5              MR. BARNHART:    Can we do the 15,000, 10 percent is

6    what pretrial recommended?

7              THE COURT:    Absolutely not.  Okay, Mr. Phipps, do

8    you have anything you want to add?

9              MR. PHIPPS:   No, Your Honor.

10             THE COURT:    All right.

11             THE DEFENDANT:    Your Honor, is this for the

12   resisting?

13             THE COURT:    This is for the resisting where they

14   said you were driving a vehicle all crazy and then you

15   parked it and ran into a store.  While you were driving, you

16   almost hit a couple of people and whatnot.  This is from

17   January 31st, so supposedly it happened on Friday.

18             THE DEFENDANT:    I mean, the only thing I can say

19   is --

20             MR. BARNHART:    Well, don't make any statements

21   about what happened; okay?

22             THE COURT:    Yeah, he said don't talk about the

23   case.  But based on the allegations and your prior criminal

24   history, you have a -- I don't care about the child support,

25   but you have felon in possession of a firearm out of federal

1    court.  You have possession of -- I don't know whether it's

2    possession of marijuana or possession of some other drug.

3    That's an old case.  And then you have two counts of

4    distribution.

5         THE DEFENDANT:   The only thing charged with --

6    that's in my past.

7         THE COURT:   Your criminal past counts against you

8    always.  It's going to continue to follow you.  Nobody is

9    saying, oh, that was in his past; we're not going to look at

10   it.  That's not the way it works when you're charged with a

11   crime.  When you're charged with a crime, that's what we

12   look at, what other criminal activity are you accused of

13   being involved in.  So it does continue to follow you, and

14   it does have a negative impact; okay?  Do you understand?

15        The other thing we look at is whether or not you

16   will appear in court, but you know, the problem is you've

17   got these prior felonies, so whether you would appear in

18   court or not, you still are a danger to the community based

19   on what you're accused of being involved in, so I'm going to

20   set a money bond.  I think what I set is reasonable.  Let me

21   look at it again.

22        THE DEFENDANT:   $1000?

23        THE COURT:   $1000?  Are you -- you must be --

24        THE DEFENDANT:   No, I'm asking you is that what

25   you said?

1          THE COURT:    Are you all smoking crack over there?

2     No.  Right now it's 25,000 cash.  I'll allow you to get a

3     bondsman.  I'll do 25,000 secured.  That way if you get a

4     bondsman, you can make payments to him.

5          THE DEFENDANT:    Okay.  This is for the resisting;

6     right?

7          THE COURT:    Right, this is for the resisting.

8          THE DEFENDANT:    Time served or like how much

9     time --

10          THE COURT:    Well, you're not going to be able to

11     get time served or anything like that today because this is

12     just your initial appearance.  You have to be assigned a

13     lawyer.  Then your lawyer is going to get a copy of the

14     police report, and then they'll go over the case with you

15     and you'll decide.  You may want to fight it.  Maybe they

16     had the wrong person.

17          THE DEFENDANT:    I mean, they reported it's

18     possible.

19          THE COURT:    Okay.  All right.  So let's leave it

20     at that.  Don't talk about your case because we have a

21     prosecutor and a court reporter here taking everything down

22     that you say, and it can come back to hurt you.  So we'll

23     modify it to allow --

24          COMMISSIONER KEARBEY:    He does have a parole

25     violation, Your Honor.

1          THE COURT:   And the bond commissioner just told me

2    you have a parole violation too, so you've got that to worry

3    about.

4          THE DEFENDANT:   And that's why I wasn't really

5    worried about this; it's so petty.  I thought I was going to

6    get like a time served.

7          THE COURT:   Well, it's a felony though.  It's a

8    felony resisting.  It's not just a misdemeanor.  That's why

9    you didn't get time -- it's not a city court case where you

10   just appear on video and they say, okay, time served.

11   You're going to have to go through the process on this one.

12         THE DEFENDANT:   Okay.

13         THE COURT:   Okay?  So you can get a bondsman if

14   you choose to, and did you fill out the application to get a

15   lawyer appointed to your case?

16         THE DEFENDANT:   No, ma'am.  I haven't got

17   anything.

18         THE COURT:   Okay.  Well, the sheriffs will make

19   sure you get the application or you can get it at the --

20   where is he going, to the Workhouse?

21         SHERIFF:   I believe so, Your Honor.

22         THE COURT:   Well, see the social worker at the

23   Workhouse.  They'll give you an application so you can get a

24   lawyer.  All right.  Thank you, Mr. Green.

25

Dixon v. City of St. Louis, 04415

1          SHERIFF:    Your Honor, line 8, Ms. Harris.

2          THE COURT:    2/10 and 3/5.

1  **CERTIFICATE**

2      I, Kristine A. Toennies, Registered Merit

3  Reporter, Certified Realtime Reporter, and Certified Court

4  Reporter, do hereby certify that I am an official court

5  reporter for the Circuit Court of the City of St. Louis;

6  that on February 3, 2020, I was present and reported all the

7  proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8  vs. MICHAEL GREEN, Defendant, Cause No. 2022-CR00382.

9      I further certify that the foregoing pages contain

10  a true and accurate transcription of the proceedings.

11

12      /s/ Kristine A. Toennies

13  _____
    Kristine A. Toennies, RMR, CRR, CCR #769

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 204

1        IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                        STATE OF MISSOURI
2               Honorable Calea Stovall-Reid, Judge

3    STATE OF MISSOURI,            )
                                   )
4                    Plaintiff,    )
                                   )
5           vs.                    )      Cause No. 2022-CR00370
                                   )
6    JASON LAKES,                  )
                                   )
7                    Defendant.    )

8
              BOND HEARING - INITIAL APPEARANCE
9
                       February 6, 2020
10

11

12   FOR THE PLAINTIFF:            FOR THE DEFENDANT:

13   Mr. Jonathan Phipps           Mr. Chris Faerber
     Assistant Circuit Attorney    FaerberLaw, LLC
14   1114 Market Street, #401      1015 Locust Street, Suite 914
     St. Louis, MO  63101          St. Louis, MO  63101
15

16

17

18

19

20

21

22

23         KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                   OFFICIAL COURT REPORTER
24           CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT
25

1          THE COURT:   All right, Phipps, you may proceed

2     with respect to Lakes.

3          MR. PHIPPS:   Your Honor, the defendant stands

4     charged with nonsupport in excess of 12 months.  His bond

5     currently sits at $5000, 10 percent cash allowed.

6          THE COURT:   Okay, who is Lakes?  All right.  Who

7     are you living with?

8          THE DEFENDANT:   My girlfriend, Lisa Willis.

9          THE COURT:   Okay.  So when is the last time you

10    made a payment?

11         THE DEFENDANT:   Maybe 12 months ago.

12         THE COURT:   Are you working full time?

13         THE DEFENDANT:   Now, yes.

14         THE COURT:   Well, how much are your monthly

15    payments?

16         THE DEFENDANT:   203 plus I think it's an extra 50

17    or 60.

18         THE COURT:   All right.  The bond is set at $406.

19    Next court date is February 14th for the seven-day hearing,

20    March 10 for the 30-day hearing.  So he needs 406 to be

21    released.

22         MR. FAERBER:   Do you guys have that?  Okay.  Your

23    Honor, just for the record I would have argued for a

24    personal recognizance as he is working.

25         THE COURT:   Well, he's working.  He's 12 months

1   behind, so I don't know what the issue is.  Yes, ma'am?

2              SPEAKER:   He made a $1,500 payment when he got

3   himself -- not too long ago.

4              THE COURT:   Well, according to the indictment that

5   was filed, they haven't received a payment in 12 months, so

6   if that's true, then he needs to get his paperwork together

7   and show it to the social worker.

8              MR. FAERBER:   My worry is even though he is

9   working and can potentially afford the bond, any delay of

10  him coming on for his shift as a dishwasher -- he works at

11  Frazer's, which is actually in my neighborhood, that that

12  could lead to termination of employment.  I know that a dish

13  machine operator -- or DMO as we call them in the

14  industry -- is kind of low on the totem pole and can be

15  easily swapped out with somebody else.

16             THE COURT:   Well, they say they have the money, so

17  I guess they'll be making the payment.  And that will be --

18  the Court will write an order that the payment go to child

19  support, so you won't be able to get that money back.

20             MR. FAERBER:   You said it was 406?

21             THE COURT:   406.

22

23

24

25

4

**CERTIFICATE**

1
2      I, Kristine A. Toennies, Registered Merit
3  Reporter, Certified Realtime Reporter, and Certified Court
4  Reporter, do hereby certify that I am an official court
5  reporter for the Circuit Court of the City of St. Louis;
6  that on February 6, 2020, I was present and reported all the
7  proceedings had in the case of STATE OF MISSOURI, Plaintiff,
8  vs. JASON LAKES, Defendant, Cause No. 2022-CR00370.
9      I further certify that the foregoing pages contain
10  a true and accurate transcription of the proceedings.
11
12
13          /s/ Kristine A. Toennies
14          _____
            Kristine A. Toennies, RMR, CRR, CCR #769
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 205

1   IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
    STATE OF MISSOURI
2   Honorable Michael K. Mullen, Judge

3   STATE OF MISSOURI,                )
                                       )
4                  Plaintiff,          )
                                       )
5          vs.                         )       Cause No. 2022-CR00448
                                       )
6   ████████████████,                  )
                                       )
7                  Defendant.          )

8               BOND HEARING - INITIAL APPEARANCE

9                      February 7, 2020

10

11
    FOR THE PLAINTIFF:              FOR THE DEFENDANT:
12
    Mr. Jonathan Phipps             Mr. Anthony Muhlenkamp
13  Assistant Circuit Attorney      Muhlenkamp & Bernsen
    1114 Market Street, #401        8008 Carondelet Ave., Ste. 311
14  St. Louis, MO  63101            St. Louis, MO  63105

15

16

17

18

19

20

21

22

23         KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                  OFFICIAL COURT REPORTER
24            CITY OF ST. LOUIS CIRCUIT COURT
              TWENTY-SECOND JUDICIAL CIRCUIT
25

1        THE COURT:   Are you Mr. ██████?

2        THE DEFENDANT:   Yes, sir.

3        THE COURT:   Mr. █████, we're here today to take up

4   your bond.  You've been charged with harassment in the

5   second degree, so a class A misdemeanor.  You have a right

6   to get a lawyer on this case.  I want to go over your bond

7   this afternoon.  That's what we're here to talk about is

8   just your bond.  Mr. Muhlenkamp is here in the court as an

9   attorney to represent you for the purposes of the bond

10  hearing initial appearance only, so he's sitting out here,

11  and I'm going to let him take it from here; okay?

12       MR. MUHLENKAMP:   Good afternoon, Mr. █████.  Can

13  you hear me okay?

14       THE DEFENDANT:   Yes, sir.

15       MR. MUHLENKAMP:   As the Court indicated, the Court

16  is going to appoint me to represent you for today's purposes

17  only; okay?  Today we're just here for a bond hearing, so

18  the judge wants to know some facts about your background so

19  he can make an informed decision about your bond.  Does that

20  make sense?

21       THE DEFENDANT:   Yes, sir.

22       MR. MUHLENKAMP:   Okay.  I don't want you to talk

23  about the facts of your case.  Please don't volunteer the

24  facts of your case; okay?  Okay?

25       THE DEFENDANT:   Okay, sir.

1          MR. MUHLENKAMP:   All right.  I'm going to ask you

2     some questions.  I would just ask that you tell me the truth

3     and keep your voice up; okay?

4          THE DEFENDANT:   All right.

5          MR. MUHLENKAMP:   Thank you, sir.  Hold on one

6     second.  Did you have a chance to talk to folks from the

7     pretrial office recently about your background?

8          THE DEFENDANT:   Yeah.

9          MR. MUHLENKAMP:   Okay.  Bear with me for a second,

10    Mr. ████.  Your current bond is currently set at $2,500 cash

11    only.  Were you aware of that?

12         THE DEFENDANT:   Yes, sir.

13         MR. MUHLENKAMP:   Are you able to post that bond?

14         THE DEFENDANT:   No, not -- I was trying to see if

15    I could get a reduction.

16         MR. MUHLENKAMP:   Okay.  It would be a hardship for

17    you to come up with $2,500; right?

18         THE DEFENDANT:   Say it again.

19         MR. MUHLENKAMP:   It would be a hardship for you to

20    come up with $2,500; correct?

21         THE DEFENDANT:   Yeah, right now, yes, sir.

22         MR. MUHLENKAMP:   Are you currently working?  Where

23    do you work, sir?

24         THE DEFENDANT:   I work at ████████████.

25         MR. MUHLENKAMP:   How long have you worked there?

1    THE DEFENDANT:   I worked there about a week.  I
2    actually I missed like two or three days.
3    MR. MUHLENKAMP:   You've only worked there for a
4    week or you've worked there longer?
5    THE DEFENDANT:   I worked there for a week and I
6    was trying to get back to it.  That's why I'm asking for a
7    reduction.
8    MR. MUHLENKAMP:   Okay, so if you get out of jail,
9    that's where you would go back to work; right?
10    THE DEFENDANT:   Yes, sir.
11    MR. MUHLENKAMP:   Where would you live if you got
12    out of jail?
13    THE DEFENDANT:   I was living at ███████████.
14    MR. MUHLENKAMP:   Is that in the city?
15    THE DEFENDANT:   No.  It's in Washington Park.
16    MR. MUHLENKAMP:   Who lives there?  Is it just you
17    or do you live with family?
18    THE DEFENDANT:   I'm with my family.
19    MR. MUHLENKAMP:   Like who?  Your parents?
20    THE DEFENDANT:   Yes, sir.
21    MR. MUHLENKAMP:   Okay.  If the judge lets you out
22    of jail on your own recognizance and tells you to stay away
23    from the ███████, is that something you would be willing
24    to do, I assume?
25    THE DEFENDANT:   Yes, sir, I would be willing to do

1  that.

2          MR. MUHLENKAMP:   Would you be willing to not have

3  any contact with Mr. ████████, the other party involved in

4  this case?

5          THE DEFENDANT:   Yes, sir, I'm willing.

6          MR. MUHLENKAMP:   Okay, hold on for one second.

7              (Discussion off the record.)

8          MR. MUHLENKAMP:   Judge, I'm ready for argument

9  when you're ready.

10         THE COURT:   I'm ready.

11         MR. MUHLENKAMP:   Judge, I would ask the Court to

12  consider a recognizance bond in this case.  It's charged as

13  a misdemeanor.  I don't think Mr ████ has any significant

14  criminal history to speak of.  He's got a job.  He can live

15  with his family.  He's got a home plan in place.  I think

16  making a specific condition of the bond no contact with

17  Mr. ██████, the alleged victim in this case, that would

18  make sense.  Other than that, though, he seems like a prime

19  candidate for a recognizance bond, especially given it's a

20  misdemeanor.

21         MR. PHIPPS:   Your Honor, before we get to

22  argument, I would first ask that there be an inquiry made

23  into the defendant's community ties.

24         THE COURT:   Do you live in Illinois; is that

25  right?

1      THE DEFENDANT:   Yes, sir.

2      THE COURT:   But you worked -- for a week you

3   worked -- where did you work, you said, for a week?

4      THE DEFENDANT:   I worked -- I work at ██████████

5   ██████████ .

6      THE COURT:   What kind of community ties are you

7   thinking about?

8      MR. PHIPPS:   Your Honor, I'm --

9      THE COURT:   How long have you lived in Washington

10  Park?

11     THE DEFENDANT:   About 15 years.

12     MR. PHIPPS:   Your Honor, I would first ask that

13  the Court take judicial notice of its file in this case,

14  including the bond commission's report.

15     THE COURT:   The Court will do so.

16     MR. PHIPPS:   Your Honor, I'll next point out the

17  defendant does stand charged with harassment second degree.

18  His bond is currently $2,500 cash.  I recognize that

19  harassment in the second degree is technically a

20  misdemeanor, and I shouldn't say technically.  It is a

21  misdemeanor.

22     But at the same time I would ask you to look at

23  the specific facts of this case, wherein the probable cause

24  statement you have a sworn statement from the police officer

25  saying that he has been threatening the victim in this case,

1  threatening to kill the victim, threatening to shoot him and

2  his wife with an AK-47, that he's been showing up at the

3  defendant's (sic) work despite having absolutely no reason

4  to be there.

5           Your Honor, I think that's a very troubling set of

6  behavior that raises very real concern about the safety of

7  the victim in this case.  As such, and especially given my

8  own research into his criminal history, shows a bond

9  forfeiture out of Illinois from 2007 where he forfeited a

10 $10,000, 10 percent bond.

11          THE COURT:   What kind of case was that on?

12          MR. PHIPPS:   Your Honor, I'm honestly not sure.

13 The entry in the criminal history was literally just for the

14 bond forfeiture.  It was the arrest on the bond forfeiture.

15          THE COURT:   But you don't show a criminal history

16 itself?

17          MR. PHIPPS:   I don't know what the underlying case

18 is out of Illinois because I don't have direct access to

19 that.  I just see the arrest reports on it.  But given that

20 he's previously forfeited a bond out of Illinois, I think he

21 does represent something of a flight risk, and I think it is

22 appropriate to have the cash bond in this case in addition

23 to some conditions.

24          I would ask that the bond remain where it was

25 already set at $2,500 cash with the added conditions that he

1  stay away from the ███████████ and from the victim in this

2  case.

3              THE COURT:   Did something happen at the ███████

4  ██████ here?  I'm confused.

5              MR. PHIPPS:   That's the location where the victim

6  works and where the defendant has been showing up despite

7  the defendant having no reason to be there.  He's also a

8  former employee of the █████.

9              MR. MUHLENKAMP:   I think the victim is his former

10  supervisor too.

11              MR. PHIPPS:   I would ask that he stay away from

12  the ██████ and from the victim, that he be placed on GPS

13  monitoring to help effectuate that stayaway, and that he not

14  possess any weapons like the AK-47 he's been threatening to

15  use.

16              THE COURT:   Mr. Boyd, can you post $250?

17              THE DEFENDANT:   Yes, sir.

18              THE COURT:   All right.  Let's do $2,500, 10

19  percent, stayaway order from the ██████ and the victim in the

20  case, and we'll go from there.

21              MR. MUHLENKAMP:   Judge, we'll waive formal reading

22  and enter a plea of not guilty also.

23              THE COURT:   Very good.

24              MR. PHIPPS:   So to clarify, Your Honor, are you

25  not granting the GPS or the no weapons condition?

1    THE COURT:   Well, the no weapons condition, that's

2  going to be -- that's a condition on every bond; right?

3    MR. PHIPPS:   I've had it explicitly stated before,

4  Judge.

5    MR. MUHLENKAMP:   We'll make it a condition on his

6  bond.  So no weapons, no contact with ████, no contact with

7  alleged victim; correct?

8    THE COURT:   Yes.

9    MR. MUHLENKAMP:   Thank you, Judge.

10    THE DEFENDANT:   And Your Honor?

11    THE COURT:   Yes, sir.

12    THE DEFENDANT:   I was still wondering if I could

13  get that recognizance bond because I need my work, sir.

14    THE COURT:   No.  250.

15    THE DEFENDANT:   I'm --

16    THE COURT:   10 percent of 2,500; all right?

17    THE DEFENDANT:   It's cool.  It's cool.  Yes, sir.

18    MR. PHIPPS:   Before we go any further, I was about

19  to make a very grievous error.  I actually have a victim

20  impact statement in this case.

21    THE COURT:   Okay, thank you.  I'll give that back

22  to you, Mr. Phipps.  We'll keep it at 2,500, 10 percent.

23    MR. PHIPPS:   Yes, Your Honor.

24

25

1      ## CERTIFICATE

2           I, Kristine A. Toennies, Registered Merit

3   Reporter, Certified Realtime Reporter, and Certified Court

4   Reporter, do hereby certify that I am an official court

5   reporter for the Circuit Court of the City of St. Louis;

6   that on February 7, 2020, I was present and reported all the

7   proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8   vs. ███████████, Defendant, Cause No. 2022-CR00448.

9           I further certify that the foregoing pages contain

10  a true and accurate transcription of the proceedings.

11

12

13           /s/ Kristine A. Toennies
             _____
14           Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 206

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
          STATE OF MISSOURI
2       Honorable Calea Stovall-Reid, Judge

3    STATE OF MISSOURI,                    )
                                           )
4              Plaintiff,                  )
                                           )
5         vs.                              )    Cause No. 2022-CR00436
                                           )
6    MAURICE HELMS,                        )
                                           )
7              Defendant.                  )

8         BOND HEARING - INITIAL APPEARANCE

9              February 6, 2020

10

11

12   FOR THE PLAINTIFF:            FOR THE DEFENDANT:

13   Mr. Jonathan Phipps           Mr. Chris Faerber
     Assistant Circuit Attorney    FaerberLaw, LLC
     1114 Market Street, #401      1015 Locust Street, Suite 914
14   St. Louis, MO  63101          St. Louis, MO  63101

15

16

17

18

19

20

21

22

23        KRISTINE A. TOENNIES, RMR, CRR, CCR #769
              OFFICIAL COURT REPORTER
24         CITY OF ST. LOUIS CIRCUIT COURT
           TWENTY-SECOND JUDICIAL CIRCUIT
25

1          THE COURT:   We'll do Helms first.  You may

2   proceed, Phipps.

3          MR. FAERBER:   Your Honor, before we start, can I

4   speak to him quickly?

5          THE COURT:   Yeah, quickly.

6              (Discussion off the record.)

7          THE COURT:   All right, Mr. Phipps, you may

8   proceed.

9          MR. PHIPPS:   Thank you, Your Honor.  The defendant

10   stands charged with domestic assault in the third degree.

11   His bond is currently set at $15,000, 10 percent cash

12   allowed with the added condition that he have no contact

13   with the victim.  Your Honor, I would first ask that the

14   Court take judicial notice of its file in this case,

15   including the bond commissioner's report.

16          THE COURT:   All right.

17          MR. PHIPPS:   Your Honor, I'll note that the facts

18   in brief involve the defendant attacking the victim, his

19   mother, after becoming enraged for no apparent reason and

20   striking her in the face with a closed fist, causing injury.

21   I'll also note that he's currently on a personal

22   recognizance bond in Cause Number 1922-CR00376 for domestic

23   assault in the fourth degree and property damage in the

24   second degree against the same victim.  Your Honor, that

25   victim is present in the courtroom here today and would like

1 | to address the Court.

2 | THE COURT:   Okay.  You may make your statement,

3 | ma'am.

4 | A.H.:   First off, I want to say that after all

5 | that has happened, I still have love for my son.  I just

6 | don't like him.  Unfortunately, he has been dealt a bad gene

7 | pool.  He has been diagnosed with several mental illnesses,

8 | and on top of that he chose to use drugs.  I have tried

9 | throughout his childhood to get him the help he's needed

10 | from the system, but the system has failed us every time.

11 | I knew that this day would come one day, but I

12 | never imagined he would do this to me.  I'm the last and

13 | only person he had.  His dad is in prison and he's burned

14 | every bridge he had.  He has no friends.  All I can do is

15 | put him in God's hands.

16 | It has been almost one year to the day the first

17 | time he assaulted me, January 30, 2019, and I thought it

18 | would be the last.  All I ask is that he gets the help he

19 | has so long needed and to suffer the consequences of his

20 | awful action.  I gave him life and he tried to take mine.

