**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID DIXON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-0112-AGF |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

It is well-established that the incarceration of those who cannot afford to pay money bail, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements. *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978); *ODonnell v. Harris County*, 892 F.3d 147, 157 (5th Cir. 2018); *Walker v. City of Calhoun, Georgia*, 901 F.3d 1245, 1258 (11th Cir. 2018). Named Plaintiffs David Dixon, Jeffrey Rozelle, Aaron Thurman, and Richard Robards were detained in St. Louis jails because they were unable to afford the bail set for them after their arrests. Defendants are the City of St. Louis and its Sheriff and Commissioner of Corrections (together, the City) and several judges of the 22nd Circuit (the Judges).

On January 28, 2019, Plaintiffs filed a class action complaint under 42 U.S.C. § 1983 asserting that Defendants violated their constitutional rights, and the rights of class members, to equal protection and substantive and procedural due process by effectively detaining them after arrest without an opportunity to challenge the conditions

1

of their release.  At issue in this case is whether Defendants operated a wealth-based bail system resulting in the detention of arrestees solely due to the inability to pay, and whether Defendants continue to do so.  This matter is now before the Court on the parties' cross-motions for summary judgment.  Docs. 256, 262, 264.  For the reasons set forth below, the case will be dismissed without prejudice.

## BACKGROUND

### Plaintiffs' Complaint

The material facts of this case have evolved significantly since it was filed.  At the time of the complaint in January 2019, Plaintiffs alleged as follows.  When a person was arrested in the City of St. Louis, a bond commissioner employed by the City made a recommendation to a duty judge to set bond to secure the arrestee's court appearance.  In formulating the recommendation, the commissioner considered the charges and any prior convictions but did not inquire into the arrestee's ability to pay, risk of flight, or danger to the public; the duty judge then set bond on the commissioner's recommendation.  If an arrestee could afford to pay the cash bond in full, then the City would release him upon payment.  If not, he remained detained until a first appearance (i.e., the bail hearing), held within 48 hours of arrest and by videoconference from the jail.  Plaintiffs alleged that the sheriff's deputies who escorted arrestees to their video hearings instructed them not to speak and specifically not to request a bond modification.

At the initial appearance, the judge would state the bail amount pursuant to the commissioner's recommendation and ask the arrestee whether he intended to retain counsel.  The hearing lasted one to two minutes and was not on the record.  Plaintiffs

alleged that, if an arrestee attempted to contest his bail amount, the judge would simply inform him that he could not request a modification until he obtained counsel and would set a hearing for a motion to modify.  For indigent individuals eligible for a public defender, that process would take approximately five weeks.  Arrestees who did not qualify for a public defender but could not afford to pay a private attorney often remained in jail even longer.  Plaintiffs further pleaded that, even when arrestees received the assistance of counsel on a motion for modification, the Judges' bail-setting practices remained constitutionally inadequate in that the Judges failed to consider an arrestee's financial circumstances or make specific findings as to alternative release conditions.

In Count I of their complaint, Plaintiffs asserted that Defendants violated their rights to equal protection and due process through a policy or practice that jails individuals solely due to their poverty.  In Count II, Plaintiffs asserted that Defendants violated their rights to substantive due process by failing to consider whether an individual arrestee is a flight risk or danger to the public before imposing bail in an amount that equates to *de facto* detention.  In Count III, Plaintiffs asserted that Defendants violated their rights to procedural due process by failing to conduct meaningful bail hearings.  In each count, Plaintiffs asserted that the City's sheriff and jail commissioner violated Plaintiffs' rights by enforcing unconstitutional bail/detention orders and, in Count III, by directing arrestees not to speak at their initial appearance. Plaintiffs asserted these claims on behalf of a class comprised of "all arrestees who are or will be detained in the Medium Security Institution (the Workhouse) or the City Justice

Center (CJC), operated by the City of St. Louis, post-arrest because they are unable to afford to pay a monetary release condition."[1]

Plaintiffs requested the following forms of relief:

1. A declaratory judgment that Defendants violated the Plaintiffs' and class members' rights by issuing *de facto* detention orders without due process;

2. A declaratory judgment that Defendants violated the Plaintiffs' and class members' rights by operating a system of wealth-based detention that keeps them in jail because they cannot afford to pay monetary conditions of release, without an inquiry or findings concerning their ability to pay, the necessity of detention, and alternative release conditions;

3. A declaratory judgment that Plaintiffs and class members are entitled to an individualized hearing regarding release conditions and including:

   a. Notice that financial information will be collected, and the significance thereof;

   b. An individualized determination of the arrestee's ability to pay and how much;

   c. An opportunity to be heard concerning one's ability to pay and the necessity of non-monetary release conditions, including an opportunity to present and rebut evidence and argue the issues;

   d. Substantive findings by the court on the record as to why detention is warranted and why less restrictive alternatives are insufficient; and

   e. Free legal counsel;

4. A declaratory judgment that the sheriff and jail commissioner must not enforce any order requiring secured money bail or a monetary release condition that was imposed prior to an individualized hearing and that is not accompanied by a record reflecting the foregoing procedures and findings;

5. An order permanently enjoining Defendants from operating and enforcing a system of wealth-based detention that keeps Plaintiffs and class members in jail because they cannot afford to pay monetary release conditions, without

---

[1]   The class was subsequently clarified to exclude individuals in City custody pursuant to federal court orders or probation violations.  Docs. 96, 97, 101.