21 | He told me he was going to kill me and in front of his

22 | 2-year-old daughter.  He is a threat to society.  He does

23 | not need to be let out to hurt me or anyone else again.

24 | THE COURT:   All right.  Thank you, ma'am.  You may

25 | have a seat.

Dixon v. City of St. Louis, 04479

1        Mr. Faerber, did you want to make a statement?

2        MR. FAERBER:   For the record I consulted with my

3   client.  He was not able to give me a coherent answer as far

4   as whether or not he wanted the hearing or whether or not he

5   wanted to waive the hearing.  In my opinion, without his

6   consent to waive, I will proceed with a hearing and a brief

7   argument, Your Honor.

8        THE COURT:   You may.

9        MR. FAERBER:   Obviously, as we saw in the

10  courtroom, when I interacted with him, there is potentially

11  some mental health issues going on here.  I would also argue

12  that he may not fully understand what is going on right now,

13  so while the bond is at $15,000, 10 percent, $1,500, and in

14  other circumstances it would be likely affordable to an

15  individual or an individual's family, it does not look like

16  that is the case here.

17        I do not have much information, if any, on where

18  else he could stay, and it does not appear that he has

19  anywhere else to stay.  So I would just ask Your Honor to

20  keep the bond intact.  Should he be released, I would ask

21  that he get some level of mental health screening at either

22  EMASS or Places for People.  But I would ask that the bond

23  remain intact, Your Honor.

24        THE COURT:   All right, thank you.  The Court finds

25  that there's clear and convincing evidence that no

1  combination of nonmonetary conditions or monetary conditions

2  will secure the safety of the community or the victim in

3  this case.  Therefore, defendant will be held with no bond

4  allowed.  The seven-day hearing is set for February 14th.

5  The date in Division 26 will be March 10th.

6          MR. FAERBER:   And Your Honor, for the record, I

7  will waive formal reading and enter a plea of not guilty on

8  his behalf.

9          THE COURT:   All right; very good.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE**

2          I, Kristine A. Toennies, Registered Merit

3  Reporter, Certified Realtime Reporter, and Certified Court

4  Reporter, do hereby certify that I am an official court

5  reporter for the Circuit Court of the City of St. Louis;

6  that on February 6, 2020, I was present and reported all the

7  proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8  vs. MAURICE HELMS, Defendant, Cause No. 2022-CR00436.

9          I further certify that the foregoing pages contain

10  a true and accurate transcription of the proceedings.

11

12

13          /s/ Kristine A. Toennies
    _____
14          Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 207

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
          Plaintiff,        )
                            )
     vs.                    )     Cause No. 2022-CR00277
                            )
JAMIE PERRY                 )
                            )
          Defendant.        )

BOND REVIEW HEARING

          On the 27th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link,,
and was represented by Eric Barnhart, Attorney at Law

          Mr. Don Kirby, Bond Commissioner.


          DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
                OFFICIAL COURT REPORTER
            CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT

---

**2**

1          JANUARY 27, 2020
2          THE COURT:  We're on the record which should
3    reflect this is 2022-CR277, State of Missouri versus Jamie
4    Perry.  Mr. Perry is charged in a one-count indictment of
5    assault fourth degree special victims, a Class A
6    misdemeanor.  Let the record reflect that the defendant
7    appears in open court via video link with the benefit of
8    legal assistance, Eric Barnhart, Esquire.  Mr. Barnhart
9    represents the defendant for the limited purposes of this
10   proceeding meaning today only.  The State of Missouri is
11   represented by Nicholas Fischbach.
12          Mr. Perry, you're in a public setting.  I
13   encourage you to follow and listen to Mr. Barnhart, your
14   attorney, before speaking.  In light of the fact you are
15   in a public setting, anything you say can be held against
16   you.  My name is Thom Clark.  I'm the judge who is
17   presiding over your arraignment, as well as the bond
18   review of your situation as you are entitled under
19   Rule 33.
20          Having said that, Mr. Barnhart, is there an
21   announcement at this time?
22          MR. BARNHART:  Thank you, Judge.  Mr. Perry
23   pleads not guilty.  We waive the formal reading of the
24   information.
25          THE COURT:  Thank you.  Mr. Fischbach, you may

---

**3**

1    proceed.
2          MR. FISCHBACH:  Thank you, Your Honor.  The
3    state first requests the Court take judicial notice of the
4    court file, including the probable cause statement.
5          THE COURT:  So ordered.
6          MR. FISCHBACH:  Your Honor, from the probable
7    cause statement, the defendant while being led out of a
8    hospital, SLU Hospital, specifically by a police officer,
9    broke free of the officer's grasp and struck him in the
10   face, and proceeded -- broke free and struck him in the
11   face.  Additionally, the defendant has several pending
12   cases, an assault fourth from this year, a failure to
13   register as a sex offender from 2019, and resisting or
14   interfering with arrest also from 2019.  He also has from
15   the 19th Circuit from 2015 a domestic assault third.  From
16   the 21st Circuit 2015 a sexual abuse second.  From the
17   21st Circuit 2013 a burglary first.  Additionally, Your
18   Honor, the state would request a chance to make a
19   recommendation once an inquiry has been conducted by the
20   defense.
21          THE COURT:  That's fine.
22          MR. FISCHBACH:  Certainly I would defer to the
23   bond commissioner in case I've missed any of his criminal
24   history.
25          MR. KIRBY:  We show the same priors.

---

**4**

1          MR. BARNHART:  I'm going to ask Mr. Kirby a
2    question.  On the pending cases, are these all
3    misdemeanors?
4          MR. KIRBY:  The assault first is a misdemeanor.
5    Resisting, interfering with an arrest is a misdemeanor.
6    The 1922-CR02159 is a felony failure to register.  He has
7    a misdemeanor stealing attached to that.
8          MR. BARNHART:  Thank you.  Hi, Mr. Perry.  My
9    name is Eric Barnhart.  I'm your attorney for today only.
10   I'm going to try to get your bond reduced.  Be aware
11   there's a court reporter -- can you hear me?
12          THE DEFENDANT:  I can hear you.
13          MR. BARNHART:  My name is Eric Barnhart.  I'm
14   your attorney for today only.
15          THE DEFENDANT:  Yes, sir.
16          MR. BARNHART:  I'm going to try to get your bond
17   reduced if I can.  I'm going to ask you a few questions.
18   Be aware there is a court reporter taking everything down.
19   I don't want you to talk about the facts of the case.  Are
20   you working, Mr. Perry?
21          THE DEFENDANT:  No, sir.
22          MR. BARNHART:  If you got released, where would
23   you live?
24          THE DEFENDANT:  4361 Lee.  4361 Lee is my
25   address on file.  I'm going to have three days once

1  released to find an address to be able to reside at.
2       MR. BARNHART:  Is there anybody out there like a
3  family member or friend that could afford to post
4  10 percent on your behalf?
5       THE DEFENDANT:  Sir, to my knowledge, I was told
6  I didn't have a bond allowed.  At this moment right now,
7  no, sir.
8       MR. BARNHART:  I believe your bond is $2,500
9  cash only.
10       THE COURT:  That's what I'm showing.
11       MR. BARNHART:  That's kind of high.  I'm trying
12  to get something lower where you post a 10 percent.  If
13  it's 5,000 10 percent which would be $500 or, $2,500 which
14  would be 250, is there anybody out there?
15       THE DEFENDANT:  At the moment, no.  I'd have to
16  have three days.  I would have to be able to provide an
17  address.  That would be at an extended stay hotel if I had
18  to.  I would have to with family's help pay for that too
19  upon being released.
20       THE COURT:  Off the record.
21       (There was a discussion off the record.)
22       MR. BARNHART:  Judge, we have a consent.
23       THE COURT:  Is that true, Mr. Fischbach?
24       MR. FISCHBACH:  It is, Your Honor.
25       THE COURT:  Anything further for the record?

5

1       MR. BARNHART:  Other than what the bond what we
2  consented to.  $2,500 10 percent.  Report to EMASS.  He's
3  supposed to disclose his address to EMASS so that way the
4  Court knows where he'll be living.
5       THE COURT:  That's fine.  His next court date
6  will be a week from today February 3.  Is that true?
7       MR. BARNHART:  February 3rd at 10:30 if he
8  doesn't make the bond.  February 21st we're picking a
9  different date, because the other two cases are in there.
10  They'll all be the same date February 21st, 9:15.
11       THE COURT:  Anything further for the record?
12       THE DEFENDANT:  Excuse me.  You are aware that I
13  called 911 about being assaulted?
14       MR. BARNHART:  I am not aware of that.  that's
15  something for when you get a public defender or private
16  attorney.  They'll look into that.  I don't want you
17  making any statements about the facts of the case.  We
18  have a prosecutor here.  Basically $2,500 gets you bonded
19  out.  You have to report to EMASS.  They charge like $35 a
20  month.
21       THE DEFENDANT:  The only person I have that
22  bonded me out was my mother.  She resides in Jefferson
23  City.  She informed me the night I called her the night I
24  got arrested she had no more money.
25       MR. BARNHART:  There is a bail project that

6

1  might post the bond on your behalf.  You need to talk to
2  them.
3       THE DEFENDANT:  I spoke with them before.  They
4  bonded me out $5,000 cash in St. Louis County.
5       MR. BARNHART:  What will happen built into our
6  system, if somehow you don't make bond, a week from now,
7  February 3rd, they'll have a different judge.  There will
8  probably be different prosecutors.  They'll review your
9  bond.  That judge may or may not lower the bond.  You'll
10  have another bond review next week.
11       THE COURT:  You and Nick come on up here.
12       THE DEFENDANT:  I have a hundred dollars in my
13  property that's on my books.
14       (There was a discussion off the record.)
15       THE COURT:  We're on the record.  In light of
16  the defendant's extensive criminal history and the
17  allegations as alleged by the State of Missouri, any
18  change of bond is denied at this time.  25,000 cash only.
19       MR. BARNHART:  It was $2,500.
20       THE COURT:  I'm showing it was $2,500 cash only.
21       MR. BARNHART:  You said 25,000.
22       THE COURT:  2,500 cash only.
23       MR. BARNHART:  It's going to remain the same?
24       THE COURT:  Going to remain the same.
25

7

                        CERTIFICATE
1
2       I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on January
5  27, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. JAMIE
7  PERRY, Defendant, Cause No. 2022-CR00277.
8       I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10  proceedings.
11
12
13
14
15       /s/Dawn L. McTeer
16       _____
17       Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
               CCR #429
18
19
20
21
22
23
24
25

8

Dixon v. City of St. Louis, 04268

# EXHIBIT 208

```
               IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                            STATE OF MISSOURI
                   Honorable Thomas C. Clark, II, Judge


STATE OF MISSOURI,              )
                                )
            Plaintiff,          )
                                )
      vs.                       )   Cause No. 2022-CR00158
                                )
LAVAR D. JACKSON                )
                                )
            Defendant.          )


                        BOND REDUCTION HEARING

            On the 29th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.
            The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.
            The Defendant was present by video link and
was represented by Andy Sottile, Attorney at Law.

            Mr. Don Kirby, Bond Commissioner


            DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
                     OFFICIAL COURT REPORTER
                   CITY OF ST. LOUIS CIRCUIT COURT
                   TWENTY-SECOND JUDICIAL CIRCUIT
```

JANUARY 29, 2020

THE COURT: We're on the record which should reflect this is 2022-CR158, State of Missouri versus Lavar Jackson. Mr. Jackson appears in court with the benefit of legal assistance, Andy Sottile, Esquire. Mr. Jackson faces a three-count indictment, unlawful possession of a firearm a Class D felony, unlawful use of a weapon possession of a weapon, and felony controlled substance, and then finally Count III possession of a controlled substance, also a Class D felony.

Mr. Sottile, in light of those, do you have an announcement to make on behalf of your client?

MR. SOTTILE: Yes, sir. Thank you. Your Honor, at this time I would enter a plea of not guilty for Mr. Lavar Jackson. He would waive formal reading of the charges at this time.

THE COURT: Thank you. Mr. Jackson, did you hear that?

THE DEFENDANT: Yes, sir.

THE COURT: Your attorney, Mr. Sottile, represents you for the limited purposes of this proceeding only. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Any future court dates you are responsible for retaining your own attorney. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If you wish to apply for the services of the public defender, you need to fill out an application and follow up with their processing. If you wish to retain a private attorney, you're invited to do so. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you for answering out loud. I also mention Mr. Sottile, your attorney, is in the room, because he will be representing you during your bond detention hearing which is your right under Rule 33. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: We're going to start that momentarily. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: I also mention Mr. Sottile being in the room, because I would encourage you to follow directions or instructions he may provide regarding your comments. I say that to you, because you're in a public forum. You are being recorded. Everything you say can be held against you.

THE DEFENDANT: Yes, sir.

THE COURT: Thank you for answering out loud.

Dixon v. City of St. Louis, 04285

1   Mr. Fischbach, you may proceed.

2            MR. FISCHBACH:  Thank you, Your Honor.  First,

3   the state requests the Court take judicial notice of the

4   court file.

5            THE COURT:  Granted.  So ordered.

6            MR. FISCHBACH:  Thank you, Your Honor.  In this

7   case officers were on routine patrol in a marked vehicle

8   when they observed a car with a large crack in the front

9   windshield.  While following it and prior to stopping it,

10  they saw it travel over the solid white line multiple

11  times.  When the vehicle was curbed, they made contact

12  with the defendant and detected a strong odor of marijuana

13  emanating from the car.  They observed the defendant was

14  extremely nervous and observed what they believed were

15  multiple baggies of marijuana in the driver's side door

16  handle.  While removing the marijuana, what was suspected

17  marijuana, would later test positive as marijuana out of

18  the door, they observed an extended magazine of a firearm

19  and blue tablet.  The blue tablet later tested positive as

20  methamphetamine.  The pistol was retrieved and revealed to

21  be a loaded Taurus 9-millimeter semiautomatic pistol.

22           The defendant has a prior felony conviction.

23  Specifically a 2013 conviction from St. Louis City for

24  unlawful use of a weapon, and a 2017 conviction for

25  possession with intent to distribute a controlled

5

1   substance, unlawful use of a weapon.

2            I will turn to the bond commissioner as there is

3   some question whether he is still on -- he was discharged

4   from probation on that case, Your Honor.

5            THE COURT:  His prior felony finding of guilt

6   1322-CR109 is unlawful use of a weapon?

7            MR. FISCHBACH:  Correct.

8            THE COURT:  1622-CR4990 is possession with

9   intent to distribute a controlled substance and unlawful

10  use of a weapon where he is no longer on probation.

11           MR. FISCHBACH:  Correct, Your Honor.

12           THE COURT:  That is a prior felony finding of

13  guilt?

14           MR. FISCHBACH:  Yes, Your Honor.

15           THE COURT:  Thank you.  Mr. Sottile, you may

16  proceed.

17           MR. SOTTILE:  Thank you, Your Honor.

18  Mr. Jackson, where are you staying at right now?  Who do

19  you live with?

20           THE DEFENDANT:  I stay with my father, sir, 5487

21  Union, 5487 Union.

22           MR. SOTTILE:  How long have you lived in St.

23  Louis?

24           THE DEFENDANT:  All my life.

25           MR. SOTTILE:  Are you currently working right

6

1   now?

2            THE DEFENDANT:  Yes, sir.  I work at Fields

3   Foods.  I'm a meat clerk at Fields Foods Grocery Store,

4   1701 Washington.

5            MR. SOTTILE:  How many hours a week do you work

6   there?

7            THE DEFENDANT:  I work close to 30 hours, 20, 35

8   hours.

9            MR. SOTTILE:  How long have you had that job?

10           THE DEFENDANT:  Since March of last year.

11           MR. SOTTILE:  Do you have another --

12           THE DEFENDANT:  Actually training to become a

13  butcher.

14           DEFENSE ATTORNEY:  Do you also have another job

15  too?

16           THE DEFENDANT:  Yes, sir.  I have an LLC.  I own

17  and sell clothing, apparel.

18           MR. SOTTILE:  Is that correct you're currently

19  not on probation right now?

20           THE DEFENDANT:  Yes, sir.  I'm not on probation.

21  I got discharged December 13.

22           MR. SOTTILE:  Let me ask you this.  Are you able

23  to make any kind of monetary bond?

24           THE DEFENDANT:  Right now not really.  My

25  girlfriend is on the way to talk to my lawyer to seek any

7

1   kind of assistance.

2            MR. SOTTILE:  Your Honor, I would ask the Court

3   to consider any reduction in bond or recognizance bond.

4   Mr. Jackson is a lifelong resident of St. Louis.  He lives

5   with his father.  He is gainfully employed.  It sounds

6   like he has a good job.  He's currently not on

7   supervision.  The Court could make him report through

8   EMASS.  I would submit to the Court the state hasn't

9   proven beyond clear and convincing evidence he's a danger

10  to the community or he's not going to appear in court.  I

11  would ask the Court to release him on recognizance bond or

12  lowering the bond to 5,000 10 percent.

13           One other question.  Mr. Jackson, do you have a

14  current driver's license?

15           THE DEFENDANT:  Yes.  Current driver's license

16  and insurance valid.

17           MR. SOTTILE:  Do you have a vehicle too?

18           THE DEFENDANT:  Yes, sir.

19           MR. SOTTILE:  Thank you.

20           THE COURT:  The Court has considered whether any

21  of the following conditions of release are required

22  pursuant to Rule 33.  Based on the available information

23  and after taking judicial notice of the court file,

24  including the probable cause statement, as well as the

25  defendant's length of residence in the community, his

8

Dixon v. City of St. Louis, 04286

1  stable work history, and having said that the Court is
2  quite concerned about the allegations in this matter
3  involving a handgun, specifically the Taurus 9-millimeter
4  semiautomatic pistol.  Even more concerning is his prior
5  criminal history for two separate felony findings of guilt
6  involving the use of a handgun.  For those reasons the
7  Court denies any changes in the conditions of
8  Mr. Jackson's bond.
9          Mr. Jackson, I apologize.  I'm going to keep
10 your bond where it is currently set which is $30,000 cash
11 only.  Your next court date will be one week from today,
12 February 5.  Then following that the next court date is
13 March 2 in Division 25.  Like I said, it's your
14 responsibility to retain an attorney.
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  Thank you for understanding.  Good
17 luck to you.
18
19
20
21
22
23
24
25

9

1              CERTIFICATE
2          I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on January
5  29, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. LAVAR D.
7  JACKSON, Defendant, Cause No. 2022-CR00158.
8          I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10 proceedings.
11
12
13
14
15         /s/Dawn L. McTeer
16 _____
17       Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                 CCR #429
18
19
20
21
22
23
24
25

10

Dixon v. City of St. Louis, 04287

# EXHIBIT 209

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,            )
                              )
            Plaintiff,        )
                              )
      vs.                     )    Cause No. 2022-CR00286
                              )
DARVIS D. LOGAN               )
                              )
            Defendant.        )

BOND REVIEW HEARING

        On the 27th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

            The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

            The Defendant was present by video link and
was represented by Tyson Cole, Assistant Public Defender.

            Don Kirby, Bond Commissioner.

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

**Page 2**

                                      JANUARY 27, 2020

        THE COURT:  We're on the record which should
reflect this is 2022-CR286, State of Missouri versus
Darvis Logan.  Mr. Logan appears in court via video link
with the benefit of legal assistance for the limited
purposes of this proceeding for today only, Tyson Cole.
The State of Missouri is represented by Assistant Circuit
Attorney Nicholas Fischbach.  Mr. Logan is charged with
one count of assault fourth degree, a Class A misdemeanor.

        Mr. Cole, is there an announcement on behalf of
your client at this time?

        MR. COLE:  Yes, Your Honor.  Mr. Logan would
plead not guilty and waive any formal reading of the
complaint.

        THE COURT:  Thank you.  Mr. Logan, this is also
your opportunity for a review of your bond conditions if
you so choose.  You're entitled under Rule 3301 to a
review of your bond following your incarceration.  Having
said that, I would remind you that you're in a public
environment.  I would discourage you from getting into any
specifics about your case unless you are otherwise
counseled by your attorney.  Do you understand?

        THE DEFENDANT:  Okay.

        THE COURT:  Pardon me.

        THE DEFENDANT:  Yes.

---

**Page 3**

        THE COURT:  All right.  Mr. Fischbach, you may
proceed.

        MR. FISCHBACH:  Thank you, Your Honor.  First,
the state requests the Court take judicial notice of the
court file, including the probable cause statement.

        THE COURT:  So noted.

        MR. FISCHBACH:  Your Honor, based on this event,
officers responded to a domestic disturbance where they
discovered the victim K.B. who stated that the defendant
had placed his hands around her neck and pushed her into a
wall.  The state also points out the defendant's criminal
history which includes a robbery second from 2013, and a
pair of pending charges, a possession of a controlled
substance and unlawful use of a weapon from 2019 and
resisting arrest creating a substantial risk of injury for
2019.

        For the bond commissioner in the case, is there
anything I missed?

        MR. KIRBY:  We show the same thing.  He has one
felony conviction and two pending felony cases.

        THE COURT:  He has two pending felony cases?

        MR. KIRBY:  Resisting arrest by fleeing and
possession of a controlled substance and UUW possession.

        THE COURT:  Pardon me.  Pending.  Not
convictions?

---

**Page 4**

        MR. KIRBY:  Correct.

        THE COURT:  Does the complaining witness wish to
address the Court at this time?

        MR. FISCHBACH:  No, Your Honor.

        THE COURT:  Thank you.  All right.  Mr. Cole.

        MR. COLE:  Yes, Your Honor.  First, I would like
to draw attention to the fact Mr. Logan is currently
charged with a misdemeanor, only a misdemeanor currently.
On the other criminal history the state has brought up, he
has been released under personal recognizance.  He is
currently on drug classes.  He had to miss a class today,
because he got picked up late last night.  He has shown up
to every court date and probation officer meeting even
when he is working at other jobs around the country.

        THE COURT:  I didn't hear you.

        MR. COLE:  All court dates previously and every
probation officer meeting.

        THE COURT:  What did you say about a job around
the country?

        MR. COLE:  That was a previous job he held from
2014 and 2017.  That job moved around the country.  He
still made every court date.  Currently he is employed.
From Ms. Krantz's knowledge, he is employed as a painter.
She can't remember the name of the company.  If the Judge
would like to ask about that.

**Page 5**

1  THE COURT:  Go ahead.

2  MR. COLE:  Mr. Logan, my name is Tyson Cole.

3  Where is it you're currently employed?

4  THE DEFENDANT:  I worked last week at Express

5  Temp Service.  I didn't like the job I was assigned to.

6  They say give them a two-day notice.  I worked Monday,

7  Tuesday, and Wednesday.  I was actually looking for job

8  placement today.

9  MR. COLE:  What job do you have as a painter?

10  THE DEFENDANT:  I'm not working as a painter.  I

11  was working side jobs as a painter.  I work at Express

12  Temp Service Express Employees on Delmar.  I worked three

13  days last week.  I didn't like the job I was on.  They

14  gave me a replacement.  I put my two days on.  I'm going

15  to find me another job I like.