an inquiry or findings concerning their ability to pay, alternative release conditions, and the necessity of detention;

6. An order permanently enjoining Defendants from operating and enforcing pretrial detention without constitutionally valid process as described above; and

7. An order directing the sheriff not to instruct arrestees to remain silent during their hearings.

**Procedural History**

Concurrent with their complaint, Plaintiffs filed a motion for temporary restraining order, which was later withdrawn after the named Plaintiffs received bail hearings in accordance with a revised version of Missouri Supreme Court Rule 33.01, then scheduled to take effect July 1, 2019.[2]  This new version of the rule clarifies that a court cannot impose cash bail absent an individualized assessment of an arrestee's financial circumstances, flight risk, threat to public safety, and consideration of alternative release conditions.[i]  For any defendant who continues to be detained after the initial hearing, Rule 33.05 provides the right to a review hearing within seven days.[ii]  On February 21, 2019, more than four months before the effective date of the new rules, Plaintiffs filed a motion for preliminary injunction seeking to enjoin Defendants' practice of detaining arrestees who are unable to pay cash bail without an individualized hearing on their financial circumstances and the necessity of detention.

---

[2]     See endnote (i) for the entire text of the revised Rule 33.01.  Although most provisions of the rule did go into effect on July 1, 2019, the effective date of paragraphs (e) and (f), governing the consideration of individual circumstances and requiring findings supporting detention or specific release conditions, was postponed until January 1, 2020.

In the present case, at the close of Plaintiffs' individual hearings, two of the Plaintiffs were released without bond, with other conditions.  The other two did not receive any reduction in bond but were later released upon payment of bond by a third-party advocacy organization.

On March 1, 2019, Defendants filed motions to dismiss the case.  The Court denied both motions and granted Plaintiffs' motions for class certification and preliminary injunction.  Doc. 95; *Dixon v. City of St. Louis*, 4:19-CV-0112-AGF, 2019 WL 2437026, at *1 (E.D. Mo. June 11, 2019).  On February 28, 2020, the Eighth Circuit vacated the injunction and remanded the case with instructions for this Court to consider whether an injunction served the public interest in comity between the state and federal judiciaries, particularly in light of the Missouri Supreme Court's independent efforts to "police its own lower courts" by adopting the revised Rule 33.01.  *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020).  On remand, on April 13, 2020, Plaintiffs renewed their motion for preliminary injunction and updated the record with more recent evidence concerning Defendants' bail hearing practices, which Plaintiffs contend are still inadequate despite the rule change.  Doc. 160.  Plaintiffs later withdrew that motion, deeming it unlikely they would receive a hearing during the COVID-19 pandemic, instead opting to proceed toward dispositive motions and trial.

In May 2020, Defendants filed motions for judgment on the pleadings and to de-certify the Plaintiff class.  The briefing schedules on those motions were stayed pending entry of a scheduling order for further discovery.  The stay was later lifted and the motions fully briefed.  Docs. 181, 186.  On October 2, 2020, Plaintiffs filed a motion to compel seeking bail hearing transcripts and remote access to hearings due to the pandemic.  After a hearing on November 23, 2020, the Court denied Plaintiffs' request for remote access but ordered the Defendant Judges to produce a certain number of transcripts for specific periods.  Doc. 239.  On February 17, 2021, the Court denied

Defendants' motions for judgment on the pleadings for many of the same reasons discussed in its earlier ruling denying their motions to dismiss.  Doc. 242.  The Court also denied Defendants' motion to de-certify the class.  Doc. 243.

### Summary Judgment Record

On March 10, 2021, following the completion of extensive discovery, the parties filed their respective motions for summary judgment, accompanied by several thousands of pages of exhibits, including *inter alia* bail hearing transcripts, pre-trial release reports, court forms, staff depositions,[3] attorney affidavits, and email correspondence within the 22nd Circuit.  Defendants do not address Plaintiffs' evidence that the procedures described in the complaint did in fact exist and were the Defendant Judges' standard practices at the time this suit was filed, prior to the effective date of the new rules.  The record establishes that, at the time of the complaint, the Judges routinely imposed cash bail without *any* consideration or findings as to an individual's ability to pay or whether other less restrictive release conditions could ensure public safety and the arrestee's appearance at trial.

Plaintiffs, on the other hand, do not dispute that the summary judgment record reflects an evolution in Defendants' pre-trial procedures since implementation of the revised Rule 33.01.  To summarize, a specialized division of the 22nd Circuit, Division 16B, was created to conduct all bail hearings under Rules 33.01 (the 48-hour hearing) and 33.05 (the seven-day review hearing).  Bail hearings are now held on the record, and

---

[3]    The Judges were not deposed in this action.

arrestees are provided appointed counsel who are seasoned criminal defense lawyers. The court has set aside $75,000 in funding to pay these contract attorneys.  Video technology was upgraded to permit arrestees to see the whole courtroom, and a phone was installed in the courtroom to permit attorney-client communications.  Hearing transcripts in the record demonstrate that appointed counsel inquire about their clients' ability to pay and other relevant factors and advocate for release on recognizance or at least affordable bail.

A pre-trial services coordinator was hired to attend bail hearings and assist judges with referrals to appropriate service providers as part of an arrestee's release conditions (e.g., housing, substance abuse).  The court secured a large federal grant ($996,000) to add three social workers to the staff and to fund pre-trial supervision technology upgrades such as improved electronic monitoring services and court date reminder applications.