16  MR. COLE:  Your Honor, also to the counselor's

17  knowledge, he could stay, if released on recognizance,

18  with his brother or cousin.  I have addresses for those.

19  Mr. Logan also has a six-year-old son he takes care of and

20  sees on weekends and also Tuesdays, Wednesdays, and

21  Thursdays.  He takes him to the ball practices and attends

22  every game.

23  THE COURT:  Is the mother of the six-year-old

24  son the same as the complaining witness?

25  MR. COLE:  I do not have any knowledge.

**Page 6**

1  Mr. Logan is the mother -- no.

2  THE COURT:  He said no.

3  MR. COLE:  He's been participating in drug

4  classes.  I was brought to attention Mr. Ryan Smith

5  interviewed Mr. Logan with St. Louis Health Integrated

6  Network.  If he would have anything to say, I would ask

7  permission for Mr. Smith to speak.

8  THE COURT:  That's fine.

9  MR. SMITH:  Good afternoon.  I don't really have

10  anything other than what's been stated at this time.

11  Other than there are some services we can link him up with

12  in order to improve his employment.  Mission St. Louis is

13  a program I think very highly of that provides classes

14  five days out of the week.  Three of those days they're in

15  the class a half day.  The other two they actually link

16  you up with an internship with an opportunity to become a

17  permanent placement.

18  THE COURT:  Are you city probation parole?

19  MR. SMITH:  No.  I'm working with the screening

20  process down over at the jail.

21  THE COURT:  Thank you.

22  MR. SMITH:  We also have connections over at

23  Employment Connections that can also link him up.

24  MR. COLE:  Your Honor, we would be seeking

25  Mr. Logan be released on a personal recognizance order, as

**Page 7**

1  well as stay away order, as well as 10 percent of his

2  current bond.  Nothing further, Your Honor.

3  THE COURT:  Thank you.  I'm showing the bond is

4  at $2,500 cash only.

5  MR. COLE:  To my knowledge that's correct.

6  (There was a discussion off the record.)

7  THE COURT:  Hearing all the evidence and the

8  argument of counsel, and based on the available

9  information made available to the Court, including the

10  allegation contained in the probable cause statement, and

11  the pending caseload of the defendant, specifically

12  1922-CR871 possession of a controlled substance and

13  unlawful use of a weapon, as well as 1922-CR285 resisting

14  arrest both of which are pending in the 22nd Judicial

15  Circuit, when the defendant was arrested on the present

16  charge allegedly occurring on January 26th in the City of

17  St. Louis where an injury allegedly occurred, the Court

18  opts not to change the conditions of bond at this time.

19  We're off the record.

20

21

22

23

24

25

**Page 8**

1  CERTIFICATE

2  I, Dawn L. McTeer, Certified Court Reporter,

3  do hereby certify that I am an official court reporter for

4  the Circuit Court of the City of St. Louis; that on January

5  27, 2020, I was present and reported all the proceedings had

6  in the case of STATE OF MISSOURI, Plaintiff, vs. DARVIS D.

7  LOGAN, Defendant, Cause No. 2022-CR00286.

8  I further certify that the foregoing pages

9  contain a true and accurate reproduction of the

10  proceedings.

11

12

13

14

15  /s/Dawn L. McTeer

16  _____

17  Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
    CCR #429

18

19

20

21

22

23

24

25

# EXHIBIT 210

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
          Plaintiff,        )
                            )
     vs.                    )   Cause No. 2022-CR00304
                            )
NORE KENNELL EDMOND,        )
                            )
          Defendant.        )

BOND REVIEW HEARING

On the 28th day of January, 2020, the above-entitled cause came on regularly for hearing before the Honorable Thomas C. Clark II, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

          The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

          The Defendant was present by video link and was represented by Andy Sottile, Attorney at Law.

          Mr. Victor Kelly, Bond Commissioner.

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 28, 2020

THE COURT:  We're on the record which should reflect this is Cause 2022-CR304, State of Missouri versus Nore, N-O-R-E, Edmond.  Mr. Edmond appears in court with the benefit of legal assistance, Andy Sottile, Esquire.  The State of Missouri is represented by Nicholas Fischbach.  Mr.Edmond is charged with multiple counts, including domestic assault two, kidnapping second degree, a armed criminal action, and unlawful use of a weapon.  His bond is currently set at $100,000 cash only.  Pursuant to Rule 33, Mr. Edmond is entitled to a bond review of the bond conditions at this time.

Mr. Edmond, can you hear me?

THE DEFENDANT:  Yes, sir.

THE COURT:  You're represented by Mr. Sottile.  I identified him on the record previously.  Mr. Sottile is your attorney for this proceeding only.  He's entered a limited appearance on your behalf.  I encourage you to listen to him before you speak or say anything publicly.  You're in an open forum.  You're being recorded.  Anything you say can be held against you.  Do you understand?  Keep your voice up.

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.  Mr. Edmond or Mr. Fischbach, you may proceed.

---

MR. FISCHBACH:  Thank you, Your Honor.  First, the state asks the Court to take judicial notice of the court file.

THE COURT:  Granted.  So ordered.

MR. FISCHBACH:  Thank you, Your Honor.  On or about January 17th, 2020, the state is alleging that the victim and defendant were in an ongoing romantic relationship.  Were in the defendant's car at which time the defendant began yelling and striking the defendant or the victim in the head.  The victim attempted to exit the car and was placed in a headlock.  At which time the defendant began exhibiting a black 9-millimeter handgun and threatened to kill the victim.  She asked to be taken back to her home and he refused.  The defendant drove to Chouteau and South Wharf and stated to the victim this is where I'm going to bury you.  At which time he told her to exit the car.  He eventually let her go home on the condition telling no one what happened or he would kill her and her family.  The victim, in addition to the emotional damage, suffered a swollen jaw and laceration on her upper lip.  Had to be hospitalized for the injuries to her jaw.  Your Honor, we do have some pictures of the injuries.

THE COURT:  Did you show those to Mr. Sottile?

MR. SOTTILE:  Yes.

---

MR. FISCHBACH:  Your Honor, the last picture is the picture she sent in to show what she looked like preinjury.

THE COURT:  Anything further?

MR. FISCHBACH:  Your Honor, based on the allegations and nature of the charges, the state believes the defendant presents a clear and convincing danger at least to the victim and potentially to the victim's family, and would recommend the current hundred thousand cash only bond stand.

THE COURT:  Mr. Sottile, anything at this time?

MR. SOTTILE:  Yes, Your Honor.  Thank you.  We would ask the Court to consider lowering the bond.  Mr. Nore has a stable home plan.  He would live with his grandmother.  He's a high school graduate.  He does have Job Corps training and EMT training, masonry and carpentry.  He has no prior convictions.  He's currently employed full time for America Staffing as a CNA.  He works 40 hours a week.  I believe the Court could order, as a condition of bond, a GPS monitoring and stay away from the victim on the case.  I would submit to the Court that the state hasn't proven beyond clear and convincing evidence that Mr. Nore is a danger to the community, or he would not appear in court.  For those reasons I would ask the Court to consider reducing the bond.  I would also —

1  he would be referred to the caseload of a representative
2  of St. Louis Integrated Health Network if he were to make
3  any kind of bond.
4        THE COURT:  You showed me the four photographs
5  of the complaining witness.  Did she have a statement to
6  make at this time?
7        MR. FISCHBACH:  She did not, Your Honor.  A
8  voice mail was left for her.  Victim Services has not
9  heard back.
10        THE COURT:  The Court has considered whether any
11  of the following additional conditions of release are
12  required pursuant to Rule 33.01.  Based on the available
13  information and after taking into consideration the court
14  file, including the probable cause statement, the nature
15  and circumstances of the offense charged, specifically the
16  allegations in this matter, as well as the four
17  photographs presented to the Court by the state, among
18  other things, reflecting a slight amount of bleeding in
19  the victim's lip, the weight of the evidence against the
20  defendant, the defendant's record of convictions which are
21  none.  However, the state further documents he has a prior
22  arrest for domestic assault fourth degree in January 2018
23  in Jefferson County, and shortly thereafter April 11,
24  2018, for domestic assault third and violation of an order
25  of protection, likewise, from Jefferson County.  The Court

5

1  orders that there's no change in the bond conditions at
2  this time.
3        Mr. Edmond, you're going to have to retain an
4  attorney.  As I told you, Mr. Sottile was here temporarily
5  for you.  You'll have to get an attorney for your next
6  court appearance which will be one week from today,
7  February 4.  If you bond out, your next court date would
8  be February 28, Division 26, at 9:15.
9        THE DEFENDANT:  They lying on me, man.  They
10  don't know who I am, and what I do, and what I have.  I
11  can't get no help.
12        THE DEPUTY:  Listen to what the Judge says.
13        THE COURT:  I'm sorry to have to tell you that.
14  Do you have any questions at this time?  If not, I'm going
15  to have to excuse you.  I have other people waiting.
16        THE DEFENDANT:  I do have some questions.  Can I
17  please get my bond reduced?
18        THE COURT:  I told you I'm denying that at this
19  time.  In addition, the Court is extremely concerned about
20  the allegation of a weapon being involved in this matter.
21
22
23
24
25

6

1                    CERTIFICATE
2        I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on January
5  28, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. NORE
7  KENNELL EDMOND, Defendant, Cause No. 2022-CR00304.
8        I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10  proceedings.
11
12
13
14
15        /s/Dawn L. McTeer
16        _____
17        Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                     CCR #429
18
19
20
21
22
23
24
25

7

Dixon v. City of St. Louis, 04299

# EXHIBIT 211

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
          Plaintiff,        )
                            )
     vs.                    )   Cause No. 2022-CR00008
                            )               2022-CR00305
███████████████             )
                            )
          Defendant.        )

BOND REVIEW HEARING

          On the 28th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Andy Sottile, Attorney at Law.

          Mr. Victor Kelly, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 28, 2020

1  
2          THE COURT:  We're on the record.  This is Cause
3  2022-CR8 and 2022-CR305.  Is it████?
4          THE DEFENDANT:  ████.
5          THE COURT:  ███████████.  Mr. ████ appears in
6  court via video link and with the benefit of legal
7  assistance, Andy Sottile, Esquire.  Mr. ████, in the
8  previous cause number is charged with one count of
9  tampering with a motor vehicle first degree, and one count
10 of possession of a controlled substance, both of which are
11 Class D felonies.  The bond in both is $15,000 or
12 10 percent cash.  In the cause ending 305, the defendant
13 is charged with unlawful use of a weapon.  The bond in
14 that matter is set at 50,000 cash only.
15          Mr. ████, as I indicated, Mr. Sottile is in the
16 courtroom, and has entered his limited appearance for
17 today's proceeding only.  Do you understand that?
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  I would strongly encourage you to
20 listen to any instructions he may have for you.  I say
21 that because you're in a public forum in an open
22 environment, and anything you say can be held against you.
23 You're being recorded.  Do you understand that?
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  Before you're inclined to say

1  anything even if it's in your own defense, please listen
2  closely to Mr. Sottile.
3          Having said all that, Mr. Fischbach, you may
4  proceed.
5          MR. FISCHBACH:  Thank you, Your Honor.  First,
6  the state requests the Court to take judicial notice of
7  the court file.
8          THE COURT:  Granted.  So ordered.
9          MR. FISCHBACH:  Certainly, Your Honor.  Your
10 Honor, in the 305 case, officers were on routine patrol
11 and ran a license plate of a vehicle, and it indicated
12 that the license plate was not registered to that vehicle.
13 There was no record of a license.  They curbed the
14 vehicle.  As soon as they did so, the passenger door
15 opened and the defendant attempted to exit.  When he was
16 requested to stay inside, the officer heard him sit down
17 and saw him sit down and heard him say go, go, drive off.
18 At the officer's request, the driver turned the car off.
19 The defendant was constantly reaching into his right
20 pocket and did so even after officers requested him to
21 stop.  When he was asked to exit the vehicle, he deposited
22 a loaded firearm on to the seat which the officers took
23 into custody and discovered it was a loaded Taurus
24 9-millimeter.  Upon running the defendant's pedigree
25 information, they discovered he does have prior felony

Dixon v. City of St. Louis, 04293

1    convictions.

2            In the eight case, officers were on covert

3    patrol and observed a vehicle that had been reported

4    stolen earlier that day.  They followed the vehicle and

5    were able to spike trap the vehicle.  The defendant who

6    was driving got out and ran, but was apprehended.  Along

7    the route he had run, there was discovered a bag which

8    contained cocaine base.  When advised that he was under

9    arrest, the defendant made statements to indicate that the

10   cocaine base was also his.

11           Turning to his criminal history, Your Honor.

12   The state shows that he has a conviction for assault

13   third, possession of a controlled substance, two counts of

14   possession of a controlled substance from 2010.  A 2001

15   conviction for distribution, a count of possession of a

16   controlled substance, a count of tampering with a motor

17   vehicle first.

18           THE COURT:  These are all convictions?

19           MR. FISCHBACH:  Yes, Your Honor.

20           THE COURT:  Or pleas of guilt?

21           MR. FISCHBACH:  Another possession.  Another

22   count of possession of a controlled substance and a

23   pending -- I apologize.  That is the ongoing case.  I will

24   defer to the bond commissioner in case I missed any.

25           MR. KELLY:  We, Judge, also show a conviction in

5

1    Illinois, manufacturing or delivering a controlled

2    substance.  That was in 1999.  He had 12 months probation

3    on that.

4            THE COURT:  Thank you.  Anything further from

5    the state?

6            MR. FISCHBACH:  Your Honor, the only thing

7    further from the state is that the state would request, if

8    Your Honor modifies the bond, that there be a stay away

9    order put in place for the cause number eight victim and

10   the location where the offense is alleged to have taken

11   place which specifically is ██████████.

12           THE COURT:  Mr. Sottile, you may proceed.

13           MR. SOTTILE:  Thank you, Your Honor.  I would

14   note, Your Honor, some of those convictions are considered

15   old.  I don't believe the state can verify this.  He's not

16   on probation now.

17           MR. KELLY:  He's not on probation.

18           MR. SOTTILE:  He's not on supervision.  He's a

19   lifelong city resident.  He works full time for ████████

20   ██████████.  Works seven days a week.  Has two

21   children.  11th grade education.  Two children.

22   Mr. █████, how long have you been employed by ████████

23   ██████████?

24           THE DEFENDANT:  For a year.

25           MR. SOTTILE:  Do you still have that job right

6

1    now, do you believe?

2            THE DEFENDANT:  I think so.

3            MR. SOTTILE:  Did you have it right before you

4    got locked up?

5            THE DEFENDANT:  Yes, sir.

6            MR. SOTTILE:  Your Honor, I would submit to the

7    Court that the Court could order GPS as a condition of

8    bond.  Let me have one moment, Your Honor.

9            THE COURT:  Take your time, Andy.

10           MR. SOTTILE:  Mr. █████, if the Court would

11   impose a bond of $500, would you be able to make that?

12           THE DEFENDANT:  Yes, sir.

13           MR. SOTTILE:  Thank you.  For those reasons,

14   Your Honor, I would ask the Court to consider either

15   releasing Mr.█████ or setting a low bond.  I don't

16   believe the state has clear and convincing evidence that

17   he is a danger to the community or he would not appear in

18   court.  Let me ask one other question, Your Honor.

19           THE COURT:  Sure.

20           MR. SOTTILE:  Mr. █████, where do you live right

21   now?

22           THE DEFENDANT:  I currently stay at ████████

23   with my girlfriend.

24           MR. SOTTILE:  Is that a house or apartment?

25           MR. SOTTILE:  That's a two-family flat.

7

1            MR. SOTTILE:  Where is that at?  Is that in the

2    city or county?

3            THE DEFENDANT:  The city.

4            THE COURT:  After taking judicial notice of the

5    court file, considering the arguments of counsel, as well

6    as the evidence that was presented to the Court, the Court

7    has also considered whether any of the following

8    additional conditions of release are required pursuant to

9    Rule 33.  Based on available information, the Court has

10   taken into consideration the nature and circumstances of

11   the offense charged, the weight of the evidence against

12   the defendant, the defendant's family ties, employment,

13   financial resources, the length of his residence in the

14   community, his record of appearance at court appearances,

15   and whether the defendant was on probation, parole, or

16   released pending trial at the time of the offense date.

17   In addition, the Court has taken into consideration the

18   extensive criminal history of this defendant.  No less

19   than five felony pleas of guilt or convictions in the

20   State of Missouri, and, in addition, a separate felony

21   finding of guilt in the State of Illinois.

22           For those collective reasons, the Court finds

23   that the defendant shall be detained pending trial no bond

24   allowed.  The Court has determined upon clear and

25   convincing evidence that no combination of nonmonetary

8

Dixon v. City of St. Louis, 04294

1  conditions and monetary conditions will secure the safety

2  of the community or other persons, including but not

3  limited to the crime victims and the witnesses.

4        Mr. ███, your next court date will be one week

5  from today, February 4, at 10:30 A.M.  It's your

6  responsibility to maintain an attorney between now and

7  that time.  If you wish to apply for the services of the

8  public defender's office, you'll have to fill out an

9  application and follow up with their processing of your

10  desire to have them represent you.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

---

1                    CERTIFICATE

2        I, Dawn L. McTeer, Certified Court Reporter,

3  do hereby certify that I am an official court reporter for

4  the Circuit Court of the City of St. Louis; that on January

5  28, 2020, I was present and reported all the proceedings had

6  in the case of STATE OF MISSOURI, Plaintiff, vs. ███

7  ███████, Defendant, Cause Nos. 2022-CR00008,

8  2022-CR00305.

9        I further certify that the foregoing pages

10  contain a true and accurate reproduction of the

11  proceedings.

12

13

14

15

16        /s/Dawn L. McTeer

17  _____

18        Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                      CCR #429

19

20

21

22

23

24

25

10

Dixon v. City of St. Louis, 04295

# EXHIBIT 212

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,           )
                             )
          Plaintiff,         )
                             )
     vs.                     )    Cause No. 2022-CR00244
                             )
TIMOTHY LAROY COX            )
                             )
          Defendant.         )

BOND REVIEW HEARING

          On the 29th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Andy Sottile, Attorney at Law.

          Mr. Don Kirby, Bond Commissioner


DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

1                JANUARY 29, 2020
2          THE COURT:  We're on the record which should
3     reflect this is 2022-CR244, State of Missouri versus
4     Timothy Cox.  Mr. Cox appears in court with the benefit of
5     legal assistance, Andy Sottile, Esquire.  Let the record
6     reflect that the State of Missouri is represented by
7     Assistant Circuit Attorney Nicholas Fischbach, Esquire.
8          Mr. Cox is charged with a three-count
9     indictment, burglary second degree, stealing, and property
10    damage second degree, the last two counts being
11    misdemeanors.  Mr. Cox has a bond currently set at $15,000
12    cash only.
13         Mr. Cox, this is your bond review or detention
14    proceeding pursuant to Rule 33.  You heard me identify
15    your attorney, Mr. Sottile, as present in court, did you
16    not?
17         THE DEFENDANT:  Yes, I did.
18         THE COURT:  Thank you.  I say that to you,
19    because he's representing you in a limited capacity for
20    today only.  Do you know that?
21         THE DEFENDANT:  Okay.  Yes, I do.
22         THE COURT:  Thank you.  So any future court
23    proceedings it's your responsibility to retain an
24    attorney.  You understand?
25         THE DEFENDANT:  Yes, sir.

---

1          THE COURT:  You can seek the assistance of the
2     public defender's office which means you have to fill out
3     an application, or you can retain a private attorney.
4     Like I said, it's your responsibility to retain an
5     attorney.  Do you understand?
6          THE DEFENDANT:  Yes.
7          THE COURT:  I also mentioned Mr. Sottile is
8     present in court, because I encourage you to follow his
9     direction about what, if anything, you should say keeping
10    in mind that you're in an open forum.  You're being
11    recorded, and anything you say can be held against you.
12    Do you understand?
13         THE DEFENDANT:  Yes, sir.  Yes, sir.  I
14    appreciate that.  The 06 section.  06 very well
15    recognized.  Thank you.  Thank you very much.
16         THE COURT:  Mr. Fischbach, you may proceed.
17         MR. FISCHBACH:  Thank you, Your Honor.  First,
18    the state requests that the Court take judicial notice of
19    the court file.
20         THE COURT:  Granted.  So ordered.
21         MR. FISCHBACH:  Thank you, Your Honor.  In this
22    case two police officers responded to a vintage clothing
23    shop, Found by the Pound, located at 3232 South Grand
24    Boulevard, burglary in the building.  When they arrived,
25    they discovered the business' front glass door had been

3                                                    4

Dixon v. City of St. Louis, 04303

```
 1   smashed.  They were provided video surveillance that
 2   depicted the defendant who smashed the glass door.  They
 3   observed him enter the store, remove several items and
 4   leave.  The manager later saw the defendant wearing the
 5   items of clothing which were distinctive.  The police
 6   officers were able to recognize the defendant when they
 7   made contact with him from the video.  When arrested, they
 8   found several described items in the pocket of the jacket
 9   he was wearing as described by the store manager as having
10   been stolen.
11          Turning now to the defendant's criminal history.
12   The state shows a 2012 attempted tampering with a motor
13   vehicle.  A 2001 distribution, manufacturing or production
14   or attempt to do so or possess with intent to distribute a
15   controlled substance.  A 2001 count of the same.  Two
16   counts of that from 2001, different cause numbers.  A
17   single count from 2000 of unlawful use of a weapon, and a
18   count from 2000 of stealing.
19          I will now turn to the bond commissioner in case
20   I missed anything.
21          MR. KIRBY:  One of those distribution charges
22   also had a UUW attached to it.
23          THE COURT:  According to the probable cause
24   statement, it appears to be there are five different
25   felony cause numbers of pleas of guilt and/or convictions.
```

5

```
 1   Is that consistent?
 2          MR. KIRBY:  We show four, Judge.  The stealing I
 3   believe is a misdemeanor.
 4          THE COURT:  Pardon me.  Four prior felony pleas
 5   of guilt and/or convictions and one misdemeanor.
 6          MR. KIRBY:  Correct.
 7          THE COURT:  Thank you.  Mr. Sottile, you may
 8   proceed.
 9          MR. SOTTILE:  Thank you, Your Honor.
10          THE COURT:  Pardon me.  I really apologize.
11   Does the victim wish to address me?
12          MR. FISCHBACH:  Your Honor, there is a victim
13   impact statement.
14          THE DEFENDANT:  Judge —
15          THE COURT:  Mr. Cox, if you could please not
16   make any statements at this point.  I'll talk to you in a
17   second.  Thank you.  Mr. Sottile, you may proceed.
18          MR. SOTTILE:  Mr. Cox or Mr. Clark, Mr. Cox,
19   where are you staying right now?
20          THE COURT:  Where am I staying?
21          MR. SOTTILE:  Do you have a home address?
22          THE DEFENDANT:  Yeah, I got more than one home
23   address.
24          MR. SOTTILE:  What's an address where you're
25   staying at?
```

6

```
 1          THE DEFENDANT:  Let's see.  We have right around
 2   the corner — it's not Hall.  Findlay and Addison.
 3          DEFENSE ATTORNEY:  Who do you stay there with?
 4          THE DEFENDANT:  Not Addison.  Right up the
 5   street.  Around the corner.  That's what?
 6          MR. SOTTILE:  Who do you stay there with?
 7          THE DEFENDANT:  I said St. Patrick's Center
 8   right around the corner.
 9          MR. SOTTILE:  St. Patrick's Center?
10          THE DEFENDANT:  Yeah.  That's the last time I
11   came into court.
12          MR. SOTTILE:  You're not on any kind of
13   probation right now or parole?
14          THE DEFENDANT:  No, sir.  Working man.  I work
15   with the city Department of Safety and Cleaning,
16   environmental staff, as well as the state department.  I
17   call myself a DOC number like a 10881844.
18          MR. SOTTILE:  Are you a veteran, Mr. Cox?
19          THE DEFENDANT:  Yes, sir.
20          MR. SOTTILE:  What branch of the military?
21          THE DEFENDANT:  Green Beret.
22          MR. SOTTILE:  Green Beret?
23          THE DEFENDANT:  Yeah.
24          DEFENSE ATTORNEY:  Are you on any kind of —
25          THE DEFENDANT:  It was called like the barretta.
```

7

```
 1          MR. SOTTILE:  Are you on any kind of medication
 2   right now?
 3          THE DEFENDANT:  I know that's an open exam.  I
 4   don't need yellow, red Tylenol.  Ice water.  Water.
 5   Public water.
 6          MR. SOTTILE:  Mr. Cox, thank you.  Your Honor,
 7   I'd ask the Court to consider making the bond 10 percent.
 8   I think it's a surety right now.
 9          THE DEFENDANT:  Man whatever.
10          DEFENSE ATTORNEY:  The government, the state
11   hasn't proven by clear and convincing evidence that
12   Mr. Cox would be a danger to the community or would not
13   appear in court.  For those reasons I'd ask the Court to
14   consider modifying the bond.
15          THE COURT:  Thank you, Mr. Sottile.  The Court
16   has considered whether any of the following conditions of
17   release are required pursuant to Rule 33.  Based on the
18   available information, including but not limited to the
19   testimony provided by the defendant, the victim impact
20   statement provided to the Court in writing, as well as
21   after taking judicial notice of the court file, including
22   the probable cause statement, as well as the defendant's
23   extensive prior criminal history, based on the available
24   information, the Court has taken into account the nature
25   and circumstances of the offense charged, the weight of
```

8

Dixon v. City of St. Louis, 04304

1  the evidence against the defendant, including but not
2  limited to video surveillance, and according to the state
3  even wearing some of the stolen property that was later
4  recovered both on the defendant and on his person, the
5  weight of the evidence against the defendant, the
6  defendant's family ties, employment, financial resources,
7  and the length of his residence in the community, as well
8  as his prior military service, and as previously indicated
9  the extensive criminal history, the Court orders the
10  defendant to be detained without bond pending trial.  The
11  Court has determined upon clear and convincing evidence
12  that no combination of nonmonetary conditions and monetary
13  conditions will secure the safety of the community or
14  other people, including but not limited to the crime
15  victims and the witnesses.
16         Mr. Cox, you heard me order you detained without
17  bond pending trial.  Your next court date is one week from
18  today, February 5, in the same courtroom.  Like I
19  explained to you before, it's your responsibility to
20  retain an attorney.  If you wish to seek the assistance of
21  the public defender's office, you do need to fill out an
22  application and follow up on processing.  Subsequent to
23  that your next court date will be March 26th or, pardon
24  me, March 2 at 9:15 in Division 26, Mr. Sottile.  Thank
25  you, Mr. Cox.  Good luck to you.