The reporting form used by bond commissioners to interview arrestees and provide individualized information to the court was expanded to cover the subjects of inquiry enumerated in Rule 33.01 (e.g., financial resources, ties to family and community, employment, behavioral health, flight risk, public safety).  Doc. 267-2 at 722-725.  Interviewers recite a statement contained on the form explaining that the information will be considered at the initial appearance.  A night shift was added to the commissioners' staffing schedule to increase interview capacity.  Bond commissioners ceased the practice of recommending specific cash bail amounts to the court.

The court's form orders were expanded to solicit additional options and findings. The form used for Rule 33.01 (48-hour) hearings was revised to incorporate release

conditions set forth in a new pre-trial referral form, including GPS monitoring, weekly check-ins, court reminders, and outside agency support.  Doc. 267-2 at 817, 821.  The form used for Rule 33.05 (seven-day) hearings solicits findings on the factors enumerated in Rule 33.01 and includes a checkbox menu of common release conditions (e.g., custodial placement, travel restrictions, electronic monitoring, drug testing, substance abuse treatment, no firearms, house arrest, referrals to outside agencies).  Doc. 267-2 at 823.  Judges received training on the new rule, and a bench book was created to provide judges with a script and checklist covering relevant subjects of inquiry (Doc. 267-2 at 830-832)[4] along with information about social services agencies for referrals.  The

---

[4]    For example, for setting cash bonds, the bench book contains citations to paragraphs (c) and (e) of Rule 33.01 and suggests the following script (emphasis in original):

> After hearing arguments and the evidence against the defendant, the Court determines that non-monetary conditions alone will not secure the appearance of the defendant at future proceedings or the safety of the community and/or crime victims and witnesses in this case.  The Court determines that cash bond in the amount of $ _____is appropriate. *Include other non-monetary conditions as applicable.*
>
> **Cite any factors**: "In making this decision, the Court takes into consideration: *Discuss any that apply.*
> - ☐ Nature and circumstances of the charged offense(s)
> - ☐ Weight of the evidence against the defendant
> - ☐ Defendant's record of convictions
> - ☐ Whether the defendant was on probation, parole, or release in a different pending case
> - ☐ **\*\* Defendant's family ties, employment, and financial conditions/ability to pay**
> - ☐ Character or mental condition
> - ☐ Length of defendant's resident in the community
> - ☐ Defendant's record of appearance at court proceedings – flight to avoid prosecution, FTAs.
>
> \*\* Judges should review the Pre-Trial Release report (Exhibit filing), directly inquire about defendant's financial resources, and/or allow defense counsel to directly inquire, before setting monetary conditions of release."

checklist for setting cash bonds expressly emphasizes the need to inquire into an arrestee's financial resources.  All arrestees still detained after the initial hearing (33.01) receive a review hearing (33.05) within seven days and with counsel.

The record reflects that Defendants recorded the following monthly snapshot statistics from 2020.[5]

- In February 2020, out of 127 total cases, 46.5% were released on recognizance, 31.5% had bail imposed, 18% were detained without bond, and 4% waived the hearing.  Doc. 267-6 at 2.
- In March 2020, out of 116 total cases, 52.5% were released on recognizance, 27% had bail imposed, 18% were detained without bond, and 2.5% waived the hearing.  Doc. 267-6 at 2.
- In August 2020, approximately 75% of arrestees were granted pre-trial release.  Of those individuals, 50% were released on recognizance after the initial appearance.  Doc. 260-3 at 30-33.

For context, prior to 2019, bond commissioners interviewed arrestees only 4% of the time and noted financial information only 2% of the time; 85% of arrestees did not have counsel at the initial appearance; the court *never* inquired of arrestees' ability to pay during the initial hearing; and only about half of arrestees unable to post bond received a seven-day review hearing under Rule 33.05.  Docs. 93-3, 95.

Notwithstanding the foregoing changes and improvements, Plaintiffs maintain that they are entitled to a declaration that Defendants' procedures at the time of the complaint (January 2019) violated their due process and equal protection rights.  Though Plaintiffs contend that the relevant facts are those alleged at the time of the complaint, Plaintiffs

---

[5]     Neither side disputes the other's statistics, and this Court made no independent attempt to verify them.

also contend, to address mootness, that Defendants' procedures remain constitutionally defective in that (1) arrestees are not adequately notified as to what happens at the initial hearing, what legal standards apply, or that they have an opportunity to be heard and present evidence; (2) appointed counsel lack adequate time to consult with their clients prior to the hearing and, in Plaintiffs' view, sometimes lack sufficient zeal in their representation; (3) the new 33.01 form does not require judges to record any evidence or reasoning and does not list the various factors enumerated in the rule; (4) judges do not always apply the correct evidentiary standards; (5) judges often do not check all the right boxes, leaving doubt as to whether they conducted the proper analysis; (6) judges sometimes recite scripted findings even when the record barely mentions the relevant factors; and (7) judges often consider the availability of funds through The Bail Project when determining bail.[6]

Plaintiffs provide the following statistics[7] based on their review of 312 initial hearing transcripts between July 2019 and February 2021 where the court set bail or issued a "no-bond" detention order.[8]

---

[6]     The Bail Project is a non-profit organization that provides bail assistance of up to $5,000 to low-income arrestees.  Doc. 267-2 at 795.