9

---

1                    CERTIFICATE
2         I, Dawn L. McTeer, Certified Court Reporter,
3  do hereby certify that I am an official court reporter for
4  the Circuit Court of the City of St. Louis; that on JANUARY
5  29, 2020, I was present and reported all the proceedings had
6  in the case of STATE OF MISSOURI, Plaintiff, vs. TIMOTHY
7  LAROY COX, Defendant, Cause No. 2022-CR00244.
8         I further certify that the foregoing pages
9  contain a true and accurate reproduction of the
10  proceedings.
11
12
13
14
15         /s/Dawn L. McTeer
16
17  _____
      Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                 CCR #429
18
19
20
21
22
23
24
25

10

# EXHIBIT 213

1

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
     STATE OF MISSOURI
2    Honorable Calea Stovall-Reid, Judge

3

4    STATE OF MISSOURI,            )
                                   )
5              Plaintiff,          )
                                   )
6        vs.                       )    Cause No. 2022-CR00306
                                   )
7    CLEO JACKSON,                 )
                                   )
8              Defendant.          )

9

10                      BOND HEARING

11                   February 3, 2020

12

13

     FOR THE PLAINTIFF:           FOR THE DEFENDANT:
14
     Mr. Jonathan Phipps          Mr. Terence Niehoff
15   Assistant Circuit Attorney   Niehoff & Hufty
     1114 Market Street, #401     818 Lafayette Avenue
16   St. Louis, MO  63101         St. Louis, MO  63104

17

18

19

20

21

22

23         KRISTINE A. TOENNIES, RMR, CRR, CCR #769
               OFFICIAL COURT REPORTER
24          CITY OF ST. LOUIS CIRCUIT COURT
            TWENTY-SECOND JUDICIAL CIRCUIT
25

2

| | |
|---|---|
| 1 | THE COURT:   Mr. Niehoff, are you the only one that |
| 2 | has a regular seven-day hearing? |
| 3 | MR. NIEHOFF:   Yes. |
| 4 | THE COURT:   Okay, so we'll do Mr. Niehoff's first. |
| 5 | What's the person's name again? |
| 6 | MR. NIEHOFF:   Cleo Jackson. |
| 7 | SHERIFF:   Good afternoon, Your Honor. |
| 8 | THE COURT:   Good afternoon.  May we do Cleo |
| 9 | Jackson first, please? |
| 10 | MR. PHIPPS:   Judge, so you know, I have victims |
| 11 | present on Mikella Moore, Leon Bobo and Ted Buckner. |
| 12 | THE COURT:   Okay, so you want to do those next; is |
| 13 | that why you're telling me? |
| 14 | MR. PHIPPS:   Yes, ma'am, if we can. |
| 15 | SHERIFF:   Present, Your Honor, Cleo Jackson. |
| 16 | THE COURT:   All right.  Mr. Niehoff, you may |
| 17 | proceed. |
| 18 | MR. NIEHOFF:   Your Honor, this was set last week. |
| 19 | We continued it because we were hired basically the same day |
| 20 | as the hearing.  Mr. Jackson is charged with assault one and |
| 21 | armed criminal action.  He has no prior convictions.  He |
| 22 | works full time at Pi Pizza in University City, lives with |
| 23 | his mother and grandmother.  He's lived there for five |
| 24 | years.  He also graduated from the Innovative Concept |
| 25 | Academy. |

1          This is a situation where it was essentially an

2   argument over -- he was on his way to pick up his sister at

3   Shady Jack.  He got into an argument with someone who was

4   blocking the street and then backed down the street.

5          My client, if you look on the probable cause

6   statement, is 5 foot tall and 105 pounds, and the victim was

7   quite a bit larger.  He was -- the victim was shot one time

8   I believe in the wrist.  His bond right now is set at

9   $50,000 cash only.  I would ask the Court to consider

10  $30,000, 10 percent.  Mr. Jackson is able to make that.

11          Certainly this is a situation where the community

12  itself is not in danger.  Mr. Jackson's had local counsel.

13  He has no failures to appear, so appearance will not be an

14  issue.  I think that bond would assure his appearance and

15  would assure the safety of the community, and we could take

16  it to trial from there.

17          THE COURT:   Mr. Phipps?

18          MR. PHIPPS:   Your Honor, first I would ask if

19  Mr. Niehoff could enlighten us as to the defendant's

20  financial resources.  I understand he works full time at Pi

21  Pizza.

22          MR. NIEHOFF:   Yes, I just indicated he could

23  handle a $30,000, 10 percent bond.  I'm saying that's what

24  he can handle.

25          MR. PHIPPS:   Okay, that's the most he can handle?

1              MR. NIEHOFF:   Yes.

2              MR. PHIPPS:   Thank you.  Your Honor, in this

3    particular case, we are dealing with an assault one and

4    armed criminal action.  As Mr. Niehoff already told you,

5    this was a dispute over a parking space that ended in the

6    defendant -- I'm sorry -- yeah, in the defendant pulling a

7    gun and shooting the victim.

8              I think that that sort of behavior does represent

9    a serious threat to the community at large because he was

10   willing to lose his cool over a dispute over a parking place

11   and shoot somebody.  I mean, that's the level of aggravation

12   you can go through any given day of the week.

13             The State would ask that the bond be raised to

14   $100,000 cash only with the added condition that he possess

15   no weapons, be placed on house arrest, be placed on

16   electronic monitoring to effectuate the house arrest and

17   stay away from the victim.

18             THE COURT:   Bond commissioner?

19             COMMISSIONER KEARBEY:   Judge, we don't show any

20   priors, and we agree with the information that Mr. Niehoff

21   had as far as his job and background.

22             THE COURT:   Mr. Jackson, I'm concerned about the

23   safety of the community considering the allegations here.

24   You are accused of losing your mind over a parking space, so

25   I think that makes you dangerous.

Dixon v. City of St. Louis 05042

1        THE DEFENDANT:    Am I able to explain myself,

2   ma'am?

3        THE COURT:    No, I don't think your attorney wants

4   you to make any statements because we are making a record.

5        MR. NIEHOFF:    Judge, I think what Mr. Jackson

6   wants to indicate was that it wasn't a matter of him losing

7   his mind.  It was a matter of the victim getting out of his

8   car, coming up to Mr. Jackson's car, yelling at him, pulling

9   the door open, and then Mr. Jackson having to defend

10  himself.

11       And Mr. Jackson is, as I indicated, a small

12  individual.  He's 5 foot, he's 105 pounds, and this

13  individual was much larger and it was a self-defense

14  situation.  He has not had anyone ever come and try and pull

15  him out of a car before, so I think that it's a situation

16  where he's gone his whole life without any prior

17  convictions, without any serious arrests.  It's just a --

18  this is a situation that is clearly not going to repeat

19  itself.

20       If the Court doesn't want him to drive, we'll make

21  certain that he doesn't drive.  If the Court wants him on

22  home confinement, we'll put him on home confinement, except

23  for perhaps work release.  But it's a situation where it

24  doesn't make a lot of sense to lock this man up.  You know

25  this is going to go to trial.  It's going to take a year to

1  go to trial, and he's going to be locked up for a whole year

2  for essentially what would be a self-defense situation.

3          MR. PHIPPS:   Your Honor?

4          THE COURT:   Yes.

5          MR. PHIPPS:   As I'm sure Mr. Niehoff would be the

6  first to point out, these are merely allegations at this

7  time, and we take those allegations as they lay as

8  represented in the probable cause statement.  I would ask

9  that we not consider any alternative facts that are

10  presented outside of that sworn record as this isn't a

11  trial.  This isn't a time to get down to the truth of the

12  matter of what happened or to hear affirmative defenses.

13  I'm sure most of the defendants you see on the screen today

14  would say that they didn't do it or they had a very good

15  reason to do it, but this isn't a time for us to hear that

16  case or bring in that evidence.

17          What we have is a probable cause statement which

18  includes the strength of the state's case, including

19  eyewitness testimony that this is what happened, Judge.  The

20  probable cause statement doesn't include any information

21  about any alleged aggressive actions on the part of the

22  victim.

23          THE COURT:   All right.  Well, the Court finds that

24  based on the probable cause statement that the Court makes a

25  finding that there's clear and convincing evidence that no

1    combination of nonmonetary conditions or monetary conditions

2    will secure the safety of the community or other person,

3    including but not limited to other people in the community.

4    Therefore, the Court sets the matter at no bond allowed.

5    That concludes the record.  Okay, that's it, Mr. Jackson.

6    So your attorney can file a speedy trial request on your

7    behalf at this point since I set it at no bond.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE

2          I, Kristine A. Toennies, Registered Merit

3    Reporter, Certified Realtime Reporter, and Certified Court

4    Reporter, do hereby certify that I am an official court

5    reporter for the Circuit Court of the City of St. Louis;

6    that on February 3, 2020, I was present and reported all the

7    proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8    vs. CLEO JACKSON, Defendant, Cause No. 2022-CR00306.

9          I further certify that the foregoing pages contain

10   a true and accurate transcription of the proceedings.

11

12

13          /s/ Kristine A. Toennies
            _____
14          Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 214

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
          Plaintiff,        )
                            )
     vs.                    )    Cause No. 2022-CR00329
                            )
██████████████             )
                            )
          Defendant.        )

BOND REVIEW HEARING

          On the 30th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Atorney, City of St.
Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Kristi Flint, Attorney at Law.

          Mr. Victory Kelly, Bond Commissioner


          DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
                 OFFICIAL COURT REPORTER
               CITY OF ST. LOUIS CIRCUIT COURT
               TWENTY-SECOND JUDICIAL CIRCUIT

---

1              JANUARY 30, 2020
2         THE COURT:  We're on the record which should
3    reflect this is 2022-CR329, State of Missouri versus --
4    how do you pronounce that?
5         THE DEFENDANT:  ███████.
6         THE COURT:  ███████.  Mr. ██████ appears
7    in open court via video link with the benefit of legal
8    assistance, Kristi Flint, Esquire.  The State of Missouri
9    is represented by Assistant Circuit Attorney Nicholas
10   Fischbach.  Mr. ██████ is charged and faces a one-count
11   indictment resisting arrest, a Class E felony.  Currently
12   his bond is set at $10,000 cash only.
13        Mr. ██████, you heard me identify your attorney
14   for the record, correct?
15        THE DEFENDANT:  Yes, sir.
16        THE COURT:  Thank you.  Ms. Flint represents you
17   for the limited purposes of this proceeding only.  Do you
18   understand?
19        THE DEFENDANT:  Yes.
20        THE COURT:  In other words, she'll speak on your
21   behalf for today's proceeding, including the bond hearing
22   which we will address momentarily.  Do you understand
23   that?
24        THE DEFENDANT:  Yes, sir.
25        THE COURT:  Thank you.  At your future court

                                                        2

---

1    appearances, it's your obligation to retain an attorney.
2    Do you understand?
3         THE DEFENDANT:  Yes, sir.
4         THE COURT:  If you wish to apply for the
5    services of the public defender, you're invited to do so.
6    However, it's your obligation to follow up with them and
7    ensure they are properly processing your application.  Do
8    you understand?
9         THE DEFENDANT:  Yes, sir.
10        THE COURT:  If you wish to seek the services of
11   a private attorney, you are invited to do so.  Do you
12   understand?
13        THE DEFENDANT:  Yes, sir.
14        THE COURT:  Thank you, Mr. ██████.  Ms. Flint, do
15   you have an announcement on behalf of your client at this
16   time?
17        MS. FLINT:  I do, Your Honor.  On behalf of
18   Mr. ██████, I would waive formal reading of the charging
19   instrument, and enter a plea of not guilty on his behalf.
20        THE COURT:  Hearing Mr. ██████ is entering a plea
21   of not guilty and waiving reading of the indictment, we'll
22   proceed with the bond reduction hearing.  You may proceed,
23   Mr. Fischbach.
24        MR. FISCHBACH:  Before heading into this, I want
25   to clarify.  My records show that Mr. ██████ is currently

                                                        3

---

1    being charged with unlawful possession of a firearm.  The
2    bond is $30,000 cash only.
3         THE COURT:  Thank you for correcting me.  I
4    obviously pulled the wrong case.  Forgive me.  Just so
5    we're clear for the record.  Thank you for the
6    clarification.  Mr. ██████ faces a one-count indictment of
7    unlawful possession of a firearm, a Class D felony.  His
8    bond is currently set at $30,000 cash only.  Did you hear
9    me say that, Mr. ██████?
10        THE DEFENDANT:  Yes, sir.
11        THE COURT:  I apologize for my error.  Forgive
12   me.  Thank you.  Now you may proceed, Mr. Fischbach.
13        MR. FISCHBACH:  Thank you, Your Honor.  First,
14   the state requests the Court take judicial notice of the
15   court file.
16        THE COURT:  Granted and so ordered.
17        MR. FISCHBACH:  Thank you, Your Honor.  In this
18   case officers were on covert patrol when they observed two
19   vehicles traveling in tandem.  One had improper
20   registration.  They followed the vehicles to
21   ██████ where the vehicles stopped and parked.  At which
22   time the officers pulled in behind them and activated
23   their emergency equipment.  The defendant, who had exited
24   his vehicle, placed his hands in jacket pockets and walked
25   between the two parked cars.  The officers got out of the

                                                        4

1  vehicles and requested he show his hands, at which time he
2  withdrew his hand and threw an object.  The object was
3  found to be a 9-millimeter semiautomatic handgun.  After
4  being Mirandized, defendant stated that he was taking the
5  gun to his home and had thrown it into the yard, because
6  he was a convicted felon.
7        THE COURT:  Thank you.  Ms. Flint, you may
8  proceed.
9        MS. FLINT:  Thank you.  Mr. █████, can you hear
10 me okay?
11       THE DEFENDANT:  Yes, ma'am.
12       MS. FLINT:  Are you employed, sir?
13       THE DEFENDANT:  Huh.
14       MS. FLINT:  Are you employed?  Do you have a
15 job?
16       THE DEFENDANT:  Yes, ma'am.  I get disability,
17 ma'am.
18       MS. FLINT:  All right.  Do you have any way of
19 making a bond in this case?  Do you have any money
20 available for that?
21       THE DEFENDANT:  I can make a bond.
22       MS. FLINT:  You can make a thousand dollars?
23       THE DEFENDANT:  Yes.
24       MS. FLINT:  Thank you.  I don't have any further
25 questions for the defendant at this point.

5

1        THE COURT:  Do you want to ask him where he
2  lives?
3        MS. FLINT:  Yes, sir.  Mr. Kelly, are you living
4  at █████████? Do you live at █████████?
5        THE DEFENDANT:  Yes, ma'am.
6        THE COURT:  That's fine.
7        MS. FLINT:  Don't talk any more about the case.
8  The prosecutor is in here.  He's listening to everything
9  you're saying.  Thank you.  Your Honor, at this point, I
10 would ask that the Court amend this bond to 10,000
11 10 percent.
12       THE COURT:  Mr. Fischbach, any comments?
13       MR. FISCHBACH:  Your Honor, based on the
14 defendant's criminal history of which there are a number
15 of convictions, including a 2011 felony possession.
16       THE COURT:  How many convictions does he have?
17 You only told me about the one that's in the probable
18 cause statement.  How many convictions does he have?
19       MR. FISCHBACH:  I'm counting one, two, three,
20 four, five, six, seven, seven, including an unlawful use
21 of a weapon from 1999.  I turn to the bond commissioner in
22 case I missed any.
23       MR. KELLY:  Judge, he didn't miss any of the
24 convictions.  The convictions are in 1999 trafficking
25 drugs second, probation.  1999 unlawful use of a weapon,

6

1  one year probation.  2002 possession of a controlled
2  substance.  2003 driving while license revoked, two days
3  confinement.  2003 driving license revoked, seven days
4  confinement.  2004 driving license revoked, two days
5  confinement.  2012 nonsupport, five years probation.
6  2011, distributing, delivering, manufacturing a controlled
7  substance, five years probation.
8        THE COURT:  It sounds like at least three to
9  four of those prior convictions are driving while license
10 revoked.
11       MR. KELLY:  That's correct.
12       THE COURT:  Which I do not take lightly,
13 Mr. Kelly, and another conviction for nonsupport.
14       MR. KELLY:  That's correct.
15       THE COURT:  Can I ask you is there a reason you
16 needed to sit down?  Would you explain to me?
17       THE DEFENDANT:  Yes, sir.  I'm short of breath.
18       THE COURT:  Do you have a medical condition?
19       THE DEFENDANT:  Yeah, I've got one lung.  I was
20 shot five times.
21       THE COURT:  As a consequence of being shot, you
22 had a lung removed or it's inoperable.  If I understand
23 you correctly, you're limited to the use of one lung?
24       THE DEFENDANT:  Yes, sir.
25       THE COURT:  That restricts your mobility as a

7

1  consequence of having one lung?
2        THE DEFENDANT:  Yes.
3        THE COURT:  You're frequently out of breath, and
4  you cannot stand for a long period of time.  Do I
5  understand you correctly?
6        THE DEFENDANT:  Yes, sir.
7        THE COURT:  Are you seeing a physician
8  currently?
9        THE DEFENDANT:  I was.
10       THE COURT:  When was the last time you saw a
11 physician?
12       THE DEFENDANT:  Six months ago.
13       THE COURT:  Over the state's objection, the
14 request to lower the bond to $10,000 10 percent cash only
15 not secured, 10 percent cash only is granted.  The Court
16 finds, after considering less restrictive circumstances
17 under Rule 33 and taking into consideration the
18 circumstances of the offense charged, the weight of the
19 evidence against the defendant, his family ties, and
20 financial resources, as well as his length of residence in
21 the community, and his record of convictions, the Court
22 grants Ms. Flint's reduction and bond to $10,000
23 10 percent.  You'll have to come up with a housand dollars
24 cash to bond out.
25       THE DEFENDANT:  Yes, sir.

8

Dixon v. City of St. Louis, 04229

1          THE COURT:  If you do not bond out, you'll have

2    another bond detention hearing one week from today,

3    February 6th.  If you do bond out between now and

4    February 6th, your next court date is in Division 25 on

5    March 30.  It's your obligation to come back with an

6    attorney.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Thank you.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

1                   CERTIFICATE

2          I, Dawn L. McTeer, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on January

5    30, 2020, I was present and reported all the proceedings had

6    in the case of STATE OF MISSOURI, Plaintiff, vs. ███████

7    ███████, Defendant, Cause No. 2022-CR000329.

8          I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15          /s/Dawn L. McTeer

16   _____

17        Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                     CCR #429

18

19

20

21

22

23

24

25

10

Dixon v. City of St. Louis, 04230

# EXHIBIT 215

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge


STATE OF MISSOURI,          )
                            )
          Plaintiff,        )
                            )
     vs.                    )   Cause No. 2022-CR00289
                            )
BRANDON EDWARDS             )
                            )
          Defendant.        )


BOND REVIEW HEARING

          On the 27th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark, II, Judge of Division 16B
of the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Eric Barnhart, Attorney at Law.