[7]     These figures count only those defendants who were not released after their first appearance; they do not account for defendants released on recognizance.  Defendants' snapshots for February and March 2020 indicate that roughly half of all arrestees were released on recognizance after their initial appearance in those months.  Doc. 267-6 at 2.

[8]     In a separate motion, Plaintiffs sought to amend the class definition to comprise all arrestees detained in the 22nd Circuit, whether by inaccessible bail or no-bond order, and to convert the originally certified class into a sub-class.  The Court denied that motion, reasoning that Plaintiffs' lawsuit has focused on wealth-based detention for three years, and it would be unfair at this late stage to broaden the scope of this case into a wholesale challenge to

- Judges set cash bail in 56% of the overall sample (i.e., 175 of 312) and issued no-bond detention orders in the other 44% (137 of 312).
- In 68% of all cases, the court's release conditions were more restrictive than appointed counsel requested.
- In 51% of cases where bail was imposed, the court set the amount higher than the arrestee could pay.
- In 9% of cases where bail was imposed, the court made no inquiry on the arrestee's ability to pay.

Doc. 267 at 57-62.

**Parties' Arguments**

Tracking the three counts of their complaint, Plaintiffs assert that they are entitled to summary judgment because the record conclusively establishes that Defendants' practices violate class members' (I) equal protection rights to be free from wealth-based detention, (II) substantive due process rights to liberty, and (III) procedural due process rights.  Doc. 265.  Plaintiffs assert that the facts relevant to the Court's determination on the merits are those existing at the time of the complaint, and that Defendants' subsequent changes are relevant only to a defense of mootness.  On that issue, Plaintiffs assert that Defendants have not expressly asserted a defense based on mootness and cannot satisfy the high burden of proof to demonstrate that their past unconstitutional conduct will not recur.

The Judges, in support of their motion for summary judgment, contend that (1) the Court should abstain from exercising jurisdiction in the interest of comity; (2) Plaintiffs' exclusive remedy is a writ of habeas corpus; and (3) the Judges' implementation of the

---

Defendants' detention practices to include not only arrestees who could not pay bail but also an entirely new category of arrestees for whom no bail was set.  Doc. 295.

new Rule 33.01 surpasses constitutional requirements.  Doc. 257.  Although the Judges do not explicitly assert that Plaintiffs' claims are moot in light of their new procedures, but appear to do so implicitly, the Court will address mootness below as a jurisdictional prerequisite.

The City Defendants move for summary judgment on Count III of Plaintiffs' complaint, which alleges that the City, through its sheriff's deputies, violated Plaintiffs' procedural due process rights by routinely directing arrestees not to speak during their bail hearings.  Doc. 263.[9]  The City argues that: (1) the record lacks evidence of any widespread practice of deputies silencing arrestees, much less that the Sheriff was aware of the practice so as to reflect deliberate indifference; (2) any such conduct by City Defendants was not the proximate cause of Plaintiffs' detention; (3) Plaintiffs lack standing to seek an injunction against future injury; and (4) Plaintiffs' claim is moot by virtue of new procedures now followed in the 22nd Circuit.

## DISCUSSION

### Legal Standards

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that might affect the outcome, and a

---

[9]      Plaintiffs assert all three counts in its complaint against all Defendants.  The City interprets Plaintiffs' allegation regarding the silencing of arrestees – the only independent conduct of the City beyond enforcement of the Judges' orders – as a due process violation within Count III of the complaint.  The City Defendants move for summary judgment only on that count.

dispute is genuine if a reasonable jury could return a verdict for the non-moving party. *Doe v. Univ. of St. Thomas*, 972 F.3d 1014, 1016 (8th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The substantive law will identify which facts are material.  *Id*.

The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the court must view the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party.  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).  The non-moving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  The non-moving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

Mindful of these standards, the Court notes that the facts here are essentially uncontroverted insofar as the record provides voluminous evidence of Defendants' past and current practices.  Defendants' revised practices since implementation of the new Rule 33.01 are evidenced in the form of pre-trial release reports, hearing transcripts, court orders, docket sheets, and other internal documents.  Plaintiffs also do not dispute the facts of Defendants' institutional changes with respect to judicial training, the creation of the bench book, increased funding and social work staffing, enhanced supervision technologies, and the provision of appointed counsel.

**Defendant Judges**

The Judges contend that their new practices exceed constitutional standards and

that this Court should abstain from exercising jurisdiction in the interest of comity under *Younger* and other abstention doctrines.[10]  The Judges also contend that the proper remedy for Plaintiffs' grievances lies in state court through writ proceedings.  The Court rejected these arguments in earlier stages of the case and also rejected Defendants' earlier contention that the case was moot, reasoning that Defendants' operational capacity to comply with revised Rule 33.01 had yet to be tested.  Doc. 95 at 27; *Dixon*, 2019 WL 2437026, at \*13 n.10.  Despite Defendants' accomplishments in this regard, the Judges do not explicitly frame their summary judgment argument in terms of mootness.  Rather, they assert on the merits that their new procedures are constitutionally sound.  Regardless of the Judges' characterization, because mootness relates to justiciability and the Court's power to hear a case, the Court must consider it even when the parties have not raised it. *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (deeming moot an action seeking declaratory relief where the challenged practice was no longer in effect, cautioning against advisory opinions).  Based on a full record, the Court now concludes that Plaintiffs' claims cannot proceed further in this Court.