          Mr. Don Kirby, Bond Commissioner


          DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
               OFFICIAL COURT REPORTER
             CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT

---

**Page 2**

JANUARY 27, 2020

1
2     THE COURT:  We're on the record which should
3  reflect this is 2022-CR289, State of Missouri versus
4  Brandon Edwards.  Mr. Edwards appears in open court via
5  video link with the benefit of legal assistance, Eric
6  Barnhart, Esquire.  Also, let the record reflect the State
7  of Missouri is represented by Nicholas Fischbach.
8          Mr. Edwards, your attorney for the limited
9  purpose of this proceeding is in court.  That's
10 Mr. Barnhart.  You should be able to see him on the video
11 link.  Let me stress to you that you're in open court.  I
12 would discourage you from saying anything about your case.
13 I would also encourage you to follow the lead from
14 Mr. Barnhart, like I said, who is your attorney for the
15 limited purpose of this proceeding.  Do you understand?
16     THE COURT:  Yes, sir.
17     THE COURT:  In addition to your initial
18 appearance and arraignment, we'll also be reviewing the
19 conditions of your bond as well.  Mr. Barnhart, are you
20 prepared to make an announcement at this time?
21     MR. BARNHART:  Yes, Your Honor.  Mr. Edwards
22 pleads not guilty.  We waive the formal reading of the
23 complaint.
24     THE COURT:  Thank you.  Let the record reflect
25 that Mr. Edwards is charged with one count of assault

---

**Page 3**

1  third degree, a Class E felony.  His bond is currently set
2  at 25,000 or 10 percent cash.  Mr. Fischbach, you may
3  proceed with the information relevant to the conditions
4  affecting Mr. Edwards' bond.
5      MR. FISCHBACH:  Yes, Your Honor.  First, the
6  state requests that the Court take judicial notice of the
7  court file, including the probable cause.
8      THE COURT:  Granted.
9      MR. FISCHBACH:  Your Honor, this case involves
10 the defendant assaulting a victim who, as far as the
11 victim knows, she did not know the defendant before this
12 event.  It escalated from words to physical interaction to
13 punches to the face which left the victim with a fractured
14 bone.  Additionally, defendant admitted to punching the
15 victim.  Your Honor, the defendant does have a mother in
16 the area.  He is employed to our knowledge.
17     THE COURT:  Why don't you -- Mr. Barnhart is
18 here as you know.  Do you wish to call any criminal
19 history to the Court's attention regarding the defendant?
20     MR. FISCHBACH:  Yes, Your Honor.  He is
21 currently on probation for two counts of child molestation
22 first.
23     THE COURT:  Is that in the city or the county?
24     MR. BARNHART:  St. Louis County.
25     THE COURT:  Thank you.

---

**Page 4**

1      MR. BARNHART:  Judge Wallach, Division 12.
2      THE COURT:  Is that an SIS or SES, do you know?
3      MR. BARNHART:  I think it's an SES.  I think
4  it's a seven-year SES.
5      MR. KIRBY:  Seven years SES, five years
6  probation.
7      MR. BARNHART:  On 5-2-19 there's a court order
8  signed by Judge Wallach.  It says by agreement of parties,
9  the Court reinstates the defendant's probation.  They
10 added a whole bunch of conditions.  They wanted him to do
11 outpatient drug court, verify attendance to the
12 supervising officer.  To verify such to his counselor.
13 Defendant abide by directives of the counselor.
14 Defendant will submit a urinalysis.  They wanted him to
15 complete a psychological evaluation and treatment as
16 directed by probation and parole.  That's some of the
17 background.
18     THE COURT:  Thank you for delving into such
19 detail, Mr. Barnhart.  I appreciate it.
20     MR. BARNHART:  Thank you.
21     THE COURT:  Commissioner Kirby is, likewise,
22 present.  Anything additional regarding the defendant's
23 criminal history?
24     MR. KIRBY:  No, Judge, that's it as far as
25 probation.

1    THE COURT:  Does the complaining witness wish to
2  address me at this time?
3    MR. FISCHBACH:  Your Honor, they are not here.
4    THE COURT:  I'll take that as a no.
5  Mr. Barnhart, anything at this time?
6    MR. BARNHART:  Yes, I want to talk to
7  Mr. Edwards real quick.  Hi, Mr. Edwards.  I'm Eric
8  Barnhart.  I'm representing you today only.  I'm trying to
9  get your bond reduced.  Did you follow up with some of the
10  things I read to the Judge about going to basic and doing
11  a psychological evaluation?
12    THE DEFENDANT:  What do you mean?  Am I
13  completing it?
14    MR. BARNHART:  Just give the Court an update on
15  some of the things you've been doing on your probation
16  that might help you.
17    THE DEFENDANT:  I been going to basic drug
18  treatment.  I go once a week every Monday.  I have not
19  submitted a urinalysis in about six months.  I just
20  submitted one to my PO.  Pretty much go to NA meetings.
21    THE COURT:  You said NA?
22    THE DEFENDANT:  Yes.
23    MR. BARNHART:  What about the psychological
24  counseling or evaluation?
25    THE DEFENDANT:  I went to one maybe about seven

5

1  months ago.  I have not followed up with anything further.
2    MR. BARNHART:  Are you on any sort of medication
3  for bipolar?
4    THE DEFENDANT:  Yes.  Yes, sleeping aid.
5    MR. BARNHART:  Have you been diagnosed with any
6  sort of mental health condition?
7    THE DEFENDANT:  Well, the diagnosis was done.
8  It was just an evaluation.  The doctor, he pretty much did
9  a survey on me.  Then pretty much diagnosed me with
10  bipolar and depression.
11    MR. BARNHART:  Okay.  Are you on any sort of
12  medication to treat your bipolar?
13    THE DEFENDANT:  I do not remember the name of
14  it.  I know that I'm on Buspar which is a sleep aid.  It's
15  a generic.
16    THE COURT:  He's asking you specifically about
17  the bipolar disorder.  Are you on any specific medication
18  to address the bipolar?  You told us about the sleep
19  deprivation.  If you know, what medication are you on
20  regarding your bipolar disorder?
21    THE DEFENDANT:  I don't remember the name of it.
22  I am currently taking some.
23    THE COURT:  Sorry for interrupting.
24    MR. BARNHART:  Thank you, Judge.  I'm assuming
25  you lost your job, because you were working as a courier

6

1  for Lab Express.
2    THE DEFENDANT:  I have not been informed that my
3  employment has been terminated as of yet, because Barnes
4  isn't the only place we pick up and deliver specimens from
5  and to.
6    MR. BARNHART:  Where would you live if you got
7  released?
8    THE DEFENDANT:  At my own residence at 10100
9  Cabana Club Drive in St. Ann, Missouri.
10    MR. BARNHART:  Is there anybody out there that
11  could post a 10 percent bond for you?
12    THE DEFENDANT:  Yes.
13    MR. BARNHART:  Do you know how much they can
14  afford?  Right now it's 25,000 10 percent which would mean
15  $2,500.  I could ask the Judge to lower it.  What's the
16  most you could afford?  Possibly a thousand?
17    (There was a discussion off the record.)
18    MR. BARNHART:  Judge, I think we've got a
19  consent order now based on what he can afford and talking
20  to the circuit attorney.
21    THE COURT:  Is that true, Mr. Fischbach?
22    MR. FISCHBACH:  It is, Your Honor.
23    THE COURT:  Do you want to articulate that for
24  the record?
25    MR. BARNHART:  Bond will be reduced to 10,000

7

1  10 percent.  Stay away from Barnes.
2    MR. FISCHBACH:  Barnes-Jewish and the victim.
3    MR. BARNHART:  Barnes-Jewish and the complaining
4  witness.  We want a psychological evaluation.
5    MR. FISCHBACH:  I think he's already doing that
6  through his probation.  Condition to obey all conditions
7  of his probation.
8    MR. BARNHART:  Basically obey all the conditions
9  of probation on his St. Louis County case.
10    THE COURT:  The state is consenting to those
11  circumstances?
12    MR. FISCHBACH:  Yes.
13    THE COURT:  Very well.  We're off the record.
14  Your bond by agreement of the state has been reduced to
15  $10,000 10 percent, and you need to stay away from Barnes
16  Hospital and the complaining witness.
17    THE DEFENDANT:  Yes, sir.
18    THE COURT:  The next court date, Mr. Barnhart,
19  will include the -- February 3, 10:30.  The court date
20  he'll have to appear Division 25, 2-27 at 9:15 A.M.  Did
21  you hear all that?
22    THE DEFENDANT:  Yes, sir.
23
24
25

8

Dixon v. City of St. Louis, 04248

```
1                        CERTIFICATE

2              I, Dawn L. McTeer, Certified Court Reporter,

3    do hereby certify that I am an official court reporter for

4    the Circuit Court of the City of St. Louis; that on January

5    27, 2020, I was present and reported all the proceedings had

6    in the case of STATE OF MISSOURI, Plaintiff, vs. BRANDON

7    EDWARDS, Defendant, Cause No. 2022-CR00289.

8              I further certify that the foregoing pages

9    contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15            /s/Dawn L. McTeer

16            _____

17            Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                          CCR #429
18

19

20

21

22

23

24

25
                                                        9
```

Dixon v. City of St. Louis, 04249

# EXHIBIT 216

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,                )
                                  )
          Plaintiff,              )
                                  )
          vs.                     )        Cause No. 2022-CR00342
                                  )
██████████                        )
                                  )
          Defendant.              )

BOND REVIEW HEARING

          On the 31st day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

          The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

          The Defendant was present by video link and
was represented by Tony Muhlenkamp, Attorney at Law.

          Mr. Don Kirby, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

1          JANUARY 31, 2020
2          THE COURT:  We're on the record.  This is
3     2022-CR342, State of Missouri versus ██████████.
4     Mr. ████ appears in open court via video link with the
5     benefit of legal assistant, Tony Muhlenkamp, Esquire, who
6     is waving his hand at you at this time.  The State of
7     Missouri is represented by Assistant Circuit Attorney
8     Nicholas Fischbach.
9          Mr. ████, did you hear me identify your
10    attorney for the record?
11         THE DEFENDANT:  Yes, sir.
12         THE COURT:  That's Mr. Muhlenkamp.  He's an
13    attorney who is going to represent you for the limited
14    purposes of this proceeding only.  Do you understand?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  In other words, he represents you
17    for today only.  Do you understand?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  It's your obligation to come back
20    with an attorney at any future court appearances.  Do you
21    understand that?
22         THE DEFENDANT:  Yes, sir.
23         THE COURT:  If you pursue the services of the
24    public defender, you're invited to do so.  However, to do
25    that you have to fill out an application and follow up

3

---

1     with them.  Do you understand?
2          THE DEFENDANT:  Yes, sir.
3          THE COURT:  If you wish to pursue the services
4     of a private attorney, you're invited to do so as well.
5     Do you understand?
6          THE DEFENDANT:  Yes, sir.
7          THE COURT:  Thank you.  Now, you're charged with
8     one count of burglary second degree, a Class D felony, and
9     one count of stealing, also a Class D felony, a two-count
10    indictment, and your bond is set at $5,000 cash only.
11    We're going to discuss your bond conditions momentarily.
12    Do you understand that?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  Mr. Muhlenkamp may or may not ask
15    you questions about your situation.  Do you understand?
16         THE DEFENDANT:  Yes, I do.
17         THE COURT:  Please resist offering any
18    information or saying anything unless you're directed by
19    Mr. Muhlenkamp.  Do you understand?
20         THE DEFENDANT:  Yes, sir.
21         THE COURT:  Thank you.  In light of all that,
22    Mr. Muhlenkamp, do you have an announcement at this time?
23         MR. MUHLENKAMP:  Yes, Judge.  On behalf of
24    Mr. ████, we'll waive formal reading and enter a plea of
25    not guilty at this time, sir.

4

---

Dixon v. City of St. Louis, 04288

1          THE COURT:  Thank you.  Mr. Fischbach, you may
2    proceed.
3          MR. FISCHBACH:  Thank you, Your Honor.  First,
4    the state requests the Court take judicial notice of the
5    court file.
6          THE COURT:  So noted.
7          MR. FISCHBACH:  Thank you, Your Honor.  In this
8    case police officers were contacted by a witness who
9    indicated on his 911 call that he saw three men taking
10   property from a building and was concerned that a burglary
11   was underway.  He took a photograph of the car that was
12   being utilized, and one of the individuals was visible in
13   this photo.  That individual was wearing a headband
14   flashlight and a set of distinctive clothing.  The
15   officers began investigating and determined that the
16   apartment at ████████████████, belonging to
17   victim K.W. had been burglarized.  The items stolen
18   exceeded $750 in value.  Officers were able to locate the
19   car the burglars had used and followed it to AC Pawn Shop
20   where they encountered the defendant and two other
21   individuals who were attempting to pawn one of the items
22   that was stolen in the burglary.  A search of the car
23   found a number of other items that had been stolen in the
24   burglary.  The defendant was wearing the same clothing,
25   including a headband flashlight as in the photo taken by

                                                            5

1    the witness.
2          Your Honor, additionally, the state shows a 2004
3    conviction for trafficking in the second degree for which
4    the defendant received five years SES, two years probation
5    which were revoked in 2006 for five years of confinement.
6    A 2006 possession of a controlled substance for which the
7    defendant received five years of confinement.  And 2010
8    distributing for which the defendant received a 10-year
9    SES and two years of probation.
10         I will turn to the bond commissioner in case
11   there are any convictions I missed.
12         MR. KIRBY:  We agree with the priors.
13         THE COURT:  Does the victim wish to address the
14   Court?
15         MR. FISCHBACH:  Not at this time.
16         THE COURT:  Mr. Muhlenkamp.
17         MR. MUHLENKAMP:  Thank you, Your Honor.
18   Mr. ████, can you hear me okay?
19         THE DEFENDANT:  Yes, sir.
20         MR. MUHLENKAMP:  As the Judge indicated, he
21   appointed me to represent you for today only.  My goal is
22   to make sure the Judge has accurate information so he can
23   make an informed decision about your bond.
24         THE DEFENDANT:  Yes, sir.
25         MR. MUHLENKAMP:  I don't want to know about any

                                                            6

1    of the facts of your case.  Please don't volunteer about
2    the facts.  I do want to know about your background.
3    Please keep your voice up and tell the truth.
4          THE DEFENDANT:  Yes, sir.
5          MR. MUHLENKAMP:  Recently did somebody from the
6    bonding office come ask you about your background from the
7    community?
8          THE DEFENDANT:  Yes, sir.
9          MR. MUHLENKAMP:  Did you answer those questions
10   truthfully?
11         THE DEFENDANT:  Yes, sir.
12         MR. MUHLENKAMP:  I'm looking at some paperwork
13   that says you have a wife and two children; is that
14   correct?
15         THE DEFENDANT:  Yes, sir.
16         MR. MUHLENKAMP:  If you were released on bond,
17   would you live with them?
18         THE DEFENDANT:  Yes, sir, I would.
19         MR. MUHLENKAMP:  What's your wife's name?
20         THE DEFENDANT:  ████████.
21         MR. MUHLENKAMP:  How old are your children?
22         THE DEFENDANT:  13 and 10.
23         MR. MUHLENKAMP:  What are their names?
24         THE DEFENDANT:  ██████ and -- ████████
25   ████ and -- damn.  Sorry.

                                                            7

1          MR. MUHLENKAMP:  That's okay.  I know you're
2    nervous.
3          THE DEFENDANT:  ████████.
4          MR. MUHLENKAMP:  They both live with you and
5    your wife?
6          THE DEFENDANT:  Yes, sir.
7          MR. MUHLENKAMP:  You guys live there on ████
8    ████?
9          THE DEFENDANT:  Yes, sir, we do.
10         MR. MUHLENKAMP:  That's where you would live if
11   you got out?
12         THE DEFENDANT:  Yes, sir.
13         MR. MUHLENKAMP:  Are you currently working?
14         THE DEFENDANT:  No, sir, not right at this
15   moment.
16         MR. MUHLENKAMP:  Fair enough.  Your bond is
17   currently set at $5,000 cash only.  Are you able to post
18   that bond, sir?
19         THE DEFENDANT:  No, sir.
20         MR. MUHLENKAMP:  Are you able to post any bond?
21         THE DEFENDANT:  I could try.  I could get out
22   and post one.  I know I can.
23         MR. MUHLENKAMP:  I understand.  You've got to
24   post it to get out.  That's what I'm asking you.  As we
25   stand here today, do you have any financial resources to

                                                            8

Dixon v. City of St. Louis, 04289

1 post a bond?
2       THE DEFENDANT: No, sir.
3       MR. MUHLENKAMP: No money in a bank account,
4 anything like that?
5       THE DEFENDANT: No, sir. I don't have a bank
6 account.
7       MR. MUHLENKAMP: Does your wife work?
8       THE DEFENDANT: No, sir. We was waiting on
9 income taxes.
10       MR. MUHLENKAMP: Fair enough. Mr. ▓▓▓, what
11 I'm going to do here I'm going to make an argument to the
12 Judge in a minute and try to get your bond reduced. He
13 might reduce it. He might not. What I'm going to tell
14 you, regardless of the Judge's decision, I'm going to
15 recommend you apply for a public defender. It appears you
16 don't have any money. Regardless of what happens, you're
17 going to need a lawyer going forward. Ask the guards
18 there nicely for the paperwork. They'll give it to you.
19 Sit tight. You'll hear any second. Argument whenever
20 you're ready.
21       THE COURT: Please.
22       MR. MUHLENKAMP: Your Honor, I'm asking the
23 Court to consider a recognizance bond in this case in
24 light of his lack of financial resources. However, I do
25 understand he's got a lengthy criminal history. I would

9

1 note it's all nonviolent. The most recent one is
2 approximately 10 years old. It appears he did
3 successfully complete his probation. He's currently
4 charged with a nonviolent offense also. I would ask the
5 Court to consider a recognizance bond and stay away from
6 ▓▓▓ and victim K.W. If the Court is not inclined
7 to do that, I would ask the Court keep the bond where it's
8 at.
9       THE COURT: Is he on probation, on parole, or
10 have a pending case?
11       MR. KIRBY: He stated to us he was. According
12 to REJIS, he is not.
13       THE COURT: Is the felony from 2005 his most
14 recent prior?
15       MR. KIRBY: 2010 he had a distribution, delivery
16 under five grams of marijuana. He got 10 years SES, two
17 years probation.
18       THE COURT: He has three drug priors?
19       MR. KIRBY: Correct. That was his most recent.
20       THE COURT: What's his relationship with the
21 victim?
22       MR. FISCHBACH: Your Honor, the state is unaware
23 of any relationship.
24       THE COURT: Where did he say he lives at?
25       MR. MUHLENKAMP: He lives on ---

10

1       MR. KIRBY: ▓▓▓.
2       MR. MUHLENKAMP: He lives on ▓▓▓. The
3 victim lives on ▓▓▓.
4       THE COURT: The Court has considered less
5 restrictive circumstances available to the defendant under
6 Rule 33. The Court also has taken judicial notice of its
7 court file, the probable cause statement, the defendant's
8 three prior felony findings of guilt, his criminal
9 history, and the allegations in this case involving ▓▓▓
10 ▓▓▓. The Court will restructure the bond as
11 follows. From $5,000 cash only to $5,000 or 10 percent
12 cash only. Report to EMASS. That will conclude the
13 conditions at this time. If you do not bond out, your
14 next court date is one week from today, February 7. Did
15 you hear me?
16       THE DEFENDANT: Yes, sir.
17       THE COURT: As I explained, it will be your
18 obligation to come back with an attorney even if it's as
19 early as one week from today.
20       THE DEFENDANT: Yes, sir.
21       THE COURT: If you do successfully bond out,
22 your next court date will be March 4, Division 26.
23
24
25

11

1                CERTIFICATE
2       I, Dawn L. McTeer, Certified Court Reporter,
3 do hereby certify that I am an official court reporter for
4 the Circuit Court of the City of St. Louis; that on January
5 31, 2020, I was present and reported all the proceedings had
6 in the case of STATE OF MISSOURI, Plaintiff, vs. ▓▓▓
7 ▓▓▓, Defendant, Cause No. 2022-CR00342.
8       I further certify that the foregoing pages
9 contain a true and accurate reproduction of the
10 proceedings.
11
12
13
14
15       /s/Dawn L. McTeer
16       _____
17       Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                 CCR #429
18
19
20
21
22
23
24
25

12

Dixon v. City of St. Louis, 04290

# EXHIBIT 217

1          IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
                          STATE OF MISSOURI
2              Honorable Calea Stovall-Reid, Judge

3    STATE OF MISSOURI,              )
                                     )
4                    Plaintiff,      )
                                     )
5            vs.                     )      Cause No. 1922-CR02448-01
                                     )      Cause No. 1922-CR03584
6    DAMARKIS GARY,                  )
                                     )
7                    Defendant.      )

8
              BOND HEARING - INITIAL APPEARANCE
9
                      February 3, 2020
10

11
     FOR THE PLAINTIFF:              FOR THE DEFENDANT:
12
     Mr. Jonathan Phipps            Mr. Sam E. Poston
13   Assistant Circuit Attorney     7751 Carondelet Ave., Ste. 700
     1114 Market Street, #401       Clayton, MO  63105
14   St. Louis, MO  63101

15

16

17

18

19

20

21

22

23          KRISTINE A. TOENNIES, RMR, CRR, CCR #769
                     OFFICIAL COURT REPORTER
24           CITY OF ST. LOUIS CIRCUIT COURT
                TWENTY-SECOND JUDICIAL CIRCUIT
25

1    THE COURT:   All right.  I'm sorry, what's your

2    name, sir?

3    THE DEFENDANT:   Damarkis Gary.

4    MR. POSTON:   Hello, Damarkis.  I believe the

5    prosecution and I have agreed to -- well, let me go back.

6    He has two cases on the docket.  One we have not discussed

7    because it's actually on no bond from Division 26, I

8    believe.

9    MR. PHIPPS:   Line 4, Your Honor, is --

10   THE COURT:   Yeah, that would be a no bond.  So I

11   mean I don't know --

12   MR. PHIPPS:   We're discussing it's actually a

13   capias out of Division 26, so I don't believe it ought to be

14   in 16B.

15   THE COURT:   Oh, okay.  So it's already no bond

16   then.

17   MR. PHIPPS:   Right.

18   MR. POSTON:   The other one we already agreed to.

19   THE COURT:   Well, I don't know what the point of

20   giving him a bond on this is with your other charges are no

21   bond allowed, so even if you posted a bond on this

22   possession case, you still aren't going anywhere.

23   MR. POSTON:   Right.  I was just going to change it

24   so we could -- in case we get Division 26 to agree to

25   release him, we could have --

1          THE COURT:   They're not going to agree to release

2    him, but you know, so be it.  Whatever you all -- they've

3    made an agreement on the drug possession case evidently,

4    Mr. Gary.  What is it on the drug possession?

5          MR. PHIPPS:   $5000, 10 percent cash allowed, Your

6    Honor, with a substance abuse evaluation from EMASS and

7    follow all recommendations that come out of it.

8          THE COURT:   So on the drug case it's $5000, 10

9    percent is authorized, and you have to do a drug evaluation.

10   But that means nothing unless you make bond on the other

11   case, which if that comes up while I'm in here, I'm telling

12   you now it's no bond.  All right.  You're done.

13         SHERIFF:   Your Honor, who would you like next?

14         THE COURT:   Who was your other one, Mr. Poston?

15         MR. POSTON:   What was the court date on --

16         THE COURT:   Oh, I forgot to say it.  March 5 is

17   the long date.

18

19

20

21

22

23

24

25

1     **CERTIFICATE**

2           I, Kristine A. Toennies, Registered Merit

3     Reporter, Certified Realtime Reporter, and Certified Court

4     Reporter, do hereby certify that I am an official court

5     reporter for the Circuit Court of the City of St. Louis;

6     that on February, I was present and reported all the

7     proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8     vs. DAMARKIS GARY, Defendant, Cause Nos. 1922-CR02448-01 and

9     1922-CR03584.