A "case becomes moot 'when changed circumstances already provide the requested relief and eliminate the need for court action.'"  *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021) (quoting *Hillesheim v. Holiday Stationstores, Inc.,* 903 F.3d 786,

---

[10]       Specifically, the Judges advocate for abstention under *Younger v. Harris*, 401 U.S. 37 (1971), *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  The Court previously addressed the Judges' abstention theories at length in its Order denying their motion for judgment on the pleadings.  Doc. 242; *Dixon v. City of St. Louis*, 4:19-CV-0112-AGF, 2021 WL 616151, at \*6-8 (E.D. Mo. Feb. 17, 2021).

791 (8th Cir. 2018)).  Plaintiffs argue that the bar for mootness is "exceptionally high" and would require a "showing that it is absolutely clear the alleged conduct could not reasonably be expected to occur," citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).  Doc. 277 at 11.  But this standard is inapplicable in two respects.

First, it is true that voluntary cessation of a challenged practice does not necessarily moot a case where a defendant could later resume the practice.  *Prowse*, 984 F.3d at 703.  But this exception to mootness is applicable only to voluntary activity, where there is reason to be skeptical the cessation will end the controversy.  "For claims of mootness based on changes in circumstances other than voluntary cessation, the showing we have required is less taxing… ."  *Friends of the Earth*, 528 U.S. at 214 (Scalia, J., dissenting).   Plaintiffs argue that Defendants' new procedures are discretionary and could be reversed in the future, particularly the provision of counsel at the initial hearing (though Plaintiffs also argue that counsel is often ineffective).[11]  This argument ignores the fact that the Defendant Judges' actions here were not voluntary but rather required by the new rules, imposed by order of the Missouri Supreme Court.  As the Eighth Circuit observed on remand of this case, those rules reflect the Missouri

---

[11]     Although Plaintiffs spend much effort discussing the discretionary nature of Defendants' decision to provide counsel at initial hearings, appellate precedent finding wealth-based bail practices unconstitutional does not mandate the provision of counsel at initial bail hearings.  *See e.g., ODonnell*, 892 F.3d at 164-166.  To be sure, however, Defendants' have a vested interest in maintaining this aspect of the new framework insofar as the presence of counsel helps to ensure a defendant's opportunity to be heard and aids the court in spreading the relevant factors upon the record, as required by Rule 33.01.

Supreme Court's use of its superintendence powers to signal to lower courts that the status quo was unacceptable. *Dixon*, 950 F.3d at 1056. The new rules are permanent and mandatory, and Defendants have invested considerable effort and resources toward compliance. While Defendants may have exercised some managerial discretion as to how best to implement the new rules, Defendants' cessation of past practices and implementation of new ones designed to comply with the revised Rule 33.01 was compulsory here.

Second, the standard for mootness is somewhat less onerous when it is the government that has ceased the challenged conduct. *Prowse*, 984 F.3d at 703. Governmental officials have more leeway than private parties in the presumption that they are unlikely to resume illegal activities. *Id.* In *Prowse*, the Eighth Circuit cited numerous cases from the Eleventh Circuit, where courts consider three factors in determining whether a case against government defendants is moot: (1) whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate the court's jurisdiction, (2) whether the defendants' shift can be fairly viewed as permanent, and (3) whether defendants have consistently maintained a commitment to the new policy. *Keohane v. Florida Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020). The Court finds guidance in this framework.

First, the record demonstrates that the changes in Defendants' bail procedures resulted from substantial deliberation and concerted effort by the Judges and staff leadership within the 22nd Circuit to comply with the new mandates of Rule 33.01, which are now in effect and govern Defendants' conduct. While this lawsuit certainly

17

influenced the evolution of Defendants' practices,[12] it cannot be said that Defendants' collective response was merely an attempt to manipulate this litigation.  Rather, Defendants' new processes reflect an effort to comply with the new rules.  With regard to the argument that the provision of counsel was a discretionary act of the chief judge, Defendants themselves acknowledge the importance of counsel as a critical component. Second, the intended permanency of Defendants' new procedures is evidenced by the institutionalization of a new court division, new forms, and additional staff and resources. These are not ephemeral fixes for any government office; rather, they are permanent changes designed to comply with the mandates of the new rules.  Third, Defendants have demonstrated a commitment to comply with new Rule 33.01 since its adoption, and the record illustrates Defendants' efforts in this regard notwithstanding Plaintiffs' dissatisfaction with certain particulars.

Notably, Plaintiffs do not present questions regarding the constitutional sufficiency of the revised rules.  Pursuant thereto, Defendants have implemented interview protocols, bail hearing procedures, and other institutional processes and protections, including appointed counsel, designed to ensure the Judges' consideration of an arrestee's ability to pay and other factors relevant to pre-trial release.  Comparing the relief requested in Plaintiffs' original complaint to the institutional changes implemented by the 22nd Circuit, the Court observes that the new procedures substantially change the process with respect to each of the issues raised: notice that information would be

---

[12]     Email correspondence reflects that certain changes came about in direct response to Plaintiffs' concerns and briefing in this case.  Doc. 267-2 at 680, 682.

collected for the court to consider at the hearing; cessation of deputies' instructions not to speak; individualized determinations of the ability to pay; an opportunity to be heard and present evidence; findings by the court with respect to release conditions (at least systemically); a prompt hearing for those not released; and, significantly, free legal counsel. The record confirms that these procedures have, in the main, been implemented, rendering moot the claims asserted in Plaintiffs' original complaint and any corresponding declaratory relief they seek based on past practices. *Prowse*, 984 F.3d at 702.