10          I further certify that the foregoing pages contain

11    a true and accurate transcription of the proceedings.

12

13          /s/ Kristine A. Toennies

14    _____

15    Kristine A. Toennies, RMR, CRR, CCR #769

16

17

18

19

20

21

22

23

24

25

Dixon v. City of St. Louis, 04378

# EXHIBIT 218

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Calea Stovall-Reid, Judge

STATE OF MISSOURI,     )

          Plaintiff,   )

      vs.         )   Cause No. 1922-CR01046-01

TOMMIE ANDERSON,    )

        Defendant.  )

BOND HEARING - INITIAL APPEARANCE

February 6, 2020

FOR THE PLAINTIFF:        FOR THE DEFENDANT:

Mr. Jonathan Phipps       Mr. Chris Faerber
Assistant Circuit Attorney   FaerberLaw, LLC
1114 Market Street, #401    1015 Locust Street, Suite 914
St. Louis, MO  63101       St. Louis, MO  63101

KRISTINE A. TOENNIES, RMR, CRR, CCR #769
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

1              THE COURT:    All right.  Who's next?

2              MR. PHIPPS:    I believe next would be line 1, Your

3    Honor, Tommie Anderson.

4              THE COURT:    Okay, you may proceed.

5              MR. PHIPPS:    Your Honor, Mr. Anderson stands

6    charged with resisting arrest, causing risk of injury or

7    death, and armed criminal action.  His bond is currently set

8    at $30,000 cash only.  Your Honor, I'll first ask that the

9    Court take judicial notice of its file in this case,

10   including the bond commissioner's report.

11             THE COURT:    Okay.

12             MR. PHIPPS:    Your Honor, I would next ask that

13   defense counsel perform an inquiry into the defendant's

14   financial means and community ties because this defendant

15   doesn't appear to have had an interview yet.

16             MR. FAERBER:    I'm not showing anything.

17             COMMISSIONER KELLY:    It should be scanned in by

18   now.

19                  (Discussion off the record.)

20             MR. PHIPPS:    Given our difficulty finding it,

21   could I ask that the bond commissioner then just tell us

22   about his financial means and community ties?

23             MR. FAERBER:    I can just ask him.

24             MR. PHIPPS:    Or you can ask him, either way.

25             MR. FAERBER:    I'm just showing one exhibit.  Would

1    it be under the non-indicted number?

2              COMMISSIONER KELLY:    Judge, if you want me to, I

3    will recite --

4              THE COURT:    Please do.

5              COMMISSIONER KELLY:    Mr. Anderson stated he's a

6    lifetime resident, stays with his mother.  He's been there

7    for the past eight years and single with three children.

8    Presently unemployed.  He stated to us he had been employed

9    off and on since 2003 at a tire shop.  He makes $100 a day

10   for a 40-hour workweek, 12th grade grad.  Stated no

11   character problems, admitted to prior convictions of

12   unlawful use of a weapon and attempted robbery.

13             We do show his convictions are attempted robbery

14   in '03, five years; tampering first, resisting arrest, '03,

15   five years; possession of a controlled substance, '06, five

16   years confinement; possession of a firearm, unlawful use of

17   a weapon, 2011, five years confinement.

18             He also stated to us that he just returned from

19   federal custody, but we don't have any information on the

20   charge on that in the system.

21             THE COURT:    When did you get out of jail?

22             THE DEFENDANT:    Yesterday.  I just came from the

23   federal penitentiary.  I just did a ten-month violation

24   because of this case right here.

25             THE COURT:    So you were out in March when this

1  happened?

2          THE DEFENDANT:   Yes, ma'am.

3          THE COURT:   And then when did they pick you up?

4          THE DEFENDANT:   March.

5          THE COURT:   Oh, right away?

6          THE DEFENDANT:   April the 2nd the federal picked

7  me up, and I took ten months for catching this violation,

8  and I just came home.

9          THE COURT:   Well, you're about to stay a little

10  bit longer.

11          MR. FAERBER:   Your Honor, can I ask him a couple

12  of questions?

13          THE COURT:   You may.

14          MR. FAERBER:   Do you have people, family or anyone

15  who can post any level of bond?

16          THE DEFENDANT:   Yes.

17          MR. FAERBER:   What do you think, what amount?

18          THE DEFENDANT:   Just like 1,500, two grand.

19          MR. FAERBER:   So if I were to ask for 20,000, 10

20  percent, do you think that's reasonable?

21          THE DEFENDANT:   Yes.

22          MR. FAERBER:   Your Honor, given his family

23  connections to the area, his ability to be employed, he

24  hasn't quite had the chance to go out and get the job back

25  given the fact that he just got out of federal prison, I

1   would ask that this Court adjust his bond to 20,000, 10

2   percent, which is the rough equivalent of $2000.  He's

3   confident that somebody in his family can post that, and by

4   doing that, I would ask that this Court give him a chance to

5   show up to court, everything.  He has a lot of older

6   convictions, but I'm not seeing anything to show that he is

7   unable to show up to court.  In fact, he's able to show up

8   to court and get sentenced as of 17 years ago.

9           So I would just ask that Your Honor do that

10  because otherwise I do not think that it has been shown that

11  he is a flight risk or a danger to society.  This case is a

12  year old, so I would just ask that Your Honor give him a

13  chance.  And also, the way it's charged, my understanding is

14  the circuit attorney's office is no longer attaching the

15  armed criminal action to felony fleeings.

16          MR. PHIPPS:   Your Honor?

17          THE COURT:   Anderson, how long had you been out

18  before you picked up this case?

19          THE DEFENDANT:   I was in St. Louis County for

20  three years.  I got locked up in '16, and I came home in '18

21  on federal probation.  I was out for five months and I

22  caught this case.

23          THE COURT:   All right.  The Court will set the

24  bond at 20,000 surety or 10 percent as authorized.  However,

25  if you're able to have someone post the bond, you'll have to

1   report to EMASS once per week, that you'll be given that

2   information when you make the bond.  The pretrial office

3   will give you that information on where you need to go.

4           Next court date is 2/14 for review if he's not

5   released and 3/10 in Division 26.

6           MR. PHIPPS:   Your Honor, I realize that you

7   weren't interested in hearing a rec before, but might I ask

8   that we at least add the conditions of the GPS and no

9   weapons given that he was --

10          THE COURT:   I'm not going to add GPS.  I said he

11  had to report to EMASS once a week.

12          MR. PHIPPS:   Yes, Your Honor.

13          THE COURT:    And he's not supposed to have weapons

14  anyway because he's a felon, but we'll go ahead and add that

15  condition.  You can check that box if you choose to.

16          MR. PHIPPS:   Thank you, Your Honor.

17

18

19

20

21

22

23

24

25

1           **CERTIFICATE**

2               I, Kristine A. Toennies, Registered Merit

3    Reporter, Certified Realtime Reporter, and Certified Court

4    Reporter, do hereby certify that I am an official court

5    reporter for the Circuit Court of the City of St. Louis;

6    that on February 6, 2020, I was present and reported all the

7    proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8    vs. TOMMIE ANDERSON, Defendant, Cause No. 1922-CR01046-01.

9               I further certify that the foregoing pages contain

10   a true and accurate transcription of the proceedings.

11

12

13           /s/ Kristine A. Toennies
             _____
14           Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 219

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
            Plaintiff,      )
      vs.                   )   Cause No. 2022-CR00302
NICHOLAS C. CRAWLEY         )
            Defendant.      )

BOND REVIEW HEARING

On the 28th day of January, 2020, the above-entitled cause came on regularly for hearing before the Honorable Thomas C. Clark II, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Nicholas J. Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was present by video link and was represented by Andy Sottile, Attorney at Law.

Mr. Victor Kelly, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

**JANUARY 28, 2020**

1  THE COURT:  We're on the record which should
2  reflect this is 2022-CR302, State of Missouri versus
3  Nicholas Crawley.  Mr. Crawley appears in open court via
4  video link with the benefit of legal assistance, Andy
5  Sottile, Esquire.  The State of Missouri is represented by
6  Assistant Circuit Attorney Nicholas Fischbach.
7      Mr. Crawley appears before the Court entitled to
8  a bond review pursuant to Rule 33.  Currently his bond is
9  set at $10,000 cash only.  Mr. Crawley is charged with one
10 count of resisting arrest, a Class E felony.
11     Mr. Crawley, as I indicated before, your
12 attorney, Mr. Sottile, is in the courtroom at this time.
13 I would encourage you to follow his directions regarding
14 any comments you are inclined to make.  You're in a public
15 environment.  You're being recorded.  Anything you say can
16 be held against you at a future time.  Please listen to
17 the guidance of Mr. Sottile.  I'll also convey to you
18 he's representing you for the limited purposes of this
19 proceeding only.  Thank you.
20     THE DEFENDANT:  Yes, sir.
21     THE COURT:  Thank you for indicating you
22 understand.  I appreciate that.  Mr. Fischbach, you may
23 proceed.
24     MR. FISCHBACH:  Thank you.  Your Honor, first

---

1  and foremost, the state asks the Court to take judicial
2  notice of the court file.
3      THE COURT:  Granted and so ordered.
4      MR. FISCHBACH:  Your Honor, on or about
5  1-26-2020, police officers were advised that they had a
6  stolen car in the area of 15th and Washington.  When they
7  attempted to stop the vehicle, the defendant took off
8  weaving in and out of traffic at a high rate of speed,
9  driving in an incorrect lane and ignoring traffic signals.
10 Officers followed the vehicle and managed to — I
11 apologize.  The vehicle was curbed in the 2300 block of
12 Delmar at which time an arrest was effectuated.
13     The defendant does have a criminal history.
14 Specifically a 2014 case of stealing in the third degree,
15 and another 2014 case theft over $500, less than $25,000,
16 which he received four years confinement.  A 2013 theft
17 and stealing of a credit card, fraudulent use of a credit
18 card.  He received five years of probation which was
19 revoked.  And a 2011 possession of a controlled substance.
20     I'll refer to the bond commissioner in case I
21 missed anything.
22     MR. KIRBY:  Judge, we also show he has a 2010
23 case theft less than $500.  He had two years of probation
24 on that.  He does have two pending cases.  First one is
25 19SL-CR02210, stealing fourth offense within 10 years.  He

---

1  posted bond of $5,000 10 percent.  He has a court date.
2      THE COURT:  Is that in St. Louis County?
3      MR. KIRBY:  St. Louis County.  The second case
4  is St. Louis County, 19SL-CR06037, an additional case of
5  stealing fourth within 10 years.  He received a personal
6  recog on that case.  Court appearance is on March 12th,
7  2020.
8      THE COURT:  Thank you.  Anything further from
9  the state?
10     MR. FISCHBACH:  Your Honor, the only thing
11 further from the state is the state understands he has an
12 issue with fentanyl.  If Your Honor grants him a bond, the
13 state would request it contain a substance abuse
14 evaluation.
15     THE DEFENDANT:  I have a bed date at the 7th at
16 Bridgeway.
17     THE COURT:  I told you make sure you listen to
18 Mr. Sottile before you speak.  Mr. Sottile, you may
19 proceed.
20     MR. SOTTILE:  Your Honor, I spoke with the
21 representative.  He does, indeed, have a bed date of
22 February 7th at Bridgeway.  As a condition we ask he be
23 ordered to enter that treatment facility.  He could live
24 with his parents after he finishes any kind of treatment.
25 They live in St. Louis County.  He does have a job at a

1   construction company he's worked for on and off for the
2   past five years, Hof Construction.  He's currently not on
3   any supervision right now.
4          THE COURT:  He's not on probation any longer?
5          MR. SOTTILE:  I don't have any information that
6   he is.
7          MR. KIRBY:  No, Your Honor.
8          MR. SOTTILE:  We'd ask the Court to consider the
9   pretrial release commissioner's recommendation was 12,500
10  at 10 percent.  GPS would be an option in this situation.
11  I think, if the Court were to consider those conditions,
12  they would assure the safety of the community, and also
13  would ensure he make all court appearances.  Probably most
14  importantly, is St. Louis Integrated Health Network is
15  involved and has a bed date for him at Bridgeway.
16         THE COURT:  What prompted him to pursue the
17  Bridgeway bed date?
18         MR. SOTTILE:  Mr. Crawley, who helped you get
19  the bed date at Bridgeway?
20         THE DEFENDANT:  My mom's brother and wife used
21  to work at Bridgeway.  She helped me get the bed date out
22  of care and concern.
23         MR. SOTTILE:  You filled out all the paperwork
24  and you're ready to go?
25         THE DEFENDANT:  Yeah.  Daryl Harris is my

5

1   counselor.
2          THE COURT:  What do you mean Daryl Harris is my
3   counselor?
4          THE DEFENDANT:  I was going to outpatient.  21
5   day outpatient starts on the 7th.
6          MR. SOTTILE:  Who does Daryl Harris work for,
7   Bridgeway?
8          THE DEFENDANT:  Bridgeway, yes.
9          THE COURT:  What's the bed date again?
10         THE DEFENDANT:  7th.
11         MR. SOTTILE:  If you were to consider bond
12  you -- I haven't done this before.  It could be
13  retroactive.  It wouldn't go into effect until the 7th or
14  the day before so he wouldn't have a time where he's not
15  getting services or treatments.
16         THE COURT:  Let's go off the record.
17         (There was a discussion off the record.)
18         THE COURT:  We're back on the record.  Having
19  taken into consideration the evidence presented before the
20  Court, as well as taking judicial notice of the court
21  file, the conditions of release as required pursuant to
22  3301, as the Court has explained to the parties, including
23  the defendant.  Off the record.
24         (There was a discussion off the record.)
25         THE COURT:  The Court is extremely concerned

6

1   about his criminal history, including his pending felony
2   cases in St. Louis County.  The Court chooses to deny any
3   modifications to the bond at this time.  Do you have any
4   questions at this time, Mr. Crawley?
5          THE DEFENDANT:  No.
6          THE COURT:  You need to reach out to your
7   attorney.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7

1                       CERTIFICATE
2          I, Dawn L. McTeer, Certified Court Reporter,
3   do hereby certify that I am an official court reporter for
4   the Circuit Court of the City of St. Louis; that on January
5   28, 2020, I was present and reported all the proceedings had
6   in the case of STATE OF MISSOURI, Plaintiff, vs. NICHOLAS C.
7   CRAWLEY, Defendant, Cause No. 2022-CR00302.
8          I further certify that the foregoing pages
9   contain a true and accurate reproduction of the
10  proceedings.
11
12
13
14
15                    /s/Dawn L. McTeer
16                   _____
17                   Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                     CCR #429
18
19
20
21
22
23
24
25

8

Dixon v. City of St. Louis, 04297

# EXHIBIT 220

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
                            )
        Plaintiff,          )
                            )
        vs.                 )   Cause No. 2022-CR00303
                            )
COREY BROWN                 )
                            )
        Defendant.          )

BOND REVIEW HEARING

        On the 28th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

                The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

                The Defendant was present by video link and
was represented by Andy Sottile, Attorney at Law.

                Mr. Victor Kelly, Bond Commissioner

                DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
                    OFFICIAL COURT REPORTER
                  CITY OF ST. LOUIS CIRCUIT COURT
                  TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 28, 2020

1

2       THE COURT:  We're on the record which should
3   reflect this is 2022-CR303, State of Missouri versus Corey
4   Brown.  Mr. Brown appears in court via video link with the
5   benefit of legal assistance, Andy Sottile.  The State of
6   Missouri is represented by Assistant Circuit Attorney
7   Andrew Fischbach.  The defendant is charged with one count
8   of domestic assault fourth degree.  Pursuant to Rule 33,
9   he's entitled to a bond review at this time.
10      Mr. Brown, I'm going to encourage you to follow
11  the lead of your attorney, Mr. Sottile, and only say
12  things he directs you to say.  You're in a public
13  environment.  Anything you say can be held against you.
14  Do you understand?
15      THE DEFENDANT:  Yes.
16      THE COURT:  Mr. Sottile represents you in a
17  limited purpose for this proceeding only.  Do you
18  understand that?
19      THE DEFENDANT:  Yes.
20      THE COURT:  Thank you.  You may proceed.
21      MR. FISCHBACH:  Thank you, Your Honor.  Before
22  we begin, I believe you said my name was Andrew.  It's
23  Nicholas Fischbach.
24      THE COURT:  Thank you.  You may proceed.
25      MR. FISCHBACH:  Your Honor, in this case on or

2

---

1   about January 26th, police officers responded to the
2   victim and defendant's home where they found that the
3   victim during an argument in which the victim told the
4   defendant she was intending to leave, the defendant
5   grabbed her by the throat and threw her to the ground
6   causing her to hit her head on a piece of furniture.  The
7   victim alleges a similar incident has occurred in the
8   past.  Also, when she told the defendant she was planning
9   on leaving, that also involved strangulation.  Your Honor,
10  subsequent to the defendant's removal from the home, the
11  victim found a bag of firearms she did not know the
12  defendant possessed.
13      THE COURT:  Do they live together?
14      MR. FISCHBACH:  Yes.
15      THE COURT:  What did she do with the bag of
16  firearms?
17      MR. FISCHBACH:  Your Honor, she has turned it
18  over.  To my knowledge, she has turned it over to the
19  police.
20      THE COURT:  Even though he isn't charged with
21  that, she's saying the bag of firearms -- even though you
22  don't have any record belong to the defendant?
23      MR. FISCHBACH:  Correct, Your Honor.  She found
24  them in his closet.  The victim during the warrant
25  application was coughing up either pus or some amount of

3

---

1   throat matter that she attributed to the strangulation.  I
2   also have a victim impact statement, Your Honor.
3       THE COURT:  Have you shown that to Mr. Sottile?
4       MR. FISCHBACH:  Yes.
5       THE COURT:  Can I see that, please?  Let the
6   record reflect that the state handed the Court a single
7   page piece of paper, one paragraph single space.  This
8   indicates she has an order of protection against the
9   defendant; is that true?
10      MR. FISCHBACH:  Your Honor, victim services has
11  informed me that the victim filled one out yesterday after
12  getting the warrant application.
13      THE COURT:  She applied for an ex parte order.
14  The ex parte order was granted.  Victim services.  Victim
15  services.  It was granted.  He has not been served with it
16  yet.  Thank you.  Anything further?
17      MR. FISCHBACH:  Your Honor, just turning.  The
18  defendant does not have a criminal history.  Based on the
19  escalating pattern of behavior from the defendant, the
20  state is requesting a no bond at this time.
21      THE COURT:  Mr. Sottile, you may proceed.
22      MS. HAAR:  Thank you, Your Honor.  Your Honor, I
23  would note to the Court the house is in Mr. Brown's name.
24  It is correct his wife has moved out as well.
25      THE COURT:  Oh, they're married.

4

1    MR. SOTTILE:  I believe so, yes.  She has moved
2    out.  Everything has been cleared out of the house.
3    Everything.  She has the children.  He has no prior
4    convictions.  He works two jobs.  He works at Maryville
5    University and Busch Stadium.  If there were firearms in
6    the house, basically he learned through a family member
7    that everything has been completely taken out of the
8    house.  If there were firearms, they're gone.  We know she
9    gave it to the police.  I would submit to the Court he
10   would be a candidate for GPS.  He has a very good work
11   history.  I submit I don't believe he would be a danger to
12   the community or he wouldn't appear in court.  I would ask
13   the Court to release him or leave the bond at 2,500 cash
14   or if the Court would consider reducing the bond to 500 or
15   a thousand.
16       THE COURT:  What does he do at Maryville?
17       MR. SOTTILE:  I think he's been there close to
18   five years.  Mr. Brown, what do you do for Maryville
19   University?
20       THE DEFENDANT:  I'm a cook/supervisor.
21       MR. SOTTILE:  You said cook?
22       THE DEFENDANT:  Cook/supervisor.
23       MR. SOTTILE:  How long have you been there?
24       THE DEFENDANT:  Going on two years.
25       MR. SOTTILE:  How many hours a week do you work?

5

1       THE DEFENDANT:  Close to 60.  I work six days a
2    week.
3       MR. SOTTILE:  For Maryville University?
4       THE DEFENDANT:  Yes.
5       MR. SOTTILE:  Thank you.  Your Honor, I think
6    he's been a Busch Stadium seasonal worker there for five
7    years.
8       THE COURT:  Andy, I apologize.  I'm concerned
9    about the previous incidents that have been alleged, the
10   fact that he had the guns, and, of course, the victim
11   impact statement that prompted her to apply for the order
12   of protection.  I don't find him a danger to the community
13   at this time.  I'm not going to change the conditions of
14   the bond.  The Court has considered whether any of the
15   following additional conditions of release are required
16   pursuant to Rule 33.  Based on available information, the
17   Court has taken into account the court file, including the
18   probable cause statement, the victim impact statement that
19   was provided to the Court, the fact that the complaining
20   witness was throwing up mucous and ejecting other solution
21   and other liquids during the time of the warrant
22   application prompting injuries as a result of this
23   incident.  Furthermore, the Court takes into consideration
24   the allegations of the complaining witness about previous
25   acts of violence.  For all of those considerations, as

6

1    well as those articulated in Rule 33.01, the bond remains
2    unchanged at this time.
3       Mr. Brown, your next court date is in seven
4    days, February 4.  If you bond out, then your next court
5    date is on February 28 in Division 25.  That will be
6    included in your paperwork.  You'll also be responsible
7    for retaining an attorney between now and next week for
8    another review of your bond.  If you wish to request the
9    assistance of the public defender's office, you need to
10   fill out an application and follow up with them about
11   their processing technique.  Thank you.
12       MR. SOTTILE:  Your Honor, that 2-4 court date,
13   what time would that be?
14       THE COURT:  February 4.  Unfortunately, it
15   doesn't start until 10:30.
16       MR. SOTTILE:  The other court date 2-28, is that
17   9:00?
18       THE COURT:  That's 9:15.
19
20
21
22
23
24
25

7

1                    CERTIFICATE
2       I, Dawn L. McTeer, Certified Court Reporter,
3    do hereby certify that I am an official court reporter for
4    the Circuit Court of the City of St. Louis; that on January
5    28, 2020, I was present and reported all the proceedings had
6    in the case of STATE OF MISSOURI, Plaintiff, vs. COREY
7    BROWN, Defendant, Cause No. 2022-CR00303.
8       I further certify that the foregoing pages
9    contain a true and accurate reproduction of the
10   proceedings.
11
12
13
14
15       /s/Dawn L. McTeer
16       _____
17       Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                 CCR #429
18
19
20
21
22
23
24
25

8

# EXHIBIT 221

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,        )
                          )
          Plaintiff,      )
                          )
     vs.                  )    Cause No. 2022-CR00326
                          )
KAREN DENISE NESBITT      )
                          )
          Defendant.      )

BOND REVIEW HEARING

On the 30th day of January, 2020, the
above-entitled cause came on regularly for hearing before
the Honorable Thomas C. Clark II, Judge of Division 16B of
the Twenty-Second Judicial Circuit in the City of St.
Louis.

The State of Missouri was represented by
Nicholas Fischbach, Assistant Circuit Attorney, City of
St. Louis, State of Missouri.

The Defendant was present by video link and
was represented by Kristi Flint, Attorney at Law.