To the extent Plaintiffs lament deficiencies in the details and degree of Defendants' compliance with new Rule 33.01, this forms an entirely different lawsuit. *Prowse*, 984 F.3d at 703. Plaintiffs contend that judges still sometimes set bond in amounts that arrestees cannot pay. But the law does not guarantee release on bond, only the consideration of ability to pay and alternative conditions, which the rules and Defendants' new processes provide. Plaintiffs also cite deficiencies in the specificity of notice, the quality of some appointed counsel, the completeness of some of the hearings observed, and the depth of written findings and reasoning in some judges' decisions. Upon review of certain transcripts, the Court understands some of Plaintiffs' concerns. Certainly, some hearings do not reflect full compliance with the new rules. But Plaintiffs contend that they are seeking systemic solutions to systemic problems. Doc. 277 at 9. That was the gravamen of their complaint and, importantly, the basis of this Court's certification of the Plaintiff class. *Dixon*, 2019 WL 2437026, at *5-6. Plaintiffs' complaint asserted that the Judges violated class members' rights by operating a *system*

19

of wealth-based detention that kept arrestees in jail because they could not afford to pay monetary conditions of release, without an inquiry as to their ability to pay or any consideration of alternative release conditions.  Here the record is clear that those prior systemic practices are no longer in effect.  Defendants' system and procedures have changed, and the unconstitutional procedures alleged in the complaint are not likely to recur.  As such, Plaintiffs' claims are now moot.  *See Prowse*, 984 F.3d at 703 (holding that plaintiff's receipt of hormone therapy rendered moot her claim that prison administration had a blanket policy of denying hormone therapy to inmates diagnosed with gender dysphoria).  For this same reason, the Court will not opine on the constitutionality of Defendant's procedures.  Because the claims asserted in Plaintiffs' complaint are now moot, and as Defendants filed no counterclaim, any finding by this Court regarding Defendants' past or present practices would constitute an impermissible advisory opinion.  *Ringo*, 677 F.3d at 796-99 (declining to opine on Missouri's past or evolving execution method).

At best, Plaintiffs allege that judges are not adhering to the requirements of the rules in all cases.  But review of that claim would require a detailed analysis of each particular case rather than a review of a systemic process.  This is not to suggest that the record presents *no* issues of fact as to whether Judges are fully complying with the new requirements in all cases.  In this regard, certain hearing transcripts and orders reflect misapplication of evidentiary standards or inadequate findings or reasoning.  The Court

does not mean to discount the validity of Plaintiffs' concerns on these matters.[13]

However, these are not the same concerns raised in Plaintiffs' complaint. While they

may suggest uneven or at times imperfect implementation of the new rules, they do not

describe a deficient system. *Cf. Office of Prosecuting Attorney for St. Louis County v.*

*Precythe*, 2021 WL 4235846, at \*5-7 (8th Cir. Sept. 17, 2021) (finding that Missouri's

parole review *process*, implemented to comply with *Miller* and *Montgomery*,[14] remained

constitutionally defective because defendant's policies and practices were not structured

to focus on relevant considerations). Thus, even if Plaintiffs' claims were not moot, the

Court must refrain from exercising jurisdiction because Plaintiffs' new criticisms,

accompanied by a literal audit of Defendants' proceedings, invite precisely the type of

federal court interference that the Eighth Circuit proscribes.

For example, Plaintiffs submit numerous spreadsheets tracking initial versus

modified bonds, number of days in detention, and ultimate outcomes in individual cases.

Doc. 267-21 at 1-28. Referring to specific hearing transcripts, Plaintiffs cite 79 instances

where the judge set cash bail without making any written or oral findings supporting the

imposition and 16 instances where bond was set with no inquiry about a defendant's

---

[13]     Among Plaintiffs' concerns, some hearing transcripts resulting in no-bond detention
orders reflect deficiencies in the Judges' individual inquiries and corresponding justification for
detention. While these practices may warrant consideration, they are not before the Court in this
particular case. As previously noted, the Court denied Plaintiffs' motion to amend the class to
include no-bond detainees at this late stage because it presented a substantial departure from
Plaintiffs' original theories centered on wealth-based detention.

[14]     Referring to *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory sentences
of life without parole for juvenile offenders violate the Eighth Amendment), and *Montgomery v.*
*Louisiana*, 577 U.S. 190 (2016) (holding that *Miller* applies retroactively in cases on collateral
review).

ability to pay.  Doc. 267 at 60-61.  But Plaintiffs' dissection of the record to highlight deficiencies in compliance with the new rules and procedures only underscores the impropriety of this Court's further review, for the Court cannot address Plaintiffs' remaining concerns without a granular examination of individual cases.  Without revisiting the nuances of *Younger* abstention discussed at length in earlier proceedings, at this stage on a full record the Court must follow the broader principle that federal courts should avoid conducting an "ongoing audit" of state court proceedings.  *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 611 (8th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).  As the appellate court observed in this case, the "principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business."  *Dixon*, 950 F.3d at 1056.  *See also Ahmad v. City of St. Louis*, 995 F.3d 635, 642-43 (8th Cir. 2021) ("The era of micromanagement of government functions by the federal courts is over.").