Mr. Victor Kelly, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

JANUARY 30, 2020

1
2    THE COURT:  We're on the record which should
3  reflect this is 2022-CR326, State of Missouri versus Karen
4  Nesbitt.  Ms. Nesbitt appears in court with the benefit of
5  legal assistance, Kristi Flint, Esquire.  The State of
6  Missouri is represented by Assistant Circuit Attorney
7  Nicholas Fischbach, Esquire.  Let the record reflect that
8  Ms. Nesbitt faces a two-count indictment, assault first
9  degree serious physical injury, a Class A Felony, and
10  Count II armed criminal action, an unclassified felony.
11  Her bond is currently set at $150,000 cash only.
12    Ms. Nesbitt, did you hear me identify your
13  attorney for the record?
14    THE DEFENDANT:  No.
15    THE COURT:  Like I said, Kristi Flint is the
16  attorney today.  She's holding up her hand for you for the
17  record.
18    THE DEFENDANT:  How you doing?
19    MS. FLINT:  Hi, Ms. Nesbitt.
20    THE COURT:  I can tell by your greeting you now
21  recognize you have an attorney representing you.
22    THE DEFENDANT:  Yes.
23    THE COURT:  Thank you.  I say that to you,
24  because Ms. Flint will represent you for the limited
25  purposes of this proceeding only.  Do you understand?

1    THE DEFENDANT:  Yes.
2    THE COURT:  I explain to you, because in all
3  future court appearances it's your obligation to retain
4  and come back with an attorney.  Do you understand?
5    THE DEFENDANT:  Yes.
6    THE COURT:  Thank you for answering out loud.
7  If you wish to retain the services of the public defender,
8  you're invited to pursue that.  If you choose to do so,
9  you have to fill out an application for their services.
10  Do you understand?
11    THE DEFENDANT:  Yes.
12    THE COURT:  You'll also have to follow up with
13  them and ensure they're processing it.  Do you understand?
14    THE DEFENDANT:  Yes.
15    THE COURT:  In other words, you do not -- pardon
16  me.  They do not automatically represent you.
17    THE DEFENDANT:  Yes.
18    THE COURT:  Thank you.  If you wish to retain
19  the services of a private attorney, you're invited to
20  pursue that option as well.  Do you understand?
21    THE DEFENDANT:  Yes.
22    THE COURT:  Thank you.  Now, we're going to
23  proceed with your bond review momentarily.  As I
24  indicated, Ms. Flint is your attorney for this proceeding.
25  You heard me explain that obviously, correct?

3                                                    4

Dixon v. City of St. Louis, 04278

1    THE DEFENDANT:  Yes.
2         THE COURT:  I say that to you, because I would
3    encourage you to follow what, if any, instructions or
4    direction she has for you.  Do you understand?
5         THE DEFENDANT:  Yes.
6         THE COURT:  You're in an open forum.  You're
7    being recorded, and anything you say can be held against
8    you.  Do you understand?
9         THE DEFENDANT:  Yes.
10        THE COURT:  Thank you.
11        THE DEFENDANT:  Can I ask a question?  Is there
12   any way I can ask you a question?
13        THE COURT:  Sure.
14        THE DEFENDANT:  Is there any way my bond can be
15   lowered?
16        THE COURT:  We going to talk about that
17   momentarily.  Just be patient with me.
18        THE DEFENDANT:  Yes.
19        THE COURT:  Ms. Flint, do you have an
20   announcement on behalf of your client?
21        MS. FLINT:  Yes, I do, Your Honor.  I would on
22   behalf of my client waive the formal reading of the
23   charging instruction and enter a plea of not guilty on her
24   behalf.
25        THE COURT:  Thank you.  Thank you.  Now we'll

5

1    move to your bond review.  Okay, Ms. Nesbitt.
2         THE DEFENDANT:  Yes.  Can I tell you something
3    else, Your Honor?
4         THE COURT:  This is why I encouraged --
5         THE DEFENDANT:  I have a grandson I have custody
6    of.  My son is doing 65 years.
7         THE COURT:  I'm going to interrupt you.  This is
8    why I explained all of these things to you at the
9    beginning.  You'll have an opportunity to speak.  Again, I
10   encourage --
11        THE DEFENDANT:  I apologize.
12        THE COURT:  Thank you for saying that.  Keep in
13   mind what I said to you before.  Follow the lead of your
14   attorney, and she'll guide you through the applicable
15   information.
16        THE DEFENDANT:  Yes, sir.
17        THE COURT:  Thanks for being patient with me.
18   Mr. Fischbach, you may proceed.
19        MR. FISCHBACH:  Thank you, Your Honor.  First,
20   the state requests the Court take judicial notice of the
21   court file.
22        THE COURT:  Granted and so ordered.
23        MR. FISCHBACH:  Your Honor, this case police
24   reported to an incident of shots fired where they
25   discovered the victim who had been struck in the side by a

6

1    bullet.  She was taken to Barnes on the day of the
2    shooting.  Later made a statement that she had been
3    standing on a vacant lot when the defendant pulled up in a
4    blue sport utility vehicle, yelled at her, and produced a
5    handgun and shot the victim.  There were two eyewitnesses.
6    One was mowing grass in the area.  Reported seeing the
7    blue vehicle and the shooting, and that witness rendered
8    aid to the victim.  Another eyewitness also reported
9    seeing the shooting and that witness was on the sidewalk.
10   Real-time crime center video was also obtained and
11   confirmed a blue sports utility vehicle leaving the area
12   at a fast rate of speed with only one occupant.  The
13   victim later completed a photo lineup and identified the
14   defendant as their shooter.  The defendant was also
15   interviewed on 1-28-2020 and admitted to being in an
16   argument with the victim a day prior to the shooting and
17   admitted to having a blue truck.
18        Turning to the criminal history, Your Honor.
19   The state shows a 1987 assault third.  1996 unlawful use
20   of a weapon and stealing.  A 1999 forgery.  A 2001
21   possession of a controlled substance.  A 2015 possession
22   of a controlled substance and illegal use of drug
23   paraphernalia.
24        I'll turn to the bond commissioner in case I
25   missed any convictions.

7

1         MR. KELLY:  No, Your Honor.
2         THE COURT:  Thank you.  Ms. Flint.
3         MS. FLINT:  Thank you.  Ms. Nesbitt, can you
4    hear me okay?
5         THE DEFENDANT:  Yeah, I can hear you.
6         MS. FLINT:  First off, I can understand right
7    now you're frustrated.  I need to point out to you that
8    this is just your first appearance.  This is not the final
9    answer whatever happens today.  You need to keep that in
10   mind.
11        THE DEFENDANT:  Okay.  I need to get out of here
12   and take care of my baby.  My husband can't do this by
13   hisself and go to work.
14        MS. FLINT:  I understand, Ms. Nesbitt.  The
15   Court is aware of that.  I want you to keep in mind this
16   isn't -- today is not going to be the final answer.  Okay.
17        THE DEFENDANT:  Yes, ma'am.
18        MS. FLINT:  Are you working at all?
19        THE DEFENDANT:  Yes.  I work for a home health
20   care service.
21        MS. FLINT:  Are you and your husband, your
22   family or any other family members able to post any amount
23   of bond?  Do you have any money available for posting
24   bond?
25        THE DEFENDANT:  I have a hundred in my property.

8

Dixon v. City of St. Louis, 04279

1      MS. FLINT:  What about your husband?

2      THE DEFENDANT:  I think I have about $400 at

3 home.

4      MS. FLINT:  You could come up with about $500 to

5 bond out?

6      THE DEFENDANT:  Yes, ma'am.

7      MS. FLINT:  That would be up to the Court to

8 determine if it's enough.  If the Court finds out today he

9 doesn't want to reduce the amount, there will be another

10 bond reduction set in one week.  Do you understand that?

11      THE DEFENDANT:  Yes, ma'am.

12      MS. FLINT:  Other than your grandson that you're

13 taking care of, do you provide any care for any other

14 family members or children?

15      THE DEFENDANT:  No.

16      MS. FLINT:  I don't have any further questions

17 at this time for Ms. Nesbitt.

18      THE COURT:  Thank you.

19      MR. FISCHBACH:  Your Honor, we also have a

20 victim impact statement.

21      THE COURT:  Ms. Nesbitt, am I understanding you

22 correctly you and your husband are the caregivers of a

23 five-year-old grandson?  Is that the case?

24      THE DEFENDANT:  Yes.  My son has 65 years in

25 prison.  He's been there four years already.  I have full

9

1 custody of my five-year-old grandson which belongs to my

2 son who is doing 65 years in Illinois, Menard prison.

3      THE COURT:  Thanks for explaining that to me.

4 Your husband is working obviously is your point?

5      THE DEFENDANT:  Yes.  My husband works.

6      THE COURT:  I didn't understand that.

7      THE DEFENDANT:  It's a railroad factory that he

8 worked for.  Marsh Rail Car Service.  It's in St. Peters.

9      THE COURT:  You work 40 hours a week doing the

10 home health care?

11      THE DEFENDANT:  Yes, sir.  My grandbaby, I take

12 him to school in the morning.  Sometimes he catch the bus

13 home.  The bus let him out right in front of the house.

14      THE COURT:  Is he in pre-K?

15      THE DEFENDANT:  Yes, he's in kindergarten.  He's

16 five.  His mother is out there somewhere.  If I'm down,

17 he's going to think everybody he loves is leaving him.  He

18 ain't going to have nobody.

19      THE COURT:  I apologize to you.  That isn't

20 missed on me.  The problem is you're facing a very serious

21 allegation.  You're facing a very serious case.

22      THE DEFENDANT:  This lady and her son attacked

23 me the day before.  Nobody said nothing about that.

24      MS. FLINT:  Ms. Nesbitt, again, this is your

25 attorney.  You can't make any statements right now about

10

1 the case.  I need you to keep your cool.

2      THE DEFENDANT:  Yes, ma'am.

3      MS. FLINT:  I'm sorry.

4      THE COURT:  I'm not trying to provoke you.  I'm

5 trying to explain to you where I'm coming from.  It's not

6 missed on me about your concerns about your grandson.

7 That's commendable you and your husband are trying to

8 maintain caregiver responsibilities for him.  I don't want

9 to appear insensitive to you.  I don't want you to think

10 I'm overlooking that.  I'm sorry, ma'am.  I have to take

11 into consideration public safety in this issue.  I'm sorry

12 about what you're telling me about your confrontation with

13 the victim in this matter.  Ms. Flint is quite right to

14 discourage you from talking about that publicly.  Please

15 do me a favor and come back a week from today with an

16 attorney.  Your next court date will be February 6th in

17 the same division.  Your court date following that

18 proceeding will be March 3 in Division 26.

19      I've considered the following conditions as

20 required under Rule 33.  However, after taking into

21 consideration the court file, the probable cause

22 statement, the allegations in this matter, as well as the

23 defendant's criminal history, as well as her length of

24 residence in the community, her family ties, employment,

25 financial resources, the nature and circumstances of the

11

1 offense charged, the Court denies any change to the bond

2 at this time.  I'm sorry to have to tell you that,

3 Ms. Nesbitt.  Good luck to you.  We'll see you in a week.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

Dixon v. City of St. Louis, 04280

```
 1                    CERTIFICATE

 2          I, Dawn L. McTeer, Certified Court Reporter,

 3   do hereby certify that I am an official court reporter for

 4   the Circuit Court of the City of St. Louis; that on January

 5   30, 2020, I was present and reported all the proceedings had

 6   in the case of STATE OF MISSOURI, Plaintiff, vs. KAREN

 7   DENISE NESBITT, Defendant, Cause No. 2022-CR00326.

 8          I further certify that the foregoing pages

 9   contain a true and accurate reproduction of the

10   proceedings.

11

12

13

14

15          /s/Dawn L. McTeer

16   _____
     Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
17                  CCR #429

18

19

20

21

22

23

24

25
```
                                                        13

Dixon v. City of St. Louis, 04281

# EXHIBIT 222

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Honorable Thomas C. Clark, II, Judge

STATE OF MISSOURI,          )
            Plaintiff,      )
    vs.                     )    Cause No. 2022-CR00214
                            )
RAKEEM ALSTON               )
            Defendant.      )

BOND REVIEW HEARING

On the 31st day of January, 2020, the above-entitled cause came on regularly for hearing before the Honorable Thomas C. Clark II, Judge of Division 16B of the Twenty-Second Judicial Circuit in the City of St. Louis.

The State of Missouri was represented by Nicholas Fischbach, Assistant Circuit Attorney, City of St. Louis, State of Missouri.

The Defendant was present by video link and was represented by Robert Taaffe, Attorney at Law.

Mr. Don Kirby, Bond Commissioner

DAWN L. MCTEER, RPR, CCR, MO-CSR, IL-CSR
OFFICIAL COURT REPORTER
CITY OF ST. LOUIS CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT

---

JANUARY 31, 2020

THE COURT: We're on the record which should reflect that this is Cause 2022-CR214, State of Missouri versus Rakeem Alston. Mr. Alston appears in court with the benefit of legal assistance, Robert Taaffe, Esquire. The State of Missouri is represented by Assistant Circuit Attorney Nicholas Fischbach. Let the record reflect that Mr. Alston faces a single count indictment of resisting arrest creating a substantial risk of serious injury, Class E felony. His bond is set at $20,000 10 percent.

Mr. Alston, did you hear me identify your attorney on the record?

THE DEFENDANT: Yes, sir.

THE COURT: He's in the courtroom now. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to discourage you from saying anything without his instructions or guidance to the contrary. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, don't say anything unless he tells you to. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: You're in an open forum and you're being recorded, and everything you say can be held against

---

you. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you. Mr. Taaffe, do you have an announcement on behalf of your client?

MR. TAAFFE: Yes, Your Honor. We'll waive formal reading and enter a plea of not guilty.

THE COURT: We'll proceed with review of your bond conditions at this time, Mr. Alston. Mr. Fischbach, you may proceed.

MR. FISCHBACH: Thank you, Your Honor. First, the state requests the Court take judicial notice of the court file.

THE COURT: So noted.

MR. FISCHBACH: Your Honor, in this case officers were engaging in routine patrol of St. Louis Place neighborhood where they observed a dark blue Jeep Compass with expired Missouri tags. The officers positioned their marked police vehicle behind the car and activated their lights, at which point the Jeep accelerated at a high rate of speed. The defendant's vehicle nearly lost control and struck pedestrians who were walking on a sidewalk at that time. The vehicle continued at a high rate of speed and began violating multiple traffic signals. Subsequently the defendant lost control of the vehicle and struck the center median at

---

which time the vehicle became disabled. The defendant exited the vehicle and began running before being apprehended by the officers and detained.

Your Honor, turning to the defendant's criminal history. The state shows an attempted robbery in the first degree and property damage first conviction as part of the same Cause No. 1722-CR04377 for which the defendant received an SIS on 9-13-2019 with four years probation.

Turn to the bond commissioner in case I missed any convictions.

MR. KIRBY: That's the only prior we show, Judge.

THE COURT: It's attempt robbery first, not robbery first?

MR. KIRBY: Correct.

THE COURT: He received an SIS on that?

MR. TAAFFE: He did, Your Honor.

THE COURT: Did they nolle the ACA at the time of the plea?

MR. TAAFFE: I don't remember if they even had the ACA charged.

THE COURT: I'm looking at the charging document. It was. That was one of my probable cause. The probable cause statement identifies it as robbery. That's why I pulled it up. He's right. It is an attempt.

1    He was originally charged with ACA.  Obviously it was
2    deleted at the time of the plea.  Sorry to belabor that.
3    Anything further about his criminal history?
4         MR. KIRBY:  No, Judge.
5         THE COURT:  Thank you.  Mr. Taaffe, you may
6    proceed.
7         MR. TAAFFE:  I didn't have any memory of it,
8    Judge.  I represented him on that case.  The only thing I
9    would point out.  I know we're dealing with resisting
10   arrest, and arguments can be made on behalf of the state
11   regarding the high speed chase is a valid one.  The bond
12   is set at 10 percent.  I don't think that bond is too much
13   out of line given the nature of the offense.  I would
14   argue for reduction for Mr. Alston.
15        Here's what I would suggest.  If he was released
16   on bond, he would be living with his mother, Sharell
17   Campbell, 1927 Benson.  Mr. Alston is 23 years old.  His
18   mother and his family are very supportive of him.  He
19   reports to an officer, probation officer, by the name of
20   Ms. Barnett.  She, it's my understanding, is not
21   recommending that he be revoked on his probation despite
22   the fact at this point the offense or arrest date occurred
23   on 10-13.  There's been no movement in terms of revoking
24   his probation when he was placed on his probation.  It's a
25   fact.

5

1         I'm sure the Court recognizes he was placed on
2    probation in September of 2019.  Less than a month out on
3    probation, and he picks up this charge.  But given that
4    fact, I would say that Ms. Barnett obviously knew of the
5    arrest and decided to continue to work with him.  The
6    charge wasn't filed until January 17th, 2020.
7         When Mr. Alston was charged with the offense, he
8    reached out to me, because his probation officer suggested
9    that he come to me.  We got Ms. Barnett telling his
10   probationer or her probationer, hey, look, I don't want to
11   arrest you on this warrant.  You need to get in contact
12   with your attorney and arrange for your attorney.
13   Indicating to me she certainly is supportive and doesn't
14   want to see Mr. Alston go back to jail or prison.  He did.
15   He came to me.
16        I entered my appearance, and did notice this
17   thing up for bond reduction hearing.  Mr. Barnett didn't
18   understand.  He thought, based upon what his probation
19   officer was telling him, that I could go talk to the Judge
20   and quash the warrant, and he wouldn't have to be booked
21   and processed.  I told him that's not the way it works.
22   You've got to be taken into custody.  You've got to go
23   through the confined docket.  He said I'll turn myself
24   into my probation officer.  That's what he did.
25        Since he's been on supervision, other than this

6

1    incident on 10-13, he's not a flight risk.  He would
2    appear in court whenever directed to.  His probation
3    officer is supportive.  He is a graduate of the 12th grade
4    of Vashon.  At the time of his arrest, he was working at
5    Laquinta Inn, 10.20 per hour, and was enrolled in school.
6         I believe, Your Honor, that given the direction
7    his current life is taking, he does not represent a risk
8    to the community at large.  I can't tell you what the
9    outcome of the case is.  I see a likely outcome with
10   probation in this case, and ask the Court to -- I know you
11   do not do secured.  A lesser bond than 20,000 10 percent.
12   I know you don't do secured.  Consider it at least.
13   Please don't raise it.
14        THE COURT:  It's well stated, as your colleague
15   stated very well, identical to your argument about how
16   much time is passed, which to a certain extent to me seems
17   to -- doesn't nullify the public safety concerns.  It does
18   make you wonder how much of a priority these kinds of
19   cases have when someone is accused of driving at a high
20   rate of speed and almost striking people on a sidewalk,
21   and he isn't charged until two and a half months later,
22   almost three months later.  That's well stated as
23   obviously you don't miss anything, Mr. Taaffe.
24        I apologize.  I'm not comfortable restructuring
25   it or lowering it for those two reasons.  Specifically the

7

1    fact that he almost struck pedestrians who were present on
2    the sidewalk according to the probable cause statement,
3    and, of course, the fact he's on probation on a two-count
4    felony case at this time.  I apologize.  I'm not
5    comfortable lowering it after considering the lesser
6    restrictive conditions of Rule 33.  Your next court date
7    is one week from today, February 7, in the same division.
8    Stay in touch with Mr. Taaffe, the always highly
9    persuasive Mr. Taaffe.  Your next court date following
10   that is March 4 in Division 26.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

8

Dixon v. City of St. Louis, 04301

```
 1                        CERTIFICATE
 2            I, Dawn L. McTeer, Certified Court Reporter,
 3   do hereby certify that I am an official court reporter for
 4   the Circuit Court of the City of St. Louis; that on January
 5   31, 2020, I was present and reported all the proceedings had
 6   in the case of STATE OF MISSOURI, Plaintiff, vs. RAKEEM
 7   ALSTON, Defendant, Cause No. 2022-CR00214.
 8            I further certify that the foregoing pages
 9   contain a true and accurate reproduction of the
10   proceedings.
11
12
13
14
15            /s/Dawn L. McTeer
16            _____
17               Dawn L. McTeer, CCR, RPR, MO-CSR, IL-CSR
                          CCR #429
18
19
20
21
22
23
24
25
```

9

Dixon v. City of St. Louis, 04302

# EXHIBIT 223

1

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
     STATE OF MISSOURI
2         Honorable Calea Stovall-Reid, Judge

3    STATE OF MISSOURI,            )
                                   )
4              Plaintiff,          )
                                   )
5         vs.                      )    Cause No. 1722-CR02771-01
                                   )
6    ANTOIN KYLES,                 )
                                   )
7              Defendant.          )

8
          BOND HEARING - INITIAL APPEARANCE
9
               February 3, 2020
10

11

12   FOR THE PLAINTIFF:            FOR THE DEFENDANT:

13   Mr. Jonathan Phipps           Mr. Nathan Swanson
     Assistant Circuit Attorney    Rosenblum Schwartz & Fry
     1114 Market Street, #401      120 S. Central Ave., Ste. 130
14   St. Louis, MO  63101          St. Louis, MO  63105

15

16

17

18

19

20

21

22

23        KRISTINE A. TOENNIES, RMR, CRR, CCR #769
               OFFICIAL COURT REPORTER
24          CITY OF ST. LOUIS CIRCUIT COURT
            TWENTY-SECOND JUDICIAL CIRCUIT
25

1            THE COURT:   Sir, what is your client's name?

2            MR. SWANSON:   Line 13, Antoin Kyles, Your Honor.

3            THE COURT:   Antoin Kyles.

4            SHERIFF:   Yes, ma'am.  Present, Your Honor.

5            THE COURT:   All right, Mr. Kyles, your attorney is

6    here.  Did you want to say something?

7            MR. SWANSON:   Your Honor, my name is Nathan

8    Swanson.  I'm here from Joel Schwartz's office.  We'll waive

9    formal reading of the charges and enter a plea of not guilty

10   at this time.

11           THE COURT:   Were you requesting a review of the

12   bond?

13           MR. SWANSON:   Your Honor, I think we had an agreed

14   recommendation as to that.  I believe the State was going to

15   request 5000, 10 percent.

16           MR. PHIPPS:   That's correct.  The State was going

17   to agree to $5000, 10 percent cash allowed with the added

18   conditions that the defendant undergo a substance abuse

19   evaluation through EMASS and follow all recommendations that

20   come out of that evaluation.

21           MR. SWANSON:   We join in that request, Your Honor.

22           THE COURT:   Do you have a lab report available?

23           MR. PHIPPS:   I'm sure I have it in the case file.

24           THE COURT:   What was the substance and what was

25   the amount?

1            MR. PHIPPS:   Oh, the substances were heroin and 8

2   grams of cocaine base, Judge.

3            THE COURT:   How much heroin?

4            MR. PHIPPS:   I'm not sure how much heroin.  Let me

5   get into the case file and look at the lab report.

6            MR. SWANSON:   I apologize, Your Honor, I don't

7   have the lab report.

8            MR. PHIPPS:   Unfortunately, Your Honor, the case

9   is actually old enough -- it's a 1722 case -- that the lab

10  report wasn't uploaded to the online file, so I would need

11  the physical file in front of me to be able to give you that

12  information.