The Eighth Circuit directed this Court to consider the public interest in federal-state relations and the necessity of an injunction in light of Defendants' course of conduct since July 2019.  *Dixon*, 950 F.3d at 1056.  Defendants have implemented new processes to comply with Rule 33.01 and designed to address the prior deficiencies described in Plaintiffs' complaint, rendering moot the claims asserted against the Defendant Judges.  Following the Eighth Circuit's guidance, the Court concludes that it should refrain from any further scrutiny that the parties invite into Defendants' current practices.

For these reasons, Plaintiffs' claims against the Defendant Judges will be dismissed without prejudice as moot.  *See Ringo*, 677 F.3d at 799 (vacating summary

22

judgment for defendant and remanding with instructions to dismiss without prejudice due to mootness); *Young America's Foundation v. Kaler*, 2021 WL 4509147, at *9 (8th Cir. Oct. 4, 2021) (same).

**City Defendants**

The City moves for summary judgment on Count III with respect to Plaintiffs' claim that sheriff's deputies had a custom or practice of instructing arrestees not to speak at their initial appearances.  Of the City's numerous theories in support of the motion, the Court finds mootness to be dispositive.

As asserted at earlier stages, the City again contends, now on a fuller record, that Plaintiffs' claim is moot because the City has ceased the alleged violation since the time of the complaint.  More specifically, the City emphasizes that it agreed by stipulation in this case to instruct its deputies not to silence arrestees at their bail hearings (Doc. 92), and there is no evidence that any such conduct is still occurring.  In response, Plaintiffs argue that the City has supplied no evidence, such as training materials or deposition testimony, demonstrating the City's full cessation of the practice.

As noted above, a case becomes moot if subsequent events make it clear that the challenged action is not likely to recur, and government officials enjoy a presumption that they will not resume unconstitutional practices.  *Prowse*, 984 F.3d at 703.  The Court previously denied the City's motions to dismiss and for judgment on the pleadings on this claim because Plaintiffs sufficiently pleaded it and the factual record was not yet fully developed.  Now, on summary judgment, Plaintiffs' evidence on this issue still consists of the several arrestee declarations attached to the original complaint stating that sheriff's

23

deputies instructed them not to speak at their bail hearings, all relating to a time period prior to the City's stipulation.  Though Plaintiffs argue that the record lacks any evidence that the City revised its written policies, conducted training, or issued other directives on the issue, Plaintiffs do not supply any evidence of violations occurring after the City undertook to eliminate the problem – this in a circuit where 2,000 to 4,000 felonies are processed annually.  Doc. 266-23 at 158.  Plaintiffs conducted extensive discovery in this case and had ample opportunity to collect additional arrestee statements post-dating the City's stipulation.

Even viewing the record in a light favorable to Plaintiffs, the Court must conclude that the City is entitled to the presumption that its officials are unlikely to resume any alleged past practice of silencing arrestees.  The cases cited in Plaintiffs' responsive brief urging a different result involve either private parties or government entities defending the constitutionality of their actions.  *Friends of the Earth,* 528 U.S. at 189 (where a private company complied with environmental regulations during pendency of the suit); *Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108, 1114 (D. Minn. 2014) (where evidence was unclear whether private party rectified ADA violations after complaint was filed); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (where a school district ceased using a racial tiebreaker during the litigation but defended the practice on the merits).  Here, the City did not defend its deputies' alleged prior conduct but instead assured this Court that it would cease.  Nothing in the record invites the inference that violations continue or are likely to resume.  As such, the Court finds that Plaintiffs' claim against the City in Count III is

24

moot and must be dismissed.

## CONCLUSION

Plaintiffs are to be commended for their efforts in raising legitimate concerns with respect to the constitutionality of Defendants' previous bail-setting practices as described in the complaint and for advancing meaningful change in the 22nd Circuit.  However, Defendants' practices have evolved dramatically such that further proceedings on the merits in this Court would offend doctrines of mootness and comity.  To the extent there remain shortcomings in certain judges' application of new Rule 33.01, the Court trusts that the Missouri appellate courts are capable of policing their own lower courts.  *Dixon*, 950 F.3d 1056.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the case is **DISMISSED** without prejudice.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of October 2021.

---

[i]     The new Rule 33.01, titled "Misdemeanors or Felonies - Right to Release – Conditions," is set forth below in its entirety.  The rule was announced on December 18, 2018 with an effective date of July 1, 2019, though the effective date of paragraphs (e) and (f) was later postponed to January 1, 2020.

(a) A defendant charged with a bailable offense shall be entitled to be released from custody pending trial or other stage of the criminal proceedings.

(b) The defendant's release shall be upon the conditions that:

> (1) The defendant will appear in the court in which the case is prosecuted or appealed, from time to time as required to answer the criminal charge;

(2) The defendant will submit to the orders, judgment and sentence, and process of the court having jurisdiction over the defendant;

 (3) The defendant shall not commit any new offenses and shall not tamper with any victim or witness in the case, nor have any person do so on the defendant's behalf; and

 (4) The defendant will comply fully with any and all conditions imposed by the court in granting release.

(c) The court shall release the defendant on the defendant's own recognizance subject only to the conditions under subsection (b) with no additional conditions of release unless the court determines such release will not secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses. If the court so determines, it shall set and impose additional conditions of release pursuant to this subsection.

The court shall set and impose the least restrictive condition or combination of conditions of release, and the court shall not set or impose any condition or combination of conditions of release greater than necessary to secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses.