13           THE COURT:   Well, I think the bond that's set is

14  adequate considering the prior offenses, so the bond will

15  remain at $25,000, 10 percent.

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **<u>CERTIFICATE</u>** |
| 2 | I, Kristine A. Toennies, Registered Merit |
| 3 | Reporter, Certified Realtime Reporter, and Certified Court |
| 4 | Reporter, do hereby certify that I am an official court |
| 5 | reporter for the Circuit Court of the City of St. Louis; |
| 6 | that on February 3, 2020, I was present and reported all the |
| 7 | proceedings had in the case of STATE OF MISSOURI, Plaintiff, |
| 8 | vs. ANTOIN KYLES, Defendant, Cause No. 1722-CR02771-01. |
| 9 | I further certify that the foregoing pages contain |
| 10 | a true and accurate transcription of the proceedings. |
| 11 | |
| 12 | |
| 13 | /s/ Kristine A. Toennies |
| 14 | Kristine A. Toennies, RMR, CRR, CCR #769 |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

# EXHIBIT 224

1

1          IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
2            Honorable Calea Stovall-Reid, Judge

3   STATE OF MISSOURI,      )
                        )
4           Plaintiff,   )
                        )
5        vs.            )   Cause No. 2022-CR00385
                        )
6   MIKELLA MOORE,       )
                        )
7          Defendant.   )

8

          BOND HEARING - INITIAL APPEARANCE
9

               February 3, 2020
10

11

12  FOR THE PLAINTIFF:        FOR THE DEFENDANT:

13  Mr. Jonathan Phipps       Mr. Eric Barnhart
    Assistant Circuit Attorney   The Law Office of Eric V.
14  1114 Market Street, #401    Barnhart, L.L.C.
    St. Louis, MO  63101       7751 Carondelet Ave., Ste. 202
15                       Clayton, MO  63105

16

17

18

19

20

21

22

23     KRISTINE A. TOENNIES, RMR, CRR, CCR #769
          OFFICIAL COURT REPORTER
24     CITY OF ST. LOUIS CIRCUIT COURT
      TWENTY-SECOND JUDICIAL CIRCUIT
25

2

1          THE COURT:   Mikella Moore.

2          SHERIFF:   What line is that?

3          THE COURT:   That's going to be --

4          MR. BARNHART:   14.

5          THE COURT:   Line 14.

6          SHERIFF:   14.  Present, Your Honor.

7          THE COURT:   All right.  Ms. Moore, you're charged

8   with property damage first, trespassing in the first degree,

9   and domestic assault fourth.  This is the hearing

10  considering your -- whether or not you'll be detained.

11          Mr. Phipps, you may proceed.

12          MR. PHIPPS:   Thank you, Your Honor.  I first ask

13  that the Court take judicial notice of its file in this

14  case, including the bond commissioner's report.

15          THE COURT:   All right.  The Court is reviewing

16  that as we speak.

17          MR. PHIPPS:   Would you like me to give you a brief

18  summary of the facts, Your Honor?

19          THE COURT:   No.  The Court can review the probable

20  cause statement.  If you have additional information, that's

21  what you need to tell me.  I can review the probable cause

22  statement here.

23          MR. PHIPPS:   Yes, Your Honor.  I'll note that the

24  defendant, according to the bond commissioner's report, has

25  lived for their entire life at their current address with

Dixon v. City of St. Louis, 04419

1    their aunt, is single, has one kid, a high school graduate

2    who works at UPS earning $14 an hour full time for the last

3    few months.  My own search, clean criminal history.  Your

4    Honor, I do have victims present who wish to speak on this

5    case.

6              THE COURT:    All right.  Go ahead and make your

7    statement.

8              MS. SMILEY:    My name is Alnita Smiley.  Your

9    Honor, I wanted to say, just talk about the impact of the

10   incident that happened.  I don't know what's all in the

11   report, but as far as impact, there were a group of people

12   that came to my house and vandalized it.  My -- I have two

13   children that were in the house.  My door was kicked down

14   off the hinges, my car was damaged, and when we looked at as

15   far as my insurance company doing the assessment, it came to

16   over $10,000 worth of damage done by Mikella Moore and the

17   individuals she brought with her.

18             And also safety concern because my daughters are

19   14 and 11, and they're at the age where I'm still at work

20   and they can go home and go in the door by themselves.  So

21   to know that if six or seven other people that would kick my

22   door down, come in with their gun and threaten my family

23   with my kids in the house, that's why it's serious for me,

24   Your Honor.

25             THE COURT:    Okay.  Thank you so much, ma'am.

1          Mr. Barnhart, are you representing Ms. Moore?

2          MR. BARNHART:   Yes, I'm here for --

3          THE COURT:   Oh, I'm sorry.  Go ahead, sir.

4          MR. WILLIAMS:   Lavon (ph) Williams, Your Honor.

5          THE COURT:   Are you the child's father?

6          MR. WILLIAMS:   Yes, ma'am.

7          THE COURT:   Okay, go ahead.

8          MR. WILLIAMS:   My safety concern is that she came

9    in with a group of people, came in with certain different

10   type of weapons -- a gun, a bat, crowbars -- and came in

11   destroying the property, damaging the cars, and she took

12   the -- she took our daughter that I had in my custody at the

13   time, and she came as a very threat.  She's still saying

14   constant threats via text message.

15          THE COURT:   She's still sending text messages?

16          MR. WILLIAMS:   And things over social media.

17          THE COURT:   When is the last time you received a

18   message?

19          MR. WILLIAMS:   The last time I received a message

20   was roughly probably about two months ago.  I just returned

21   from the United States Navy boot camp.

22          THE COURT:   But she's sending messages to your

23   fiancee?

24          MR. WILLIAMS:   Yeah, fiancee and making certain

25   statuses and different things on social media.

| | |
|---|---|
| 1 | THE COURT:   Were any messages sent since |
| 2 | Ms. Moore's arrest? |
| 3 | MR. WILLIAMS:   No. |
| 4 | THE COURT:   All right.  Did you have anything else |
| 5 | you wanted to say? |
| 6 | MR. WILLIAMS:   No. |
| 7 | THE COURT:   Thank you so much. |
| 8 | Okay, Mr. Barnhart. |
| 9 | MR. BARNHART:   Thank you, Judge.  Ms. Moore, where |
| 10 | would you live if you got released? |
| 11 | THE DEFENDANT:   4211 21st Street. |
| 12 | MR. BARNHART:   I'm Eric Barnhart.  I'm going to |
| 13 | represent you today only for the bond.  I'm going to try my |
| 14 | best to get you out.  So you've been working at UPS for the |
| 15 | last three months; is that correct? |
| 16 | THE DEFENDANT:   Yes, sir. |
| 17 | MR. BARNHART:   And could you afford -- if the |
| 18 | judge put GPS on you, could you afford the $10 a day that it |
| 19 | would cost to -- |
| 20 | THE DEFENDANT:   Yes, sir. |
| 21 | MR. BARNHART:   What sort of 10 percent bond could |
| 22 | you afford if I was going to ask the judge? |
| 23 | THE DEFENDANT:   What's the bond I've got now? |
| 24 | MR. BARNHART:   Let's see, right now it's $7,500 |
| 25 | cash only.  Could you afford 10 percent of that? |

1          THE DEFENDANT:   Yes, sir.

2          MR. BARNHART:   Okay, thank you, Ms. Moore.  I'll

3    make the argument.

4          THE COURT:   Mr. Barnhart?

5          MR. BARNHART:   Thank you, Judge.  Originally

6    pretrial release recommended $2,500, 10 percent.  Ms. Moore

7    has no prior felony convictions.  She's got a clean record;

8    right?

9          COMMISSIONER KEARBEY:   Right, no priors, Judge.

10          MR. BARNHART:   No priors.  An E felony is the

11    lowest level felony that you can be charged with.  She said

12    she could afford the 7,500, 10 percent.  Right now it's

13    75,000 cash only.

14          THE COURT:   No, it's not.  It's 7,500 cash only.

15          MR. BARNHART:   I'm sorry, 7,500 cash only.  So I

16    would just ask for $7,500, 10 percent, report to EMASS with

17    GPS, and that's a high bond for a first-time offender, in my

18    opinion.

19          THE COURT:   Mr. Kearbey, did you have anything you

20    wanted to add?

21          COMMISSIONER KEARBEY:   No, Judge.  We show the

22    same information.  She does work, live with her aunt her

23    whole life, and she has no priors.

24          THE COURT:   All right.  Ms. Moore, I understand

25    you have no priors.  However, you picked a whopper for the

1   first time to get involved in criminal activity.  I mean,

2   based on the allegations, you know, you engaged in mob

3   mentality.  You know, you're accused of going to the

4   residence with a group of other people, banging on the

5   doors.  I don't know what the dispute was in terms of who

6   had the right to have the child at that time, but it was

7   handled improperly.

8           I believe the bond of $7,500 cash only is an

9   appropriate bond in this case.  You are working full time at

10  UPS, so I do not think that that is an unreasonable bond

11  amount for the allegations, based on the allegations that

12  were made in this case.

13          So the bond will remain at $7,500 cash.  The Court

14  finds that that is a sufficient bond to assure the safety of

15  the community as well as ensure your appearances in court.

16  This is -- what you did was very serious.  You damaged

17  property, worked with other people to try to break into a

18  house.  The door was actually broken down.  This is just

19  unbelievable.

20          THE DEFENDANT:   It was --

21          THE COURT:   Don't say anything because the

22  attorney for the State is here and the court reporter is

23  here taking down everything that's said, so I would advise

24  you not to make any responses.  Bond will remain at $7,500

25  cash only.  Your next court date is February 10th.  You need

```
1    to hire yourself an attorney.  Mr. Barnhart was only here

2    for the purposes of the bond argument, so you need to go

3    ahead and hire counsel.  Your bond will be reviewed again on

4    February 10th.

5                 THE CLERK:   She needs the long date also.

6                 THE COURT:   And then Division 25, March 5 for the

7    long date.  Okay, thank you, Ms. Moore.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE**

I, Kristine A. Toennies, Registered Merit

Reporter, Certified Realtime Reporter, and Certified Court

Reporter, do hereby certify that I am an official court

reporter for the Circuit Court of the City of St. Louis;

that on February 3, 2020, I was present and reported all the

proceedings had in the case of STATE OF MISSOURI, Plaintiff,

vs. MIKELLA MOORE, Defendant, Cause No. 2022-CR00385.

I further certify that the foregoing pages contain

a true and accurate transcription of the proceedings.


/s/ Kristine A. Toennies
_____
Kristine A. Toennies, RMR, CRR, CCR #769

# EXHIBIT 225

1    IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
     STATE OF MISSOURI
2        Honorable Calea Stovall-Reid, Judge

3

4    STATE OF MISSOURI,              )
                                     )
5                    Plaintiff,      )
                                     )
6            vs.                     )    Cause No. 2022-CR00240
                                     )
7    ANTONIO HOLT,                   )
                                     )
8                    Defendant.      )

9

10           BOND HEARING - INITIAL APPEARANCE

11                   February 5, 2020

12

13

14   FOR THE PLAINTIFF:              FOR THE DEFENDANT:

15   Mr. Jonathan Phipps             Mr. Andrew Cortopassi
     Assistant Circuit Attorney      Assistant Public Defender
16   1114 Market Street, #401        1114 Market Street, #602
     St. Louis, MO  63101            St. Louis, MO  63101

17

18

19

20

21

22

23        KRISTINE A. TOENNIES, RMR, CRR, CCR #769
               OFFICIAL COURT REPORTER
24          CITY OF ST. LOUIS CIRCUIT COURT
             TWENTY-SECOND JUDICIAL CIRCUIT
25

Dixon v. City of St. Louis 05070

1          THE COURT:   Who do you have first?

2          SHERIFF:   Antonio Holt.

3          THE COURT:   All right.  Antonio Holt.  Good

4    morning, Mr. Holt.

5          THE DEFENDANT:   Good morning.  How are you doing

6    today?

7          THE COURT:   I'm doing pretty good.  Mr. Holt, your

8    lawyer is here on your behalf, Mr. Cortopassi.

9          All right, Mr. Phipps, do you want to proceed?

10          MR. PHIPPS:   Thank you, Your Honor.  I'll first

11    note that the defendant, Mr. Holt, stands charged with

12    tampering with a motor vehicle.  His bond is currently set

13    at $30,000 cash or surety.  I would ask the Court take

14    judicial notice of its file in this case, including the bond

15    commissioner's report.

16          THE COURT:   Yes.

17          MR. PHIPPS:   Your Honor, I would next draw the

18    Court's attention to the defendant's criminal history, which

19    is a fairly lengthy one.  The specific things I want to draw

20    you to, Your Honor, are the fact that starting in -- his

21    most recent conviction was in 2014 in Cause Number

22    1322-CR04077-01 and in Cause Number 1322-CR04080-01.  The

23    first number I gave you is for tampering first.  In that

24    case he was sentenced to 15 years confinement, which is why

25    the previous conviction is from so long ago.

1          Before that we have another conviction for

2     tampering first in 2009 for which he was given 13 years SES

3     for five years.  That SES probation was then revoked.  In

4     2009 in a separate cause number he was convicted of

5     tampering first, given the same thing once again.  His

6     probation was revoked.

7          Going back, Your Honor, it's fairly clear that

8     there is something of a pattern here.  It's not even his

9     only convictions are tampering in the first degree.  The

10    defendant continues stealing cars whenever he isn't locked

11    up.  As such, I believe the defendant needs some skin in the

12    game to prevent him from keep stealing cars when he isn't

13    imprisoned.  I also have a statement from the victim, Your

14    Honor.

15              THE COURT:   All right.

16              MR. PHIPPS:   Would you like me to give it to you

17    or read it into the record?

18              THE COURT:   You may read it.

19              MR. PHIPPS:   And I'm sorry, I haven't shown this

20    to you yet.  Would you like to take a look first?

21          "When you took my car, you took my ride to the

22    doctors.  It's an old car.  It's a good car.  And it took

23    away my livelihood.  Afterwards it was torn up and cost me a

24    lot of money that I don't have.  I really would like him to

25    pay a price.  I found drug paraphernalia in the car.  I had

1    just gotten a prescription filled for oxycodone, and it was

2    gone.  They tore everything up, busted a hole in the trunk

3    of the car.  They took the rugs out and the glove

4    compartment, along with my personal identification in the

5    car.  The frame of the license plate was torn out of the

6    car.  It is in bad shape.  I'm concerned for my safety.  I

7    think he should remain in custody and pay for what's done."

8            Your Honor, in light of the victim's statement

9    that the defendant took their personal identification, I

10   would ask that a condition of any bond that be set be that

11   the defendant stay away from the victim and be placed on GPS

12   monitoring to help effectuate that stayaway.  I would ask

13   that the bond remain at $30,000 surety.

14           THE COURT:   Mr. Cortopassi?

15           MR. CORTOPASSI:   Thank you, Judge.  Judge, I'll

16   note that there's no charge alleged here of stealing any

17   kind of identification or stealing a motor vehicle.  The

18   only thing Mr. Holt was caught doing was just being in the

19   car.  I would stress that this is not a violent crime.  This

20   is a crime against property.

21           I think that Mr. Holt does have a good home plan.

22   I spoke with his mother last week.  Her name is Marlene

23   Holt.  I believe she is age 54, but I'm not positive of

24   that.  She cleans homes for a living.  She lives at the

25   complaint address where Mr. Holt would stay and was staying

| | |
|---|---|
| 1 | prior to this.  That address is 7853 Big Bend Boulevard, |
| 2 | Apartment 1, I believe, St. Louis, Missouri 63119.  She has |
| 3 | agreed that she will sponsor Mr. Holt if he's granted a |
| 4 | sponsored bond.  We would ask you to set this bond at |
| 5 | something affordable. |
| 6 | I'll reiterate that Mr. Holt is not a danger to |
| 7 | the community.  He's not out there committing violent |
| 8 | crimes.  If for some reason, Your Honor, you were worried |
| 9 | about Mr. Holt making contact with any alleged victim, which |
| 10 | I would say is very unlikely, you could secure that by |
| 11 | ordering him to be placed on GPS house arrest.  And because |
| 12 | of Mr. Holt's indigence, we would ask that you waive the fee |
| 13 | attributed to EMASS. |
| 14 | In addition to this, just some background |
| 15 | information on Mr. Holt, he's 37 years old.  He does have a |
| 16 | GED, and he was on his way to working as a prep cook, |
| 17 | actually, at Charley Gitto's, which he still believes may |
| 18 | come to fruition if he's allowed out.  He is a lifetime |
| 19 | resident of Missouri. |
| 20 | Other than that, Judge, I'll just reiterate that |
| 21 | there are remedies if you do find that Mr. Holt is a danger |
| 22 | to the community, and I'll also reiterate that these are not |
| 23 | violent crimes.  So accordingly, we ask that a bond be set |
| 24 | at $5000, 10 percent or secured, and if you see so fit to |
| 25 | place him on GPS house arrest at 7853 Big Bend Boulevard, |

1    stay away from victims, and anything else you deem

2    necessary.  Thank you.

3              MR. PHIPPS:   Your Honor --

4              THE COURT:   Mr. Holt?

5              THE DEFENDANT:   Yes, ma'am.

6              THE COURT:   When were you released from Department

7    of Corrections?

8              THE DEFENDANT:   November 8th.

9              THE COURT:   Of 2019?

10             THE DEFENDANT:   Yes.

11             THE COURT:   Okay.  And then less than a month

12   later you pick up another tampering?

13             THE DEFENDANT:   I didn't actually -- you know what

14   I'm saying?  Like my lawyer said --

15             THE COURT:   Don't talk about your case.

16             THE DEFENDANT:   I was with --

17             THE COURT:   Don't talk about your case.  Just

18   listen.

19             THE DEFENDANT:   I know, but allegedly I was for

20   the tampering allegedly, but -- allegedly.

21             THE COURT:   Okay.  Were you going to add something

22   else, Mr. Phipps?

23             MR. PHIPPS:   I was just going to disagree with the

24   characterization of tampering with a motor vehicle is a

25   nonviolent crime.  I realize that he isn't causing physical

1    harm to another individual, but I believe that a person's

2    car is one of the few places that they consider to be their

3    sanctuary, their home.  To steal from a person, as you heard

4    in the victim impact statement, does great psychological

5    harm to them but also interferes with their ability to live

6    their life on a daily basis.  It disables them in a way that

7    can be quite crippling, so I would ask that the Court

8    consider the effect that this crime has on this victim in

9    particular and on the community at large.  Also that he was

10   on parole at the time that this happened.

11                   THE COURT:    Has your parole officer been to talk

12   to you yet?

13                   THE DEFENDANT:    Yes.  I was supposed to go in 21

14   days inpatient drug treatment and be put on house arrest

15   until the outcome of the case.  That's what I was supposed

16   to be when I make bond or whatever releasing, that's what I

17   supposed to do on parole.  I got a delayed action on my

18   parole until the outcome of the cases.  I have delayed

19   action on my paperwork of my face sheet from Probation &

20   Parole for the delayed action until further notice.

21                   THE COURT:    Well, Mr. Holt, the Court is concerned

22   about you continuing to be in cars that do not belong to

23   you.  You weren't out of prison for a month before you find

24   yourself involved in the same situation.  So I'm going to

25   set a money bond.  Right now the bond is $30,000 cash only.

1    I'm going to set it at $30,000 secured.  If you are able to

2    get out with a bondsman, then you're going to need to report

3    to EMASS once per week until this case is resolved.  So

4    you'll report to your parole officer, and in addition to

5    that, you'll report to EMASS, which is located at Grand and

6    Cherokee, once per week.  That's if you're able to do the

7    secured bond.  Otherwise, you'll just sit until the case is

8    resolved.  Do you have any questions?

9             MR. CORTOPASSI:    Judge, if I may add.  Actually,

10    the bond is already set I'm pretty sure at 30,000 or surety.

11             THE COURT:    Oh, okay.  I didn't see they checked

12    surety.  I thought it said cash.  You're right, it says cash

13    or surety.  So in that case, bond to remain.  It's already

14    set -- it's already a secured bond, so you could have gotten

15    a bondsman.

16             MR. PHIPPS:    Your Honor, could I just ask for the

17    stayaway on that?

18             THE COURT:    You want to have a stayaway from

19    where?

20             MR. PHIPPS:    A stayaway from the victim because of

21    her specific fears.

22             THE COURT:    All right.  And Mr. Holt, if you are

23    able to get someone to do the surety bond for you through a

24    bondsman, then you cannot be at -- what is the address that

25    he's to stay away from?

9

1          MR. PHIPPS:   I would ask that he stay away from

2    the victim wherever found.  Let me take a second --

3          THE COURT:   You'll stay away from the victim

4    wherever she may be found.  So we're not going to give a

5    specific address, but you can't be anywhere near the person

6    whose vehicle you were in.  Were you getting ready to say

7    something?  You looked like you were going to say something.

8          THE DEFENDANT:   Are you talking to me?

9          THE COURT:   Yeah.

10          MR. CORTOPASSI:   Judge -- Mr. Holt, you're okay.

11    Judge, can this be -- since this is his initial appearance,

12    will this be set for next Thursday?

13          MR. PHIPPS:   This actually is his one-week

14    hearing.

15          THE COURT:   No, this is his seven-day hearing.

16          THE CLERK:   I think it just got passed, didn't it?

17          MR. CORTOPASSI:   So last week we continued this.

18          THE COURT:   Oh, so this is still his initial

19    hearing?

20          MR. CORTOPASSI:   This is his initial appearance,

21    yes.

22          THE COURT:   So you'll get another bond review next

23    Thursday, so 2/13 for bond review.

24          THE CLERK:   Do you want to put it on at 2/11 with

25    your other one, Cortopassi?

1           THE COURT:   You want it to be on 2/11 for his --

2           THE CLERK:   Since we're off that Wednesday, we put

3    some on Tuesday and some on Thursday.

4           THE COURT:   So 2/11 will be your next bond review

5    hearing, and March 9 is your court date in -- I guess you're

6    in Division 26.  What are you asking?

7           THE DEFENDANT:   I got it answered.  I was just

8    asking about the dates; that's all.

9           THE COURT:   You're getting two dates because you

10   have to have a date for either preliminary hearing or grand

11   jury.  I don't know whether the case is going to grand jury

12   or whether there will be a preliminary hearing, but

13   whichever it is, that will occur on March 9th.  But your

14   bond will be reviewed again by a different judge on February

15   11th.  Okay, you're done.  Thank you.

16

17

18

19

20

21

22

23

24

25

1     CERTIFICATE

2          I, Kristine A. Toennies, Registered Merit

3     Reporter, Certified Realtime Reporter, and Certified Court

4     Reporter, do hereby certify that I am an official court

5     reporter for the Circuit Court of the City of St. Louis;

6     that on February 5, 2020, I was present and reported all the

7     proceedings had in the case of STATE OF MISSOURI, Plaintiff,

8     vs. ANTONIO HOLT, Defendant, Cause No. 2022-CR00240.

9          I further certify that the foregoing pages contain

10    a true and accurate transcription of the proceedings.

11

12

13          /s/ Kristine A. Toennies
            _____
14          Kristine A. Toennies, RMR, CRR, CCR #769

15

16

17

18

19

20

21

22

23

24

25