When considering the least restrictive condition or combination of conditions of release to set and impose, the court shall first consider non-monetary conditions. Should the court determine non-monetary conditions alone will not secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses, then the court may consider monetary conditions or a combination of non-monetary and monetary conditions to satisfy the foregoing. After considering the defendant's ability to pay, a monetary condition fixed at more than is necessary to secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses, is impermissible.

If the court determines additional conditions of release are required pursuant to this subsection, it shall set and impose one or more of the following conditions of release:

(1) Place the defendant in the custody of a designated person or organization agreeing to supervise the defendant;

(2) Place restrictions on the travel, association, or place of abode of the defendant during the period of release, including the holding by the court of the defendant's passport;

(3) Require the defendant to report regularly to some officer of the court or peace officer, in such manner as the court directs;

(4) Require the use of electronic monitoring of defendant's location, the testing of defendant for drug or alcohol use, or the installation and use of ignition interlock devices. The court may order the eligible defendant to pay all or a portion of the costs of such conditions, but the court shall consider how best to minimize the costs to the defendant and waive the costs for an eligible defendant who is indigent and who has demonstrated to the court an inability to pay all or a portion of the costs;

(5) Require the defendant to seek employment, to maintain employment, or to maintain or commence an educational program;

(6) Require the defendant to comply with a specified curfew;

(7) Require the defendant to refrain from possessing a firearm or other deadly weapon;

(8) Require the defendant to abstain from possession or use of alcohol or any controlled substance without a physician's prescription;

(9) Require the defendant to undergo available medical, psychological or psychiatric treatment, including treatment for drug or alcohol dependency and remain in a specified institution if required for that purpose;

(10) Require the defendant to return to custody for specified hours following release for employment, school, treatment, or other limited purpose;

(11) Require the defendant to be placed on home supervision with or without the use of an electronic monitoring device. The court may order the eligible defendant to pay all or a portion of the costs of the electronic monitoring, but the court shall consider how best to minimize the costs of such condition to the defendant and waive the costs an eligible defendant who is indigent and who has demonstrated to the court an inability to pay all or a portion of the costs;

(12) Require the defendant to execute a monetary bond in a stated amount wherein the defendant promises to pay to the court the stated amount should the defendant fail to appear or abide by the conditions of release;

(13) Require the execution of a monetary bond in a stated amount with sufficient sureties, or the deposit in the registry of the court of a sum in cash or negotiable bonds of the United States or the State of Missouri or any political subdivision;

(14) Require the execution of a monetary bond in a stated amount and the deposit in the registry of the court of 10 percent, or such lesser sum as the court directs, of such sum in cash or negotiable bonds of the United States or the State of Missouri or any political subdivision;

(15) Require the deposit of a property bond of sufficient value as approved and directed by the court;

(16) Impose other conditions necessary to secure the appearance of the defendant at trial, or at any other stage of the criminal proceedings, or the safety of the community or other person, including but not limited to the crime victims and witnesses.

(d) Should the court determine upon clear and convincing evidence that no combination of non-monetary conditions and monetary conditions will secure the safety of the community or other person, including but not limited to the crime victims and witnesses, then the court shall order the defendant detained pending trial or any other stage of the criminal proceedings. A defendant so detained shall, upon written request filed after arraignment, be entitled to a trial which begins within 120 days of the defendant's request or within 120 days of an order granting a change of venue, whichever occurs later. Any request by the defendant to continue the trial beyond the 120 days shall be considered a waiver by the defendant of the right to have the trial conducted within 120 days.

(e) In determining whether to detain the defendant pursuant to subsection (d) or release the defendant with a condition or combination of conditions of release, if any, pursuant to subsection (c), the court shall base its determination on the individual circumstances of the defendant and the case. Based on available information, the court shall take into account: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties, employment, financial resources, including ability to pay, character, and mental condition; the length of the defendant's residence in the community; the defendant's record of convictions; the defendant's record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings; whether the defendant was on probation, parole or release pending trial or appeal at the time the offense for which the court is considering detention or release was committed; and any validated evidentiary-based risk assessment tool approved by the Supreme Court of Missouri.

(f) A court detaining or releasing the defendant under this Rule shall enter an order stating the condition or combination of conditions of release, if any, set and imposed by the court. If the defendant is detained and unable to comply with any condition of release, the defendant shall have the right to a release hearing pursuant to Rule 33.05. At any hearing conducted under Rule 33, the court shall permit but not require either party to make a record on the defendant's financial status and ability to pay any monetary condition or other relevant issue. At such hearing, the court shall also make written or oral findings on the record supporting the reasons for detention or conditions set and imposed. The court shall inform the defendant of the conditions set and imposed, if any, and that the conditions of release may be revoked and the defendant detained until trial or other stage of the criminal proceedings for violation of any of the conditions of release and that a warrant for the defendant's arrest may be issued immediately upon notification to the court of any such violation.

ii      Rule 33.05, titled "Misdemeanors or Felonies – Release Hearing," states:

A defendant who continues to be detained after the initial appearance under Rule 21.10 or Rule 22.08 shall have the defendant's detention or conditions of release reviewed at a hearing by the court subject to the right of a victim to be informed of and heard at the hearing. The hearing shall occur as soon as practicable but no later than seven days, excluding weekends and holidays, after the initial appearance, absent good cause shown by the parties or the court. At the hearing, the court shall determine if the defendant shall be detained or released as provided in Rule 33.01. Nothing herein shall prohibit a defendant from making subsequent application for review of the defendant's detention or conditions of release under Rule 33.01.